UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,

          Plaintiffs,

          v.          CIVIL ACTION
                NO. 07-11693-JLT

CITY OF LAWRENCE, MASSACHUSETTS,
et al.,

          Defendants.

## THE STATE DEFENDANTS' OPPOSITION
## TO PLAINTIFFS' PROPOSED DISCOVERY ORDERS

The state defendants[1] hereby oppose the plaintiffs' Proposed Order on Document Discovery, filed as docket no. 30-4, and parts of the plaintiffs' Proposed Order Regarding Rule 30(b)(6) Depositions, filed as docket no. 30-5. Despite plaintiffs' purported focus in their (third amended) complaint on alleged discrimination against Blacks and Hispanics inherent in the two statewide police sergeant promotional examinations administered by HRD in 2006 and 2007, the plaintiffs seek voluminous discovery regarding *all* test-takers (of whom there are typically over 800 annually), going back ten years, in scores of communities in which no Black or Hispanic officers are competing for promotion.[2] The plaintiffs also seek highly sensitive information regarding the formulation of examination questions yet to be administered, and "[t]he location

---

[1] The state defendants consist of the Commonwealth of Massachusetts and Paul Dietl, in his capacity as the Chief Human Resources Officer of the Commonwealth and head of its Human Resources Division ("HRD").

[2] *See* Affidavit of Sally McNeely, attached hereto as Exhibit A, at ¶ 3 (an average of 802 individuals have sat for the sergeant's exam in each of the past ten years) and ¶¶ 4, 6 (of the 169 communities that participate in the promotional process, approximately 70% have no minority candidates in a given year).

and storage" of examination data, which threatens to spoil the integrity of future examinations.

      A.  <u>The State Defendants' General Objections to the Proposed Discovery Orders</u>

This Court should not require the state defendants to devote scores of staff-hours to locating, reviewing, compiling, redacting, and producing archived documents and data that go back ten years when (1) any actionable claim that plaintiffs might possess does not predate 2006; and (2) it is far from clear that plaintiffs can state a prima facie case regarding the 2006 or 2007 sergeant promotional examinations.  The statute of limitations applicable to Title VII and M.G.L. c. 151B claims (300 days)[3] rules out any claims by plaintiffs that pre-date 2006 since the first charges of discrimination in this case were not filed until the spring of 2007.  Although information regarding time-barred events conceivably could be used to bolster a legitimate prima facie case, if the plaintiffs' case fails for lack of current evidence of discrimination, then historical information regarding prior versions of the sergeant promotional exam indisputably loses any legal relevance.

Plaintiffs have failed to allege a specific injury to any named African-American plaintiff attributable to either the 2006 or the 2007 examination.  Only one plaintiff in this case is identified as African-American and he is a police officer in the City of Lawrence.  Third Amended Complaint ("Compl."), docket no. 30-2, at ¶ 5.  Although this plaintiff, Kevin Sledge, alleges that he has not been promoted as a result of the 2006 exam, Compl. at ¶ 27, in fact the City of Lawrence has not promoted *anyone* who passed the 2006 exam to the position of police sergeant.  *See* McNeely Aff., ¶ 16.  Additionally, for reasons stated in the margin, this officer is

---

[3]  "Pursuant to 48 U.S.C. § 2000e-5, a plaintiff in Massachusetts, a so-called deferral state, must file his charge of discrimination with the Equal Employment Opportunity Commission within three hundred days of the alleged unlawful employment practice." *Williams v. Massachusetts Mut. Life Ins. Co.*, 474 F.Supp.2d 219, 226 (D.Mass. 2007).  The state anti-discrimination law (M.G.L. c. 151B, § 5, as amended through St. 2002, c. 223, §§ 1 and 4) similarly provides:  "Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination."

not eligible to be promoted to police sergeant, and as such he lacks standing to maintain an action against the state defendants.[4]  That leaves only the named Hispanic plaintiffs to carry the plaintiffs' burden in this case.  However, Hispanics passed the 2007 exam at exactly the same percentage rate as Caucasians.  McNeely Aff., ¶ 13.  Although their pass rate was slightly less favorable in 2006, at a robust 88% of the Caucasian pass rate[5] no inference of discrimination arises because, applying the so-called "4/5ths rule,"[6] considerably better than four Hispanics passed this exam, in percentage terms, for every five Caucasians who passed.[7]  *Id.* at ¶ 13.  Thus it appears unlikely that this case will proceed beyond the initial (prima facie) phase.

---

[4]  Due to Kevin Sledge's New Hampshire residency, *see* Compl. at ¶ 5, he is not eligible to serve as a police sergeant in Massachusetts.  General Laws chapter 31, § 58, requires that "any person who receives an appointment to the police force or fire force of a city or town shall within nine months after his appointment establish his residence within such city or town or at any other place *in the commonwealth* that is within ten miles of the perimeter of such city and town." (emphasis added).  The Commonwealth's Chief Human Resources Officer and HRD have long interpreted this language to require continuous Massachusetts residency by incumbent police officers throughout their employment.  McNeely Aff., ¶ 11.  HRD has declined to approve promotions when it is aware of a candidate's failure to adhere to this section of the statute.  *Id.*

[5]  *See* McNeely Aff., ¶ 14.

[6]  The four-fifths rule, which really is just a "rule of thumb" derived from the EEOC's Uniform Guidelines on Employee Selection Procedures (1978), provides that

> [a] selection rate for any race . . . which is less than four-fifths (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.

29 C.F.R. § 1607.4(D).  The First Circuit has stated that "a violation of the four-fifths rule, standing alone, is not conclusive evidence of discrimination."  *Boston Police Superior Officers Fed'n v. City of Boston*, 147 F.3d 13, 21 (1st Cir. 1998).  Furthermore, there are instances, particularly where the sample size is small, where use of the four-fifths rule is inappropriate.  *Fudge v. City of Providence Fire Dep't*, 766 F.2d 650, 658 n.10 (1st Cir. 1985).

[7]  Plaintiffs may argue that although a fair proportion of minorities pass the sergeant promotional examination, they are not selected for promotion at rates consistent with their numbers in the pool of eligible candidates.  First of all, it is the individual municipalities, not HRD, that make selection decisions.  McNeely Aff., ¶ 24.  Second, the evidence regarding the communities that have answered the complaint in this action would not support such an argument.  As noted above, Lawrence has not selected anyone, minority or otherwise, from the list of eligible candidates established after the 2006 exam.  No eligible lists (for any community) have been established from the results of the 2007 exam as the appeal period following that exam has not yet expired.  McNeely Aff., ¶ 15.  Although Methuen has promoted only one (Caucasian) officer out of 15 who passed the 2006 exam, the number of minority test-takers in
. . . footnote continues on the next page

Hence discovery at this juncture should be narrowly focused on the 2006 and 2007 examinations, including relevant data concerning the over 1600 individuals who sat for those exams.[8] The state defendants have already disclosed key information concerning those exams and test-takers to plaintiffs' counsel. These defendants will voluntarily provide the type of information sought in the proposed order to the extent it relates specifically to individuals who sought promotions to police sergeant in 2006 or 2007 in those communities in which Caucasians, Blacks, and Hispanics were or are competing for such promotions. Now that this Court has entered a confidentiality order, HRD will construe its initial disclosure obligations broadly and disclose, without the need for any discovery order, all relevant information regarding the two most recent administrations of the statewide sergeant promotional examination.[9]

If the plaintiffs can establish some deficiency in one or both of the two most recently administered exams as a result of this phase of discovery, then this Court legitimately could consider whether to order discovery into time-barred events. Naturally, the Court should still weigh the heavy burdens that complying with the proposed order would impose on the state defendants against the plaintiffs' need for such background information. However at this time the Court should refrain from ordering far-reaching discovery until the plaintiffs' motion for

---

that community was so small that, statistically, even assuming all passers were identically qualified, one would not expect that promotion to have gone to a minority officer. McNeely Aff., ¶ 18. Out of seven promotions to sergeant made in the Worcester Police Department in 2006, one went to an African-American officer and a second elevated a Hispanic officer. McNeely Aff., ¶ 17. On information and belief, Worcester intends to promote another African-American officer in 2008.

[8] *See* McNeely Aff., ¶ 9, concerning the total number of test-takers in 2006 and 2007 (over 1,600).

[9] The state defendants' ability to administer a fair promotional examination in the future, however, could be seriously compromised if this Court entered a discovery order requiring HRD to divulge sensitive details regarding the test to be administered later this year. The protection of the confidentiality order entered by the Court earlier this month should suffice to permit appropriate discovery into the details of the 2006 and 2007 tests without jeopardizing the integrity of the examination process. But the integrity of future examinations depends upon the details of forthcoming tests not being divulged to *anyone* outside of HRD's test development unit and HRD's hired consultants. McNeely Aff., ¶ 26.

class certification has been decided and plaintiffs can establish a prima facie case of discrimination. Presently the burden on the state defendants of having to comply with plaintiffs' proposed orders would far outweigh the benefit the plaintiffs could show from gaining such information.

> B. The State Defendants' Specific Objections to Particular Provisions of the Proposed Discovery Orders.

> *1. Objections to the Proposed Document Discovery Order*

Several of the different categories of documents the plaintiffs are presently seeking are overbroad and burdensome for two principal reasons: (1) either copious amounts of confidential personal data regarding nonparties, the disclosure of which would constitute an unwarranted invasion of personal privacy, are embedded in these documents[10] and cannot be identified, sifted, and redacted without the expenditure of large amounts of time by a small staff of state personnel within HRD's civil service unit;[11] or (2) plaintiffs' demand, as written, calls for the production of thousands of documents of highly dubious relevance.

Turning first to the embedded confidential data problem, any disclosure of such personal data may lawfully occur only if the applicable provisions of the Fair Information Practices Act are followed, which would necessitate HRD contacting thousands of individuals. *See* A. Cella, *et al.*, 39 Mass. Prac. Ser. § 1187 n.22 and text (2007) (citing *Torres v. Att'y Gen'l*, 391 Mass. 1, 5-11, 460 N.E.2d at 1035-1038 (1984)). In the case of police officers in particular, sensitive

---

[10] For example, a number of documents the plaintiffs are demanding access to contain social security numbers of incumbent police officers, as well as their home addresses and telephone numbers. McNeely Aff., ¶ 19. This information is explicitly denominated confidential under both state law and federal precedents. *See* M.G.L. c. 4, § 7, cl. 26(*o*), and footnotes 12-14 and surrounding text, *infra*. Although this Court's confidentiality order furnishes modest protection regarding these data, it would not bar a lawsuit against the state defendants by a nonparty whose confidential information was disclosed in contravention of M.G.L. c. 66, § 10(d), M.G.L. c. 66A, § 2(c), or M.G.L. c. 214, § 1B. Moreover, justification for the disclosure of the social security numbers of police officers who sat for a promotional examination eight or ten years ago is wholly lacking in this case.

[11] *See* McNeely Aff., ¶ 20.

5

personal data must be zealously safeguarded by the Commonwealth in order to protect the personal safety of these officers and their families. *See Mehl v. Blanas*, 241 F.R.D. 653, 657 (E.D. Cal. 2007).[12] As another federal court observed in a case practically on all fours with this one, "public policy weighs heavily in favor of providing 'confidential' status to information demanded from police personnel files." *Reyes v. Freeberry*, 2005 WL 3560724 at *6 (D.Del. 2005).[13]

> Closely related to that statutorily expressed policy is the fundamental respect courts and litigants should have for the privacy of individuals who have no desire to involve themselves in the parties' dispute. It may be that the plaintiffs have legitimate employment discrimination claims under federal civil rights statutes, but vindicating their rights need not come at the expense of the privacy of their present and former colleagues associated with the [local] police department.

*Id.* Indeed, "in case after case, where a police officer's personnel files are requested by a plaintiff bringing a federal civil rights claim . . ., those files are only made available when the information that is now being sought by [plaintiffs], and listed above [*e.g.*, social security numbers and home addresses], has been redacted." *Scaife v. Boenne*, 191 F.R.D. 590, 592 (N.D.Ind. 2000).[14] HRD,

---

[12] The *Mehl* court rejected an argument that plaintiffs' counsel could be trusted to prevent disclosure of this type of confidential information pursuant to a confidentiality order. 241 F.R.D. at 657-658 (the officers' "interest in privacy and the security of their persons and families requires a more stringent safeguard than the assurance of any one litigant"). Other federal courts also have concluded that a generic confidentiality order, of the nature entered by this Court earlier this month, does not suffice to permit unredacted documents to be released to plaintiffs' counsel. *See, e.g., Sasu v. Yoshimura*, 147 F.R.D. 173, 176 (N.D.Ill. 1993); *Murcio v. Perez*, 1998 WL 60817 at *4 (N.D.Ill. 1998).

[13] The Hispanic plaintiff-police-officers in *Reyes* challenged the promotional decisions of a county police department. In support of the above-quoted proposition, the *Reyes* court cited *Jones v. City of Wilmington*, 299 F.Supp.2d 380, 394 (D.Del. 2004) ("[A] federal court must balance the plaintiff's interest in disclosure against the state's legitimate concern of protecting the confidentiality of the officers' personnel files from unnecessary intrusions.") [*Jones* in turn was quoting from *Mercado v. Div. of N.Y. State Police*, 989 F. Supp. 521, 522 (S.D.N.Y.1998)].

[14] The *Scaife* court cited *Sasu v. Yoshimura*, 147 F.R.D. 173, 176 (N.D.Ill.1993) (The court granted plaintiff's motion for a protective order which made access to police officer personnel files contingent upon the redaction of personal information about an officer and his family); *Johnson v. City of Philadelphia*, 1994 WL 612785 (E.D.Pa.1994) (home addresses, social security numbers, names of family members were ordered redacted before copies of police personnel files were turned over to plaintiffs in a § 1983 action); *Malsh v. New York City Police Dept.*, 1995 WL 115728 (S.D.N.Y.1995) (A

. . . footnote continues on the next page

however, lacks the personnel that would be necessary to redact all of the thousands of documents the plaintiffs are seeking.

Plaintiffs seek voluminous information not kept in the ordinary course of HRD's affairs.[15]  Turning first to plaintiffs' last demand (item number 12 in their proposed document discovery order), *all* documents showing the race or ethnic background of *all* police officers, and their efforts to secure promotion over the past ten years, in the approximately 170 civil service communities in Massachusetts, easily runs into the tens of thousands of documents since thousands of individuals are covered by this demand.[16]  Some of this information cannot be deemed relevant to this lawsuit under any set of circumstances; for example, data regarding sergeant appointments made in each and every civil service community is not relevant for those municipalities that lack any minority candidates (of which there are many).

The plaintiffs' penultimate demand (item no. 11 in docket no. 30-4) would also require HRD to compile and produce hundreds of sensitive documents.  All existing lists of municipal police sergeants are typically maintained on a city-by-city basis; presently, there are approximately 170 civil service police departments in the Commonwealth.  Plaintiffs allege in their complaint that over the past 20 years relatively few minorities have been promoted to the position of police sergeant throughout the Commonwealth.  Compl., ¶ 38.  Ascertaining the racial or ethnic identity of all officers promoted to sergeant in the past two decades would require HRD to amass the civil service records of hundreds, if not thousands, of individuals.  This

---

defendant police officer's performance evaluations were ordered to be produced, with the social security numbers redacted).  Additional cases in this same line are cited in *Motley v. Parks*, 2001 WL 682791 at *2 (C.D. Cal. 2001).

[15]  *See* McNeely Aff., ¶¶ 22-25.

[16]  HRD's records currently show that there are over 15,000 police officers (not including superior officers) with civil service tenure or "permanency" in the Commonwealth of Massachusetts.  McNeely Aff., ¶ 21.

demand would also require the production of a separate set of documents (at least one for each of the 170 municipalities) outlining each of these individuals' examination histories.

In many cases, HRD has delegated to municipalities primary responsibility for overseeing the sergeant promotional process.  Although technically under HRD's control, much of the data plaintiffs seek (for example, in the proposed order's paragraphs 5, 6, 7, 11, and 12) would be very difficult for HRD to access and a great deal of staff time would be eaten up in any effort to do so.  *See* McNeely Aff., ¶¶ 24-25.  Attempting to go back ten years to amass such data would be a huge undertaking for which HRD is not presently equipped.  *Id.* at ¶ 25.  Plaintiffs should be required to seek this information from the actual holders of the data:  the municipal defendants and the other civil service police departments in the Commonwealth.

Concerning the plaintiffs' fourth and fifth demands, HRD inevitably would be forced either to violate the Fair Information Practices Act or expend enormous amounts of money and time to protect the privacy rights of thousands of nonparties.  Item number four in the proposed discovery order calls for "the names and total score for each person who took the [sergeant promotional] exam" over "the past ten years."  Probably in excess of five thousand different individuals have sat for the sergeant promotional examination in the past ten years.[17]  By state law, the examination score of identifiable individuals is confidential and cannot be disclosed without prior notice to the affected individuals.[18]  The state defendants would run the risk of

---

[17]   Over the last 10 years, 8,016 test-takers have sat for the sergeant's exam, McNeely Aff., ¶ 3, although it is not possible to estimate how many of that number represent repeat test-takers.

[18]   Together, M.G.L. c. 4, § 7, cl. 26 (c) and (*l*); M.G.L. c. 66, § 10; and M.G.L. c. 66A, §§ 1-3, provide that state agencies are prohibited from disclosing personal data about readily identifiable individuals that are not contained in public records.  *See Allen v. Holyoke Hospital*, 398 Mass. 372, 496 N.E.2d 1368 (1986).  The Commonwealth's Supervisor of Public Records has concluded that civil service examination testing data is not a public record if associated with an individual test-taker's name. Opinion of the Public Records Division of the Secretary of State no. SPR-99/502 (October 25, 1999).  Because any release of the exam scores of an individual applicant, to someone other than the applicant, may have a considerable negative effect upon the applicant's reputation, this information must be kept confidential by HRD.  *See*
. . . footnote continues on the next page

liability under the state invasion of privacy statute, M.G.L. c. 214, § 1B, if it made this information available to plaintiffs, even if an attempt were made to contact all of these individuals to notify them of the plaintiffs' demand.

Plaintiffs' fifth demand calls for the production of all documents relating to the selection of police sergeants by all civil service municipalities over the past ten years. Docket no. 30-4, ¶ 5. Not only is this information massively voluminous, in many cases the responsive documents will contain confidential information regarding reasons given by municipal appointing authorities for the bypass of certain sergeant candidates. *See* McNeely Aff., ¶ 12. In some cases, these bypass decisions have been the subject of litigation, thereby increasing exponentially the universe of relevant documents. No compilation of such documentation is available electronically, meaning that HRD staff would have to spend an inordinate amount of time going through hundreds of files to comply with the proposed order. *Id.* Again, this demand is more appropriately addressed to the individual police departments that have made sergeant promotions in the relevant time period.

To sum up the state defendants' objection to the proposed document discovery order: The plaintiffs' demands might require a small number of state employees to spend hundreds of hours ascertaining the racial or ethnic group to which thousands of test-takers belong;[19] determining the test-taking histories of thousands of police officers; and amassing the employment and promotional records of hundreds (perhaps thousands) of police officers, many of which are held by third-party municipal police departments and not HRD. Under the terms of

---

*id.* On account of the plaintiffs' attorneys' numerous police-union clients, the confidentiality order entered in this case cannot possibly cure the massive confidentiality breach that would be occasioned by the verbatim entry of the plaintiffs' proposed document discovery order.

[19]  This component alone, a prerequisite to responding to many of the plaintiffs' discovery demands, may take several dozen hours of HRD staff time. *See* McNeely Aff., ¶ 23.

the proposed order, tens of thousands of records would have to be searched for, collected, reviewed, redacted, and then produced. HRD quite simply cannot envision being able to comply with such an order of the court, given its present personnel resources and its wide-ranging responsibilities. However, by the time of the next court event (March 17, 2008), the state defendants *are* committed to locating and producing to plaintiffs' counsel all nonprivileged and relevant documents pertaining to the 2006 and 2007 sergeant promotional exams.

  *2. Objections to the Proposed Deposition Order*

  The state defendants also have a couple of specific objections to the plaintiffs' *Proposed Order Regarding Rule 30(b)(6) Depositions* (docket no. 30-5). The security of the civil service exams and the integrity of the exam development process are absolutely critical to HRD's effectiveness as an agency. McNeely Aff., ¶ 26. In the past, intruders have entered HRD's offices and, regrettably, exams have been stolen. *Id.* Although security measures put in place since are greatly improved, it remains imperative that "[t]he location and storage of data possessed by HRD relating to the police sergeant's exam" (quoting plaintiffs' proposed order at ¶ 3) remain confidential. Additionally, the integrity of future examinations depends upon the details of forthcoming tests not being divulged to anyone outside of HRD's test development unit and HRD's hired consultants. *Id.* For these reasons, this Court should not order the deposition of any HRD employee or agent concerning either the details (including the validation measures) applicable to the sergeant's examination scheduled to be given later in 2008 (*contra* ¶ 1 of the proposed order) or the location or storage methods used to secure examination data (contra ¶ 3 of the proposed order).

  For all of the above-stated reasons, this Court should decline to enter the plaintiffs' Proposed Order on Document Discovery. Rather, the state defendants should be free to proceed to complete their initial discovery obligations. If this does not satisfy the plaintiffs' need for

information, *and* they have demonstrated a colorable claim in this litigation, then due to the sensitive and voluminous nature of the data the plaintiffs are seeking, the state defendants ask to be heard at the next scheduled court event on any outstanding discovery issues.

Similarly, the state defendants do not object to the subject matter of the plaintiffs' proposed Rule 30(b)(6) depositions, as stated in paragraphs 1 [except for details of the as-yet-administered 2008 sergeant promotional exam], 2, 5, and 6 of their proposed order; however, as stated above, they should not be required to testify regarding the topics listed in paragraphs 3 and 4 of Docket no. 30-5. In any event, no order of the Court is necessary; the state defendants will respond appropriately to any Rule 30(b)(6) deposition notice they receive. Such depositions could occur any time (within reason) that the plaintiffs' attorneys desire.

        Respectfully submitted,

        The Commonwealth of Massachusetts and
        Paul Dietl, in his capacity as head of the state
        Human Resources Division, by their attorneys:

        MARTHA COAKLEY
        ATTORNEY GENERAL

        /s/ Robert L. Quinan, Jr.
        Robert L. Quinan, Jr. BBO # 553010
        Assistant Attorney General
        One Ashburton Place
        Government Bureau
        Boston, Massachusetts 02108-1598
        (617) 727-2200, ext. 2554

Date:   January 29, 2008

## CERTIFICATE OF SERVICE

      I hereby certify that the above document will be served on January 29, 2008, by electronic notice for registered counsel and a copy will be served by first-class mail, postage pre-paid, for non-registered counsel.

                                        /s/ Robert L. Quinan, Jr.
                                        Robert L. Quinan, Jr. BBO # 553010
                                        Assistant Attorney General