UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,

        Plaintiffs,

        v.                                CIVIL ACTION
                                                 NO. 07-11693-JLT

CITY OF LAWRENCE, MASSACHUSETTS,
et al.,

        Defendants.

## AFFIDAVIT OF SALLY McNEELY

I, Sally McNeely, do hereby state and depose as follows:

1. I have been employed by the Human Resources Division of the Commonwealth of Massachusetts ("HRD") since May 1, 1983. My current title is "Director, Civil Service Unit" at HRD and I have held this position since 2003. The Civil Service Unit is responsible for, among other things, the administration, marking, and/or oversight of all civil service police promotional examinations given annually in the Commonwealth of Massachusetts. The unit I supervise is also responsible for the certification to municipalities of lists of eligible applicants for superior officer positions. The statements I make under oath below are based upon my personal knowledge or records maintained by HRD.

2. The promotional examination for the position of police sergeant is offered by the Human Resources Division every year. There are approximately 800 test-takers for the sergeant's exam each year.

3. Over the last 10 years, 8,016 individuals have taken the sergeant's exam.

4. There are 169 communities in the Commonwealth that have police departments subject to civil service laws and regulations.

5. Communities sign up to participate in promotional exams when they foresee a need to make promotions. Generally communities that make promotions on a regular basis will participate in the promotional exam every two or three years.

6. Of the communities that participate in a given year, approximately 70% have no minority applicants.

7. The Human Resources Division first learned in June of 2007 that a charge of discrimination alleging that the 2006 sergeant's exam had a discriminatory impact upon African-American and Hispanic candidates had been filed at the MCAD.

8. In 2007, statewide figures show that 747 individuals took the sergeant's exam.

9. In 2006, 863 individuals took the sergeant's exam statewide. Because entirely different sets of communities participated in the statewide promotional exams in 2006 and 2007, and candidates are eligible for promotion only after serving a set period on the police force that employs them, I conclude that over 1,600 different individuals sat for these two examinations.

10. When an appointing authority notifies HRD that it intends to make promotions, HRD will issue a certification list to the appointing authority. A certification list is generated from the eligibility list, which is a list containing the names of all passing test-takers, in rank order. The appointing authority may make its selection from any of the individuals that appear within the selection ratio of $2n+1$. For example, if the appointing authority is making 2 promotions, it will make its selection from the first 5 names ($2 \times 2 + 1$) that appear on the certification list.

11. Massachusetts General Laws chapter 31, § 58, requires that "any person who receives an appointment to the police force or fire force of a city or town shall within nine months after his appointment establish his residence within such city or town or at any other place *in the commonwealth* that is within ten miles of the perimeter of such city and town." (emphasis added). HRD has long interpreted this language to apply to both new and incumbent employees. New employees must comply with the statute's residence requirements within nine months of appointment. Incumbent employees must continue to meet the statute's residence requirements throughout their employment. HRD has on several occasions declined to approve a promotion when it is aware of a candidate's failure to adhere to this section of the statute.

12. Massachusetts law further provides that "[i]f an appointing authority makes [a] promotional appointment from a certification of any qualified person other than the qualified person whose name appears highest, and the person whose name is highest is willing to accept such appointment, the appointing authority shall immediately file with [HRD] a written statement of his reasons for appointing the person whose name was not highest." M.G.L. c. 31, § 27. For example, a request by an appointing authority to bypass a police sergeant candidate because of the police officer's arrest or pending criminal charges against him will be approved by HRD as sound and sufficient. A history of disciplinary problems may in certain circumstances also justify a bypass. Many of the promotion selection documents HRD has received over the years from municipalities have contained similar confidential bypass reasons. Many bypass

2

   decisions at the promotional level have been the subject of litigation and, thus, HRD
   often has large files involving a single or just a few candidates. In general, this
   documentation is available only in paper form.

13. In 2007, Hispanic test-takers passed the sergeant's exam at exactly the same percentage
    rate as Caucasians. In each group, 68% passed the 2007 exam.

14. In 2006, Hispanic test-takers passed at a rate of 88% of that of the Caucasian pass rate.
    Slightly less than 75% of Caucasian test-takers passed the 2006 exam and 66% of
    Hispanics passed that test. This means that almost 4.5 Hispanics passed, on a percentage
    basis, for every 5 Caucasians who passed, easily satisfying the so-called "4/5ths rule."

15. To date, the eligibility list has not been established from the 2007 sergeant's exam
    because the exam appeal period has not concluded.

16. The City of Lawrence has not made any promotions to the position of sergeant from the
    2006 eligibility list.

17. In 2006, out of seven promotions made to the rank of sergeant in the Worcester Police
    Department, one promotion went to an African-American officer and one went to a
    Hispanic officer.

18. To date, Methuen has only made one promotion from the 2006 sergeant's exam. Fifteen
    of Methuen's police officers passed the 2006 exam, three of whom were Hispanic.
    Methuen had no African-American test-takers in 2006.

19. The records HRD maintains for civil service employees typically contain a considerable
    amount of confidential personal information such social security numbers, home
    addresses, and home telephone numbers.

20. The civil service unit within HRD is comprised of 16 employees, only five of whom
    work on certifications and would be available to redact confidential information from the
    HRD records the plaintiffs are demanding.

21. HRD's records currently show that there are over 15,000 police officers (not including
    superior officers) with civil service tenure or "permanency" in the Commonwealth of
    Massachusetts. This number may not be completely accurate as HRD is not notified of
    all separations from employment.

22. To provide exam history and appointment data for every promotion to sergeant made
    over the last twenty years would result in the production of tens of thousands of
    documents, most of which would have to be redacted. Many of the documents are not
    available in electronic form.

23. Self-identification of race for the promotional exams is voluntary. As a result, typically a
    couple of dozen individuals choose not to self identify. In order to complete its analysis

    for the 2006 and 2007 exams, HRD employees had to research the race of those individuals who did not self-identify. It took HRD employees about five hours to complete this exercise for those two lists. It would take approximately 25 hours, and possibly longer (given the greater likelihood of separations from employment in the intervening years) to complete this exercise for the past ten years' worth of sergeant examinations.

24. Municipalities may enter into delegation agreements with HRD in regard to the promotional process. When this happens, after the exam's results are finalized, HRD issues the eligibility list to the municipality. HRD does not receive any information from a delegated community with respect to promotions those municipalities choose to make. Even with respect to communities with which HRD does not have a delegation agreement, it is the municipal appointing authorities, and not HRD staff, that make the actual decisions about which municipal police officers will be promoted.

25. Both Worcester and Methuen are delegated communities and HRD has no documentation in its possession with respect to the promotions those communities have made in recent years. Any effort to amass data regarding promotions of police officers over the past ten years from all of the delegated communities would represent an enormous undertaking, for which HRD is not equipped given its present staff size and broad responsibilities.

26. The security of the civil service exams and the integrity of the exam development process are critical to HRD. In the past, intruders have entered HRD's offices and exams have been stolen; as a result, it is imperative that the location and storage of the exams remain confidential. Additionally, the integrity of future examinations depends upon the details of forthcoming tests not being divulged to *anyone* outside of HRD's test development unit and HRD's hired consultants.

27. To my knowledge, there are no current HRD employees who have personal knowledge of the monitoring of the consent decree in <u>Afro-American Police, Inc. v. Boston Police Department,</u> 973 F. 2d. 18 (1st Cir 1992).

    I, Sally McNeely, declare under the penalties of perjury that the foregoing, to the best of my knowledge, is true and correct. Executed on this 29th day of January 2008.

*Sally A. McNeely*

Sally McNeely

4