# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| PEDRO LOPEZ; ABEL CANO; KEVIN SLEDGE; CHARLES DEJESUS; RICHARD BROOKS; ROBERT ALVAREZ, MARISOL NOBREGA; SPENCER TATUM; THE MASSACHUSETTS HISPANIC LAW ENFORCEMENT ASSOCIATION; INDIVIDUALLY AND ON BEHALF OF A CLASS OF INDIVIDUALS SIMILARLY SITUATED,<br>        Plaintiffs<br><br>v.<br><br>CITY OF LAWRENCE, MASSACHUSETTS; CITY OF METHUEN, MASSACHUSETTS; COMMONWEALTH OF MASSACHUSETTS; PAUL DIETL, IN HIS CAPACITY AS PERSONNEL ADMINISTRATOR FOR THE COMMONWEALTH OF MASSACHUSETTS, HUMAN RESOURCES DIVISION; JOHN MICHAEL SULLIVAN, IN HIS CAPACITY AS MAYOR OF THE CITY OF LAWRENCE, MASSACHUSETTS; WILLIAM MANZI, III, IN HIS CAPACITY AS MAYOR OF CITY OF METHUEN, MASSACHUSETTS; CITY OF LOWELL, MASSACHUSETTS; WILLIAM F. MARTIN, IN HIS CAPACITY AS MAYOR OF THE CITY OF LOWELL, MASSACHUSETTS; CITY OF WORCESTER, MASSACHUSETTS; and KONSTANTINA B. LUKES, IN HIS CAPACITY AS MAYOR OF THE CITY OF WORCESTER, MASSACHUSETTS,<br>        Defendants | Case No. 07-CA-11693-JLT |

_____

# PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
# TO PROPOSED DISCOVERY ORDERS

I.    <u>INTRODUCTION</u>.

In this straightforward action under Title VII of the Civil Rights Act of 1964, the plaintiffs challenge the recent statewide police sergeant's promotional examinations as (1) having a severe disparate impact upon minority test takers; and (2) not meeting the job-relatedness standards required by Title VII for such an examination.  The standard for deciding this case, as well as the data necessary to make this analysis is fully described in Judge Saris' recent comprehensive decision in <u>Bradley, et al. v. City of Lynn, et al.</u>, 443 F.Supp.2d 145 (D. Mass. 2006).  The plaintiffs' counsel in this case, who represented the class in <u>Bradley</u>, tailored narrow discovery requests, as requested by the court, so that they would have the data necessary to make the statistical calculations necessary for the disparate impact challenge to these examinations.[1]

Surprisingly, the Commonwealth has now filed a lengthy opposition to simple discovery requests which are necessary in order for plaintiffs to litigate this case properly.  Moreover, rather than contact plaintiffs' counsel and discuss with them specific objections, which in many cases could have been worked out by agreement, instead, defendants filed a broad-based opposition raising issues which are not properly before the court at this time and which have no place in a discovery argument.  Still worse, though this case has been pending for many months, the Commonwealth has failed to provide any automatic discovery, not even providing the documents it does not contest, which would allow some statistical analysis to proceed.  The result has been that the plaintiffs continue to be thwarted in their attempt to get this case moving towards resolution by doing the statistical analysis which forms the basis for this type of

---

[1]    The plaintiffs are challenging the results of several examinations whose score results were posted in 2006, 2007, and early 2008, and from which hiring decisions are still being made.

Title VII challenge.  The court should not permit this continued delay and foot dragging by the Commonwealth.

Finally, as described below, some of the data which the Commonwealth is objecting to is remarkably identical to data which it failed to produce in the Bradley case, only to argue at trial that plaintiffs could not make out a statistical case of discrimination because those data sets were missing.  In an attempt to prevent this very argument in this case (which in the Bradley case caused much confusion at trial), the plaintiffs are requesting this data at an early stage, so as to avoid the last minute fights over data which occurred in the Bradley case.


II.     THE COURT SHOULD SANCTION THE COMMONWEALTH FOR (1) FAILING TO CONFER WITH COUNSEL OVER OBJECTIONS TO DATA PRODUCTION BEFORE FILING ITS OPPOSITION; AND (2) ITS FAILURE TO PROVIDE ANY AUTOMATIC DISCOVERY AT ALL.

As an initial matter, plaintiffs are aware that this court has a particularly strong policy that each party is required under the automatic discovery rules to provide all data in its possession which is relevant to this case.  This case has now been pending for more than six months and to date the plaintiffs have literally received only one piece of paper from the defendants relating to information relevant to this case and has received no automatic discovery.  Thus, plaintiffs have been unable to move forward with any statistical analysis or make any progress in analyzing the core issues in this case because they have received no automatic discovery other than one chart from the defendants.  Specifically, the plaintiffs have received no data on the validity of the sergeant's examination, they have received no data on prior examination scores, and they have received no data on selection rates.  All of this data is clearly relevant and

important as made clear by Judge Saris in the <u>Bradley</u> case.  See <u>Bradley, et al. v. City of Lynn, et al.</u>, 443 F.Supp.2d 145 (D. Mass. 2006) (decision attached hereto as Exhibit A, and see Commonwealth's post-trial brief in that case attached hereto as Exhibit B).

This is particularly troubling since plaintiffs' counsel signed a confidentiality order relating to these documents well over one month ago, the court requested at court conference that the Commonwealth turnover whatever data it had to which it was not objecting, and yet still nothing has been produced.  Clearly, the Commonwealth is not complying with this court's automatic discovery rules and the plaintiffs literally have nothing to work with.

Second, and just as importantly, when the parties had a conference before this court on January 3, 2008, they indicated that they would just need several weeks to provide the information being requested by the plaintiffs.  The court requested plaintiffs' counsel to draft a proposed order on document discovery, show it to defendants' counsel, and get their response.  Instead, the Commonwealth filed a voluminous objection and the parties are no further along in discovery than when the case first started.  To make matters worse, counsel for the defendant Commonwealth never contacted plaintiffs' counsel as suggested by Local Rule 7.1 and sought to discuss its objections, attempt to narrow the areas of contention, or attempt to resolve any of the issues raised in its opposition.  For example, in its opposition, the Commonwealth raises certain technical problems, such as the identification of names or social security numbers that would be on some of the documents requested.  A simple conversation between counsel would have resulted in counsel for the plaintiffs agreeing to some sort of redaction system that would have alleviated this problem.

4

Similarly, the Commonwealth bases a lot of its objection on the person hours that would be necessary to retrieve some of this information and to properly collect it. Once again, had counsel for the Commonwealth simply conferred with plaintiffs' counsel, plaintiffs' counsel would have responded that it was willing to make some of its support staff available to the Commonwealth to assist in this retrieval process. Instead, the Commonwealth simply objected to providing the information, and has provided no data to date.

Essentially then, the Commonwealth has stonewalled the plaintiffs and made them unable to even begin work on the important statistical analysis which needs to be done in this case. This, in turn, runs the significant risk of delaying this case and any delays could easily cost the Commonwealth significantly more in compensatory relief than it would otherwise have been required to pay.

III.     THE DEFENDANT'S GENERAL OBJECTIONS TO THE PROPOSED
         DISCOVERY ORDERS ARE ENTIRELY MISPLACED AND UNAVAILING.

On pages two to five of their opposition, in a section called "General Objections to the Proposed Discovery Orders," the Commonwealth surprisingly attempts to litigate the merits of this case even though it is entirely premature. It erroneously contends that there is only one African-American sergeant candidate in the class action and that he is not qualified to be a sergeant. This is neither the appropriate forum nor time to be arguing these questions, and if the Commonwealth had a valid argument, it should file a motion to dismiss. However, the fact is, as the Commonwealth well knows, that the complaint has now been amended to add Spencer Tatum, a longtime Black police officer for the City of Worcester, along with another Black plaintiff, Kevin Sledge, and

together they adequately represent a class of Black police officers who have been adversely affected by the sergeant's examination.  Indeed, plaintiffs do not wish to get into legal arguments with the Commonwealth (on a discovery motion) about the merits of this case, however, the information secured by plaintiffs so far demonstrates that the Commonwealth has a huge problem with its police sergeant's promotional exam in the Commonwealth of Massachusetts for civil service communities.

For example, a recent article in the Boston Globe entitled "Few Minority Police Supervisors" (Exhibit C attached hereto) demonstrates that in Massachusetts' largest cities, the percentage of minority (Black and Hispanic) police supervisors (sergeants and lieutenants) is significantly below the percentage of minority police officers in those cities and towns.  For example, in Worcester, one of the cities now brought into this case, the entry-level police force is 85% Caucasian and 15% minority; however, there are only three police superior officers in the whole city who are minority, only 3% of all police superior officers.  (See Boston Globe article attached hereto as Exhibit C.)  In Lowell, another city which has been sued in this case, 18% of the entry-level police force is minority, but only 2% of superior officers are minority.  In Brockton, a city which is 42% minority, and which has 36% minority police officers, there are shockingly no minority police superior officers.  There are many other examples.  (See Boston Globe article attached hereto as Exhibit C.)  Since the only way to become a superior officer in these civil service cities is to take and score well on the civil service examination for sergeant, there is compelling evidence of the discriminatory impact of the sergeant's exam even without complex number crunching.

More shockingly, and again without getting into an argument with the
Commonwealth about the merits of this case at this early discovery stage (where such
an argument is inappropriate), the Commonwealth cites to figures in its opposition which
it well knows to be irrelevant to the EEO analysis required in this case.  The
Commonwealth contends that at the pass/fail level for the sergeant's examination, while
there is clearly a disparate impact for Black candidates, there is only a slight disparate
impact for Hispanic candidates.  See Commonwealth's brief at page three.  Although
that evidence is not currently before this court, the Commonwealth is eluding to the fact
that Hispanic sergeant candidates "pass" the exam at rates close to their Caucasian
counterparts.  However, as the Commonwealth well knows, since this was a central
finding by Judge Saris in Bradley, passing rates are but one small piece of evidence.  In
order to have a real chance of getting promoted to the position of sergeant in a large
city or town, one must have a score in the 80s or 90s, not one just above the passing
rate of 70.  See Bradley, supra, at page 163.  Indeed, as Judge Saris found in the
Bradley case, where the failure rate for Blacks and Hispanics was the same as for non-
minorities.  The real issue is whether the exam, when used as a rank order device (as it
is here), results in a selection rate for minority officers which is materially less than non-
minorities.  See Bradley, supra, at pp. 159-160.  As Bradley makes clear, and as
plaintiffs will prove at trial, even if minorities pass the sergeant's exam in numbers
approaching non-minorities, if one looks at their scores at the level actually needed to
be promoted (i.e. a score of 85 or better), the adverse impact is pronounced, just as it is
for the entry-level exam.  See Bradley, supra, at pp. 163-164.  The affidavit of plaintiffs'
expert witness, Joel Wiesen, (attached hereto as Exhibit D) confirms that selection rates

are the appropriate data set from which a proper EEO analysis must be made, and the Commonwealth has not even suggested in its opposition filed here that the selection rates for police sergeant do not have a disparate impact.  (See Affidavit of Joel P. Wiesen attached hereto as Exhibit D, ¶¶ 4, 5 and 6.)  Thus, the Commonwealth is well aware that it is disparate impact in selection rates, data which the Commonwealth has not yet provided, not pass/fail rates, which constitute the critical evidence that has to be evaluated.  Thus, the Commonwealth's arguments are nonsensical.

Finally, plaintiffs note that in their objections, on page four, the Commonwealth states that "HRD will construe its initial disclosure obligations broadly and disclose, without the need for any discovery order, all relevant information regarding the two most recent … state-wide sergeant promotional examination."  Yet, still, no information has been provided.


IV.    THE LAW IS CLEAR THAT AGGREGATING EXAM DATA OVER A SERIES OF EXAMS, SPANNING A REASONABLE PERIOD OF TIME, IS ESSENTIAL TO MAKING A DISPARATE IMPACT ANALYSIS.

The Commonwealth strenuously objects to providing score and sergeant's hiring data back any further than 2006.  However, in any disparate impact case such as this, defendants will inevitably argue, as the Commonwealth argued in <u>Bradley</u>, that because of the small numbers of selections in any particular town or city in the Commonwealth, the plaintiffs cannot make out a case of disparate impact with respect to the sergeant's examination.  In order to cure this problem, courts have consistently held that it is appropriate to aggregate examination data over a course of time or in different locations in order to make the appropriate statistical analysis.  See <u>Bradley</u>, <u>supra</u>, at p. 161 ("on

the other hand, if a lower selection rate continued over a period of time so as to constitute a pattern, then the lower selection rate would constitute adverse impact, warranting the need for validity evidence"). The court further held it significant that "since 1986, when Lynn was released from the Beecher Decree, it is estimated that only four of the 106 entry-level fire fighters have been minorities." Id. at 166. Thus, the court held that historical data was relevant. In response to the Commonwealth's argument that there should be no aggregation of data, Judge Saris rejected this argument, holding that aggregation of data "across municipalities and across years" is appropriate where state-administered examinations were over a span of years. Id. at 167.

Moreover, Dr. Wiesen, in his Affidavit attached hereto, specifically states that it is critical that selection data be obtained over a number of years in order to make a "meaningful and powerful statistical adverse impact analysis." (See Exhibit D at ¶ 6.) Thus, courts have specifically held that when faced with a possible argument, which the Commonwealth will undoubtedly make here, that the numbers are not sufficiently large to make a meaningful statistical analysis, it is appropriate to aggregate test results "across different tests." See Vulcan Pioneers v. New Jersey Department of Civil Service, 625 F.Supp. 527 (D. N.J. 1985), aff'd 832 F.2d 811 (3rd Cir. 1987).[2] Thus, it is critical in this case that examination data be had over a number of years and that selection data be had over a number of years, so as to allow the plaintiffs to make a meaningful statistical analysis. Since it is clear in this case that the Commonwealth will

---

[2]        Indeed, the court in Vulcan Pioneers stated:

The cases, as well as the [EEOC] regulations . . . indicate that problems of statistically insignificant samples may be overcome by aggregating test results over several administrations of a single examination . . . based upon the type of examination used.

(Cites omitted.) 625 F.Supp. at 544.

reserve the right to make all statistical challenges possible, including one that the statistics for only one or two exams are not statistically meaningful, this court cannot cut the legs off of plaintiffs' case by denying access to the very statistical information that is necessary to make out a proper case.

V.    THE COMMONWEALTH'S OTHER SPECIFIC OBJECTIONS TO THE DISCOVERY ORDER ARE EASILY RESOLVED BY APPROPRIATE AGREEMENT AND, IN ANY EVENT, ARE WITHOUT MERIT.

On pages five and six of their brief, the Commonwealth objects on confidentiality grounds to providing the names of the individuals who have been selected for sergeant promotion in various towns and cities.  This is a rather absurd objection since the names of all police sergeants is public information.  Indeed, one could go to any Massachusetts municipality website and secure that information.  Moreover, it is easy to identify whether or not the individual involved is a minority or non-minority, since when they originally applied for appointment to the police department, the Commonwealth of Massachusetts was required to keep this data in their files and that data was supplied in the Bradley case where all of the data sets provided by the Commonwealth contained the race or ethnicity of the applicant.  At worst, the Commonwealth simply has to cross check the applicant's name with the original hiring information it has for such individual to determine their minority status.  Moreover, if this is too burdensome for the Commonwealth to do, the plaintiffs are more than willing, upon being given access to the appropriate data, to obtain this information by cross checking the sergeant's promotional certifications with the original certification data which the candidate had to provide when applying for the position of police officer.

The Commonwealth's objection to the selection data requested by the plaintiffs in item number 11 is also baseless. Simply, the plaintiffs have requested data for a reasonable period of time demonstrating which sergeants have been selected for promotion in which towns and cities. This information is critical based upon the arguments that the Commonwealth made in the Bradley case that one has to look at the selection data. Moreover, this data is readily available, in that whenever sergeants are selected by a municipality, the municipality is required to send in a certification to the Commonwealth listing the sergeants that have been promoted. The Commonwealth concedes that this certification data are in its files, but simply claims that it is too burdensome to collect. Once again, plaintiffs are willing to supply some support staff, working with the Commonwealth, to secure this data from the files. It is not a burdensome problem since, presumably, as the Commonwealth itself suggests, there are only 1 to 200 sergeants promoted statewide in civil service police departments each year. Thus, if one went back ten years, and assuming in many instances, several sergeants were promoted at the same time, the number of documents needed is simply several hundred pages of sergeant certification data.

With respect to the individuals who took the sergeant's promotional examination, but were not hired, every time an examination is given, a list is generated in each town or city which contains the names of all people who took the test and their exam score. This is all the plaintiffs are seeking in this regard, and these documents are readily available to the Commonwealth and are quite simple to extract. As stated above, if there is then concern regarding whether or not the individual on the list is minority or non-minority, this information can easily be cross checked with original hiring lists where

the information is stored.  Indeed, the Commonwealth's own argument on this point is belied by the fact that it contends that it has been able to make a disparate impact analysis at the pass/fail level for the last examination.  If it has been able to make this analysis with respect to the data from 2007, then presumably it could and can easily make the same analysis with respect to data from prior years.

## CONCLUSION

For the reasons stated herein, the court should enter the proposed discovery order as proposed by the plaintiffs.  There should be cooperation between the parties in allowing the court to get at the truth as to whether or not the police sergeant's promotional examination is discriminatory.  Simply delaying the production of data and trying to prevent plaintiffs from securing necessary data that allows them to make their basic case, impairs the ability of the courts to get at the truth of this most important case.  The objections should be denied.

Respectfully submitted,

PEDRO LOPEZ, ABEL CANO,
KEVIN SLEDGE, CHARLES DEJESUS,
RICHARD BROOKS, ROBERT ALVAREZ,
MARISOL NOBREGA, SPENCER TATUM,
THE MASSACHUSETTS HISPANIC LAW
ENFORCEMENT ASSOCIATION,
INDIVIDUALLY AND ON BEHALF OF A
CLASS OF INDIVIDUALS SIMILARLY
SITUATED,

By their attorneys,

Dated:  February 14, 2008            s/Harold  L. Lichten_____
                                     Harold L. Lichten, BBO #549689
                                     Shannon Liss-Riordan, BBO #640716
                                     Leah M. Barrault, BBO # 661626
                                     Pyle, Rome, Lichten, Ehrenberg
                                          & Liss-Riordan, P.C.
                                     18 Tremont St., Ste. 500
                                     Boston, MA 02108
                                     (617) 367-7200

CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing document was served upon the Court and counsel of record for defendants via the Court's ECF filing system, on February 14, 2008.

                                     s/Harold L. Lichten_____
                                     Harold L. Lichten