### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

_____

PEDRO LOPEZ, et al.,              )
         Plaintiffs           )
                       )
v.                        )
                       )  **Case No. 07-CA-11693-JLT**
CITY OF LAWRENCE, et al.,    )
         Defendants     )
_____)

### REPLY MEMORANDUM TO STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I.    <u>INTRODUCTION</u>.

      The State Defendants have filed an Opposition to Plaintiffs' Motion for Class Certification.[1]  The Commonwealth makes four basic arguments:  (1) that the class should not be comprised of individuals who will take "future examinations," a contention which, as set forth below, the Plaintiffs agree and do not pursue here; (2) that the named plaintiffs do not have standing to represent the interests of all of the class members, particularly those who took the 2007 examination and those from other municipalities; (3) that Hispanic and Black officers cannot be grouped into one class, notwithstanding that this is the way it has been historically done in Massachusetts, both in the <u>Bradley</u> case and <u>Beecher</u> cases; and (4) that the class as redefined and narrowed by the Commonwealth's argument does not meet numerosity requirements,

_____

[1]     In the Opposition, the Commonwealth has raised objections which Plaintiffs did not anticipate.  In addition, the State has not opposed class certification on other grounds permitted by Rule 23.  For example, the Commonwealth does not oppose certification based upon the "adequacy of representation," nor that the action could properly be certified under "Rule 23(b)(2)" of the Federal Rules of Civil Procedure.

when it is limited to only Hispanic and Black police officers in the several cities specifically named in the Complaint.  However, as made clear by other cases in this district, because the challenge here is to state-wide civil service promotional examinations for police sergeant, devised and administered by the state, the Commonwealth's attempt to limit the class to specific cities is not only unsupported by law, but would permit the bizarre result that the examinations are declared unlawful and discriminatory in some communities, but are permitted in others despite the finding of unlawfulness.  Moreover, as made clear later in this brief, the complaint is being amended to name for four Boston police officers who took the exam from which Boston sergeant's promotions are currently being made – and in Boston alone, at least 80 minorities took this exam and were not promoted.  Thus, for this reason alone numerosity is established.


II.     THIS CASE, WHICH CHALLENGES THE LAST SEVERAL STATE-WIDE
        POLICE SERGEANT'S PROMOTION EXAMINATIONS AS DISCRIMINATORY
        UNDER TITLE VII, IS PARTICULARLY APPROPRIATE FOR CLASS ACTION
        TREATMENT BECAUSE IT INVOLVES THE SAME QUESTION OF LAW AND
        FACT IN A MANNER APPLICABLE TO EACH MEMBER OF THE CLASS.

        In General Telephone Company of Southwest v. Falcon, 457 U.S. 147 (1982), the Supreme Court held that class relief is "peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class," and that "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23."  Id. at 155.  The Supreme Court emphasized, as it has in other cases, "that

suits alleging racial or ethnic discrimination are often by their very nature class suits, involving class-wide wrongs, and that common questions of law or fact are typically present." Id. at 157, citing East Texas Motor Freight System v. Rodriguez, 431 U.S. 395, 403 (1979).

The present case is one quintessentially made for Rule 23. Indeed, almost every challenge that a written promotional examination has a disparate impact on minority public safety officers has been challenged through the class action device. See, for example, Massachusetts Association of Afro-American Police v. Boston Police Department, 973 F.2d 18 (1st Cir. 1992) (challenging the police sergeant's promotional exam); Vulcan Pioneers v. New Jersey Department of Civil Service, 625 F.Supp. 527 (D. N.J. 1985) (challenging the New Jersey state civil service exam for fire captain/lieutenant); Countie v. City of Houston, 48 Fed.Appx. 103, 2002 W.L. 31016570 (5th Cir. 2002) (challenging the City of Houston's police sergeant exam); Waisome v. Port Authority of New York, 948 F.2d 1370 (2nd Cir. 1991) (challenging police sergeants exam for New York Port Authority); Wilmington Fire Fighters, Local 1590 v. City of Wilmington, 632 F.Supp. 1177 (D. Del. 1986) (1984 Wilmington Fire Department promotional exams).[2]

Indeed, there are already eight named Plaintiffs in this case and four more police officers who have taken the 2005/2006 sergeants promotional exam and who are police officers for the City of Boston are currently being added as named Plaintiffs.[3] If the

---

[2]    In addition, a number of other cases where a court, hearing challenge to a city's promotional exam, granted class certification are cited in Plaintiffs' initial Motion for Class Certification at page five.

[3]    The Plaintiffs are moving herewith to add four Boston police officers who took the sergeant's exam given by the Commonwealth and which resulted in a list established in February of 2006. That list is still being used to make sergeant promotions in the City of Boston. More than 380 Boston police officers took that exam, of which at least 80 were minorities (Black or Hispanic). See pp. 17 to 18, infra. See also Motion to Amend Complaint filed this date.

Court were to deny class certification, Plaintiffs' counsel would have to file numerous other lawsuits challenging the same police sergeant examinations or add in what could be hundreds of other Plaintiffs, making this action unwieldy.

Through the recent discovery they have received, and through other investigation, the Plaintiffs have determined that the Commonwealth's police sergeants examinations being challenged are all 100 question pen and pencil tests whose questions are taken verbatim out of several law enforcement textbooks. The tests are based upon the same identical format, were given in various civil service communities throughout Massachusetts in late 2005 (with the scores coming out in early 2006), in late 2006 (with the scores being certified in 2007), and late 2007 (with the scores being certified in early 2008). Collectively, these three exams cover most or all major cities within the Commonwealth of Massachusetts. Over 350 police officers took the exam in Boston alone, out of which at least 74 are either Black or Hispanic. (See discussion at pp. 17-18.) The exams thus all consist of the same test format and are based upon the same test construction analysis, which the State Defendants have been using for at least the last 15 years. Indeed, the only thing different about the exams are the actual questions, although they are all taken from the same basic textbooks.

Further, although HRD has, to date, refused to provide data from the exam certified in early 2006, and the one certified in early 2008, it is readily apparent that there are hundreds of Black and Hispanic police officers who have taken a recent police sergeant's examination which has resulted in a rank order list that is still in effect and from which promotions are still being made within the Commonwealth. (See Section IV Infra.)

Further, and most importantly, the claims that the named and class Plaintiffs are making for each of these three examinations are the same:  that this written question, multiple choice exam – taking questions and answers from textbooks – with 100 as the highest score possible, and 70 set as the pass rate, has a significant disparate impact in the selection of minority police officers for the position of sergeant while  at the same time not being job-related in accordance with EEOC guidelines and requirements.  See generally Bradley, et al. v. City of Lynn, et al., 443 F.Supp.2d 145 (D. Mass. 2006) (challenging on the same basis the entry-level fire fighter examination in the Commonwealth of Massachusetts).  Further, as discussed more fully below, there is no difference between the claim of Hispanics and the claim of Blacks, in that both minorities challenge the exam as having disparate impact and lacking in job-relatedness.  With this as background, Plaintiffs will proceed to address each of the objections raised by the Commonwealth to class certification.

III.    THE PLAINTIFFS DO NOT AT THIS TIME REQUEST THIS COURT TO CERTIFY FUTURE SERGEANT'S EXAM TEST TAKERS AS CLASS MEMBERS IN THIS ACTION.

Although it is true that Plaintiffs initially requested future test takers to be included as part of the class in this case, the Commonwealth has asserted in its Opposition that as a result of this lawsuit, it has already decided to construct a new type of sergeants examination.  It asserts that it has hired a recognized expert, Dr. Rick Jacobs (who testified in the Bradley case for the Commonwealth) and that the exam will not follow the format utilized in previous years.[4]

---

[4]    See Commonwealth's Opposition to Class Certification.  Significantly, the law is that if the sergeant's exam had a disparate impact on minorities, and even if it is found to be job-related, it is still

While it remains to be seen whether or not this new exam will have a disparate impact on minority test takers, or whether it will meet Title VII requirements of job-relatedness, nevertheless Plaintiffs agree, given this significant turnaround, that it is not necessary nor appropriate for the Court to certify as part of the current class, future sergeant's exam test takers. However, Plaintiffs would note that the Commonwealth's argument with respect to the exam it intends to give in the fall of 2008 supports and, indeed, demonstrate why Plaintiffs' assertion here – that class certification should be determined based upon the last three sergeant's examinations whose rank ordered lists remain in effect – is correct. By conceding that they are now changing the format of the exam and hiring an expert to redesign it, the State Defendants, in effect, concede that it is appropriate to certify a class based upon takers of the last three examinations.

IV.    THE COMMONWEALTH'S ARGUMENT THAT PLAINTIFFS DO NOT HAVE STANDING TO REPRESENT 2007 TEST TAKERS IS WRONG SINCE THE QUESTION OF STANDING IS DECIDED AFTER, NOT BEFORE, CLASS CERTIFICATION.

Although standing is often a threshold inquiry, Supreme Court precedent directs that class certification issues be decided before those of standing, at least in the circumstances provided here. See In re: Relafen, 221 FRD 260, 278 (D. Ma. 2004); see also Payton v. County of Kane, 308 F.3d 673, 680, 682 (7th Cir. 2002); James v. City of Dallas, 254 F.3d 551, 562 (5th Cir. 2001); see also Mowbray v. Waste Management Holdings, 189 FRD 194, 2002 (D. Mass. 1999), aff'd 208 F.3d 288, 299 (1st Cir. 2000).

Judge Young confronted this question head on in In re: Relafen, supra. There, he held, based upon the Supreme Court's decision in Ortiz v. Fiber Board Corp., 527

---

illegal if the Commonwealth had less discriminatory alternatives to the exam that it did not use. Bradley, supra. By admitting it will now use a new, less discriminatory exam, HRD essentially concedes this point.

U.S. 815, 831 (1999), "that class certification is logically antecedent to Article III concerns, and therefore should be treated first."

Judge Young therefore held that where the standing issue would not exist but for the class certification question, it is appropriate to consider class certification issues before those of standing.  *Accord*, Clark v. McDonalds Corp., 213 FRD 198, 204-05 (D. N.J. 2003); see also In re: Pharmaceutical Industry Wholesale Price Litigation, 263 F.Supp.2d 172, 193-94 (D. Mass. 2003).  In the In re: Relafin litigation, the court was addressing the issue in the context of whether named plaintiffs from one state had standing to assert claims of class plaintiffs in other states under the state laws of those other states.  However, the doctrine has been applied in cases akin to this one, including discrimination cases.  See James v. City of Dallas, supra.  Indeed, as the Fifth Circuit has just explained within the last several weeks, "this doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purpose of Article III justiciability concerns."  Audler v. CBC Innovis, Inc., _____ F.3d ____, 2008 WL 509323 (5th Cir. 2008).  Moreover, in Payton v. County of Kane, supra, the Seventh Circuit held that the named plaintiffs could represent a class that included people suing other counties because it was appropriate for the court to consider class certification prior to deciding standing.  County of Kane involved a challenge by inmates at certain county correctional facilities to certain bail requirements in those counties.  Again, the Seventh Circuit relied on the Supreme Court's decision in Ortiz v. Fiber Board Corp., supra, in reaching its conclusion.

Thus, as described above, the Commonwealth is simply incorrect in requesting this Court to decide standing based upon the named Plaintiffs instead of the class.

Nevertheless, even if this were proper, the Commonwealth is wrong to suggest that the named Plaintiffs here do not have standing to contest the police sergeant's examination given recently at the end of 2007.[5]  Indeed, the history of Title VII litigation over entry-level and promotional exams for police and fire reflects that this has never been the rule.  For example, in Smith v. City of Joliet, 1995 WL 68749 (N.D. Ill.), a single named plaintiff brought a class action challenging the system for hiring fire fighters in Joliet, Illinois, and claiming that the system had a disparate impact upon minorities.  The plaintiff sought to represent a class of African-American applicants for the fire department "from 1985 through 1992."  The court held in response to the defendant's claim that the plaintiff was not a representative plaintiff because his claims were not typical and common of the claims of class members who applied in other years, that the named plaintiff's claims must:

> …have the same essential characteristics as the claims of the class at large, and arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory.

Id. At 5.  (Emphasis supplied.)  The court went on to note that even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members, as long as there was a "common nucleus of operative facts," this was enough to satisfy the commonality requirement of Rule 23(a)(2).  "Some factual variation among the claims of the requested class members does not destroy commonality."  Id.

---

[5]    As described earlier, there are currently two HRD police sergeant's exams which have resulted in certified ranked lists which are currently being used to promote.  Some communities are still using the exam given in late 2005 but not certified until February of 2006.  Others, such as Lowell and Lawrence, are using the exam given in the fall of 2006 but not certified until early 2007.  With the addition of new named plaintiffs from Boston, both those exams have representative named Plaintiffs.  The fall 2007 exam has not yet resulted in the establishment of ranked lists – and there will likely be a named Plaintiff who took that exam, even though that is not lawfully necessary.

Further, the court noted that each class member need not suffer the same injury as the class representative to satisfy these requirements.  (Cites omitted.)  Instead:

> The court has focused on the conduct of the defendant and the legal theory of the plaintiffs. . . .  A named plaintiff who has allegedly suffered from the defendant's racial discrimination may bring an across-the-board class action to represent all persons who have suffered from the same discriminatory policies whether or not all have experienced discrimination in the same way.

City of Joliet, 1995 WL 68749 at 5-6, citing Phillips v. Joint Legislative Committee on Performance, 637 F.2d 1014, 1024 (5th Cir. 1981).  For this reason, the court held:

> In addition, all of the proposed class members applied for the fire fighter's position during the relevant time period [1985-1992] and were subjected to the same tests and procedures.  Since 1985, every two years defendant City has accepted applications for the entry-level position, and has used the same test and procedures during the hiring process.  Therefore, this court holds that the named plaintiff's claim is typical of the claims of the class.  Defendant city has also argued that plaintiff has failed the commonality requirement of Rule 23. . . .  While it is true in this case that there are some factual variations among the claims of the requested class members, that variation does not destroy commonality. . . .  The factual and legal questions surrounding whether defendant city has violated Title VII with respect to the hiring of fire fighters are essential to the claims of all requested class members . . . therefore this court finds there are questions of law and fact sufficiently common to all rejected applications to satisfy the requirement of Rule 23(a)(2).

Id. At 6.

Further, Plaintiffs would note that in Bradley, et al. v. City of Lynn, et al., supra, the court certified a class of "all minorities (Black and Hispanic) who took the civil service examination for the position of fire fighter within the Commonwealth of Massachusetts in the years 2002 and 2004."  Id. at 148.  Moreover, in Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972), the now famous case challenging police hiring practices in the Commonwealth, the Court of Appeals reversed a refusal of the District

Court to certify "a class of Black and Spanish surnamed applicants who took and failed the 1968 to 1970 police entrance examinations." Id. at 732.  The court made clear that an appropriate class was one involving minority candidates who took examinations either in 1968, 1969 or 1970, and therefore the court implicitly rejected the concept that the case could only proceed regarding one test.

Further, as pointed out in a prior brief filed by Plaintiffs in this case, "Plaintiffs' Reply to Defendants' Opposition to Proposed Discovery Orders," it is quite common and, indeed, recognized by the EEOC regulations that it is appropriate to aggregate data across several administrations of the same type of examination to determine whether there has been discrimination.  See Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service, 625 F.Supp. 527 (D. N.J. 1985) aff'd 832 F.2d 811 (3rd Cir. 1987):

> The cases, as well as the regulations . . . indicate that problems of statistically insignificant samples may be overcome by aggregating test results over several administrations of a single examination.  See e.g. Chicano Police Officer Association v. Stover, 526 F.2d 431, 438-49 (10th Cir. 1975) . . . or even upon the type of examination used.  See e.g. Boston Chapter NAACP v. Beecher, 504 F.2d 1017, 1021 (1st Cir. 1974) (1975).

Indeed, in her decision in Bradley, Judge Saris also clearly held that it is appropriate to aggregate data across similar examinations.  Id. at 167.  Thus, ultimately, the court in Vulcan Pioneers decided to aggregate data from different examinations, even though the differences were more pronounced than that involved here.[6]

---

[6]     It is enough that there is overwhelming evidence at this stage to indicate that the exams were fundamentally the same, utilizing the same format, the same scoring methodology, based upon the same texts and knowledge skills and abilities.  The Plaintiffs are quite confident that they will prove at trial that the exams are sufficiently similar under the cases cited above to justify aggregation, should this be necessary.  In any event, for the purposes of determining whether typicality and commonality are met, the Commonwealth has made no showing that would justify the court denying class certification for 2007 exam takers based upon differences in examinations.

Obviously, if courts have routinely found, as did Judge Saris, that fire and police examinations are sufficiently similar to allow disparate impact to be determined based upon aggregation of exams over time, then clearly the named Plaintiffs who took one exam have sufficient identity of interest with police officers who took an exam just a year later, but under the same format, to allow a determination that such named Plaintiffs present claims which are both typical and common to the class.

V.    THE DEFENDANTS' ARGUMENT THAT THE NAMED PLAINTIFFS MUST BE IN THE SAME MUNICIPALITY AS THE CLASS PLAINTIFFS IS SIMPLY WRONG AS A MATTER OF LAW.

In its opposition to class certification, the Commonwealth makes a further argument that the named Plaintiffs cannot fairly and adequately represent the interests of individuals who are employed by municipalities other than the named municipal defendants.  This argument is completely undercut, both by Judge Saris' decision in Bradley, et al. v. City of Lynn, et al., and by the many court decisions arising out of Boston Chapter NAACP v. Beecher, 371 F.Supp. 507 (1973); aff'd 504 F.2d 1017 (1974).  See also Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972).  In the landmark series of "Beecher" cases cited above, both the District Courts and the First Circuit clearly affirmed the principle that where the exam for entry-level police officers and fire fighters was the same statewide (in civil service communities), it was entirely appropriate to allow the action to proceed as a class action, even though there was not a named plaintiff for each community.  Further, more recently, in Bradley, et al. v. City of Lynn, et al., supra, Judge Saris permitted a class action challenge to the entire statewide entry-level fire fighter exam, even though the only named plaintiffs were from

Lynn, Massachusetts, and were on the Lynn fire fighters list and no others.  Moreover, in reaching her conclusion, Judge Saris held specifically that aggregating test data from one municipality to another was appropriate given that the federal EEOC regulations authorize such aggregation, and where the exam was the same one.

> …Given the statutory framework mandating HRD's involvement in the hiring process across municipalities, the aggregation approach is supported in this case by the EEOC guidelines and the case law.  29 CFR § 1607.4(D), Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service, …

Bradley, 443 F.Supp.2d at 166.

Indeed, as Judge Saris correctly notes, in Vulcan Pioneers, Inc., the court specifically approved of aggregation of the same tests over several communities (in that case it was 12 different New Jersey civil service communities). Vulcan Pioneers, Inc., 625 F.Supp. at 544 citing Chicano Police Officer Association v. Stover, 526 F.2d 431, 438-49 and n. 6, 8 (10th Cir. 1975), remanded, 426 U.S. 944 [96 S.Ct. 3161, 49 L.Ed.2d 1181] (1976); Kirkland v. New York State Department of Correctional Services, 520 F.2d 420, 425 (2d Cir.1975), Ezell v. Mobile Housing Board, 709 F.2d 1376, 1382 (11th Cir.1983), Boston Chapter N.A.A.C.P. v. Beecher, 504 F.2d 1017, 1021 (1st Cir.1974), cert. denied, 421 U.S. 910, [95 S.Ct. 1561, 43 L.Ed.2d 775] (1975).

In the present case, it is undeniable that the same promotional exam is given each year in each civil service community where such exam has been requested.  The exams are identical and the ranking of candidates once those exams have been received (based upon rank order) is also identical under the civil service law, M.G.L. ch. 31.  The use of promotional exams by the communities is no different than for entry-level hiring; in each case the exam is given by HRD which generates a rank ordered list,

and hiring must be made off that list, starting at the top.  Plaintiffs therefore meet both the commonality and typicality requirements of Rule 23(a).

In addition, Plaintiffs would note again that the arguments being made by the Commonwealth regarding the named Plaintiffs from one municipality being able to assert claims on behalf of minority police officers who have taken the same exam in another community, were essentially considered and rejected by Judge Saris in the Bradley case.  It must be remembered that the goal of this litigation is to have the court consider and declare that the recent police promotional sergeant's examinations given in civil service communities by the Defendant throughout the Commonwealth were in violation of Title VII because (1) they have a severe disparate impact on minority applicants and (2) they cannot be shown to be job related.  The interests of one minority police officer who is a named Plaintiff in one community is therefore identical to the interest of minority officers in another community; they all seek to have the exam declared invalid and for appropriate relief to be framed.  Thus, on the question of liability, there will be no difference between the claims of the named Plaintiffs and class members.  With respect to remedy, there is no reason why the interests of the class as a whole will not be well represented by the named Plaintiffs.[7]  Moreover, for Title VII purposes, Judge Saris also held that the Commonwealth, by controlling so many aspects of the employment relationship, is an employer for Title VII purposes and, therefore, is liable for damages under Title VII.  See Bradley, et al. v. City of Lynn, et al.,

---

[7]    While it is true that even if someone were at the top of the list and being considered for promotion, they can be bypassed for misconduct, or other just and sufficient reason, the same type of bypass occurs frequently and was recognized by Judge Saris to occur in Bradley, et al. v. City of Lynn, et al.  There is no difference in that regard between entry-level hiring and promotional hiring under the civil service law, yet that was not considered grounds in either the Beecher case or in Bradley to preclude class certification statewide, even though the named plaintiffs were only from certain communities.

443 F.Supp.2d 145, 150, FN2.  Thus, class certification must not be denied because each civil service town or city does not have a named plaintiff.

VI.     THE COMMONWEALTH'S ARGUMENT THAT BLACK AND HISPANIC OFFICERS CANNOT COMPRISE ONE CLASS IS SIMPLY WRONG AS A MATTER OF LAW AND HISTORICAL PRECEDENT.

The Commonwealth goes on to argue that Black and Hispanic police officers who have taken the sergeant's examination but not been promoted cannot be grouped into one class.  First, even if this were so, the Court would have the ability to create sub-classes and this would cure any problem.  However, this is clearly not the law and is unsupported by the facts known at this point.

First, in the Beecher litigation it is undisputed that the class certified in both cases (the police and fire cases, see Boston Chapter NAACP v. Beecher, 371 F.Supp at 510 (fire fighters) and Castro v. Beecher, 459 F.2d at 728 (police officers)), was "Black and Spanish surnamed candidates."    Indeed, the Beecher Decree, which has lasted over 25 years (see discussion in Quinn, et al. v. City of Boston, 325 F.3d 18 (2003)), has always been analyzed collectively based upon data which aggregated Black and Hispanic police officers and fire fighters.

Moreover, numerous cases have defined the class in promotional examination challenges as "Black and Hispanic candidates."  See Vulcan Pioneers v. New Jersey Department of Civil Service, supra, at p. 531; Countie v. City of Houston, supra (district court certified a class that included African-Americans and Hispanic Americans who took the sergeant exam from 1982 onward); see Local 93, International Association of Fire Fighters v. City of Cleveland, 478 U.S. 501 (1986) (affirming consent decree based

upon class of Black and Hispanic fire fighters who challenged promotional examination procedures); Adams v. City of Chicago, 469 F.3d 609 (7th Cir. 2006) (challenge to Chicago police sergeant's examination by Black and Hispanic officers); Edwards v. City of Houston, 37 F.3d 1097 (5th Cir. 1994) (affirming consent decree between City and class of Black and Hispanic police officers); Kirkland v. New York State Department of Corrections, 711 F.2d 1117 (2nd Cir. 1983) (approving consent decree based upon class of Black and Hispanic corrections officers who took corrections promotional examination position of correction lieutenant).  Thus, it is indeed ironic that the Commonwealth, after more than 30 years of seeing classes of Black and Hispanic candidates certified in Castro v. Beecher, NAACP v. Beecher, and Bradley v. City of Lynn, would now contest this grouping of Black and Hispanic officers together for class certification purposes.

In order to support this argument, the Commonwealth makes the specious argument that because on the sergeant's exam, the failure rate of Hispanic officers is significantly less than that of Black officers, the interests of such minority officers may differ and, therefore, class certification is not appropriate.  Once again, as previously briefed in "Plaintiffs' Reply to Defendants' Opposition to Proposed Discovery Orders," the passing or failure rate is barely relevant to the challenge at issue here.  The issue is not the failure rates from the examination, it is how the examination, used as a rank ordering device, causes selection rates for minority and non-minority candidates that significantly disadvantages minorities.  (See *Boston Globe* article entitled "Few Minority Police Supervisors" attached hereto as Exhibit A.)  As Judge Saris correctly found in Bradley, for entry-level hiring, in order to have a real chance of getting promoted to the position of sergeant in a Massachusetts city or town, one must not just have a passing

score, but must have a score significantly above passing – in most instances, well above 80.  See Bradley, supra, at p. 163.  Indeed, whereas Judge Saris found in the Bradley case that the failure rate for Blacks and Hispanics was the same as for non-minorities, the real issue is whether the exam, when used as a rank order device (as it is here) results in a selection rate for minority officers which is materially less than non-minorities.  See Bradley, supra, at pp. 159-160.

The evidence amassed so far, even without the proper discovery that Plaintiffs need, demonstrates that minorities, both Blacks and Hispanics, are hugely underrepresented in the police sergeant ranks in almost all large cities and towns.  For example, the Commonwealth has supplied information based on the 2006 exam which demonstrates that based upon the 2006 examination, zero Blacks and zero Hispanics have been promoted to the position of police sergeant throughout the Commonwealth. (See Exhibits A and B attached hereto.)

Moreover, the reason for this can be seen in recent automatic discovery provided by the Commonwealth.  For example, in the City of Brockton, a police department with many minority citizens and many minority police officers, there are, shockingly, no minority police sergeants.  (See Boston Globe article attached as Exhibit C)  Based on the 2006 promotional examination, white officers hold the top ten rankings on the sergeant's promotional list with test scores ranging from 90 down to 81. (Exhibit A) The first minority, a Black individual, holds a score of 80 and is at 10th place, and a Hispanic officer with a score of 79 is in 12th place.  Id.  Shockingly, at the bottom of the Brockton list, minorities (Blacks and Hispanics) are bunched from a score of 76 down to 68. While a majority of the minority test takers failed the examination, even the six who

passed, which includes Hispanics and Blacks, are bunched between a score of 71 and 80, making it unlikely that any such officer will ever be promoted to sergeant off of this list and, indeed, none have as yet been so promoted.  (See Exhibit A)

In Lowell, one of the communities named in this case, the first 21 highest scoring individuals on the exam, with scores from 89 to 81, are whites. Id. The highest scoring minority has an 81, with the next highest score being 76. Id. Again, most of the Black and Hispanic officers who took the exam are bunched at the bottom with scores of between 71 and 65.  Id. This, too, shows that while Hispanics may have a lesser failure rate than Blacks, the critical issue is whether Hispanics share with Blacks the sad distinction of not being selected from these promotional exams because they do not rank high enough on the rank ordered list to be considered. The same pattern repeats itself with respect to the Lawrence Police Department, also one of the named cities in this case.   The first six candidates on the Lawrence list are all white, having achieved scores of 88 to 81. Id.   The first non-white on the list has a score of 81 and the highest scoring Black has a score of 75.  Id.  Of the 24 highest ranked on the list by exam score, only three are minorities in a city which has a significantly high proportion of minorities in its population.  Id.  Once again, at the bottom of the list, starting at the score of 69, seven Black and Hispanic officers are at the bottom of the list, bunched together in a position where they will never be reached. Id.

In addition, Plaintiffs' counsel has secured the current 2006 police sergeant list for the position of police sergeant for the Boston Police Department based upon the HRD exam given in late 2005.  (See Affidavit of Harold Lichten attached hereto; Exhibit D, annexed hereto).  Through careful painstaking effort, Plaintiffs have determined that

there are a total of 378 police officers who took and passed[8] the civil service sergeant's exam for Boston (which is the same exam that was given statewide in that year). (Exhibit D, annexed hereto) So far, of the 50 promotions made to the position of sergeant in Boston, five are minorities (Black and Hispanic) and 45 are whites. Id. In addition, a total of 74 minorities took the exam and passed compared to 304 non-minorities. Id. Thus, while so far approximately 12% of all non-minorities who took the exam have been promoted, the promotion rate for minorities is one-half of that or approximately 7%. Id. Once again, while a few minorities have made it to a position where they may be promoted, of the first 30 individuals on the list, only two are minorities. Id. When one gets down to those candidates who are ranked 270th on the list or lower (270 to 327), a majority of the individuals listed are minorities. Id. Again, one sees the huge bunching of minorities, Blacks and Hispanics at the bottom rung of the exam, albeit at a passing grade. Id.

All of this evidence proves the point that the question of whether Hispanics fail the test in lesser numbers than Blacks, is simply beside the point. The exam has a devastating effect on Hispanics and Blacks who pass the exam, as well as those who fail the exam. The effect is that generally speaking Blacks and Hispanics are at the bottom of the list and are never reached for promotion. Alternatively, they are reached

---

[8] This promotional list only ranks officers who passed the promotional exam – not officers who failed. Thus, the exam will be shown to have a far greater disparate impact of minorities once failing candidates are considered. Since HRD has refused to voluntarily supply this data, and it is currently one of the subjects in the parties' current discovery dispute, the Court can infer that the data is unhelpful to the Commonwealth.

at a much later time than whites, and as fully discussed by Judge Saris in the Bradley

decision.  <u>Bradley</u>, 433 F.Supp.2d at 159.[9]

　　　　For this reason, the entire argument made by the Commonwealth in its brief that

Blacks and Hispanics should not comprise one class because the Hispanic fail rate is

less than that of Blacks, is simply irrelevant.  At this stage of the litigation, the Court

should not even be considering the merits.  Nevertheless, it is clear that Plaintiffs have

amassed sufficient evidence to demonstrate that Black and Hispanic police officers are

selected at rates significantly below their non-minority counterparts and it is this fact that

constitutes the adverse impact at issue in this case.


VII.　　<u>THE CLASS PROPOSED EASILY MEETS NUMEROSITY REQUIREMENTS</u>.

　　　　As set forth in Plaintiffs' initial brief on class certification, courts have generally

found a group of 40 individuals sufficient to meet numerosity requirements.  Here

approximately 80 minority officers took the 2006 exam.  Further, the exam certified in

February of 2006, which currently remains in existence for many cities and towns,

including Boston, was taken by well over 80 minority police officers in Boston alone, and

presumably another 70 statewide in other towns and cities.  Moreover, the

Commonwealth has, to date, failed to provide any data regarding the 2007 exam (the

results of which will be certified shortly).  Even presuming conservatively that another 80

minorities took that exam, all told, the 2006, 2007 and 2008 exam, collectively had at

least 300 minority test takers.  This is clearly sufficient to find numerosity.

---

[9]　　　In the <u>Bradley</u> case, Judge Saris determined that minorities who were hired at a later date than they would otherwise have been hired, based upon their rankings on the exam, were entitled to compensation for their delay in hiring. <u>Id.</u>

Since it does not appear that the Commonwealth contests numerosity assuming the Court grants class certification status to all minority test takers for the three most current exams, this Court should grant certification.  Of course, as stated above, the Plaintiffs are also amending the Complaint to add minority test takers from the exam certified in February of 2006, which in Boston alone includes 74 minority test takers. The Commonwealth's argument seems only to be that if the Court accepts all of the other arguments which it has made, such as the class cannot consist of the fall 2007 test takers, that the class cannot consist of other cities and towns who took the 2006 exam, then numerosity is not established.  Therefore, the numerosity argument must fail, because the argument depends upon the Court agreeing with the Commonwealth on each of its other contentions, thereby limiting the class.

Respectfully submitted,

PEDRO LOPEZ, et al.

By their attorneys,

Dated:  March 11, 2008

/s Harold L. Lichten
_____
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO #640716
Leah M. Barrault, BBO # 661626
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the Court and counsel of record for defendants via the Court's ECF filing system, on March 11, 2008.

 /s Leah Marie Barrault_____
Leah Marie Barrault