1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3    * * * * * * * * * * * * * *    *
     PEDRO LOPEZ, *Individually*     *
     *and on behalf of a class*      *
4    *of individuals similarly*      *
     *situated*,                     *
5              Plaintiffs,           *
                                     *
6                  vs.               *      CIVIL ACTION
                                     *      No. 07-11693-JLT
7    CITY OF LAWRENCE,               *
     MASSACHUSETTS, et al            *
8          Defendants.              *
     * * * * * * * * * * * * * *    *
9

10                 BEFORE THE HONORABLE JOSEPH L. TAURO
                      UNITED STATES DISTRICT JUDGE
                          **MOTION HEARING**
11

     A P P E A R A N C E S
12

13             PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
               18 Tremont Street, Suite 500
               Boston, Massachusetts 02108
14             for the plaintiffs
               By:  Harold L. Lichten, Esq.
15                  Leah M. Barrault, Esq.

16

17             LAW OFFICE OF JAMES M. BOWERS
               261 Common Street
18             Lawrence, Massachusetts 01840
               for the defendant City of Lawrence, MA
19             By:  James M. Bowers, Esq.

20

21

22                                  Courtroom No. 22
                                    John J. Moakley Courthouse
23                                  1 Courthouse Way
                                    Boston, Massachusetts 02210
24                                  April 28, 2008
                                    2:30 p.m.
25

1    **APPEARANCES, CONTINUED**

2

3

4              CITY OF METHUEN -- OFFICE OF CITY SOLICITOR
               The Searles Building
               41 Pleasant Street
5              Methuen, Massachusetts 01844
               for the defendant City of Methuen, MA
6              By: Peter J. McQuillan, Esq.

7

8              ATTORNEY GENERAL'S OFFICE
               One Ashburton Place, Room 2019
               Boston, Massachusetts 02108-1698
9              for the defendant Comm. of Mass.
               By: Robert L. Quinan, Jr., AGA
10                  Sookyoung Shin, AGA

11             CITY OF LOWELL LAW DEPARTMENT
               City Hall
12             375 Merrimack Street
               Lowell, Massachusetts 01852
13             for the defendant City of Lowell
               By: Brian W. Leahey, Esq.

14

15             COLLINS, LOUGHRAN & PELOQUIN
               320 Norwood Park South
16             Norwood, Massachusetts 02062
               for the defendant City of Worcester, MA
17             By: Laurie W. Engdahl, Esq.

18

19             MORGAN, BROWN &JOY, LLP
               200 State Street, 11th Floor
               Boston, Massachusetts 02109
20             for the defendant City of Boston
               By: Robert P. Morris, Esq.

21

22

23                     CAROL LYNN SCOTT, CSR, RMR
                        Official Court Reporter
24                  One Courthouse Way, Suite 7204
                     Boston, Massachusetts 02210
25                         (617) 330-1377

1                    P R O C E E D I N G S

2          THE CLERK:  All rise for the Honorable Court.

3          THE COURT:  Sit down everybody, please.

4          (Whereupon, the Court and the Clerk conferred.)

5          THE COURT:  I tried to familiarize myself -- have

6    you had everybody identify themselves yet?

7          THE CLERK:  I didn't yet.

8          THE COURT:  Okay.  Go ahead.

9          THE CLERK:  Counsel please identify themselves for

10   the record.  For the record, this is case No. 07-11693,

11   Lopez, et al versus the City of Lawrence, et al.

12          MR. LICHTEN:  For all the plaintiffs Harold

13   Lichten.

14          MS. BARRAULT:  And Leah Barrault.

15          MR. QUINAN:  Assistant Attorney General Rob Quinan

16   for the Commonwealth defendants.

17          MS. SHIN:  Assistant Attorney General Sookyoung

18   Shin also for the Commonwealth defendants.

19          MR. MORRIS:  Robert Morris representing the City of

20   Boston.

21          MR. McQUILLAN:  Peter McQuillan representing the

22   City of Methuen.

23          MR. LEAHEY:  Brian Leahey for the City of Lowell.

24          MR. BOWERS:  James Bowers for the City of Lawrence.

25          MS. ENGDAHL:  I'm Laurie Engdahl for the City of

```
 1   Worcester.

 2          THE COURT:  Okay.  It is good to have you all here.

 3          I have tried to familiarize myself with the

 4   underlying material as best I can.  I certainly am not going

 5   to be as familiar with everything as you people.  But I have

 6   a couple of questions that are running through and maybe

 7   they are things that we are going to be dealing with as a

 8   practical matter.  That is the discovery motions and --

 9          MR. LICHTEN:  Your Honor?

10          THE COURT:  Yes.

11          MR. LICHTEN:  On the discovery I have some

12   hopefully good news.

13          THE COURT:  Oh, good.

14          MR. LICHTEN:  Knowing that Your Honor would not

15   like a discovery dispute before him, counsel for the state,

16   the Commonwealth and I and Ms. Barrault have been working

17   hard to try to resolve all discovery disputes.

18          We in principle have resolved all the disputes.  It

19   has to be reduced to an agreement but we're -- I'm

20   suggesting that we report back to you in two weeks and

21   hopefully it will be completely resolved and we don't have

22   to take up your time with it today if that's acceptable.

23          THE COURT:  Everybody seem to agree with that?

24          MR. QUINAN:  Yes, Your Honor.

25          THE COURT:  Okay.  Now, the devil is in the details
```

1    as someone said many, many millions of times, or some people

2    say.  And I am encouraged by what you said, discouraged a

3    little bit by the fact that you need two weeks to put it

4    together.  But do you want to --

5              **MR. LICHTEN:**  We can do it shorter, Your Honor.

6    That was just throwing that out.

7              **THE COURT:**  No, no.  I would rather have you take

8    two weeks and get it done right and not have you come back

9    for a further extension.

10             So what do you propose, that you come back with the

11   executed document?

12             **MR. LICHTEN:**  What I propose is that we simply

13   notify Your Honor whether the dispute, as we hope it will,

14   has been resolved by that time making it unnecessary for the

15   court hearing; is that right?

16             **THE COURT:**  Well, except that doesn't work in that

17   I have to issue an order covering discovery.

18             **MR. LICHTEN:**  All right.

19             **THE COURT:**  So what I need is a proposed discovery

20   order that I think is reasonable.

21             **MR. LICHTEN:**  Okay.

22             **THE COURT:**  And it isn't enough that the parties

23   agree on something because then you think you can change it

24   any time you want.

25             **MR. LICHTEN:**  I see.  We think we can submit a

1    proposed order to you without hearing within two weeks.

2          **MR. QUINAN:**  We will try to do that, Your Honor.

3          **THE COURT:**  All right.  If I feel as though I need

4    to bring you in for clarification, then I will just ask you

5    to come in.

6          **MR. LICHTEN:**  That's fine.

7          **THE COURT:**  But understand what I need is a very

8    detailed proposed order.  Okay?

9          **MR. LICHTEN:**  We understand that, Your Honor.  And

10    I think we can do that.

11          **THE COURT:**  Now, this takes into -- I guess what I

12    wanted to ask, this takes in the fact that you are no longer

13    seeking any relief for future test takers; is that right?

14          **MR. LICHTEN:**  Correct.  Correct.  We are not

15    seeking relief for future test takers.

16          **THE COURT:**  And we are not concerned with the 2008

17    exam.  That hasn't taken place yet.

18          **MR. LICHTEN:**  It hasn't taken place yet, correct.

19          **THE COURT:**  So we are really not concerned with any

20    injunctive relief.

21          **MR. LICHTEN:**  Well, not exactly.  In the sense that

22    if you were to determine that the exam from 2005, 2006 and

23    2007 was unlawful, then there would be injunctive relief in

24    the form of reordering lists and placing people back on the

25    lists who would have been hired had it not been for the

1    discrimination such as Judge Saris did.  So that type of

2    injunctive relief would be appropriate.

3            There would be no injunctive relief needed

4    depending upon what happens in the 2008 exam ordering them

5    to do something with respect to the 2008 exam.

6            Does that clarify it?

7            **THE COURT:**  I don't think I understand the first

8    part.  I understand 2008.

9            **MR. LICHTEN:**  Sure.

10           **THE COURT:**  If you win --

11           **MR. LICHTEN:**  If we win, there would be injunctive

12    relief such as requiring people who --

13           **THE COURT:**  Is that requested now in the -- we have

14    got now, what, a fourth amended complaint?

15           **MR. LICHTEN:**  Yes.

16           **THE COURT:**  Does the fourth amended complaint make

17    specific that that is what you want?

18           **MR. LICHTEN:**  I think it does, Your Honor.  And in

19    addition it is the same relief that Judge Saris ordered in

20    the Bradley decision.

21           **THE COURT:**  I know, but I have to deal with the

22    complaint that I have.

23           **MR. LICHTEN:**  Yes.  I believe it is in the

24    complaint, Your Honor.

25           **THE COURT:**  Okay.  So just to make clear, you are

1    going to agree on the window, whether it is a ten-year

2    window, five-year window, relevant data?  I mean, that is

3    all part of this agreement?

4         **MR. LICHTEN:**  Yes, that's part of what we have

5    discussed and come to a compromise on, Your Honor.

6         **THE COURT:**  Okay.  And that means all the discovery

7    disputes that I have a long list of here.

8         **MR. LICHTEN:**  Right.  We hoped to have an order

9    that covers --

10        **THE COURT:**  There is no "yeah buts" or anything

11   like that.

12        **MR. LICHTEN:**  No.

13        **THE COURT:**  Now, what about the 30(b)(6)

14   deposition?

15        **MR. LICHTEN:**  We'll all set on that too.

16        **THE COURT:**  I want an order setting forth the

17   parameters of that too, please.

18        **MR. LICHTEN:**  That's fine, Your Honor.

19        **THE COURT:**  Okay.  I guess now the only thing that

20   seems to be left for us to talk about today is the putative

21   class?

22        **MR. LICHTEN:**  That's correct, Your Honor.

23        **THE COURT:**  Now, why do we need a class here?  Why

24   isn't it enough to have the exemplary case which would be

25   binding on everybody?  In other words, you are saying that

1    whatever year it was was improperly administered or illegal

2    or whatever your theory is, I agree, and that is the end of

3    it.  Why do you need a class?

4         MR. LICHTEN:  Well, because I think that without a

5    class, I don't see how the other individuals who were

6    affected in the same way as the named plaintiffs would be

7    entitled to relief if there is no class.

8         THE COURT:  Why couldn't there be individual cases

9    brought?  There aren't that many.

10         MR. LICHTEN:  Well, there are, in fact, by my

11    count, I counted it up this morning, there would be -- we

12    believe for the three tests that are currently in existence

13    and promotions being made from, there are over four hundred

14    minorities.

15         In many of those cases the individuals probably

16    don't want to come forward because it's not easy to come

17    forward and challenge this exam and incur the wrath of your

18    fellow members who you're maybe trying to obtain a place

19    that they also want to obtain.

20         So I don't think that it would be practical to have

21    just the individuals go forward, particularly where their

22    claims are identical to the claims of the class members,

23    Your Honor.

24         THE COURT:  With respect to the declaration, the

25    declaratory aspect of it, you don't need a class action in

```
 1    order to have a declaration with respect to the various

 2    examinations.

 3            MR. LICHTEN:  That is true, Your Honor, but --

 4            THE COURT:  And then depending on what the

 5    declarative relief was in terms of whether it was granted or

 6    wasn't granted, we could then go into a phase two remedial

 7    stage and try to deal with whatever is necessary to deal

 8    with on a numerosity basis there.

 9            MR. LICHTEN:  I agree.  But I guess my question

10    would be how would you preserve the claims of the unnamed

11    class members because I would think my brethren here would

12    argue that they're timed out unless they get some sort of

13    tolling or something because normally the rule is if you

14    haven't filed a claim, you lose.  Once the statute of

15    limitations, which is a very tight statute of limitations,

16    applies, ends, you lose your rights.

17            THE COURT:  Well, as a matter of fact, you are

18    bringing -- that reminds me -- you are bringing this -- I am

19    asking this question in this way:  Do you have a statute of

20    limitations here?

21            MR. LICHTEN:  No, I don't believe --

22            THE COURT:  With respect to one of the years.  I

23    mean, people -- you don't have anybody that took the 2007

24    exam; is that right?  Any named plaintiff?

25            MR. LICHTEN:  I don't, but I can explain why that
```

1    is, Your Honor.

2         **THE COURT:**  That is pretty unusual, isn't it, not

3    to have any named plaintiffs?

4         **MR. LICHTEN:**  No, because up until just literally

5    several weeks ago HRD, the Commonwealth, had not certified

6    the scores and let people know what their scores were and

7    where they were on the list.  So it's not until a couple of

8    weeks ago that people would have known whether or not they

9    might have a claim.  You know, they didn't know what their

10   score was going to be.

11        **THE COURT:**  Going back to what, 2005?

12        **MR. LICHTEN:**  Yes.  The way it works, Your Honor,

13   it's a little confusing.  When we say the 2005 exam, it's

14   taken in 2005 at the end but the names aren't certified with

15   their scores until the next year like in February of '06.

16        **THE COURT:**  So it is considered the what exam?

17        **MR. LICHTEN:**  What?

18        **THE COURT:**  So what is it considered, the 2006

19   exam?

20        **MR. LICHTEN:**  Well, that's -- you could call it

21   both actually.

22        **THE COURT:**  Well, for purposes of the statute of

23   limitations.

24        **MR. LICHTEN:**  Right.

25        **THE COURT:**  What is the statute of limitations?

1    Five years?

2         **MR. LICHTEN:**  The statute of limitations is

3    actually 300 days from the last act of discrimination.

4         Now, let me explain that, Your Honor.  Although the

5    2005 exam -- and there is Supreme Court precedent directly

6    on point.  In fact, I provided this to the Commonwealth and

7    they haven't argued this.

8         In 2005 an exam was given, including to the City of

9    Boston.  It was certified in 2006.  It then runs, it has a

10   lifespan of essentially two and a half years.  It runs till

11   August of 2008 in most communities, that is, it hasn't even

12   expired yet in most communities that gave the exam in 2005.

13        Now, it may be that the statute of limitations has

14   run on some of the early appointments that were made that

15   were certified in 2006, so, I mean, 2006, early 2007.  But

16   we capture all promotions that were made from 2007 on

17   including the promotions that are still being made.

18        Now, the Supreme Court has held -- and I just don't

19   have the case with me, but it's a Clarence Thomas opinion.

20   It's a decision of two years ago -- that every time someone

21   is not promoted or is otherwise not -- suffers an adverse

22   action, even though it is the result of something that

23   happened much before, except for Equal Pay Act cases, then

24   that is a new act of discrimination that starts the clock

25   running and, therefore --

1          THE COURT:  For everybody.

2          MR. LICHTEN:  For everybody, yes.

3          THE COURT:  For everybody that can be affected

4    by --

5          MR. LICHTEN:  Yes, yes.  And, therefore, Your

6    Honor, it's clear to me that at least for promotions that

7    have happened within three hundred days of our filing with

8    the EEOC and MCAD which was back in 2007, we are timely for

9    those cases.  So we're timely for most of the 2005 exam,

10   2006 and 2007.

11         THE COURT:  Are you concerned about the -- what is

12   the activating moment?  Is it when they are notified that

13   they got accepted or they didn't get accepted or is it the

14   decision of the municipality adopting the particular test?

15         MR. LICHTEN:  No, I believe it's when a promotion

16   is made off the list.  So what happens is, for example, in

17   2005 they give an exam to people around the state.

18         THE COURT:  Which you challenge.

19         MR. LICHTEN:  Yes.  And those --

20         THE COURT:  Which you challenge the validity of it?

21         MR. LICHTEN:  Correct.

22         THE COURT:  Okay.

23         MR. LICHTEN:  Okay.  In 2006 they certify the names

24   and the scores.  And then for several years the list sits

25   there.  And then when a municipality wants to make a

 1    promotion from officers within their city or town --

 2        **THE COURT:**  It goes to the list.

 3        **MR. LICHTEN:**  Yes.  They send in a requisition to

 4    the Commonwealth saying we have three openings.  The

 5    Commonwealth then has to, what's called a 2N plus one

 6    formula, provide the first seven names at the top of that

 7    list.  They can't go below.  They have to provide the first

 8    seven names under the 2N plus one formula.  And those names

 9    are then certified and a promotion is made.

10        Those promotions off the 2005 exam are still being

11    made even to this day and beyond and will continue to be

12    made until the end of the summer, particularly in the City

13    of Boston for example.

14        **THE COURT:**  And is that the last exam we are going

15    to be dealing with?

16        **MR. LICHTEN:**  No.  Other cities -- the Commonwealth

17    gives the exam every year but not every community takes the

18    exam every year.

19        **THE COURT:**  They have to opt in to take the exam?

20        **MR. LICHTEN:**  Yes.  And most wait two or three

21    years to do so.  So then they gave the exam in 2006, other

22    communities with large minority populations took -- had the

23    exam given to their police officers in 2006 and still others

24    had it done in 2007 and the process is the same.

25        **THE COURT:**  The City of Boston did not make use of

1    the Commonwealth resources I take it.  They had their own

2    test; is that it?

3         **MR. LICHTEN:**  No.  The Commonwealth -- many years

4    ago the Boston Police Department utilized their own test.

5    They hired their own experts.  They did the whole bells and

6    whistles and it was a completely different test.

7         **THE COURT:**  I think I had that case.

8         **MR. LICHTEN:**  I think you may well have.  It's

9    quite --

10        **THE COURT:**  It is a chestnut.

11        **MR. LICHTEN:**  Yes.

12        In any event, to make a long story short, in 2005

13   for whatever reason the Boston Police Department decided to

14   go back to the traditional Commonwealth of Massachusetts

15   civil service test.

16        What did come out in the most recent deposition is

17   that while half of the questions were exactly the same,

18   these multiple choice written questions, half of the

19   questions were taken directly from the Boston Police

20   Department rules and regulations.  But it was the same

21   format, the same scoring format.  HRD scored it.  HRD was

22   involved in the questions and answers.  But some of the

23   questions were different.  They were peculiar to the Boston

24   Police Department but the format of the exam remained the

25   same.  It was administered by the same Commonwealth of

1    Massachusetts.

2          The City of Boston did not administer the

3    examination.

4          **THE COURT:**  But we don't necessarily have any

5    consistency in terms of which promotional decisions are made

6    on the basis of what examination; right?  There is a certain

7    discretion that each of the municipalities has.  They are

8    not stuck with the exam itself and nothing else.  They can

9    take into consideration other criteria in making

10   appointments; can't they?

11         **MR. LICHTEN:**  That's not really true, Your Honor.

12   And Judge Saris, and I recommend her decision in the Bradley

13   case which I believe addresses this because the standard is

14   the same whether it is entry level or promotional.

15         As I said, let's say the City of Boston had to make

16   three promotions, okay.  So they go to the Commonwealth of

17   Massachusetts and say, okay, send us a list.  The

18   Commonwealth of Massachusetts must according to law send

19   them the first seven names on the list, 2N plus one.

20         So if there is one opening, you'd send two names.

21   Two openings, you'd send three names.  That's the 2N plus

22   one formula.

23         The City of Boston has to promote from one of those

24   top individuals.  It can't go down and say, well, there is a

25   minority down here.  He has really good credentials.  We

1    want --

2          **THE COURT:**  They don't have to appoint one, two and

3    three if they can appoint one, two and seven.

4          **MR. LICHTEN:**  They could appoint one, two and

5    seven, that's correct, under the scenario that I gave you.

6          Now, most cities and towns go right down the list

7    for political and union reasons and that's another question.

8    But they can't go down below the names that are certified so

9    the top names are only certified.

10          And one of our claims in this case is that

11    minorities because, even when they pass -- and their failure

12    rates on these three exams are extraordinary.  In the 2005

13    exam minorities failed, more than 50 percent of the

14    minorities failed the exam, only 27 percent of whites failed

15    the exam.

16          But you can't get down to minorities because even

17    the ones that passed by and large are grouped down in the

18    seventies, they passed but they're not reachable and will

19    never be reachable because you will never get down that far.

20    That's our claim.

21          (Pause in proceedings.)

22          **THE COURT:**  What about the issue of standing?

23          **MR. LICHTEN:**  Sure.

24          **THE COURT:**  Would you deal with that for me,

25    please.

1          **MR. LICHTEN:**  Yes.

2          As I pointed out in my brief, and there is First

3     Circuit precedent on this and precedent in this court,

4     particularly Judge Young.  You look at the question of

5     standing with respect to the class, not the named

6     plaintiffs.

7          I have cited to this Court a number of cases that

8     say for purposes of standing first you decide class

9     certification and then you see if you have proper standing.

10    By that analysis, and I take it you're referring to the 2007

11    examination, first of all, this will be mooted out very

12    shortly because it's inconceivable that there won't be some

13    individuals once the scores have just come out stepping

14    forward from the 2007 exam.

15         So there probably, there almost certainly will be

16    those people within a reasonable period of time, within

17    weeks or months.  But putting that aside, if the Court

18    were to --

19         **THE COURT:**  People who did not get the appointment

20    you are talking about?

21         **MR. LICHTEN:**  People whose scores are so low that

22    they'll see the writing on the wall that they have no chance

23    of getting reached in the 2007 exam --

24         **THE COURT:**  They will come to you as plaintiffs.

25         **MR. LICHTEN:**  That will come to us as plaintiffs.

1          But, in any event, the First Circuit rule is, and I

2    cited this in our brief, that you look -- first you decide

3    class certification.  And if members of the class would

4    satisfy the standing requirements, then you have standing.

5          You don't decide standing before class

6    certification because it is the class that defines standing,

7    not the individual plaintiffs.

8          And I think I fully developed that in the brief,

9    Your Honor.

10         **THE COURT:**  But except for your expectation that

11   you will be joined pretty soon by some victims of the 2007

12   exam you don't have standing now?

13         **MR. LICHTEN:**  No, I believe I do because, again, I

14   believe that it is appropriate to certify a class which

15   includes the 2007 exam.  And then I would have standing

16   because you look at the class for standing purposes, not the

17   individual plaintiffs based upon the In Re: Relafen case,

18   another case that I cited in the brief.

19         **THE COURT:**  Again, going back to the question of

20   class certification, why do we need a class when I can

21   decide whether certain named cities violated Title VII and

22   the judgment would benefit all the named plaintiffs?

23         **MR. LICHTEN:**  Because, again, as I understand it,

24   Your Honor, there is a way --

25         **THE COURT:**  And not only that but anybody that is

```
 1    similarly situated.  Isn't that the way exemplary suits are
 2    very often cast?
 3              MR. LICHTEN:  Well, that's not my understanding,
 4    Your Honor, because if the Court were to deny class
 5    certification, then the named plaintiffs could go forward
 6    with their case; but people who didn't --
 7              THE COURT:  And get a decision on the merits.
 8              MR. LICHTEN:  Yes.  But then those individuals, and
 9    there would be approximately 400 who for whatever reason
10    don't file, haven't filed EEOC and MCAD forms and brought
11    their case to court, they would not be entitled to share in
12    injunctive relief.  And I'm sure my brethren would argue --
13              THE COURT:  It wouldn't be typicality.  In other
14    words, if you have some that do, some that don't, doesn't
15    that affect the typicality?
16              MR. LICHTEN:  I don't think so.  Typicality would
17    look to whether or not their claims are typical.  And I
18    believe the class members' claims --
19              THE COURT:  They litigated their claims too.
20              MR. LICHTEN:  Yes.
21              THE COURT:  If they didn't press the right buttons,
22    they may --
23              MR. LICHTEN:  I don't think that's what typicality
24    is, Your Honor.  I think typicality is for the claims of the
25    individuals, the same claims that the class members would
```

1    have.

2         Here the class -- the claims are virtually

3    identical.  The class members and the individuals are all

4    saying we took a test.  It has a disparate impact on

5    minorities.  It can't be shown to be job related under EEOC

6    standards.  Therefore, it's unlawful under Title VII.

7    Therefore, the claims of the individuals are typical of the

8    claims of the class.

9         So my concern about an exemplar case is that it

10   would not protect the interests of the many who may have a

11   valid claim, minority police officers who should be promoted

12   but will lose their claims because of the statute of

13   limitations unless their claims are somehow preserved by

14   some tolling.

15        Now, just to get back to one thing you said, Your

16   Honor.  I agree with you that the way the case would proceed

17   if it was certified as a class or if the claims of the class

18   members were somehow tolled is that there would be a trial

19   on --

20        **THE COURT:**  That did go forward.  Did you just

21   misspeak or did I misunderstand you?

22        Start all over again.

23        **MR. LICHTEN:**  Yes.  What I am saying --

24        **THE COURT:**  You agreed with something I said.

25        **MR. LICHTEN:**  Yes.  If there was somehow a

```
1    mechanism that tolled the claims of the class members until
2    after the case was decided, I am saying that that -- if
3    there was such a way -- and I don't know that there is and I
4    haven't researched it -- that might be a way to protect
5    their interest.  But absent that I don't know how you would
6    protect their interest.
7              But what I am saying is how I envision and how most
8    of these cases proceed are there would not be a trial on
9    damages to begin with or remedy as part of the merits.
10   There would first be a trial, a fairly straightforward trial
11   on whether the exam violated Title VII or did not violate
12   Title VII.
13             If -- and that --
14         THE COURT:  Which exam, the City of Boston exam or
15   some other municipality?
16         MR. LICHTEN:  It would be the --
17         THE COURT:  They all have chosen the same --
18         MR. LICHTEN:  Yes, the exams, except for the fact
19   that Boston has some additional -- some questions based on
20   their rules and regulations, all of the exams are identical
21   throughout the state.
22             HRD gives one examination.  It's the same format.
23   It's based upon their same analysis.  It has the same
24   scoring mechanism.
25             So the trial essentially would be against the
```

1    Commonwealth's civil service examination.  Some

2    municipalities elect to have another type, one or two

3    municipalities in the Commonwealth decided to go out of the

4    civil service exam and have their own exam.  We are not

5    talking about that.  We are talking about the communities

6    that chose to use the civil service exam.  The exam is

7    identical.

8         The trial as I understand it, as it was in the

9    Bradley case, would be a trial of the 2005, 2006, 2007 exam

10   which are essentially the same format, the same system of

11   testing.

12        THE COURT:  Now, that is a police exam that she

13   had, or is that --

14        MR. LICHTEN:  She had both the police and fire

15   entry level case.  The one that was tried was the fire case.

16   The one that was settled was the police case.  And she

17   approved a consent decree which I believe I attached.

18        THE COURT:  And is there a difference between the

19   standard between -- she had an entry level case.

20        MR. LICHTEN:  Right.

21        THE COURT:  I have a promotional case.  Is there a

22   difference between the two?

23        MR. LICHTEN:  I don't think the legal standards are

24   any different, Your Honor.

25        THE COURT:  So why isn't one controlling on the

```
1    other?  Why isn't her case -- I mean, it is persuasive

2    precedent --

3         MR. LICHTEN:  It is persuasive but I don't think it

4    is controlling.

5         THE COURT:  Well, it wouldn't be controlling

6    because it's just another district court.  I understand

7    that.

8         But as a part of that is there any difference

9    between what she had and what I am going to have?

10        MR. LICHTEN:  I think the way it would be tried,

11   the legal standards, the analysis are virtually identical.

12   You would look at statistical analysis.  You would look at

13   how this is operated with respect to the selection of

14   minority police officers.

15        I would point out that one of our positions is that

16   virtually no police sergeants -- for instance, in the 2006

17   exam, which has now had about a year and a half to run, I

18   think we point out to you in our brief that there have been

19   no minority appointments statewide off the 2006 exam.  A

20   number of non-minority appointments have been made.

21        So there is -- we would try to show the Court

22   there's been this extraordinary disproportionate impact

23   because of the exam on minorities becoming, these are

24   minority police officers becoming sergeants.  And we would

25   try to show to you that that is not the -- the test not only
```

1    has this huge discriminatory impact but it cannot not be

2    shown under EEOC standards to be job related.  That means

3    actually predictive of the job necessary to be a good police

4    sergeant.

5         And that would be our burden and that was the same

6    burden in the Bradley case which we were successful in.

7         And that I think is the long and the short of what

8    the case would be before you on liability.  Then if we got

9    to remedy, then we would have to come up with a formula for

10   determining who would be entitled to prospective relief.

11        THE COURT:  So you are saying, as we do very often,

12   bifurcate the liability with the damages.

13        MR. LICHTEN:  Yes.  I think that's done in

14   virtually every case like this challenging a promotional or

15   entry level police or fire exam.

16        THE COURT:  Okay.  Let me hear from the defendants.

17        MR. LICHTEN:  May I make one more point, Your

18   Honor, and then I'll be done?

19        THE COURT:  Go ahead.

20        MR. LICHTEN:  Just to sum up, Your Honor, because I

21   didn't have all the data when we wrote our brief but I have

22   gotten some.  I believe the data shows that for the 2005,

23   2006 and 2007 exam over 400 minorities, particularly 270

24   minorities in Boston took, have taken the sergeant's exam.

25   Approximately 45 percent total have failed the exam which is

1    a much higher number than non-minorities.

2          In Boston -- and I will leave you with this.  I

3    just did the analysis this morning from the data supplied to

4    me by the Commonwealth.  There were 274 minority test

5    takers.  More than one-half of those minority officers,

6    police officers failed the sergeant's exam.  With

7    non-minorities only 27 percent failed the exam.

8          If you look at the sheets that I have been

9    provided, you will see that even those minorities that

10   passed the exam -- and I point this out in my brief -- are

11   bunched at the bottom virtually ensuring that very few in

12   Boston, the City of Boston where it is so important to have

13   minority police officers, very few are going to get made.

14   And that pattern repeats itself throughout the Commonwealth.

15         So you have a large class of minority officers who

16   have taken this examination and believe that without the

17   Court's intervention they would not be able to obtain

18   relief.  And for that reason I think we satisfied all of the

19   requirements of class certification, particularly

20   numerosity.

21         And I don't know any other way to appropriately

22   bring this case other than through class certification

23   because many minority police officers are not going to buck

24   their department, the other non-minority members in the

25   department and agree to sign up and become a named

1    plaintiff.

2         And I think for many people, and it takes courage

3    to bring this case, if they were allowed to be class

4    members, they would be entitled to partake in the relief

5    that this Court may afford and without that I don't think

6    they could.

7         **THE COURT:**  What about the distinction, if there is

8    one, and if there is, explain it to me, between Blacks and

9    Hispanics?  Is that a different ballgame, a different test?

10        **MR. LICHTEN:**  I don't think so.

11        First of all, since the Beecher case and the Castro

12   case which started in this Commonwealth in 1972, and there

13   have been many cases --

14        **THE COURT:**  I think one of those was mine.  I am

15   not sure.

16        **MR. LICHTEN:**  It is quite possible.  There have

17   been so many of them, Your Honor.

18        Blacks and Hispanics have been grouped together for

19   the purposes of challenging the validity of the examination

20   since 1972 when this litigation started in this

21   Commonwealth.  It's always been the way the analysis has

22   been made.

23        In the reverse discrimination cases that I was also

24   involved in, Quinn and DeLeo, that is how the analysis was

25   made.

1          It just seems rather ironic at this late stage the

2     Commonwealth would say, oh, no, that's not the proper way to

3     make the analysis.  However, even if you made that analysis,

4     I am confident that Blacks and Hispanics would be able to

5     show statistically significant numbers.  But I don't think

6     that's the way it should be done.

7          And I would add that in many of the other cases

8     that I have cited to this Court, and I have cited maybe ten

9     other cases from other jurisdictions, Blacks and Hispanics

10    have always been the method by which data has been collected

11    and cases have been tried relating to the discriminatory

12    effect of an examination.

13         **THE COURT:**  Okay.

14         **MR. LICHTEN:**  Thank you very much, Your Honor.

15         **THE COURT:**  Let me give you a rest and we will take

16    on the defendants.

17         Do you think there should be a class?

18         **MS. SHIN:**  Absolutely not, Your Honor.

19         **THE COURT:**  All right.  Tell me why.

20         **MS. SHIN:**  Mr. Lichten has said that there is no --

21         **THE COURT:**  Who did what?

22         **MS. SHIN:**  Mr. Lichten, the plaintiffs' attorney,

23    has said that there is no difference between the entry level

24    hiring process that was at issue in Judge Saris's Bradley

25    decision and the promotional process.  And that is

1    absolutely not true, Your Honor.

2           At the entry level the civil service municipalities

3    must use the examination that is given by HRD.  They have no

4    discretion in that regard.

5           On the promotional process the municipalities can

6    use HRD's examination but they can also employ alternative

7    exams or add components in addition to HRD's exam.  And the

8    plaintiffs are aware of this.  And not only that, they have

9    expressly brought a claim based on this difference.

10           And specifically in paragraph 32 of their fourth

11    amended complaint plaintiffs say that although any

12    municipality covered by the civil service law has the right

13    to conduct its own alternative promotional examination,

14    virtually all of them have elected to use HRD's examination

15    without modification.

16           The plaintiffs have basically ignored the fact that

17    they have brought this claim.  And on page 7 of their

18    opening memorandum they say that the one legal issue to be

19    tried on the question of liability is whether or not this

20    promotional exam, HRD's promotional exam has a disparate

21    impact.

22           And that statement, Your Honor, is simply not true

23    unless Mr. Lichten is prepared to stand up today and say

24    that he is abandoning his claim against all of the

25    municipalities.  If he is not abandoning that claim, then

1    the class simply cannot be certified because there are only

2    five municipalities that are named in this lawsuit.

3            And I would submit, Your Honor, that the risk of

4    unfairness is clear whether plaintiffs win or whether they

5    lose.  If they win, Your Honor, and Your Honor finds that

6    the municipalities should have used an alternative

7    examination but they didn't, then only the named

8    municipalities who had the opportunity to defend themselves

9    in this lawsuit would be liable.  So only the named

10   plaintiffs would get compensatory relief and yet the

11   plaintiffs seek to bind an entire class of all minority

12   officers throughout the state and some five civil service

13   municipalities --

14           **THE COURT:**  Based on the conduct of just five

15   municipalities?

16           **MS. SHIN:**  Correct, Your Honor.

17           **THE COURT:**  Let's take it a piece at a time.

18           **MS. SHIN:**  Sure.

19           **THE COURT:**  What do you say about that?

20           **MR. LICHTEN:**  First, Your Honor, the guts of this

21   case is the challenge to the statewide civil service

22   examination.

23           As I said in the complaint --

24           **THE COURT:**  Well, she is saying if that is the way

25   you want to go --

1          **MR. LICHTEN:**  Yes.

2          **THE COURT:**  -- she will agree with a motion to

3     strike the municipalities and we will concentrate on the --

4     we will have a nice clean shot at the state case.

5          **MR. LICHTEN:**  Well, the Court has various options

6     when it certifies a class.  It could under that theory or

7     you could certify a class --

8          **THE COURT:**  She is saying why don't you agree to

9     that?  In other words, instead of complicating it and

10    raising an issue as to whether five municipalities can bind,

11    what is it, 351 cities and towns or something like that in

12    the Commonwealth?  I always remember that statistic because

13    Volpe took all but one when I was his Chief Legal Counsel.

14          (Laughter.)

15          **THE COURT:**  Those were happy political days.

16          Why wouldn't it make sense to have a nice, clean

17    shot at the state --

18          **MR. LICHTEN:**  It would but then I would at least

19    want the Commonwealth to agree because they've suggested in

20    their brief that they may use as a defense the fact that,

21    well, these communities could have gone elsewhere and done

22    soup to nuts exam outside of our test but did not do so.

23    Therefore, Your Honor, we can't be held liable, i.e.,

24    Commonwealth because --

25          **THE COURT:**  But that is not the test.  This is --

1    if I understand it -- I am sure that I don't understand it

2    at all the way you do.

3         They are challenging the test itself, not whether

4    somebody could have gone to, some municipality could have

5    gone someplace else.  They are willing to focus on the test

6    itself.

7         MR. LICHTEN:  Well, I think that would be asked of

8    HRD because my understanding is that they have reserved the

9    right to claim in this litigation that they're not liable

10   because they only furnished the test and these communities

11   didn't have to use the test.

12        THE COURT:  Well, what do you say about that?

13        MS. SHIN:  That's probably accurate, Your Honor.

14        THE COURT:  Well, you can't have it both ways.  I

15   mean, you entice me down a little path here where I think we

16   can streamline the case and then you pull the trap on me.

17        MS. SHIN:  The case could still proceed on whether,

18   the question of whether HRD's exam is lawful or unlawful

19   under Title VII.

20        And then, as Your Honor pointed out, if you issue a

21   declaration to that regard, then enjoining HRD from using

22   such an exam in the future.  Then we would abide by that and

23   such relief would inure to the benefit of everybody who

24   Mr. Lichten is currently trying to put into the class.

25        THE COURT:  Well, but he says that you want to be

1    able to say that as a matter of liability, relevant to

2    liability that they could have gone someplace else.  I don't

3    see why it would be but he says that is the argument that

4    you want to make.

5         **MS. SHIN:**  It depends on what type of relief the

6    plaintiffs are seeking.  If they're seeking simply an

7    injunction saying our exam as we used it is unlawful and you

8    can't use it in the future, then that certainly can proceed.

9         To the extent he is seeking -- well, he has already

10   said today that he's seeking compensatory relief in the form

11   of preferential hiring, that type of injunctive relief, then

12   claims against the municipalities are absolutely relevant.

13        And unless he joins the remaining municipalities in

14   this lawsuit, I cannot understand how this Court could

15   possibly order existing minority officers to be placed above

16   higher scoring non-minority officers without the input of

17   the municipalities that would be affected.

18        **THE COURT:**  Especially if none of them were one of

19   the five municipalities named here.

20        **MS. SHIN:**  Right.  And, Your Honor, I would point

21   out the inherent unfairness to a community say such as Salem

22   which I understand has expended considerable effort and

23   resources to make their exam fair.  They've utilized

24   alternative testing components such as an assessment center.

25   And yet the plaintiffs would have this Court sweep it under

1    this large umbrella and order them to implement basically an

2    affirmative action remedy and potentially disrupting morale

3    within its department and Salem would never have had the

4    opportunity to defend itself in this lawsuit.

5            MR. LICHTEN:  That's not what we are seeking.

6            THE COURT:  All right.  We will be here all

7    afternoon.  Don't worry, I will listen to everybody.

8            I would like to invite you to reply, to each one of

9    those gems that you toss up, I am going to give you a chance

10   to focus on.

11           MR. LICHTEN:  For those few number of communities,

12   I think there are two who went out and did their own

13   alternative exam and didn't use the civil service

14   examination that is at issue in this case.  We are not

15   seeking anything with respect to them.

16           THE COURT:  You are representing to me that all the

17   cities and towns of the Commonwealth signed on to the

18   Commonwealth's exam?

19           MR. LICHTEN:  Yes.

20           THE COURT:  And they didn't use their own exam even

21   though they could have?

22           MR. LICHTEN:  Yes.  According to the Commonwealth,

23   and I believe that they're correct, only two municipalities,

24   I think it was Leominster and Salem used their own examine.

25   They got permission to use their own special exam.  And we

1    are not challenging that at all.  We would not be asking for

2    anything with respect to those communities that did not use

3    this exam that we're challenging.

4            **THE COURT:**  Now, is that --

5            **MS. SHIN:**  Your Honor --

6            **THE COURT:**  That is responsive; isn't it?

7            **MS. SHIN:**  Salem and Leominster I believe did use

8    HRD's examination as a component.  And they are the only two

9    communities that then used what's called an assessment

10   center which seeks to simulate job situations and see how

11   the candidates --

12           **THE COURT:**  He says they are out of it anyway.

13           **MS. SHIN:**  Okay.  But there are certainly other

14   communities that have employed, some -- have made some

15   effort, maybe not using an assessment center but, say, take

16   the City of Boston, for example, as pointed out in its

17   opposition, it constructed its examination in consultation

18   with HRD, used its own subject matter within their police

19   department.  And the outcome was that approximately 50

20   percent of the questions on the exam were unique to the

21   Boston Police Department.

22           Other cities have used affirmative action officers.

23   There have been tutorials that have been given to these

24   minorities.  The larger point being, Your Honor, is that

25   without the municipalities here to defend their actions it's

1    simply not fair to then sweep them under this broad-based

2    remedy which plaintiffs are clearly seeking which would

3    require Your Honor to order that minorities, existing

4    minority officers be promoted above higher scoring

5    non-minority officers.  And that simply cannot be done until

6    we get the municipalities in this case.

7         And the difference between this case, Your Honor,

8    and the Bradley case is in Bradley Judge Saris was dealing

9    with entry level hiring so there was no concern that any

10   affirmative action would disrupt an existing state of

11   affairs.  You're talking about promotional hiring.  You're

12   talking about existing officers, ones who scored lower.

13        **THE COURT:**  In Judge Saris's case were all the

14   municipalities joined or were they just represented?

15        **MS. SHIN:**  In the Bradley case it was just the City

16   of Lynn.

17        But as I pointed out, in the entry level context,

18   and municipalities have to use HRD's examination, so it

19   was -- it made more sense to certify a class there.

20        And then once it came to the remedy stage, ordering

21   remedial hiring was not as much of a concern because the

22   communities didn't care so much when you're talking about

23   entry level candidates.  I'm sure they care a whole lot more

24   when you're talking about an existing state of affairs

25   within the police department.

1          **THE COURT:**  All right.  What else do you want to

2     say?

3          **MS. SHIN:**  As Your Honor noted, as far as the claim

4     against HRD, the certification would be a mere formality.

5     If the Court declares the exam invalid, it's invalid as to

6     everybody.  There is no practical need for class

7     certification.

8          The First Circuit has held in such a circumstance

9     the Court has the discretion to decline to certify a class

10    if there are other circumstances present, which there

11    certainly are in this case.

12         **THE COURT:**  What about the statute of limitations?

13    Who would be hurt if I did not have a class?  What would be

14    the potential adverse consequences to people who would be

15    otherwise applying?

16         **MS. SHIN:**  Unless they're tolled, I would believe

17    most of the '06 plaintiffs would be time barred.  But the

18    class action shouldn't be a device to save time barred

19    claims.

20         Your Honor also raised the issue of whether Blacks

21    and Hispanics should be treated separately.  And we are not

22    proceeding blindly in this regard.  In my opposition I cited

23    evidence showing that the groups are not similarly situated

24    because Hispanics basically passed the exam at almost the

25    exact same rate as whites whereas Blacks scored appreciably

 1    lower.

 2             And the plaintiffs don't dispute this evidence.

 3    They just say that passing rates are barely relevant.  But,

 4    again, unless they're prepared to drop any claim based on

 5    the passing rates, there is no dispute that the groups are

 6    not similarly situated and should not be treated together.

 7             **THE COURT:**  Let me ask -- let me give you a little

 8    rest for a second.

 9             **MS. SHIN:**  Sure.

10             **THE COURT:**  How would you change what has happened

11    so far in order to feel that there were compliance?

12             **MR. LICHTEN:**  Right.  Ironically --

13             **THE COURT:**  In other words, it is a roundabout way

14    of my saying is there something we could do to try to settle

15    this case?

16             **MR. LICHTEN:**  That would be a tall order.

17             But what I can tell you is that there was a case, I

18    cited it in my brief, the Afro-American Association versus

19    the Boston Police Department.  And they brought a lawsuit in

20    1985.  And it was settled and it was settled by the Boston

21    Police Department agreeing to go out and do one of these,

22    what they call soup to nuts promotional exams.  And I had

23    some involvement back at the time.  And I'm quite familiar

24    with it.  My expert was involved in it too.

25             And it involves having an assessment center where

1    you give scenarios and you videotape them and you have

2    assessors come in.  And, one, they tend to be much less

3    discriminatory.

4            And, two, they tend to pick much better police

5    sergeants because when you think about what it is a police

6    sergeant does, it's not being able to recall every

7    regulation in the department.  It is being able to lead and

8    supervise and make quick judgments.  So there are exams that

9    are out there that are used in most cities and towns, big

10   cities and states throughout the country and with state

11   police departments.  So there are these tests that are used

12   for I guess economy reasons.

13           And the Commonwealth, it's one of the few

14   communities that still use this pen and paper, eighty

15   questions, root memory.  You read seven textbooks and you

16   have to regurgitate the questions that come right out of the

17   textbooks.

18           And we say that not only does that prove to have

19   discriminatory impact on minorities but cannot be shown to

20   be job related.  And that is, very few communities, large

21   communities still use those kind of exam system.

22           **THE COURT:**  What do you say about that?

23           **MS. SHIN:**  That really goes to the merits of the

24   case but I would --

25           **THE COURT:**  Well, it does go to the merits.  I am

```
 1    bouncing around here.

 2            MS. SHIN:  Sure.  Well, I --

 3            THE COURT:  In a case like this, you know, I think

 4    what we ought to do, it is a good government situation and

 5    we have the opportunity to get something done.  It is not a

 6    question of winning the case or losing the case.  It is a

 7    question of perhaps making some sociological progress here

 8    if we can do it.

 9            MS. SHIN:  Well, I do note that HRD will be

10    revamping its exam this year in 2008.  And it has already

11    set the wheels in process.  So there will be a brand-new

12    exam this year.  It will be validated.  And so, you know --

13            THE COURT:  Well, is there any interest in

14    exploring with plaintiffs' counsel the idea of

15    incorporating, you know, it is the first time I have heard

16    of it.  How do you -- what do you call that type of test?

17            MS. SHIN:  The assessment center.

18            THE COURT:  Assessment test or something?

19            MR. LICHTEN:  Assessment center.

20            THE COURT:  Assessment center.

21            MS. SHIN:  That option is being explored.  The exam

22    is not completed so I don't know that that will be an aspect

23    of it.  But we do have an expert who was been hired to come

24    up with a new exam to validate it.  So we believe that

25    aspect of the case has been mooted.
```

1          And I would also note that the cases, all of the

2     cases cited in the plaintiffs' papers involve, such as the

3     Boston Police case that he just mentioned, it involves

4     claims brought against one governmental defendant.  So there

5     are not the complications that are present here.

6          The only case that involved a similar type of

7     system was the New Jersey case, the Vulcan Pioneers.  And

8     that case, Your Honor, was not, in fact, a class action.  It

9     was brought by the United States.  And the United States

10    significantly not only sued the State of New Jersey but it

11    named each municipality that would be affected by any remedy

12    and eventually I believe it reached settlement.  Each of

13    those municipalities signed off on the settlement order.

14         And those concerns would be raised here if

15    municipalities are not joined.

16         I would also like to note as far as --

17         **THE COURT:**  So how do you bring that to my

18    attention?  A motion to dismiss, necessary parties not being

19    included, or how?

20         **MS. SHIN:**  I think all the necessary parties are

21    here today so long as the class is not certified.  Once the

22    class is certified there is no way these named plaintiffs

23    could adequately represent individuals who are employed in

24    any town other than these five.

25         **THE COURT:**  In other words, if I certified the

1    class, in addition to opposing the certification you would

2    move to dismiss after the class was certified because there

3    was not proper representation; is that it?

4         **MS. SHIN:**  Correct, Your Honor.  These plaintiffs

5    cannot have standing to assert the interests of individuals

6    employed in cities other than these five defendants.

7              As far as the alternative promotional exam, I do

8    want to just point out to Your Honor it is in the statute,

9    it's at Mass. General Laws, Chapter 31, Section 7 to 11.

10   And that basically lays out the process for how a

11   municipality can either use HRD's examination or choose to

12   use an alternative examination.

13             Your Honor did ask about the statute of limitations

14   question about the 2005 claims.  I am not fully prepared to

15   discuss that issue today.  But HRD does believe that the

16   2005 claims are time barred.  And we believe that the act,

17   the triggering act is when HRD gives the examination and

18   then sets out the list.  And we think this is controlled by

19   the recent Ledbetter (ph.) case.

20             And if it were otherwise, then the 2007 claims are

21   not ripe because basically the plaintiffs are suggesting

22   that their claim is triggered when promotions are made.

23   Well, no promotions have been made off the 2007 list.

24             And in their complaint plaintiffs are saying --

25        **THE COURT:**  Have they been made off the 2005 list

1    as of yet?

2         **MS. SHIN:**  They have, Your Honor.  In their

3    complaint the plaintiffs are saying look at the 2007 list,

4    see that the minorities are kind of bunched down at the

5    bottom and know that they will be discriminated against even

6    though no promotions have actually been made.

7         Well, if that's the case, then back in 2005 when

8    HRD issued the certification list, that was the triggering

9    act.  So we do believe that the claims are time barred and

10    will likely be the subject of a motion for summary judgment

11    later.

12        **THE COURT:**  Okay.

13        Anybody else want to be heard?

14        **MR. LICHTEN:**  May I, one -- I'm sorry, Your Honor.

15        **THE COURT:**  I will give you the last word.

16        Go ahead.  Did you want to be heard?

17        **MR. MORRIS:**  I'm sorry?

18        **THE COURT:**  Do you want to be heard?

19        **MR. MORRIS:**  Yes, Your Honor.

20        **THE COURT:**  Remind me who you represent.

21        **MR. MORRIS:**  Representing the City of Boston about

22    which has been some mention here.

23        **THE COURT:**  Considerably.

24        (Laughter.)

25        **MR. MORRIS:**  Yes.

1          I think it has been fleshed out by counsel as to

2    the separateness of the test.  Yes, it was not an assessment

3    center in 2005 but there were separate -- it was a written

4    exam but there were separate components or Boston only

5    questions for the 2005.

6          There was some reference to statistics on Boston.

7    I haven't seen the HRD list and it may not match up exactly

8    to the numbers that I have from the city.  But when you get

9    down, I think the plaintiffs mentioned in their brief the

10   ranking of 270 to 378 which they wanted to look at.  It is

11   very comparable to the 32, that's 108 people, 32 out of 108

12   African-Americans there, which is roughly similar to what

13   you would have from the group as a whole.

14         And one other issue I wanted to mention which I

15   don't think has come up.  It may be more of a liability

16   issue than a class certification issue, but that's the issue

17   of causation.  I think plaintiffs' counsel referenced that

18   clearly this unlawful test caused the numbers that we see

19   and the passing rates for African-Americans and to a lesser

20   extent for Hispanics.

21         But I don't know if that is something that can

22   necessarily be assumed on a class-wide basis.  In our

23   situation where we have four named plaintiffs for the City

24   of Boston, three of those individuals as I understand it

25   have graduate degrees.  And I think we'd like to explore not

```
 1    just for these four but for others who may have attained a
 2    very high level of educational achievement, whether it was
 3    this test that, this bad test that caused the overall
 4    numbers that have been referenced or whether there was some
 5    other factors in place.  Boston offered tutorials for --
 6         THE COURT:  You are saying that three of the named
 7    plaintiffs?
 8         MR. MORRIS:  For Boston.  I don't know about the
 9    other named plaintiffs but for the Boston named plaintiffs
10    who were just added to the case in March.
11         THE COURT:  They have received graduate degrees or
12    something?
13         MR. MORRIS:  A master's in criminal justice from
14    Suffolk, Boston University and Northeastern.  The other one
15    has a bachelor's degree in law enforcement.  So they all
16    have attained a fairly high level of education.
17         So it just raises question, which I don't have the
18    answers to right here, but it raises questions as to whether
19    it's a bad test that's causing --
20         THE COURT:  Typicality argument.
21         MR. MORRIS:  Yes, I think on the class issue it
22    would go to typicality, commonality, yes.
23         THE COURT:  Commonality is a better word.
24         All right.  Do you want to be heard last?
25         MR. LICHTEN:  Yes.  I'm just trying to think of
```

1    solutions, Your Honor.

2          One thing that the Court could do -- the Court has

3    considerable discretion in deciding how to certify and what

4    part of a case to certify as a class.  And the courts have

5    affirmed the wide discretion the Court has.

6          And in the Bradley case, although there were claims

7    also against the City of Lynn, Judge Saris stayed those

8    claims and those were resolved and they're still being

9    resolved long after the trial on whether the exam was valid

10   or not and what injunctive relief would be.

11         Given some of the concerns the Court expressed, the

12   Court doesn't have to certify, for instance, a class on the

13   claim that, well, some communities could have gone outside

14   the civil service law but did not.  You know, we had a

15   competing argument about that.

16         The Court could certify a limited class of those

17   individuals who took the civil service examination in 2005,

18   2006 and 2007 and certify that class only for the purposes

19   of Rule 23(b)(2), that part which allows the certification

20   when there is a need for common injunctive and declaratory

21   relief and not necessarily certify and reserve to a

22   different day whether a class will ever get certified on

23   more remedial issues or liability issues and some of these

24   other issues that we've discussed.  Because you have

25   correctly pointed out the guts of this case is we believe we

1    can show that the civil service exam has a disparate impact

2    and cannot be shown to be job related and, therefore, was

3    unlawful under Title VII and that a trial should take place.

4         Once it takes place, if we lose, then there is

5    nothing further left.  If we win, then the Court can

6    consider at that time whether -- what kind of remedial

7    relief, if any -- and you have wide discretion -- on what

8    kind of class to certify, if any, and what other communities

9    should be involved.

10        **THE COURT:**  With that suggestion of yours what

11   happens to the statute of limitations issue?

12        **MR. LICHTEN:**  Then I think it's okay because if you

13   certify the class for that purpose, I think there is

14   tolling.  Because as I understand class certification law,

15   and I've researched this somewhat, if you were to then later

16   decertify a class saying, okay, I've certified it for this

17   purpose but I am not -- a tolling would have occurred by

18   your original certification, thereby letting plaintiffs at

19   that point to know, okay, well there has been a case, there

20   has been a success but that class may not get certified on

21   damages.  And, therefore, you may have to utilize your

22   rights.

23        We don't have to get to that now because I think

24   what we need to get to is the trial on the exam itself which

25   I think there could be a conditional class certified under

1    (b)(2) just for declaratory injunctive purposes.  And that

2    would preserve everyone's rights.

3         **THE COURT:**  What do you say about that?

4         **MS. SHIN:**  I think the only class that could be

5    certified in this case would be against HRD at the liability

6    stage.  And there is simply no reason to do that because if

7    plaintiffs were to prevail and if Your Honor declares the

8    exam invalid, then it's, again, it's invalid.  And I don't

9    understand what the purpose of a class would be.

10        At the remedial stage I don't think a class is

11   appropriate for all the reasons I stated, that the

12   municipalities have to have input before Your Honor orders

13   some sort of preferential hiring.

14        So, you know, I think the benefit of --

15        **THE COURT:**  Why don't you submit to me a proposed

16   order for that narrow class that you discussed.

17        **MR. LICHTEN:**  Thank you, Your Honor.

18        **THE COURT:**  And before you do it, save yourself

19   some time and trouble.  Talk to her about it and see if by

20   some stretch you can get together and agree, although not --

21   but this would be a good vehicle for doing a couple of

22   things:

23        Getting the liability question decided, which I

24   think is at the core of this.  I have this -- what I don't

25   want to do is to take an action that may lull people into

```
1    not moving and then losing their rights because I didn't --
2    I mean, they may assume that there is going to be a class
3    and they lose their rights.  That I don't think would be
4    fair.
5              MR. LICHTEN:  Thank you, Your Honor.
6              THE COURT:  I would like to avoid that if I could.
7         MS. SHIN:  Sure, Your Honor.
8              THE COURT:  But you may be right.  Maybe class
9    certification is not a vehicle for tolling the statute of
10   limitations.  I don't know.
11             MR. LICHTEN:  Within a week, Your Honor?
12             THE COURT:  Whatever.  Take your time.  I mean, we
13   are not going anywhere.
14        MS. SHIN:  Can HRD respond to whatever order is
15   submitted by the plaintiffs, Your Honor?
16             THE COURT:  Yes.  I want him to talk to you about
17   it.
18        MS. SHIN:  Oh, okay.
19             THE COURT:  In other words, I want you people to
20   confer.
21        MS. SHIN:  If we don't agree, would we get a chance
22   to respond?
23             THE COURT:  You can have a chance to say why you
24   don't like it.
25             MS. SHIN:  Okay.
```

1          **THE COURT:**  You can submit something to me.  I

2     don't want any secrets.  I want your guidance.  I want your

3     help, both of you.

4          How much time do you need to speak with her and

5     draft something?  Don't kill yourself.

6          **MR. LICHTEN:**  Ten days, two weeks.

7          **THE COURT:**  How about three weeks?

8          **MR. LICHTEN:**  Three weeks is fine, Your Honor.

9          **THE COURT:**  All right.  So what is the date today?

10          **THE CLERK:**  April 28th.

11          (Whereupon, the Court and the Clerk conferred.)

12          **THE CLERK:**  May 19th.

13          **THE COURT:**  May 19th.

14          **MR. LICHTEN:**  Very good, Your Honor.  Thank you

15     very much.

16          (Whereupon, the Court and the Law Clerk conferred.)

17          **THE COURT:**  This suggestion of mine or request that

18     you submit within three weeks the proposed order, one thing

19     that we noticed and I neglected to bring up but I was just

20     reminded, that you haven't made clear what injunctive relief

21     you wanted anyway in the case.  Now, we don't know, what do

22     you want?  What would make you happy?  At what point do you

23     say I won?  You haven't been specific about that.

24          **MR. LICHTEN:**  That's correct, Your Honor.  Do you

25     want me to amend the complaint to be more specific?

1              **THE COURT:**  Well, I want, what I want -- yes, at

2    some point I want you to do that.  And then I want to make

3    sure that this doesn't go back and forth like a ping-pong.

4              **MR. LICHTEN:**  Correct.

5              **THE COURT:**  In other words, I am going to give her

6    a chance to respond but we are not going to have

7    surrebuttals and everything like that.  Put this case back

8    on the tracks.  And it is lucky for you guys that you did

9    because I was out expecting to shoot bear here this

10   afternoon.

11             (Laughter.)

12             **THE COURT:**  So you preempted the moment.  So don't

13   spoil it by going back and forth and back and forth.

14             **MR. LICHTEN:**  We won't, Your Honor.

15             **THE COURT:**  All right.

16             **MR. LICHTEN:**  Thank you very much.

17             **THE COURT:**  Okay?

18             I want to satisfy my law clerk here.

19             (Laughter.)

20             (Whereupon, the Court and the Law Clerk conferred.)

21             **THE COURT:**  Okay.  He says not bad.

22             (Laughter.)

23             **THE COURT:**  All right.  Thank you, everybody.

24             **THE CLERK:**  All rise.

25             Court is in recess.

1          (WHEREUPON, the proceedings were recessed at 3:35

2      p.m.)

C E R T I F I C A T E

        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.

                  /S/CAROL LYNN SCOTT

          _____

                    CAROL LYNN SCOTT
                  Official Court Reporter
                 John J. Moakley Courthouse
                 1 Courthouse Way, Suite 7204
                 Boston, Massachusetts 02210
                      (617) 330-1377