# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEDRO LOPEZ, et al.<br>Plaintiffs | )<br>)<br>) |
| v. | )<br>)<br>)  Case No. 07-CA-11693-JLT |
| CITY OF LAWRENCE, MASSACHUSETTS, et al. | )<br>) |
| Defendants | )<br>)<br>) |

## PLAINTIFFS' MOTION FOR RECONSIDERATION
## OF ORDER DENYING CLASS CERTIFICATION

### I.    INTRODUCTION.

At the class certification motion hearing in the above-titled case, this court directed plaintiffs' counsel to draft a proposed order on class certification (limited in the manner discussed by the parties and the court at the hearing), and to file such proposed order with the court. The plaintiffs' counsel did this on May 19, 2008, stating in its cover letter to the court that, should defendants file objections to the proposed order, they would file a response to such objections. On May 30, 2008, the Commonwealth defendants filed a memorandum opposing such class certification order. On May 30, 2008, that objection was joined by counsel for the City of Boston. Plaintiffs' counsel obtained the consent of counsel for the Commonwealth to file a short response to such objection, and that response was fully drafted and about to be filed when, on June 9, 2008, this court issued an order without opinion denying class certification. Accordingly, plaintiffs' counsel has now converted their "response to defendants' objections to class certification order" to a motion for reconsideration. The motion should be granted for a multitude of compelling reasons. First, plaintiffs had not yet had an opportunity to

1

respond to the Commonwealth's objections. More importantly, the assertions made in those objections, that certification was not "necessary" because if the named plaintiffs won, the decision would inure to the benefit of all "similarly situated" police officers, is patently untrue as a matter of law and fact.

Further, as demonstrated by the prior briefs filed by the plaintiffs in this case, class certification, particularly in a case such as this, challenging a statewide promotional examination as discriminatory, requires the granting of an appropriate class certification order, lest the rights of similarly situated minority police officers be extinguished for timeliness reasons. Just as in <u>Bradley, et al. v. City of Lynn, et al.</u>, 443 F.Supp.2d 145 (D. Mass. 2006) Civil Action No. 05-10213-PBS (settlement agreement annexed hereto as Exhibit A), this court should grant class certification.

II.     <u>THE COMMONWEALTH'S ASSERTION THAT A DECISION BY THIS COURT THAT THE EXAM WAS DISCRIMINATORY "WOULD INURE TO THE BENEFIT OF ALL MINORITY OFFICERS" IS FACTUALLY UNTRUE AND THEREFORE DESTROYS THE PREMISE BOTH OF THE COMMONWEALTH'S ARGUMENT AND THIS COURT'S ORDER.</u>

The Commonwealth makes the bold assertion that if this court were to find that the HRD examination violated Title VII, "any declaration that HRD's exam had a disparate impact and was not job-related would inure to the benefit of all minority officers similarly situated to the named plaintiffs." (See State Defendant's Response to Plaintiffs' Proposed Order Certifying Class dated May 30, 2008.) The court apparently adopted this reasoning since its order is "without prejudice as to the potential remedial stage." See Order dated June 9, 2008. However, the Commonwealth's assertion is simply untrue. To understand why, a little background is necessary.

2

First, as the prior briefing on this motion makes clear, and pursuant to the discussions had by the parties in open court, the Commonwealth has asserted (and the defendants do not necessarily dispute) that for the fall 2008 statewide police promotional examination for the position of sergeant, the Commonwealth has hired a well-known expert, Rick Jacobs, who the Commonwealth claims is devising a new (and hopefully nondiscriminatory) police sergeant promotional exam for civil service communities in the Commonwealth. Based on that, and at the suggestion of this court, the plaintiffs have, in this action, withdrawn without prejudice any claims for prospective injunctive relief relating to the 2008 examination, based upon the representations that a new job-related examination is being constructed. See plaintiffs' amended complaint omitting reference to future examinations, filed at the request of the court on May 30, 2008.

Based upon this amendment, the present case is confined to those minority police officers who took the statewide police sergeants examinations given by HRD from which promotions are still being made (the fall of 2005 examination which was not certified until 2006, the 2006 examination which was not certified until 2007, and the 2007 examination which was not certified until early 2008). Since under the civil service law most cities call for an exam once in every three-year period, some cities such as Boston are still promoting off of the 2005 examination list, some cities are currently promoting from the 2006 examination, and some from the 2007 examination. See plaintiffs' prior reply brief at pp. 3 to 8.

If plaintiffs are successful (as they most certainly believe they will be) in showing that HRD's police sergeant promotional examinations violated Title VII under a

3

"disparate impact" analysis, then, undoubtedly, class members will be entitled to certain remedial relief, similar, if not identical, to the remedial relief which the court ordered and approved in the Bradley case. (See settlement agreement in Bradley, which was approved by the court, and is attached hereto as Exhibit A.) This relief would likely involve requiring that certain minority candidates be provided further opportunity for promotion based on prior exam results, along with lost back pay and seniority. (See Exhibit A.)

However, if the case is not certified as a class action, the defendants will unquestionably argue that they are not required to provide any injunctive/remedial relief to non-named plaintiffs. Thus, while in their "response" to plaintiffs' proposed order certifying a class, defendants claim that "any declaration that HRD's exam had a disparate impact and was not job related would inure to the benefit of all minority officers similarly situated to the named plaintiffs," (see defendants' objection at p. 1) the defendants fail to even suggest how this is so and based upon what authority this court would be able to grant relief as occurred in the Bradley case, in the form of "shortfall" hiring or other injunctive or compensatory (back pay and seniority) relief to non-named plaintiffs, where the court has declined to certify a class.

In this regard, the law could not be clearer: In an employment discrimination suit, while the pendancy of a class action suit "tolls application of the statute of limitation," Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1381 (11th Cir. 1998), once an order denying class certification is issued, tolling of the statute of limitation ceases as soon "as the district court denies class certification." Id. at 1382. (See also Section IV infra. and the cases cited therein.)

4

Thus, by denying class certification, and without a further tolling of the statute of limitations for class plaintiffs, and given that the filing deadline under Title VII is short (180 days), the denial of class certification will extinguish the claims of the numerous minority police officers who would benefit from a determination that the sergeant promotional examination given in 2005, 2006, and 2007 is discriminatory. Without their being part of the class, those minority police officers' claims are extinguished and they would be entitled to no relief.

In its recent objection, the Commonwealth based its opposition to class certification on one First Circuit case, Dionne v. Bouley, 757 F.2d 1344 (1st Cir. 1985). Yet that case offers little assistance to the Commonwealth. First, the facts were vastly different in that the only issue in that case was the plaintiffs' request for a prospective injunction prohibiting the utilization of a Rhode Island pre-judgment garnishment statute. The court there issued only a prospective order and that prospective order ran to everyone in the state, and therefore the district court found that class action certification was not necessary. However, the First Circuit in Dionne specifically rejected the argument that class certification should be denied simply by reason of the fact that a prospective injunction would inure to the benefit of all prospective class members. More recent decisions in this circuit have specifically rejected that analysis as a reason to deny class certification. Colon v. Wagner, 462 F.Supp.2d 162, 174 (D. Mass. 2006) (distinguishing Dionne and finding that a prospective class was appropriate); New Motor Vehicles Canadian Expert, MDL 1532, 2006 WL 623591 (D. Me. 2006) (reversed on other grounds) (same); Rancourt v. Concannon, 2807 F.R.D. 14 (D. Me. 2002) (same); Yaffe v. Powers, 454 F.2d 1362 (1st Cir. 1972) (granting class certification for a

5

prospective Rule 23(b)(2) class). Moreover, in Guckenberger v. Boston University, 957 F.Supp. 306 (D. Mass. 1997), Judge Saris specifically rejected the Dionne analysis and granted class certification for prospective relief, while deferring the issue of class certification regarding "money damages." Id. at 326, fn. 17.

Thus, to the extent that the court has denied class certification, without decision, based on the Commonwealth's fallacious argument that the putative class plaintiffs will suffer no harm from such denial, this argument is simply untrue. There are literally hundreds of minority police officers who have taken the sergeants exam who have not been promoted and whose claims will be timed out if class certification is not granted. Further, it is understandable that many minority police officers in departments throughout the Commonwealth are concerned about coming forward and becoming named plaintiffs in this case, since in doing so they obviously pit themselves against their fellow non-minority police officers with respect to promotional advancement. It is very difficult for many minority police officers to come forward and claim that the statewide examination is discriminatory, when to do so will unquestionably open themselves up to ridicule and being ostracized. (See Affidavit of lead Plaintiff Abel Cano, attached hereto as Exhibit B.) Courts have recognized that such fears are a factor in determining whether or not to certify a class. Arkansas Education Association v. Board of Education of Portland, 446 F.2d 763, 765 (8th Cir. 1971) ("those teachers who remain in the school system could have a natural fear or reluctance to bring this action on an individual basis ..." for fear of retaliation); O'Brien v. Encotech Construction Services, 203 F.R.D. 346, 350 (N.D. Ill. 2001) (recognizing "a very important concern is the fear of retaliation for individual employees required to file individual claims ..."); see

also <u>Mullen v. Treasure Chest Casino, LLC</u>, 186 F.3d 620, 625 (5th Cir. 1999) (finding

that the district court had discretion to find that joinder of all class members who be

impracticable where potential class members still employed "might be unwilling to sue

individually or join a suit for fear ...").

　　　　With all respect to this court, its order denying class certification now at the

liability stage, but deferring the issue for remedy is just the opposite of the appropriate

course of action. By denying class certification now, the court will extinguish the claims

of all of the unnamed class members. Thus, if at the remedy stage the court wishes to

then certify a class for remedial purposes, all of the non-named plaintiffs' claims would

have been extinguished, and they will not be entitled to partake in the remedial phase.

　　　　This problem needs to be corrected by the court promptly. One way to do so is

to require the defendants to agree to a "tolling agreement" tolling the statute of

limitations for the class members. Another method would be to certify the class

provisionally as set forth in plaintiffs' proposed order. Another method would be to

withdraw the order denying class certification and simply defer ruling on class

certification until a later stage. However, denying class certification now does not save,

and in fact extinguishes, the non-named plaintiffs' claims.


III. **IN THE ALTERNATIVE, THIS COURT SHOULD DEFER RULING ON CLASS CERTIFICATION UNTIL IT HAS PERMITTED DISCOVERY TO BE COMPLETED AND/OR DISPOSITIVE MOTIONS TO BE FILED.**

　　　　While Rule 23 contemplates that class certification shall be considered in a timely

fashion, there is a significant trend in this district and elsewhere that consideration of

class certification may in some cases be best suited after a more detailed factual development of the record.

Under Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, a court may consider or reconsider class certification at any time. Rule 23(c)(1)(C) specifically states that "an order that grants or denies class certification may be altered or amended before final judgment." Courts have held that this rule specifically empowers district courts to alter or amend class certification orders "at any time prior to a decision on the merits." See In Re: Bashore Ford Truck Sales, Inc., 471 F.3d 1233, 1254 (11th Cir. 2006) (quoting Prado v. Bush, 221 F.3d 1266, 1273 (11th Cir. 2000) (emphasis in original)).

District courts have relied upon this rule to grant class certification when further discovery or argument has convinced the court that the prerequisites for class certification have been met despite the court's earlier denial of certification. See Kamerman v. Steinberg, 123 F.R.D. 66, 69-70 (S.D.N.Y. 1988) (granting certification upon reconsideration); Land Grantors in Henderson Union, and Webster Counties v. United States, 71 Fed.Cl. 614, 626 (Fed. Cl. 2006) (same).[1]

As more fully described below, since plaintiffs have not even received their discovery yet from the defendants in this case, nor had the opportunity to analyze the data, the plaintiffs request that this court, at the very least, reconsider and withhold a decision on class certification pending further development of the facts of this case.

---

[1]    Moreover, several circuit courts have indicated that plaintiffs should be allowed to pursue reconsideration when warranted under Rule 23(c)(1)(C). See In Re: Initial Public Offering Securities Litigation, 483 F.3d 70, 73 (2nd Cir. 2007) ("district courts have ample discretion to consider ... a revised class certification motion after initial denial"); Calderon v. Presidio Valley Farmers Association, 863 F.2d 384, 389 (5th Cir. 1989) (noting that the court had "specifically invited the district court to reconsider its decision denying class certification on remand" and citing to Rule 23(c)(1)(C)); Guiterrez v. Johnson & Johnson, 523 F.3d 187, 199 (3rd Cir. 2008) ("plaintiffs may request that the district court alter or amend its order on class certification; this request can be made at any time prior to the entry of final judgment").

This would have the further advantage of allowing the putative class plaintiffs' claims to be continued to be tolled pending such later decision on class certification. It would also allow the court to clarify the legal questions surrounding the issue of whether class certification is appropriate.

In line with the above analysis, a number of courts have held that judges have the inherent right to defer class certification until after reviewing or deciding partial summary judgment motions. See In Re: IKON Office Solutions, 191 F.R.D. 457, 461 (E.D.N.Y. 2000). In Kenavan v. Empire Blue Cross Blue Shield, 1993 WL 128012, (S.D.N.Y. 1993), the court stated:

> The court cannot say that the question whether individual class members relied on defendants' written representations poses an insurmountable barrier to proceed to rule on the parties' cross motions for summary judgment. If a dispute of material fact prevents the court from entering summary judgment for either party on the common law fraud claim, and for trial the issue of individual reliance becomes necessary, the court may revisit the class certification decision. For now, the court holds that the common issues predominate.

The Fourth Circuit has also approved of such conditional certification. Gunnells v. Health Plan Services, Inc., 348 F.3d 417, 429-430 (4th Cir. 2003) (expressly noting that the district court was aware of the possibility that individual issues could ultimately predominate and indicating that if this became a problem later, the court could take action to decertify class).

More to the point, in Moniz v. Crossland Mortgage Corp., 175 F.R.D. 1 (D. Mass. 1997), Judge Young of this Court stated:

> Calling for a motion for summary judgment before acting on the issue of class certification is somewhat unorthodox but a frequently helpful technique. Where a plaintiff class is sought, if counsel for the named plaintiff can frame a compelling motion, even for partial summary judgment, its allowance will operate with preclusive effect upon the

9

defendant and will produce a substantive record that will inform the court,
as nothing else could, of the proper parameters of the plaintiff class. . . .

Accord Mowbray v. Waste Management Holdings, Inc., 189 F.R.D. 194, 196-197 (D.

Mass. 1999) ("ordinarily the motion for class certification ... comes prior to dispositive

motions. . . . As this court as noted, however, the benefit of ruling on a partial summary

judgment motion prior to a motion for class certification lies in helping to define the

class"). These holdings apply with equal force to this case and provide ample authority

for this court to withhold ruling on class certification until the record has been more fully

developed.


IV.    **AT THE VERY LEAST, THIS COURT SHOULD CONTINUE TO TOLL THE
       STATUTE OF LIMITATIONS FOR THE PUTATIVE PLAINTIFF CLASS, AND
       ORDER THAT SUCH PUTATIVE CLASS MEMBERS RECEIVE
       APPROPRIATE NOTICE PURSUANT TO RULE 23(e).**

As argued above, up until this court's denial of class certification, the statute of

limitations for putative class members (minority police officers who took the police

sergeant's promotional exam) has been tolled under controlling precedent. See

American Pipe and Construction Company v. Utah, 414 U.S. 538 (1974). Further, once

class certification is denied, the tolling of the statute of limitations ceases. See United

Airlines, Inc. v. McDonald, 432 U.S. 385 (1977).

A number of courts have addressed the problem of what to do when a class

action case results in a denial of class certification. Courts have noted the problem that

potential class plaintiffs, having learned about the case through the press[2] or otherwise

of the pendency of such a lawsuit, are not aware that their rights are no longer protected

---

[2]    In this case there was significant press coverage when this case was filed. See, i.e. Lawsuit
Challenges Fairness of Police Test, Boston Globe, September 12, 2007 (Exhibit C); Lawrence, Methuen
Officers Claim Discrimination in Advancement Test, Eagle Tribune (Exhibit D).

10

in light of the denial of class certification. <u>See</u> <u>Culver v. City of Milwaukee</u>, 77 F.3d 908

(7th Cir. 2002) (Judge Posner). <u>See also</u> <u>Radmanovich v. Combined Insurance</u>

<u>Company of America</u>, 271 F.Supp.2d 1075 (N.D. Ill. 2003); <u>Birmingham Steel</u>

<u>Corporation v. Tennessee Valley Authority</u>, 353 F.3d 1331 (11th Cir. 2003). As Judge

Posner, writing for the Seventh Circuit, pointed out, this problem is most clearly present

when the pendency of a case, particularly one involving public employees, has been the

subject of media attention, thereby leading unnamed class members to believe that their

rights are being protected, when, in fact, by reason of the denial of class certification or

decertification, their rights have been lost. <u>Culver</u>, <u>supra</u>. at 914; <u>Radmanovich</u>, <u>supra</u>,

at 1077. Therefore, the courts in <u>Culver</u> and <u>Radmanovich</u> specifically held that when a

court fails to certify a class action, particularly after there has been publicity, it is proper,

in order to properly protect the interests of unnamed class members, to (1) toll the

statute of limitations for an additional reasonable period; and (2) during such additional

tolling period, require that the plaintiffs provide notice to all class members that the court

has denied class certification and, therefore, such putative class members must, in

order to protect their rights in the case, take affirmative action to joint the case as a

named plaintiff or their legal right to relief may be lost. <u>See</u> <u>Culver</u>, 77 F.3d at 914-915.

Indeed, in <u>Radmanovich</u>, the court held that upon denying class certification, such

notice was required. 271 F.Supp.2d at 1077-78.

　　　　Thus, to the extent the court is intent on denying class certification at this stage,

and thereby permitting the extinguishment of the putative class members' rights,

particularly where there has been media attention about this case, the court should

order notice to the affected putative class members so that they may now protect their

rights. In addition, the court should toll the statute of limitations further during this pendency.

## CONCLUSION

For all these reasons, plaintiffs request that this court grant this motion for reconsideration. First, the order denying class certification preceded the response which plaintiffs had drafted and which was about to be filed with the consent of the Commonwealth. Second, the Commonwealth's main argument that class certification is unnecessary because a decision in the named plaintiffs' favor would inure to the benefit of minority police officers similarly situated is patently untrue as such officers would be barred by the statute of limitations from seeking promotion, back pay and lost seniority, all of which are basic remedy elements in a case such as this. See Bradley v. City of Lynn, (court approved settlement agreement attached hereto as Exhibit A). Further, the court's denial of class certification with the suggestion that it can be renewed at the remedy stage, does not cure the problem that the court's recent order stops the tolling of the statute of limitations and that without notice to the putative class of this denial, particularly where this case has engendered publicity, officers will not know that they need to take action to exercise their rights. Finally, at the very least, this court should: (1) condition the denial of class certification at this time only upon the defendants entering into a "tolling agreement"; or (2) rescind the denial and, instead, order the parties to complete discovery first and then bring the motion up again, thereby allowing

tolling to continue; or (3) grant conditional certification at this time, recognizing that the matter may be revisited under Rule 23(c)(1)(C).

Respectfully submitted,

PEDRO LOPEZ, et al.

By their attorneys,

Dated:  June 13, 2008

/s/Harold L. Lichten
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO #640716
Leah M. Barrault, BBO # 661626
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document has been served on the attorney of record for each party via the court's ECF filing system on June 13, 2008.

/s/ Harold L. Lichten
Harold L. Lichten

13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, et al.,
                Plaintiffs

v.                                          CIVIL ACTION NO. 05-10213-PBS

CITY OF LYNN, et al.,
                Defendants

## SETTLEMENT AGREEMENT

All parties to this action, excluding the City of Lynn and Edward J. Clancy, Jr.,

hereby enter into this comprehensive settlement agreement, subject to the court's

approval, resolving all issues pending in the above-titled case except the claims specific

to the City of Lynn.  This agreement and the terms contained herein are intended to

effectuate and further this court's memorandum and order of August 8, 2006 (Document

127) and remedial order dated December 6, 2006, as amended February 8, 2007

(Document 154, hereinafter "remedy order"), and to apply the remedy order to the 2003

and 2005 police officer examinations.

A.    **HIRING**.

1.    Future hirings of fire fighters from the 2002 and 2004 examinations, and of

police officers from the 2003 and 2005 examinations, shall be conducted in accordance

with the methodology and procedures specified in ¶¶A(1)-A(5) of the remedy order.

Utilizing the court's shortfall methodology set forth in the remedy order, the

municipalities and numbers of shortfall minorities thereby identified for police officer or fire fighter positions are as follows:

| | Fire Shortfall | Police Shortfall |
|---|---|---|
| Ashland | | 1 |
| Bedford | | 1 |
| Belmont | 1 | |
| Beverly | | 1 |
| Boston | 8 | 18 |
| Brookline | 4 | 4 |
| Cambridge | | 6 |
| Everett | 1 | |
| Fall River | | 1 |
| Leominster | 1 | |
| Lynn | 2 | 4 |
| New Bedford | 1 | |
| North Adams | | 1 |
| North Andover | | 1 |
| Quincy | | 1 |
| Revere | 1 | 1 |
| Sharon | | 1 |
| Southbridge | | 1 |
| Taunton | 2 | |
| Waltham | | 3 |
| **TOTAL** | ▓ | ▓ |

2.    With respect to the shortfall number of 18 shown above for the City of Boston Police Department based on hirings to date from the 2003 and 2005 examinations, in light of the City's significant use of so-called PAR8 lists, the Commonwealth's Human Resources Division (HRD) will certify the names of Black candidates to the City for the so-called shortfall hiring until six Black candidates in each

2

of the next three recruit classes are hired, or the list of eligible candidates is exhausted. HRD will certify names to the City first from the Boston residents on the 2003 list who were not reached, then from Boston residents on the 2003 and 2005 lists who were, reached but did not sign the certification, and finally, if necessary, from the 2005 list, non-Boston residents who had selected Boston as an employment location as of May 21, 2007. However, any candidate hired pursuant to this paragraph shall not be entitled to back pay under Section B of this agreement.

3.    With respect to the City of Boston and any future hiring of police officers from the 2005 exam after April 1, 2007, should the City (1) hire non-resident veterans, but fail to exhaust the list of non-resident veterans; or (2) hire non-resident, non-veterans (having exhausted the list of non-resident veterans), then upon completion of such hiring, the parties will conduct a shortfall analysis in the same manner as provided in paragraph 1 or paragraph 2 above, and if such shortfalls are found, subsequent hiring for the Boston Police Department will include the consideration of additional shortfall candidates from the 2003 and 2005 lists, in addition to the number of 18 shown above. However, any candidate hired pursuant to this paragraph shall not be entitled to back pay under Section B of this agreement.

**B.    BACK PAY AND CREDITABLE SERVICE.**

4.    The Commonwealth shall pay back pay, including retirement contributions, to or on behalf of those class members who were (1) hired later than would otherwise have occurred under the parties' "delay" analysis; or (2) hired as a result of the court's remedy order on shortfall hiring, subject to the following procedures and limitations:

3

a.     The Commonwealth shall pay a total amount not to exceed $1,450,000 in full satisfaction of all claims for back pay, other compensation, and lost retirement contributions.  The breakdown by category for such payment shall be as follows:

      (1.)     Firefighters hired as a result of shortfall hiring - $400,000;

      (2.)     Firefighters whose hiring was delayed - $250,000;

      (3.)     Police Officers hired as a result of shortfall hiring - $500,000;

      (4.)     Police Officers whose hiring was delayed - $300,000.

5.     All eligible class members described above in paragraphs 4(a)(1)-(4) shall receive a pro rata share of the amounts set forth in paragraphs 4(a)(1)-(4) for their respective sub-groups utilizing the following procedure and formula:

a.     For shortfall hires for both police and fire (excluding those hired pursuant to paragraphs 2 and 3), each candidate shall, upon his or her hiring, receive the same gross payment (which the parties approximate will be $18,750).

b.     Minority candidates already hired, who have been identified by the parties as delay candidates, shall be paid a pro rata share of the amount set aside to compensate their sub-group, which sum shall be based upon the relative lengths of their respective hiring delays.  Compensation under paragraph (a) above and this paragraph (b) shall be subject to the claims procedure set forth in the following paragraphs.  It is estimated that there are approximately 22 police delay candidates and 19 fire delay candidates, which would yield an average payment of approximately $13,415. The estimated distribution of delay candidates is as follows:

|  | Police Delay | Fire Delay |
|---|---|---|
| Barnstable | 1 | |
| Boston | 15 | 11 |
| Brockton | | |
| Brookline | | 1 |
| E. Bridgewater | 1 | |
| Fitchburg | 3 | |
| Gardner | | 1 |
| Lynn | | 2 |
| New Bedford | | 1 |
| Revere | 1 | |
| Taunton | | 1 |
| Waltham | | 2 |
| Wareham | 1 | |
| TOTAL | ▨ | ▨ |

c.    Upon submission of required documentation to make payment and subject to appropriation, the Commonwealth shall pay to the current or former municipal employer of each class member who is entitled to a payment hereunder, for the benefit of such class member, the gross amount to which she or he is entitled. As required by law, the employer shall deduct from the gross amount the applicable state, federal and Medicare tax withholdings, and the employer and employee shares of retirement contributions, and shall pay the net benefit to such employee.

d.    The employer shall transmit the employer and employee shares of retirement contributions to the appropriate retirement board. Upon request, this court will issue an appropriate order directed to such municipality and applicable retirement board, if necessary, to effectuate this settlement agreement and in furtherance of section B of the remedy order.

6.    Plaintiffs' and Intervenors' counsel, working cooperatively with HRD and its counsel, will attempt to identify and locate every individual who may be entitled to (1) be considered for shortfall hiring under Section A of this settlement agreement; and/or (2) a payment under Section B of this settlement agreement. Each individual so identified and located shall be sent a notice in the form attached hereto as Exhibit A, A1 (in the case of Boston Police candidates), or B which shall notify said individual of his or her rights under this settlement agreement. In addition, HRD will post a copy of this notice to class members on its website and the Plaintiffs' counsel and Intervenors may take whatever additional steps they deem appropriate to contact potential class members entitled to relief under this settlement agreement. In addition to informing said class members of their rights under this settlement agreement, the notice will also enclose a claim form to be agreed upon by the parties.

7.    After waiting 45 days from the time notices are first sent out with claim forms, and after taking reasonable efforts to contact all potential class members, plaintiffs' counsel shall identify all firefighters and police officers entitled to a so-called "delay" payment and shall tentatively calculate the pro rata shares to be distributed to such class members. Plaintiffs' counsel shall then present to the Commonwealth, the Intervenors, and this court a proposed distribution of said funds, and the Commonwealth shall distribute such funds upon approval by the court.

8.    For those class members who are hired as police officers or firefighters under the shortfall procedures set forth herein, payment of their shares of compensation/back pay shall be made upon HRD's confirmation to Plaintiffs' counsel that such minority candidate has been hired, and such payment can be made without

6

further approval by the court. Once all shortfall hiring is completed for all of the towns/cities described in paragraph A(1) of this settlement agreement, and in the event, after a period of 90 days thereafter, that the maximum obligation set forth in paragraph B(4)(a) is not exhausted, the Commonwealth shall have no obligation to pay any remaining balance. Thereafter, HRD shall file with the court, with copies to all parties, an accounting of all sums paid out under this agreement. Once filed, no further amounts will be payable under this settlement agreement and the Commonwealth shall be released of all further liability.

**C.    ATTORNEYS' FEES AND COSTS.**

9.    Upon approval of this settlement agreement by the court, the Commonwealth shall, subject to appropriation, pay the following amounts to Plaintiffs' counsel and Intervenors' counsel in full satisfaction of all claims for attorneys' fees and costs:

1.    To the law firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., expenses in the amount of $350,000, which sum shall include all future expenses connected with this case and the disbursements set forth herein;

2.    To the law firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., attorneys' fees in the amount of $310,000 which shall include all further work necessary to supervise the distribution of compensation to class members and to carry out the provisions of this settlement agreement and the remedy order; and

3.    To the Lawyers Committee for Civil Rights attorneys' fees and expenses in the amount of $40,000, which shall include all further work

necessary to carry out the provisions of this settlement agreement and the remedy order.

D.     **MISCELLANEOUS.**

10.     To the extent permitted by law, HRD will record each shortfall candidate identified by this agreement – with the exception of Boston shortfall police candidates - with civil service seniority under Massachusetts General Laws Chapter 31, retroactive to the last date that the relevant city or town appointed a class from the examination taken by that particular candidate. For example, if a shortfall candidate took the 2002 firefighter exam, and is hired from the 2002 list, he or she will be given seniority back to the appointment date of the last class hired from the 2002 list in the relevant city or town. Each delay candidate will be given seniority retroactive to the appointment date of the previous recruit class from the examination taken by that particular candidate in the relevant city or town.   For example, if a delay candidate took the 2004 fire exam and is hired in the second class appointed from the 2004 list, he or she will be given seniority back to the appointment date of the first class hired from the 2004 list in the relevant city or town.

11.     The Plaintiffs and Intervenors shall dismiss without prejudice any claims relating to the 2006 fire fighter examination or the 2007 police officer examination. HRD shall still be responsible for compliance with Section C of the remedy order and such terms shall be extended to the 2007 police officer examination.

12.     The Plaintiffs shall dismiss with prejudice the pending state court action known as "Jacob Bradley et al v. Commonwealth of Massachusetts et al," Suffolk County (Mass.) Superior Court Civil Action No. 2005-05275-H.

8

13.     The parties agree to conduct a shortfall analysis of the MBTA police and, if one or more shortfalls are found, HRD will require the MBTA to consider shortfall candidates for hiring as provided above for other police.  If the parties are not able to agree on this provision, they will bring it to the Court for decision.


Agreed to:

For the Commonwealth:

  /s/ Paul Dietl
Paul Dietl
Acting Chief Human Resources Officer


  /s/ Sally McNeely
Sally McNeely
Director, Organizational Development Group
Human Resources Division


  /s/ Sookyoung Shin
Ronald F. Kehoe, BBO #264260
Sookyoung Shin, BBO #643713
Attorney General's Office
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200 x 2619


For the Plaintiffs:

  /s/ Shannon Liss-Riordan
Harold L. Lichten, BBO # 549689
Shannon Liss-Riordan, BBO # 640716
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

9

For the Intervenors:

  /s/  Nadine Cohen
Nadine Cohen, BBO #090040
Lawyers Committee for Civil RightsUnder Law
294 Washington Street
Boston, Massachusetts 02108
(617) 482-1145


July 30, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.
      Plaintiffs

v.

CITY OF LAWRENCE, MASSACHUSETTS,
et al.

      Defendants

Case No. 07-CA-11693-JLT

## AFFIDAVIT OF ABEL CANO Jr.

I, Abel Cano Jr., depose and state as follows

1. I am a named plaintiff in this lawsuit.

2. I have been employed with the Methuen Police Department as a police officer for ten years.

3. I took the statewide sergeants' examination which was administered in 2006 but certified in 2007. I have not been promoted off the civil service list which was created by the 2006 exam.

4. I have been a member of the Massachusetts Hispanic Law Enforcement Association ("MHLEA") for two years. I hold the position of MHLEA Director of Public Information.

5. In my capacity as a named plaintiff in this lawsuit, and as MHLEA Director of Public Information, I have spoken to many minority police officers in various communities throughout Commonwealth who have taken the sergeants' examination and either failed the exam or were never promoted as a result of such examination, and I have asked many of these minority police officers to consider joining this lawsuit as named plaintiffs. Some of these communities include, but are not limited to, Lowell, Methuen, Lawrence, Marlborough, Cambridge, Andover, and Brookton.

6. Many of officers I spoke to refused to consider joining the lawsuit because they were afraid that they their Employers would "black-ball" them from future promotional processes and that they would face retribution from their Employer as well as their co-workers.

7. In addition, many officers that I spoke to stated that where plaintiffs were seeking a class certification in this lawsuit that they would rather become part of the lawsuit through that mechanism rather than putting themselves out there as a named plaintiff and facing the risk of retaliation by their Employers.

Signed under the pains and penalties of perjury this 13th of June of 2008.

6/13/08

Abel Cano Jr.

# The Boston Globe

## City&Region

**THE BOSTON GLOBE · WEDNESDAY, SEPTEMBER 12, 2007**

FY. REGION

# Lawsuit challenges fairness of police test

## Officers passed over for supervisory roles

**By David Abel**
GLOBE STAFF

Five police officers from Lawrence and Methuen filed a federal civil rights lawsuit yesterday against the two cities and the state, contending that the state promotional exam discriminates against minority groups and has prevented their advancement within the ranks.

As a result, the officers say, the supervisors in both departments do not reflect the diversity of either city. In Lawrence, where about three-quarters of the population is majority, only two of the 39 police supervisors are members of minority groups, the officers say. And the department confirmed Methuen, which is where 10 percent minority, has no minority group members among its 26 supervisors, the officers say. The Methuen Police Department did not return calls seeking confirmation of that figure.

"These examinations have, over the last 40 years, been demonstrated in

where about three-quarters of the population is minority, only two of the 39 police supervisors are members of minority groups, the officers say and the department confirmed Methuen, which is where 10 percent minority, has no minority group members among its 26 supervisors, the officers say. The Methuen Police Department did not return calls seeking confirmation of that figure.

"These examinations have, over the last 40 years, been demonstrated to have significant adverse impact on minority (black and Hispanic) officers which not having been shown to be valid predictors of job performance," according to the lawsuit, filed in federal district court in Boston.

They say the multiple-choice format of the test, notable to constitute the essence...

# Officers file civil rights lawsuit challenging police exam

the lawsuit.

Geoffrey Boughton, a Lawrence lawyer representing the six plaintiffs in the suit James Reyes, the state's chief hiring resources officer.

Abbe and officials in the state attorney general's office and the Executive Office of Public Safety declined to comment yesterday.

Anthony Sollazzo, Peter J. McCullum said the suit was not responsible, because the exam was designed by the state.

"We don't develop the exam, so how can we take responsibility for something we haven't taken part in?" he said. "I don't have enough information to make a competent whether its discriminatory ... but we would review and consider any alternative the state offers us."

Lawrence Police Chief John J. Romero, who is the city's first Latino police chief, said he could not comment on the lawsuit because he had not seen it. But Romero said that increasing the number of minority officers in all ranks was one of his main priorities when he took over the department nine years ago.

Romero said the department is now around 30 percent Latino, up from less than 9 percent in 1998.

The case comes a year after a federal judge ruled that the state's

2003 and 2005 promotional exam discriminated against blacks and Hispanics. The judge ordered a class-action lawsuit, and those cities and towns must go back to a position. The suit filed yesterday asks the court to block the state from giving any more of the promotion exams and to halt civil service in state that is a judge found discriminatory.

"The state also spent $3.05 million to make payments against failed for hiring 66 minority candidates, including 26 in Boston with high scores on police or fire exams between 2003 and 2005 whom white candidates outscored.

At their lawyer's office in Boston this week, the officers said they worried their suit would spark a backlash, ending any hope of becoming a supervisor. But they said it was worth the risk.

Abel Cano, a 39-year-old Methuen patrolman who has a master's degree in criminal justice, said he has taken the sergeant exam twice, failing once and then passing with a score that was lower than others in the department.

The 100-point exam, given every two years, requires a score of more than 70 to become a supervisor.

"I think this exam is really outdated," said Cano, who scored a 78



Police officers who filed a federal civil rights lawsuit include (from left) Pedro Lopez, Charles DeJesus, Abel Cano, and Kevin Sledge. Richard Brooks was not available.

in 2006. "For me, a person whose native language is Spanish, it's a challenge. The questions are extremely complicated."

Kevin Sledge, 45, a patrolman in Lawrence for 14 years, said the test favors those who have more practice taking written exams. He took the exam last year for the first

time, scoring a 76, but was passed over for others who scored higher.

"Some people are more practical and verbal, and those are important skills to be a police supervisor," he said.

Pedro Lopez, a 41-year-old patrolman with 10 years on the force in Lawrence, failed the exam

twice but passed last year with a score of 76. He said he plans to keep taking the test until he becomes a sergeant.

"Hopefully, by then, we'll have a better exam in place," he said.

Russell Contreras of the Globe staff contributed to this report.

PAT GREENHOUSE/GLOBE STAFF

Leah Barrault

| | |
|---|---|
| From: | ZChurch@eagletribune.com |
| Sent: | Monday, October 01, 2007 9:55 AM |
| To: | onacleba@comcast.net |
| Cc: | Leah Barrault |
| Subject: | Re: News Story re:HRD/Civil Service Suit |

### Lawrence, Methuen officers claim discrimination in advancement test

A group of Hispanic and black police officers has sued the cities of Methuen and Lawrence saying the police advancement test to promote officers is unfair to minorities.

The seven-page lawsuit filed Tuesday in U.S. District Court argues the cities should distribute back pay to the five officers, who didn't advance despite taking the test. It also argues that Methuen and Lawrence should devise new, fairer advancement procedures.

Both cities use a multiple-choice test administered by the state Human Resources Division. Those scoring highest on the test | offered every two years | advance into vacant supervisory positions. The state also is named as a defendant in the lawsuit.

In the lawsuit, lawyers allege the examination is

10/1/2007

unfair to minorities and does not predict job performance quality. Officials in Lawrence and Methuen know this, the lawsuit claims, "yet have taken no action to design a less discriminatory and more job-related examination procedure."

The lawsuit also argues that the state Human Resources Division "has done nothing to implement a less discriminatory examination procedure."

The number of minorities serving in ranking positions | sergeant, lieutenant and captain | are low in Lawrence and nonexistent in Methuen. Lawrence has no minority lieutenants and captains. Two of 22 sergeants are minorities. Police Chief John Romero, who is not in a civil service position, is the first Hispanic to hold the position.

About 70 percent of Lawrence's population is minorities, according to census figures.

Romero said police have been adding minorities to their ranks in recent years, but that many of them are younger and yet to advance in the department. "When I got here it was in the single digits, I believe 8 or 9 percent. Now it's about 30 percent," he said. "I suspect as time goes on, that will translate into the supervisory rate as well."

Romero said 110 of 159 people who took the last

10/1/2007

Case 1:07-cv-11693-JLT    Document 88-5    Filed 06/13/2008    Page 3 of 6    Page 3 of 6

test for Lawrence were minorities.

"More minorities are taking the test. More minorities are coming on the jobs," he said. "Hispanics are taking the exam, they're doing well." In Methuen, no ranking officers are of a minority, lawyer Leah Barrault, who represents the five officers, said.

Abel Cano, a nine-year veteran of the Methuen force, has taken the test twice. He passed the second time.

But the grades don't address what it takes to be a supervising officer, Cano said.

"It should entail experience," Cano said. "It should entail education." Cano holds a master's degree in criminal justice.

"When I took the exam I got out of there and just (thought) 'What does that have to do with being a supervisor?'" he said.

Cano said he is getting both propped up and taken down for filing the lawsuit.

"It's hard," he said. "I'm actually getting people who are coming to me and saying 'Good for you,' and some people that are really upset and they feel that 'Here comes another person crying racial discrimination.'"

10/1/2007

Barrault said she does not have suggestions for how police promotions could be made in a less discriminatory way. She expects making changes to the process would be an "interactive process" with communities.

"The fight is really between them and the state," Methuen city attorney Peter McQuillan said. "We are more or less dragged into it because we are part of Civil Service."

As for the claim that Methuen failed to create its own, less discriminatory test, McQuillan characterized that as only an "allegation."

James Bowers, assistant city attorney in Lawrence, said the lawsuit makes "assumptions on behalf of the city that shouldn't be made."

"As far as the allegations that we discriminate against our police officers, we'll be denying those allegations," Bowers said. Like McQuillan, Bowers pointed out that Lawrence and Methuen are not exclusive in using the exam. Barrault said the lawsuit names those cities because their officers were the first to come forward.

"I'm expecting officers from other cities and towns," Barrault said.

The lawsuit comes a year after a federal judge ruled

10/1/2007

that the state civil service exam discriminated against black and Hispanic applicants for firefighting jobs. That lawsuit caused the state to revamp its civil service test.

The officers filing the lawsuit are Methuen officers Cano and Charles Dejesus and Lawrence officers Pedro Lopez, Kevin Sledge and Richard Brooks. All are Hispanic except for Sledge, who is black. The Massachusetts Hispanic Law Enforcement Association also is named as a plaintiff.

This is Cano's second legal action against Methuen this month. Last week he filed a complaint with the state Labor Relations Board asking the city of Methuen pay him $5,500 in back pay for uncredited vacation time.

Sledge also has stood out in his department. He has been put on administrative leave three times in Lawrence. Most recently was in 2005 when Salem, N.H., police charged him with assaulting his girlfriend. He also was out of the department while facing a rape charge in 1999. He was found not guilty. He did plead guilty in 2004 to a misdemeanor charge of using a fake address on a license to sell cars in New Hampshire.

Paul Dietl, administrator for the state Human

10/1/2007

Resources Division, did not reply to questions asked by e-mail.

10/1/2007