```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
       * * * * * * * * * * * * * *
 3     PEDRO LOPEZ, et al          *
                Plaintiffs,        *
 4                                 *
                   vs.             *        CIVIL ACTION
 5                                 *        No. 07-11693-JLT
       CITY OF LAWRENCE,           *
 6     MASSACHUSETTS, et al        *
                Defendants.        *
 7     * * * * * * * * * * * * * *

 8                BEFORE THE HONORABLE JOSEPH L. TAURO
                     UNITED STATES DISTRICT JUDGE
 9                  CASE MANAGEMENT CONFERENCE

10     A P P E A R A N C E S

11             PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
               18 Tremont Street, Suite 500
12             Boston, Massachusetts 02108
               for the plaintiffs
13             By:  Harold L. Lichten, Esq.
                    Shannon E. Liss-Riordan, Esq.

14

15             WILMER CUTLER PICKERING HALE and DORR LLP
               60 State Street
16             Boston, Massachusetts 02109
               for the plaintiffs
17             By: Vinita Ferrera, Esq.
                   Jeffrey S. Gleason, Esq.

18

19

20
                                   Courtroom No. 22
21                                 John J. Moakley Courthouse
                                   1 Courthouse Way
22                                 Boston, Massachusetts 02210
                                   August 12, 2008
23                                 2:35 p.m.

24

25
```

1    **APPEARANCES, CONTINUED**

2

3

4            LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
             294 Washington Street, Suite 443
             Boston, Massachusetts 02108
5            for the plaintiffs
             By: Rahsaan D. Hall, Esq.

6

7            ATTORNEY GENERAL'S OFFICE
             One Ashburton Place, Room 2019
8            Boston, Massachusetts 02108-1698
             for the defendants
9            By:  Robert L. Quinan, Jr., AAG
                  Iraida Alvarez, AAG

10

11           CITY OF METHUEN -- OFFICE OF CITY SOLICITOR
             The Searles Building
12           41 Pleasant Street
             Methuen, Massachusetts 01844
13           for the defendant City of Methuen
             By: Peter J. McQuillan, Esq.

14

15

16           CITY OF LOWELL LAW DEPARTMENT
             375 Merrimack Street
             City Hall
17           Lowell, Massachusetts 01852
             for the defendant City of Lowell
18           By: Brian W. Leahey, Esq.

19

20           LAW OFFICE OF JAMES M. BOWERS
             261 Common Street
21           Lawrence, Massachusetts 01840
             for the defendants
22           By: James M. Bowers, Esq.

23

24

25

1      **APPEARANCES, CONTINUED**

2

3              MORGAN, BROWN & JOY, LLP
               200 State Street, 11th Floor
4              Boston, Massachusetts 02109
               for the defendant City of Boston
5              By: Robert P. Morris, Esq.

6

7
               COLLINS, LOUGHRAN & PELOQUIN
8              320 Norwood Park South
               Norwood, Massachusetts 02062
9              for the defendant City of Worcester, MA
               By: Laurie W. Engdahl, Esq.
10

11

12

13

14

15

16

17

18

19

20

21                    CAROL LYNN SCOTT, CSR, RMR
                       Official Court Reporter
22                  One Courthouse Way, Suite 7204
                     Boston, Massachusetts 02210
23                        (617) 330-1377

24

25

1                          P R O C E E D I N G S

2              **THE CLERK:**  Civil action No. 07-11693, Pedro Lopez,

3      et al versus the Commonwealth of Massachusetts, et al.

4              Counsel please come forward and identify themselves

5      for the record.

6              **THE COURT:**  Good afternoon, everybody.  We have got

7      the whole Bar here.

8              (Laughter.)

9              **THE CLERK:**  Please identify yourselves for the

10     record.

11             **MR. LICHTEN:**  For the plaintiffs Harold Lichten.

12             **MS. LISS-RIORDAN:**  Shannon Liss-Riordan.

13             **MS. FERRERA:**  Vinita Ferrera, Your Honor.

14             **MR. GLEASON:**  Jeff Gleason, Your Honor.

15             **MR. HALL:**  Rahsaan Hall, Your Honor.

16             **MR. QUINAN:**  Your Honor, I'm Assistant Attorney

17     General Rob Quinan for the state defendants.  And with me is

18     Assistant Attorney General Iraida Alvarez.

19             **MR. MORRIS:**  Robert Morris for the defendant City

20     of Boston.

21             **MR. LEAHEY:**  Brian Leahey for the defendant City of

22     Lowell.

23             **MR. McQUILLAN:**  Peter McQuillan for the defendant

24     City of Methuen.

25             **MR. BOWERS:**  James Bowers for the defendant City of

 1    Lawrence.

 2            **MS. ENGDAHL:**  Laurie Engdahl for the defendant City

 3    of Worcester.

 4            **THE COURT:**  Okay.  Sit down, everybody.

 5            Thank you for coming in.  The first thing I am

 6    going to take up with you, not that it is even a matter of

 7    priority or order, is I want you to know that we are going

 8    to continue with this case even though the plaintiffs have

 9    taken an interlocutory appeal of my denial of class

10    certification.  I don't think that that interlocutory appeal

11    should in any way slow down the handling of the case so we

12    are going to go forward.

13            And then there is the, the next thing I want to

14    take up is the motion of the Massachusetts Association of

15    Minority Law Enforcement Officers' motion to intervene as

16    plaintiffs.  I don't know what the reaction of the parties

17    may be to that motion.

18            My inclination is to deny the motion but with the

19    understanding that I would give that Massachusetts

20    Association of Minority Law Enforcement Officers an

21    opportunity to file an amicus brief which would be helpful

22    to me anyway.

23            And so that is the way I think that is going to go.

24    Now, does anybody want to speak to that?  Anybody feel

25    strongly one way or the other about that issue?

1          **MS. FERRERA:**  Your Honor, Vinita Ferrera from

2    Wilmer Cutler Pickering Hale and Dorr.

3          We have been retained by MAMLEO and by the New

4    England Chapter of the NAACP to represent them in this case.

5    And we obviously filed a motion to intervene on their

6    behalf.

7          Your Honor, our position certainly is that both of

8    those parties ought to be in the case for both the liability

9    and the damages phases of the case.  In particular we

10   understand that with respect to some of the issues that were

11   raised in terms of the adequacy of representation of the

12   other plaintiffs for the various tests that are involved and

13   the different plaintiffs and different jurisdictions, we

14   think that those are exactly the interests that MAMLEO and

15   the NAACP are capable of representing and ought to represent

16   in this case.

17         So we believe that it is appropriate for them to

18   be --

19         **THE COURT:**  Who is supposed to represent them now?

20         **MS. FERRERA:**  Well, Your Honor, I understand --

21         **THE COURT:**  Where is the failure?

22         **MS. FERRERA:**  Your Honor, I understand that one of

23   the issues that was raised by the defendants in the class

24   certification motions or in opposition to the class

25   certification motion was the fact that because the

1    individual plaintiffs are not from all municipalities in

2    Boston and because some of them may have taken one test and

3    not another test, that there was some question as to whether

4    or not they were able to adequately represent all of the

5    individuals affected by this test.

6         **THE COURT:**  Whether they had standing to?

7         **MS. FERRERA:**  Not necessary -- the standing issue

8    was raised, Your Honor.  Obviously we believe that there is

9    standing but that the whole purpose of MAMLEO in particular

10   and the NAACP is to represent the interests of those

11   communities as a whole.

12        So we think we can bring something to the table

13   both with respect to the liability issues as well as the

14   remedy issues which I know Your Honor has bifurcated.

15        **THE COURT:**  Well, I know that you would represent

16   the parties, the putative parties very professionally; but I

17   am going to stick with it.  I am going to deny the motion to

18   add you, add your client as parties.  But I will permit the

19   filing of an amicus brief, and maybe even more than one.

20        In other words, one might be on liability.  The

21   other might be on remedy.  And I can assure you that those

22   briefs will be read with great care by me.  And I am sure

23   they will be very helpful.  Okay.  I just want to keep

24   things as simple as possible.

25        **MS. FERRERA:**  Thank you, Your Honor.

1          **THE COURT:**  Thank you.

2          Then we have, I want to get a little report card on

3     the discovery that I have already authorized.  Now, we have

4     had -- I authorized extensive data production which my

5     memory, if my memory serves me correctly, every time you

6     come in everybody tells me everybody is getting along great

7     and the production is being made in a satisfactory manner

8     and satisfactory speed.

9          Is that still so or did I mishear the last time we

10    were here?

11         **MR. LICHTEN:**  Yes, it's been provided.  There have

12    been delays but these are not delays for which I'm casting

13    any aspersions.  We now have most of the data.  There are

14    small other data sets that I have been emailing the Attorney

15    General's Office and they have been forthcoming.  So I have

16    no issue there.

17         So our expert has now been crunching the numbers.

18    He's been crunching the numbers now for about a month.  He

19    has some preliminary findings and is in the process of

20    having more findings.  That's on the issue of disparate

21    impact on the various exams in question.

22         **THE COURT:**  Now, you are turning this over to your

23    expert?

24         **MR. LICHTEN:**  Yes.

25         **THE COURT:**  This material.

1          And I take it as part of the plan you are going to

2     turn the expert's report over --

3          **MR. LICHTEN:**  Absolutely.

4          **THE COURT:**  -- to the defendants so that you can

5     then all be talking about the same case.

6          **MR. LICHTEN:**  Exactly.

7          And one of the things that I was going to propose

8     today that we could accomplish is a cut-off date for our

9     providing our expert report and their providing their expert

10    report.  We have actually agreed on proposed timelines for

11    that.

12         **THE COURT:**  Okay.  Tell me what they are.

13         **MR. LICHTEN:**  We have proposed that we will

14    hopefully submit, we will submit our proposed expert reports

15    by September 30th and they would supply their counter expert

16    reports by November 30th.

17         **THE COURT:**  Anybody have any comment about that?

18         **MR. QUINAN:**  Yes, Your Honor.

19         **THE COURT:**  Go ahead.

20         **MR. QUINAN:**  On behalf of the state defendants,

21    this Court has bifurcated this case into a liability stage

22    and a remedial stage I think quite appropriately.  There are

23    a number of important legal questions pending before the

24    Court as stated in the state defendant's and I believe the

25    other defendants' affirmative defenses that need to be taken

1    up by the Court.

2            One of them, for example, is the issue of standing

3    with respect to some or all of these plaintiffs.  Another

4    has to do with the statute of limitations.  There is a very

5    tight statute of limitations under Title VII.  We maintain

6    that these plaintiffs or most of them at least do not

7    satisfy the statute of limitations.

8            There is also the issue of whether my client the

9    Commonwealth can be held liable under Title VII because the

10   Human Resources Division of the Commonwealth is not the

11   employer of any of these plaintiffs.  And that ties in to a

12   sovereign immunity or Eleventh Amendment argument as well.

13           We believe that these are dispositive issues.

14       **THE COURT:**  Potentially they are.

15       **MR. QUINAN:**  Potentially dispositive issues.  And

16   that plaintiffs' counsel has indicated that discovery can be

17   wrapped up, at least the plaintiffs' discovery by the end of

18   September.  They will issue their expert report at the end

19   of September.

20           I think that's an appropriate time at which then

21   the Commonwealth would file its motion for summary judgment

22   in this case within some reasonable period of time after

23   September 30th.  The Court should consider whether that is

24   going to dispose of all claims against at least the state

25   defendants, perhaps all defendants and only at that juncture

1    does it make sense for taxpayer dollars to be expended on a

2    very expensive expert to counter their expert on an issue

3    that may be totally immaterial.  I mean, it may not --

4         **THE COURT:**  Well, what you are saying is very

5    attractive and it makes some sense; but it overlooks the

6    distinct possibility that he is going to file an expert

7    report that your expert would agree with.  I mean, in other

8    words, you may not be as far apart on the merits as you

9    think you are.  And we might be able to approach it from a,

10   come up with some solution that is very practical that

11   avoids the expense.

12        You know, you are talking about expense.  I mean,

13   it can be very expensive to litigate some of these points

14   that you raise which are interesting and far from frivolous

15   and make a good, you know, it is a good suggestion that they

16   are going to have to be dealt with sometime.

17        But I think it would be better to sort of clear it

18   out first and see if your expert says what they say.  And

19   maybe we would move a little closer to trying to settle this

20   case.

21        **MR. QUINAN:**  I would be very happy to reengage on

22   settlement matters with the plaintiffs after their expert

23   report has been filed.

24        **THE COURT:**  And you file yours so that --

25        **MR. QUINAN:**  Well, that's where we get into what

```
1    could easily be a hundred thousand dollar expense for the

2    Commonwealth.

3           THE COURT:  It will cost you at least that to do

4    all the motions that you are talking about.

5           MR. QUINAN:  No, Your Honor, we --

6           THE COURT:  You don't think so?

7           MR. QUINAN:  We don't pay anything.  Unfortunately

8    we are all salary and --

9           (Laughter.)

10          MR. QUINAN:  -- there is no expense at all.

11          THE COURT:  You get paid like judges.

12          MR. QUINAN:  Yes.

13          (Laughter.)

14          MR. QUINAN:  So, you know, there are no taxpayer

15   dollars beyond my usual pitiful salary.  And so we would

16   ask --

17          THE COURT:  Let's hear what plaintiffs say about

18   this.

19          MR. LICHTEN:  They obviously have the right to have

20   legal issues heard.  The question is when they should have

21   that right.

22          There is nothing to prevent them from filing

23   motions to dismiss at any time while we proceed with

24   discovery.

25          What I think is extremely inequitable is the idea
```

1    that it is okay for us to expend hundreds of thousands of

2    dollars providing that expert information, give it to them

3    and then they say, oh, well, they need all these dispositive

4    motions so that the case should be put on hold for many

5    months while we now have your expert reports.  We have

6    unlimited time to prepare for that while we make the

7    dispositive motions.

8         I think the Court's suggestion is more appropriate.

9    That is, both sides should exchange their expert witness

10   reports to see how far we are off or not off.  And then at

11   that time -- now, I believe that because it is going to be a

12   bench trial, Your Honor, because a lot of these issues --

13        **THE COURT:**  Let's make sure we all agree on that.

14        **MR. LICHTEN:**  Yes.

15        **THE COURT:**  I think somebody filed for a jury.  I

16   don't see how it is going to be a jury trial --

17        **MR. LICHTEN:**  I don't see that.

18        **THE COURT:**  Well, I have to deal with it.  I mean,

19   there has been a jury demand.  I may have to deal with the

20   motion to strike that.

21        Does everybody agree that it is a bench trial?

22        **MR. LEAHEY:**  Judge, Brian Leahey on behalf of the

23   City.  I may have filed a motion for a jury trial because

24   that's the standard.  I would go back and check.

25        It does sound like these are questions of applying

1    the facts that may or may not be agreed to and applying the

2    law to it.  I will check on that to see if I may have been

3    the one who filed that.  And I will check into that.

4           THE COURT:  Well, I mean, I am not angry, I am not

5    going to get angry at anybody who wants a jury rather than a

6    bench trial.  That is not the purpose of my question.

7           I just want to make sure that everybody understands

8    what it is going to be and we have an agreement as to that.

9           MR. LEAHEY:  I am aware of your position on that,

10   Judge.

11          THE COURT:  Well, what is your position?

12          MR. LEAHEY:  I have my own thoughts.  I need to

13   confer with my client just to make sure.  I don't foresee a

14   problem with a bench trial but I still need to get approval

15   from my client.

16          THE COURT:  Okay.  That is reasonable.

17          MR. QUINAN:  I would say pretty much the same

18   thing, Your Honor.  We did put a jury demand in our answer.

19          THE COURT:  Sometimes you do that as a matter of

20   course, I understand.

21          MR. QUINAN:  Well, I think this is a matter that I

22   would want the Governor's Chief Legal Counsel to weigh in

23   on --

24          THE COURT:  Okay.

25          MR. QUINAN:  -- before we waive the jury.  And just

1    to get back for a moment to this issue of the expert

2    reports --

3              **THE COURT:**  Well, let's just stay with that.  I do

4    better if I just tack things down as we go along.

5              Is it too much to ask that you give me an answer as

6    to what kind of trial we are going to have within two weeks?

7              **MR. QUINAN:**  That's fine, Your Honor.

8              **THE COURT:**  Is that a reasonable amount of time?

9              **MR. LEAHEY:**  Certainly, Your Honor.

10             **THE COURT:**  All right.  So on or before whatever

11   two weeks from now is.

12             **THE CLERK:**  August 26th.

13             **THE COURT:**  On or before August 26th, just give me

14   a filing that everybody considers that the case may be tried

15   as a bench trial.  Then that will be behind us.

16             **MR. LICHTEN:**  What I was saying, Your Honor, was

17   given that it is likely to be a bench trial, and given that

18   a number of the issues they want to raise are nevertheless

19   tied up in the facts of this case, and given that even if

20   they're successful in some of their arguments, let's say the

21   statute of limitations which only gets them out of one year

22   of the exam, not the other two years of the exam, or

23   standing which only gets them out of some cities but not a

24   lot of other large cities for which we have filed, there is

25   going to be -- at the end of the day there is going to be a

1    trial anyway.

2          So I think it would be the better, prudent approach

3    and more efficient to have that bench trial which may last a

4    couple of days and then for them to raise all their issues

5    and for those procedural issues such as when the plaintiffs

6    knew of their rights, et cetera, to be part of that trial.

7    And then for the Court to address the legal issues as part

8    of the trial decision, which is very common in bench trials.

9          And then if it gets to the center of the case, the

10   merits, which I think it will, then go on to address the

11   merits.

12         If it throws the case out, it throws the case out.

13   Rather than having all of this briefing and affidavits on

14   the issue of these procedural issues, which isn't going to

15   extinguish the case altogether anyway, and then have another

16   whole set of proceedings to go to trial.

17         I think this is the kind of case that could be done

18   more efficiently as one bench trial with all the issues

19   raised.

20         **MR. QUINAN:**  Your Honor, obviously I strongly

21   disagree with my brother counsel here.

22         At least one of the issues we intend to raise at

23   the first earliest opportunity on summary judgment is

24   dispositive, would be dispositive of all claims against the

25   state defendants.

1          Title VII only proscribes discrimination by

2     employers.  HRD is not the employer of any of these

3     plaintiffs.  I understand there is a legal argument to be

4     made here.  It is a somewhat complicated argument but

5     nevertheless that's our position, that we should be out of

6     this case altogether.

7          Therefore, I am familiar with the work that their

8     expert is doing in general terms.  My position is it's

9     entirely irrelevant.  Legally irrelevant.  Therefore, for

10    the taxpayers to be asked to expend one hundred thousand

11    dollars or more to respond to a report by an expert on a

12    matter that is not legally relevant isn't going to lead to

13    liability against the Commonwealth in this case is

14    irresponsible.  And, therefore, I believe that it should be

15    taken in stages as the Court has.

16         The next stage of the case is to wrap up discovery,

17    have plaintiffs issue whatever expert report they wish, or

18    not.  We can wrap up discovery and then we will do summary

19    judgment.  And plaintiffs can wait to file their expert

20    report until after summary judgment is decided.

21         **THE COURT:**  All right.  Go ahead.  You want to say

22    one more thing?

23         **MR. LICHTEN:**  Even if HRD was correct overruling

24    the NAACP case in 1972 and Judge Saris's case in which they

25    were held to be a defendant under Title VII, but even if

```
1    that were the case, the case will still go to trial with

2    their test being at issue, they being, leaving the cities to

3    fend for themselves.  So there is still going to be a trial

4    either way in which they're going to be actively involved.

5         THE COURT:  We are going to do it the way I

6    suggested originally.  We will take the two days that were

7    mentioned, what is it, September?

8         MR. LICHTEN:  September 30th and November 30th.

9         THE COURT:  September 30th for the plaintiffs'

10   expert report to be filed and the defendants will file

11   theirs by, what did I say?

12        THE CLERK:  November 30th.

13        THE COURT:  November 30th, okay.

14        And, of course, you are free to file whatever

15   motions you want to file in the interim.  In other words, if

16   you want to file a motion for summary judgment, you can do

17   that along the way.  But you will still have to meet this

18   discovery schedule that we are talking about.

19        Then I will bring you back here.  What about the

20   depositions that we have authorized in this case?  How many

21   depositions did I authorize?

22        MR. LICHTEN:  I think the Court --

23        THE COURT:  I certainly didn't authorize

24   any additional discovery.  I didn't authorize any

25   interrogatories or production of documents or anything like
```

1   that.

2         **MR. LICHTEN:**  You did authorize certain information

3   we have to respond to, which we are.  They responded to most

4   of the documents that you ordered that they respond to.

5         The only thing left to be done is we have taken one

6   deposition.  I think we have two others that you have

7   authorized.  Those will be taken within the month.

8         They may want to take the depositions of the

9   plaintiffs and their supervisors.  We have not objected to

10  that, although they haven't scheduled those yet.  I'm sure

11  we'll --

12        **THE COURT:**  Do you want to take those depositions?

13        **MR. QUINAN:**  Your Honor, I would ask that --

14        **MR. LICHTEN:**  I don't want to cost them all that

15  money if he's working --

16        (Laughter.)

17        **MR. QUINAN:**  Your Honor, I would ask that the Court

18  order that all discovery called for in the Court's order of

19  May 20th with the exception of depositions of the plaintiffs

20  and their supervisors be completed by September 30th.

21        We, as of today we have not received any discovery

22  from the plaintiffs.  We also have requests out to the

23  municipal defendants which were part of the Court's order of

24  May 20th.

25        We're awaiting material.  And just to keep the case

1    moving along, I would ask that all of that material be

2    provided by September 30th and the discovery be done and

3    completed --

4         THE COURT:  Let me just check.  Where is the

5    May 20th order?

6         (Whereupon, the Court and the Law Clerk conferred.)

7         MR. LICHTEN:  We accept that, Your Honor.  We

8    accept his proposal.

9         THE COURT:  Okay.  But I just want to make sure

10   that I understand what you are doing.

11        (Pause in proceedings.)

12        THE COURT:  Okay.  What I did was accept the joint

13   proposed order with respect to document discovery which is

14   where you are proceeding now and we are on the track then.

15   We have the two dates for compliance and the expert

16   affidavit exchange.  We have already done that.

17        Then I did say that the defendants may depose the

18   named plaintiffs and the named plaintiffs' direct

19   supervisors.  Has that been done?

20        MR. QUINAN:  No, Your Honor, because we haven't

21   received any discovery from the plaintiffs.

22        THE COURT:  Okay.  All right.  But you still intend

23   to do that?  That is something that you intend to do when

24   you get enough paperwork to enable you to prepare proper for

25   a deposition?

1          **MR. QUINAN:**  That's right, Your Honor.

2          **THE COURT:**  Okay.  And the defendant is going to

3     make available Sally McNeeley, second day of deposition, a

4     Guy Paris and a Vivian Lee.

5          **MR. QUINAN:**  And that I think could be done before

6     September 30th.

7          **THE COURT:**  Okay.  Now, do you plan on deposing,

8     doing your depositions, the defendants' depositions of the

9     plaintiffs by September 30th too?  Is that what you are

10    about?

11         **MR. QUINAN:**  Well, again, we haven't received

12    anything in the way of discovery so --

13         **THE COURT:**  Well, let me ask it a more direct way.

14         How long will it take you to do the depositions

15    that you intend to do?  This is now August.  Are you talking

16    about a week, an hour, five months?

17         **MR. QUINAN:**  Well, I believe that there are

18    something like ten named plaintiffs.  The issue here, they

19    allege in their complaint that they are as qualified as the

20    individuals who actually received promotions.  We need to

21    test that assertion.

22         **THE COURT:**  Just tell me how much time you need.

23         **MR. QUINAN:**  I think it's unfortunately ten

24    separate depositions.  And it might be two hours apiece.

25         And I'm not sure that it makes sense to expend that

1    time and effort of all concerned if we are going to be

2    raising dispositive legal arguments --

3        **THE COURT:**  You can't do this, you know, you want

4    to do this efficiently but you can't do it totally on the

5    cheek.  So I am trying to find out from you who has to do

6    the work what is a reasonable expectation, this being

7    August.  Will it take you thirty days to do these twenty

8    depositions?  Will it take you sixty days?

9        **MR. QUINAN:**  I would say sixty days, Your Honor.

10       **THE COURT:**  All right.  So we are talking about --

11   how about if we make it ninety days?  How about if we say

12   that you are going to get material from the defendants --

13   from the plaintiffs, what did I say?

14       **MR. QUINAN:**  By the end of August.

15       **THE COURT:**  No.

16       **MR. LEAHEY:**  You said September 30th.

17       **THE COURT:**  September 30th I'm thinking.

18       **MR. QUINAN:**  Well, I think they've indicated that

19   they could produce the written discovery by the end of

20   August.  They've told me that privately.

21       **THE COURT:**  You're talking about in addition to the

22   expert report?

23       **MR. QUINAN:**  The expert -- well, written discovery

24   by the end of August.  Expert report by the end of

25   September.

1          **THE COURT:**  Okay.

2          **MR. QUINAN:**  We will complete our depositions.  We

3     will file an expert report by the end of November.  We will

4     move for summary judgment at the appropriate time in the

5     next three months.

6          **THE COURT:**  So you will be able to get your

7     depositions done by the last working day in November?

8          **MR. QUINAN:**  Yes.

9          **THE COURT:**  Okay.  So we will adopt those as the

10    dates.

11         And then there will be no other discovery without

12    permission of the Court.  Everybody understands that.

13         **MR. LEAHEY:**  Your Honor, if I may, Brian Leahey on

14    behalf of the City of Lowell, if I may address that point.

15         The original May 20th order was between the state

16    defendants and the plaintiffs and that the municipal City of

17    Lowell wasn't part of that order.

18         It's the City of Lowell's position, as the other

19    municipalities, that we're kind of collateral in this issue.

20    The City of Lowell would at least like to take, propound

21    interrogatories and production of documents to go to the two

22    Lowell plaintiffs and possibly the state.

23         I can't imagine that we would need any other

24    documents other than other what the state has provided and

25    the plaintiff but at least the City would like that

1    opportunity just to send interrogatories to both the two

2    Lowell plaintiffs and the state defendants.

3        **THE COURT:**  I will let you take their deposition.

4    I am not going to permit any interrogatories.  My

5    experience -- not in this stage anyway.  My experience is

6    that interrogatories only lead to motions for further

7    answers and vague answers.  Every time that I succumb and

8    permit interrogatories I always regret it and I promised

9    myself I will never do it again.

10       So unfortunately for you I must have done it

11   recently because we are not going to have interrogatories.

12   But if you want to depose somebody, tell me who you want to

13   depose.

14       **MR. LEAHEY:**  It would be the two Lowell plaintiffs

15   Alvarez and Nobrega.

16       **THE COURT:**  Okay.  So you can take their

17   depositions.  How much time do you need to take them?

18       **MR. LEAHEY:**  I would think --

19       **THE COURT:**  Do you want to be on the same schedule

20   with everybody else?

21       **MR. LEAHEY:**  Certainly, yes.  I mean, I'm assuming

22   once they get noticed by the State, I mean, I can ask my

23   questions at the same time.  If they're noticed, I would

24   think, you know --

25       **THE COURT:**  You ought to be able to do that.

1      **MR. LICHTEN:**  That is what I was going to suggest.

2   That they should be deposed at the same time by the State

3   and the City of Lowell.

4      **THE COURT:**  Yes.  I think it would be very

5   productive to put it together that way.

6      **MR. LEAHEY:**  Right.

7      **MR. McQUILLAN:**  I would ask, Your Honor, Peter

8   McQuillan on behalf of the City of Methuen, that that 90-day

9   time frame would also apply to the remaining municipal

10   defendants and their respective --

11      **THE COURT:**  All right.  Our order will state that

12   everybody is to be bound by the same order, the same

13   timetable.

14      **MR. McQUILLAN:**  Thank you, Your Honor.

15      **THE COURT:**  Anything else that we should take up

16   here now?

17      **MR. LICHTEN:**  Just one other thing, Your Honor.

18      You mentioned the interlocutory appeal that the

19   plaintiffs have taken.  And I am wondering in light of this

20   revised schedule and the dispositive motions which the

21   defendants may be filing, whether the Court would entertain

22   simply issuing an order tolling the statute of limitations

23   for the potentially affected class members while this is

24   going on so as to avoid this issue of their losing their

25   claims simply by reason of the lapse of time.

1          **THE COURT:**  I don't see how -- how could they lose

2     anything?  Their case has already been filed.

3          **MR. LICHTEN:**  Well, because the Court denied class

4     certification.

5          **THE COURT:**  Oh, yes, okay.  What do you say about

6     that?

7          **MR. QUINAN:**  Well, absolutely there are no grounds

8     for such an order, Your Honor.

9          **THE COURT:**  I don't know of any, which doesn't mean

10    that there aren't any.  There are a lot of things I don't

11    know.

12         **MR. QUINAN:**  The statute of limitations has expired

13    with respect to everyone except the named plaintiffs who

14    filed this action, some of them who filed an action --

15         **THE COURT:**  When I made my decision, they had an

16    opportunity to try to beat the deadline.  Whether some did

17    or some didn't, I don't know.

18         But, anyway, the answer is I am not going to do

19    anything unless you want to file a motion.  And then I will

20    deal with the motion so there will be a record of what you

21    asked for and what I did.  And there will be a clear

22    appellate opportunity.

23         **MR. LICHTEN:**  I understand that.

24         And the final thing, Your Honor, is with respect to

25    the motion to intervene.  It's my understanding that the

1    firm Wilmer Cutler has also filed a notice of appearance on

2    behalf of some of the plaintiffs so I believe they will

3    nevertheless still be part of the case regardless.

4              And finally on that issue --

5         **THE COURT:**  We will benefit from her wisdom and we

6    will look forward to it.

7         **MR. LICHTEN:**  Would it be possible before the Court

8    denies their motion to intervene, given that the NAACP has

9    historically been part of all of this litigation for the

10   last thirty years and has great expertise in it, as does

11   MAMLEO, whether the Court would allow briefing on the issue

12   before it issues a final order deciding that they're not

13   allowed to intervene, given this long history of their

14   intervention in this type of Title VII litigation in

15   Massachusetts?

16        **THE COURT:**  Well, I am looking forward to having

17   their amicus briefs.  I don't see how making them a

18   plaintiff adds to their value as a source of information.

19        **MR. LICHTEN:**  Well, for example, just very briefly.

20   They're going to make a dispositive motion on the issue of

21   standing.  The courts have made clear that there is an

22   organizational standing that is given to organizations like

23   MAMLEO and the NAACP that may well be the anecdote to that

24   claim if it had any merit.  I don't suggest it does.

25             So it does have substance.  It's not just them

1    being part of the case.

2              **THE COURT:**  Well, I think we have plenty of issues

3    right now so I am going to leave it the way that it is.

4              **MR. LICHTEN:**  Thank you, Your Honor.

5              **THE COURT:**  Anything else that you want to take up

6    before we just establish a date to come back?

7              (Whereupon, the Court and the Clerk conferred.)

8              **THE COURT:**  You are going to be through your

9    assignments the end of November.  Rather than try to figure

10   out what to do during the holiday season, why don't I bring

11   you back here for a further conference in January, the first

12   part of January.  And we will see what else needs to be

13   done, either in terms of having a hearing on dispositive

14   motions or starting a trial or seeing if you can settle the

15   case.

16             **MR. LICHTEN:**  Thank you, Your Honor.

17             **THE COURT:**  Okay.  Is that good?

18             **MR. LICHTEN:**  Thank you.

19             **THE COURT:**  All right.  Thank you, everybody.

20             **THE CLERK:**  The date in January, January 8, 2009 at

21   12 o'clock.

22             **THE COURT:**  Is that okay with everybody?

23             **MR. LEAHEY:**  I'm sorry, what was the time?

24             **THE CLERK:**  Twelve o'clock.

25             **MR. LICHTEN:**  Thank you, Your Honor.

1          **THE COURT:**  Okay.  Thanks, everybody.

2          **COUNSEL:**  Thank you, Your Honor.

3

4          (WHEREUPON, the proceedings were recessed at 3:05

5          p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, Carol Lynn Scott, Official Court Reporter for
the United States District Court for the District of
Massachusetts, do hereby certify that the foregoing pages
are a true and accurate transcription of my shorthand notes
taken in the aforementioned matter to the best of my skill
and ability.

                /S/CAROL LYNN SCOTT


        _____

                    CAROL LYNN SCOTT
                   Official Court Reporter
                  John J. Moakley Courthouse
                 1 Courthouse Way, Suite 7204
                  Boston, Massachusetts 02210
                      (617) 330-1377