UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PEDRO LOPEZ, et al.,

                Plaintiffs,

                v.                CIVIL ACTION
                                          NO. 07-11693-JLT

CITY OF LAWRENCE, MASSACHUSETTS, the
COMMONWEALTH OF MASSACHUSETTS,
et al.,

                Defendants.

---

## THE STATE DEFENDANTS' OPPOSITION
## TO PLAINTIFFS' MOTION FOR ENLARGEMENT
## OF TIME TO FILE EXPERT REPORTS

The state defendants[1] hereby oppose the plaintiffs' motion seeking an additional thirty days in which to file a second expert report because the motion is untimely and jeopardizes the efficient disposition of this litigation, it lacks good grounds, and because the plaintiffs' belatedly-revealed proposed second expert should be disqualified on account of having previously served as the state defendants' consulting expert in an earlier iteration of this lawsuit.  Plaintiffs claim to need an additional 30 days to complete their expert submissions because, they write, the state defendants have "repeatedly refused to produce to the plaintiffs numerous relevant and key documents for their review outside of defendant's property."  Plaintiffs' Motion, docket no. 109, at 2.  This statement is thoroughly disingenuous.

---

[1]  The state defendants consist of the Commonwealth of Massachusetts and Paul Dietl, in his capacity as the Chief Human Resources Officer of the Commonwealth and head of its Human Resources Division ("HRD").

1

**I.      NO LEGITIMATE GROUND SUPPORTS PLAINTIFFS' MOTION.**

What plaintiffs wholly ignore is that this Court's Order on Document Discovery (docket no. 81) explicitly states that, with respect to seven separate categories of documents in HRD's possession (comprising nearly two thousand pages of documents), the "State Defendant [HRD] shall make available for review by the other parties' counsel and expert witnesses, *at its office at One Ashburton Place*, all [specified, nonprivileged, and preserved] documents[.]" *Id.* at ¶¶ 6-9, 12-14 (emphasis supplied).[2]  Many of these highly confidential documents contain deeply personal information, such as the social security numbers, home addresses, and home telephone numbers, of hundreds of police officers throughout the state who are not parties to this lawsuit.  Quinan Aff., ¶ 5.  This Court's discovery order expressly stated that "the Court is ordering the State Defendant to make the specified [confidential] documents available to counsel for the other parties, and the other parties' expert witnesses, *for inspection at One Ashburton Place in Boston*, notwithstanding the provisions of the state Fair Information Practices Act, Mass. Gen. Laws chapter 66A, and regulations promulgated thereunder." *Id.* at ¶ 26.  But in recognition of the legally-protected privacy rights of non-parties, the Court also forbade non-HRD viewers of these documents from recording or copying any personal data without prior Court authorization.  *Id.*

---

[2] This Court's detailed order on document discovery was carefully negotiated and drafted by counsel for the plaintiffs and the state defendants. *See* docket nos. 79-2 and 81 (both entitled "Joint Proposed Order on Document Discovery").  The Order, which entered on May 20, 2008, called for the state defendants to produce to the other parties 25 separate categories of documents relating to police sergeant promotional examinations administered by HRD between 2003 and 2007.  In response, the state defendants have made available to plaintiffs' counsel and principal expert witness thousands of pages of documents, including permitting plaintiffs' counsel and expert to view *every single* document in HRD's paper files pertaining to the four sergeant examinations administered from 2005 to 2007 (with the exception only of a handful of privileged documents for which HRD produced a privilege log).  Affidavit of Assistant Attorney General Robert L. Quinan, Jr. ("Quinan Aff."), attached hereto as Exhibit A, at ¶¶ 3-4.

Plaintiffs' counsel personally acknowledged in writing that "public safety promotional examinations and documentation that reflects the methods and processes by which such employment tests and validation measures are constructed or implemented present an extraordinarily compelling case for confidentiality."  *See* Agreement for the Protection of Highly Confidential Material, attached hereto as Exhibit B, at 1.  Plaintiffs' counsel executed this agreement "acknowledg[ing] that the lack of stringent controls over such highly confidential documentation can simply *destroy* the value, integrity, and validity of promotional examinations."  *Id.* (emphasis supplied).  For these reasons, the state's counsel has gone as far as possible under the Court's order, state law, and the parties' agreements, to make confidential documents readily available to plaintiffs' counsel and experts.  In fact, the latter have spent, collectively, several dozen hours at One Ashburton Place, alone in conference rooms, reviewing this material.  Quinan Affidavit, ¶ 8.  No request by the plaintiffs for on-site access to the documents called for in the Court's discovery order has ever been refused.  *Id.*  Indeed, plaintiffs' expert has even been permitted unsupervised access to these documents after normal business hours.  *Id.*  There is simply no basis in fact for any assertion that the state defendants have been "uncooperative" in the discovery process.

Plaintiffs' motion instead rests on a repudiation of its own agreements, especially the one articulated in its joint proposed order on document discovery that called for on-site *only* inspection of certain highly confidential documents protected by law.  *See*, *e.g.*, Mass. Gen. Laws ch. 31, § 70; ch. 66, § 10; ch. 66A, § 2.  Recently, plaintiffs have made repeated demands on HRD for documents that (a) clearly fall outside the scope of this Court's document discovery order, notwithstanding this Court's order that "[n]o further discovery is permitted without leave of the court" (docket no. 101, ¶ 8); and (b) HRD is forbidden by state law from releasing.  Quinan Aff., ¶ 10.  Specifically, plaintiffs seek documentation from HRD containing

3

the individual answers each candidate for promotion to *lieutenant* gave to each of the lieutenant promotional examinations administered statewide between 2005 and 2007. *Id*. None of the named plaintiffs ever sat for a lieutenant promotional examination (and nor were they eligible to do so). *Id.* The plaintiffs' complaint challenges only examinations administered to *sergeant* candidates in 2005, 2006, and 2007. Docket no. 82. Massachusetts law expressly provides that "[t]he question and answer sheets of examination papers, other than essay questions and answers, *shall not be open for inspection* and may be destroyed as determined by the [head of HRD]." M.G.L. c. 31, § 70 (emphasis added). In light of the fact that HRD has complied *fully* with the Court's document discovery order, Quinan Aff. at ¶ 8, its declination to make available non-public documents *not called for* in the discovery order, and which may not be released under state law, is no basis for the plaintiffs to seek additional time for its experts to stray farther and farther away from the matters actually alleged in the plaintiffs' complaint.

The true reason the plaintiffs are asking this Court, at the eleventh hour, to extend the deadline for submission of expert reports is that, until this month, the plaintiffs never sought access to the highly confidential documents HRD was obliged to produce under ¶¶ 6-9 and 12-14 of the Court's discovery order. At the time the parties were negotiating the terms of the Court's document discovery order, counsel for the state defendants informed counsel for the plaintiffs that the documents specified in ¶¶ 6-9 and 12-14 of the joint proposed order would become available to them as soon as the Court entered the order, which it did on May 20, 2008. Quinan Aff., ¶ 6. In late June, HRD's lead attorney reminded plaintiffs' counsel in writing that many confidential documents were awaiting plaintiffs' review at One Ashburton Place. *See* Exhibit C, attached hereto. He also asked for an indication of when the plaintiffs would commence production of documents under ¶¶ 27 – 35 of the Court's discovery order. *Id.* Plaintiffs never responded all summer. Quinan Aff., ¶ 7. Not until on or about August 29,

2008, did plaintiffs' counsel contact HRD's attorney to schedule a review of HRD's highly confidential documents for September 4, 2008. *Id*. After spending four hours reviewing documents, neither plaintiffs' counsel nor their expert returned until September 16.[3] *Id*. On that date, for the first time, plaintiffs disclosed that they had retained Dr. Frank Landy as a second expert witness. *Id*. at ¶ 11. Neither on that occasion (or subsequently), nor in their motion, have plaintiffs explained or demonstrated any need for a second expert (particularly one whose area of expertise is essentially identical to that of their primary expert). *Id*.

Meanwhile, the court-imposed deadline of August 31, 2008, for plaintiffs to complete their production of document discovery to the defendants (docket no. 101, ¶ 1) came and went without the plaintiffs producing *one single page* of written discovery material. Quinan Aff., ¶ 12. The very first documents the plaintiffs ever produced in this case (within ten days of the one-year anniversary of the initial filing of plaintiffs' complaint on September 11, 2007) were copies of the plaintiffs' filings with the Massachusetts Commission Against Discrimination that plaintiffs' counsel had made in *July of 2007*. *Id.*[4] To this day, none of the eight named plaintiffs employed outside of Boston have produced a single document in response to paragraph 30 of the Court's May 20 discovery order (calling for production of plaintiffs' job performance evaluations and other documents typically found in an individual's personnel file). *Id*. at ¶ 13.

---

[3] At that point, as alluded to earlier, arrangements were made for plaintiffs' principal expert witness and three attorneys from plaintiffs' law firm to spend several days reviewing HRD's confidential documents alone in a conference room at One Ashburton Place. Quinan Aff., ¶ 7. Just prior to the filing of plaintiffs' instant motion, HRD and the plaintiffs reached an agreement in principle (as executed, *see* Exhibit B), whereby plaintiffs' expert could retain possession of copies of HRD's confidential documents for up to fourteen days under very strict confidentiality provisions, including exposing plaintiffs' expert to tort liability for any breach of the confidentiality agreement. Quinan Aff., ¶ 9.

[4] This Court ordered the plaintiffs to produce these documents in paragraph 27 of its May 20, 2008 Order. Plaintiffs finally produced responsive documents (apparently to state defendants' counsel only) on September 2, 2008. Quinan Aff., ¶ 12.

Plaintiffs' dilatory conduct and violations of the Court's discovery orders should not be rewarded in the form of substantially more time for their experts to complete work that should have been finished by now. Plaintiffs' request for a month-long delay will seriously upset the timeline envisioned by this Court for completing the discovery and expert phases of this case. Having now to respond to two expert reports (and not knowing at this point what those reports will focus on), and then coordinate responses among separate counsel for six sets of defendants,[5] places a grossly unfair burden on the defendants to meet the Court's deadline of November 30, 2008, for submission of responsive expert reports. Meanwhile, because the plaintiffs completely flouted the Court's order calling for completion of their document production by August 31 (after not having made any initial disclosure of documents earlier in the case, *see* docket no. 27), and since then have produced none or very few of the key documents called for in paragraphs 28-33 of the Court's May discovery order, *see* Quinan Aff., ¶ 14, the defendants have barely been able to commence preparations for depositions of the named plaintiffs and their supervisors, which under this Court's order must be completed by November 30, 2008. (Docket no. 101, ¶¶ 4-5) In light of the above, even granting a commensurate 30 day enlargement of the defendants' deadlines likely would be insufficient to permit the defendants to complete discovery and submit expert reports in advance of the currently scheduled January 8, 2009 next court date. This is because the sixty days following the plaintiffs' newly requested October 30 deadline for submitting an expert report will be dominated by the holiday season. Furthermore, granting plaintiffs' motion would stymie the plan the state defendants announced at the last status conference to serve and file a motion for

---

[5] Plaintiffs have recently moved this Court for leave to amend their complaint by adding 33 new plaintiffs and five new defendants, a motion that the state defendants will be opposing shortly.

6

summary judgment at the close of discovery, yet in time for the Court to hear the motion on January 8, 2009.

## II.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR SECOND PROPOSED EXPERT MUST BE DISQUALIFIED FROM THIS CASE.

Granting the plaintiffs an additional thirty days to file an expert report authored by Dr. Frank Landy would be futile in any event because Dr. Landy is subject to disqualification from serving as an expert witness so long as HRD remains a defendant in this case. For many years in the 1990's, Dr. Landy served as HRD's principal consulting expert on the development of police promotional examinations. Quinan Aff., ¶ 15. As established through discovery in this case, HRD used the same basic examination outline to construct the statewide sergeant promotional examinations being challenged in this case as that Dr. Landy helped HRD devise in the 1990's. *See* Exhibit D attached hereto. From 2000 to 2002, Dr. Landy also served as HRD's expert in litigation over the validity of (and an adverse impact on minorities allegedly associated with) HRD's police sergeant promotional examination. *Cotter et al. v. City of Boston et al.*, 193 F. Supp. 2d 323 (D. Mass. 2002), *aff'd in part and rev'd in part*, 323 F.3d 160 (1st Cir. 2003).[6] *See* Quinan Aff., ¶ 16. In connection with this work, Dr. Landy participated (with HRD's lead attorney in this case and HRD personnel) in confidential,

---

[6] As in this case, a prominent party challenging HRD's sergeant promotional examination in the *Cotter* case was an association of minority police officers (the Massachusetts Association of Minority Law Enforcement Officers or "MAMLEO"). Here, this Court has granted MAMLEO amicus status; MAMLEO's attorneys are representing the named plaintiffs employed by the City of Boston; and another named plaintiff in this case is the Massachusetts Hispanic Law Enforcement Association. In a certain sense then, this case is merely a continuation of one major facet of the *Cotter* litigation.

attorney-client privileged communications on the subject of issues that are actively in dispute in this case. Quinan Aff., ¶ 18.[7]

"[F]ederal courts have inherent authority to disqualify experts 'if necessary to preserve public confidence in the fairness and integrity of the judicial system.'" *LaCroix v. Bic Corp.*, 339 F. Supp. 2d 196, 199 (D. Mass. 2004) (*quoting Koch Refining Co. v. Jennifer L. Boudreaux, M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996), and citing other cases). "Disqualification of an expert is appropriate when a party retains an expert who previously worked for an adversary and received confidential information from the first client." *Id.* (*quoting Koch Refining* and *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996)). When an expert "switches sides" sometime after the first case is concluded,

> The court must determine whether, (1) it was objectively reasonable for the moving party to believe that it had a confidential relationship with the expert; and (2) whether the moving party disclosed confidential information to the expert that is relevant to the current litigation.

*LaCroix*, 339 F. Supp. 2d at 199-200, *citing Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 278 (S.D. Ohio 1988); *Wang v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). "Affirmative answers to both inquiries *compel* disqualification." *Id.* (emphasis added).

The following facts establish beyond doubt that the test for compulsory disqualification has been met in this instance:

---

[7] Because HRD's lead attorney in both the *Cotter* case and the case at bar is Assistant Attorney General Robert L. Quinan, Jr., who is furnishing a sworn affidavit in connection with this Opposition, HRD is presently relying as heavily on AAG Quinan's recollections of his extensive dealings with Dr. Landy as it is on the limited documentation regarding Dr. Landy's prior expert services for HRD that is currently available at One Ashburton Place. However, should it become necessary, HRD will secure additional documentation from the Commonwealth's archives, which could take some time (more time than is available to respond to the instant motion by plaintiffs), in order to support a formal motion to disqualify Dr. Landy as an expert witness.

(1) Dr. Landy had frequent contacts over a number of years with attorneys working for HRD as well as senior HRD personnel over matters pertaining to the validity of HRD's police promotional examinations (Quinan Aff., ¶¶ 15-20);[8]

(2) Highly confidential examination materials of the same type and nature as the materials subject to the agreement attached hereto as Exhibit B were disclosed to Dr. Landy while he served as HRD's consulting expert (Quinan Aff., ¶ 18);[9]

(3) Dr. Landy was a party to and/or privy to attorney-client privileged communications regarding litigation strategies for defending the validity of HRD's sergeant promotional examinations and legal advice being communicated regarding HRD's obligations under the same state and federal laws as undergird plaintiffs' complaint here (Quinan Aff., ¶ 19);[10]

(4) Dr. Landy was formally retained by HRD to serve as its expert in litigation regarding the same core issues as presented in this case (the adverse impact upon minorities, and the validity, of HRD's sergeant promotional examinations) and he was deposed on those topics (Quinan Aff., ¶ 17); and

(5) Dr. Landy was paid at least $50,000 for his services as an expert in the *Cotter* litigation alone (Quinan Aff., ¶ 21).[11]

*See Lacroix*, 339 F. Supp. 2d at 200-201; *Hewlett-Packard*, 330 F. Supp. 2d at 1093; *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001); *Mayer v. Dell*, 139 F.R.D. 1, 2-

---

[8] Here, the record would clearly support "a longstanding series of interactions, which have more likely than not coalesced to create [on Dr. Landy's part] a basic understanding of [HRD's] modus operandi, patterns of operations, decision-making process, and the like." *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D. Minn. 1986). This familiarity in turn is enough to satisfy the first prong of the compulsory disqualification test. *See Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004).

[9] In all likelihood, attorney work product was discussed with, or furnished to, Dr. Landy in connection with his work as HRD's expert in the *Cotter* case. However, this cannot be established with certainty without accessing files currently stored in the Commonwealth's archives.

[10] "[The] attorney-client 'privilege extends to the necessary intermediaries and agents [including technical experts] through whom the communications are made.'" *United States v. Salamanca*, 244 F. Supp. 2d 1023, 1025-26 (D. S.D. 2003), *quoting Conforti & Eisele, Inc. v. Div. of Bldg. & Constr., Dep't of Treasury*, 405 A.2d 487, 491 (N.J. Super. 1979). *See* E.S. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 2nd ed. (2002 & supp. 2004), 151-152.

[11] The likelihood is thus great that some of the notions and opinions that Dr. Landy would develop in connection with his review of documents pertaining to the examinations administered in 2005-2007 would rest on work that he was paid to do for HRD a few years earlier.

9

3 (D. D.C. 1991); and *Paul*, 123 F.R.D. at 280 (all discussing or applying the factors addressed above).

Among the confidential three-way communications HRD's lead attorney had with Dr. Landy and his clients (*i.e.*, senior HRD personnel) several years ago were ones concerning how the law and certain statistical analyses Dr. Landy had performed meshed in order to influence how HRD both sets the passing score on its police sergeant examinations[12] and reports the scores candidates achieve on those examinations to municipal police departments. Quinan Aff., ¶ 20. Those confidential discussions are directly relevant to core issues in dispute in this litigation. *Id.; see* Plaintiffs' Fifth Amended Complaint, ¶¶ 29 (discussing the cut score and ranking of scores) and 31 (placing at issue HRD's examinations held "over the last 20 years"). Accordingly, the integrity of this judicial proceeding is now at stake. As the *Hewlett-Packard* court noted, if experts were permitted to breach their duty of confidentiality, "they might be motivated 'to sell their opinions to . . . the highest bidder without concern about the potential confidentiality of their previous consultations.'" 330 F. Supp. 2d at 1095, *quoting Pinal Creek Group v. Newmont Mining Corp.*, 312 F. Supp. 2d 1212, 1227 (D. Ariz. 2004). Disqualifying Dr. Landy as an expert is necessary to preserve the integrity of this proceeding, ensure fundamental fairness, and prevent any possible conflict of interest. *Salamanca*, 244 F. Supp. 2d at 1026.

---

[12]  The passing (or "cut") score for the sergeant examinations being challenged in this case remained the same as the cut score employed in the examination that Dr. Landy defended in the *Cotter* case. Quinan Aff., ¶ 20.

10

## CONCLUSION

For all of the foregoing reasons, the plaintiffs' motion for enlargement of time to file plaintiffs' expert reports should be denied.[13]  Additionally, this Court should reiterate that, in light of the strong confidentiality interests at play in this case, no discovery not authorized in prior court orders should take place in the absence of a further court order.

    Respectfully submitted,

The Commonwealth of Massachusetts and
Paul Dietl, in his capacity as head of the state
Human Resources Division, by their attorneys:

MARTHA COAKLEY
ATTORNEY GENERAL

 /s/ Robert L. Quinan, Jr.
Robert L. Quinan, Jr. BBO # 553010
Assistant Attorney General
One Ashburton Place
Government Bureau
Boston, Massachusetts 02108-1598
(617) 727-2200, ext. 2554

Date:   September 27, 2008

---

[13] The state defendants have no objection to the Court enlarging by one to three days the deadline for plaintiffs to file expert reports on account of the fact that the current deadline, September 30, 2008, falls on the Jewish holiday of Rosh Hashanah.

11

## CERTIFICATE OF SERVICE

      I hereby certify that the above document will be served on September 29, 2008, by electronic notice for registered counsel and a copy will be served by first-class mail, postage pre-paid, for non-registered counsel.

                                    /s/ Robert L. Quinan, Jr.
                                    Robert L. Quinan, Jr. BBO # 553010
                                    Assistant Attorney General