UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PEDRO LOPEZ, et al.,

                Plaintiffs,

            v.                                CIVIL ACTION
                                                           NO. 07-11693-JLT

CITY OF LAWRENCE, MASSACHUSETTS, the
COMMONWEALTH OF MASSACHUSETTS,
et al.,

                Defendants.

---

## AFFIDAVIT OF ROBERT L. QUINAN, JR.

NOW COMES Assistant Attorney General Robert L. Quinan, Jr., being duly sworn, and deposes and states as follows:

1.     I have been an Assistant Attorney General for over twelve years.

2.     In December of 2007, the chief of my division assigned me to be lead counsel for the state defendants in the above-captioned case. I have assumed principal responsibility on behalf of the Commonwealth for discovery matters in this case.

3.     In response to this Court's Order on Document Discovery (docket no. 81), the principal state defendant, the Massachusetts Human Resources Division ("HRD"), under my supervision, has made available for review by the other parties' counsel and expert witnesses over five thousand pages of documents pertaining to police promotional examinations administered by HRD within the past five years.

4.     HRD permitted plaintiffs' counsel and expert to view what was, to my knowledge, every single document remaining in HRD's paper files pertaining to the four sergeant examinations administered from 2005 to 2007 (with the exception only of a handful of privileged documents for which HRD produced a privilege log).

5.     Given that many of the documents required to be produced under the Court's discovery order are highly confidential, protected from disclosure under state law (either because to make them public might destroy the integrity of the examination or because they contain deeply personal information, such as the social security numbers, home addresses, and/or home telephone numbers, of hundreds of police officers throughout the state who are not parties to this lawsuit), the discovery order expressly stated that they were to be made available to

1

plaintiffs' counsel and expert witness for inspection *only* at One Ashburton Place in Boston, where HRD is headquartered. This provision of the discovery order was agreed to in writing by plaintiffs' counsel in May of 2008.

6. Until this month, the plaintiffs have never sought on-site access to the highly confidential documents HRD was obliged to produce under ¶¶ 6-9 and 12-14 of the Court's discovery order. Back in the spring, however, at the time I was negotiating the terms of the document discovery order with plaintiffs' counsel, I informed plaintiffs' counsel that the documents specified in ¶¶ 6-9 and 12-14 of the joint proposed order would become available to them as soon as the Court entered the order, which it did on May 20, 2008.

7. In late June, I reminded plaintiffs' counsel in writing that many confidential documents were awaiting plaintiffs' review at One Ashburton Place. I also asked for an indication of when the plaintiffs would commence production of documents under ¶¶ 27 – 35 of the Court's discovery order. I never received any response from plaintiffs' counsel over the summer. Not until on or about August 29, 2008, did plaintiffs' counsel contact me to schedule a review of HRD's highly confidential documents. After spending four hours reviewing these documents on September 4, 2008, neither plaintiffs' counsel nor their expert returned until September 16. At that point, plaintiffs' counsel made arrangements with me for plaintiffs' principal expert witness and two other attorneys from plaintiffs' law firm to spend several days reviewing HRD's confidential documents alone in a conference room at One Ashburton Place.

8. With my cooperation, plaintiffs' counsel and experts collectively have spent several dozen hours at One Ashburton Place, alone in conference rooms, reviewing confidential material. I have never refused any request by the plaintiffs for on-site access to the documents called for in the Court's discovery order. Indeed, I have even permitted plaintiffs' expert unsupervised access to these documents after normal business hours (as late as 6 p.m.). In short, HRD has complied *fully* with the Court's document discovery order.

9. In fact, HRD has been more cooperative than it is obliged to be under the discovery order. Just prior to the filing of the plaintiffs' motion seeking additional time in which to file expert reports, HRD and the plaintiffs reached an agreement in principle, whereby plaintiffs' principal expert could retain possession of copies of HRD's confidential documents for up to fourteen days (albeit under very strict confidentiality provisions, including exposing plaintiffs' expert to tort liability for any breach of the new confidentiality agreement).

10. Recently, however, plaintiffs have made repeated demands on HRD for documents that (a) clearly fall outside the scope of this Court's document discovery order, and (b) HRD is forbidden by state law from releasing. Specifically, plaintiffs seek documentation from HRD containing the individual answers each candidate for promotion to *lieutenant* gave to each of the lieutenant promotional examinations administered statewide between 2005 and 2007. None of the named plaintiffs ever sat for a lieutenant promotional examination (and nor were they eligible to do so).

11. On September 16, 2008, for the first time, plaintiffs' counsel disclosed to me that plaintiffs had retained Dr. Frank Landy as a second expert witness. Plaintiffs' counsel offered me no explanation as to plaintiffs' need for a second expert (particularly one whose area of

expertise is essentially the same as that of their primary expert). Despite my inquiry, plaintiffs' counsel would not comment on what subjects each expert would address in their expert reports.

12.   Plaintiffs' counsel also have not been willing to fully address my concerns regarding the plaintiffs' failure to comply with the Court's discovery orders. The court-imposed deadline of August 31, 2008, for plaintiffs to complete their production of document discovery to the defendants came and went without the plaintiffs producing one single page of written discovery material. The very first documents the plaintiffs ever produced in this case (on September 2, 2008) were copies of the plaintiffs' filings with the Massachusetts Commission Against Discrimination that plaintiffs' counsel had authored in July of 2007.

13.   To this day, none of the eight named plaintiffs employed outside of Boston have produced a single document in response to paragraph 30 of the Court's May 20 discovery order (calling for production of plaintiffs' job performance evaluations and other documents typically found in an individual's personnel file).

14.   Plaintiffs have also produced to date very few of the key documents called for in paragraphs 28-33 of the Court's May discovery order. As a result, I have barely been able to commence preparations for depositions of the named plaintiffs and their supervisors, which under this Court's August 12 order must be completed by November 30, 2008.

15.   I have been reliably informed by senior HRD personnel that, for many years in the 1990's, Dr. Frank Landy served as HRD's principal consulting expert on the development of police examinations. I am also informed that HRD used the same basic examination outline to construct the statewide sergeant promotional examinations being challenged in this case as the one Dr. Landy helped HRD devise in the 1990's.

16.   From 2000 to 2002, Dr. Landy consulted with HRD and its attorneys as an expert in test validation methods in the course of litigation over the validity of (and an adverse impact on minorities allegedly associated with) HRD's police sergeant promotional examinations. The case Dr. Landy consulted on was pending in this Court and known as *Cotter et al. v. City of Boston et al.* My records indicate that another, former Assistant Attorney General first consulted with Dr. Landy on the *Cotter* case in the year 2000. I sent Dr. Landy a formal retention letter shortly after I was assigned to the case in 2001.

17.   I informed Dr. Landy in writing that he was being retained by HRD to address the same core issues presented in this case (namely, the alleged adverse impact upon minorities, and the validity, of HRD's sergeant promotional examinations). Eventually, following preparatory work I did with him, Dr. Landy was deposed by counsel for the Massachusetts Association of Minority Law Enforcement Officers on those topics.

18.   In connection with his work on the *Cotter* case, Dr. Landy participated with me and senior HRD personnel in confidential, attorney-client privileged communications on the subject of issues that are actively in dispute in this case. I clearly recall having a number of extended confidential discussions with Dr. Landy regarding the validity of HRD's police promotional examinations. I also have a record of having transmitted to Dr. Landy, while he served as HRD's consulting expert in the *Cotter* case, a substantial trove of highly confidential examination materials of the same type and nature as the materials protected both by the court's

discovery order and the separate confidentiality agreement HRD recently entered into with plaintiffs' counsel and expert.

19. I specifically recall that Dr. Landy was a party to and/or privy to attorney-client privileged communications that I orchestrated regarding litigation strategies for defending the validity of HRD's sergeant promotional examinations. He was also privy to legal advice I furnished my clients regarding HRD's obligations under the same state and federal laws as undergird plaintiffs' complaint in this case.

20. Among the confidential three-way communications I recall having with Dr. Landy and my clients (*i.e.*, senior HRD personnel) in 2001 were ones concerning how the law and certain statistical analyses Dr. Landy had performed meshed in order to influence how HRD both sets the passing score on its police sergeant examinations and reports the scores candidates achieve on those examinations to municipal police departments. Those confidential discussions remain to this day directly relevant to core issues in dispute in this litigation. Plaintiffs' Fifth Amended Complaint discusses both the passing score that HRD employs on its sergeant promotional examination and the ranking of scores above the passing point. The passing score for the sergeant examinations being challenged in this case remained the same as the passing score employed in the examination that Dr. Landy defended in the *Cotter* case.

21. Because it was a matter in dispute for a considerable period of time, I recall that Dr. Landy was paid at least $50,000 by the Commonwealth for his services as an expert in the *Cotter* litigation alone.

Signed and sworn to under the pains and penalties of perjury this 27th day of September, 2008.

                                            /s/ Robert L. Quinan, Jr.
                                            Robert L. Quinan, Jr.
                                            Assistant Attorney General
                                            Commonwealth of Massachusetts

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above affidavit will be served on September 29, 2008, by electronic notice for registered counsel and a copy will be served by first-class mail, postage pre-paid, for non-registered counsel.

      /s/ Robert L. Quinan, Jr.
Robert L. Quinan, Jr. BBO # 553010
Assistant Attorney General