UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,

                Plaintiffs,

v.

CITY OF LAWRENCE, et al.,

                Defendants.

CIVIL ACTION
NO. 07-11693-JLT

### AFFIDAVIT OF SALLY MCNEELY
### IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Sally McNeely, do hereby state and depose as follows:

1. I have been employed by the Human Resources Division of the Commonwealth of Massachusetts ("HRD") since May 1, 1983. My current title is "Director, Civil Service Unit" at HRD and I have held this position since 2003. The Civil Service Unit is responsible for, among other things, the administration, marking, and/or oversight of all civil service promotional examinations given annually in Massachusetts. The statements I make under oath below are based upon my personal knowledge or records maintained by HRD.

2. HRD prepares, administers, and scores a written promotional examination for police sergeant candidates every year and then releases rank-ordered eligible lists of all passing candidates.

3. Pursuant to state law (Mass. Gen. Laws ch. 31, §§ 9-11), municipalities may elect to use HRD's examination or they may conduct their own alternative police sergeant promotional examination. With respect to some communities who conduct their own

examination, HRD does not receive notification regarding the promotions that are ultimately made.

4. By contrast, municipalities must use HRD's examination for entry-level police officer positions.

5. Several municipalities (including defendants City of Springfield and City of Boston) have entered into delegation agreements with HRD, allowing them to use other testing components in addition to, or in lieu of, HRD's written exam and/or their own promotional processes. Subject to HRD's oversight approval, these municipalities can select the weights to be accorded to the different testing components.

6. For example, in 2007, Leominster and Salem supplemented HRD's written exam with "assessment centers," in which candidates are evaluated based on their performance in job simulations and/or work-related exercises. Massachusetts municipalities have sent their police sergeant candidates to independent assessment centers at least seven times in the past seven years. As documented in the attached article dated March 22, 2004, and posted on the website of the Massachusetts Municipal Association (*see* Exhibit A), HRD has long encouraged the use by municipalities of supplementary or alternative testing components, including assessment centers.

7. With the aid of a municipality-retained consultant, the municipality is responsible for developing, validating, administering, and scoring any non-HRD testing component or exam.

8. In 2002, Boston hired a testing consultant and prepared and administered its own promotional exam for police sergeant candidates.

9. In 2005, Boston, in conjunction with HRD, prepared and administered an exam that differed from the one given to all other participating municipalities in that year.

10. When a municipality wishes to make a promotional appointment, if it has not entered into a full delegation agreement with HRD, it will submit a requisition to HRD, which will in turn issue a certification list ranking the persons eligible for promotion. See Mass. Gen. Laws ch. 31, § 7. HRD does not ever take the race, color, religion, sex, or national origin of candidates into account when scoring exams. Unless an appointing authority requests a special list of sergeant promotional candidates classified by race, gender, or linguistic ability, pursuant to the requirements of Personnel Administration Rule (PAR) .10, which none of the municipal defendants have done within the past five years, HRD does not take into account the race, color, religion, sex, or national origin of candidates when creating or issuing eligible or certification lists.

11. For municipalities that have entered into full delegation agreements, technical assistance and oversight might be HRD's only role with regard to the promotional process. Typically, HRD does not receive any information from delegated communities with respect to promotions that those communities ultimately choose to make.

12. For municipalities that have not entered into delegation agreements, HRD's role after scoring the exam papers is also largely ministerial -- it creates a rank-ordered eligible list for each community based on scores, issues certification lists upon request, and records the fact of the promotions decided upon by municipal authorities, checking only to confirm that no eligible candidate was bypassed for unlawful reasons.

13. Even absent a delegation agreement, it is the responsibility of the municipality, not HRD, to make the actual promotion decisions. In making such decisions, the municipality may consider not only an individual's standing on a certification list but also his/her job performance, interview performance, education, specialized skills, criminal history, and disciplinary history.

14. A municipality may bypass a person on the certification list and select someone with a lower score, so long as it submits a written statement of reasons for the bypass to HRD. See Mass. Gen. Laws ch. 31, § 27.

15. HRD will review the bypass statement but will not substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority.

16. HRD will generally approve as sound and sufficient, for example, any request by a municipality to bypass a sergeant candidate based on a legitimate arrest or pending criminal charges.

17. The municipalities, not HRD, are responsible for the career advancement of their police officers and all promotional appointments.

18. The municipality, not HRD, hires and pays its police officers.

19. Municipalities control all relevant aspects of their police officers' employment.

20. HRD does not exercise any day-to-day control over the work activities of the plaintiffs in this case and plaintiffs obtain no financial benefit from HRD.

21. HRD does not train, transfer, assign work to, set work schedules for, supervise, discipline, or fire municipal police officers, and does not pay them fringe benefits,

worker's compensation insurance, or ERISA benefits.

22. HRD has no authority to discipline plaintiffs or other police officers or to terminate their employment.

23. Disputes between police officers and their municipal employers are adjudicated by the Civil Service Commission, not by HRD. See Mass. Gen. Laws ch. 31, §§ 2, 6C, 24, 35, and 41-43.

24. Of the municipal defendants in this case, only Springfield and the MBTA participated in the 2005 statewide sergeant's exam, which was administered in October of 2005.

25. HRD mailed the Springfield and MBTA sergeant candidates their scores on December 27, 2005, and made public the rank-ordered eligible lists for those police departments on March 24, 2006.

26. Those eligible lists expired on March 29, 2008, after which they were no longer used to make promotions. To the best of my knowledge, and based on HRD records, the last promotion to sergeant that Springfield made based on the March 2006 eligible list occurred on March 25, 2007, and the last promotion to sergeant that the MBTA Police Department made based on its March 2006 eligible list occurred on August 13, 2007.

27. The examination unique to Boston was administered in October of 2005.

28. HRD mailed Boston sergeant candidates their scores on December 16, 2005, and publicly released the rank-ordered eligible list on February 13, 2006.

29. The eligible list for Boston will remain in existence until February 12, 2009, or until the list from the October, 2008 Boston Police Sergeant exam is established.

30. HRD is a Title VII employer only of its own employees, none of whom are charged with the supervision of municipal police officers.

31. The eligible lists created from the 2007 sergeant exam are not likely to expire until October 1, 2009, at the earliest.

32. As of January 15, 2008, the eligible lists based on the 2007 statewide police promotional exam had not yet been released to the public.

Signed under the penalties of perjury this 26th day of January, 2009,

*Sally A. McNeely*

Sally A. McNeely

Use of assessment centers in hiring discussed
Case 1:07-cv-11693-GAO   Document 142-3   Filed 01/26/09   Page 7 of 8
Page 1 of 2

# Use of assessment centers in hiring discussed



*March 22, 2004*

The use of assessment centers in job placement and promotion was discussed at the March 5 meeting of the Massachusetts Municipal Personnel Association in Waltham.

Assessment centers are used to evaluate the leadership, administrative and management skills of job candidates. They can be useful when selecting executives and managers, such as fire chiefs, police chiefs, public works directors, and other management or command personnel, according to MMA Consulting Group President Mark Morse.

Job candidates participate in a series of exercises and scenarios and then are evaluated on their performance using a series of predetermined criteria called competencies. The process is designed to allow candidates to demonstrate the skills and abilities most essential to the job.

Morse said assessment centers provide a chance to see first-hand how applicants react to situations and determine solutions.

Assessment centers evaluate skills such as leadership, planning and administration, conflict management, oral communication, writing, decision-making, reasoning, problem analysis, human relations, flexibility, negotiating, customer service, management, creative thinking, and stress tolerance.

Assessment center exercises may include interviews, meeting with department personnel, program planning, a press conference, a disciplinary meeting, and a community meeting.

Candidates are evaluated by a panel of independent assessors comprising a mix of law enforcement, human resources and/or municipal management professionals. Others present include the exercise coordinators, role players, local observers and observers from the Human Resources Division (in the case of civil service positions).

Mildred Asano, deputy director of the Organizational Development Group at HRD, discussed the use of assessment centers in civil service promotions.

She defined the three instances when a community can use an assessment center during the civil service hiring process: post-list establishment; as a weighted, graded examination component; and as the sole ranking device.

For more information about the use of assessment centers in civil service promotions, call Asano at (617) 878-9744.



**TOPICS**
- Economic and Community Development
- Education
- Innovations
- Labor and Personnel
- Local Finance
- MMA News
- Municipal Government
- Public Works
- State Budget and Local Aid
- Technology and Telecommunications

**SITE FEATURES**
- Municipal Jobs
- City and Town Web Sites
- Publications
- Links
- MunEnergy
- Contact MMA

Home ▸ Labor and Personnel ▸ Use of assessment centers in hiring discussed

## Use of assessment centers in hiring discussed



Tuesday, March 23, 2004

The use of assessment centers in job placement and promotion was discussed at the March 5 meeting of the Massachusetts Municipal Personnel Association in Waltham.

Assessment centers are used to evaluate the leadership, administrative and management skills of job candidates. They can be useful when selecting executives and managers, such as fire chiefs, police chiefs, public works directors, and other management or command personnel, according to MMA Consulting Group President Mark Morse.

Job candidates participate in a series of exercises and scenarios and then are evaluated on their performance using a series of predetermined criteria called competencies. The process is designed to allow candidates to demonstrate the skills and abilities most essential to the job.

Morse said assessment centers provide a chance to see first-hand how applicants react to situations and determine solutions.

Assessment centers evaluate skills such as leadership, planning and administration, conflict management, oral communication, writing, decision-making, reasoning, problem analysis, human relations, flexibility, negotiating, customer service, management, creative thinking, and stress tolerance.

Assessment center exercises may include interviews, meeting with department personnel, program planning, a press conference, a disciplinary meeting, and a community meeting.

Candidates are evaluated by a panel of independent assessors comprising a mix of law enforcement, human resources and/or municipal management professionals. Others present include the exercise coordinators, role players, local observers and observers from the Human Resources Division (in the case of civil service positions).

Mildred Asano, deputy director of the Organizational Development Group at HRD, discussed the use of assessment centers in civil service promotions.

She defined the three instances when a community can use an assessment center during the civil service hiring process: post-list establishment; as a weighted, graded examination component; and as the sole ranking device.

For more information about the use of assessment centers in civil service promotions, call Asano at (617) 878-9744.

Also speaking at the meeting was Ruth Bramson, chief human resources officer at the Human Resources Division. She said the division's new focus is "Priority on People."

Bramson discussed the division's implementation of a new shared services model for the delivery of human resources services. Put simply, she said, the division is looking to be "faster, simpler, together."

Despite losing half its staff, the division is looking to improve service delivery, make better use of technology, take on a consultative role, focus on collaboration, and control costs.

This will require a reduction in administration and an increase in customer service/consulting and strategic planning. Bramson said the division is looking to standardize human resources polices and procedures across the executive branch, increase operational efficiency, avoid duplication, focus on deliverables, and move toward systems such as e-learning.

Bramson said the division's goal is to demonstrate its value as a strategic partner in the delivery of state services and to provide quality human resources management to all state agencies and divisions.

By MMA Member Services Coordinator Ellen Stoolmacher

< Prev    Next >

[ Back ]

**MEMBER LOGIN**
Username
Password
☐ Remember me
[Login]
Forgot your password?

No account? Register Here

**RELATED RESOURCES**
- Cost-of-Living, Inflation Data
- Massachusetts Municipal Personnel Association
- Place a Job Ad
- Labor & Personnel Links

**MEMBERS ONLY**
- MMA Health Care Cost Survey Data
- Sample Policies
- Sample Job Descriptions
- Sample Contracts