## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| PEDRO LOPEZ, et. al. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No.** |
| CITY OF LAWRENCE, et. al. | ) | **07-CA-11693-JLT** |
| | ) | |
| Defendants | ) | |

_____)

### PLAINTIFFS' STATEMENT OF MATERIAL FACTS AND OPPOSITION TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

      **A.**    **Facts Relating To The 2005 Examination And The Plaintiffs' Knowledge of the Likelihood of Their Being Promoted.**

      1.    On October 22, 2005, the Commonwealth of Massachusetts administered a statewide police sergeants' promotional exam. See Exhibits A and B.

      2.    A number of cities and towns throughout the Commonwealth, including the City of Springfield, the City of Boston, and the Massachusetts Bay Transportation Authority ("MBTA") utilized the exam for the purposes of making promotions. Id.

      3.    The Springfield police officer plaintiffs taking the exam were James Jackson, Juan Rosario, Louis Rosario, Julio Toledo, Devon Williams, and Obed Almeyda. See Exhibit A.

      4.    The MBTA police officer plaintiffs taking the exam were Lynn Davis and Royline Lamb. Id.

5.      The City of Boston police officer plaintiffs taking the exam were Shumeane Benfold, Angela-Williams Mitchell, Gwendolyn Brown, Lynette Praileau, Tyrone Smith, Eddy Chrispin, David E. Melvin, Steven Morgan, William E. Iraolo, Jose Lozano, Courtney A. Powell, James L. Brown, George Cardoza, Larry Ellison, David Singletary, Charisse Brittle-Powell, Cathenia D. Cooper-Paterson, Molwyn A. Shaw, Lamont Anderson, Gloria Kinkead, Kenneth Gaines, Murphy Gregory, Julian Turner, Neva Grice, Delores E. Facey, Lisa Venus, Rodney O. Best, Karen VanDyke, and Robert C. Young.  See Exhibit B.

6.      Police officers in the City of Springfield, the City of Boston, and the MBTA received written notice of their examination scores in late December of 2005 or early January of 2006.  See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario, and Julio Toledo attached hereto as Exhibits C-H; see also deposition of transcript of Gwendolyn Brown p. 62, attached hereto as Exhibit I;  deposition transcript of Shumeane Benford pp. 37-38, attached hereto as Exhibit J.

7.      The eligibility list- listing the rankings for the City of Boston – were not made public on the Commonwealth's Human Resource Division (HRD) website until February 13, 2006.  See Exhibit B.

8.      The eligibility lists – listing the rankings for the City of Springfield and the MBTA - were not made public on the HRD website until March 24, 2006. See Exhibit A.

9.      While the rank ordered eligibility lists for the City of Boston, City of Springfield, and the MBTA were released publicly on the HRD website on

February 13, 2006 and March 24, 2006 respectively, those eligibility lists were not sent to any of the Plaintiffs. See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario, and Julio Toledo, attached hereto as Exhibits C-H.

10.     Several of the named Plaintiffs did not immediately view the rank order eligibility list on HRD's website and several others have no recollection of when they first saw these lists.   See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, and Louis Rosario attached hereto as Exhibits C, D, E, F and G; see also deposition of transcript of Gwendolyn Brown pp. 42-43, & 62-63, attached hereto as Exhibit I;  deposition transcript of Shumeane Benford pp. 37-40, attached hereto as Exhibit J.

11.     The rank order eligibility lists made publicly available through the HRD website included lists for the City of Boston, Springfield and the MBTA. Scores are not provided and the race and ethnicity of the test taker is also not provided on the eligibility lists that were publicly available through HRD's website. Additionally, a test taker was not able to access any information about who failed the test, or how someone scored in any city or town other than their own.  See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario, and Julio Toledo, attached hereto as Exhibits C-H.

12.     The rank order eligibility lists did not provide information as to how the examination was scored, what the overall statistics demonstrated with respect to the disparate impact, or relative scores received by minority and non-minority test takers.   HRD provided absolutely no information to any of the

3

Plaintiffs as to any job-relatedness studies demonstrating the validity of the examination under EEOC standards.  See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario, and Julio Toledo, attached hereto as Exhibits C-H; see also Exhibit J (2005 rank order eligibility list for Boston).

13.    While a few of the Plaintiffs in these cities or towns received failing scores on these examinations, the vast majority of the named Plaintiffs from these cities and towns received passing scores and therefore had no way of knowing whether or not they would be reached for promotion during the duration of such eligibility lists.  See Affidavits of Gwendolyn Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario and Julio Toledo, attached hereto as Exhibits C-H; see also deposition of transcript of Gwendolyn Brown pp. 49-50, & 62-63, attached hereto as Exhibit I; deposition transcript of Shumeane Benford pp. 43-45, attached hereto as Exhibit J; deposition transcript of Lynette Praileau p. 68, attached hereto as Exhibit L.

14.    Plaintiff Gwendolyn Brown believed that as "long as the [2005] list was active, [she] always had an opportunity to be promoted" to the position of police sergeant for the Boston Police Department.   Minorities were promoted to sergeant off the previous 2002 eligibility list and when that list expired Ms. Brown was ranked number 9 and was close to being promoted.  Additionally, Boston Police Commissioners frequently request and have been granted extensions on rank order eligibility lists which according to HRD rules typically expire after 2 years, and have requested and have been granted the right for diversity reasons

to reach down on rank ordered eligibility lists and promote female supervisors in favor of male candidates with higher scores and rankings.  See Affidavit of Gwendolyn Brown, attached hereto as Exhibit C; see also deposition of transcript of Gwendolyn Brown pp. 49-50 & 62-63, attached hereto as Exhibits I.

15.    Plaintiff Shumeane Benford believed that "it was a fair expectation that [Boston] would get to [him]" for promotion to sergeant off the 2005 eligibility list despite the fact that he was ranked low on the list as compared to other candidates.  The Boston Police Department recently extended their detective promotion eligibility list for 8 years, 4 years beyond the normal shelf life for such a list, and promoted each and every police officer candidate on that list to detective.    See Affidavit of Shumeane Benford, attached hereto as Exhibit D see also deposition transcript of Shumeane Benford pp. 43-45, attached hereto as Exhibit J.

16.    Plaintiff Louis Rosario believed that the Springfield Police Department would reach him for a promotion to sergeant because he was ranked number 12 out of 27 on the rank order eligibility list, and in March of 2006 when HRD established the rank order eligibility list he was aware of at least 10 vacancies in the rank of sergeant and thus at least 10 possible promotions. According to HRD's 2N + 1 hiring formula, described below, he was almost certain that he would be reached for promotion to sergeant during the life of the civil service list created by the 2005 civil service exam.  See Affidavit of Louis Rosario, attached hereto as Exhibit G.

17.     This case was originally filed as a class action on September 11, 2007.  See Complaint (Docket No. 1).   Prior to that, Plaintiffs Pedro Lopez, Able Cano, Richard Brooks, Charles Dejesus, and Kevin Sledge filed EEOC and MCAD complaint forms with those administrative agencies as of May 29, 2007.  See EEOC and MCAD filings attached hereto as Exhibit M.    According to Supreme Court precedent, while this case remained filed as a class action, the time for class plaintiffs to file claims were "tolled."   See Crown Cork and Seal Company v. Parker, 462 US 345, 353-54 (1993); see also Plaintifffs' Sixth Motion to Amend Complaint (Docket No. 110.)

18.     On March 17, 2008, four Boston Plaintiffs, Lynette Praileau, Gwendolyn Brown, Shumeane Benford, and Angela Williams Mitchell joined the class action lawsuit.   See Fourth Amended Complaint (Docket No. 62).

19.     Prior to that, Lynette Praileau, Gwendolyn Brown, Shumeane Benford and Angela Williams Mitchell filed EEOC and MCAD complaint forms with those administrative agencies as of March 5, 2008.   See EEOC and MCAD filings attached hereto as Exhibit N.

20.     On June 9, 2008 and June 26, 2008, this Court denied class certification. See June 9, 2008 & June 26, 2008 Orders (Docket Nos. 86 & 92).

21.     On January 7, 2009, 25 additional Boston plaintiffs, 6 Springfield plaintiffs, and 2 MBTA plaintiffs who took the 2005 sergeant examination joined this lawsuit.  The Boston plaintiffs included Tyrone Smith, Eddy Chrispin, David E. Melvin, Steven Morgan, William E. Iraolo, Jose Lozano, Courtney A. Powell, James L. Brown, George Cardoza, Larry Ellison, David Singletary, Charisse

Brittle-Powell, Cathenia D. Cooper-Paterson, Molwyn A. Shaw, Lamont

Anderson, Gloria Kinkead, Kenneth Gaines, Murphy Gregory, Julian Turner,

Neva Grice, Delores E. Facey, Lisa Venus, Rodney O. Best, Karen VanDyke,

and Robert C. Young.   The 6 Springfield plaintiffs included James Jackson, Juan

Rosario, Louis Rosario, Julio Toledo, Devon Williams, and Obed Almeyda.  The

2 MBTA plaintiffs included Lynn Davis and Royline Lamb.   See Sixth Amended

Complaint (Docket No.  139).

     22.     Prior to that, these 25 additional Boston plaintiffs, 6 Springfield

plaintiffs and 2 MBTA plaintiffs filed EEOC and MCAD complaint forms with those

administrative agencies as of September 24, 2008.   See EEOC and MCAD

filings attached hereto as Exhibit O.

     23.     Promotions from these lists for Boston, Springfield and the MBTA

did not begin until, at the earliest, March 24, 2006, and continued to be made in

Springfield and the MBTA until the list expired in the beginning part of 2008 and

are continuing to be made in Boston where the list has not yet expired.   See

Affidavit of Joel Wiesen attached hereto as Exhibit P.   During this time the

Plaintiffs who took that examination believed that they might be reached for

promotion, they hoped that they would be reached for promotion, and they had

no way of knowing that they would not be reached.  See Affidavits of Gwendolyn

Brown, Shumeane Benford, Kenneth Gaines, Juan Rosario, Louis Rosario and

Julio Toledo, attached hereto as Exhibits C-H; see also deposition of transcript of

Gwendolyn Brown pp. 49-50, & 62-63, attached hereto as Exhibit I; deposition

transcript of Shumeane Benford pp. 43-45, attached hereto as Exhibit J; deposition transcript of Lynette Praileau p. 68, attached hereto as Exhibit L.

24.    According to Dr. Joel Wiesen, who has conducted *thousands* of adverse impact analyses of employment decisions, it was impossible for an adversely affected minority applicant for promotion to sergeant in the City of Boston, Springfield and MBTA to notice and evaluate the overall level of possible adverse impact of the Commonwealth's 2005 sergeant examination in the case of appointments *prior to* the completion of all hiring and/or expiration of the eligibility lists created by that examination.  Additionally, the data needed to conduct an adverse impact analyses relative to the number of applicants passing and failing the exams and in the case of the grades on the written exams was not made available to applicants by HRD and absent such necessary data it was and remains impossible for applicants to evaluate the level of possible adverse impact of the written tests.  See Affidavit of Dr. Joel Wiesen attached hereto as Exhibit P.

25.    There are three types of adverse impact analyses.  An adverse impact analysis of bottom line hiring requires knowledge of the number of people who applied and the number hired, broken down by racial/ethnic group.  An adverse impact analysis of the written test scores requires knowledge of the written test scores for all applicants, broken down by racial/ethnic group.   An adverse impact analysis of the pass/fail decisions of the written test requires knowledge of the number of applicants that took the test and the number that passed and failed.  Id.

26.     The data required to conduct an adverse impact analysis of the bottom line hiring is only available after all of the hiring based on the examination is completed and/or the eligibility list has expired.   For BPD, the plaintiffs could not have had this data until *at least* 10/24/2008, the date of the last appointments so far off the 2005 eligible list (which has not yet expired).  For Springfield and the MBTA, the plaintiffs could not have had this data until *at least* 3/24/2008, when the eligible Lists based on the 2005 exam were replaced by eligible Lists based on the 2007 sergeant exam.  The data required to conduct an adverse impact analysis of the written test scores requires knowledge of the written scores for all applicants, broken down by racial/ethnic group, and the data required to conduct an adverse impact analysis of the pass/fail decisions of the written test requires knowledge of the number of applicants that took the test and the number that passed.  This data was not made available to applicants therefore it was and is impossible for applicants to have conducted this type of analysis.  Id.

**B.     Facts Relating To The Commonwealth's Pervasive Control Over The Employment Of Police Officers And Fire Fighters In The Commonwealth Of Massachusetts.**

27.      In Massachusetts, municipalities have the option of accepting the civil service law, M.G.L. Chapter 31.  If a municipality accepts Chapter 31, the Commonwealth assumes much of the responsibility for not only for hiring, but also determining qualifications, addressing layoffs, recalls, promotions, discipline, et cetera.  See M.G.L c. 31, et al., see 2008 HRD Re-Employment List, attached hereto as Exhibit Q.

28.     The Commonwealth of Massachusetts has elected through its civil service statutes to retain extensive control over the careers of municipal police officers and fire fighters starting from their hiring, continuing through their employment, and ending with their retirement.  This control is exhaustively described by Judge Saris in Bradley, et al. v. City of Lynn, 403 F.Supp.2d 161 (D. Mass. 2005), and Bradley et al v. City of Lynn, 443 F.Supp.2d 145 (D. Mass. August 8, 2006).

29.     As Judge Saris found in her two published opinions in Bradley, et al. v. City of Lynn, 403 F.Supp.2d 161 (D. Mass. 2005), and 443 F.Supp.2d 145 (D. Mass. August 8, 2006), HRD effectively controls the entry level hiring process for all civil service police officers and firefighters in the Commonwealth.

30.     HRD's website expressly provides that is has been charged with the task of "recruit[ing] and evaluat[ing] current and potential employees to ensure fair and equal access to careers in public service and to provide qualified candidates to the agencies and municipalities of the Commonwealth." To that end HRD expressly claims "oversight of appointment/hiring process."  See Exhibit R.

31.     In order to become a police officer in a civil service town or city, including all of the towns and cities in this case, an individual interested in such position must apply for and take an examination devised, administered, scored, and promulgated by HRD.  See M.G.L. Chapter 31, §§ 5, 16, 21, 48, and 59.

32.     After those exam scores are issued, applicants may appeal their scores to HRD, and not to the municipality.  See Chapter 31, §§ 22 -24.  It is HRD, and not the municipality, that decides all such appeals of the scoring and of the test questions given.   Id.

33.     It is then HRD that determines how to rank the candidates in order of their exam scores while giving certain absolute preferences to certain individuals such as veterans or the sons and daughters of deceased police officers who died in the line of duty.  See Chapter 31, §§ 6 and 26.  See also Quinn, et al. v. City of Boston, 325 F.3d 18 (1st Cir. 2003) (describing such statutory preferences); see also Affidavit of Sally McNeeley in Support of State Defendants' Motion to Dismiss/Summary Judgment, ¶¶2, 12, 25 and 28.

34.     In response to the Bradley, et al. v. City of Lynn case, the Commonwealth has taken to "banding" candidates for initial hire such that people within a point or two of another are banded as having the same score. See Exhibit S.

35.     Recently, HRD made sudden and significant changes to scoring and establishment of eligibility lists for the 2008 sergeant promotional examinations.  HRD established a new passing point for the written component of the 2008 Boston sergeant examination and similar to candidates for initial hire is issuing the exam results in score "bands" such that people within a range of certain test scores are banded and treated as though they had the same score. The cities or towns have no role in the determination of the bands.   This is dramatic change from HRD's previous issuance of sergeant exam results to

municipalities in strict rank order by whole numbers. HRD states that its changes were recommended by HRD's experts because they believe that the sergeants' examination does meet the reliability standards that are to be expected for a knowledge test to serve as a basis for strict rank-ordered appointment. See HRD Memorandum dated February 12, 2009, attached hereto as T.

36.    It is the Commonwealth that sets the initial medical standards which each candidate for police officer must meet in order to be hired.  See Carlton v. Commonwealth of Massachusetts, 447 Mass. 791 (2006).

37.    It is the Commonwealth which is responsible for setting ongoing fitness and medical standards which police officers must adhere to during the course of their employment.  See M.G.L. Chapter 31, § 61.

38.    Even if a police officer passes the entry-level exam and all other requirements, he or she will not be reached for an appointment as a police officer in a Massachusetts civil service city or town unless his or her rank order score places them among the top three (3) candidates.  See M.G.L.Chapter 31, § 7.

39.    If a municipality attempts to bypass the highest ranked candidate without good and sufficient reason, HRD will not approve such bypass, and the individual is entitled to a hearing before the state Civil Service Commission.  See M.G.L. Chapter 31, § 27; see also Cotter v. City of Boston, 323 F.Supp.3d 160 (D. Mass. 2003).

40.    Even after a candidate has been approved for hire, he or she is subject to all of the training and academy requirements set by the Commonwealth of Massachusetts and not the city or town.  Thus, the

Commonwealth's Criminal Justice Training Council (see M.G.L. Chapter 6, §116, et. seq.) sets all of the requirements and training which a police officer candidate must go through in order to become a police officer.  Further, the Mass Criminal Justice Training Council, a state agency decides the medical standards for persons entering such local police academies.  See also, Chapter 41, § 96B. Before an individual can even go to and be hired as a police officer, or attend a Criminal Justice Training Council approved police academy, they must pass a physical agility test that is designed and administered by the Commonwealth of Massachusetts.  See Chapter 31, §61A; see also Commonwealth's Police Department Initial Hire Physical Abilities Test, attached hereto as Exhibit U.

41.    The Commonwealth and HRD set the procedures for how layoffs and recalls occur, should that become necessary.  See M.G.L. Chapter 31, §§ 42 - 44. See also Boston Chapter NAACP v. Beecher et al., 679 F.2d 965 (1982).

42.    Leaves of absence and discipline are regulated by the Commonwealth and not the municipality.  See M.G.L. Chapter 31, §§7-15, 39, and 41-43.

43.    While it is true that a municipality can request from HRD the right to administer its own promotional examination, if it does so, it must have that alternative examination reviewed and approved by HRD, and in any event it is rare that any community ever opts out of the Commonwealth's promotional exam system.  See M.G.L. c. 31, §§9-11.  For example, according to HRD, for the years 2005, 2006, and 2007, every civil service promotional exam for police officers has been devised, created, and administered by HRD with two small

exceptions, one year in the City of Leominster and one year in the City of Salem. See Affidavit of Sally McNeeley in Support of State Defendants' Motion to Dismiss/Summary Judgment, ¶¶ 5-6. Every other community has simply utilized HRD's promotional examination system and, in this case, all of the communities involved and all of the named Plaintiffs are from communities which relied upon the HRD promotional examination system and nothing else. Id. HRD has done nothing to require such communities to utilize their own examination processes for promotion. See October 29, 2008 Deposition of Sally McNeeley p. 151, attached hereto as Exhibit V.

44.    While it is true that the City of Boston has on two prior occasions created its own alternative examination, the last time it did so was in 2002 (and that was in response to a consent decree in which HRD was involved), and in the years since then Boston has simply utilized HRD's promotional exam. See Affidavit of Sally McNeeley in Support of State Defendants' Motion to Dismiss/Summary Judgment, ¶¶ 8-9.

45.    When HRD administers a police promotional exam, it devises the exam entirely on its own utilizing its in-house staff. See October 29, 2008 deposition of Sally McNeeley pp. 127- 139 attached hereto as Exhibit V; HRD exam development steps and HRD 2005 Boston sergeant examination outline attached hereto as Exhibit W. HRD creates the format for the exam and it alone determines how grading will be carried out. Id.; see also Affidavit of Sally McNeeley in Support of State Defendants' Motion to Dismiss/Summary Judgment, ¶¶2.

46.    HRD determines all issues on appeal as to whether a question should be thrown out or credit given for more than one answer, et cetera.  *See* M.G.L. c. 31, §§ 22-24; <u>see</u> <u>also</u> April 4, 2008 Deposition of Sally McNeeley pp. 24-25 attached hereto as Exhibit X.

47.    Moreover, it is HRD that tracks whether the exam has disparate impact on minority officers.  <u>See</u> HRD 2005 Boston Police Sergeant examination Disparate Impact Analysis attached hereto as Exhibit Y.

48.    HRD notifies the candidates of their score and ranks the candidates on their respective municipality eligibility list.  HRD then provides those eligibility lists to the municipalities and to the candidates.  <u>See</u> Affidavit of Sally McNeeley in Support of State Defendants' Motion to Dismiss/Summary Judgment ¶¶ 2, 25, and 28.

49.    It is the Commonwealth which requires that if there is one vacancy for a police promotional opportunity, the person hired must be among the top three on the list.  This is known as the "2N plus one" rule.  Thus, if there are three vacancies for police sergeant, those three must be picked from the top seven candidates.  Thus, even if a municipality wanted to hire more minority police officers, it normally could not do so because it must hire from the top of the list.  <u>See</u> HRD Personnel Administration Rules, PAR.09 Civil Service Appointments, attached hereto as Exhibit Z.   Moreover, if the top ranked candidate is not hired, that candidate can appeal such bypass first to HRD and then to the state Civil Service Commission which reviews all such bypasses.  HRD may not approve a

bypass that is not for just and sufficient cause.  See generally Cotter v. City of Boston, 323 F.Supp.3d 160 (D. Mass. 2003).

### C.    Facts Relating To the Commonwealth's Involvement In Police Hiring And Promotional Exam Litigation.

50.    In Cotter, et al. v. City of Boston and James Hartnett, Director of Department of Personnel Administration, 73 F.Supp.2d 62 (D. Mass. 1999) Judge Young exhaustively listed the obligations of the Commonwealth Human Resource Division under the civil service law. [1] See Id. at 65.  He noted that:

> As the Personnel Administrator of the Human Resources Division, Hartnett is charged with providing eligible lists based on test scores … when, however, the police department awards a promotional appointment to an individual other than the qualified person whose name appears highest on the list … the police department must immediately file with Hartnett a written statement of reasons for appointing the person whose name was not highest … Hartnett has the power to accept or reject the reasons given by the police department for the bypass…. Hartnett relied on this power of rejection when it prevented the police department's attempt to promote the Black police officers to the exclusion of White candidates with test scores.

Id. at 65-66.

The court went on to hold:

> Since the allegations illustrate that Hartnett was aware of and disapproved of the police department's attempt to promote the Black officers on basis of race, his failure to require the police department to justify the eventually promotion of the Black officers to the exclusion of the equally scoring White officers does not comport with basic merit principles.  Hartnett failed to assure 'fair treatment … without regard to race' and protect the White officers from arbitrary and capricious action.

---

[1] There are several other court decisions that address the Commonwealth's involvement in police hiring and promotional exam litigation.   These cases are cited and discussed in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment at pages 12-17.

Second, Hartnett has the authority to approve or disapprove specifications and qualifications submitted by an appointing authority…. Hartnett was required to disapprove and establish satisfactory qualifications and specifications.

Third, Hartnett has the authority to evaluate the qualifications of applicants for civil service positions. This broad grant of discretion … is triggered when, as is the case here, Hartnett knows that the race is the primary qualification of a selected applicant. In light of the three general statutory obligations, Hartnett's attempt to shrug off his authority to prevent what is alleged to be a known and admittedly race-based appointment policy, one that is clearly violative of basic merit principles – is unacceptable.

Id. at 66-67.

51.     In William Brackett, et al. v. Civil Service Commission, et al., 447 Mass. 233 (Mass. 2006), white police officers challenged, among other things, the actions of the Commonwealth Human Resources Division creating regulations and policies providing for so-called "special certifications" permitting the promotion of minority and female candidates to police positions, and authorizing same, even where higher scoring non-minority candidates were ranked higher on such eligibility lists. HRD was a party to that case and argued vigorously that it could authorize municipalities to engage in such race-based promotional decisions where there was evidence of a significant under-representation by minorities in supervisory law enforcement positions. In its brief to the Supreme Judicial Court, HRD extolled the extensive authority it had to determine such promotional issues in civil service communities. See Brief of the Appellee Human Resources Division of the Commonwealth of Massachusetts in

Bracket v. Civil Service Commission, 2005 WL 3954113 (Mass.).  In that brief,

the same counsel for HRD as in this case wrote:

> As both the Commission and the Superior Court determined, HRD acted within its statutory authority in adopting Rule 10 … civil service law gives HRD broad power to make rules governing the appointment and promotion of candidates for civil service positions.  G.L. Chapter 31, Sections 3 and 4. Section 3 provides that HRD's administrator shall make and amend rules which shall regulate the recruitment, selection, training, and employment of persons for civil service positions.  Rule 10 is within this grant of authority.

Id. at 38-39.

HRD went on to argue in its brief;

> In addition to this general grant of rule making authority, the legislature specifically instructed HRD to promulgate rules regarding:  promotional appointments, on the basis of merit as determined by examination, performance evaluation, seniority of service or any combination of factors which fairly test the applicant's ability to perform the duties of the position as determined by the administrator.  Chapter 31, Section 3(e).  By setting up a procedure to remedy discrimination based on race or gender, Rule 10 accomplishes this goal of fairly testing the applicant's ability. There is no statutory requirement that HRD restricts consideration for promotion to examination scores alone.

Id. at 41-42.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' STATEMENT OF MATERIAL FACTS [2]

    7.     Denied. See Pl's SOF ¶¶ 30, 31, 43, 44, and 45.

    9.     Denied. See Pl's SOF ¶¶ 30, 31, 43, 44, and 45.

    11.     Denied. See Pl's SOF ¶¶ 1, 2, 30, 31, 43, 44, and 45.

    12.     Denied. See Pl's SOF ¶¶ 30, 31, 43, 44, and 45.

---

[2] Plaintiffs here addresses only Defendants' facts which they dispute for the purposes of summary judgment.  With respect to Defendants' facts that Plaintiffs do not dispute for purposes of summary judgment, Plaintiffs reserve the right to dispute them later in this proceeding or at trial.

15.    Denied. The 2005 Boston exam did *not* differ from the exam given to all other participating municipalities that year. <u>See</u> Affidavit of Joel Wiesen, Pl's SOF, Exhibit P.

16.    Denied. HRD has done absolutely nothing to require municipalities to utilize their own examination process.   <u>See</u> Pl's SOF ¶43.

19.    Denied.  HRD's role after scoring the exam papers is far from "ministerial." <u>See</u> Pl's SOF ¶¶31-49.

21.    Denied.  HRD has significant control over promotional decisions made by municipalities.  <u>See</u> Pl's SOF ¶¶31-49.

25.    Denied. HRD has significant control over promotional appointments made by municipalities.  <u>See</u> Pl's SOF ¶¶31-49.

27.    Denied. HRD has significant control of all aspects of police officers employed in civil service city or town.    <u>See</u> Pl's SOF ¶¶27, 28, 29, 30, 35, 37, 40, 41, 42, 48, and 49.

30.    Denied. Discipline *is* regulated by HRD.  <u>See</u> Pl's SOF ¶42.

33.    Denied. HRD *is* a Title VII employer.  <u>See</u> Pl's SOF ¶50-51, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment pp. 12-16, and 17-27; <u>see also</u> <u>Bradley v. City of Lynn</u>, 403 F.Supp.161 (D. Mass. 2005), <u>Bradley v. City of Lynn</u>, 443 F.Supp.2d 145 (D. Mass. August 8, 2006.)

34.    Denied.  Springfield, MBTA *and Boston* participated in the 2005 statewide sergeants' examination. <u>See</u> Pl's SOF¶¶1-5.

36.    Denied.  The eligible list created for the 2005 Boston sergeants'

examination *has not expired* and promotions were made off this list well after March 29, 2008.  See Pl's SOF¶23; see also Affidavit of Joel Wiesen attached to Pl's SOF, Exhibit P.

     37.     Denied.  See Pl's SOF¶¶17-22.

     38.     Denied.  The 2005 examination taken by Boston plaintiffs was *not* unique to Boston.   See Affidavit of Joel Wiesen, Pl's SOF, Exhibit P.

     40.     Denied.  See Pl's SOF¶¶17-22.

     42.     HRD *is* a Title VII employer.  See Pl's SOF ¶50-51, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment pp. 12-16, and 17-27; see also Bradley v. City of Lynn, 403 F.Supp.161 (D. Mass. 2005), Bradley v. City of Lynn, 443 F.Supp.2d 145 (D. Mass. August 8, 2006.).

                                                       Respectfully submitted

                                                      PEDRO LOPEZ, et al.

                                                      By their attorneys,

Dated:  February 26, 2009            s/Harold L. Lichten___
                                                    Harold L. Lichten, BBO #549689
                                                      Shannon Liss-Riordan, BBO #640716
                                                    Leah M. Barrault, BBO # 661626
                                                      Pyle, Rome, Lichten, Ehrenberg
                                                          & Liss-Riordan, P.C.
                                                    18 Tremont St., Ste. 500
                                                    Boston, MA 02108
                                                      (617) 367-7200

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Plaintiffs' Statement Of Material Facts and Opposition to Defendants' Statement of Material Facts was served upon the Court and counsel of record via the Court's ECF filing system on February 26, 2009.

s/Harold L. Lichten_____
Harold L. Lichten