# EXHIBIT V

# O'BRIEN&LEVINE
## Court Reporting Services



**YOUR BOSTON CONNECTION...WORLDWIDE**

# Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

Transcript of the Testimony of:

# Sally McNeely

# October 29, 2008

www.court-reporting.com
mail@court-reporting.com

195 State Street
Boston, MA 02109
(617) 399-0130  888.825.DEPO(3376)

ORIGINAL

Tara L. Wosny   31692

Case 1:07-cv-11693-GAO    Document 164-23    Filed 02/26/09    Page 3 of 82

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

111

1              UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3

4

5    PEDRO LOPEZ, ET AL

6              Plaintiffs,

7    VS                          Case No. 07-CA-11693JLT

8    CITY OF LAWRENCE,

9    MASSACHUSETTS, ET AL

10             Defendants.

11

12

13             CONTINUING DEPOSITION OF SALLY McNEELY,

14        taken on behalf of the Plaintiff, pursuant to

15        the applicable provisions of the Massachusetts

16        rules of Civil Procedure, before Tara L. Wosny,

17        Notary Public and Certified Shorthand Reporter

18        within and for the Commonwealth of

19        Massachusetts, at the Offices of Pyle, Rome,

20        Lichten, Ehrenberg & Liss-Riordan, P.C., 18

21        Tremont Street, Boston, Massachusetts, on

22        Wednesday, October 29, 2008 at 1:00 p.m.

23

24

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

112

```
1           APPEARANCES:

2           PYLE, ROME, LICHTEN, EHRENBERG

3           & LISS-RIORDAN, P.C.

4           18 Tremont Street, Suite 500

5           Boston, Massachusetts 02108

6           617.367.7200

7           BY:  Harold L. Lichten, Esquire

8           lbarrault@prle.com

9           Counsel for the Plaintiffs

10

11          WILMER, CUTLER, PICKERING,

12          HALE AND DORR, LLP

13          60 State Street

14          Boston, Massachusetts 02109

15          617.526.6208

16          BY:  Vinita Ferrera, Esquire

17          Vinita.ferrera@wilmerhale.com

18          Counsel for the Plaintiffs

19

20

21

22

23

24
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

113

```
1        APPEARANCES CONTINUED:

2        MORGAN, BROWN & JOY, LLP

3        200 State Street

4        Boston, Massachusetts 02109

5        617.523.6666

6        BY:  Robert P. Morris, Esq.

7        Rmorris@morganbrown.com

8        Counsel for The City of Boston

9

10       OFFICE OF THE ATTORNEY GENERAL

11       One Ashburton Place, Room 2019

12       Boston, Massachusetts 02018

13       617.727.2200, Ext. 2554

14       BY:  Robert L. Quinan, Jr., Esq.

15       Robert.quinan@ago.state.ma.us

16       Counsel for the City of Boston

17

18       ASSISTANT CITY SOLICITOR

19       Brian W. Leahey, Esq.

20       375 Merrimac Street

21       Law Department, Third Floor

22       Lowell, Massachusetts 01852

23       978.970.4050

24       Counsel for the City of Lowell
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

114

```
1                    I N D E X

2     WITNESS:                    SALLY McNEELY

3

4         By Mr. Lichten              4

5

6

7

8                  E X H I B I T S

9     No.                              Page

10    20    Police Promotional Reading List      20

11    21    Exam Development Steps               30

12    22    Analysis                            34

13

14

15

16         (Exhibits Retained by Counsel)

17

18

19

20

21

22

23

24
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

115

```
 1              P R O C E E D I N G S

 2                    *   *   *

 3          It is stipulated by and between counsel

 4          for the respective parties that the deposition

 5          is to be read and signed before any

 6          Notary Public;

 7              That the sealing and filing thereof are

 8          waived; and that all objections, except as to

 9          form, are reserved to the time of trial.

10                    *   *   *

11              SALLY McNEELY, the witness,

12          having been satisfactorily identified by the

13          production of her driver's license and duly

14          sworn by the Notary Public, was examined and

15          testified as follows in answer to direct

16          interrogatories:

17                    *   *   *

18          EXAMINATION BY MR. LICHTEN:

19      Q.  I'll dispense with the ground rules since this

20          is sort of a continuation of the deposition.

21              I wanted to start by just getting a

22          sense of the organizational structure of your

23          department.  So can you tell me who in the

24          department that would be involved with the
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

116

```
 1              police sergeant's exam that reports directly to

 2              you?

 3       A.     Vivian Lee reports directly to me.

 4       Q.     Okay.  Anyone else?

 5       A.     In test development?

 6       Q.     Yes.

 7       A.     No.

 8       Q.     Okay.  Mr. Paris, who does he report to?

 9       A.     Vivian.

10       Q.     Okay.  Are there other people other than

11              Mr. Paris, Ms. Lee and yourself who have been

12              involved with the last several police sergeant

13              examinations?

14       A.     Yes.

15       Q.     Who are they?

16       A.     Loren Columbare.

17       Q.     Why don't you give me all of their names?

18       A.     Christine Barbas.

19                      MR. QUINAN:  Mildred Asano.

20       A.     Mildred Asano.

21       Q.     Is that it?

22       A.     That's all.

23       Q.     Okay.  And I'm trying in my head to construct

24              what would be sort of an organizational
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

117

```
 1              structure.  You're the director of testing; is
 2              that correct?
 3        A.    I'm the director of civil service.
 4        Q.    Director of civil service.  Okay.  Ms. Lee's
 5              position is what?
 6        A.    She's the director of testing.
 7        Q.    And she reports directly to you?
 8        A.    Yes.
 9        Q.    Okay.  Guy Paris, what would you describe his
10              specific job title as being?
11        A.    He is a personnel selections specialist.
12        Q.    Okay.  And he reports directly to Ms. Lee?
13        A.    Yes.
14        Q.    Loren Columbare?
15        A.    Reports directly to Ms. Lee.
16        Q.    And what's her job title?
17        A.    She's a personnel selections specialist as
18              well.
19        Q.    So she's on a level that would be equal in
20              importance to Mr. Paris?
21        A.    She's classified in the same title, but she's a
22              newer employee.
23        Q.    I see.  And Christine Barbas?
24        A.    Is a personnel selections specialist as well --
```

118

```
 1              no, excuse me.  Her title is personnel analyst

 2              three, but her functional title is personnel

 3              selections specialist.

 4       Q.     Okay.  And would she be in the same level as

 5              Mr. Paris or Ms. Columbare or a different

 6              level?

 7       A.     She's a higher level.

 8       Q.     And who does she report to?

 9       A.     Ms. Lee.

10       Q.     And Mildred Asano, what job title does she

11              hold?

12       A.     Well, she doesn't work for us anymore.

13       Q.     What job title did she hold?

14       A.     She was the assistant director of testing.

15       Q.     And when she held that title, who did she report

16              to?

17       A.     She reported to me.

18       Q.     Okay.  So did she hold the job that Ms. Lee now

19              holds or some other job?

20       A.     She held the job that is part of what Ms. Lee

21              now holds.

22       Q.     Okay.  And when did Ms. Asano leave?

23       A.     I think it was the end of 2006, but I'm not

24              sure.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

119

```
 1       Q.    Okay.  Now, how long has Ms. Barbas been with
 2             HRD?
 3       A.    I don't know long, but it's over 20 years.
 4       Q.    And do you know what her highest level of
 5             education is?
 6       A.    She has a doctorate in education.
 7       Q.    And what role, if any, has she played with
 8             respect to the 2005, 2006 and 2007 police
 9             sergeant's examination?
10       A.    I don't know specifically what her role was, but
11             she was involved in them.
12       Q.    Do you know if she played any role in the exam?
13       A.    I don't know.
14       Q.    Okay.  So you don't know what role she had?
15       A.    I don't know what role she had, no.
16       Q.    How about Ms. Columbare?  Do you know if she
17             played any role if -- well, first of all, how
18             long has Ms. Columbare been there?
19       A.    Between two and three years.
20       Q.    Okay.  Do you know if she has played any role in
21             the police sergeant's examination?
22       A.    She has.
23       Q.    And what role has she played?
24       A.    I don't know.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

120

1    Q.   And do you know what level of education

2         Ms. Columbare has obtained?

3    A.   She has a master's degree.

4    Q.   Do you know what it's in?

5    A.   No.

6    Q.   Okay.  I may have asked you this, but Ms. Asano

7         left over a year ago?

8    A.   Yes.

9    Q.   Okay.  Did she play any role in the 2005 or 2006

10        police sergeant's examination?

11   A.   Yes.

12   Q.   Do you know what role she would have played?

13   A.   She would have had supervisory oversight of the

14        processes in the exam development.

15   Q.   Okay.  Similar or different than that which

16        Ms. Lee had?

17   A.   Similar.

18   Q.   Okay.  And Mr. Paris, I've taken his deposition

19        so I have a pretty good idea.  He was involved

20        in the 2005, 2006 and 2007 exam; is that

21        correct?

22   A.   Yes.

23   Q.   Do you recall that there was a period of time

24        that he was on a leave of absence and therefore

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

121

```
 1              had to have someone else take over those
 2              responsibilities?
 3      A.      He has had periodic leaves of absence over the
 4              past two years.
 5      Q.      Do you know who has performed the services that
 6              he has performed on the sergeant's examination
 7              when he's not been there?
 8      A.      Most of the work was outsourced to E.B. Jacobs.
 9              The rest of the test developers picked up the
10              rest of the work.
11      Q.      Okay.  When you say that most of his work was
12              outsourced to E.B. Jacobs, that began in the
13              summer of 2007?
14      A.      Yes.
15      Q.      Okay.  So prior to the summer of 2007, E.B.
16              Jacobs had not consulted with HRD with respect
17              to the 2005 or 2006 or 2007 exam; is that
18              correct?
19      A.      I couldn't say that that was entirely correct
20              because --
21      Q.      Okay.  Go ahead.  Tell me why.  I didn't mean to
22              interrupt you.
23      A.      We've been having ongoing discussions with them
24              since the Bradley case about our examinations.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

122

```
 1     Q.    Okay.  Well, do you know of any work performed

 2           by E.B. Jacobs on the police sergeant's exam

 3           prior to the summer of 2007?

 4     A.    No.

 5     Q.    Okay.  And have you consulted invoices from E.B.

 6           Jacobs to determine whether they billed HRD for

 7           any work on police sergeant exams prior to the

 8           summer of 2007?

 9     A.    No.

10     Q.    What was the work that you say was outsourced to

11           E.B. Jacobs?

12     A.    Some construction of items, the review of the

13           items, and a cultural bias review for the entire

14           examination.

15     Q.    Okay.  As I understand it, the term

16           "construction of items" means actual drafting of

17           test questions?

18     A.    Yes.

19     Q.    Okay.  That's just a fancy term for that?

20     A.    Yes.

21     Q.    Okay.  I believe you said cultural bias review;

22           is that correct?

23     A.    Yes.

24     Q.    And that's a review of the questions to make
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

123

```
 1              sure that the terms would not favor one type of

 2              group over another?

 3      A.      Yes.

 4      Q.      And did E.B. Jacobs do anything else that was

 5              outsourced to them?

 6      A.      No.

 7      Q.      Okay.  Are you aware of whether E.B. Jacobs also

 8              did a readability analysis?

 9      A.      Oh, yes, sorry.  They did that.

10      Q.      Not to help you out here.

11      A.      That's right.  I consider all of that part of

12              the construction of items.

13      Q.      Okay.  That is, if I understand it, they looked

14              at possible questions and then would edit them

15              to make them, quote, unquote, more readable?

16      A.      Yes.

17      Q.      With respect to the construction of items, did

18              E.B. Jacobs actually write some of their own of

19              questions from the textbooks involved, or did

20              they simply edit questions that were already

21              presented to them, if you know?

22      A.      They did both.

23      Q.      Okay.  And do you have any knowledge as to how

24              many of the questions on the 2007 exam they were
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

124

```
 1              involved in writing or editing and how many they

 2              were not involved in writing or editing?

 3     A.       No.

 4     Q.       And do you recall what they charged you for this

 5              work?

 6     A.       No.

 7     Q.       Do you know which individual at HRD picked up

 8              the work on the 2007 exam that Mr. Paris would

 9              have normally done?

10     A.       The developers shared the work.

11     Q.       Which developers?

12     A.       Loren Columbare, Christine Barbas and Vivian

13              Lee.

14     Q.       In 2005 and 2006 did anyone conduct a

15              readability analysis of those sergeant's exams?

16     A.       Well, the readability analysis is part of the

17              item review.  So, yes, each item was reviewed by

18              the developers and by the subject matter

19              experts.

20     Q.       Let me see if I understand this.  As you sit

21              here today, who do you believe did a readability

22              analysis for the 2005 and 2006 exam?

23     A.       I believe that Guy Paris, Mildred Asano and the

24              subject matter experts did the readability
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

125

```
 1              review in reviewing the test items.

 2        Q.    Do you know what training -- the two experts

 3              being the two chiefs?

 4        A.    Uh-huh.

 5        Q.    Do you know of any changes made to the

 6              readability of any questions in 2005 or 2006 by

 7              the two chiefs who were responsible for

 8              conducting this review?

 9        A.    Not specifically, no.

10        Q.    Do you know of any changes that they made?

11        A.    No.

12        Q.    Do you know what training these chiefs had in

13              readability analysis?

14        A.    No.

15        Q.    Do you know what training Mr. Paris had in the

16              readability analysis?

17        A.    No.

18        Q.    And do you know of any changes that Mr. Paris

19              made with respect to any readability analysis

20              that he made to questions on the '06 or '07

21              exam?

22        A.    No.

23        Q.    Does HRD have a target reading level which they

24              try to adhere to in the construction of test
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

126

```
 1              items for the police sergeant's exam?

 2      A.      I don't know.  Can I just ask you a question for

 3              a minute?

 4      Q.      Do you want to talk to your attorney?

 5      A.      Yes.

 6              (Attorney-Client Discussion)

 7      BY MR. LICHTEN:

 8      Q.      Did you want to add something or make a

 9              statement of any type?

10      A.      No.

11      Q.      Okay.

12              (Last question read back).

13      A.      I don't know.

14      Q.      Okay.  Let me move on.  Had the process that was

15              used to help construct the 2005 and 2006 exam --

16              I'll leave out 2007 -- was that the same process

17              or a different process?

18                   MR. QUINAN:  Objection.

19      A.      Same or different to what?  To each other?

20      Q.      Yes.

21      A.      It was generally the same process, but in 2005

22              we had the Boston sergeant, lieutenant, captain

23              exam as well.

24      Q.      Gotcha.  Okay.  Why don't we do this just for
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

127

```
 1              simplicity purposes, let's focus on the 2006

 2              exam, okay?

 3        A.    Okay.

 4        Q.    I'd like you to take me through the process of

 5              constructing that exam from the beginning to the

 6              end.  What is the first step in the process?

 7        A.    The first step in the process is we identify the

 8              reading material that is to be used in the

 9              examination based on recommendations from the

10              chiefs and which texts would provide knowledge

11              about the essential functions of the jobs to be

12              tested.

13        Q.    Okay.  And how is that step carried out?  That

14              is, do you begin with the text from the last

15              exam and send them out to people for their

16              comments?  What is the process for determining

17              what the text should be?

18        A.    We periodically update the reading list, usually

19              every five years.  In updating them we send them

20              out, the current list out to the chiefs in a

21              survey form, and they respond if they believe --

22              they let us know which texts are still relevant

23              to the job.  They can recommend other texts as

24              well.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

128

1    Q.    Okay.  So specifically with reference to the

2          2006 exam, were those texts determined by this

3          five-year review process or some process

4          specific to 2006?

5    A.    They were determined by our regular review

6          process.

7    Q.    And do you know when that review process was in

8          relation to when the exam was given?

9    A.    Not exactly, no.

10   Q.    Okay.  Do you know where we're at in this

11         five-year process?  Perhaps we can go

12         backwards?  When was the last one done is a

13         better way to ask it?

14   A.    It was in advance of the 2006 exam.  So it may

15         have been early 2006 or late 2005.

16   Q.    So it was done for the 2005 exam, or it was done

17         in late 2005, early 2006 for the 2006 exam?

18   A.    It was done for the 2006 exam.

19   Q.    Okay.  And who is responsible for doing that?

20   A.    Mildred Asano did that.

21   Q.    So she sent out a group of texts to these

22         chiefs?

23   A.    She sent out a survey form to the chiefs.

24   Q.    Okay.  And the survey form had text that had

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

129

```
 1              been used in the past on them, if you know?

 2      A.      It did.

 3      Q.      Okay.  Did it have any proposed new text on it

 4              if you know?

 5      A.      I don't know.

 6      Q.      So I take it you got these forms back from a

 7              number of chiefs; is that correct?

 8      A.      Yes.

 9      Q.      And then what was done with those forms?

10      A.      They were reviewed and changes to the reading

11              lists were made.

12      Q.      And who was responsible for that?

13      A.      Mildred Asano.

14      Q.      And that was done at approximately what time of

15              the year?

16      A.      I don't know.

17      Q.      Let me ask it this way:  As I understand it, you

18              normally have to send the proposed text out some

19              months before the test is given; isn't that

20              correct?

21      A.      Six months in advance.

22      Q.      So if the test is normally given in October,

23              that would mean you would have to decide on the

24              text to be studied --
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

130

```
1        A.   By April.

2        Q.   Okay.  So I take it then that the determination

3             of the reading list would have had to have been

4             done by March or April of that year?

5        A.   Yes.

6        Q.   I'm going to show you this.  This is McNeely

7             Deposition Exhibit No. 9 from April of 2008.  Is

8             this the document that you were referring to?

9        A.   Yes.

10       Q.   Okay.  And who wrote this report?

11       A.   Mildred Asano.

12       Q.   Okay.

13                     (Police promotional reading list

14                      received and marked for identification

15                      as Exhibit No. 20.)

16       Q.   I'm showing you what has been marked as

17             Deposition Exhibit No. 20, and I'll ask you if

18             you recognize this document?

19       A.   (Witness viewing document).  No.

20       Q.   This is a document obviously that was given to

21             me by HRD, and it appears to be a reading list

22             report back from 1992.

23                     My question is:  In the documents that

24             we've received from HRD, I have one reading list
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

131

```
 1              report from 1992, and then I have another one

 2              from 2006.  I haven't seen any reading list

 3              reports between those two periods of time.  My

 4              question is whether you know if one exists, or

 5              if not why it doesn't exist?

 6    A.        I don't know.

 7    Q.        Do you know if any one was done between those

 8              two periods of time?

 9    A.        I don't know.

10    Q.        Okay.  As you sit here today, have you ever seen

11              of or do you have any knowledge of the existence

12              of or the creation of such a report between 1992

13              and 2006?

14    A.        No.

15    Q.        The last question on this.  Do you know if there

16              is anyone at HRD that would know that other than

17              yourself and would know it better than yourself?

18    A.        No.

19    Q.        Okay.  Thank you.  So moving on.  I understand a

20              reading list is determined, and then at some

21              point in time -- strike that.

22                   And the reading list is determined, at

23              least in 2006 it was determined from the form

24              sent out to the police chiefs; is that correct?
```

132

```
 1      A.    Yes.

 2      Q.    And based upon that, I believe your testimony

 3            was that Mildred Asano made some determination

 4            of what texts should be used for the 2006 exam?

 5      A.    Yes.

 6      Q.    Was anyone else involved in that decision?

 7      A.    I don't know.

 8      Q.    Okay.  What's the next step that occurred in the

 9            2006 test process?

10      A.    An exam plan is developed.

11      Q.    Okay.

12      A.    And based on the exam plan the developers

13            construct items.  Once the items are

14            constructed, they're reviewed internally with

15            the subject matter experts.  And then the exam

16            is put together based on the items that have

17            been reviewed and found acceptable.

18      Q.    Okay.  I'm going to show you Paris Deposition

19            Exhibit No. 1.  I have a couple of copies of

20            this.

21      A.    (Witness viewing document).

22      Q.    Do you recognize this as the exam outline?

23      A.    I do.

24      Q.    For 2006?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

133

```
1       A.    I don't know what exam outline it is.

2       Q.    Okay.  But that's generally how it looks?

3       A.    Yes.

4       Q.    Okay.  And this exam outline, is that taken from

5             some study or a validation report or a study

6             that was done, if you know?

7       A.    Yes.

8       Q.    What is it taken from?  What was it taken from?

9       A.    It was taken from a combination of the 1991 job

10            analysis and validity study and the 1995 one.

11      Q.    Okay.  I may have asked you this at the last

12            deposition, but I still don't know the answer to

13            it.

14                   With respect to the 1991 validation

15            report, which has been marked as Deposition

16            Exhibit No. 1 to Vivian Lee, do you know who

17            authored this report?

18      A.    I don't know.

19      Q.    Okay.  Have you ever made any attempt to find

20            out who the author of this report is?

21      A.    No.

22      Q.    Okay.  You say there is a 1995 report.  Do you

23            know who did that?

24      A.    It might have been the entry-level report, and
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

134

```
 1              it was Landy Jacobs.

 2    Q.   Let me represent to you that I have not seen in

 3         this litigation anything called a 1995 report

 4         with regard to a police promotional exam.  So

 5         does one exist?

 6    A.   I think I misspoke in that it is the entry-level

 7         report.

 8    Q.   So with respect to the exam outline used by

 9         Mr. Paris for the 2006 exam, the source of that

10         is the 1991 validation report?

11    A.   The basic structure is the 1991 validation

12         report.

13    Q.   Okay.  Let me ask you with respect to this

14         document because there's one thing I'm not clear

15         on.  Under sergeant, lieutenant and captain's

16         exam, it actually appears to have question

17         numbers?

18    A.   Yes.

19    Q.   Is that something that would appear on the

20         original outline, or is that something that's

21         filled in as the questions are constructed?

22    A.   It would probably appear on the original

23         outline, and then be adjusted as questions are

24         constructed.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

135

1    Q.    I think I understand that.  So where it says --

2          let's just take an example.

3                "Arrest and detention.  Number of

4          items, 9."  And then it has "1-9."  Do you see

5          that?

6    A.    Yes.

7    Q.    I'm assuming that what that means is on the

8          outline taken from the 1991 validation study,

9          that generally speaking you would find questions

10         on arrest and detention and questions 1 to 9 on

11         the exam?

12   A.    You would find it for this particular exam,

13         questions 1 through 9, yes.

14   Q.    Right.  Okay.  And then do you know to what

15         extent on the outlines for 2005, the police

16         sergeant's exam for 2005, 2006 and 2007, do you

17         know to what extent that the number of items for

18         each of these areas has been changed or

19         adjusted?

20   A.    No.

21   Q.    Do you know whether it's been changed at all?

22   A.    I don't know.

23   Q.    Do you know whether there has been anything

24         added or subtracted in these areas between,

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

136

```
 1              let's say, 2003 and 2007?
 2      A.      There were adjustments made to the 2005
 3              examination because of Boston.
 4      Q.      Other than for Boston, do you know of any
 5              adjustments that were made?
 6      A.      No.
 7      Q.      Who would be responsible for making any such
 8              adjustments for changes for the 2005, 2006 and
 9              2007 exam?
10      A.      The test developer.
11      Q.      The test developer being whom?
12      A.      Mr. Paris, Ms. Barbas, Ms. Asano.
13      Q.      Okay.  So just so I understand this, do you know
14              whether Ms. Barbas made any adjustments to any
15              of the police sergeant's examinations?
16      A.      No.
17      Q.      Do you know whether Ms. Asano made any
18              adjustments to any categories to the test
19              outline of the police sergeant's examination for
20              '05, '06 and '07?
21      A.      No.
22      Q.      Do you know whether Mr. Paris made any
23              adjustments?
24      A.      No.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

137

```
 1      Q.   Do you know whether for each of the subject
 2           matter areas, there is a definition of what
 3           these mean or what they involve?
 4      A.   Yes.
 5      Q.   Okay.  And is there?
 6      A.   There is definitions.
 7      Q.   And where is that kept?
 8      A.   I don't know.
 9      Q.   Have you seen the definitions?
10      A.   No.
11      Q.   So as I understand it for 2006, based upon this
12           test outline, Mr. Paris drafted questions from
13           these texts; is that correct?
14      A.   Yes.
15      Q.   And you said that they were reviewed by, I
16           believe, subject matter experts; is that
17           correct?
18      A.   Yes.
19      Q.   And that would be the two unnamed police chiefs?
20      A.   Yes.
21      Q.   And it was just two police chiefs?
22      A.   I believe so.
23      Q.   Okay.  And that review occurred after he had
24           come up with the test outline and after he
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

138

```
 1              drafted the questions?

 2     A.   Yes.

 3     Q.   Okay.  Do you know whether there was a review of

 4          the outline by any outside so-called subject

 5          matter experts before the questions were

 6          drafted?

 7     A.   I don't.

 8     Q.   And do you know what the subject matter experts

 9          are being asked with respect to these questions?

10     A.   They are asked, first of all, if the questions

11          make sense, how difficult the questions are and

12          what level of readability they have.

13     Q.   Okay.

14     A.   Which is easy, medium or hard.

15     Q.   Okay.  And those are the questions asked of the

16          experts?

17     A.   Yes.

18     Q.   Two experts?

19     A.   I'm not sure.

20     Q.   Okay.  And what happens as a result of their

21          comments?

22     A.   Their comments and discussions are taken into

23          consideration when the final test booklet is

24          being constructed.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

139

1    Q.    Okay.  And who receives their comments and takes

2          any action based on these comments?

3    A.    The developer.

4    Q.    Mr. Paris?

5    A.    It may have been Mr. Paris or one of the other

6          developers.

7    Q.    Okay.  You don't know who it was in 2006?

8    A.    No

9    Q.    Was anyone retained or hired to do a cultural

10         bias review of either the 2005 or 2006 exam?

11              MR. QUINAN:  Objection.

12   A.    No outside person was hired to do that.

13   Q.    Okay.  Was anyone hired to do a readability

14         analysis?

15   A.    No outside person was hired to do that.

16   Q.    And at that point in time the exam is completed

17         I take it?

18   A.    Yes.

19   Q.    Okay.  Now, how is the cut-off score

20         determined?

21   A.    Well, past practice for a long time has dictated

22         that we set the cut-off score at 70 percent.

23   Q.    So that was just assumed to be what you would

24         set it at?

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

140

```
1      A.    Yes.

2      Q.    Okay.  You're aware that there are scientific

3            methods for determining cut-off scores?

4      A.    I am.

5      Q.    You were, I think, present during a case not too

6            long ago that I was involved in where there was

7            some testimony about the Angolf method and other

8            methods?

9      A.    (Witness nodding).

10     Q.    Was any scientific method used in determining a

11           cut-off score of this police sergeant's exam?

12                 MR. QUINAN:  Objection.

13     A.    Define "scientific," please.

14     Q.    Based upon a body of scientific work which

15           provides a formula for determining a cut-off

16           score?

17     A.    We did not change the cut-off score based on any

18           other formula or scientific work.

19                       (Exam development steps received

20                        and marked for identification

21                        as Exhibit No. 21)

22     Q.    After the exam had been given, the 2005 exam,

23           the 2006 and the 2007 exam, is any disparate

24           impact analysis conducted by HRD?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

141

```
1      A.    Is it now conducted?

2      Q.    Let me rephrase the question.  For the 2005,

3            2006 and 2007 exam, did HRD conduct any

4            disparate conduct analysis?

5      A.    Not for 2005.  Oh, we did them in preparation

6            for the 2007 exam, but we didn't conduct them at

7            the time.

8                  MR. QUINAN:  That's not true.  Mildred

9            Asano did --

10                  THE WITNESS:  That's right.

11                  MR. QUINAN:  You have a copy of it.

12           BY MR. LICHTEN:

13     Q.    For how long has HRD been conducting a disparate

14           impact analysis on the police sergeant

15           examinations?

16     A.    Since 2006.

17     Q.    Just so that I'm clear.  With respect to exams

18           that may have taken place in 2000, 2001, 2002,

19           2003, 2004, was any disparate impact analysis

20           ever conducted by HRD if you know?

21     A.    No.

22     Q.    So when did HRD begin conducting a disparate

23           impact analysis for the police sergeant's exam?

24     A.    In 2006.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

142

| | | |
|---|---|---|
| 1 | Q. | And why did it start in 2006? |
| 2 | A. | I don't know. |
| 3 | Q. | Okay.  And how long have you been the director |
| 4 | | of civil service? |
| 5 | A. | Since 2003. |
| 6 | Q. | Okay.  My question is:  Was HRD doing anything |
| 7 | | from the time you've been director of civil |
| 8 | | service until 2006 to try to monitor or |
| 9 | | determine whether or not the police sergeant's |
| 10 | | examination was having disparate impact on |
| 11 | | minority candidates? |
| 12 | A. | Not to my knowledge. |
| 13 | Q. | Do you know why that wasn't being done? |
| 14 | A. | No. |
| 15 | Q. | Was that an interest of yours as director of |
| 16 | | civil service to at least have knowledge of |
| 17 | | whether the exam was having disparate impact? |
| 18 | A. | Would you repeat that question? |
| 19 | | (Last question read back.) |
| 20 | A. | Yes. |
| 21 | Q. | So why did you not conduct a disparate impact |
| 22 | | analysis? |
| 23 | A. | Because there were many other things going on at |
| 24 | | that point in time. |

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

143

```
 1    Q.   Okay.  Fair enough.  Let me ask another
 2         question.
 3              With respect to entry-level hiring, it
 4         is my understanding that HRD has regularly for
 5         the last 20 years or so conducted disparate
 6         impact analysis, at least with respect to the
 7         pass/fail score for many years; is that
 8         correct?
 9    A.   That is correct.
10    Q.   But your testimony is that with respect to the
11         police sergeant's exam, prior to 2006 that was
12         not being done by HRD; is that right?
13    A.   That's right.
14    Q.   Okay.  As I understand it the disparate impact
15         analysis that was conducted in 2006 is one where
16         you take each of the scores and you determine
17         how minorities and nonminorities fared by score
18         down to the pass/fail; is that right?
19    A.   Yes
20    Q.   All right.  That 2006 analysis that you said was
21         done, was that for 2005?
22    A.   Could I see it, please?
23    Q.   Sure.
24    A.   (Witness viewing document).  All set.
```

144

```
 1      Q.   Before I get to that.  When you became director

 2           of civil service, what was the position you held

 3           just before then?

 4      A.   Deputy director of civil service.

 5      Q.   And how long did you hold that position?

 6      A.   Since 2000.

 7      Q.   During the time that you've been at HRD or its

 8           predecessor DPA, were you aware of prior

 9           litigation between an association of -- this is

10           their term, not mine -- "Afro-American Police

11           Officers" and HRD with respect to the Boston

12           Police sergeant's examination?

13      A.   I had heard of it, yes.

14      Q.   But you had no involvement in it?

15      A.   No.

16      Q.   Were you aware of any agreement or obligations

17           that HRD took on as a result of that litigation

18           to create and construct validated police

19           sergeant examinations?

20      A.   No.

21                    (Analysis received and marked for

22                     identification as Exhibit No. 22.)

23      Q.   Now, getting back to this document, which is

24           Exhibit 22.  Can you tell me what this is,
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

145

```
 1              please?
 2      A.   This is an analysis of the Boston Police
 3           sergeant's examination that was given in 2005.
 4      Q.   And do you know who did this analysis?
 5      A.   Mildred Asano.
 6      Q.   So you believe Mildred Asano is the author of
 7           this?
 8      A.   Yes.
 9      Q.   Now to get back to the question that I was
10           asking.  This only appears to be of the Boston
11           Police Department; is that correct?
12      A.   Yes.
13      Q.   Do I take it from this that there was no adverse
14           impact analysis that you're aware of that was
15           done for the rest of the Commonwealth of
16           Massachusetts?
17      A.   I don't know.
18      Q.   Okay.  You've not seen one; is that right?
19      A.   I have not seen one.
20      Q.   Okay.  So for 2005 is -- strike that.
21                  Other than for the Boston Police
22           Department, since you've been assistant director
23           and director of civil service, you're not aware
24           of any disparate impact analysis that's been
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

146

```
 1              done statewide for the police sergeant's

 2              examination?

 3      A.      No.

 4      Q.      No, you're not aware?

 5      A.      We have done adverse impact analyses.

 6      Q.      Do you know when?

 7      A.      Within the past year.

 8      Q.      Okay.  Putting aside the past year and the years

 9              2000, 2001, 2002, 2003, 2004, 2005 and 2006,

10              putting aside Boston, was such an analysis

11              done?

12      A.      No.

13      Q.      Has the City of Boston ever conducted an adverse

14              impact analysis of any police sergeant's

15              examination not with respect to the score

16              received, but with respect to selection rates?

17                      MR. QUINAN:  Objection.

18                      MR. MORRIS:  Objection.

19                      (Last question read back.)

20      A.      I don't know.

21      Q.      Has HRD ever done an adverse impact analysis

22              during the time that you've been director or

23              deputy director of civil service to determine

24              the adverse impact, if any, of the police
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

147

```
 1              sergeant's examination with respect to selection

 2              rates, not scores?

 3                   MR. QUINAN:  Objection.

 4      A.      No.

 5      Q.      That is, you're not aware of any?

 6      A.      I'm not aware of any.

 7      Q.      I'd like to change gears for a moment.  During

 8              the time that you've been director of civil

 9              service and deputy director of civil service,

10              are you aware of any occasions where a town or

11              city sought a special list for police sergeants

12              such that only some group of minorities were on

13              such lists?

14      A.      Communities -- some communities have asked for a

15              PAR 10 list, which is in accordance to personnel

16              administration rule 10, which allows us to

17              certify certain groups of candidates to correct

18              instances of past discrimination.

19                   I know the MBTA did it.  But other than

20              that, I don't know for sure that any other

21              community requested such a list.

22      Q.      Okay.  And the MBTA, that resulted in a case

23              that went to the Supreme Court; is that

24              correct?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

148

```
 1      A.   Yes.

 2      Q.   Bracket I believe it was?

 3      A.   Bracket.

 4      Q.   But other than the MBTA, you're not aware of any

 5           municipality that requested a PAR 10 list for

 6           the purpose of promoting minorities from that

 7           list?

 8      A.   I'm not aware of any.

 9      Q.   Okay.  Moving on.  During the time that you've

10           been deputy director and director of civil

11           service, are you aware of any cities or towns

12           which have requested to do a so-called -- I

13           think it's Section 11 -- alternative promotional

14           exam for the position of police sergeant?

15                 MR. QUINAN:  Objection.

16      Q.   You may answer.

17      A.   No.

18      Q.   So do I take that to mean that as far as you

19           know, all civil service communities have

20           utilized the HRD sergeant's promotional

21           examination for the purposes of selecting

22           candidates?

23      A.   No.

24      Q.   Okay.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

149

```
 1      A.    You can take it to mean I don't know what

 2            Section 11 is.

 3      Q.    Okay.  Let me back up.

 4      A.    I don't remember.

 5      Q.    Okay.  Let's just make sure we're on the same

 6            page here.  As I understand it, there is a

 7            process by which a civil service community can

 8            request HRD to approve an alternative

 9            examination procedure for police sergeants; is

10            that correct?

11      A.    That is correct.

12      Q.    Okay.  And what do you call that?  What is your

13            term for that?

14      A.    We call them assessment centers.

15      Q.    Okay.  Let's call it an assessment center.  And

16            how would you define an assessment center?

17      A.    An assessment center is a structured group of

18            exercises designed to evaluate a candidate's

19            knowledge and ability.

20      Q.    Okay.

21      A.    And generally it's other than a written exam.

22      Q.    Okay.  And does HRD have any guidelines, rules,

23            processes, proposed samples of tests or anything

24            like that that it maintains?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

150

```
 1       A.    We have guidelines and processes, yes.

 2       Q.    And who developed those?

 3       A.    I believe Betty Dennis did.

 4       Q.    And are those still in effect?

 5       A.    They are.

 6       Q.    And were they in effect in 2005, 2006 and 2007?

 7       A.    Yes.

 8       Q.    And can you just tell me generally what they

 9             provide?

10       A.    They provide an alternate to a written

11             examination, or they can be used in tandem with

12             the written examination.  They consist of many

13             different types of exercises such as in-baskets,

14             interviews, structured oral panels.

15       Q.    Okay.  Now, during the time -- let me get back

16             to my original question.

17                   During the time that you've been

18             director and assistant director of civil

19             service, are you aware of whether any civil

20             service towns or cities have requested to use

21             assessment centers instead of the state-wide

22             exam?

23       A.    Yes.

24       Q.    And what cities and towns are you aware of that
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

151

```
 1              have done that?
 2    A.    I think you have a list of them in one of these
 3          exhibits.
 4    Q.    Okay.  We'll look for it.  And I realize you
 5          won't be held to this, but what towns and cities
 6          do you recall having done this?
 7              MR. QUINAN:   Objection.
 8    Q.    That is, is it ten?  Is it more than ten?  Is it
 9          less than ten?  How many are we talking about?
10    A.    I'd say around ten.
11    Q.    Okay.  And one of those was Boston or not?
12    A.    Not From 2005 through 2007.
13    Q.    Okay.  The determination of whether to request
14          such an examination, is that entirely left to
15          the municipality.
16    A.    It's generally left to the municipality?
17    Q.    Has there ever been a time that you're aware of
18          that HRD instructed or recommended to a
19          municipality that they use an assessment center
20          for a police sergeant's examination?
21    A.    No.
22    Q.    In those instances where there has been an
23          assessment center, do you know if the civil
24          service examination created by HRD had been used
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

152

```
 1                as one of the tests in that examination process?

 2        A.      It has, yes.

 3        Q.      And do you know if it's been used on a pass/fail

 4                or scored basis?

 5        A.      A scored basis.

 6        Q.      Okay.  Now, let me show you what was marked as

 7                Deposition Exhibit No. 5 in your first

 8                deposition.  Is that the document?

 9        A.      (Witness viewing document).  Yes.

10        Q.      Okay.  Thank you.  So I'm looking at this

11                document, and I'll give it to you to look at to

12                verify.  I have an extra one so we'll do it

13                together.  If you go to the back page.

14        A.      (Witness viewing document).  Yes.

15        Q.      It looks to me for the police sergeants for the

16                years '03 to '08, the only cities or towns that

17                had an assessment center for police sergeants

18                were Leominster, Salem and Salisbury; is that

19                right?

20        A.      Yes.

21        Q.      Okay.  So it would be three towns or cities?

22        A.      Yes.

23                      MR. LICHTEN:  Did I miss something?

24                      MR. QUINAN:  I think there is another
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

153

1              community that maybe wasn't listed there.

2              Boston is one and Peabody is another.  This list

3              might not be complete is what I'm saying.

4         BY MR. LICHTEN:

5    Q.   If I understand, Boston hasn't done one since

6         2002; is that right?

7    A.   Yes.

8    Q.   And do you believe Peabody has done one?

9                   MR. QUINAN:  Yes.

10                  MR. LICHTEN:  That was to Miss McNeely,

11        Mr. Quinan.

12   A.   Yes, we both believe.

13   Q.   And do you know what year that would have been?

14   A.   It was within the past three years, I think.

15   Q.   And when these assessments -- has HRD ever

16        determined that -- strike that.

17                  I believe your testimony was that HRD

18        has never instructed or recommended to a city

19        that they use an assessment center; is that

20        correct?

21   A.   Correct.

22   Q.   Has HRD ever determined whether it has the

23        authority to order or recommend to a

24        municipality that it use an assessment center?

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

154

```
 1              MR. QUINAN:  Objection.

 2    A.   We have not made a final determination about

 3         that.

 4    Q.   Okay.  And when you say, "We have not made a

 5         final determination about that," that of course

 6         wets the appetite of a lawyer.

 7              MR. QUINAN:  And you are not to speak

 8         about anything that's been the subject of

 9         attorney-client communication.

10              MR. LICHTEN:  I agree with that.

11         BY MR. LICHTEN:

12    Q.   So putting aside any discussions with a lawyer,

13         have there been any internal discussions at HRD

14         without a lawyer about whether HRD has the

15         authority to order or recommend to a city or

16         town that they use an assessment center?

17    A.   No.

18    Q.   Okay.  Now, since 2003 has there been any

19         consideration by HRD with respect to giving a

20         statewide police sergeant's promotional exam

21         that had components other than this knowledge-

22         based test?

23    A.   We consider every possibility in determining

24         what tests we will give.  So, yes, we have
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

155

| | | |
|---|---|---|
| 1 | | considered it. |
| 2 | Q. | What has HRD done in that regard? |
| 3 | A. | We've considered it. |
| 4 | Q. | When you say you've considered it, can you tell |
| 5 | | me more specifically what you've done?  Have you |
| 6 | | consulted with experts or looked at various |
| 7 | | tests that were available on the market?  What |
| 8 | | have you done? |
| 9 | A. | We have researched and found what was available |
| 10 | | and determined if we could use the various |
| 11 | | components in a different way. |
| 12 | Q. | Okay.  And can you be more specific?  What tests |
| 13 | | have you looked at?  What components have you |
| 14 | | looked at? |
| 15 | A. | No. |
| 16 | Q. | You can't be any more specific? |
| 17 | A. | I can't be any more specific. |
| 18 | Q. | Anything in writing which describes this |
| 19 | | search? |
| 20 | A. | No. |
| 21 | Q. | Who has conducted this search? |
| 22 | A. | The test developers and various other members of |
| 23 | | the civil service unit and our legal unit. |
| 24 | Q. | Putting aside the legal unit, do you know of |

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

156

```
 1                anyone in your department who has conducted this
 2                search specifically?
 3       A.       Not specifically, no.
 4       Q.       Have you received any quotes or pricing?
 5       A.       No.
 6       Q.       Did HRD from 2003 to the present ever make a
 7                determination not to utilize such an assessment
 8                center?
 9       A.       Not specifically.
10       Q.       Okay.  Did you ever make a recommendation to
11                anyone to use an assessment center?
12       A.       No.
13       Q.       Has anyone within HRD ever made a recommendation
14                to use an assessment center either as a
15                supplement to or in place of the written-
16                knowledge based police sergeant's examination?
17                     MR. QUINAN:  Objection.
18       A.       I don't know.
19       Q.       Have you or anyone at HRD to your knowledge
20                conducted any investigation as to what types of
21                police sergeant exams are being used in other
22                large jurisdictions around the country?
23       A.       Yes.
24       Q.       What have you done in that regard?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

157

```
 1      A.    We've done an Internet search.

 2      Q.    And who has done that Internet search?

 3      A.    Different members of our group have done it.

 4      Q.    Can you just give me some names, please?

 5      A.    Sally McNeely has done it.  Vivian Lee has done

 6            it.

 7      Q.    And other than the Internet search, have you

 8            done anything beyond that?

 9      A.    Not specifically, no.

10      Q.    Okay.  Have you compiled this information in any

11            format?

12      A.    We have printed out pages from different

13            jurisdictions.

14      Q.    Okay.  Let me ask it this way.  Have you

15            undertaken to determine in how many large

16            jurisdictions an assessment center type of

17            processes is used and in how many large

18            jurisdictions it is not used?

19      A.    No.

20      Q.    Okay.  Do you have any knowledge of that?

21      A.    Well, the problem with large jurisdictions is no

22            jurisdiction is as large as ours.  Usually when

23            assessments -- you know, when other alternate

24            examination instruments are used, they're city
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

158

```
 1            or town specific or county specific.  They're
 2            not statewide.
 3       Q.   Well, just so I'm clear.  Cities like the City
 4            of New York and the City of Chicago are
 5            comparable in size to the Commonwealth, aren't
 6            they, in the size of people taking the police
 7            sergeant's exam?
 8       A.   I don't know.
 9       Q.   Okay.  Well, in any event, are you aware -- you
10            probably are aware.  Are there any other states
11            that utilize statewide police promotional
12            examinations?
13                 MR. QUINAN:  Objection.
14       A.   Yes.
15       Q.   Would New Jersey be one of those?
16       A.   New Jersey would be one, yes.
17       Q.   Anyone else?
18       A.   Not that I know of.
19       Q.   Okay.  Getting back to my question.  Are you
20            aware currently of what the predominant type of
21            police promotional exam is being used in large
22            jurisdictions for police sergeants?
23       A.   No.
24       Q.   Do you know how many large jurisdictions, if
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

159

```
 1              any, still utilize the same type of knowledge-

 2              based test, multiple choice, knowledge-based

 3              test such as HRD utilizes?

 4       A.     No.

 5       Q.     I want to briefly ask.  As I understand it, an

 6              examination was just given; is that correct?

 7       A.     Yes.

 8       Q.     How, if at all, did that examination differ from

 9              the police sergeant examinations given in 2005,

10              2006 and 2007?

11       A.     It was most similar to the 2007 police exams.

12       Q.     Okay.  Well, that doesn't quite answer my

13              question.  Assuming that it was more similar to

14              that, how did it differ, let's say, from the

15              2005, 2006 examination than the one in 2003 and

16              2004?

17       A.     Well, the one in 2007 and 2008 we outsourced

18              item construction and review and readability

19              review and cultural bias review.

20       Q.     To E.B. Jacobs?

21       A.     To E.B. Jacobs.

22       Q.     And do you know what the price of that was?

23       A.     No.

24       Q.     Do you have an approximation of what it was?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

160

```
1    A.    I would say around thirty thousand.

2    Q.    Okay.

3    A.    Dollars.

4    Q.    I figured that.  And just so I'm clear, did E.B.

5          Jacobs create all of the questions?

6    A.    No.

7    Q.    How was it determined what questions -- that is,

8          did someone else at HRD create the questions?

9    A.    Yes.

10   Q.    And they were reviewed by E.B. Jacobs

11   A.    They were either reviewed or new items were

12         created by E.B. Jacobs.

13   Q.    So it sounds like the system used in 2008 was

14         very similar to what you did in 2007?

15   A.    Yes.

16   Q.    Let me ask it simpler this way.  Was anything

17         done differently?

18   A.    No.

19   Q.    Was the same outline used?

20   A.    I don't know.

21   Q.    Do you know who was responsible for putting

22         together the test outline?

23   A.    Guy Paris and Vivian Lee.

24   Q.    Okay.  What about the textbooks?  Do you know if
```

161

```
 1              there were any changes in the textbooks used?

 2     A.   The textbooks for the statewide exam?

 3     Q.   Yes.

 4     A.   They were the same.

 5     Q.   Okay.  And how about for the City of Boston?

 6     A.   The City of Boston we added in texts based on

 7          their recommendations.

 8     Q.   Based upon the --

 9     A.   Subject matter expert recommendations.

10     Q.   So there were some other texts used for the

11          Boston examination?

12     A.   I believe so.

13     Q.   That were proposed by the SMEs utilized for the

14          Boston Police Department?

15     A.   Yes.

16     Q.   Okay.

17              MR. LICHTEN:  Let's take a five-minute

18          break.

19              (Brief break).

20     BY MR. LICHTEN:

21     Q.   I have just a couple of follow-up questions, and

22          then a few new areas and then we'll be done.

23              I had asked you before about

24          examinations used in other jurisdictions.  Have
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

162

| | | |
|---|---|---|
| 1 | | you looked at or studied at all the police |
| 2 | | promotional examinations for sergeants used with |
| 3 | | respect to the State Police? |
| 4 | A. | No. |
| 5 | Q. | Okay.  You said that you didn't -- do you know |
| 6 | | of any other exam formats that are used in other |
| 7 | | large jurisdictions? |
| 8 | A. | Yes. |
| 9 | Q. | What are you familiar with? |
| 10 | A. | Various combinations of different exercises |
| 11 | | similar to our assessment center process. |
| 12 | Q. | And do you know what cities or towns or states |
| 13 | | that they have been used in? |
| 14 | A. | Not off the top of my head, no. |
| 15 | Q. | Let me ask the converse of that.  Do you know of |
| 16 | | any large jurisdictions that still utilize only |
| 17 | | a written multiple choice, knowledge-based exam? |
| 18 | A. | I'm not sure, actually. |
| 19 | Q. | Okay.  This study that you did on the Internet, |
| 20 | | or that you and others did on the Internet, when |
| 21 | | was that done? |
| 22 | A. | It was done and it's continuing to be done over |
| 23 | | a period of a couple of years. |
| 24 | Q. | Okay.  I recall from the Bradley case many years |

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

163

```
1              ago that you testified at one point in time that
2              you had made a request to the legislature for
3              money that would allow you, I think in that
4              case, to do some sort of assessment, multi-
5              pronged assessment center.
6                      My question is:  With respect to the
7              police sergeant examinations conducted by HRD,
8              has HRD ever made a request to the legislature
9              for additional funds for the purpose of studying
10             or conducting assessment center formats for
11             police sergeant examinations?
12                     MR. QUINAN:  Objection.
13      A.     Not specifically, no.
14      Q.     When you say "not specifically," what do you
15             mean by that?
16      A.     We made a request and been given funds for each
17             fiscal year with the promise for five fiscal
18             years in a row to do job analysis and update the
19             examinations for firefighter, police officer,
20             police promotional levels, the medical standards
21             and the fire promotional levels.
22      Q.     And that money has not been granted?
23      A.     It's been granted for this year.
24      Q.     So for this year, additional money has been
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

164

```
 1            granted to do what?

 2    A.      Police promotions, sergeant, lieutenant,

 3            captain, deputy chief and chief job analysis,

 4            which would result in perhaps new exam

 5            procedures, perhaps not.

 6    Q.      Okay.

 7    A.      This is this fiscal year -- sorry.  So that

 8            would go from July 1st of 2007 to June 30th of

 9            -- no, July 1st of 2008 to June 30th of 2009.

10    Q.      And has that process been started yet?

11    A.      It just has been started, yes.

12    Q.      And has someone been hired to do it?

13    A.      Yes.

14    Q.      And who is that?

15    A.      E.B. Jacobs.

16    Q.      But as I understand it for the five years prior,

17            that money had been requested and not been

18            granted?

19    A.      The money had been requested but for the first

20            year it was to do job analysis and develop a new

21            exam for firefighters.  So that was between 2005

22            and 2006.  Between 2006 and 2007 we did job

23            analysis and developed a new examination for

24            entry-level police officer.  And we did some
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

165

```
 1            preliminary work on the police promos in 2007,

 2            which we're now carrying out in 2008.

 3       Q.   And that initial work, was that the same or

 4            different than the work that you described that

 5            E.B. Jacobs did in looking at the examinations?

 6       A.   Could you rephrase?

 7       Q.   You testified earlier that E.B. Jacobs did some

 8            work on the 2007 examination.  My question is:

 9            The money you just described and the work that

10            E.B. Jacobs did in 2007, was that the same work

11            or different work than what you already

12            testified to about what --

13       A.   It's different work.

14       Q.   And what did they do?

15       A.   They did some preliminary work with us.  Some

16            planning work for doing the job analysis for the

17            police promo levels.

18       Q.   Okay.  Has there been any consideration by

19            anyone at HRD whether some of the knowledge

20            needed to be a police sergeant are better

21            properly tested with an open or closed book type

22            of an examination?

23       A.   Has there been any consideration?

24       Q.   Yes.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

166

```
 1     A.    Yes.

 2     Q.    Okay.  What consideration has there been?

 3     A.    We've recognized that it's a possibility.

 4     Q.    Okay.  Let's see if we can get more specific

 5           than that.  When you say "we," first of all, who

 6           is "we"?

 7     A.    In our internal discussions.

 8     Q.    Okay.  Internal discussions with whom, excluding

 9           attorneys?

10              MR. QUINAN:  Does it involve

11           attorneys?

12              THE WITNESS:  It does.

13        BY MR. LICHTEN:

14     Q.    Okay.  Has HRD done any consulting with

15           experts?  When I say "experts," not lawyer

16           experts, I mean industrial, psychologist-type

17           experts or others with respect to whether some

18           of the KSAs needed to be a police sergeant

19           conducted with an open-book format?

20     A.    Not specifically.

21     Q.    Have you requested from Dr. Jacobs or consulted

22           with Dr. Jacobs regarding whether parts of the

23           examination can be used in an open-book format?

24     A.    No.
```

167

```
1        Q.    Have you looked at whether there are other

2              jurisdictions which utilize an open-book

3              format?

4        A.    Not yet.

5        Q.    Okay.  Has anyone conducted a study of the KSAs

6              which can be tested using the knowledge-based

7              testing format to determine which of those

8              knowledges require immediate recall, such that

9              an open-book format would not be appropriate,

10             and which of those would be amenable to open-

11             book format?

12                   MR. QUINAN:   Objection.

13       A.    I don't know.

14       Q.    I asked you before about cut-off scores, and I

15             just want to make it clear.  Are you aware as to

16             whether historically there was ever any study or

17             work done that scientifically justified the use

18             of a 70 cut-off score for the police promotional

19             exam for sergeant?

20       A.    I don't know.

21       Q.    Now, I take it you would agree that not all the

22             knowledge, skills and abilities needed to be a

23             police sergeant can be measured using the format

24             utilized by HRD for the police sergeant's exam;
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

168

```
 1              is that right?
 2                   MR. QUINAN:   Objection.
 3        A.   I don't think you can take that I would agree
 4              with it.
 5        Q.   All right.  Let me ask it a different way then.
 6              Do you believe that all of the knowledge, skills
 7              and abilities that go into the job of a police
 8              sergeant can be properly tested using a multiple
 9              choice knowledge format?
10        A.   Yes.
11        Q.   Okay.  And where does that opinion come from?
12        A.   It is my opinion.
13        Q.   Okay.  I appreciate that and everyone is
14              entitled to their opinion, but what is that
15              based on?
16        A.   I don't know.
17        Q.   Okay.  Is it based upon any studies or expert
18              opinions that you've received?
19        A.   I don't know.
20        Q.   Are you familiar with the Morris & McDaniel
21              validation report for the 2002 Boston Police
22              sergeant's examination?
23        A.   Yes.
24        Q.   Are you aware that they found there were
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

169

```
 1              knowledge, skills and abilities which were

 2              properly tested through other mechanisms other

 3              than the written-based knowledge test?

 4       A.     No.

 5       Q.     Have you read the Morris McDaniel report?

 6       A.     Not in detail, no.

 7       Q.     Let me ask you about that.  Do you know if the

 8              Morris & McDaniel evaluation report for 2002 was

 9              utilized by HRD in constructing any other police

10              sergeant's examination?

11       A.     We used the job analysis information from the

12              2002 report to help in the construction of the

13              2005 Boston Police sergeant's exam.

14       Q.     So just the Boston Police sergeant's exam?

15       A.     I think it carried over to the other exams as

16              well.

17       Q.     And who did that?  That is, who reviewed the

18              report and carried over those knowledge, skills

19              and abilities?

20       A.     It would have been Mildred Asano and Vivian Lee

21              and the subject matter experts from Boston.

22       Q.     Is it your testimony that Mildred Asano reviewed

23              the validation report for the Boston Police

24              exam?
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

170

```
 1                    MR. QUINAN:  Objection.
 2      Q.   If you know.
 3      A.   I don't know for sure.
 4      Q.   Do you know who, if anyone, at HRD reviewed the
 5           Morris & McDaniel validation report for the 2002
 6           Boston Police sergeant's exam?
 7      A.   I don't know for sure who did it.
 8      Q.   Just following up on that question that I asked
 9           you.  What is it about the -- well, do you
10           believe that the ability to make supervisory
11           decisions and have good judgment are abilities
12           needed to be a good police sergeant?
13      A.   Would you repeat that?
14                    MR. QUINAN:  Objection.
15      Q.   Yes.  That was a badly-formed question.
16                    Do you believe that the ability to use
17           good judgment quickly is an ability needed to be
18           a police sergeant?
19      A.   I don't know.
20      Q.   Okay.  How about oral communication skills?
21      A.   Yes.
22      Q.   Okay.  Do you know how it is that the current
23           format used for the HRD police sergeant's
24           examination tests at all for oral communication
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

171

```
 1              skills?

 2    A.    No.

 3    Q.    Is there someone at HRD who is responsible for

 4              being knowledgeable about various standards and

 5              guidelines used by industrial psychologists such

 6              as the APA standards, the SIOP standards and the

 7              uniformed guidelines on employee selection?

 8    A.    Yes.

 9    Q.    And who is that?

10    A.    All of the test developers are responsible for

11              knowing that, of being familiar with them.

12    Q.    Including Mr. Paris?

13    A.    Including Mr. Paris.

14    Q.    Do you know if they've actually read them or

15              gone to seminars regarding those principles?

16    A.    I don't know.

17    Q.    We've looked at Deposition Exhibit No. 1 from

18              the Vivian Lee deposition, which is the

19              validation report for the 1991 police

20              promotional selection procedure; is that right?

21              You've looked at that?

22    A.    No, actually, I haven't.

23    Q.    Okay.  I'll just give that to you.  That's

24              marked as Deposition Exhibit No. 1, and we've
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

172

```
 1              talked about it today.

 2     A.       (Witness viewing document.)

 3     Q.       You've seen it before?

 4     A.       Yes.

 5     Q.       Okay.  My question is simply:  Do you know of

 6              any other validation report that exists for any

 7              other police sergeant examination conducted by

 8              HRD other than that report?

 9     A.       We have the 2001 report from Landy Jacobs that

10              we conducted job analysis for all of the levels

11              in the police series.  We have the Morris &

12              McDaniel report.  And we have had input from

13              Landy or Jacobs over the years, over the

14              intervening years.

15     Q.       All right.  I'll get to all of those things.

16              But let me just ask you:  As far as a validation

17              report; that is, a report that basically

18              compiles all of the data which supports the

19              validation of an exam, do you know of any one

20              that exists for police sergeants other than that

21              one which I'm showing you?

22     A.       The 2001 report and the Morris & McDaniel

23              report.

24     Q.       Okay.  The Morris & McDaniel report was for the
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

173

```
 1              exam conducted by the Boston Police Department

 2              in 2002; is that correct?

 3      A.      Yes.

 4      Q.      And that's a report for an exam that had an

 5              assessment center; is that correct?

 6      A.      It did have an assessment center.

 7      Q.      In-basket exercises?

 8      A.      Yes.

 9      Q.      Video exercises?

10      A.      Yes.

11      Q.      And a written examination?

12      A.      Yes.

13      Q.      There was no pass/fail component to the written

14              examination?

15      A.      No, there was no cut-off score.

16      Q.      Okay.  With respect to the type of examination

17              that we've been talking about that HRD has

18              administered over the last ten or so years; that

19              is, a knowledge-based, multiple choice written

20              exam, is there any validation report for any of

21              those exams other than that one that you have in

22              front of you?

23      A.      I don't think so.

24      Q.      Okay.  Now, you mentioned something about a 2001
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

174

```
 1              report?

 2    A.    Yes.

 3    Q.    What exam did that relate to?

 4    A.    It related to all levels in the series of police

 5          officer and firefighter.  The takeaway from

 6          that, I guess, the jobs hadn't changed

 7          significantly since the last time we did job

 8          analysis for the series.

 9    Q.    I want to be clear on this because I don't have

10          this document.  You're saying there is a report

11          from 2001?

12    A.    Yes.

13    Q.    That examined police sergeant --

14    A.    It examined all the levels in the series.  It

15          was -- it concentrated mostly on the physical

16          abilities involved.

17    Q.    Okay.  I just want to be clear.  So it's a

18          report related to physical abilities of the

19          various jobs?

20    A.    Yes.

21    Q.    Not of the KSAs other than physical ability?

22    A.    The other KSAs were reviewed.

23    Q.    Okay.  Do you know where that document is?

24    A.    We have one at HRD.
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

175

```
 1                    MR. LICHTEN:  Will you produce it,

 2            Mr. Quinan?

 3                    MR. QUINAN:  Yes.

 4        BY MR. LICHTEN:

 5     Q.   With respect to the 2007 examination which was

 6          conducted, was there a validation report

 7          compiled similar to the one that you have in

 8          front of you, which has been marked as Vivian

 9          Lee Deposition Exhibit No. 1?

10     A.   No.

11     Q.   How about for the '05 or '06 examination?

12     A.   No.

13                    (Brief break).

14        BY MR. LICHTEN:

15     Q.   We talked a little bit about Ms. Barbas.  Is it

16          true or not true that Ms. Barbas was primarily

17          responsible for fire examinations?

18     A.   She is primarily responsible for fire

19          promotional exams, but she does assume duties

20          for other exams as well.

21     Q.   Okay.  And you mentioned before that you got

22          some money from the legislature to review the

23          job analysis.  How much money did you get?

24     A.   We've gotten $160,000 each year.
```

176

1                        MR. LICHTEN:  That's all I have.  Thank

2              you very much.

3                        MR. QUINAN:  Copy, please.

4                        MR. LEAHEY:  And a mini, please.

5                        MR. MORRIS:  Yes, a copy.

6                        MS. FERRERA:  Copy.

7

8                        (The deposition concluded

9                        at three o'clock p.m)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

177

```
1                  DEPONENT'S ERRATA SHEET AND

                   SIGNATURE INSTRUCTIONS

2

3                      This original of the Errata Sheet has

4              been delivered to Mr. Quinan.

5                      When the Errata Sheet has been

6              completed by the deponent and signed, a copy

7              thereof should be delivered to each party of

8              record and the original delivered to

9              Mr. Lichten, to whom the original deposition

10             transcript was delivered.

11

12                     INSTRUCTIONS TO DEPONENT

13

14                     After reading this volume of your

15             deposition, indicate any corrections or changes

16             to your testimony and the reasons therefor on

17             the Errata Sheet supplied to you and sign it.

18             DO NOT make marks or notations on the transcript

19             volume itself.

20

21     REPLACE THIS PAGE OF THE TRANSCRIPT WITH THE COMPLETED

22     AND SIGNED ERRATA SHEET WHEN RECEIVED.

23

24
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

178

```
1        ATTACH TO THE DEPOSITION OF SALLY MCNEELY
         CASE NAME: LOPEZ V. CITY OF LAWRENCE
2        DATE TAKEN:  OCTOBER 29, 2008
3
                      ERRATA SHEET
4
    INSTRUCTIONS:  After reading the transcript of your
5   deposition, note any change or correction to your
    testimony and the reason therefor on this sheet.  DO NOT
6   make any marks or notations on the transcript volume
    itself.  Sign and date this Errata Sheet (before a Notary
7   Public, if required).  Refer to Page 177 of the
    transcript for Errata Sheet distribution instructions.
8
    Page    Line        Correction
9
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
          I have read the foregoing transcript of my
19  deposition, and except for any corrections or changes
    noted above, I hereby subscribe to the transcript as an
20  accurate record of the statements made by me.
          Signed under the pains and penalties of perjury
21  this_____day_____, 2008.
22

23  _____
    SALLY MCNEELY
24
```

O'Brien & Levine Court Reporting Services
888.825.DEPO(3376) * www.court-reporting.com

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

179

```
1              COMMONWEALTH OF MASSACHUSETTS

2                    SUFFOLK, SS.

3

4         I, Tara L. Wosny, Certified Shorthand Reporter

5    and Notary Public in and for the Commonwealth of

6    Massachusetts, do hereby certify that Sally McNeely, the

7    witness whose deposition is herein before set forth, was

8    duly sworn by me and that such deposition is a true

9    record, to the best of my ability, of the testimony given

10   by the witness.

11        I further certify that I am neither related to

12   or employed by any of the parties in or counsel to this

13   action, nor am I financially interested in the outcome of

14   this action.

15        In witness whereof, I have hereunto set my hand

16   and seal this 29th day of October, 2008.

17

18

19   Tara L. Wosny

20   Notary Public

21   My commission expires:

22   June 10, 2009

23

24
```

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

## A

**abilities** 167:22 168:7 169:1,19 170:11 174:16,18
**ability** 149:19 170:10 170:16,17 174:21 179:9
**about** 119:16 121:24 127:11 140:7 151:9 154:2,5,8,14 160:24 161:5,23 165:12 167:14 169:7 170:9 170:20 171:4 172:1 173:17,24 175:11,15
**above** 178:19
**absence** 120:24 121:3
**acceptable** 132:17
**accordance** 147:15
**accurate** 178:20
**action** 139:2 179:13,14
**actual** 122:16
**actually** 123:18 134:16 162:18 171:14,22
**add** 126:8
**added** 135:24 161:6
**additional** 163:9,24
**adhere** 125:24
**adjusted** 134:23 135:19
**adjustments** 136:2,5,8 136:14,18,23
**administered** 173:18
**administration** 147:16
**advance** 128:14 129:21
**adverse** 145:13 146:5 146:13,21,24
**Afro-American** 144:10
**after** 137:23,24 140:22 177:14 178:4
**ago** 120:7 140:6 163:1
**agree** 154:10 167:21 168:3
**agreement** 144:16
**ahead** 121:21
**AL** 111:5,9
**allow** 163:3
**allows** 147:16
**already** 123:20 165:11
**alternate** 150:10 157:23

**alternative** 148:13 149:8
**amenable** 167:10
**analyses** 146:5
**analysis** 114:12 123:8 124:15,16,22 125:13 125:16,19 133:10 139:14 140:24 141:4 141:14,19,23 142:22 143:6,15,20 144:21 145:2,4,14,24 146:10 146:14,21 163:18 164:3,20,23 165:16 169:11 172:10 174:8 175:23
**analyst** 118:1
**Angolf** 140:7
**another** 123:2 131:1 143:1 152:24 153:2
**answer** 115:15 133:12 148:16 159:12
**anymore** 118:12
**anyone** 116:4 124:14 131:16 132:6 139:9 139:13 156:1,11,13 156:19 158:17 165:19 167:5 170:4
**anything** 123:4 134:3 135:23 142:6 149:23 154:8 155:18 157:8 160:16
**APA** 171:6
**appear** 134:19,22
**APPEARANCES** 112:1 113:1
**appears** 130:21 134:16 145:10
**appetite** 154:6
**applicable** 111:15
**appreciate** 168:13
**appropriate** 167:9
**approve** 149:8
**approximately** 129:14
**approximation** 159:24
**April** 130:1,4,7
**areas** 135:18,24 137:2 161:22
**around** 151:10 156:22 160:1

**arrest** 135:3,10
**Asano** 116:19,20 118:10,22 120:6 124:23 128:20 129:13 130:11 132:3 136:12 136:17 141:9 145:5,6 169:20,22
**Ashburton** 113:11
**aside** 146:8,10 154:12 155:24
**asked** 120:6 133:11 138:9,10,15 147:14 161:23 167:14 170:8
**asking** 145:10
**assessment** 149:14,15 149:16,17 150:21 151:19,23 152:17 153:19,24 154:16 156:7,11,14 157:16 162:11 163:4,5,10 173:5,6
**assessments** 153:15 157:23
**assistant** 113:18 118:14 145:22 150:18
**association** 144:9
**assume** 175:19
**assumed** 139:23
**assuming** 135:7 159:13
**ATTACH** 178:1
**attempt** 133:19
**attorney** 113:10 126:4
**attorneys** 166:9,11
**attorney-client** 126:6 154:9
**author** 133:20 145:6
**authored** 133:17
**authority** 153:23 154:15
**available** 155:7,9
**aware** 123:7 140:2 144:8,16 145:14,23 146:4 147:5,6,10 148:4,8,11 150:19,24 151:17 158:9,10,20 167:15 168:24

## B

**B** 114:8

**back** 126:12 129:6 130:22 142:19 144:23 145:9 146:19 149:3 150:15 152:13 158:19
**backwards** 128:12
**badly-formed** 170:15
**Barbas** 116:18 117:23 119:1 124:12 136:12 136:14 175:15,16
**based** 127:9 132:2,12 132:16 137:11 139:2 140:14,17 154:22 156:16 159:2 161:6,8 168:15,17
**basic** 134:11
**basically** 172:17
**basis** 152:4,5
**became** 144:1
**before** 111:16 115:5 129:19 138:5 144:1,3 161:23 167:14 172:3 175:21 178:6 179:7
**began** 121:12
**begin** 127:14 141:22
**beginning** 127:5
**behalf** 111:14
**being** 117:10 125:3 136:11 138:9,24 142:13 143:12 156:21 158:21 171:4,11
**believe** 122:21 124:21 124:23 127:21 132:2 137:16,22 145:6 148:2 150:3 153:8,12 153:17 161:12 168:6 170:10,16
**best** 179:9
**better** 128:13 131:17 165:20
**Betty** 150:3
**between** 115:3 119:19 131:3,7,12 135:24 144:9 164:21,22
**beyond** 157:8
**bias** 122:13,21 139:10 159:19
**billed** 122:6
**bit** 175:15
**body** 140:14

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

book 165:21 167:11
booklet 138:23
Boston 111:21 112:5,14
113:4,8,12,16 126:22
136:3,4 144:11 145:2
145:10,21 146:10,13
151:11 153:2,5 161:5
161:6,11,14 168:21
169:13,14,21,23
170:6 173:1
both 123:22 153:12
Bracket 148:2,3
Bradley 121:24 162:24
break 161:18,19
175:13
Brian 113:19
Brief 161:19 175:13
briefly 159:5
BROWN 113:2

**C**

C 115:1
call 149:12,14,15
called 134:3
candidates 142:11
147:17 148:22
candidate's 149:18
captain 126:22 164:3
captain's 134:15
carried 127:13 169:15
169:18
carrying 165:2
case 111:7 121:24
140:5 147:22 162:24
163:4 178:1
categories 136:18
center 149:15,16,17
151:19,23 152:17
153:19,24 154:16
156:8,11,14 157:16
162:11 163:5,10
173:5,6
centers 149:14 150:21
certain 147:17
Certified 111:17 179:4
certify 147:17 179:6,11
change 140:17 147:7
178:5
changed 135:18,21

174:6
changes 125:5,10,18
129:10 136:8 161:1
177:15 178:19
charged 124:4
Chicago 158:4
chief 164:3,3
chiefs 125:3,7,12
127:10,20 128:22,23
129:7 131:24 137:19
137:21
choice 159:2 162:17
168:9 173:19
Christine 116:18
117:23 124:12
cities 148:11 150:20,24
151:5 152:16,21
158:3 162:12
city 111:8 113:8,16,18
113:24 146:13 147:11
153:18 154:15 157:24
158:3,4 161:5,6 178:1
civil 111:16 117:3,4
142:4,7,16 144:2,4
145:23 146:23 147:8
147:9 148:10,19
149:7 150:18,19
151:23 155:23
classified 117:21
clear 134:14 141:17
158:3 160:4 167:15
174:9,17
closed 165:21
Columbare 116:16
117:14 118:5 119:16
119:18 120:2 124:12
combination 133:9
combinations 162:10
come 137:24 168:11
comments 127:16
138:21,22 139:1,2
commission 179:21
Commonwealth
111:18 145:15 158:5
179:1,5
communication 154:9
170:20,24
communities 147:14,14
148:19

community 147:21
149:7 153:1
comparable 158:5
compiled 157:10 175:7
compiles 172:18
complete 153:3
completed 139:16
177:6,21
component 173:13
components 154:21
155:11,13
concentrated 174:15
concluded 176:8
conduct 124:14 141:3,4
141:6 142:21
conducted 140:24
141:1,20 143:5,15
146:13 155:21 156:1
156:20 163:7 166:19
167:5 172:7,10 173:1
175:6
conducting 125:8
141:13,22 163:10
consider 123:11 154:23
consideration 138:23
154:19 165:18,23
166:2
considered 155:1,3,4
consist 150:12
construct 116:23
126:15 132:13 144:18
constructed 132:14
134:21,24 138:24
constructing 127:5
169:9
construction 122:12,16
123:12,17 125:24
159:18 169:12
consulted 121:16 122:5
155:6 166:21
consulting 166:14
CONTINUED 113:1
continuing 111:13
162:22
converse 162:15
copies 132:19
copy 141:11 176:3,5,6
177:6

correct 117:2 120:21
121:18,19 122:22
129:7,20 131:24
137:13,17 143:8,9
145:11 147:17,24
149:10,11 153:20,21
159:6 173:2,5
correction 178:5,8
corrections 177:15
178:19
counsel 112:9,18 113:8
113:16,24 114:16
115:3 179:12
country 156:22
county 158:1
couple 132:19 161:21
162:23
course 154:5
Court 111:1 147:23
create 144:18 160:5,8
created 151:24 160:12
creation 131:12
cultural 122:13,21
139:9 159:19
current 127:20 170:22
currently 158:20
CUTLER 112:11
cut-off 139:19,22 140:3
140:11,15,17 167:14
167:18 173:15

**D**

D 114:1 115:1
data 172:18
date 178:2,6
day 178:21 179:16
decide 129:23
decision 132:6
decisions 170:11
Defendants 111:10
define 140:13 149:16
definition 137:2
definitions 137:6,9
degree 120:3
delivered 177:4,7,8,10
Dennis 150:3
department 113:21
115:23,24 145:11,22
156:1 161:14 173:1

deponent 177:6,12
DEPONENT'S 177:1
deposition 111:13
  115:4,20 120:18
  130:7,17 132:18
  133:12,15 152:7,8
  171:17,18,24 175:9
  176:8 177:9,15 178:1
  178:5,19 179:7,8
deputy 144:4 146:23
  147:9 148:10 164:3
describe 117:9
described 165:4,9
describes 155:18
designed 149:18
detail 169:6
detention 135:3,10
determination 130:2
  132:3 151:13 154:2,5
  156:7
determine 122:6 142:9
  143:16 146:23 157:15
  167:7
determined 128:2,5
  131:20,22,23 139:20
  153:16,22 155:10
  160:7
determining 127:16
  140:3,10,15 154:23
develop 164:20
developed 132:10
  150:2 164:23
developer 136:10,11
  139:3
developers 121:9
  124:10,11,18 132:12
  139:6 155:22 171:10
development 114:11
  116:5 120:14 140:19
dictated 139:21
differ 159:8,14
different 118:5 120:15
  126:17,19 150:13
  155:11 157:3,12
  162:10 165:4,11,13
  168:5
differently 160:17
difficult 138:11
direct 115:15

directly 116:1,3 117:7
  117:12,15
director 117:1,3,4,6
  118:14 142:3,7,15
  144:1,4 145:22,23
  146:22,23 147:8,9
  148:10,10 150:18,18
discrimination 147:18
Discussion 126:6
discussions 121:23
  138:22 154:12,13
  166:7,8
disparate 140:23 141:4
  141:13,19,22 142:10
  142:17,21 143:5,14
  145:24
dispense 115:19
distribution 178:7
DISTRICT 111:1,2
doctorate 119:6
document 130:8,18,19
  130:20 132:21 134:14
  143:24 144:23 152:8
  152:9,11,14 172:2
  174:10,23
documents 130:23
doing 128:19 142:6
  165:16
Dollars 160:3
done 124:9 128:12,16
  128:16,18 129:9,14
  130:4 131:7 133:6
  142:13 143:12,21
  145:15 146:1,5,11,21
  151:1,6 153:5,8 155:2
  155:5,8 156:24 157:1
  157:2,3,5,5,8 160:17
  161:22 162:21,22,22
  166:14 167:17
DORR 112:12
down 143:18
DPA 144:8
Dr 166:21,22
drafted 137:12 138:1,6
drafting 122:16
driver's 115:13
duly 115:13 179:8
during 140:5 144:7
  146:22 147:7 148:9

150:15,17
duties 175:19

─────── E ───────
E 114:1,8 115:1,1
each 124:17 126:19
  135:18 137:1 143:16
  163:16 175:24 177:7
earlier 165:7
early 128:15,17
easy 138:14
edit 123:14,20
editing 124:1,2
education 119:5,6
  120:1
effect 150:4,6
Ehrenberg 111:20
  112:2
either 139:10 156:14
  160:11
employed 179:12
employee 117:22 171:7
end 118:23 127:6
enough 143:1
entire 122:13
entirely 121:19 151:14
entitled 168:14
entry-level 133:24
  134:6 143:3 164:24
equal 117:19
Errata 177:1,3,5,17,22
  178:3,6,7
Esq 113:6,14,19
Esquire 112:7,16
essential 127:11
ET 111:5,9
evaluate 149:18
evaluation 169:8
event 158:9
ever 131:10 133:19
  141:20 146:13,21
  151:17 153:15,22
  156:6,10,13 163:8
  167:16
every 127:19 154:23
everyone 168:13
exactly 128:9
exam 114:11 116:1
  119:12 120:14,20

121:17 122:2 123:24
  124:8,22 125:21
  126:1,15,23 127:2,5
  127:15 128:2,8,14,16
  128:17,18 132:4,10
  132:12,15,22 133:1,4
  134:4,8,9,16 135:11
  135:12,16 136:9
  139:10,16 140:11,19
  140:22,22,23 141:3,6
  141:23 142:17 143:11
  148:14 149:21 150:22
  154:20 158:7,21
  161:2 162:6,17 164:4
  164:21 167:19,24
  169:13,14,24 170:6
  172:19 173:1,4,20
  174:3
examination 115:18
  119:9,21 120:10
  121:6 122:14 127:9
  136:3,19 142:10
  144:12 145:3 146:2
  146:15 147:1 148:21
  149:9 150:11,12
  151:14,20,24 152:1
  156:16 157:24 159:6
  159:8,15 161:11
  164:23 165:8,22
  166:23 168:22 169:10
  170:24 172:7 173:11
  173:14,16 175:5,11
examinations 116:13
  121:24 136:15 141:15
  144:19 158:12 159:9
  161:24 162:2 163:7
  163:11,19 165:5
  175:17
examined 115:14
  174:13,14
example 135:2
exams 122:7 124:15
  141:17 156:21 159:11
  169:15 173:21 175:19
  175:20
except 115:8 178:19
excluding 166:8
excuse 118:1
exercises 149:18 150:13

162:10 173:7,9
**Exhibit** 130:7,15,17
    132:19 133:16 140:21
    144:22,24 152:7
    171:17,24 175:9
**exhibits** 114:16 151:3
**exist** 131:5 134:5
**existence** 131:11
**exists** 131:4 172:6,20
**expert** 161:9 168:17
**experts** 124:19,24
    125:2 132:15 137:16
    138:5,8,16,18 155:6
    166:15,15,16,17
    169:21
**expires** 179:21
**Ext** 113:13
**extent** 135:15,17
**extra** 152:12
**E.B** 121:8,12,15 122:2
    122:5,11 123:4,7,18
    159:20,21 160:4,10
    160:12 164:15 165:5
    165:7,10

---
**F**
---

**Fair** 143:1
**familiar** 162:9 168:20
    171:11
**fancy** 122:19
**far** 148:18 172:16
**fared** 143:17
**favor** 123:1
**Ferrera** 112:16 176:6
**few** 161:22
**figured** 160:4
**filing** 115:7
**filled** 134:21
**final** 138:23 154:2,5
**financially** 179:13
**find** 133:19 135:9,12
**fire** 163:21 175:17,18
**firefighter** 163:19
    174:5
**firefighters** 164:21
**first** 119:17 127:6,7
    138:10 152:7 164:19
    166:5
**fiscal** 163:17,17 164:7

**five** 127:19 163:17
    164:16
**five-minute** 161:17
**five-year** 128:3,11
**Floor** 113:21
**focus** 127:1
**following** 170:8
**follows** 115:15
**follow-up** 161:21
**foregoing** 178:18
**form** 115:9 127:21
    128:23,24 131:23
**format** 157:11 166:19
    166:23 167:3,7,9,11
    167:23 168:9 170:23
**formats** 162:6 163:10
**forms** 129:6,9
**formula** 140:15,18
**forth** 179:7
**found** 132:17 155:9
    168:24
**from** 122:5 123:19
    127:5,9,14 129:6
    130:7,22,24 131:1,2
    131:23 133:4,8,8,9
    135:8 137:12 142:7
    145:13 148:6 151:12
    156:6 157:12 159:8
    159:14 162:24 164:8
    166:21 168:11 169:11
    169:21 171:17 172:9
    172:12 174:5,11
    175:22
**front** 173:22 175:8
**functional** 118:2
**functions** 127:11
**funds** 163:9,16
**further** 179:11

---
**G**
---

**G** 115:1
**gears** 147:7
**GENERAL** 113:10
**generally** 126:21 133:2
    135:9 149:21 150:8
    151:16
**getting** 115:21 144:23
    158:19
**give** 116:17 152:11

154:24 157:4 171:23
**given** 128:8 129:19,22
    130:20 140:22 145:3
    159:6,9 163:16 179:9
**giving** 154:19
**go** 121:21 128:11
    152:13 164:8 168:7
**going** 130:6 132:18
    142:23
**gone** 171:15
**good** 120:19 170:11,15
    170:17
**Gotcha** 126:24
**gotten** 175:24
**granted** 163:22,23
    164:1,18
**ground** 115:19
**group** 123:2 128:21
    147:12 149:17 157:3
**groups** 147:17
**guess** 174:6
**guidelines** 149:22
    150:1 171:5,7
**Guy** 117:9 124:23
    160:23

---
**H**
---

**H** 114:8
**HALE** 112:12
**hand** 179:15
**happens** 138:20
**hard** 138:14
**Harold** 112:7
**having** 115:12 121:23
    142:10,17 151:6
**head** 116:23 162:14
**heard** 144:13
**held** 118:15,20 144:2
    151:5
**help** 123:10 126:15
    169:12
**her** 115:13 117:16
    118:1,2 119:4,10
**hereunto** 179:15
**higher** 118:7
**highest** 119:4
**hired** 139:9,12,13,15
    164:12
**hiring** 143:3

**historically** 167:16
**hold** 118:11,13,18
    144:5
**holds** 118:19,21
**HRD** 119:2 121:16
    122:6 124:7 125:23
    130:21,24 131:16
    140:24 141:3,13,20
    141:22 142:6 143:4
    143:12 144:7,11,17
    146:21 148:20 149:8
    149:22 151:18,24
    153:15,17,22 154:13
    154:14,19 155:2
    156:6,13,19 159:3
    160:8 163:7,8 165:19
    166:14 167:24 169:9
    170:4,23 171:3 172:8
    173:17 174:24

---
**I**
---

**idea** 120:19
**identification** 130:14
    140:20 144:22
**identified** 115:12
**identify** 127:7
**immediate** 167:8
**impact** 140:24 141:14
    141:19,23 142:10,17
    142:21 143:6,14
    145:14,24 146:5,14
    146:21,24
**importance** 117:20
**Including** 171:12,13
**indicate** 177:15
**individual** 124:7
**industrial** 166:16 171:5
**information** 157:10
    169:11
**initial** 165:3
**input** 172:12
**instances** 147:18
    151:22
**instead** 150:21
**instructed** 151:18
    153:18
**instructions** 177:1,12
    178:4,7
**instruments** 157:24

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

interest 142:15
interested 179:13
internal 154:13 166:7,8
internally 132:14
Internet 157:1,2,7
    162:19,20
interrogatories 115:16
interrupt 121:22
intervening 172:14
interviews 150:14
investigation 156:20
invoices 122:5
involve 137:3 166:10
involved 115:24 116:12
    119:11 120:19 123:19
    124:1,2 132:6 140:6
    174:16
involvement 144:14
In-basket 173:7
in-baskets 150:13
item 124:17,17 159:18
items 122:12,13,16
    123:12,17 125:1
    126:1 132:13,13,16
    135:4,17 160:11

                J
Jacobs 121:8,12,16
    122:2,6,11 123:4,7,18
    134:1 159:20,21
    160:5,10,12 164:15
    165:5,7,10 166:21,22
    172:9,13
Jersey 158:15,16
job 117:10,16 118:10
    118:13,18,19,20
    127:23 133:9 163:18
    164:3,20,22 165:16
    168:7 169:11 172:10
    174:7 175:23
jobs 127:11 174:6,19
JOY 113:2
Jr 113:14
judgment 170:11,17
July 164:8,9
June 164:8,9 179:22
jurisdiction 157:22
jurisdictions 156:22
    157:13,16,18,21

158:22,24 161:24
    162:7,16 167:2
just 115:21 122:19
    126:2,24 135:2
    136:13 137:21 139:23
    141:17 144:3 149:5
    150:8 157:4 158:3
    159:6 160:4 161:21
    164:11 165:9 167:15
    169:14 170:8 171:23
    172:16 174:17
justified 167:17

                K
kept 137:7
know 119:3,4,10,12,13
    119:14,15,16,20,24
    120:1,4,12 121:5
    122:1 123:21 124:7
    125:2,5,10,12,15,18
    126:2,13 127:22
    128:7,10 129:1,4,5,16
    131:4,6,7,9,15,16,17
    132:7 133:1,6,12,16
    133:18,23 135:14,17
    135:21,22,23 136:4
    136:13,17,22 137:1,8
    138:3,8 139:7 141:20
    142:2,13 145:4,17
    146:6,20 147:19,20
    148:19 149:1 151:23
    152:3 153:13 155:24
    156:18 157:23 158:8
    158:18,24 159:22
    160:20,21,24 162:5
    162:12,15 167:13,20
    168:16,19 169:7
    170:2,3,4,7,19,22
    171:14,16 172:5,19
    174:23
knowing 171:11
knowledge 123:23
    127:10 131:11 142:12
    142:16 149:19 154:21
    156:16,19 157:20
    159:1 165:19 167:22
    168:6,9 169:1,3,18
knowledgeable 171:4
knowledges 167:8

knowledge-based
    159:2 162:17 167:6
    173:19
KSAs 166:18 167:5
    174:21,22

                L
L 111:16 112:7 113:14
    179:4,19
Landy 134:1 172:9,13
large 156:22 157:15,17
    157:21,22 158:21,24
    162:7,16
last 116:12 126:12
    127:14 128:12 131:15
    133:11 142:19 143:5
    146:19 173:18 174:7
late 128:15,17
Law 113:21
LAWRENCE 111:8
    178:1
lawyer 154:6,12,14
    166:15
lbarrault@prle.com
    112:8
Leahey 113:19 176:4
least 131:23 142:16
    143:6
leave 118:22 120:24
    126:16
leaves 121:3
Lee 116:3,11 117:12,15
    118:9,18,20 120:16
    124:13 133:16 157:5
    160:23 169:20 171:18
    175:9
Lee's 117:4
left 120:7 151:14,16
legal 155:23,24
legislature 163:2,8
    175:22
Leominster 152:18
less 151:9
let 124:20 126:14
    127:22 129:17 134:2
    134:13 141:2 143:1
    149:3 150:15 152:6
    157:14 160:16 162:15
    168:5 169:7 172:16

let's 127:1 135:2 136:1
    149:5,15 159:14
    161:17 166:4
level 117:19 118:4,6,7
    119:4 120:1 125:23
    138:12
levels 163:20,21 165:17
    172:10 174:4,14
license 115:13
Lichten 111:20 112:2,7
    114:4 115:18 126:7
    141:12 152:23 153:4
    153:10 154:10,11
    161:17,20 166:13
    175:1,4,14 176:1
    177:9
lieutenant 126:22
    134:15 164:2
like 127:4 147:7 149:24
    158:3 160:13
Line 178:8
Liss-Riordan 111:20
    112:3
list 114:10 127:18,20
    130:3,13,21,24 131:2
    131:20,22 147:11,15
    147:21 148:5,7 151:2
    153:2
listed 153:1
lists 129:11 147:13
litigation 134:3 144:9
    144:17
little 175:15
LLP 112:12 113:2
long 119:1,3,18 139:21
    140:6 141:13 142:3
    144:5
look 151:4 152:11
looked 123:13 155:6,13
    155:14 162:1 167:1
    171:17,21
looking 152:10 165:5
looks 133:2 152:15
LOPEZ 111:5 178:1
Loren 116:16 117:14
    124:12
Lowell 113:22,24

                M

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

made 125:5,10,19,20
  129:11 132:3 133:19
  136:2,5,14,17,22
  154:2,4 156:13 163:2
  163:8,16 178:20
maintains 149:24
make 122:24 123:15
  126:8 138:11 149:5
  156:6,10 167:15
  170:10 177:18 178:6
making 136:7
many 123:24 124:1
  142:23 143:7 150:12
  151:9 157:15,17
  158:24 162:24
March 130:4
marked 130:14,16
  133:15 140:20 144:21
  152:6 171:24 175:8
market 155:7
marks 177:18 178:6
Massachusetts 111:2,9
  111:15,19,21 112:5
  112:14 113:4,12,22
  145:16 179:1,6
master's 120:3
material 127:8
matter 124:18,24
  132:15 137:2,16
  138:5,8 161:9 169:21
may 120:6 128:14
  133:11 139:5 141:18
  148:16
maybe 153:1
MBTA 147:19,22
  148:4
McDaniel 168:20 169:5
  169:8 170:5 172:12
  172:22,24
McNEELY 111:13
  114:2 115:11 130:6
  153:10 157:5 178:1
  178:23 179:6
mean 121:21 129:23
  137:3 148:18 149:1
  163:15 166:16
means 122:16 135:7
measured 167:23
mechanisms 169:2

medical 163:20
medium 138:14
members 155:22 157:3
mentioned 173:24
  175:21
Merrimac 113:20
method 140:7,10
methods 140:3,8
might 133:24 153:3
Mildred 116:19,20
  118:10 124:23 128:20
  129:13 130:11 132:3
  141:8 145:5,6 169:20
  169:22
mine 144:10
mini 176:4
minorities 143:17
  147:12 148:6
minority 142:11
minute 126:3
miss 152:23 153:10
misspoke 134:6
moment 147:7
money 163:3,22,24
  164:17,19 165:9
  175:22,23
monitor 142:8
months 129:19,21
more 123:15 151:8
  155:5,12,16,17
  159:13 166:4
MORGAN 113:2
Morris 113:6 146:18
  168:20 169:5,8 170:5
  172:11,22,24 176:5
most 121:8,11 159:11
mostly 174:15
move 126:14
moving 131:19 148:9
much 175:23 176:2
multi 163:4
multiple 159:2 162:17
  168:8 173:19
municipality 148:5
  151:15,16,19 153:24

N

N 114:1 115:1
NAME 178:1

names 116:17 157:4
needed 165:20 166:18
  167:22 170:12,17
neither 179:11
never 153:18
new 129:3 158:4,15,16
  160:11 161:22 164:4
  164:20,23
newer 117:22
next 132:8
nodding 140:9
nonminorities 143:17
normally 124:9 129:18
  129:22
Notary 111:17 115:6
  115:14 178:6 179:5
  179:20
notations 177:18 178:6
note 178:5
noted 178:19
number 129:7 135:3,17
numbers 134:17

O

O 115:1
Objection 126:18
  139:11 140:12 146:17
  146:18 147:3 148:15
  151:7 154:1 156:17
  158:13 163:12 167:12
  168:2 170:1,14
objections 115:8
obligations 144:16
obtained 120:2
obviously 130:20
occasions 147:10
occurred 132:8 137:23
October 111:22 129:22
  178:2 179:16
off 162:14
OFFICE 113:10
officer 163:19 164:24
  174:5
Officers 144:11
Offices 111:19
Oh 123:9 141:5
okay 116:4,8,10,23
  117:4,9,12 118:4,18
  118:22 119:1,14,20

120:6,9,15,18 121:11
  121:15,21 122:1,5,15
  122:19,21 123:7,13
  123:23 126:11,14,24
  127:2,3,13 128:1,10
  128:19,24 129:3
  130:2,10,12 131:10
  131:19 132:8,11,18
  133:2,4,11,19,22
  134:13 135:14 136:13
  137:5,23 138:3,13,15
  138:20 139:1,7,13,19
  140:2 142:3,6 143:1
  143:14 145:18,20
  146:8 147:22 148:9
  148:24 149:3,5,12,15
  149:20,22 150:15
  151:4,11,13 152:6,10
  152:21 154:4,18
  155:12 156:10 157:10
  157:14,20 158:9,19
  159:12 160:2,24
  161:5,16 162:5,19,24
  164:6 165:18 166:2,4
  166:8,14 167:5
  168:11,13,17 170:20
  170:22 171:23 172:5
  172:24 173:16,24
  174:17,23 175:21
Once 132:13
one 113:11 123:1
  128:12 130:24 131:1
  131:4,7 133:10 134:5
  134:14 139:5 143:15
  145:18,19 151:2,11
  152:1,12 153:2,5,8
  158:15,16 159:15,17
  163:1 172:19,21
  173:21 174:24 175:7
ongoing 121:23
only 145:10 147:12
  152:16 162:16
open 165:21 167:10
open-book 166:19,23
  167:2,9
opinion 168:11,12,14
opinions 168:18
oral 150:14 170:20,24
order 153:23 154:15

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

organizational 115:22
  116:24
original 134:20,22
  150:16 177:3,8,9
other 116:10,10 118:19
  126:19 127:23 131:16
  136:4 139:5 140:7,18
  142:23 145:21 147:19
  147:20 148:4 149:21
  154:21 155:22 156:21
  157:7,23 158:10
  161:10,24 162:6,6
  167:1 169:2,2,9,15
  172:6,7,8,20 173:21
  174:21,22 175:20
others 162:20 166:17
out 123:10 126:16
  127:13,15,20,20
  128:21,23 129:18
  131:24 133:20 157:12
  165:2
outcome 179:13
outline 132:22 133:1,4
  134:8,20,23 135:8
  136:19 137:12,24
  138:4 160:19,22
outlines 135:15
outside 138:4 139:12
  139:15
outsourced 121:8,12
  122:10 123:5 159:17
over 119:3 120:7 121:1
  121:3 123:2 162:22
  169:15,18 172:13,13
  173:18
oversight 120:13
own 123:18
o'clock 176:9

_____ P _____
P 113:6 115:1
page 114:9 149:6
  152:13 177:21 178:7
  178:8
pages 157:12
pains 178:20
panels 150:14
PAR 147:15 148:5
Paris 116:8,11 117:9,20

118:5 120:18 124:8
  124:23 125:15,18
  132:18 134:9 136:12
  136:22 137:12 139:4
  139:5 160:23 171:12
  171:13
part 118:20 123:11
  124:16
particular 135:12
parties 115:4 179:12
parts 166:22
party 177:7
pass/fail 143:7,18
  152:3 173:13
past 121:4 129:1
  139:21 146:7,8
  147:18 153:14
Peabody 153:2,8
PEDRO 111:5
penalties 178:20
people 116:10 127:15
  158:6
percent 139:22
performed 121:5,6
  122:1
perhaps 128:11 164:4,5
period 120:23 162:23
periodic 121:3
periodically 127:18
periods 131:3,8
perjury 178:20
person 129:12,15
personnel 117:11,17,24
  118:1,2 147:15
physical 174:15,18,21
picked 121:9 124:7
PICKERING 112:11
place 113:11 141:18
  156:15
Plaintiff 111:14
Plaintiffs 111:6 112:9
  112:18
plan 132:10,12
planning 165:16
play 120:9
played 119:7,12,17,20
  119:23 120:12
please 140:13 143:22
  145:1 157:4 176:3,4

point 131:21 139:16
  142:24 163:1
police 114:10 116:1,12
  119:8,21 120:10
  122:2,7 126:1 130:13
  131:24 134:4 135:15
  136:15,19 137:19,21
  140:11 141:14,23
  142:9 143:11 144:10
  144:12,18 145:2,11
  145:21 146:1,14,24
  147:11 148:14 149:9
  151:20 152:15,17
  154:20 156:16,21
  158:6,11,21,22 159:9
  159:11 161:14 162:1
  162:3 163:7,11,19,20
  164:2,24 165:1,17,20
  166:18 167:18,23,24
  168:7,21 169:9,13,14
  169:23 170:6,12,18
  170:23 171:19 172:7
  172:11,20 173:1
  174:4,13
position 117:5 144:2,5
  148:14
possibility 154:23
  166:3
possible 123:14
practice 139:21
predecessor 144:8
predominant 158:20
preliminary 165:1,15
preparation 141:5
present 140:5 156:6
presented 123:21
pretty 120:19
price 159:22
pricing 156:4
primarily 175:16,18
principles 171:15
printed 157:12
prior 121:15 122:3,7
  143:11 144:8 164:16
probably 134:22
  158:10
problem 157:21
procedure 111:16
  149:9 171:20

procedures 164:5
process 126:14,16,17
  126:21 127:4,6,7,16
  128:3,3,6,7,11 132:9
  149:7 152:1 162:11
  164:10
processes 120:14
  149:23 150:1 157:17
produce 175:1
production 115:13
promise 163:17
promo 165:17
promos 165:1
promoting 148:6
promotional 114:10
  130:13 134:4 148:13
  148:20 154:20 158:11
  158:21 162:2 163:20
  163:21 167:18 171:20
  175:19
promotions 164:2
pronged 163:5
properly 165:21 168:8
  169:2
proposed 129:3,18
  149:23 161:13
provide 127:10 150:9
  150:10
provides 140:15
provisions 111:15
psychologists 171:5
psychologist-type
  166:16
Public 111:17 115:6,14
  178:7 179:5,20
purpose 148:6 163:9
purposes 127:1 148:21
pursuant 111:14
put 132:16
putting 146:8,10
  154:12 155:24 160:21
Pyle 111:19 112:2
P.C 111:20 112:3
p.m 111:22 176:9

_____ Q _____
question 126:2,12
  130:23 131:4,15
  134:16 141:2 142:6

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

142:18,19 143:2
145:9 146:19 150:16
158:19 159:13 163:6
165:8 170:8,15 172:5
questions 122:17,24
123:14,19,20,24
125:6,20 134:21,23
135:9,10,13 137:12
138:1,5,9,10,11,15
160:5,7,8 161:21
quickly 170:17
Quinan 113:14 116:19
126:18 139:11 140:12
141:8,11 146:17
147:3 148:15 151:7
152:24 153:9,11
154:1,7 156:17
158:13 163:12 166:10
167:12 168:2 170:1
170:14 175:2,3 176:3
177:4
quite 159:12
quote 123:15
quotes 156:4

_____ R _____
R 115:1
rates 146:16 147:2
read 115:5 126:12
142:19 146:19 169:5
171:14 178:18
readability 123:8
124:15,16,21,24
125:6,13,16,19
138:12 139:13 159:18
readable 123:15
reading 114:10 125:23
127:8,18 129:10
130:3,13,21,24 131:2
131:20,22 177:14
178:4
realize 151:4
reason 178:5
reasons 177:16
recall 120:23 124:4
151:6 162:24 167:8
received 130:14,24
140:19 144:21 146:16
156:4 168:18 177:22

receives 139:1
recognize 130:18
132:22
recognized 166:3
recommend 127:23
153:23 154:15
recommendation
156:10,13
recommendations
127:9 161:7,9
recommended 151:18
153:18
record 177:8 178:20
179:9
Refer 178:7
reference 128:1
referring 130:8
regard 134:4 155:2
156:24
regarding 166:22
171:15
regular 128:5
regularly 143:4
relate 174:3
related 174:4,18
179:11
relation 128:8
relevant 127:22
remember 149:4
repeat 142:18 170:13
rephrase 141:2 165:6
REPLACE 177:21
report 116:8 118:8,15
130:10,22 131:1,12
133:5,15,17,20,22,24
134:3,7,10,12 168:21
169:5,8,12,18,23
170:5 171:19 172:6,8
172:9,12,17,17,22,23
172:24 173:4,20
174:1,10,18 175:6
reported 118:17
Reporter 111:17 179:4
reports 116:1,3 117:7
117:12,15 131:3
represent 134:2
request 149:8 151:13
163:2,8,16
requested 147:21 148:5

148:12 150:20 164:17
164:19 166:21
require 167:8
required 178:7
researched 155:9
reserved 115:9
respect 119:8 121:16
123:17 125:19 133:14
134:8,13 138:9
141:17 143:3,6,10
144:11 146:15,16
147:1 154:19 162:3
163:6 166:17 173:16
175:5
respective 115:4
respond 127:21
responsibilities 121:2
responsible 125:7
128:19 129:12 136:7
160:21 171:3,10
175:17,18
rest 121:9,10 145:15
result 138:20 144:17
164:4
resulted 147:22
retained 114:16 139:9
review 122:12,13,21,24
124:17 125:1,8 128:3
128:5,7 137:23 138:3
139:10 159:18,19,19
175:22
reviewed 124:17
129:10 132:14,17
137:15 160:10,11
169:17,22 170:4
174:22
reviewing 125:1
right 123:11 135:14
141:10 143:12,13,18
143:20 145:18 152:19
153:6 168:1,5 171:20
172:15
Rmorris@morganbr...
113:7
Robert 113:6,14
Robert.quinan@ago....
113:15
role 119:7,10,12,14,15
119:17,20,23 120:9

120:12
Rome 111:19 112:2
Room 113:11
row 163:18
rule 147:16
rules 111:16 115:19
149:22

_____ S _____
S 114:8 115:1
Salem 152:18
Salisbury 152:18
Sally 111:13 114:2
115:11 157:5 178:1
178:23 179:6
same 117:21 118:4
126:16,19,21 149:5
159:1 160:19 161:4
165:3,10
samples 149:23
satisfactorily 115:12
saying 153:3 174:10
says 135:1
scientific 140:2,10,13
140:14,18
scientifically 167:17
score 139:19,22 140:11
140:16,17 143:7,17
146:15 167:18 173:15
scored 152:4,5
scores 140:3 143:16
147:2 167:14
seal 179:16
sealing 115:7
search 155:19,21 156:2
157:1,2,7
Section 148:13 149:2
see 117:23 124:20
135:4 143:22 166:4
seen 131:2,10 134:2
137:9 145:18,19
172:3
selecting 148:21
selection 146:16 147:1
171:7,20
selections 117:11,17,24
118:3
seminars 171:15
send 127:15,19 129:18

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

sense 115:22 138:11
sent 128:21,23 131:24
sergeant 116:12 122:7
  126:22 134:15 141:14
  144:19 148:14·156:21
  159:9 163:7,11 164:2
  165:20 166:18 167:19
  167:23 168:8 170:12
  170:18 172:7 174:13
sergeants 147:11 149:9
  152:15,17 158:22
  162:2 172:20
sergeant's 116:1 119:9
  119:21 120:10 121:6
  122:2 124:15 126:1
  135:16 136:15,19
  140:11 141:23 142:9
  143:11 144:12 145:3
  146:1,14 147:1
  148:20 151:20 154:20
  156:16 158:7 167:24
  168:22 169:10,13,14
  170:6,23
series 172:11 174:4,8
  174:14
service 117:3,4 142:4,8
  142:16 144:2,4
  145:23 146:23 147:9
  147:9 148:11,19
  149:7 150:19,20
  151:24 155:23
services 121:5
set 139:22,24 143:24
  179:7,15
several 116:12
shared 124:10
sheet 177:1,3,5,17,22
  178:3,5,6,7
Shorthand 111:17
  179:4
show 130:6 132:18
  152:6
showing 130:16 172:21
sign 177:17 178:6
SIGNATURE 177:1
signed 115:5 177:6,22
  178:20
significantly 174:7
similar 120:15,17

159:11,13 160:14
  162:11 175:7
simpler 160:16
simplicity 127:1
simply 123:20 172:5
since 115:19 121:24
  141:16 142:5 144:6
  145:22 153:5 154:18
  174:7
SIOP 171:6
sit 124:20 131:10
Six 129:21
size 158:5,6
skills 167:22 168:6
  169:1,18 170:20
  171:1
SMEs 161:13
SOLICITOR 113:18
some 118:19 122:12
  123:18 128:3 129:18
  131:20 132:3 133:5
  140:7 147:12,14
  157:4 161:10 163:4
  164:24 165:7,15,15
  165:19 166:17 175:22
someone 121:1 160:8
  164:12 171:3
something 126:8
  134:19,20 152:23
  173:24
sorry 123:9 164:7
sort 115:20 116:24
  163:4
sought 147:11
sounds 160:13
source 134:9
so-called 138:4 148:12
speak 154:7
speaking 135:9
special 147:11
specialist 117:11,17,24
  118:3
specific 117:10 128:4
  155:12,16,17 158:1,1
  166:4
specifically 119:10
  125:9 128:1 155:5
  156:2,3,9 157:9
  163:13,14 166:20

SS 179:2
standards 163:20 171:4
  171:6,6
start 115:21 142:1
started 164:10,11
State 112:13 113:3
  162:3
statement 126:9
statements 178:20
states 111:1 158:10
  162:12
statewide 146:1 154:20
  158:2,11 161:2
state-wide 150:21
step 127:6,7,13 132:8
steps 114:11 140:19
still 127:22 133:12
  150:4 159:1 162:16
stipulated 115:3
Street 111:21 112:4,13
  113:3,20
strike 131:21 145:20
  153:16
structure 115:22 117:1
  134:11
structured 149:17
  150:14
studied 129:24 162:1
studies 168:17
study 133:5,5,10 135:8
  162:19 167:5,16
studying 163:9
subject 124:18,24
  132:15 137:1,16
  138:4,8 154:8 161:9
  169:21
subscribe 178:19
subtracted 135:24
SUFFOLK 179:2
Suite 112:4
summer 121:13,15
  122:3,8
supervisory 120:13
  170:10
supplement 156:15
supplied 177:17
supports 172:18
Supreme 147:23
sure 118:24 123:1

138:19 143:23 147:20
  149:5 162:18 170:3,7
survey 127:21 128:23
  128:24
sworn 115:14 179:8
system 160:13

---

**T**

T 114:8
take 121:1 127:4 129:6
  130:2 135:2 139:17
  143:16 145:13 148:18
  149:1 161:17 167:21
  168:3
takeaway 174:5
taken 111:14 120:18
  133:4,8,8,9 135:8
  138:22 141:18 178:2
takes 139:1
taking 158:6
talk 126:4
talked 172:1 175:15
talking 151:9 173:17
tandem 150:11
Tara 111:16 179:4,19
target 125:23
tell 115:23 121:21
  144:24 150:8 155:4
ten 151:8,8,9,10 173:18
term 122:15,19 144:10
  149:13
terms 123:1
test 116:5 121:9 122:17
  125:1,24 129:19,22
  132:9 136:10,11,18
  137:12,24 138:23
  154:22 155:22 159:2
  159:3 160:22 169:3
  171:10
tested 127:12 165:21
  167:6 168:8 169:2
testified 115:15 163:1
  165:7,12
testimony 132:2 140:7
  143:10 153:17 169:22
  177:16 178:5 179:9
testing 117:1,6 118:14
  167:7
tests 149:23 152:1

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

154:24 155:7,12
170:24
text 127:14,17 128:24
129:3,18,24
textbooks 123:19
160:24 161:1,2
texts 127:10,22,23
128:2,21 132:4
137:13 161:6,10
Thank 131:19 152:10
176:1
their 116:17 123:18
127:15 138:20,22
139:1 144:10 161:7
168:14
therefor 177:16 178:5
thereof 115:7 177:7
thing 134:14
things 142:23 172:15
think 118:23 134:6
135:1 140:5 148:13
151:2 152:24 153:14
163:3 168:3 169:15
173:23
Third 113:21
thirty 160:1
thousand 160:1
three 118:2 119:19
152:21 153:14 176:9
through 127:4 135:13
151:12 169:2
time 115:9 120:23
129:14 131:3,8,21
139:16,21 141:7
142:7,24 144:7
146:22 147:8 148:9
150:15,17 151:17
163:1 174:7
title 117:10,16,21 118:1
118:2,10,13,15
today 124:21 131:10
172:1
together 132:16 152:13
160:22
top 162:14
town 147:10 154:16
158:1
towns 148:11 150:20
150:24 151:5 152:16

152:21 162:12
training 125:2,12,15
transcript 177:10,18,21
178:4,6,7,18,19
Tremont 111:21 112:4
trial 115:9
true 141:8 175:16,16
179:8
try 125:24 142:8
trying 116:23
two 119:19 121:4 125:2
125:3,7 131:3,8
137:19,21 138:18
type 123:1 126:9
157:16 158:20 159:1
165:21 173:16
types 150:13 156:20

            U
Uh-huh 125:4
under 134:15 178:20
understand 122:15
123:13 124:20 129:17
131:19 135:1 136:13
137:11 143:14 149:6
153:5 159:5 164:16
understanding 143:4
undertaken 157:15
uniformed 171:7
unit 155:23,23,24
UNITED 111:1
unnamed 137:19
unquote 123:15
until 142:8
update 127:18 163:18
updating 127:19
use 150:20 151:19
153:19,24 154:16
155:10 156:11,14
167:17 170:16
used 126:15 127:8
129:1 132:4 134:8
140:10 150:11 151:24
152:3 156:21 157:17
157:18,24 158:21
160:13,19 161:1,10
161:24 162:2,6,13
166:23 169:11 170:23
171:5

using 167:6,23 168:8
usually 127:18 157:22
utilize 156:7 158:11
159:1 162:16 167:2
utilized 148:20 161:13
167:24 169:9
utilizes 159:3

            V
V 178:1
validated 144:18
validation 133:5,14
134:10,11 135:8
168:21 169:23 170:5
171:19 172:6,16,19
173:20 175:6
validity 133:10
various 155:6,10,22
162:10 171:4 174:19
verify 152:12
very 160:14 176:2
Video 173:9
viewing 130:19 132:21
143:24 152:9,14
172:2
Vinita 112:16
Vinita.ferrera@wil...
112:17
Vivian 116:3,9 124:12
133:16 157:5 160:23
169:20 171:18 175:8
volume 177:14,19
178:6
VS 111:7

            W
W 113:19
waived 115:8
want 126:4,8 159:5
167:15 174:9,17
wanted 115:21
wasn't 142:13 153:1
way 128:13 129:17
155:11 157:14 160:16
168:5
Wednesday 111:22
well 117:18,24 118:12
119:17 122:1 124:16
126:23 127:24 139:21

157:21 158:3,9
159:12,17 169:16
170:9 175:20
went 147:23
were 123:20,24 124:2
125:7 128:2,5 129:10
129:11 130:8 136:2,5
137:15 138:5 140:5
142:23 144:8,16
147:12 150:6 152:18
155:7 160:10,11,11
161:1,4,10,13 168:24
169:1 174:22
wets 154:6
we'll 151:4 152:12
161:22
we're 128:10 149:5
165:2
we've 121:23 130:24
155:3 157:1 166:3
171:17,24 173:17
175:24
whereof 179:15
WILMER 112:11
witness 114:2 115:11
130:19 132:21 140:9
141:10 143:24 152:9
152:14 166:12 172:2
179:7,10,15
work 118:12 121:8,10
121:11 122:1,7,10
124:5,8,10 140:14,18
165:1,3,4,8,9,10,11
165:13,15,16 167:17
Wosny 111:16 179:4,19
write 123:18
writing 124:1,2 155:18
written 149:21 150:10
150:12 156:15 162:17
173:11,13,19
written-based 169:3
wrote 130:10

            X
X 114:1,8

            Y
year 120:7 129:15
130:4 146:7,8 153:13

Sally McNeely 10-29-2008
Pedro Lopez, et al. v. City of Lawrence Massachusetts, et al.

163:17,23,24 164:7
164:20 175:24
**years** 119:3,19 121:4
127:19 143:5,7 146:8
152:16 153:14 162:23
162:24 163:18 164:16
172:13,14 173:18
**York** 158:4

---

**$**

$160,000 175:24

---

**0**

**01852** 113:22
**02018** 113:12
**02108** 112:5
**02109** 112:14 113:4
**03** 152:16
**05** 136:20 175:11
**06** 125:20 136:20
175:11
**07** 125:20 136:20
**07-CA-11693JLT**
111:7
**08** 152:16

---

**1**

**1** 132:19 133:16 135:10
135:13 171:17,24
175:9
**1st** 164:8,9
**1-9** 135:4
**1:00** 111:22
**10** 147:15,16 148:5
179:22
**11** 148:13 149:2
**177** 178:7
**18** 111:20 112:4
**1991** 133:9,14 134:10
134:11 135:8 171:19
**1992** 130:22 131:1,12
**1995** 133:10,22 134:3

---

**2**

**20** 114:10,10 119:3
130:15,17 143:5
**200** 113:3
**2000** 141:18 144:6
146:9

**2001** 141:18 146:9
172:9,22 173:24
174:11
**2002** 141:18 146:9
153:6 168:21 169:8
169:12 170:5 173:2
**2003** 136:1 141:19
142:5 146:9 154:18
156:6 159:15
**2004** 141:19 146:9
159:16
**2005** 119:8 120:9,20
121:17 124:14,22
125:6 126:15,21
128:15,16,17 135:15
135:16 136:2,8
139:10 140:22 141:2
141:5 143:21 145:3
145:20 146:9 150:6
151:12 159:9,15
164:21 169:13
**2006** 118:23 119:8
120:9,20 121:17
124:14,22 125:6
126:15 127:1 128:2,4
128:14,15,17,17,18
131:2,13,23 132:4,9
132:24 134:9 135:16
136:8 137:11 139:7
139:10 140:23 141:3
141:16,24 142:1,8
143:11,15,20 146:9
150:6 159:10,15
164:22,22
**2007** 119:8 120:20
121:13,15,17 122:3,8
123:24 124:8 126:16
135:16 136:1,9
140:23 141:3,6 150:6
151:12 159:10,11,17
160:14 164:8,22
165:1,8,10 175:5
**2008** 111:22 130:7
159:17 160:13 164:9
165:2 178:2,21
179:16
**2009** 164:9 179:22
**2019** 113:11
**21** 114:11 140:21

**22** 114:12 144:22,24
**2554** 113:13
**29** 111:22 178:2
**29th** 179:16

---

**3**

**30** 114:11
**30th** 164:8,9
**34** 114:12
**375** 113:20

---

**4**

**4** 114:4

---

**5**

**5** 152:7
**500** 112:4

---

**6**

**60** 112:13
**617.367.7200** 112:6
**617.523.6666** 113:5
**617.526.6208** 112:15
**617.727.2200** 113:13

---

**7**

**70** 139:22 167:18

---

**9**

**9** 130:7 135:4,10,13
**978.970.4050** 113:23

---