**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
)
PEDRO LOPEZ, et al.,                               )
         Plaintiffs                              )
)
)
v.                                                 )
)    **Case No.  07-CA-11693-JLT**
)
CITY OF LAWRENCE, MASSACHUSETTS, et. al,           )
         Defendants                              )
_____)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**
**STATE DEFENDANT**
**PRODUCE NEWLY COMPILED DATA**

**I.**  **INTRODUCTION**.

The plaintiffs move to compel the State Defendant, Commonwealth of Massachusetts Human Resources Division ("HRD"), to produce a recently completed study/report, authored by the firm that HRD has retained as their expert in this case. This report is directly relevant to two of the core issues in this case.  As described herein, HRD has recently informed all civil service municipalities that based upon this expert's report regarding the most recent police sergeant exam it was determined that the exam lacked validity/reliability when scores were used as a strict rank order device. Because this is a central focus of the current litigation, and the report is directly relevant to plaintiffs' claims, the court should order production of this directly relevant material.

## II.    FACTUAL BACKGROUND.

This action alleges that the police sergeant's promotional exam administered by HRD in 2005, 2006, and 2007, violated Title VII of the Civil Rights Act of 1964, in that it has a significant disparate impact upon minority test takers, and cannot be shown to be job related under applicable federal EEOC standards.  The plaintiffs also assert that even if the exam could be shown to be job related, there were less discriminatory alternatives available to HRD which it did not utilize, also in violation of Title VII.  See, generally, Bradley, et al. v. City of Lynn, 443 F.Supp.145, 157-158 (D.Mass.2006).[1]  A main focus of this case is the fact that HRD has utilized the results of the police sergeant's exam as a rank ordered device – meaning that individuals are ranked on eligibility lists strictly according to their score.  As discussed by Judge Saris in the Bradley opinion, see Bradley, et al. v. City of Lynn, supra, at pgs. 171-173, the plaintiffs have asserted that the sergeant's exam has a significant disparate impact on minority candidates and cannot be shown to be job related particularly when it is issued to rank order candidates.  Plaintiffs claim that the exam fails Title VII standards, both with respect to validity and reliability.  Validity refers simply to the fact that the exam, particularly when utilized as a rank order device, does not sufficiently predict performance on the job.  Id.  Reliability, on the other hand, is a statistical measurement which assesses the question of whether there are any statistically meaningful differences between point scores – meaning whether the difference between an 88 and

---

[1] The plaintiffs have not, at this time, challenged the 2008 sergeant's promotional examination because eligibility lists have not yet been issued and plaintiffs do not know at this time whether such exam has been demonstrated to show disparate impact.  However, the exam format for 2008 is the same as that used in previous years.

an 84 on the same exam shows any statistically significant difference or not.  See Bradley, supra, at p. 173.

In October of 2008, HRD conducted a police sergeant's examination, utilizing the same basic format as had been used in 2005, 2006 and 2007.  (As stated above, the 2008 exam is not currently part of this litigation.)  In February of 2009, before publishing the exam scores and eligibility lists, HRD made a decision to no longer use the police sergeant's test scores as a strict rank order device.  In a memo dated February 12, 2009, Sally McNeely, Director of Policy at HRD, stated in part as follows:

> The Human Resources Division is pleased to inform you that, after a careful analysis and much guidance by our expert testing consultant, E.B. Jacobs, our office … is issuing the exam results in score bands.  The passing point for the written component of the 2008 Boston sergeant exam is 66.25. . . .  Each Boston exam title has its own numerical listing of score bands.[2]  The … score bands for this examination series were recommended by HRD's experts based on a statistical measurement of reliability of the exam performance of candidates.  Score banding is premised on the belief that minor differences in test scores do not reliably predict differences in job performance.  As such, applicants who pass the exam components will be ranked by a score band which reflects the exam score and experience and education credit.  An applicant's ranking on the 2008 promotional list will be based on the exam score band he or she achieves.  Please be advised that promotional candidates in the same exam band score are considered tied.

See Exhibits A & B attached hereto.

Upon seeing this memo, counsel for the plaintiffs requested HRD's attorneys to voluntarily provide the so-called "reliability data" supporting HRD's determination to utilize the banding of scores.  Plaintiffs assert that this information is directly relevant to core issues in the case – namely the reliability of the exam and the scoring system previously used by HRD.  Counsel for HRD has refused to provide this data, making this

---

[2]     Essentially, HRD determined that any established bands within six points of each other, meaning any score between 100 and 94 was considered equal, 94 to 88 considered equal, et cetera.

motion to compel necessary. <u>See</u> Exhibits C & D attached hereto. However it has filed an affidavit from their expert in an unrelated case discussing the fact that empirical data demonstrates that if the scores off the exam were used as a rank order device, the results would not be reliable. <u>See</u> Exhibit E attached hereto.

III.    **ARGUMENT.**

A.    **The Federal Rules Authorize Broad Discovery.**

Under Rule 37, a party may apply for an order compelling disclosure of documents requested in a discovery request and compelling a deponent to answer questions. Fed.R.Civ.P. 37(a)(2)(B). The court "has broad power to control discovery," <u>City of Waltham v. U.S. Postal Service</u>, 11 F.3d 235, 243 (1st Cir. 1993), and "'the deposition-discovery rules are to be accorded a broad and liberal treatment' to effectuate their purpose that 'civil trials in the federal courts no longer need be carried on in the dark.'" <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 114-15 (1964) (quoting Hickman v. Taylor, 329 U.S. 495, 501, 507 (1947)); <u>see</u> <u>also</u> <u>Cheney v. U.S. Dist. Court for Dist. of Columbia</u>, 542 U.S. 367, 392 (Stevens, J., concurring) ("Broad discovery should be encouraged when it serves that salutary purpose of facilitating the prompt and fair resolution of concrete disputes.").

Rule 26 defines discoverable material as follows:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the

trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1).

Under Rule 26, therefore, relevant information must be disclosed during discovery unless the information is privileged.  Fed.R.Civ.P. 26(b)(1).  "Relevancy" under Rule 26 is "broadly construed at the discovery stage such that information is discoverable if there is any possibility that it might be relevant to the subject matter of the action."  E.E.O.C. v. Electro-Term, Inc., 167 F.R.D. 344, 346 (D. Mass. 1996).  Accordingly, courts in the First Circuit have "repeatedly held that there should be generally unrestricted access to sources of information" during discovery.  Cohn v. Dart Industries, Inc., 1976 WL 44045, at *1 (D. Mass. Apr. 26, 1976) (citing Horizons Titanium v. Norton Co., 290 F.2d 421 (1st Cir. 1962); see also In re Amezaga, 195 B.R. 221, 225 (D.P.R. 1996) ("It is well established that discovery is a liberal process broadly defined as allowing unrestricted access to sources of information.").

**B. Documents Relating To HRD's 2008 Reliability Study Are Relevant, Discoverable, And Not Privileged.**

Plaintiffs have brought this action as a disparate impact claim.  A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact" on a protected class.  See 42 U.S.C. §2000(e)-2(k)(1)(A)(i); see also Albemarle Paper Company v. Moody, 422 U.S. 405 (1975).  Disparate impact claims do not require proof of intent to discriminate.  Munoz v. Orr, 200 F.3d 291 (5th Cir. 2000).  In challenging a written promotional examination such as the plaintiffs are challenging in this case, a plaintiff can establish a prima facie case of disparate impact

by showing "that the tests in question select applicants for hire … in a racial pattern significantly different from that of the pool of applicants." Albemarle, 422 U.S. at 425.

Once the plaintiffs make out a prima facie case of disparate impact with respect to a written examination, the defendant is required "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." See 42 U.S.C. §2000(e)-2(k)(1)(A); see also Lanning v. SEPTA, 181 F.3d 478, 485 (3rd Cir. 1999). The question of "job relatedness" and "business necessity" turns on proof that 1) the examination is "reliable" meaning the scores achieved would be consistently reproducible by the same candidates and 2) the examination results are significantly predictive of job performance. Finally, even if the employer can show that the examination utilized is "job related and consistent with business necessity," the plaintiffs can still prevail by demonstrating "the availability of alternative practices to achieve the same business ends with less racial impact." See generally Frazier v. Independent School District, 980 F.2d 1514, 1524 (5th Cir. 1993); Albemarle, 422 U.S. at 425; see also 42 U.S.C. §2000(e)-2(k)(1)(A)(ii). The alternatives must be able to achieve the same business purpose, though they need not be the same type of tests as those challenged. Id.

In the present case, throughout this litigation, the Commonwealth, itself and through its experts, has asserted that the examinations utilized in 2005, 2006, and 2007 are both valid and reliable – i.e. predictive of job performance even when used as a strict rank order device. Moreover, it is undeniable that the 2005, 2006, and 2007 sergeant's examinations have utilized the identical format used in the 2008 exam, namely an 80 question pen and paper multiple choice written knowledge test. Yet in its

February 12, 2009 memorandum, HRD seems to concede that their experts have studied that examination format and the scoring system previously utilized and determined that the exam is not "reliable" when used as a strict rank order device. Thus, HRD appears to now have data establishing one of the key issues in this case – whether the police sergeant's exam is not a reliable measurement of job performance. This evidence is important on two points which will be directly involved in this litigation. First, if, as defendant suggests in its February 12, 2009 memo, the exam and examination format utilized do not predict real difference in performance within certain broad ranges of scores, then under Title VII standards, the exam could not be utilized as a rank ordered device. See Bradley, supra. at p. 173. Further, if the exam, when utilized in this manner, is not predictive of ultimate performance, then it would not meet the "business necessity" requirements of Title VII. See generally Bradley, supra. at 174.

Because this information is vital to plaintiffs' case and cannot be obtained through any other means, it is requested that this court order the production forthwith.

Respectfully submitted,

PEDRO LOPEZ, et al.,

By their attorneys,

/s Harold L. Lichten

_____

Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO #640716
Leah M. Barrault, BBO # 661626
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200


Dated: April 8, 2009

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon the Court and counsel of record for defendants via the Court's ECF filing system, on April 8, 2009.

              /s Harold L. Lichten_____
              Harold L. Lichten