# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

```
                                    )
Pedro Lopez, et al.,                )
                                    )
           Plaintiffs-Appellees,    )
                                    )
                                    )
v.                                  )      Civil Action No.
                                    )      09-1664
City of Lawrence, et al.,           )
                                    )
           Defendants-Appellants.   )
                                    )
```

## PLANTIFFS-APPELLEES' MOTION TO DISMISS APPEAL

### I.    INTRODUCTION

Having been unsuccessful on several dispositive motions which it filed, and with trial scheduled in June of 2009, the Commonwealth has purported to file an interlocutory appeal with this Court based upon 11th Amendment immunity and has argued below that this filing deprives the District Court of jurisdiction to proceed further.

As described herein, the Commonwealth's appeal is frivolous for two critical reasons: 1) plaintiffs seek significant injunctive relief correcting and remedying the Commonwealth's administration of discriminatory examinations, and thus 11th Amendment immunity is simply inapplicable to claims for injunctive relief, and, 2) the law is clear beyond doubt that Congress has waived 11th Amendment immunity for states who are

subject to actions brought under Title VII of the Civil Rights
Act.

Because the Supreme Court has made clear that an
interlocutory appeal of the denial of 11th Amendment immunity is
not permitted where the complaint seeks "injunctive" relief, and
because the District Court was required to make a preliminary
analysis as to whether or not the interlocutory appeal was
"patently meritless"[1] this Court should dismiss the appeal.[2]

## II. WHERE AN ACTION SEEKS INJUNCTIVE RELIEF, THE 11TH AMENDMENT DOES NOT CONFER A GRANT OF IMMUNITY ON THE STATE

In this lawsuit, the Plaintiffs primarily seek injunctive
relief remedying and correcting the effects of the
discriminatory promotional exams created and administered by HRD
over the last several years. (See Plaintiff's Sixth Amended
Complaint at pp. 13-14, attached as Exhibit A) If the Plaintiffs
are successful, they will seek several forms of injunctive
relief similar, but not identical, to the injunctive relief
granted by Judge Saris in Bradley v. City of Lynn 443 F. Sup. 2nd
145 (D. Mass. 2006) (Final injunctive order as attached hereto
as Exhibit B. See also Massachusetts Association of African-
American Police Officers v. City of Boston 973 F.2nd 18, 19 - 21

---

[1] See Rivera-Torres v. Ortiz Valez 341 F.3rd 86, 95 (2003)
[2] Plaintiffs filed in the District Court an opposition to Defendants motion
for a stay pending interlocutory appeal. The District Court however granted
the stay on May 13, 2009 without comment or legal analysis.

(1st Cir. 1992).)  While Plaintiffs will also seek back pay and benefits as ancillary relief to the injunctive remedy, monetary damages are not the primary focus of the case. [3] Since the Commonwealth has been defending discriminatory entry level and promotional police and fire exams for over 30 years and has itself has agreed to several consent decrees, it is obviously aware that injunctive relief would be a primary component of the remedies sought by Plaintiffs. Castro v. Beecher 679 F. 2nd 956 (1st Cir. 1982), Massachusetts Association of African-Americans v. City of Boston, supra, Bradley v. City of Lynn, supra.

The United States Supreme Court has made clear that even where Congress has not abrogated a state's 11th Amendment immunity from a federal discrimination statute, such immunity does not bar an action to "enjoin state officials to conform their…conduct to the requirements of federal law." See Garrett v. University of Alabama 531 U.S. 352, 368 (2001), Kimel v. Florida Board of Regents 508 U.S. 62, 80 (2000), Mullins v. Department of Labor, 2009 WL 1059208 (D. Puerto Rico 2009). (In light of Supreme Court precedent, actions seeking money damages under the ADA and ADEA will not be dismissed to the extent that the action seeks equitable relief). Furthermore, the law is clear that actions seeking instatement or reinstatement are

---

[3] Indeed, in their initial Motion to Dismiss, the Commonwealth correctly pointed out that the 11th Amendment bars state law claims for damages against the State in Federal Court.  Plaintiffs agreed with this legal analysis, and refiled their state law Ch. 151B claims in state court.

considered claims for equitable relief, which are not barred by

11th Amendment immunity. Thus in <u>Garrett v. University of</u>

<u>Alabama</u>, the court stated;

> Our holding here that Congress did not
> validly abrogate the states' sovereign
> immunity from suit by private individuals
> for money damages under Title I does not
> mean that persons with disabilities have no
> federal recourse against discrimination. …
> Those standards can be enforced by the
> United States in actions for money damages,
> as well as by private individuals in actions
> for injunctive relief.

Id at section 9. See also <u>Neal v. East Tennessee State</u>

<u>University</u>, 2008 WL 4065933 (E.D. Tenn. 2008)

Ironically, the very cases which the Commonwealth relied on

in its Motion for Stay Pending Appeal, which was granted by the

District Court, support the Plaintiffs' position here that an

interlocutory appeal is not permitted when injunctive relief

constitutes part of Plaintiffs' claims (See Exhibit C attached

hereto). For example the Commonwealth relied in that motion on

<u>Hegarty v. Somerset County</u> 25 F.3rd. 17, 18 (1st Cir. 1994) for

the proposition that where the court denies qualified immunity,

there is an automatic right to an interlocutory appeal. Yet

<u>Hegerty</u> was an action solely for monetary damages and this Court

properly pointed out that:

> We also point out that the underlying case
> is one for monetary damages only and does
> not request injunctive relief, as to which a
> defense of qualified immunity is immaterial.

4

> cf. Lugo v. Alvarado 8 19 F. 2nd 5 (1st Cir.
> 1987)(concluding that equitable claims stand
> on a different footing than damage claims…).

Id. at 18. In short, the Defendants' interlocutory appeal must

be dismissed because it is patently meritless.  As the

Commonwealth itself states in its Motion for Stay Pending

Appeal, the granting of a stay pending appeal is necessary where

the claim is for damages only because "whether Plaintiffs'

claims should proceed to trial is precisely the aspect of the

case over which this Court now lacks jurisdiction" (Id. at pp 1-

2). Yet, where a significant part of the case is for injunctive

relief as is here, even if there were 11th Amendment immunity

(which there is not as discussed below) over Plaintiffs' claims

for back pay and benefits under Title VII, there is still going

to be a trial in District Court on whether or not the

examinations at issue here are discriminatory, and whether the

Commonwealth must remedy those unlawful acts.  Thus, it is not a

question of "jurisdiction" at all, but simply a question about

whether Plaintiffs will be limited to injunctive relief or can

proceed with their back pay claims.  Therefore the very purpose

for permitting an interlocutory appeal from the denial of

sovereign immunity simply does not exist. This point alone

requires the appeal to be dismissed.  Since trial will occur

anyway, the question of whether or not damages may be awarded by

the Court on remedy (in the form of back pay and benefits) is an issue which can be appealed by the Commonwealth in due course, especially in this case where the court has bifurcated the trial on liability from any trial on damages. (See Docket #87, attached hereto as Exhibit D, District Court's order of June 9, 2008).

### III. BECAUSE THE LAW IS CLEAR THAT THE COMMONWEALTH IS SUBJECT TO LIABILITY UNDER TITLE VII AND BECAUSE THE ISSUE RAISED BY THE COMMONWEALTH IS NOT ONE THAT CAN BE DECIDED AS A MATTER OF LAW, THE REQUEST FOR STAY PENDING INTERLOCUTORY APPEAL MUST BE DENIED[4]

In its motion for summary judgment in the court below, the Commonwealth argued that even if it were held to be an employer for Title VII purposes under the facts of this case, there was no clear intent by Congress to waive the state's immunity for this type of case where the state is designing and administering a promotional exam that is discriminatory. With all due respect this argument lacks any merit. First, it is simply beyond dispute that acting pursuant to Section 5 of the 14th Amendment, Congress specifically intended to waive a state's sovereign immunity when it is sued for race discrimination under Title VII of the Civil Rights Act of 1964. See In Re: Employment

---

[4] Plaintiffs wish to make clear that they are not attempting to argue the "merits" of the Commonwealth's interlocutory appeal in this motion. Rather they simply wish to demonstrate that the appeal is so "patently meritless" that the Defendants should not be allowed to avoid trial by filing such a frivolous interlocutory appeal. River-Torres, supra. at 96-97.

Discrimination Against the State of Alabama 198 F.3rd 1305 (11th
Cir. 1999). (Noting that in Fitzpatrick v. Bitzer 427 US 445,
449 (1976), the Supreme Court specifically noted that Congress
had expressly waived a state's 11th Amendment immunity for
violations of the race discrimination provisions of Title VII).
While this should be dispositive of the Commonwealth's
interlocutory appeal, it appears to make a more refined argument
that given the type of case at issue here – the Commonwealth
creating and administering promotional exams which have a
disparate impact – Congress did not expressly waive the
sovereign immunity of the states. The short answer to this
question is that the 11th Circuit specifically held in In Re:
Employment Discrimination Litigation against the State of
Alabama supra that disparate impact – promotional and entry
level examination claims can be brought against a state under
Title VII and that the abrogation of 11th Amendment immunity is
no different for the state in such instances then are claims for
intentional discrimination.  Id at 1317-1320.  Indeed, the
Commonwealth cited no case in its Motion for Stay, and
Plaintiffs can locate no case, which stands for the proposition
that for some race discrimination cases under Title VII,
Congress did not abrogate a state's sovereign immunity.

In addition, as Plaintiffs pointed out in their Opposition
to the Commonwealth's Motion for Summary Judgment, the question

7

of who is an employer for Title VII purposes is at best a mixed question of fact and law, and the Plaintiffs presented overwhelming and persuasive evidence as to why under the facts of this case the Commonwealth was an employer for Title VII purposes and should be treated as such.  They relied in significant part upon the detailed findings made by Judge Saris in Bradley v. City of Lynn 403 F. Supp. 2d 161 (D. Mass. 2005).

This Circuit has made clear that where the question of whether immunity applies requires factual findings and those findings are disputed, it is not appropriate to stay litigation and trial of a case pending appeal to the First Circuit.  This issue was extensively analyzed in Rivera – Torres v. Ortiz Valez 341 F.3rd 86 (1st Cir. 2003). There the First Circuit, relying on the Supreme Court decisions of Griggs v. Provident Consumer Discount Company 459 U.S. 56, 58 (1982), and Mitchell v. Forsyth 472 U.S. 511 (1985), delineated three exceptions to the automatic divestiture of jurisdiction when an interlocutory immunity appeal is filed. First, the Court made clear the claim of immunity must "turn on an issue of law". Thus, where the question of immunity may turn on an "unresolved issue of material fact" it is not immediately appealable. Rivera – Torres supra at 95. See also Stella v. Kelley 63 F.3rd 71, 74 (1st Cir. 1995) ("a District Court's…rejection of a qualified immunity defense is not immediately appealable to the extent that it

turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact").

Second, filing of such interlocutory appeal confers jurisdiction on the Court of Appeals and divests the District Court of control only "over those aspects of the case involved in the appeal". Id at 96. As demonstrated above, at best, since the only possible immunity which could even be asserted by the Commonwealth is immunity from damages, the injunctive aspects of this case must proceed unabated. Third, where the District Court finds that the filing of the interlocutory appeal is "patently meritless" it may hold that it is not deprived of jurisdiction in the first instance. See Rivera – Torres v. Ortiz Valez at p. 95-96, see also United States v. Brooks 145 F.3rd 446, 456 (1st Cir. 1998).

In the present case, the Plaintiffs can easily demonstrate that all three exceptions apply. First, as demonstrated above, the Commonwealth's interlocutory appeal is patently meritless because 1) Plaintiffs seek injunctive relief and there is no 11th Amendment immunity for the Plaintiff's claims for injunctive relief and 2) Congress has clearly waived the state's sovereign immunity for 11th Amendment purposes when it enacted Title VII and made states subject to Title VII in its 1972 Amendments. Independently, either of these arguments would be sufficient for the Court to deny a Stay of the Commonwealth's interlocutory

9

appeal, but taken together, they destroy any claim by the Commonwealth that its interlocutory appeal has merit.

Moreover, even if the Commonwealth could get by the "patently meritless" problem, it still cannot escape the fact that the question of the Commonwealth's 11th Amendment immunity here is necessarily tied up in the many facts surrounding the extensive command and control which the Commonwealth has over the civil service system in the Commonwealth of Massachusetts, and specifically the control which it exerts over entry level hirings and promotions of police officers and firefighters in the Commonwealth of Massachusetts. Since the Commonwealth argued in its Summary Judgment brief that it had no such extensive control and Plaintiffs, relying on <u>Bradley v. City of Lynn</u>, argued to the contrary, it is difficult to see how this questions turns on a purely legal question and therefore under Rivera-Torres, an interlocutory appeal is not appropriate.

## VI. Conclusion

The Court should dismiss this interlocutory appeal as "patently meritless."

Respectfully submitted,

Pedro Lopez, et al. on behalf of
himself and on behalf of a class of
persons similarly situated,

By their attorney,

_____

Harold L. Lichten, (C.A.B. #22114)
Shannon Liss-Riordan, (C.A.B. #77877)
Pyle, Rome, Lichten, Ehrenberg &
  Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Dated:   May 14, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2009, I caused a copy of
this document to be served by first class mail on the following
counsel of record:

Mark D. Selwyn
Jeffrey S. Gleason
Vinita Ferrera
Wilmer Hale LLP
60 State Street
Boston, MA 02109

Rahsaan D. Hall
Lawyers' Committee for
  Civil Rights Under Law
294 Washington Street, Suite
443
Boston, MA 02108

James M. Bowers
261 Common Street
Lawrence, MA 01840

Peter J. McQuillan
City of Methuen
Office of City Solicitor
The Searles Building
41 Pleasant Street
Methuen, MA 01844

Iraida J. Alvarez
Attorney General's Office
One Ashburton Place
Boston, MA 02108

Robert L. Quinan, Jr.
Attorney General's Office
One Ashburton Place
Room 2019
Boston, MA 02108

Sookyoung Shin
Office of the Attorney General
Trial Division
One Ashburton Place
18th Floor
Boston, MA 02108

Brian W. Leahey
R. Eric Slagle
City of Lowell Law Department
City Hall
375 Merrimack Street
Lowell, MA 01852

Laurie W. Engdahl
Daniel C. Brown
Collins, Loughran & Peloquin
320 Norwood Park South
Norwood, MA 02062

Robert P. Morris
Mary Jo Harris
Morgan Brown & Joy LLP
200 State Street
11th Floor
Boston, MA 02109

Edward M. Pikula
1350 Main Street, 15th Floor
Springfield, MA 01103

John T. Liebel
City of Springfield
36 Court Street, Suite 210
Springfield, MA 01103

Maurice M Cahillane, Jr.
Egan, Flanagan & Cohen, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035

Williams G. Cullinan
Law Office of William G. Cullinan
1350 Main Street
Springfield, MA 01103

Kevin S. McDermott
MBTA Law Department
10 Park Plaza, 7th Floor
Boston, MA 02116

_____
Harold L. Lichten, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| PEDRO LOPEZ, ABEL CANO, KEVIN SLEDGE, CHARLES DEJESUS, RICHARD BROOKS, MASSACHUSETTS HISPANIC LAW ENFORCEMENT ASSOC., ROBERT ALVAREZ MARISOL NOBREGA, SPENCER TATUM, SHUMEAND BENFOLD, ANGELA-WILLIAMS MITCHELL, GWENDOLYN BROWN, LYNETTE PRAILEAU, TYRONE SMITH, EDDY CHRISPIN, DAVID E MELVIN, STEVEN MORGAN WILLIAM E. IRAOLO, JOSE LOZANO, COURTNEY A. POWELL, JAMES L. BROWN, GEORGE CARDOZA, LARRY ELLISON, DAVID SINGLETARY, CHARISSE BRITTLE POWELL, CATHENIA D COOPER-PATERSON, MOLWYN SHAW, LAMONT ANDERSON, GLORIA KINKEAD, KENNETH GAINES, MURPHY GREGORY, JULIAN TURNER, NEVA GRICE, DELORES E. FACEY, LISA VENUS, RODNEY O BEST, KAREN VANDYKE, ROBERT C. YOUNG, ROYLINE LAMB, LYNN DAVIS, JAMES A JACKSON, JUAN ROSARIO, LOUIS ROSARIO JR, OBED ALMEYDA, DEVON WILLIAMS, JULIO M. TOLEDO, INDIVIDUALLY AND ON BEHALF OF A CLASS OF INDIVIDUALS  SIMILARLY SITUATED, | ) ) ) ) ) ) ) ) ) ) ) ) **Case No. 07-CA-11693-JLT** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
|             Plaintiffs | ) ) |
| v. | ) ) ) |
| CITY OF LAWRENCE, MASSACHUSETTS, JOHN MICHAEL SULLIVAN, IN HIS CAPACITY AS MAYOR OF THE CITY OF LAWRENCE, MASSACHUSETTS, CITY OF METHUEN, MASSACHUSETTS, WILLIAM MANZI, III, IN HIS CAPACITY AS MAYOR OF CITY OF METHUEN, MASSACHUSETTS, CTY OF LOWELL, MASSACHUSETTS, APPOINTING AUTHORITY FOR CITY OF LOWELL, CITY OF WORCESTER, MASSACHUSETTS, MICHAEL OBRIEN IN HIS CAPACITY AS CITY MANAGER FOR THE CITY OF WORCESTER, CITY OF BOSTON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

1

MASSACHUESETTS, CITY OF SPRINGFIELD, )
MASSACHUSETTS, MAYOR DOMENIC SARNO JR )
IN HIS CAPACITY AS MAYOR FOR THE CITY OF )
SPRINGFIELD, COMMONWEALTH OF )
MASSACHUSETTS, PAUL DIETL, IN HIS CAPACITY)
AS PERSONNEL ADMINISTRATOR FOR THE )
COMMONWEALTH OF MASSACHUSETTS, )
HUMAN RESOURCES DIVISION,MASSACHUSETTS)
BAY TRANSPORTATION AUTHORITY, )
DANIEL GRABAUSKAS  IN HIS CAPACITY AS )
GENERAL MANAGER, THE BOARD OF TRUSTEES )
OF THE MASSACHUSETTS BAY )
TRANSPORTATION AUTHORITY, )
 )
 )
        Defendants )
_____ )

## SIXTH AMENDED COMPLAINT; INJUNCTIVE AND DECLARATORY RELIEF REQUESTED

### I.      INTRODUCTION.

1.      This is an action by Hispanic and African-American police officers in the

Commonwealth of Massachusetts who have taken the Commonwealth's promotional

examination for the position of police sergeant in the years 2005, 2006 or 2007.

Although such plaintiffs are well qualified for a sergeant's promotion, they have not, as

of this date, received such a promotion.  The named and class plaintiffs challenge the

sergeant's promotional examination on the grounds that it has a disparate impact on

minority test takers and cannot be shown to be job-related under applicable federal

Equal Employment Opportunity Commission and Massachusetts General Laws Chapter

151B standards.   The named and class plaintiffs seek appropriate injunctive and

compensatory relief as described herein.

## II.    <u>JURISDICTION</u>.

2.      This court has jurisdiction over this case under 28 U.S.C. §§1333 and 1343, in that this case arises under the laws of the United States of America, including, particularly, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), as amended. In addition, the supplemental jurisdiction of this court is invoked under 28 U.S.C. §1367 for plaintiffs' state law claims.

## III.    <u>PARTIES</u>.

3.      The plaintiff, Abel Cano, is a Hispanic resident of Methuen, Massachusetts and is a police officer for the City of Methuen, Massachusetts.

4.      The plaintiff, Pedro Lopez, is a Hispanic resident of the City of Lawrence, Massachusetts, and is a police officer for the City of Lawrence, Massachusetts.

5.      The plaintiff, Kevin Sledge, is an African-American resident of Salem, New Hampshire and is a police officer for the City of Lawrence, Massachusetts.

6.      The plaintiff, Charles Dejesus, is a Hispanic resident of Methuen, Massachusetts and is a police officer for the City of Methuen, Massachusetts.

7.      The plaintiff, Richard Brooks, is a Hispanic resident of Londonderry, New Hampshire and is a police officer in the City of Lawrence, Massachusetts.

8.      The plaintiff, Massachusetts Hispanic Law Enforcement Association, is a private, non-profit organization of Hispanic police officers and law enforcement officers in the Commonwealth of Massachusetts.

9.      The plaintiff, Robert Alavarez, is a Hispanic resident of the City of Methuen, Massachusetts, and is a police officer in the City of Lowell, Massachusetts.

3

10.     The plaintiff, Marisol Nobrega, is a Hispanic resident of Lowell, Massachusetts, and is currently a police officer in the City of Lowell, Massachusetts.

11.     The plaintiff, Spencer Tatum, is an African American resident of Worcester, Massachusetts.  He currently holds the position of police officer in the City of Worcester, Massachusetts.

12.     The plaintiff, Shumeand Benfold, is an African American resident of the City of Boston, Massachusetts, and is a police officer in the City of Boston, Massachusetts.

13.     The plaintiff, Angela-Williams Mitchell, is an African American resident of the City of Boston, Massachusetts, and is a police officer in the City of Boston, Massachusetts.

14.     The plaintiff, Gwendolyn Brown, is an African American resident of the City of Boston, Massachusetts, and is a police officer in the City of Boston.

15.     The plaintiff, Lynette Praileau, is an African American resident of the City of Boston, Massachusetts, and is a police officer in the City of Boston.

16.     The plaintiff, Tyrone Smith, is an African American resident of Mattapan, Massachusetts, and is a police officer in the City of Boston.

17.     The plaintiff, Eddy Chrispin, is an African American resident of Hyde Park, Massachusetts, and is a police officer in the City of Boston.

18.     The plaintiff, David E. Melvin, is an African American resident of North Easton, Massachusetts, and is a police officer in the City of Boston.

19.     The plaintiff, Steven Morgan, is an African American resident of Dorchester, Massachusetts, and is a police officer in the City of Boston.

4

20.     The plaintiff, William E. Iraolo, is a Hispanic resident of Randolph, Massachusetts, and is a police officer in the City of Boston.

21.     The plaintiff, Jose Lozano, is a Hispanic resident of Medfield, Massachusetts, and is a police officer in the City of Boston.

22.     The plaintiff, Courtney A. Powell, is an African American resident of Hyde Park, Massachusetts, and is a police officer in the City of Boston.

23.     The plaintiff, James L. Brown, is an African American resident of Dorchester, Massachusetts, and is a police officer in the City of Boston.

24.     The plaintiff, George Cardoza, is an African American resident of Brockton, Massachusetts, and is a police officer in the City of Boston.

25.     The plaintiff, Larry Ellison, is an African American resident of Rockland, Massachusetts, and is a police officer in the City of Boston.

26.     The plaintiff, David Singletary, is an African American resident of Roxbury, Massachusetts, and is a police officer in the City of Boston.

27.     The plaintiff, Charisse Brittle-Powell, is an African American resident of Hyde Park, Massachusetts, and is a police officer in the City of Boston.

28.     The plaintiff, Cathenia D. Cooper-Paterson, is an African American resident of Dorchester, Massachusetts, and is a police officer in the City of Boston.

29.     The plaintiff, Molwyn A. Shaw, is an African American resident of Dorchester, Massachusetts, and is a police officer in the City of Boston.

30.     The plaintiff, Lamont Anderson, is an African American resident of Mattapan, Massachusetts, and is a police officer in the City of Boston.

31.     The plaintiff, Gloria Kinkead, is an African American resident of Brockton,

5

Massachusetts, and is a police officer in the City of Boston.

32.     The plaintiff, Kenneth Gaines, is an African American resident of Hyde

Park, Massachusetts, and is a police officer in the City of Boston.

33.     The plaintiff, Murphy Gregory, is an African American resident of

Stoughton, Massachusetts, and is a police officer in the City of Boston.

34.     The plaintiff, Julian Turner, is an African American resident of Mattapan,

Massachusetts, and is a police officer in the City of Boston.

35.     The plaintiff, Neva Grice, is an African American resident of Roxbury,

Massachusetts, and is a police officer in the City of Boston.

36.     The plaintiff, Delores E. Facey, is an African American resident of

Randolph, Massachusetts, and is a police officer in the City of Boston.

37.     The plaintiff, Lisa Venus, is an African American resident of Hyde Park

Massachusetts, and is a police officer in the City of Boston.

38.     The plaintiff, Rodney O. Best, is an African American resident of Situate,

Massachusetts, and is a police officer in the City of Boston.

39.     The plaintiff, Karen VanDyke, is an African American resident of

Dorchester, Massachusetts, and is a police officer in the City of Boston.

40.     The plaintiff, Robert C. Young, is an African American resident of

Dorchester, Massachusetts, and is a police officer in the City of Boston.

41.     The plaintiff, Royline Lamb, is an African American resident of Brockton

Massachusetts, and is a police officer for the Massachusetts Bay Transit Authority.

42.     The plaintiff, Lynn Davis, is an African American resident of Mattapan,

Massachusetts, and is a police officer for the Massachusetts Bay Transit Authority.

43.     The plaintiff, James A. Jackson, is an African American resident Springfield, and is a police officer for the City of Springfield, Massachusetts.

44.     The plaintiff, Juan Rosario, is a Hispanic resident of Springfield, and is a police officer for the City of Springfield, Massachusetts.

45.     The plaintiff, Louis Rosario Jr., is a Hispanic resident Springfield, and is a police officer for the City of Springfield, Massachusetts.

46.     The plaintiff, Obed Almeyda, is a Hispanic resident of Springfield, and is a police officer for the City of Springfield, Massachusetts.

47.     The plaintiff, Devon Williams, is an African American resident Springfield, and is a police officer for the City of Springfield, Massachusetts.

48.     The plaintiff, Julio M. Toledo is a Hispanic resident of Springfield, and is a police officer for the City of Springfield, Massachusetts.

49.     The defendant, Commonwealth of Massachusetts, is a state of the United States of America, and through its Human Resources Division, is responsible for administering police sergeant promotional examinations in civil service communities throughout the Commonwealth of Massachusetts pursuant to M.G.L. ch.31.

50.     The defendant, Paul Dietl, is the Personnel Administrator for the Human Resources Division of the Commonwealth of Massachusetts, and in that capacity has overall responsibility for the conduct of that agency's affairs.

49.     The defendant, John Michael Sullivan, is the Mayor of the City of Lawrence, Massachusetts and is responsible for the promotional appointments of police officers in the City of Lawrence, Massachusetts.

7

50.    The defendant, City of Lawrence, Massachusetts, is a municipality of the Commonwealth of Massachusetts and it operates a police department.

51.    The defendant, William Manzi, III, is the Mayor of the City of Methuen, Massachusetts and is responsible for promotional appointments in the Methuen Police Department.

52.    The defendant, City of Methuen, Massachusetts, is a duly incorporated municipality of the Commonwealth of Massachusetts and it operates a police department.

53.    The defendant, Appointing Authority for the City of Lowell, Massachusetts is responsible for the promotional appointments of police officers in the City of Lowell, Massachusetts.

54.    The defendant, City of Lowell, Massachusetts, is a duly incorporated municipality of the Commonwealth of Massachusetts, and it operates a police department.

55.    The defendant, Michael O'Brien, is the City Manager of the City of Worcester, Massachusetts, and is responsible for promotional appointments in the City of Worcester, Massachusetts.

56.    The defendant, City of Worcester, Massachusetts, is a municipality of the Commonwealth of Massachusetts and it operates a police department.

57.    The defendant, City of Boston, Massachusetts, is a duly incorporated municipality of the Commonwealth of Massachusetts, and it operates a police department.

58. The defendant, Massachusetts Bay Transportation Authority ("MBTA"), is a body politic and cooperate and political subdivision of the Commonwealth pursuant to G. L. c. 161A, section 2.

59. Defendant Daniel Grabauskas is and has been at all material times the General Manager of the MBTA.

60. Defendant MBTA Board of Trustees is responsible for the management of the MBTA pursuant to G.L. c. 161A § 7.

70. The defendants, City of Springfield, is a duly incorporated municipality of the Commonwealth of Massachusetts, and it operates a police department.

71. The defendant, Domenic Sarno Jr., is the Mayor of the City of Springfield, Massachusetts and is responsible for the promotional appointments of police officers in the City of Springfield, Massachusetts.

## IV. CLASS PLAINTIFFS.

72. The named plaintiffs bring this action individually and on behalf of a class of individuals similarly situated. The class of individuals similarly situated are as follows:

> All Black and Hispanic police officers within the Commonwealth of Massachusetts who are employed in cities and towns covered by the state civil service law, M.G.L. ch. 31, and who have taken the 2005, 2006 or 2007 police sergeant promotional examination administered by defendant Commonwealth of Massachusetts, Human Resources Division but have not been reached for promotion.

73. The claims of the class plaintiffs are identical or nearly identical to the claims of the named plaintiffs in that each challenge the validity of the police sergeant examination administered by HRD under a disparate impact theory under both state and federal discrimination law.

9

74.     The class meets all of the numerosity requirements of Rule 23 of the Federal Rules of Civil Procedure, and it would be impractical to name each individual plaintiff. In addition, the claims of the named plaintiffs are representative of the claims of the class plaintiffs.

75.     There are common questions of law and fact which predominate over any specific individual factual claims in this case, and plaintiffs' counsel are eminently capable of representing the claims of the named and class members. The class is primarily certifiable under Rule 23(b)(2) of the Federal Rules of Civil Procedure in that they seek declaratory and injunctive relief to be generally applicable to all plaintiffs. While they also seek damages in the form of back pay and other damages allowable by law, the damage claims are ancillary to the injunctive and declaratory relief sought by the plaintiffs.

## V.    STATEMENT OF FACTS.

76.     The named plaintiffs are all police officers for the cities of Lawrence, Methuen, Lowell, Worcester and Boston Massachusetts. Each plaintiff is each either Hispanic or African-American.

77.     The class plaintiffs are all employed as police officers in cities and towns within the Commonwealth of Massachusetts and are subject to the Massachusetts civil service law, M.G.L. ch. 31, and have taken the 2005, 2006, or 2007 HRD-administered police sergeant's examination for the position of police sergeant but have not been promoted.

78.     The cities of Lawrence, Methuen, Lowell, Worcester and Boston Massachusetts, as well as many other cities and towns throughout the Commonwealth of Massachusetts, have elected to utilize the Commonwealth of Massachusetts, Human Resources Division ("HRD") to create, design and administer the municipalities' promotional examination for the position of police sergeant.

79.     On information and belief, the cities of Lawrence, Methuen, Lowell, Worcester and Boston as well as numerous other cities and towns within the Commonwealth of Massachusetts, have been utilizing HRD's police sergeant examination to make sergeant's promotions for many years.  Pursuant to the Massachusetts civil service law, M.G.L. ch. 31, these cities and towns have utilized the HRD examination, which consists of 100 points and provides for a failing grade of below 70.  If a candidate passes such examination, he or she is then ranked by their score on the examination and selections for promotional positions are made by the respective city and town from the top candidates on such list.

80.     The HRD police sergeant examination consists of approximately 100 multiple choice questions which are taken directly from law enforcement and related textbooks.

81.     These examinations have, over the last 20 years, been shown to have a significant adverse impact upon minority (Black and Hispanic) test takers while not having been shown to be valid predictors of job performance for a police sergeant.  All of the defendants have been well aware of this fact, yet have taken no action to design a less discriminatory and more job-related examination procedure.

82.     Although any municipality covered by the civil service law, M.G.L. ch.31, has the right under M.G.L. ch. 31, §11 to conduct its own alternative police sergeant promotional examination which could be professionally validated and have significantly less discriminatory impact in virtually all civil service municipalities which are covered by this lawsuit, the HRD examination was used without modification.

83.     In addition, despite HRD's knowledge that the police sergeant's examination has a significant discriminatory impact and is not job-related, HRD has done nothing to implement a less discriminatory examination procedure.

84.     The police sergeant's examination administered by HRD was given in some municipalities in 2005, others in 2006, and others in 2007.  Promotional lists were established as a result of these examinations, and promotions have been made within the appropriate statute of limitations, and continue to be made, off of these lists.  The exam is scheduled to be given again in 2008.

85.     All of the individual and class plaintiffs have taken the police sergeant's promotional examination on at least one occasion, in either 2005, 2006 or 2007.  Many have taken the exam in years prior to 2005.

86.     Although a majority of the named and a majority of the class plaintiffs passed the sergeant's examination, they have not received scores high enough that they will likely be reached for promotion.  In addition, one or more of the named and class plaintiffs did not receive a passing score on the police sergeant's examination.

87.     As a result of utilizing the HRD multiple choice sergeant's promotional examination, minority police officers who have taken the examination, both in the municipalities named in this lawsuit and elsewhere, have been ranked significantly

12

lower than their non-minority counterparts, despite their being otherwise equally as qualified for a sergeant's promotional position.

88.     As a result of the use of the HRD civil service police sergeant's promotional examination over the last 20 years or more, few, if any, minorities have been promoted to the position of sergeant in both the named defendant municipalities and elsewhere in civil service municipalities throughout the Commonwealth of Massachusetts.  As a result, there is a significant disparity between the number of minority police sergeants in the Commonwealth of Massachusetts and their corresponding numbers in entry-level police officer ranks, notwithstanding that there are significant number of qualified minority police officers who are otherwise qualified for such promotion, were it not for the resulting scores on the police sergeant's promotional examination administered by HRD.

## COUNT I

The conduct of the defendants as set forth above constitutes unlawful disparate impact discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e).

## COUNT II

The actions of the defendants as set forth above constitutes unlawful disparate impact discrimination under M.G.L. ch.151B, §4.

WHEREFORE, plaintiffs request this Honorable Court to issue appropriate injunctive and declaratory relief remedying Defendants' past acts of discrimination, to

award compensatory relief, including back pay and other damages, to grant attorney's

fees and costs, and to grant such other and further relief as to this Court is deemed just

and proper.

Respectfully submitted,

PEDRO LOPEZ, et al.

By their attorneys,

Dated:  September 24, 2008

s/Harold L. Lichten
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO #640716
Leah M. Barrault, BBO # 661626
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, NOAH BRADLEY, )
KEITH RIDLEY, and JARED THOMAS, )
)
Plaintiffs, )           CIVIL ACTION NO.
)                       05-10213-PBS
v. )
)
CITY OF LYNN, et al., )
)
Defendants. )
)
BOSTON SOCIETY OF THE VULCANS )
and NEW ENGLAND AREA CONFERENCE )
OF THE NAACP, )
)
Intervenors. )

[PROPOSED] AMENDED
REMEDIAL ORDER
February 8, 2007
~~December 5, 2006~~

Saris, U.S.D.J.

On August 8, 2006, this Court issued a Memorandum and Order
regarding liability, concluding that the written civil service
cognitive ability examination used in 2002 and 2004 to qualify
and rank applicants has had a disparate and adverse impact on
Black and Hispanic candidates ("minority candidates") for entry-
level firefighter positions in violation of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e-2(a), (k) (2006), and the federal
consent decree in Boston Chapter, NAACP, Inc. v. Beecher, 371 F.
Supp. 507 (D. Mass. 1974) (the "Beecher decree"). Based on these
findings, I order as follows:

**A.  Hiring**

The Commonwealth, in consultation with plaintiffs' and intervenors' counsel, shall attempt to identify minority individuals who would have been reached for consideration for hiring as firefighters based on the 2002 and 2004 examinations if not for the adverse impact of those examinations by taking the following actions:

  1.  Shortfall Methodology.  Utilizing the "shortfall" methodology[1] described by Dr. Jacobs, HRD shall identify the number of minority candidates in each municipality, other than municipalities still subject to the Beecher consent decree, who would likely have been certified as eligible for hiring based on the results of the 2002 and 2004 examinations, had those examinations not had an adverse impact on minorities.

In any municipality where all veterans have already been certified as eligible, the veteran shortfall shall be subtracted from the municipality's shortfall number.  In any municipality where all veterans have not already been

_____

[1]  The Jacobs formula compares the actual hires of minorities and non-minorities against the number of test takers in each group.  In applying the shortfall analysis, the number of non-minority appointments is divided by the number of non-minority exam takers.  The resulting quotient is then multiplied by the number of minority exam takers, to arrive at the predicted minority hiring number.  The minority hiring number is multiplied by .8 (the four-fifths rule) to determine the actual shortfall for each community.

2

certified, veterans and nonveterans shall be treated separately in calculating the municipality's shortfall.

The parties shall then identify municipalities with shortfalls of 0.5 or higher. A candidate who took both the 2002 and 2004 examinations shall be counted in the shortfall analysis for both years. A fraction of 0.5 or more shall be rounded to the nearest whole number, and less than 0.5 shall be rounded down.

2. For each such municipality, HRD shall then identify and prepare a list of the names of eligible minority candidates. If necessary, HRD shall revive the eligibility of those candidates. In any municipality having shortfall numbers for both 2002 and 2004, the candidates' names shall be merged into a single list in rank order according to score. HRD shall instruct each municipality that it need only utilize such shortfall list until the municipality has hired the number of minorities identified in the above-described shortfall analysis, or all eligible candidates have been disqualified. When such a municipality next requests an eligibility list for firefighter vacancies (other than requests for special certifications under HRD's Personnel Administration Rules), HRD shall place the shortfall list at the top of the 2006 certified eligibility list.

3

3.   Once a municipality has appointed minority candidates equaling its shortfall, minority candidates certified pursuant to this Order shall be removed from the municipality's eligibility list, unless otherwise eligible based on the 2006 exam.

4.   In the event that a municipality exhausts the minority list described above, without meeting its shortfall hiring, it shall not be obligated to fill such shortfalls with minority hiring, provided however that HRD shall have the right to review any rejection or disqualification of such minority candidates on such shortfall list, and HRD shall not approve such disqualification unless the municipality articulates a sufficiently appropriate reason in writing for not hiring such candidate. The HRD shall state in writing any reasons for approving or disapproving a minority candidate. Plaintiffs and intervenors shall have the right to review all rejections and disqualifications, together with any HRD decision. In addition to any remedy provided under state law, plaintiffs and intervenors may present any disputes regarding HRD's good faith compliance with this procedure to the Court for resolution. The Court will not review HRD's decision regarding qualifications.

5.   The formula described above shall not apply to any special certification list requested by a municipality.

B.  **Back Pay and other Relief**

1.  The parties shall cooperate to notify individuals who may have a claim for back pay and other equitable relief under this Order within 30 days of being hired.

2.  Each candidate hired as a result of this Order shall present a demand for back pay and any other equitable relief to HRD. If the parties cannot settle the dispute, the magistrate judge shall make a determination as to the entitlement to back pay (including average overtime for a firefighter of the plaintiff's seniority in the applicable years) for any candidate hired as a result of this Order, or hired later than would otherwise have occurred had the 2002 and 2004 test not been discriminatory, and such calculation shall be based on the difference between what the candidate would have earned as a firefighter had he/she been selected in a municipality's previous hiring rounds, and what he/she has in fact earned during the same time period. Further, the magistrate judge shall determine the amount of years of service to be credited to each such candidate for purposes of the civil service law and the amount of employee contribution which must be made to the plan. Interest shall be calculated based on the federal rate from the date the minority would have been hired.

C.  **Prospective Obligations**

Upon completion of the 2006 entry-level firefighter

5

examination, the Commonwealth will provide to the plaintiffs' and intervenors' attorneys all test scores, weighting criteria, certification lists, appointment data, and all other relevant information necessary to conduct an adverse impact and "job relatedness" analysis of the examination and selection processes.

D.    **Future Minority Recruitment**

HRD is ORDERED to implement a recruitment plan to obtain as diverse a hiring pool as possible in each municipality.  It shall work with plaintiffs and intervenors to ensure outreach to the minority community.  It shall report to the Court the plan to be implemented within 60 days of this Order.

E.    **Plaintiffs' and Intervenors' Fees and Costs**

The Commonwealth will pay to the plaintiffs and intervenors all of their reasonable attorneys' fees and costs associated with this case and ensuring compliance with this Order.  The amount of costs in this paragraph shall include all expert witness fees.

F.    **Separate and Final Judgment**

The Court hereby enters separate and final judgment in this case with respect to liability and remedy regarding the 2002 and 2004 firefighter examinations.

PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

6

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,

                    Plaintiffs,

      v.

CITY OF LAWRENCE, et al.,

                    Defendants.

CIVIL ACTION
NO. 07-11693-JLT

## STATE DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL

The State defendants, Commonwealth of Massachusetts and Paul Dietl, in his capacity as Chief Human Resources Officer of the Human Resources Division, move this Court to stay all proceedings against them until the First Circuit resolves their interlocutory appeal. The grounds for this motion are as follows:

1.      On May 4, 2009, the State defendants filed a notice of appeal (Paper No. 174) from that portion of the Court's April 7, 2009 order that denied their motion to dismiss the complaint against them under the Eleventh Amendment.

2.      "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 59 (1982). Here, the question to be decided by the First Circuit is whether the State defendants are entitled to immunity from suit under the Eleventh Amendment. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (authorizing interlocutory appeal by States and state entities from denial of Eleventh Amendment immunity). Thus, whether plaintiffs' claims should proceed to trial is precisely the "aspect[] of the case"

over which this Court now lacks jurisdiction, as that is the issue "involved in the [pending] appeal." Griggs, 459 U.S. at 59.

3.    The courts of appeals have uniformly endorsed this approach, agreeing that where, as here, the appeal is from a denial of an immunity defense, the district court is divested "of jurisdiction to proceed with any part of the action against an appealing defendant." Stewart v. Donges, 915 F.2d 572, 576 (10th Cir. 1990); accord, e.g., Blinco v. Green Tree Servicing, LLC, 366 F.3d 1249, 1252 (11th Cir. 2004); Williams v. Brooks, 996 F.2d 728, 729-30 (5th Cir. 1993); Princz v. Federal Republic of Germany, 998 F.2d 1, 1 (D.C. Cir. 1993); Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992); Apostol v. Gallion, 870 F.2d 1335, 1338 (7th Cir. 1989). The rationale of these decisions is that proceeding to trial would destroy the rights created by the asserted immunity. In other words, "[i]t makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." Apostol, 870 F.2d at 1338.

4.    While not speaking expressly in jurisdictional terms, the First Circuit invoked the same rationale in Hegarty v. Somerset County, 25 F.3d 17, 18 (1st Cir. 1994). In that case five police officers took an interlocutory appeal from a denial of qualified immunity and asked the district court to stay discovery while the appeals were pending. Id. at 17-18. The district court denied the request on grounds of judicial economy, but the First Circuit reversed, explaining that "[a] qualified immunity defense is an immunity from suit and the rationale for allowing an immediate appeal from the denial of qualified immunity is that the immunity from suit is effectively lost if a case is erroneously permitted to go to trial." Id. at 18. Thus, "because immunity from suit includes protection from the burdens of discovery," the district court could not compel the officers to comply with discovery "[u]ntil [the] threshold immunity question [was] resolved." Id.

2

5.      Likewise, here, the Court cannot proceed with any part of this action as to the State defendants until the immunity question is resolved on appeal.  Were the First Circuit to find the immunity defense to be valid, the State defendants would be entitled not to stand trial or to face any other burdens of litigation.  <u>Puerto Rico Aqueduct,</u> 506 U.S. at 144-47.  Accordingly, until the appeal is resolved, this Court has no jurisdiction to proceed against the State defendants and must therefore grant this motion to stay proceedings pending the appeal.

6.      In addition to staying proceedings against the State defendants, this Court should likewise stay proceedings against all other defendants until the appeal is resolved.  It would be potentially prejudicial and illogical for a trial to proceed solely against the non-State defendants prior to the appellate court's ruling.  Such a trial could prove highly wasteful and inefficient for all concerned, including this Court, should the First Circuit ultimately determine that the State defendants must stand trial.  <u>See</u> <u>K.M. v. Alabama Dep't of Youth Servs.,</u> 209 F.R.D. 493, 495 (M.D. Ala. 2002), <u>aff'd by unpublished decision</u> 73 Fed. Appx. 386 (11th Cir. 2003) (stay of trial entered as to defendants not taking interlocutory appeal; "the court refuses to order these claims to proceed to trial because of the danger of wasting judicial resources through piecemeal litigation, which far outweighs any advantage for any of the parties").

7.      For these reasons the State defendants respectfully request that this motion to stay proceedings pending appeal be granted.  A proposed form of order is attached as Exhibit A.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS and
PAUL DIETL, in his capacity as Chief Human
Resources Officer of the Human Resources Division,

By their attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

 /s/ Sookyoung Shin
Sookyoung Shin, BBO # 643713
Assistant Attorney General
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 963-2052

Dated: May 8, 2009

## CERTIFICATION UNDER L.R. 7.1(A)(2)

    I hereby certify that counsel for the State defendants has conferred with counsel for the plaintiffs and attempted in good faith to resolve or narrow the issues presented herein.

 /s/ Sookyoung Shin
Sookyoung Shin, BBO # 643713
Assistant Attorney General

## CERTIFICATE OF SERVICE

    I hereby certify that the above document will be served on May 8, 2009, by electronic notice for registered counsel and a copy will be served by first-class mail, postage pre-paid, for non-registered counsel.

 /s/ Sookyoung Shin
Sookyoung Shin, BBO # 643713
Assistant Attorney General

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, ET AL.,                            *
                                                *
               Plaintiffs,                      *
                                                *
       v.                                       *       Civil Action No. 07-11693-JLT
                                                *
CITY OF LAWRENCE, ET AL.,                       *
                                                *
               Defendants.                      *

ORDER

June 9, 2008

TAURO, J.

 After a Motion Hearing on April 28, 2008, and review of the Parties' post-Hearing

filings, this court hereby orders the following:

1.  This action shall be bifurcated into: (1) a declaratory relief stage regarding liability; and,

  if necessary, (2) a remedial stage.

2.  Plaintiffs' Motion for Class Certification [#31] is DENIED as to the liability stage and

  DENIED without prejudice as to the potential remedial stage.

3.  A Case Management Conference shall be held on July 8, 2008, at 10:30 A.M., at which

  time a Trial on liability shall be scheduled.

 IT IS SO ORDERED.

          /s/ Joseph L. Tauro
        United States District Judge

## PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.

Attorneys at Law
18 Tremont Street, Suite 500
Boston, MA 02108
www.prle.com
----------
Telephone (617) 367-7200
Fax (617) 367-4820

Warren H. Pyle
David B. Rome
Harold L. Lichten*
Betsy Ehrenberg
Shannon Liss-Riordan**
Terence E. Coles
Katherine D. Shea
Alfred Gordon
Tod A. Cochran
Leah M. Barrault
Hillary Schwab**
Laurie R. Houle
Ian O. Russell
Brant A. Casavant
Alex Sugerman-Brozan

*Also admitted in Maine
**Also admitted in New York

May 15, 2009

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT
2009 MAY 15 P 4: 31

**VIA HAND DELIVERY**
Clerk of the Court
United States Court of Appeals
    For the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:    *Lopez, et al. v. City of Lawrence, et al.*
       Civil Action Appeal No. 09-1664

Dear Sir or Madam:

       Enclosed in connection with the above-referenced matter please find an original and three copies of Plaintiffs-Appellees' Motion to Dismiss Appeal. Thank you for your attention to this matter.

                                   Sincerely,

                                   Joseph H. Hunt
                                   Assistant to Harold L. Lichten, Esq.

Enclosure



**PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.**

Cc:     *(VIA FIRST CLASS MAIL)*

| | |
|---|---|
| Mark D. Selwyn | Brian W. Leahey |
| Jeffrey S. Gleason | R. Eric Slagle |
| Vinita Ferrera | Laurie W. Engdahl |
| Rahsaan D. Hall | Daniel C. Brown |
| James M. Bowers | Robert P. Morris |
| Peter J. McQuillan | Mary Jo Harris |
| Iraida J. Alvarez | Edward M. Pikula |
| Robert L. Quinan, Jr. | John T. Liebel |
| Sookyoung Shin | Maurice M. Cahillane, Jr. |
| Kevin S. McDermott | Williams G. Cullinan |