**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

| | |
|---|---|
| Pedro Lopez, et al., | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 09-1664 |
| City of Lawrence, et al., | ) |
| | ) |
| Defendants-Appellants. | ) |
| | ) |

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT
2009 JUN -5 P 3:46

**PLAINTIFFS' REPLY TO DEFENDANTS – APPELLANTS' OPPOSITION TO**
**MOTION TO DISMISS APPEAL:**

**I.     INTRODUCTION:**

The Commonwealth has filed a memorandum opposing the
Plaintiff's Motion to Dismiss this appeal. The plaintiffs'
motion is based on its position that the Commonwealth has no
sovereign immunity defense to the trial of this action, since it
is brought to obtain injunctive relief as well as back pay.
Recognizing the weakness of its position, the Commonwealth makes
two arguments in a futile attempt to avoid dismissal.

Primarily, it argues that it is not an employer under Title
VII and therefore the District Court erred in denying its Motion
for Summary Judgment on the grounds that it is not a Title VII

1

employer in this case. However, the clear and obvious problem
with that assertion is that it has nothing to do with sovereign
immunity, but only as to the proper interpretation of Title VII
of the Civil Rights Act of 1964. The Commonwealth cannot
bootstrap a sovereign immunity argument by simply arguing a
straightforward statutory question under Title VII. Moreover,
even if allowed to get to this question, the Commonwealth
overlooks the fact that this question has already been decided
in prior litigation, Bradley v. City of Lynn (see Exhibit A
attached hereto), and there, under the identical facts, the
Commonwealth was held to be a Title VII employer and it did not
appeal that decision.

Second, the Commonwealth argues that the injunctive relief
the plaintiffs seek is not the type that constitutes an
exception to sovereign immunity. However this argument is
simply wrong as a matter of law. For all these reasons, the
appeal should be dismissed.

**II. WHETHER THE COMMONWEALTH IS AN EMPLOYER UNDER TITLE VII
UNDER THE FACTS OF THIS CASE IS AN ISSUE OF THE PROPER
INTERPRETATION OF TITLE VII, AND HAS NOTHING TO DO WITH
SOVEREIGN IMMUNITY:**

Before the District Court, the Commonwealth vigorously
argued in its Motion for Summary Judgment that although it
exercised substantial control over the hiring and promotions of
the police and fire fighters in the Commonwealth and that

2

although it created, devised, scored, and ranked the discriminatory promotional exams at issue in this case and in prior cases involving similar parties, it was not liable under Title VII because it was not an employer under that statute. (See State Defendants' Memorandum of Law in Support of Motion to Dismiss or in the Alternative for Summary Judgment attached as Exhibit A to its Opposition to Motion to Dismiss). The plaintiffs argued vigorously, relying in substantial part on Judge Saris' well-reasoned decision in <u>Bradley v. City of Lynn</u> Civil Action No.: 05-10213-PBS (Memorandum and Order attached hereto as Exhibit A), that the Commonwealth, because of its substantial and pervasive control over the hiring, promotion, and other aspects of police and fire fighters of the Commonwealth is a statutory employer under Title VII. The District Court denied the Commonwealth's Motion thereby finding the Commonwealth was subject to Title VII liability.

In its Opposition to the current Motion to Dismiss, the Commonwealth essentially repeats the same or similar arguments which it made below that it is not an employer under Title VII. See Opposition at pages 11-12. Moreover they make it clear that that is the issue that they intend to bring before this Court on this interlocutory appeal.

The Commonwealth's argument has a crucial flaw. If the Commonwealth is not an employer under Title VII in this case, then it is entitled to judgment on the merits because the only claim in this case is that the Commonwealth has violated Title VII of the Civil Rights Act of 1964.[1] Thus the issue is not one of "sovereign immunity" but rather is one of the proper statutory interpretation of Title VII. There is no right of interlocutory appeal simply because the Commonwealth is unhappy, as it was presumably unhappy during Bradley v. City of Lynn supra, when the District Court found that it was an employer for Title VII purposes and therefore must proceed to trial. Accordingly, the Commonwealth is being disingenuous at best when it claims that it is appealing the denial of sovereign immunity to the Commonwealth; rather it is simply appealing the question of whether the Commonwealth is covered by Title VII under the facts of this case, and this question involves a statutory interpretation of Title VII, not a question of sovereign immunity. It is clear from a careful reading of the Commonwealth's opposition that it is using the sovereign immunity argument to obtain an interlocutory appeal, but in that appeal it intends to argue that the District Court erred in failing to dismiss the case based on the Commonwealth's

---

[1] Although the complaint also contained a state law claim under MGL c. 151B §4, the plaintiffs consented to the dismissal of that count and they refiled it in state court where there is no question of the Commonwealth's being subject to suit for a c.151B violation.

4

assertion that it is not an employer under Title VII regarding this case.

Contrary to its assertion, the Commonwealth cannot claim with that the District Court made any finding that this interlocutory appeal was "not frivolous". The District Court made no such finding. To be clear, despite the fact that the Commonwealth has lost this issue before, the plaintiffs are not claiming that the Commonwealth's Title VII "employer" argument is frivolous, but only that its attempt to make this a question of "sovereign immunity" and thereby obtain an interlocutory appeal, is frivolous. Accordingly, the plaintiffs' Motion should be granted.

## III. THE COMMONWEALTH'S ATTEMPT TO ASSERT THAT EX PARTE YOUNG DOES NOT APPLY IS CLEARLY WRONG:

While the Commonwealth recognizes that an action for injunctive relief against state officials is not subject to 11th Amendment sovereign immunity defenses, and hence cannot be the basis for an interlocutory appeal, the Commonwealth disingenuously attempts to argue that that doctrine only applies to "prospective" relief not to "retroactive" injunctive relief and that in this case the plaintiffs seek the latter, and not the former. This argument is baseless.

5

First, the Plaintiffs would point out that in their
Complaint they specifically describe that they are seeking
injunctive relief as a significant part of their case which
would include both a declaration that the 2005 -2008 promotional
exams were discriminatory, and then will include requests for
"prospective" relief, placing officers whose Title VII rights
were violated back at the top of promotional lists so their
names can be reached for promotion (See Remedial Order in
Bradley v. City of Lynn attached to Plaintiff's Motion to
Dismiss as Exhibit B).  Moreover, the Commonwealth conveniently
ignores the fact that the promotional lists which were created
based on the results of the challenged promotional examinations
remain in effect and are currently being used to make
promotional decisions.[2]

The law is crystal clear both in this Circuit and others
that where an individual seeks reinstatement against state

---

[2] As can be seen from Plaintiffs' Opposition to Defendants' Motion To Dismiss
or for Summary Judgment pages 3-4 (attached to Defendants' Opposition to
Dismiss Appeal), when a city notifies the state defendants that it would like
the Commonwealth to administer a police sergeants' promotional exam for
officers in a particular city or town, the list once established will remain
in effect for as long as three years.  Indeed, the Commonwealth administered
exam for Boston was given in 2005, not certified until early 2006 and then
continued to be used as late as January of 2009 well into this case.
Moreover, the 2006 and 2007 exams, used by other towns who are defendants in
this case, are still being used.  Indeed the 2007 exam, which is also the
subject of this case, and which was not certified until 2008, continues to be
utilized on a regular basis to make promotions.  Thus, in every real sense,
the plaintiffs seek "the prospective relief" of stopping the ongoing effects
of the discriminatory exams as well as the reinstatement of names to the top
of the list who were discriminatorily denied promotion.

actors such reinstatement is clearly prospective, injunctive
relief which may be pursued and granted despite 11th Amendment
immunity. Stringfield v. Graham 2007 WL 62630 (6th Circuit 2007)
(The 11th Amendment did not bar action against state university
official seeking the prospective injunctive relief of
reinstating the plaintiff to her faculty position). Kashani v.
Purdue University 813 F.2[nd] 843 (7th Circuit 1987) ("although the
11[th] Amendment bars all claims against Purdue…it does not thwart
the claims against the officials in their official capacities
for the injunctive relief of reinstatement"). Id at 848.
Indeed, the primary case cited by the Commonwealth in its brief
Whalen v. Massachusetts Trial Court 397 F.3[rd] 19 (1st Circuit
2005) actually stands for the very opposite proposition for
which the Commonwealth cites it.  In that case the First Circuit
made clear that the 11th Amendment does not bar an order
reinstating an employee, although in that case the employee had
already been reinstated by time of judgment.  ("although
reinstatement too involves a restoration of rights, it differs
because termination…is the very unlawful act at issue:
reinstatement pending a hearing thus serves to bring an end to a
violation of federal law") Id at 30.

     In the present case, the Court had scheduled a trial on
whether or not, as the plaintiff's claim, the Commonwealth has
utilized a blatantly discriminatory police sergeant's

promotional exam statewide for the last several years which
resulted in a staggering disparate impact upon minority
employees, and while the exam, as plaintiffs claim, cannot be
shown to be job related. See Bradley v. City of Lynn *supra*. The
injunctive remedy the plaintiffs would seek re-establishing
minority police officers names on civil service eligibility
lists so that they could be reached for promotion is
specifically the type of prospective relief which is necessary
to cure the unlawful action. As stated above, for many of the
towns and cities involved in this litigation, those
discriminatory promotional eligibility lists, are presently
being used for promotions, even though they are the result of
the discriminatory practices described above. In those cities
and towns, the plaintiffs are seeking a stoppage of the use of
those lists. Again, this is a clear element of prospective
injunctive relief. For all these reasons, the Commonwealth
cannot in good faith claim that the plaintiffs are not seeking
injunctive relief against a state official. Nor can they claim
that the injunctive relief is barred by 11th Amendment immunity
since clearly it is not. Accordingly, the Motion to Dismiss
should be granted, because without question the plaintiffs do
not have a legitimate 11th Amendment immunity interlocutory
appeal. The plaintiffs are entitled to a prompt trial as to
whether or not there has been a violation of Title VII and the

law is established that under the race discrimination provisions of Title VII of the Civil Rights Act of 1964, neither the states nor their officials have such immunity from such race discrimination claims.

Respectfully submitted,

PEDRO LOPEZ, et al.,

By their attorneys,

Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO #640716
Leah M. Barrault, BBO # 661626
Lichten & Liss-Riordan
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated: June 5, 2009

9

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 5, 2009, I caused a copy of this document to be served by first class mail on the following counsel of record:

Mark D. Selwyn
Jeffrey S. Gleason
Vinita Ferrera
Wilmer Hale LLP
60 State Street
Boston, MA 02109

Rahsaan D. Hall
Lawyers' Committee for
  Civil Rights Under Law
294 Washington Street, Suite 443
Boston, MA 02108

James M. Bowers
261 Common Street
Lawrence, MA 01840

Peter J. McQuillan
City of Methuen
Office of City Solicitor
The Searles Building
41 Pleasant Street
Methuen, MA 01844

Iraida J. Alvarez
Attorney General's Office
One Ashburton Place
Boston, MA 02108

Robert L. Quinan, Jr.
Attorney General's Office
One Ashburton Place
Room 2019
Boston, MA 02108

Sookyoung Shin
Office of the Attorney General
Trial Division
One Ashburton Place
18th Floor
Boston, MA 02108

Brian W. Leahey
R. Eric Slagle
City of Lowell Law Department
City Hall
375 Merrimack Street
Lowell, MA 01852

Laurie W. Engdahl
Daniel C. Brown
Collins, Loughran & Peloquin
320 Norwood Park South
Norwood, MA 02062

Robert P. Morris
Mary Jo Harris
Morgan Brown & Joy LLP
200 State Street
11th Floor
Boston, MA 02109

Edward M. Pikula
1350 Main Street, 15th Floor
Springfield, MA 01103

John T. Liebel
City of Springfield
36 Court Street, Suite 210
Springfield, MA 01103

Maurice M Cahillane, Jr.
Egan, Flanagan & Cohen, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035                    Williams G. Cullinan
                                              Law Office of William G.
Kevin S. McDermott                            Cullinan
MBTA Law Department                           1350 Main Street
10 Park Plaza, 7th Floor                      Springfield, MA 01103
Boston, MA 02116


                         Harold L. Lichten, Esq.

100% Recycled   30% PCW

A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
JACOB BRADLEY, NOAH BRADLEY,        )
    KEITH RIDLEY, and JARED         )
    THOMAS,                         )
                                    )
            Plaintiffs,             )
                                    )    CIVIL ACTION NO. 05-10213-PBS
        v.                          )
                                    )
CITY OF LYNN, et al.,               )
                                    )
            Defendants.             )
                                    )
```

MEMORANDUM AND ORDER

December 6, 2005

Saris, U.S.D.J.

In this proposed class action, plaintiffs, who are African-Americans, have sued the City of Lynn, the Human Resources Division of the Commonwealth of Massachusetts (the "HRD"), and various public officials, alleging that the civil service examinations for entry-level firefighters and police officers result in a disparate impact on minority candidates. Plaintiffs assert that the HRD and the personnel administrator for the HRD ("State defendants") violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and two federal court consent decrees. State defendants move for judgment on the pleadings, or alternatively for summary judgment. After hearing and a review of the briefs, State defendants' motion is **DENIED**.

## I.   BACKGROUND

### A.   Plaintiffs

Plaintiffs Jacob Bradley, Noah Bradley, Keith Ridley, and
Jared Thomas are African-American residents of Lynn,
Massachusetts.  Between 1998 and 2004, all four plaintiffs took
the entry-level firefighter examination administered by the HRD.
Keith Ridley received scores of 97 in 1998, 89 in 2000, and 90 in
2004.  Jacob Bradley received a score of 94 in both 2002 and
2004.  Noah Bradley received scores of 84 in 2002 and under 70 in
2004.  Jared Thomas received a score of 92 in 2004.  In 2003,
Keith Ridley and Noah Bradley took the entry-level police officer
examination administered by the HRD and received scores of 94 and
89, respectively.  To date, the City of Lynn has not hired any of
the plaintiffs as entry-level firefighters or police officers.

### B.   The Statutory and Administrative Framework

The personnel administrator for the HRD (the "HRD
Administrator") has "overall responsibility for establishing
entrance-level firefighter and police examinations for
Massachusetts' municipalities that are subject to the civil
service law, M.G.L. ch. 31, and establishing lists for entry-
level hiring thereon."  (Pls.' First Am. Compl. ¶ 7.)  The HRD
and the HRD Administrator are creatures of statute.  See Mass.
Gen. Laws ch. 7, § 4A (creating the human resources division in
the executive office for administration and finance and the

personnel administrator as head of the division); id. ch. 31 (delineating the powers of the personal administrator for the human resources division within the executive office for administration and finance).

Massachusetts civil service law generally requires that "[a]ll positions in all cities shall be subject to the civil service law and rules." Mass. Gen. Laws ch. 31, § 51. Pertinently, "[o]riginal and promotional appointments in police and fire forces of cities . . . shall be made only after competitive examination." Id. § 59. The civil service law empowers the HRD Administrator to conduct, to determine the form, method and subject matter, and to develop examinations, id. §§ 5(e), 16; to prepare and post notices of examinations, id. §§ 18-19; and to determine the passing requirements of examinations, id. § 22. Based on the examinations, the HRD Administrator establishes, maintains and revises "eligible lists," which cities must use in hiring or promoting fire and police forces. See id. §§ 5(h), 6, 7, 25, 59. For a city to bypass higher-ranked individuals on an eligible list to hire or promote lower-ranked individuals, appointing authorities must submit a written statement to the HRD Administrator justifying the bypass. Id. § 27. The HRD Administrator has the right to review and withdraw any bypass appointments. MacHenry v. Civil Serv. Comm'n, 40 Mass. App. Ct. 632, 666 N.E.2d 1029 (App. Ct. Mass. 1996).

3

In addition, the HRD Administrator is empowered to "establish such mandatory standards . . . as [the HRD Administrator] determines to be necessary"; to "approve or disapprove specifications and qualifications submitted by an appointing authority in a city"; "to establish such specifications and qualifications when, in [the HRD Administrator's] opinion, the appointing authority [of a city] has failed to furnish satisfactory specifications and qualifications"; and to "evaluate the qualifications of applicants." Mass. Gen. Laws ch. 31, § 5(c)-(f). Examples of such qualifications include health and physical fitness standards, id. § 61A, height minimums, see id. § 58, and for firefighters, educational requirements, see id. The law further empowers the HRD Administrator to "establish a recruitment program" and prohibit city treasurers from paying salary or compensation to persons not listed on the HRD's roster. Id. §§ 5(k), 71.

While the law empowers State defendants with extensive control of hiring, however, they do not possess complete control over municipal firefighters and police officers. By statute, appointing authorities may, without approval from State defendants, subject new employees to a probationary period to evaluate their conduct and capacity, grant leaves of absence, impose punishment duty, or discharge, remove or suspend employees. Id. §§ 34, 37, 41, 62A. In addition, the Civil

4

Service Commission of the Commonwealth of Massachusetts, which is not a party to this case, reviews all rules promulgated by the HRD and adjudicates disputes between employees and their municipal employers. See id. §§ 2-3, 6C, 24, 35, 41-43.

State defendants submit by affidavit that the "HRD does not hire, consider job applications, interview, train, assign, supervise, promote, discipline, fire, pay, or provide fringe benefits, worker compensation insurance or ERISA benefits for, municipal firefighters." (Pls.' Mem. Mot. J. Pleadings 4; see also id. at 16-17 (noting that the HRD does not withhold taxes from earnings or furnish gear).) Based on the Personnel Administration Rules and the HRD Certification Handbook, State defendants point out that appointing authorities, not the HRD, decide which candidates of those on the eligible list to hire and typically base their hiring decisions on candidate education and experience, administration of a drug test, and results of criminal- and driving-history investigations. (Id. at 5.) Lastly, State defendants submit the HRD Selective Certifications Descriptions and Questionnaires to show that appointing authorities may request different eligible lists based on foreign language needs or based on race, color, national origin, or sex to remedy effects of past discrimination pursuant to an affirmative action program. (Id. at 6-7.)

C. **Federal Court Consent Decrees**

Parties alleging racial discrimination have sued the

Commonwealth of Massachusetts in the past for its role in
administering civil service examinations. In <u>Boston Chapter,
NAACP, Inc. v. Beecher</u>, 371 F. Supp. 507 (D. Mass. 1974), the
Massachusetts Civil Service Commissioners and Director of Civil
Service were defendants in a lawsuit alleging discriminatory
practices in the hiring of Boston firefighters. <u>Id.</u> at 509-11
(alleging causes of action under Title VII, 42 U.S.C. §§ 1981,
1983 and 28 U.S.C. §§ 2201, 2202). Similarly in <u>Castro v.
Beecher</u>, 365 F. Supp. 655 (D. Mass. 1973), the Massachusetts
Civil Service Commissioners were defendants in a lawsuit alleging
discriminatory practices in the hiring of policemen for
Massachusetts cities, towns and state agencies. <u>Id.</u> at 655-56
(alleging causes of action based on the Fourteenth Amendment and
42 U.S.C. § 1983). Both cases resulted in federal court consent
decrees. <u>NAACP</u>, 371 F. Supp. at 520; <u>Castro</u>, 365 F. Supp. at
660.

## II.  DISCUSSION

### A.  <u>Standard</u>

"Motions for judgment on the pleadings are governed by Fed.
R. Civ. P. 12(c) and ordinarily warrant the same treatment" as
motions to dismiss for failure to state an actionable claim under
Fed. R. Civ. P. 12(b)(6). <u>Collier v. City of Chicopee</u>, 158 F.3d
601, 602-03 (1st Cir. 1998) (citations omitted). Under Rule
12(b)(6), the Court takes as true "the well-pleaded facts as they

6

appear in the complaint, extending plaintiff every reasonable inference in his favor." Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990)). A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Converting a Rule 12(c) motion for a judgment on the pleadings to a Rule 56 motion for summary judgment is subject to a court's discretion.

> Where a motion for judgment on the pleadings introduces materials dehors the record for the court's consideration, the ground rules change. In that event, the court has broad discretion either to include or to exclude the proffer. So long as the court does not exclude the tendered materials, the summary judgment standard governs the disposition of the motion.

Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004) (citations omitted).

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "To succeed [in a motion for summary

judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." <u>Rogers v. Fair</u>, 902 F.2d 140, 143 (1st Cir. 1990); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" <u>Barbour</u>, 63 F.3d at 37 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" <u>Rogers</u>, 902 F.2d at 143 (quoting <u>Anderson</u>, 477 U.S. at 249-50). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour</u>, 63 F.3d at 36.

While the exhibits submitted by State defendants are arguably admissible as public records in a Rule 12(b)(6) motion, the Court treats this motion as one of summary judgment under Rule 56. <u>See</u> <u>Boateng v. InterAmerican Univ., Inc.</u>, 210 F.3d 56, 60 (1st Cir. 2000) (citation omitted).

## B. Title VII Claim

State defendants contend that they are not subject to Title

VII liability because plaintiffs have no employment relationship
with State defendants.[1]

Title VII generally prohibits employment practices that
discriminate based on an individual's race, color, religion, sex,
or national origin. See 42 U.S.C. § 2000e-2. For Title VII
liability to attach, plaintiffs must establish at the threshold
that § 2000e-2 governs the conduct of State defendants. See,
e.g., Alberty-Vélez v. Corporación de Puerto Rico Para la
Difusión Pública, 361 F.3d 1, 6 (1st Cir. 2004) (discussing the
"threshold question of employee/independent contractor status").
Title VII applies to "employers," "employment agencies," "labor
unions," and any "agents" of these entities. See 42 U.S.C.
§§ 2000e(b-d), 2000e-2(a-c).

Plaintiffs in this case assert that State defendants
constitute "employers." Title VII defines "employer" as a

---

[1] Plaintiffs argue that the past litigation of NAACP and
Castro precludes State defendants from arguing that Title VII
does not apply. This argument lacks merit. The law of the case
doctrine is inapplicable because the instant litigation is a new
case. See 18B Charles A. Wright, Arthur R. Miller, & Edward H.
Cooper, Federal Practice & Procedure §4478 (2d ed. 2002). In
addition, the doctrine of issue preclusion is inapplicable
because the past litigation of NAACP and Castro did not
explicitly decide the issue of the state's status as an employer
under Title VII. Nor can this Court infer that Title VII applied
to the state as an "employer" in the past litigation because
other civil rights laws were asserted and could have constituted
the basis for liability. See NAACP, 371 F. Supp. at 509-10
(alleging causes of action based on Title VII, 42 U.S.C. §§ 1981,
1983 and 28 U.S.C. §§ 2201, 2202); Castro, 365 F. Supp. at 655
(alleging causes of action based on the Fourteenth Amendment and
42 U.S.C. § 1983).

"person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). For this purpose, the term "person" includes "one or more individuals, governments, [and] governmental agencies." Id. § 2000e(a). "The term 'employee' means an individual employed by an employer." Id. § 2000e(f).

In cases where there is a customary employer-employee relationship, the threshold determination of whether a party is a Title VII "employer" is relatively straightforward. Unfortunately, the statute offers little help when such a customary relationship is lacking. See, e.g., Alberty-Vélez, 361 F.3d at 6 (noting that the "definition [of employee] 'is completely circular and explains nothing'" (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992))). "Given the opacity of the statutory text, courts have been forced to develop their own approaches to determining whether an entity is acting as an employer." Camacho v. Puerto Rico Ports Authority, 369 F.3d 570, 573-74 (1st Cir. 2004). In doing so, courts have used caselaw from the Americans with Disabilities Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act interchangeably. See, e.g., Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 16 (1st Cir. 1994) (using Title VII decisions in an ADA case); Camacho, 369 F.3d at 578 n.5 (using Title VII decisions in an ADEA case).

10

The First Circuit has recognized that Title VII employer
liability may attach to an individual's direct employer or to a
party that functions as an individual's de facto employer.
Camacho, 369 F.3d at 574 (discussing direct and de facto employer
liability). In Camacho, the First Circuit also mentioned with
ambivalence a third approach, under which Title VII liability may
attach "if an entity interferes with an individual's employment
with another employer," describing this theory of interference
liability as "dubious." Id. at 574 n.3. However, it is unclear
how much weight to put on this dicta as the First Circuit had
discussed interference liability earlier as a "possibility"
depending on the circumstances. See Carparts, 37 F.3d at 18.
Other courts of appeals are split regarding this interference
liability approach. See Alexander v. Rush N. Shore Med. Ctr.,
101 F.3d 487, 493 n.2 (7th Cir. 1996) (questioning existence);
Christopher v. Strouder Mem'l Hosp., 936 F.2d 870 (6th Cir. 1991)
(adopting); Bender v. Suburban Hosp., Inc., 159 F.3d 186, 189
(4th Cir. 1988) (rejecting in dicta); Gomez v. Alexian Bros.
Hosp. of San Jose, 698 F.2d 1019, 1021 (9th Cir. 1983)
(adopting); Sibley Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1341
(D.C. Cir. 1973) (adopting in the seminal interference liability
case).

Since the HRD is not a customary employer of entry-level
firefighters and police officers in the City of Lynn, under the
common sense meaning of the word, the pivotal issue is whether

11

the HRD may be characterized as a Title VII employer within its
unique statutory meaning as developed through caselaw.  The First
Circuit has applied common law agency principles to determine
whether a direct employment relationship exists and whether an
entity "so extensively controls an aggrieved party's employment
relationship as to become that party's de facto employer."  See
Camacho, 369 F.3d at 574-77.  Under this test, courts must
consider:

> the hiring party's right to control the manner and means
> by which the product is accomplished.  Among other
> factors relevant to this inquiry are the skills required;
> the source of the instrumentalities and tools; the
> location of the work; the duration of the relationship
> between the parties; whether the hiring party has the
> right to assign additional projects to the hired party;
> the extent of the hired party's discretion over when and
> how long to work; the method of payment; the hired
> party's role in hiring and paying assistants; whether the
> work is part of the regular business of the hiring party;
> whether the hiring party is in business; the provision of
> employee benefits; and the tax treatment of the hired
> party.

Alberty-Vélez, 361 F.3d at 7 (quoting Dykes v. DePuy, Inc., 140
F.3d 31, 37-38 (1st Cir. 1998) (quoting Darden, 503 U.S. at
323-24)).

> The test provides no shorthand formula or magic phrase
> that can be applied to find the answer, . . . all of the
> incidents of the relationship must be assessed and
> weighed with no one factor being decisive.  However, in
> most situations, the extent to which the hiring party
> controls "the manner and means" by which the worker
> completes her tasks will be the most important factor in
> the analysis.

Id. (internal quotations and citations omitted).  "A court must
tailor these factors to the relationship at issue.  Often certain

12

factors will not be relevant to a particular case, and a court
should not consider them as favoring either side." Id., 361 F.3d
at 7 n.7 (citation omitted).

In Camacho, the First Circuit stated that control over just
one factor in the common law test was not necessarily
dispositive, using the metaphor that one swallow does not a
summer make. 369 F.3d at 577. However, the First Circuit also
held that, in certain circumstances, control over one factor may
indeed an employer make. In Carparts, on which plaintiffs in
this case rely heavily, an employee and a customary employer
brought suit against a trade association and its administering
trust ("Carparts defendants") alleging discrimination on the
basis of disability for instituting a lifetime cap on medical
reimbursements for AIDS-related illnesses. 37 F.3d at 14.
Reversing the district court's dismissal, the First Circuit
stated that "[Carparts] defendants would be 'employers' if they
. . . exercised control over an important aspect of the
employee's employment," even if they did not control any other
aspects. See id. at 17. Applying this principle, the First
Circuit held that Carparts defendants were "employers" with
respect to employee health care coverage if they existed "solely
for the purpose of enabling [customary employers] to delegate
their responsibility to provide health insurance." Id. Such
circumstances would indicate that Carparts defendants were
intertwined with the customary employer on the issue of health

13

coverage for purposes of civil rights laws.  Id.

Asserting that Camacho implicitly overruled Carparts, State
defendants claim they are not employers but merely administrators
of a test in the exercise of the police power of the state.  In
Camacho, a harbor pilot brought suit against the Puerto Rico
Ports Authority (the "Authority") alleging age discrimination for
revoking his license on his seventieth birthday.  369 F.3d at
572.  The First Circuit held that the Authority was not a de
facto employer of harbor pilots.  Id. at 572.  Camacho found that
"[a]lthough pilotage is a heavily regulated profession, harbor
pilots nonetheless retain important badges of autonomy" and
"function as independent contractors."  Id. at 576-77.  Moreover,
the First Circuit stated that "the statutory power to license and
regulate harbor pilots does not imbue the Authority with the
level of control necessary to make it their employer for ADEA
purposes."  Id. at 572.

An analysis of Camacho illustrates that it did not pilot a
sea change in the Title VII policy of this Circuit.  Camacho is
best understood as falling within the "mere licensing" caselaw,
which states that "state licensing and regulatory agencies
generally are not regarded as employers vis-à-vis those whom they
license and regulate."  Id. at 578 (emphasis added).  Many
circuits hold that entities that only administer examinations for
occupational licensing or certification, but do not control the

14

employee's work, are not employers under Title VII.  <u>See, e.g.,</u>
<u>Fields v. Hallsville Indep. Sch. Dist.</u>, 906 F.2d 1017, 1019 (5th
Cir. 1990) (finding that defendant was not employer when the only
evidence of control was administration of teacher certification
exam); <u>George v. N.J. Bd. of Veterinary Med. Exam'rs</u>, 794 F.2d
113, 114 (3d Cir. 1986) (agreeing that defendant was not an
employer for merely exercising state police power in licensing
veterinary medical practitioners); <u>Haddock v. Bd. of Dental</u>
<u>Exam'rs of Cal.</u>, 777 F.2d 462, 464 (9th Cir. 1985) (holding where
the only connection between plaintiff and Board was that it gave
an examination which he failed, Board was not an employer under
Title VII); <u>Woodard v. Va. Bd. of Bar Exam'rs</u>, 598 F.2d 1345,
1346 (4th Cir. 1979).

The "mere licensing" caselaw, however, does not establish a
per se rule that state licensing or certification agencies can
never be employers under Title VII.  Indeed, <u>Camacho</u> emphasized,
and State defendants agree, that in applying the common law
agency test that "[n]o one factor is outcome determinative;
rather, all the incidents of a given relationship must be weighed
in order to reach a conclusion as to whether that relationship
fits within the confines of the employer-employee taxonomy."  369
F.3d at 574 (citing <u>Darden</u>, 503 U.S. at 324).  Thus, state
entities that administer examinations can constitute Title VII
employers when those entities not only administer examinations
but also exercise other control over the relationship between the

15

employee and her customary employer. <u>See, e.g.</u>, <u>Ass'n of
Mexican-American Educators v. California</u>, 231 F.3d 572, 581-583
(9th Cir. 2000) (en banc) (holding the state liable as an
employer for administering a teacher certification examination
where the state exerts a high degree of control over the
operation of the local school activities); <u>United States v. City
of Yonkers</u>, 592 F. Supp. 570, 589-91 (S.D.N.Y. 1984) (denying
summary judgment motion of state civil service commission where
record indicated that state retained complete control over police
examinations and exerted significant control even after
eligibility list was promulgated). <u>Cf.</u> <u>Dumas v. Town of Mount
Vernon, Ala.</u>, 612 F.2d 974, 980 (5th Cir. 1980) (holding the
county liable as an employment agency under 2000e(c) for
administering examinations and interviewing candidates).

The difficult question then is whether, under the common law
agency framework informed by <u>Camacho</u> and <u>Carparts</u>, an entity that
exercises extensive control over hiring but little control over
other aspects of the employment relationship is a de facto
employer for purposes of Title VII.

As a state entity created by statute pursuant to state
police power, the HRD is similar to the Authority in <u>Camacho</u> in
that neither entity exercises day-to-day supervisory control over
the employee's tasks. <u>Camacho</u>, 369 F.3d at 576 (concluding that
the Authority did not exercise the level of control over pilots'

16

day-to-day activities to evince "the degree of control and
supervision traditionally considered sufficient to create an
employer-employee relationship").

However, the Authority's licensing agency relationship with
independent contractors in Camacho differs from the HRD's
relationship with municipal firefighters and police officers in
this case.  The Authority in Camacho did not hire harbor pilots;
shipowners could hire any harbor pilot, licensed by the
Authority, as an independent contractor.  Id. at 577.  By
contrast in this case, municipalities are not free to hire anyone
in the pool of eligible candidates.  Instead, Massachusetts civil
service law reduces the role that municipalities have in the
hiring process to deciding yes or no to the candidates that the
HRD provides.  State defendants not only determine the eligible
pool of candidates by conducting examinations and setting minimum
qualifications but also dictate the order that municipalities
evaluate such candidates.  And if a municipality decides to
bypass a candidate, the HRD may review and reverse that decision.
Even when municipalities opt to increase minority hiring, to
obtain foreign language speakers, or to get specially trained
employees (like EMTs), the appointing authorities must justify
why such special characteristics are necessary to the HRD and ask
State defendants for selective certifications from the eligible
lists.

The HRD's critical role in hiring distinguishes this case

from the mere-licensing precedents cited by State defendants. While there is no question that Massachusetts law established the HRD pursuant to a governmental exercise of police power, the HRD does more than merely license and regulate. The HRD acts as a "hiring party" that extensively controls "the manner and means" by which firefighters and police officers are selected. Therefore, Camacho does not control the outcome of this case.

The Court must still decide, however, whether the HRD exercises enough control to constitute a de facto Title VII employer. Carparts held that "defendants would be 'employers' . . . if they exercised control over an important aspect of [the employee's] employment." 37 F.3d at 17. As discussed, State defendants extensively control the hiring of municipal firefighters and police officers, and hiring is an important aspect of the employment relationship. Cf. id. (finding that employee health care coverage to be an important aspect). Moreover, the HRD plays a pervasive role not just in the hiring process but also in other respects of the employment relationship. For example, the HRD plays an extensive role in the promotion process, see Mass. Gen. Laws ch. 31, § 59, determines in-service health and physical fitness standards, id. § 61A, and funds "wellness" programs if accepted by the city, id. § 62A. Accordingly, the current record on summary judgment supports a finding that the HRD constitutes a Title VII employer of plaintiffs with respect to the entry-level hiring of

18

firefighters and police officers, and the Court denies State

defendants' motion.[2]

<u>ORDER</u>

State defendants' motion for judgment on the pleadings, or

alternatively for summary judgment, is **<u>DENIED</u>**.   (Docket No. 32.)


                                        S/PATTI B. SARIS_____
                                        United States District Judge

---

  [2] The other arguments raised by the state were resolved by
the amended complaint.

# L I C H T E N  &  L I S S - R I O R D A N , P.C.

ATTORNEYS AT LAW

100 CAMBRIDGE STREET, 20th FLOOR

BOSTON, MASSACHUSETTS  02114

HAROLD L. LICHTEN[†]
SHANNON LISS-RIORDAN[◊]
LEAH M. BARRAULT
HILLARY SCHWAB[◊]

TELEPHONE  617-994-5800
FACSIMILE  617-994-5801

WWW.LLRLAW.COM

IAN O. RUSSELL
BRANT A. CASAVANT
ALEX SUGERMAN-BROZAN
SARAH E. GETCHELL

[†]ALSO ADMITTED IN MAINE
[◊]ALSO ADMITTED IN NEW YORK

June 5, 2009

**VIA HAND DELIVERY**
Clerk of the Court
United States Court of Appeals
   For the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:   *Lopez, et al. v. City of Lawrence, et al.*
      Civil Action Appeal No. 09-1664

Dear Sir or Madam:

Enclosed in connection with the above-referenced matter please find an original and three copies of the Plaintiffs' Reply to Defendants-Appellants' Opposition to Motion to Dismiss Appeal.  Thank you for your attention to this matter.

Sincerely,

Sarah Gutherz
Assistant to Harold L. Lichten, Esq.

Enclosure

# LICHTEN & LISS-RIORDAN, P.C.

Cc:     *(VIA FIRST CLASS MAIL)*

Mark D. Selwyn

Jeffrey S. Gleason

Vinita Ferrera

Rahsaan D. Hall

James M. Bowers

Peter J. McQuillan

Iraida J. Alvarez

Robert L. Quinan, Jr.

Sookyoung Shin

Kevin S. McDermott

Brian W. Leahey

R. Eric Slagle

Laurie W. Engdahl

Daniel C. Brown

Robert P. Morris

Mary Jo Harris

Edward M. Pikula

John T. Liebel

Maurice M. Cahillane, Jr.

Williams G. Cullinan