UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                            )
PEDRO LOPEZ, et al.                             )
                                                            )
                Plaintiffs,           )
                                                            )    Civil Action No. 07-11693-JLT
           v.                                        )
                                                            )
CITY OF LAWRENCE, et al.                  )
                                                            )
                Defendant.           )
_____ )

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' JOINT MOTION FOR RECONSIDERATION**

      Plaintiffs, by their attorneys, hereby oppose the Defendants' joint motion to reconsider this Court's ruling terminating dispositive motions and memorandum in support thereof. This Court expressly stated in the February 1, 2010 hearing that the Defendants would have the opportunity to file motions *in limine* regarding any outstanding legal issues. In a trial without a jury such as this, motions *in limine* are the preferred method for addressing such issues. Most of the issues which the Defendants would like to address, in fact, as raised in their joint memorandum, cannot be appropriately determined through summary judgment briefings, because these issues are highly fact-intensive and require factual development.

      Moreover, the Defendants have sat on their rights without any competing demands that prevented them from filing for summary judgment. At this late stage, they should follow the Court's instructions and use the motions *in limine* for their challenges rather than require the Court and the Plaintiffs to proceed through the lengthy summary

judgment process.  All of the legal issues that they claim (incorrectly) complicate this matter can be addressed through motions *in limine* prior to trial, as this Court explained at the February 1, 2010 hearing.

This case has an active history.  The case began in 2007 and proceeded with almost weekly filings, sometimes multiple filings per week, until the Plaintiffs filed their Sixth Amended Complaint on January 7, 2009.  The following day, the Court issued its final discovery order stating that depositions were to be completed by the end of March, and no further extensions of discovery would be granted.  See ECF Doc. 138.  The Defendant Commonwealth of Massachusetts took this opportunity to file a motion to dismiss on January 26.  See ECF Doc. 142.  The other Defendants, cities and towns of the Commonwealth, did nothing other than file answers to the amended complaint. Knowing that trial was approaching and discovery was nearing conclusion, they chose to ride the coattails of the Commonwealth's motion.  On April 21, 2009, this Court issued a Final Pre-trial Order setting the trial for June 15, 2009, and a final pre-trial conference on May 18, 2009.  See ECF Doc. 172.  Clearly no summary judgment filings were envisioned at that time.

Due to the evolving factual record of this dispute, the Defendants have been added to this litigation through amended complaints.  Most of the Defendants have been involved in the case for almost two years, however.  The Court issued summons to the Defendants in the following chronological order:

> Lawrence and Methuen, September 11, 2007;
> Lowell and Worcester, January 7, 2008;
> Boston, March 19, 2008; and
> Springfield and the MBTA, January 9, 2009.

<u>See</u> ECF Docket Report, C.A. 07-11693.

Clearly none of the current Defendants have a legitimate claim that they did not have sufficient time to file a motion for summary judgment, except arguably for Springfield and the MBTA. These defendants were only involved in this litigation for slightly over four months prior to the Court issuing its stay on May 13. Still, the Plaintiffs believe that Springfield and the MBTA had adequate notice regarding the scheduled trial and could have informed this Court, but did not, of their intention to file for summary judgment. The Plaintiffs acknowledge that Springfield and the MBTA have not sat on their rights to the same degree as the other Defendants.

Nonetheless, the Defendants' assertion that they did not cause delay in the proceeding causing their missed opportunity to file summary judgment motions misses the point. <u>See</u> Def. Mem. at 5. They will have the opportunity to file motions *in limine*, and have not explained why this option does not suffice to protect their rights. Further, where they slept on their perceptible rights to move for summary judgment, they should not be permitted to delay resolution of this dispute further by claiming ignorance of their actions. Their motion for reconsideration should be denied.

**1.     The Defendants' Request To Move For Summary Judgment Is Untimely and Unnecessary.**

The Defendants have no one else to blame but themselves that they missed the opportunity to move for summary judgment. Nonetheless, they will not be penalized at all for their lack of diligence because Court is allowing them to raise their challenges in motions *in limine* prior to trial. Thus, the Defendants' motion is both incorrect substantively and unnecessary.

The Defendants' legal challenges raised in their motion should be brought in motions *in limine*. Indeed, a summary judgment motion could not adequately address many of the legal issues as they require the development of expert testimony. Whether it is appropriate to consider disparate impact on an aggregate or disaggregate basis, for instance, cannot be decided based on briefs and exhibits. This Court must receive the experts' testimony and a complete factual record to evaluate this issue. See infra at 7 (discussing Bradley v. City of Lynn case where such expert testimony was received). On the other hand, purely legal issues such as how the Supreme Court's recent decision in Ricci v. DeStafano, 129 S.Ct. 2658 (U.S. 2009) affects the current dispute (it does not) does not require the substantial briefing required by a summary judgment motion. The Defendants' request therefore simply seeks to delay the trial in this matter from proceeding.

Moreover, the Defendants' effort to resurrect their ability to move for summary judgment conflicts with settled principles of civil advocacy. As the First Circuit has repeatedly explained, "the law ministers to the vigilant, not to those who sleep upon perceptible rights." In re Pabon Rodriguez, 17 Fed.Appx. 5, 6 (1st Cir. 2001); Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir.1987). In waiting until the Commonwealth's appeal was decided before pursuing their own defenses, the Defendants chose to take the "backseat" in this action.

This Court issued its final discovery order on January 8, 2009, ordering that depositions, including of experts, were to be completed by the end of March, and no further extensions of discovery would be granted. See ECF Doc. 138; ECF Docs. 26, 48, 61, 80-81, 87, 101 (earlier discovery orders). The Commonwealth filed its motion to

4

dismiss three weeks later.  See ECF Doc. 142.  The Plaintiffs filed their opposition to the motion to dismiss, and the Defendants still did nothing.  See ECF Doc. 163.

On April 6, 2009, this Court denied the Commonwealth's motion to dismiss, and the Commonwealth subsequently appealed.  See ECF Doc. 168, 174.  On April 21, 2009, the Court issued its Pre-Trial Order, setting the trial date for June 15 and a final pre-trial conference for May 18.  See ECF Doc. 172.  On May 8, 2009, the Commonwealth filed its motion to stay the proceeding pending its appeal.  See ECF Doc. 175.  On May 13, the Defendants filed a motion requesting relief from obligations of the Pre-Trial Order due to the Commonwealth's appeal.  See ECF Doc. 179.  That same day, the Court granted the Commonwealth's motion to stay the proceeding and the Defendants' request to be relieved from the Pre-Trial Order obligations.

The Defendants have slept on their rights throughout this litigation.  As discovery extended into 2009 and beyond, they could have filed for summary judgment at any time.  In the over four months between the filing of the Sixth Amended Complaint and when the Court issued the stay, the Defendants had every opportunity to file such a motion or alert the Court of their intention to do so.  They were not busy opposing or filing other motions.  They did not participate in the briefings on the Commonwealth's motion to stay.  Indeed, they clearly knew that the case was ready for trial, as they asked the Court for relief from preparing for trial while the Commonwealth pursued its appeal.  See ECF Doc. 179.[1]

In the summary judgment context, a party has the affirmative obligation to pursue discovery vigilantly and, once such discovery is concluded, to file its motion for

---

[1] The Plaintiffs filed their pre-trial memorandum on May 13, 2009.  See ECF Doc. 178.

summary judgment.[2]  Thus, courts in the First Circuit have repeatedly held that a party opposing summary judgment cannot rely on Rule 56(f), which permits a court to delay ruling on summary judgment to allow further discovery for the opposing party, if the opposing party has not diligently pursued discovery in the meantime.  See Resolution Trust Corp. v. North Bridge Associates, Inc., 22 F.3d 1198, 1203 (1st Cir. 1994) (Rule 56(f) "requires due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter."); In re Pabon Rodriguez, 17 Fed.Appx. at 6.  While this particular section of Rule 56 is not at issue, the same principle applies where the Defendants have not shown that they diligently remained involved in this litigation in anticipation of filing a motion for summary judgment.  This Court does not countenance litigation tactics that result in a party "sleep[ing] upon perceptible rights."  Id.

      The Defendants assert that when this case was stayed on May 13, 2009, certain of them "planned to file dispositive motions prior to trial."  Def. Mem. at 3.  Such a claim must be viewed skeptically when by that date the Court had already issued its Pre-Trial Order and set a Final Pre-Trial Conference for May 18, five days after the stay was issued, and set trial to begin a month later.  See ECF Doc. 172.  A motion for summary judgment would have been clearly untimely at this time, less than a month prior to trial.

---

[2] This Court is not required to set a specific deadline for the filing of dispositive motions.  See Local Rule 7.1 (a framework for the disposition of motions "*may* include specific deadlines or general time guidelines for filing motions." (emphasis added).  Thus, the fact that the Court did not set forth a specific deadline for the filing of summary judgment does not aid the Defendants here.

6

Despite the foregoing, the Defendants still will have the opportunity to raise their legal challenges to the Plaintiffs' claims in their motions *in limine*. Their self-inflicted delay will not ultimately prejudice them.

### 3. There Is No Question That The Statistical Evidence Regarding The Defendants Can Be Aggregated.

Contrary to the Defendants' assertion, the case law strongly supports examining the statistic evidence on the police sergeant's exam on an aggregated basis to determine disparate impact. There is no "substantial question of law" regarding this issue. See Def. Mem. at 4. In Bradley v. City of Lynn, which the Defendants cite in support, the Court ruled in fact that aggregating data across municipalities was appropriate considering the Commonwealth's significant involvement in developing and administering the exam. 443 F. Supp. 2d 145, 167. Bradley involved a similar disparate impact claim concerning the civil service exam developed and provided by the Commonwealth's Human Resources Division ("HRD") for entry-level firefighters and police officers, thus the case is exactly on point. As the Court explained: "Given the statutory framework mandating HRD's involvement in the hiring prices across municipalities, the aggregation approach is supported in this case by the EEOC Guidelines and the case law." Id.

The municipalities and the Commonwealth in Bradley claimed that the number of hires was too small in most communities to determine whether a disparate impact existed. Id. at 166.[3] However, the Court found that the Bradley plaintiffs demonstrated "a reasonable statistical basis" to address the small numbers problem through

---

[3] The Bradley Court considered the City of Lynn and the City of Boston on a disaggregated basis because these large municipalities with greater hiring numbers could distort the results if they were included with the smaller communities. Id, at 165

aggregation.  Id. at 167.  The plaintiffs' experts in Bradley are the same experts who offered their reports here for Plaintiffs.  Specifically, Joel P. Wiesen, Ph.D., offered a detailed endorsement of the aggregation method in his supplemental expert report in this matter.  See Report of Joel P. Wiesen, Ph.D., attached as Exhibit A; Supplemental Report of Joel P. Wiesen, Ph.D., pgs. 2-6, attached hereto as Exhibit B.  Where the exams here, like in Bradley, are significantly similar year-to-year and developed by the same division of the Commonwealth, the Court will merely follow its own precedent by aggregating across municipalities.  Id.; Vulcan Pioneers, Inc. v. N.J. Department of Civil Services, 625 F. Supp. 527, 534-35 (D.N.J. 1985).

### 4.     The Plaintiffs Have Standing To Pursue Their Claims Against The Defendants.

The dismissal of the Commonwealth as a defendant in this action does not alter the Plaintiffs' standing to maintain their suit against the Defendants.  Such a suggestion, see Def. Mem. at 4, ignores case law and a fundamental principle of American jurisprudence enshrined in the Massachusetts Constitution.  As repeatedly emphasized by the Supreme Court, and as stated expressly in the Massachusetts Constitution, "every wrong shall have a remedy."  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta 552 U.S. 148, 176 (2008) (Stevens, J., dissenting); Texas & P. Ry. Co. v. Rigsby, 241 U.S. 33, 39-40 (1916); Mass. Const. Pt. 1, Art. 11 ("Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character.")

Sanctioning the Defendants' position that they cannot be sued because the Commonwealth has been dismissed would create a vacuum in the law. Such a result leaves the Plaintiffs without recourse while avoiding the ultimate issue of whether the Plaintiffs' substantive claims have merit. This would violate the Massachusetts Constitution and a fundamental principle of American jurisprudence.

Further, the First Circuit explicitly stated in its recent decision that the cities should remain as Defendants in this litigation. See Lopez v. Massachusetts, 588 F.3d 69, 72 (1st Cir. 2009) (explaining that the holding only means that the Court "dismiss[ed] plaintiffs' suit against these [state] defendants. Plaintiffs' claims against the city defendants and the MBTA will still proceed."). As part of its decision, the First Circuit found that the cities and the MBTA were the Plaintiffs' employers. Id., at 86.

The case law in the First Circuit, as well as in other circuits, directly contradicts the Defendants' position, therefore. In Gulino v. New York State Education Department, the Second Circuit addressed a claim by minority school teachers of New York City that certain testing requirements imposed by the state violated Title VII. 460 F.3d 361 (2d Cir. 2006). The Second Circuit ruled that the state defendant was not an employer under Title VII, but expressly ruled that the city defendant was an employer under Title VII and subject to potential liability. Id. at 380-81. Thus, the state defendant was dismissed from the case while the city defendant remained, like in the First Circuit's Lopez decision.

Nothing is unfair or unexpected about this result. While the Second Circuit "acknowledge[d] the difficult situation that this creates for the [city defendant]," it noted that "Title VII requires this result" because the city defendant, the New York City Board

9

of Education, "is not merely a licensing agency" but its "purpose . . . is the education of students in New York City public schools, and [it] hires and compensates teachers as a means of accomplishing that objective." Id. at 381.  The same reasoning applies here. The Defendants are not licensing agencies, but the actual public actors that hire and promote police officers like the Plaintiffs to provide their communities with police.

Further, as explained in Gulino, the Defendants are not bound to obey a hiring policy or a state law that causes disparate impact under Title VII.  Id. at 380 ("Title VII explicitly relieves employers from any duty to observe a state hiring provision which purports to require or permit any discriminatory employment practice.")  As "the mandates of state law are no defense to Title VII liability," the Defendants cannot hide behind their allegiance to the Commonwealth's examination methods.  Id.  Even so, as noted by the First Circuit in its recent decision, the Defendants have always had the option to develop and utilize their own civil service exam.  See Lopez v. Massachusetts, 588 F.3d 69, 76 (1st Cir. 2009).

### 5. The Supreme Court's Ricci Decision Is Irrelevant.

This case has not been affected by the Supreme Court's decision in Ricci v. DeStefano, 129 S. Ct. 2658 (U.S. 2009).  That decision involved a city's affirmative act to prevent what it perceived to be a disparate impact resulting from its civil service examination.  This was not a disparate impact case at all; this was a disparate treatment case.  The Plaintiffs' claims against the Defendants, on the other hand, present a straightforward disparate impact case.  The issue is whether the exam the Defendants provided and used to promote their officers had a disparate impact on minority applicants – not whether the Defendants' subsequent actions in response to an

examination was permissible. The claims do not raise the same issue presented in Ricci, as there has been no affirmative act taken by the Defendants.

In Ricci, the City of New Haven refused to certify the results of its civil service firefighters' examination after perceiving in the test results a disparate impact against minorities. Id. at 2671. By doing so, the City subjected itself to a disparate treatment lawsuit filed by non-minority firefighters. The Supreme Court's decision "clarifie[d] how Title VII applies to resolve competing expectations under the disparate-treatment and disparate-impact provisions." Id. at 2681. The Supreme Court concluded that the City of New Haven could certify its test results and should be able to avoid disparate-impact liability based on the strong evidence that the city would have been subject to disparate-treatment liability had it continued to refuse to certify the results. Id.

The Defendants have not been forced to "resolve competing expectations" here. The Defendants argue that they could not have refused to utilize the Commonwealth's examinations or certify the results without running the risk of violating Title VII under Ricci, see Def. Mem. at 4, but this argument is misplaced. The Plaintiffs' claims arise out of the examinations themselves, not the Defendants' act of certifying the examinations. What has been alleged is that the Defendants could have developed and provided their own examinations in prior years, but chose not to. They were statutorily authorized to develop and provide their own examinations. See Lopez, 588 F.3d at 76. No claim has been made that the certification of the results of the prior examinations *in itself* subjects the Defendants to liability. Indeed, the Defendants have presented no evidence that the certification of prior examinations was done as a result of "competing expectations" to avoid disparate-treatment claims.

11

**Conclusion**

For the foregoing reasons, the Defendants' motion to reconsider should be denied in its entirety.

Respectfully submitted,

PEDRO LOPEZ, et al.

By their attorneys,

 /s/ Joseph L. Sulman
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO# 640716
Joseph L. Sulman, BBO #663635
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Date: February 24, 2010         (617) 994-5800


**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2010, a copy of this document was served by electronic filing on all counsel of record.

 /s/ Joseph L. Sulman
Joseph L. Sulman