# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PEDRO LOPEZ, ET AL, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 07-11693-GAO |
| CITY OF LAWRENCE, | ) | |
| MASSACHUSETTS, ET AL | ) | |
| Defendants | ) | |

## MEMORANDUM IN SUPPORT
## OF THE DEFENDANTS' MOTION TO DISMISS

### I.    INTRODUCTION

The Defendants are: City of Lawrence; City of Methuen; City of Lowell; City of Worcester; City of Boston; City of Springfield; and Massachusetts Bay Transportation Authority (the "MBTA") (collectively, the "Defendants"). The Defendants move this Court, pursuant to Fed. R. Civ. P. 12 (b)(1) and 12 (c), to dismiss the Complaint on the ground that the Plaintiffs have no standing to bring their claims and, therefore, this Court lacks subject matter jurisdiction; and/or on the ground that Title VII does not prohibit employers, such as the Defendants, from complying with the Commonwealth's facially-neutral state wide testing requirements. For the reasons set forth more fully below, the Defendants submit that the Court should dismiss all Counts under both Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B (the Massachusetts Fair Employment Practices Act).[1]

---

[1] The Defendants reserve their rights, as may be needed, to raise, through motions in limine or/and summary judgment, issues unique to each Defendant and/or to specific Plaintiffs.

## II.    FACTUAL BACKGROUND

The Defendants submit that, pursuant to the doctrine of the law of the case, the facts noted in *Lopez v. Commonwealth of Massachusetts,* 588 F. 3d 69, 73-81 (1st Cir. 2009), may be relied upon for the purposes of this motion. *See, Nasar Jewelers, Inc. v. City of Concord, NH,* 538 F.3d 17, 20 (1st Cir. 2008). The pleadings and the facts reported are sufficient for this Court to determine this Rule 12(b) and/or 12(c) motion. Most pertinent to this motion are the facts that the state wide promotional examinations in question were created and administered by the Massachusetts Human Resources Division (hereinafter "HRD") pursuant to a state regulatory scheme appearing in M.G.L., c. 31 et seq. As employers, the Defendants complied with state law and utilized the HRD examinations for promotions to the position of police sergeant. Moreover, the Plaintiffs claim that the disparate impact stemmed from the state wide results of the HRD examinations which the Defendants did not create or administer.

## III.    ARGUMENT

### THERE IS NO SUBJECT MATTER JURISDICTION FOR THIS COURT BECAUSE PLAINTIFFS LACK STANDING AS THE DEFENDANTS DID NOT CAUSE THEIR INJURIES AND THERE IS NO REDRESSABILITY FOR THEIR INJURIES

The Plaintiffs allege that HRD and certain state officials [all dismissed from suit because of sovereign immunity*, Lopez, supra],* created and administered state wide examinations in 2005, 2006, and 2007 for the promotion to the position of police sergeant which had a disparate impact upon African-American and Hispanic police officers throughout Massachusetts (Sixth Amended Complaint, pars. 1 & 88). The Plaintiffs

allege that *the use of the examinations* by the Defendants has somehow resulted in liability[2] under Title VII and M.G.L. c. 151B.[3] (Sixth Amended Complaint, par. 82).

The Defendants submit that the Plaintiffs do not have standing to bring this suit because the injuries that they allege to have suffered were caused by third parties (i.e. the dismissed state actors, including HRD) not before this Court and because in this case there can be no redressability for the alleged injuries without HRD being before this Court. "The irreducible constitutional minimum of standing contains three requirements." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102(1998) (quotation marks and citation omitted). "First and foremost, there must be alleged (and ultimately proved) an injury in fact … a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 103 (quotation marks and citations omitted). "Second, there must be causation- a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id*. "And third, there must be redressability- a likelihood that the requested relief will redress the alleged injury." *Id*. "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id* at 103-04.

The Plaintiffs' alleged injuries are that they were deprived of having a fair testing procedure for promotional examinations in 2005, 2006, and 2007 because the examinations created and administered by HRD had a disparate impact upon African-

---

[2] Evidently, Plaintiffs broadly allege disparate impact from the examinations based upon a review of the results of the HRD exams throughout the entire Commonwealth (in the aggregate) and they do not allege disparate impact in the promotions by any particular Defendant.

[3] In Massachusetts, it has been the general practice of the Supreme Judicial Court to apply Federal case law regarding Title VII when interpreting analogous provisions of M.G.L. c. 151B. *See, MBTA v MCAD*, 450 Mass. 327, 337-338, 879 N.E.2d 36 (2008).

American and Hispanic police officers state wide. Such tests were created and administered by HRD pursuant to state statute. *Lopez,* at 74-75. Accordingly, the alleged injuries were caused by the state wide HRD testing. There was harm no caused by the Defendants.

There can be no redressability for the Plaintiffs' alleged injuries because the statutory scheme in Massachusetts clearly vests HRD with the oversight of promotional examinations for civil servants. *Lopez,* at 75. Other than monetary damages that would seemingly be based upon entirely speculative harm against any particular Plaintiff, there is no remedial relief that this Court can fashion to redress the Plaintiffs' claims without having HRD and the state officials before the Court because the only true redress is to assure that state wide testing does not have a disparate impact. HRD is a third party that is not, and cannot be, before this Court and, under the statutory scheme in Massachusetts, it is entrusted by statute with the responsibility to assure fair testing. "HRD ...is a state agency with statutorily prescribed duties with respect to the administration of the state civil service system, including the preparation and administration of certain competitive promotions examinations." *Lopez,* at 75.

Without standing, there is no subject matter jurisdiction. Once the issue of standing is raised, the party contending that standing exists has the burden to establish the three elements of Article III standing: (1) that Plaintiffs had suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the Defendants, and not the result of the independent action of some third party not before the Court; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable Court decision

against the Defendants before the Court. *See, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

In this case the alleged injury to the Plaintiffs, that HRD created and administered examinations which, state wide, had a disparate impact on African-American and Hispanic police officers, is too attenuated from the conduct of any Defendant in promoting police officers to sergeants for the injury to be considered causally related under the causation standard expressed by the Supreme Court when addressing standing. This attenuation from harm becomes evident when looking at the sergeant promotions by each Defendant. For example, the only two Plaintiffs who are employed by the MBTA are Royline Lamb and Lynn Davis (Sixth Amended Complaint, pars. 41 & 42). Neither Plaintiff passed the promotional exam. Therefore, HRD considered them unqualified for consideration for appointment to the position of sergeant. As a result, the MBTA could not hire them. The MBTA took no action to cause direct harm to these Plaintiffs. It is a general principle of law that, "where [a defendant] has no ability to prevent a certain effect due to its limited [legal] authority over the relevant actions, the [defendant] cannot be considered a relevant 'cause' of the effect," and thus ordinarily is not liable. *Department of Transp. v. Public Citizen,* 541 U.S. 752, 770 (2004).

To the extent that the Plaintiffs allege that the harm to them was that the MBTA relied on HRD, pursuant to the statute, to create and administer the promotional examinations, then the harm is just too attenuated for the MBTA to be held liable to these Plaintiffs. This is especially so because there is no evidence of disparate impact for promotions to sergeant within the MBTA from the examinations in question. Moreover, for reasons argued further in this motion, Title VII does not prohibit employers from

complying with the facially-neutral state testing requirements.

In the present case there is no causation of harm stemming from the actions of any Defendant. Pursuant to applicable civil service law, each Defendant could only select candidates for promotion from the certified lists provided by HRD. *Lopez*, at 78. If a Plaintiff did not score sufficiently high enough on the examinations, or if a Plaintiff did not pass the examinations, then that Plaintiff could not be considered by any Defendant for promotion and nothing in the action of any particular Defendant could be said to have caused injury to that Plaintiff. Simply, the harm alleged was caused by a third party not before the Court---namely, HRD.

Further attenuating the alleged harm to the Plaintiffs from the actions of the Defendants is that the alleged disparate impact claimed by the Plaintiffs stems from aggregated results of the state wide examinations. Moreover, once the HRD tests were given, the Supreme Court has made it clear that the Defendants risk violating the constitutional rights of their employees if they ignore test results due to racial concerns. *See*, *Ricci v. DeStefano*, --U.S.---, 129 S.Ct. 2658 (2009)(one may not ignore a promotional test because of racial concerns without a strong basis in evidence that the test is invalid.) In the present case, the Defendants did not have access to testing data, including test results and validation studies, created and maintained by HRD and, therefore, they could not determine whether the tests created and administered by HRD had disparate impact. No Defendant could have had the significant basis in evidence required to ignore the results of HRD testing. The injury caused by the HRD testing is simply too attenuated to be said to be caused by any Defendant.

In *Warth v. Seldin,* 422 U.S. 490 (1975), the Court held that causation was lacking

6

with respect to the attenuation between Plaintiffs' injury and Defendant's challenged conduct. In that case, low and moderate income Plaintiffs challenged a zoning ordinance that, among other things, allocated 98 percent of vacant land to single-family detached housing and effectively excluded Plaintiffs from living in town. The Court held that causation was lacking because Plaintiffs' ability to find affordable housing in town depended on the willingness of third-party developers to create low-cost residences; the Plaintiffs' "inability to reside in [town] is the consequence of the economics of the area housing market, rather than of [the challenged zoning ordinances]." *Id.* at 506. In the present action, the alleged harm is the alleged disparate impact, state wide, of the tests created and administered by HRD. Each Defendant abided by the law and acted in good faith and the public interest to promote the best candidate from among those whom they were lawfully allowed to consider. Even if there is harm from the testing given by HRD, that harm is too attenuated from the actions of any Defendant to allow standing.

Likewise, in *Allen v. Wright,* 468 U.S. 737(1984), a nationwide class action, the parents of black public school students challenged the IRS's failure to ensure that racially discriminatory private schools were denied tax-exempt status. The Plaintiffs alleged that the tax-exemptions enjoyed by racially discriminatory private schools diminished their children's ability to receive an education at a racially integrated school. The Supreme Court found those injuries "not fairly traceable" to the challenged government conduct because the following were uncertain: the number of racially discriminatory private schools receiving tax exemptions; whether withdrawal of a tax exemption from any particular school would lead the school to change its policy; whether any particular parent of a student at such private school would transfer the child to public school once it

was threatened to lose its tax-exempt status; and whether in a given community enough school officials and parents would make decisions with a collective significant impact on the racial composition of the public schools. *Id.* at 757, 758.

In addition to establishing that their injury results directly from the actions of any Defendant, Plaintiffs must also demonstrate that the requested relief will remedy their injury. *See, Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 43(1976). In *Simon,* indigent Plaintiffs sued Department of Treasury officials, challenging provisions allowing favorable tax treatment to a non-profit hospital where Plaintiffs were denied service. The Court concluded that Plaintiffs lacked standing because, due to the attenuated chain of causation, there was no evidence that eliminating the challenged tax break would actually result in the non-profit hospital changing its practices in treating the Plaintiffs. *Id.*

In the present case there is no redressability against the Defendants. As the First Circuit pointed out, HRD is a state agency with statutorily prescribed duties with respect to the administration of the Commonwealth's civil service system, including the creation and administration of the competitive promotional examinations at issue. *Lopez,* at 75. Although cities and towns may, with the oversight of HRD, promulgate their own promotional exams, it is lawful and, indeed, the practice of most cities and towns in Massachusetts to rely on the expertise of HRD and utilize HRD-administered and created exams. *See, Mass. Association of Minority Law Enforcement Officers v. Abban*, 434 Mass. 256 (2001) (As a general rule, deference is given to administrative agencies due to their expertise in areas they oversee. The fundamental purpose of the civil service system is to guard against political considerations, favoritism, and bias in governmental hiring and promotion and ensuring that the system operates on basic merit principles.) This is

not a case where the Plaintiffs are challenging the state civil service statute. Rather, the Plaintiffs complain about the state wide disparate impact of past HRD promotional examinations. The Plaintiffs request "injunctive and declaratory relief remedying Defendants' past acts of discrimination..." (Sixth Amended Complaint). This request for relief made sense when HRD and the state actors were in the case. However, the Defendants cannot affect change in the testing procedure administered by HRD and, therefore, there is no redressability against the Defendants. Moreover, it is the Plaintiffs who have the burden to prove that redressability against the Defendants is likely, not merely speculative. *See, Lujan v. Defenders of Wildlife, supra*.

### *Title VII Does Not Prohibit Employers From Complying With Facially-Neutral State Testing Requirements*

The Defendants are employers and therefore subject to Title VII's prohibitions. Title VII does not, however, make it unlawful for the Defendants to comply with the Commonwealth's state wide testing requirements at issue.

In their opposition to the Defendants' Motion for Reconsideration, the Plaintiffs cite to *Gulino v. New York State Education Department*, 460 F.3d 361 (2006) for the proposition that a municipality may be responsible under Title VII as an employer when it complies with a law that requires it to use state wide testing when that testing proves to have a disparate impact upon minorities. In that case, the State of New York passed a law that required that the New York State Education Department ("SED") create and administer tests that all public school teachers had to pass to be certified. The New York City Board of Education ("BOE") employed public school teachers in New York City. It complied with that law and required that its teachers pass the SED tests before being certified as full-time permanent teachers. In addition, BOE decertified teachers who had

been certified as permanent because they did not pass the SED testing. The plaintiffs in *Gulino* were Black and Hispanic teachers employed by BOE, some of whom had been decertified, who did not pass the SED tests and therefore worked as substitute teachers which paid less than permanent teachers. They sued SED and BOE under Title VII claiming that the SED tests had a disparate impact on Black and Hispanic teachers. There was a lengthy trial and both defendants participated. The district court found the defendants not liable. The plaintiffs appealed to the Second Circuit.

On appeal, the *Gulino* court relied upon common law principles to find that SED was not an employer for purposes of Title VII. Accordingly, SED was dismissed from the suit. It also found that the lower court made legal and factual errors regarding the SED testing and the legal significance of BOE decertifying teachers. Accordingly, the lower court decision was vacated and the case was remanded. *Id.* at 388.

As to BOE, the *Gulino* court held that it was an employer within the meaning of Title VII. It explained that, while BOE had "argued in the district court that it should not be held liable for an employment practice required by state law," that argument was rejected and BOE "does not appear to challenge this finding of the district court." *Id.* at 380. The *Gulino* court briefly noted, however, that "the district court was correct in holding that the mandates of state law are no defense to Title VII liability." *Id.*

As to the argument that BOE advanced on appeal, the *Gulino* court stated that, "[o]n appeal, BOE appears to change its tack. Instead of arguing lack of discretion, BOE asserts that Title VII does not apply because BOE's use of certification tests for licensing 'is a capacity separate and distinct from that of employer under Title VII.' " *Id.* at 380. The court rejected that argument on the ground that BOE is "not merely a licensing

agency," but instead "acts as plaintiffs' 'employer' in the word's ordinary meaning." *Id.* at 381. The court "acknowledge[d] the difficult situation that" its holding "creates for" BOE - by requiring it to defend the results of a test that it did not design and does not administer - but concluded that "Title VII requires this result." *Id.*

Accordingly, the *Gulino* court vacated the trial court decision and remanded for further proceedings. *Id.* at 388. In so doing, the court noted that it did not reach plaintiffs' contention that BOE had misused the tests by, among other things, demoting teachers from permanent to substitute status and then paying them less. *Id.* at 370. Instead, the court explained that, "[i]f appropriate, the district court may need to address this argument on remand." *Id at fn 9.*

A Petition for A Writ of Certiorari was filed in the Supreme Court. It was denied. *Board of Education of the City of New York v. Gulino,* 128 S. Ct. 2986 (2008). Significantly, the United States Solicitor General filed an amicus brief opposing the petition for a writ of certiorari. In it, the Solicitor General provided cogent argument as to why the *Gulino* court was plainly wrong in its holding that BOE's compliance with a facially-neutral public education state licensing requirement can give rise to Title VII disparate impact liability. The Defendants' argument below adopts much of the argument made by the Solicitor General.

Even though the *Gulino* court was wrong to hold BOE liable under Title VII for compliance with a facially-neutral public education state licensing requirement, the Solicitor General opposed the petition for certiorari because BOE had, curiously, abandoned the appeal of this argument in the Second Circuit. Therefore, the case provided a poor vehicle for considering the question. Also noted by the Solicitor General

as a reason for opposing certiorari was that the case was in an interlocutory posture and the lower courts had not yet resolved plaintiffs' contention that BOE misused the testing in ways *not* required by state law. Accordingly, the Solicitor General argued that the petition for a writ of certiorari should be denied.

In the present case, the HRD promotional examinations were conducted *outside of an employment context* and do not give rise to a cause of action under Title VII as that statute prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). Title VII thereby restricts employers' employment practices. As other courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement of testing requirements, in a non-employment capacity. *See*, *e.g., Camacho v. Puerto Rico Ports Auth.,* 369 F.3d 570, 578 (1st Cir. 2004) (noting "long line of cases" holding that testing authorities are not subject to Title VII).

That result draws support from the Supreme Court's cases suggesting that intent to rework the federal-state balance should not be lightly inferred. *See*, *e.g., United States v. Bass,* 404 U.S. 336, 349 (1971). In this case, the state acted pursuant to its traditional police powers in performing a core state function - regulating the qualifications of its police supervisors. This is a traditional state function. *See, Lopez, supra*.

The Constitution, of course, constrains the exercise of that traditional police power by prohibiting intentional discrimination on the basis of race (and 42 U.S.C. 1983 furnishes a cause of action to address such discrimination), but the Constitution does not proscribe disparate impact. *Washington v. Davis,* 426 U.S. 229, 241-242 (1976). Indeed, in *Davis* the Court relied in part on concerns about how such liability would affect state

licensing and testing statutes and other traditional state functions. *Id.* at 248. Because nothing in Title VII manifests a clear intent to impose further restrictions on the states' exercise of their sovereign police power to test or license professionals including police officers, Title VII should not be read to intrude on such matters of core state authority. See *Bass,* 404 U.S. at 349; cf. *Gregory v. Ashcroft,* 501 U.S. 452, 460-461 (1991) (holding that Congress's intent "to alter the usual constitutional balance between the States and the Federal Government" must be "unmistakably clear in the language of the statute") (citation omitted).

The inapplicability of Title VII to a state providing testing under its police power, rather than as employer, supports the dismissal of the Commonwealth from this action. However, the Defendants did not devise and did not administer the promotional examinations in question. Therefore, they are employers that must comply with the state law that requires them to hire from the certified lists promulgated by HRD. The Defendants thus acted *only* as plaintiffs' employer, not as a testing body. The Defendants are not liable under Title VII for complying with a facially-neutral state testing regime that limits the universe of potential employees to those who have complied with the Commonwealth's requirements. Several considerations support that result.

First, any other conclusion would effectively result in the same reworking of the federal-state balance as a regime making the states liable directly for their facially-neutral testing schemes. As discussed above, states are not forbidden by the Constitution from enacting or enforcing testing requirements that have unintentional disparate impact, and Title VII does not intrude on that traditional state authority. That state authority would be vitiated if employers could be held liable under Title VII for complying with facially-

neutral state testing laws, because the threat of such liability would frustrate compliance with such state laws.

Second, holding employers liable for the consequences of a state law that narrows the universe of prospective employees would conflict with basic notions of fairness and causation. As noted previously, it is a general principal that "where [a defendant] has no ability to prevent a certain effect due to its limited [legal] authority over the relevant actions, the [defendant] cannot be considered a relevant 'cause' of the effect," and thus ordinarily is not liable. *Department of Transp. v. Public Citizen,* 541 U.S. 752, 770 (2004). Congress legislated against the backdrop of that practice when it enacted Title VII. Cf. *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 184-185 (1988). And there is no evidence that Congress intended to depart from that principle in Title VII, with the indirect consequence of interfering with a state's ability to conduct facially-neutral exams. Moreover, this requirement of causation could also be read into the prohibitions that give rise to disparate-impact liability. Cf. *Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258,265-266 (1992) (reading proximate causation into civil RICO action). For example, the basic liability provisions from which disparate-impact liability have been derived address an employer's effort "to limit, segregate, or classify his employees or applicants," 42 U.S.C. 2000e-2(a)(2), but it is the state's statutory provisions vesting HRD with testing and HRD providing certified lists, not the actions of the employer Defendants, that limit the pool of qualified applicants.

Third, such a result is reinforced by the business-necessity defense. That defense provides an employer with a defense to a disparate impact claim if it shows that the challenged business practice is job related and consistent with business necessity. 42

U.S.C. 2000e-2(k)(1)(A)(ii). If the mandatory state testing requirement is taken as a given, then that defense would be satisfied as a matter of course, because compliance with a valid facially-neutral state mandate is a business necessity to which there is no reasonable alternative. If, instead, the defense requires an inquiry into whether the test itself is justified, then the employer - who is not the one who created the test - would be placed in an untenable position.

The Defendants were not and are not in the position to determine whether the Commonwealth-mandated HRD exams had an impermissible disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, are satisfied. The Defendants did not create or administer the HRD exams, and therefore were not privy to the data and testing methodologies underlying the exams. The Defendants were never realistically in a position to know whether the exams had an impermissible disparate impact under traditional validation methodology, much less to defend the exams in Court. Yet, that is precisely the untenable and impossible situation of the Defendants.

Further, even if adherence to state law is not required, it is consistent with business necessity that the Defendants utilize the examinations developed by HRD. Under M.G.L. c. 31, HRD is charged with the responsibility and authority to develop examinations that "fairly test the knowledge, skills and abilities which can be practically and reliably measured." *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993). M.G.L. c. 31, § 16 delegates the determination of the 'form, method and subject matter' of promotional examinations to the Administrator of the Human Resources Division. *Id.* The Administrator is the skilled

professional who is authorized to decide technical matters such as scoring and interpreting the examinations. *Id., See, Lopez, supra,* at 73-81

The Defendants should not be required to prove the content or construct validity of the Commonwealth's examinations in order to prove business necessity. The Commonwealth is not a party to this case. The Plaintiffs cannot dispute that the Defendants played no role in the creation, administration or scoring of any of the HRD-developed examinations.[4] In fact, it is not in dispute that the Commonwealth, to ensure the security and confidentiality of examination questions among other matters, does not - - at any time - - share such information with the jurisdictions that make use of its examinations. The Commonwealth shares with municipalities and the MBTA only the results relating to persons eligible for promotion within their respective units. As the Commonwealth is no longer a party to the litigation, the Defendants' ability to access such information may be limited or even denied.

Fourth, under the present posture of this case, all employers face great legal uncertainty. An employer that complies with state examination requirements could be liable for back pay and other monetary relief under Title VII if the courts later determine that the state created and administered examinations had an impermissible disparate impact. This resulting uncertainty could jeopardize not only the employer, but also the state's vital interest in regulating numerous professions for a variety of reasons, including the health and safety of medical patients, teachers, firefighters and police. That traditional

---

[4] The 2005 Boston exam should not be treated any differently than the state-wide exams placed at issue by Plaintiffs. While 50% of the questions on Boston's 2005 exam dealt with Boston Police rules and procedures, and Boston Police Captains acted as subject matter experts on the "Boston" portion of the exam, there is no dispute that the remaining 50% of the Boston exam questions were identical to questions on the state-wide exam for that year. Moreover, as with the state-wide exams administered in 2005 and other years, HRD prepared and administered the 2005 Boston exam pursuant to G.L. Ch. 31.

police power would be ill-served by subjecting employers to liability for the examinations created and administered by the states. To avoid liability under Title VII, some employers might choose not to follow important testing requirements, and thereby prompt state enforcement actions, with the public health and safety potentially suffering during the ensuing litigation. This could happen in any number of situations involving state regulated professions. Under the rationale of the present case, law firms and government legal offices could be subjected to Title VII litigation alleging that bar examinations created disparate results. Health care providers could likewise be subjected to litigation alleging disparate impact liability on the basis of medical, dental, or veterinary testing requirements. And so on. The potentially sweeping implications of holding employers liable under Title VII for any disparate impact stemming from a state-created and administered testing is another indication that Congress did not intend that result, because there is no evidence in the text or history of Title VII that Congress intended such effects.

Fifth, as discussed above, trying this case poses serious practical problems. The Defendants bear the burden of proof on the business-necessity defense, 42 U.S.C. 2000e-2(k)(1)(A)(i), but the Defendants are ill equipped to shoulder that burden with respect to HRD examinations for the reasons discussed above. Before the First Circuit dismissed the Commonwealth defendants, HRD was defending its own examinations and the non-state Defendants were, for all practical purposes, nominal parties. Now, the Defendants have to defend the HRD examinations. Yet, HRD is not required to assist the Defendants and it might choose to resist discovery into the process for creating and administering examinations to protect itself against a direct damages action under Section 1983. This

further underscores the extent to which imposing Title VII liability in the present context would be an improper end-run around state authority and would punish employers without regard to their own culpability. Moreover, Congress imposed the burden on employers to establish the business-necessity defense in large part because it contemplated that the employer would have been responsible for creating or selecting the requirements and defending that practice. *See*, H.R. Rep. No. 644, 101st Cong., 2d Sess. Pt. 2, at 14 (1990) (stating that the employer should bear the burden of proof because it "has control over the employment process, selects the practices used to make an employment decision, and is more likely to be aware of the relative costs and benefits of the practices used and of the alternative practices that were not used in making the employment decision(s)"). There is no evidence that Congress contemplated requiring an employer to bear the burden in defending examinations that it did not create and did not administer. And it strikes against basic issues of fairness and due process for the Defendants to be put in such a position.

### THE RECENT DECISION OF THE SUPREME COURT IN RICCI V. DESTEFANO CLARIFIES THAT EMPLOYERS MUST SHOW A SUBSTANTIAL BASIS IN EVIDENCE THAT A JOB-RELATED EXAMINATION HAS A DISPARATE IMPACT BEFORE SUCH TEST RESULTS MAY BE DISCARDED.

In further argument of their Motion to Dismiss, the Defendants submit that the recent landmark ruling of the Supreme Court in *Ricci v. DeStefano*, __ U.S. __, 129 S.Ct. 2658 (2009) lends support in favor of dismissing this case. The Plaintiffs' argument is nearly identical to the claim made by the City of New Haven to support its decision *not* to utilize the results of an examination for vacant positions of Lieutenant and Captain in the

New Haven Fire Department. That is that, after testing was done, the test results could be ignored because of concerns about whether there was a disparate impact. However, in that case, the City of New Haven created, administered and scored its own promotional examination, after which it was determined that the "racial adverse impact" was "significant."[5] *Ricci* at 2677. The City of New Haven decided, after considering the adverse impact of the test results, that it would not utilize the examination for promotional purposes. The Supreme Court ruled that such a decision was a "race based" decision, which was unsustainable absent a substantial basis in evidence that the employer would be liable for disparate impact discrimination.

The Plaintiffs in the instant case argue that, like the City of New Haven, the Defendants should have ignored the results of the HRD testing. And, by not rejecting the results of the examinations developed and administered by HRD based upon the "evidence" of disparate impact[6], the Defendants must be held liable under Title VII and M.G.L. c. 151B. As noted, however, any decision by the Defendants to reject the results of the examinations due to concerns whether the results had a disparate impact upon minorities would have constituted a race-based decision that can only be justified if there is a substantial basis in evidence of disparate impact discrimination. *Id* at 2677. *See, Humphries v. Pulaski County Special School District,* 508 F.3d 688, 693 (3d Cir. 2009) "We now join our sister circuits in concluding that evidence that an employer followed an

---

[5] Unlike the Defendants in the present case, the City of New Haven administered the examination in question and, therefore, it had the data and expertise to defend its examination. Moreover, the arguments regarding the standing to sue and the arguments regarding whether employers can be liable under Title VII for adhering to state law whereby the state provides testing and regulation were not an aspect of *Ricci, supra.*

[6] As noted earlier in the memorandum, the Defendants did not have access to the examination data, including the validation studies and the results of the examination statewide. Therefore, it was quite impossible for the Defendants to have any basis in evidence to suspect that the HRD examinations had an adverse impact.

affirmative action plan in taking a challenged adverse employment action may constitute direct evidence of unlawful discrimination. If the employer defends by asserting that it acted pursuant to a valid affirmative action plan, the question then becomes whether the affirmative action plan is valid under Title VII and the Equal Protection Clause."

Upon analyzing the evidence which the Supreme Court deemed insufficient to raise a material issue of fact for trial, it is clear that the evidence in *Ricci, supra*, was far more compelling than the evidence produced by the Plaintiffs in this case. This adds more support as to why it is fundamentally unfair, as well as a contravention of Title VII, to hold the Defendants liable for the examinations administered by HRD.

## THE PLAINTIFFS HAVE A REMEDY

The Defendants remind the Court that at the status conference on February 1, 2010, the Plaintiffs acknowledged that they have a lawsuit pending in the Massachusetts Suffolk Superior Court alleging state-law claims that are identical to the claims raised in this suit concerning the disparate impact of the promotional examinations administered by HRD in 2005, 2006, and 2007 against the Commonwealth Defendants, who were dismissed from this case on the ground of sovereign immunity. The Plaintiffs may have a remedy, but that remedy cannot be against the Defendants in the instant case.

## IV.   CONCLUSION

For all the reasons in the foregoing reasons, the Complaint should be dismissed with prejudice on all Counts against all of the Defendants.

Respectfully submitted,
CITY OF BOSTON,


By its attorneys,


WILLIAM F. SINNOTT
Corporation Counsel


/s/Robert P. Morris
Mary Jo Harris, B.B.O. #561484
Robert P. Morris, B.B.O. #546052
Special Assistant Corporation Counsel
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666


Dated: March 16, 2010


CITY OF METHUEN and
WILLIAM M. MANZI III,
in his capacity as MAYOR
of the CITY OF METHUEN,


By their attorney,


/s/ Peter J. McQuillan
Peter J. McQuillan
B.B.O. #340180
Office of the City Solicitor
41 Pleasant Street, Room 311
Methuen, MA 01844
(978) 983-8575
(978) 983-8981


Dated: March 16, 2010


Respectfully submitted,
CITY OF LOWELL and the APPOINTING
AUTHORITY for the CITY OF LOWELL,


By their attorneys,


/s/Brian W. Leahey
Brian W. Leahey, Assistant City Solicitor
B.B.O. #567403
City of Lowell – Law Department
373 Merrimack Street, 3rd Floor
Lowell, MA 01852-5909
Tel: 978-9704050
Fax: 978-453-1510


Dated: March 16, 2010


CITY OF WORCESTER and
MICHAEL O'BRIEN in his capacity as
MAYOR of the CITY OF WORCESTER,


By their attorneys,


/s/ Laurie W. Engdahl
Laurie W. Engdahl
B.B.O. #554635
Daniel C. Brown
B.B.O. #648038
Collins, Loughran & Peloquin, P.C.
320 Norwood Park South
Norwood, MA 02062
(781) 762-2229


Dated: March 16, 2010

CITY OF SPRINGFIELD and
MAYOR DOMENIC SARNO, JR.
in his capacity as MAYOR of the
CITY OF SPRINGFIELD,

By their Attorney,

/s/ Edward Pikula
Edward M. Pikula, Esq.,
BBO #399770
City Solicitor
City of Springfield-Law Department
36 Court Street, Room 210
Springfield, MA 01103
(413) 787-6085

Dated:  March 16, 2010

MBTA, DANIEL GRABAUSKAS in his
capacity as GENERAL MANAGER and the
MBTA BOARD of TRUSTEES,

By their Attorney,

/s/ Kevin S. McDermott
Kevin S. McDermott,
BBO #544513
Assistant General Counsel
MBTA Law Department
Ten Park Plaza, Suite 7760
Boston, MA 02116
(617) 222-4756

Dated:  March 16, 2010

CITY OF LAWRENCE and
JOHN MICHAEL SULLLIVAN
in his capacity as MAYOR of the
CITY OF LAWRENCE

By their Attorney,

/s/ James M. Bowers
James M. Bowers, Esq.,
BBO #558759
Assistant City Attorney
Room 306 – City Hall
200 Common Street
Lawrence, MA 01840
(978) 794-5800

Dated:  March 16, 2010

## CERTIFICATE OF SERVICE

I, Kevin S. McDermott, certify that on March 16, 2010, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

/s/Kevin S. McDermott
Kevin S. McDermott