# EXHIBIT G

# EXPERT REPORT

**PEDRO LOPEZ , et al. Plaintiffs**

**v.**

**CITY OF LAWRENCE, MASSACHUSETTS, et al. Defendants**

**Case No. 07-CA-11693-JLT**

**Frank J. Landy Ph.D**
**195 Hudson Street, Suite 2D**
**New York, NY 10013**

## TABLE OF CONTENTS

**EXECUTIVE SUMMARY** .................................................................................**p. 3**

**BACKGROUND AND EXPERIENCE** ..................................................**p. 5**
    Publications and Research .........................................................p. 5
    Delivered Papers and Awards....................................................p. 7
    Professional Memberships .........................................................p. 8
    Organizational Consulting .........................................................p. 8
    Recent Federal Testimony .........................................................p. 10
    Compensation ............................................................................p. 10

**INTRODUCTION**...............................................................................**p. 11**
    Overview of the Case.................................................................p. 11
    Scope of Work ...........................................................................p. 14
    Materials Reviewed ...................................................................p. 15

**OPINIONS**.........................................................................................**p. 16**

**REFERENCES**....................................................................................**p. 36**

**Appendix A:  Dr. Landy's Curriculum Vitae**
**Appendix B:  Description of I-O Psychology**
**Appendix C: Materials Received and Reviewed**
**Appendix D: Landy Testimony in Federal Cases in Past Five Years**

**EXECUTIVE SUMMARY**

1. There is clear and convincing evidence of adverse impact against minority candidates for the position of Police Sergeant who took the Human Resources Division (HRD) examinations during the years 2005, 2006, and 2007.

2. HRD has developed an assessment procedure for candidates for the position of police sergeant in the Commonwealth of Massachusetts that cannot be shown to be valid nor shown to meet a legitimate business interest for selecting effective police sergeants.  HRD presents no coherent foundation for a claim of content validity for its assessment process for the police sergeant position for the 2005, 2006, and 2007 examinations.  Rather than gathering and presenting information that might be used to inform the development of a fair and job related assessment system, HRD simply gathered and presented information in such a way as to attempt to justify an assessment system based on a goal of administrative expediency.

3. HRD failed to follow best practice guidelines found in professional and scientific authorities for test development of the 2005, 2006, and 2007 sergeant examinations.  These failures compromise the fairness and job relatedness of these examinations for police sergeant.

4. HRD does not meet the principles established by professional, scientific, and regulatory authorities for establishing cut (i.e., pass/fail) scores for the 2005, 2006 and 2007 sergeants examination.

5.  HRD has no foundation for the practice of using strict rank ordered appointment procedures for the position of sergeant for the 2005, 2006, and 2007 examinations.

6.  HRD has failed to consider alternative assessment procedures for the 2005, 2006, and 2007 sergeants examinations that would have resulted in lesser adverse impact and equal or greater job relatedness.

**BACKGROUND AND EXPERIENCE**

I have a Ph.D. in Industrial and Organizational (I-O) psychology and have been conducting and publishing research and consulting in organizational settings for 40 years. My full Curriculum Vitae (CV) appears in **Appendix A** to this report. I have presented a description of the scientific field of I-O psychology in **Appendix B** to this report. I have been actively engaged in consulting in public and private sector organizations since 1970. I have been on the faculty of various domestic and international universities for almost 40 years, including Penn State University, Stanford University, Stockholm University, St. Petersburg (Russia) University, Griffeths University (Brisbane, Australia), Cluj-Napoca University (Romania), Ljubljana University (Slovenia) and my current appointment as a Scholar-in-Residence on the Graduate faculty of the City University of New York (Baruch College: Psychology Department).

**Publications and Research**

I founded and edited the scientific journal entitled "Human Performance." This journal is currently in its 21st year of publication and publishes articles related to HR psychology and HR management. I was the Associate Editor of the "Journal of Applied Psychology" (the leading scientific journal in I-O psychology, published by the American Psychological Association) for six years and currently serve on the editorial board. This journal also publishes research and practice articles in HR psychology and HR management. I am a peer reviewer for many journals related to industrial, organizational, and general psychology, including the "Journal of Applied Psychology," "Journal of

Occupational Psychology," "The American Psychologist," "The Psychological Bulletin," "Human Performance" and others listed on my CV in **Appendix A**.  Literature related to the issues under consideration in this litigation appears in all of these scientific journals.

I currently have, or in the past have had, appointments to several federal grant and contract review panels.  At various points in my career, I have provided reports on employment discrimination at the request of the National Academy of Sciences, the United States Department of Transportation, United States Department of State, United States Equal Employment Opportunity Commission, United States Department of Labor, United States Department of Justice (in both police and fire litigation), the Office of Federal Contract Compliance Programs, United States Customs Service, United States Secret Service, the Drug Enforcement Agency, and the Central Intelligence Agency.  I was commissioned by the United States Department of Labor to undertake a study of possible race bias in the performance evaluations of federal employees in 12,000 different job titles over a 20 year period.

I have written textbooks (Landy & Trumbo, 1976, 1980; Landy, 1985, 1989; 2005; Landy & Conte, 2004, 2007; in press), with chapters on job analysis, discrimination, selection and promotion, and statistics as well as chapters in edited books dealing with these topics.  I have published extensively in peer-reviewed scientific journals on topics related to promotion, work assignments, performance evaluation, training, and employment disputes.  I have recently completed a scholarly text entitled "Employment Discrimination Litigation" (Landy, 2005).  I have recently completed a chapter in a forthcoming text by Farr and Tippens (in press) that deals with issues related to case law and selection/promotion decisions.  Additionally, I have recently authored

two entries in the *Encyclopedia of Industrial and Organizational Psychology* (Rogelberg, in press) on the Equal Pay Act and the Americans with Disabilities Act.  The Society of Industrial and Organizational Psychology (SIOP), the major professional and scientific organization for I-O psychologists, commissioned my text on Employment Discrimination (Landy, 2005), to represent an authoritative survey of issues, representative case law, and professional and scientific practice related to employment discrimination and fairness.

In addition to my specialized background in I-O psychology and HR management, I have conducted funded research, written books, book chapters, and articles, taught undergraduate and graduate courses, and provided expert testimony related to topics dealing with the organizational and HR policies and work behavior as well as human information processing and decision making, worker motivation, and cognitive psychology.  My funded research on police performance began in 1970 with a research grant for developing performance evaluation systems for law enforcement agencies.

**Delivered Papers and Awards**

I have delivered over 600 scientific presentations in conference and non-conference settings.  I was on the faculty of The Pennsylvania State University for over 25 years, retiring at the rank of Full Professor, and Director of the Center for Applied Behavioral Sciences.  I remain on the faculty of the Colorado State University as well as Griffiths University in Brisbane, Australia.  I have received two awards for research from SIOP.  In 1980, I (and my colleagues) received the Cattell Award for Excellence in

research design.  In 1998, I (and my colleagues) received the M. Scott Myers Award for

Applied Research in the Workplace, an award given in recognition of a project or product

representing an outstanding example of the practice of I-O psychology in the workplace.

In 2004, I was awarded the Professional Contributions Award by SIOP for developing,

refining, and implementing practices, procedures, and methods that have had a major

impact on both people in organizational settings and the profession of I-O psychology.


**Professional Memberships**

I am a Fellow of Divisions 5 (Measurement), 14 (Industrial and Organizational

Psychology), 21 (Engineering), 26 (History), and 47 (Sports and Exercise Psychology),

of the American Psychological Association.  Additionally, I am a past president of SIOP.

In that capacity, I provided input to legislators and regulators on the Civil Rights Act of

1991, the Americans with Disabilities Act and the Age Discrimination in Employment

Act (ADEA).  In 1993, research which I directed was used as a foundation for changing

the exemptions clauses of the ADEA with respect to public safety employees.  I am

frequently invited by SIOP to conduct workshops on employment discrimination.


**Organizational Consulting**

I have worked as a consultant to private and public sector organizations since

1970.  A substantial portion of my consulting activities have related to selection and

promotion of police officers.  In collaboration with my colleague Rick Jacobs, I founded

the consulting firm of Landy, Jacobs and Associates, Inc. (LJA), an organizational

consulting firm and remained President of that firm until 1998, when LJA merged with

SHL Group plc (Saville & Holdsworth, Ltd).  In my consulting career, I have assisted

hundreds of employers and organizations on a variety of HR topics.  In addition to private

consulting, I was the Director of the Center for Applied Behavioral Research at Penn

State University.  In that capacity I directed many HR related projects for both public and

private sector employers.  As part of a major research grant funded by the EEOC and

Department of Labor, I conducted job analyses of all levels of police supervision in over

200 municipal, county and state police agencies.

In my consulting career, I have had extensive experience in developing entry level

and promotional examination for public safety departments.  Over a period of 30+ years,

I have gathered data in well over 300 police agencies – including state, county, and

municipal agencies.  I have developed promotional examinations for several dozen police

departments and remain active in that endeavor today.  My most recent project is the

design of promotional examinations for upper level sworn police positions for the Los

Angeles County Sheriff's Department.  This work was undertaken pursuant to a long-

standing court order that addresses discrimination in promotions.  I was chosen by the

plaintiffs, and approved by the defendants and the court in that action (Bouman v. Baca).

I am currently the Chief Executive Officer of the Landy Litigation Support Group

and, in that capacity, work with public and private sector employers domestically and

internationally on issues related to HR practice.

In my various employment roles, I have testified in employment discrimination

lawsuits in federal and state courts, including Massachusetts, and have been qualified as

an expert in state and  federal court on issues related to age, race, sex, and disability

discrimination, as well as on issues relating to statistics,  selection and promotion, and job

analysis.  As an expert witness, I have worked with lawyers representing both plaintiffs

and defendants.  Over the years, I have been a frequent expert witness in cases involving

discrimination claims against police departments.

**Recent Federal Testimony**

In **Appendix D** to this report, I have listed all Federal cases in which I have

testified in the last five years.

**Compensation**

I am being compensated at a rate of $550 per hour for my work in this case.

INTRODUCTION

**Overview of the case**

Plaintiffs allege that the test developed by the HRD of the Commonwealth of Massachusetts, and used by various cities in the Commonwealth to make appointments to the position of Police Sergeant, is unfair to minority police officers who seek promotion to such positions. I agree.

The statistical analysis of Dr. Joel Wiesen presents a clear picture of the unremitting adverse effect of the HRD Sergeants promotional examination on minority applicants. This adverse effect is seen in both the numbers of minority candidates who pass the examination and secure a position on a promotion list, as well as the numbers of minority candidates who are ever selected from that list for promotion. It is clear from Dr. Wiesen's analysis that the practice of appointing candidates in a strict rank-ordered manner creates an almost insurmountable obstacle for minority candidates who actually make an eligibility list. A side effect of the strict rank-order appointment process is the fact that for those few minority candidates who do get a promotion, they wait longer for these disproportionately few promotions. This secondary effect is axiomatic when an agency appoints from an eligible list starting with the highest scoring candidate and minority candidates fall disproportionately lower on that list because of lower test scores. Thus, the practice of strict ran-order appointment is clearly a root cause for the observed adverse impact in promotions.

Having established adverse impact, the focus shifts to the analysis of various practices that might have led to that impact. In this case, that practice is the administration of a rote memory knowledge examination for the Sergeant position.

Unless the practice in question can be shown to be fair and job related, the noted adverse impact is considered illegal. It is my opinion that there is insufficient evidence of the validity of the examination process developed by HRD and utilized by Commonwealth cities for the 2005, 2006, and 2007 examinations. It is further my opinion that HRD has maintained an assessment system that has not been seriously examined and/or modified in any palpable way for almost 20 years. Not only has HRD failed to keep abreast of even minimal practices in promotional testing for law enforcement ranks, but also over the years they have abandoned even the most rudimentary of checks and balances on their written examinations.

The problem with the HRD process is not that they use a knowledge examination. The problem is that they use a primitive and narrow form of a knowledge examination without any clear justification other than expediency. Further, they give no consideration to the assessment of other knowledge, skills, abilities or personal characteristics (KSAPs) which are equally, if not more important in the prediction of police sergeant success.

Knowledge examinations have been used for many decades as at least one component in an assessment program for police supervisory positions. This makes sense since police supervisors are expected to assist with decisions and provide guidance to the police officers who are their direct reports. This knowledge includes not only general knowledge (such as knowledge of principles of management, leadership, and human relations), but also specific technical knowledge including knowledge of state criminal code, traffic code, and departmental procedures. Knowledge can and should be displayed in several forms. Some knowledge must be displayed actively and in real time, requiring that the knowledge be stored in and accessed from memory. An example would be

departmental procedures for permitting or calling off a high speed chase. Other knowledge sources are displayed in a passive form. Here, the incumbent needs to know where to *find* the critical piece of knowledge rather than memorize it. Similarly, some knowledge simply represents the necessary but not sufficient condition for successful performance. The sufficient condition for the effectiveness of the knowledge is the *application* of that knowledge. A knowledge test should include an assessment of both active and passive knowledge, as well as the application of knowledge rather than the simple word for word regurgitation of that knowledge.

Knowledge is only one predictor of supervisory success. Knowledge must be accompanied by skills, abilities and personal characteristics to result in successful police Sergeant performance. Specific skills and abilities include oral communication, reasoning, persuasion and negotiation skills. Personal characteristics include the personality dimensions of emotional stability, conscientiousness, and personal and professional integrity. Thus, a fair and job-related assessment of candidates for the position of police supervisor would include a number of elements including different types of knowledge, abilities, skills and personal characteristics. The HRD process includes none of these additional elements, in spite of the fact that not only have other similar agencies been assessing these elements for Sergeant's positions for decades, but also in spite of the fact that HRD's own documents point to the importance of KSAPs beyond rote memory for generic supervisory principles.

The method chosen by HRD to assess candidates for the position of police Sergeant has demonstrated adverse impact not only in the Commonwealth of Massachusetts, but in many similar agencies over the past several decades. HRD is or

should be aware of that pattern of illegal discrimination from relevant case law and professional publications.  The fact that a pattern of adverse impact can be seen in the HRD results in the sergeants tests for 2005, 2006, and 2007 is not remarkable in and of itself.  What is remarkable is that the pattern is *still* being seen in 2007, many years after alternatives methods for sergeant candidate assessment have been demonstrated to reduce adverse impact and increase job relatedness.

In the report which follows, I will outline my concerns about the assessment process chosen by HRD for assisting Commonwealth cities in the selection of police supervisors.  With respect to the opinions I will present in the pages of this report, I hold those opinions to a reasonable degree of confidence and certitude within the limits of my professional and scientific areas of expertise.


**Scope of Work**

I have been asked to consider issues related to three topics: 1) the demonstration of adverse impact in the current case, 2) the validity or job relatedness of the procedure adopted by HRD and used to make Sergeant promotions in the years 2005, 2006, and 2007, and 3) common and acceptable alternative procedures (i.e., alternative to a single closed book knowledge test and rank ordered appointments) for generating eligible lists the position of sergeant by HRD.

I have also been asked to assist in making technical issues clearer to parties to the case and the finder of fact through reports, discussions, and sworn testimony, including the preparation of reports such as the current one.  Further, it is my role to help attorneys

for Plaintiffs understand any technical issues in reports submitted by experts for the

Defendants.

Since discovery is not complete at the time that I am writing this report, I reserve

the right to supplement or amend this report in a subsequent submission.

**Materials Reviewed in Preparation of this Report**

I have identified the materials I reviewed in the preparation of this report in

**Appendix C** to this report.

**OPINIONS**

1.  **There is clear and convincing evidence of adverse impact against minority candidates for the position of police sergeant who took the HRD examinations during the years 2005, 2006, and 2007.**

The statistical analysis of Dr. Joel Wiesen, as presented in his report of October 3, 2008, clearly demonstrates the substantial adverse impact of the HRD sergeant promotional examination with respect to minority candidates for the years 2005 through 2007. Dr. Wiesen is a well trained and experienced I-O psychologist. He has had a long history of analyzing data sets for the presence of adverse impact. Further, his professional background evidences a clear foundation in understanding the promotional processes contemplated by HRD in the development and use of the sergeants' examination during the years 2005-2007. In fact, Dr. Wiesen worked for HRD as an I-O psychologist for many years.

I have carefully examined Dr. Wiesen's analyses of adverse impact as contained in his report of October 3, 2008. Dr. Wiesen has been cautious and complete in his analyses, conducting tests under various scenarios related to the inclusion or exclusion of certain data sets (e.g., 2003 and 2004), and certain examinations (e.g., Boston tests, test for 2007). This provides the reader with an opportunity to review a broader set of results and analyses than might normally be the case. In my professional opinion, the data which Dr. Wiesen has analyzed for the periods of 2003 and 2004 are useful and relevant for identifying patterns of adverse impact against minority test takers. I believe this to be

true because the tests in question flow from an identical model and set of procedures and are identical to the tests under consideration in this litigation in all important psychometric aspects. The fact that the questions may have been different, or that the study list may have been modified is trivial. Each of these tests was a closed book job knowledge test with 80 items for police sergeant applicants. Additionally, the passing score was identically set at 70 on all tests, and the appointments from the resulting eligibility list were made in strict rank-order fashion on all tests. Thus, from a psychometric perspective, it is appropriate to aggregate these tests and examine the collection of tests from 2003 to 2007 for purposes of identifying any patterns of adverse impact. The effect of aggregating these tests is to increase the reliability of the analyses thus providing larger sample sizes and greater confidence in interpreting the results of these analyses. Dr. Wiesen has shown that adverse impact exists not only with respect to an examination of majority and minority candidates who pass and fail the test (at the cut score of 70), but also with respect to which passing candidates actually receive a promotion. It is noteworthy that adverse impact is seen in both an analysis of pass/fail scores, as well as in actual promotions. Further, it is noteworthy that the pattern of results shows both statistical impact (the Chi Square and Stouffer tests) as well as practical impact (violations of the 80% rule). As Dr. Wiesen correctly points out, the 2007 test is still young in its application so one must defer a final and the most important analysis of adverse impact in *promotions* from the 2007 test administration to a later date. Nevertheless, the continued use of strict rank ordered promotions from the 2007 list virtually guarantees that there will be adverse impact in promotions from the 2007 examination as there has been in earlier examinations.

17

Finally, Dr. Wiesen has confirmed that there are statistically significant differences between the average test scores of majority and minority test takers as well as the mean or average ranks of minority and majority candidates on eligibility lists. This mean rank difference is important because it shows clearly that the strict rank-order appointment process disadvantages minority candidates.

2. **HRD has developed an assessment procedure for candidates for the position of police sergeant in the Commonwealth of Massachusetts that cannot be shown to be valid nor shown to meet a legitimate business interest for selecting effective police sergeants. HRD presents no coherent foundation for a claim of content validity for its assessment process for the police sergeant position for the 2005, 2006, and 2007 examinations. Rather than gathering and presenting information that might be used to inform the development of a fair and job related assessment system, HRD simply gathered and presented information in such a way as to attempt to justify an assessment system based on a goal of administrative expediency.**

Through the depositions of Sally McNeely, Guy Paris, and Vivian Lee, exhibits to those depositions, and documents provided through discovery, HRD argues that they validated a knowledge test for police sergeants circa 1990-1991 and that this validation can be invoked to justify similar assessments for every administration of knowledge tests since then.

It is generally accepted that the value of a job analysis may extend for 5-7 years.  No reputable I-O psychologist would argue that the life of a job analysis would extend to 15 years or more, as HRD appears to claim in the current litigation.  HRD appears to maintain that some data gathered in 1995-1996 is relevant to the tests administered in 2005, 2006 and 2007, but there is little documentation of the integrity of that earlier effort. HRD further appears to claim that a job analysis conducted by Morris and McDaniel for the City of Boston in 2000 can also be used to support the content validity of the 2005-2007 examinations.

With respect to both the efforts of 1995-1996, and the Morris and McDaniel job analysis of 2000,  HRD confuses an examination of common tasks and potential knowledge, skills and abilities with a content validity study.  Further, they seem unaware of the fact that the original job analysis of 1991, as well as all subsequent job analyses for the position of police sergeant are fatally flawed in several ways.  The fatal flaws are:

A)  Failure to distinguish between knowledge that must be memorized to be of value and knowledge that is passive, i.e., the incumbent simply needs to know where to find the relevant technical information but does not need to commit that technical information to memory.  Ironically, even HRD's own documents (See McNeely Deposition Exhibit 3, Bates #00452, KSAP Profile #10) demonstrate that the task of looking up information was part of the sergeant's job.  Interestingly, only 1 of 181 abilities listed in the 1991 job analysis KSAP sergeant profile (McNeely deposition exhibit #3,  Bates # 00458, ability #144) addresses memory, "Ability to remember information such as words, numbers, pictures, and procedures."

This is a fatal flaw because the assumption that all knowledge sources must be memorized drove the testing method for police sergeants – a closed book test on generic text books.  SMEs (in 1991, 1995, 2000, or even as recently as the involvement of EB Jacobs in the development of the 2007 examination) were never asked to distinguish between knowledge sources that were to be memorized versus knowledge sources that could be used as passive sources for information.  This has been an important distinction driving the development and administration of knowledge tests for decades.  In my experience in developing fair and job related police promotional examinations this is a key issue.  I invariably find that critical knowledge sources can be used in a passive (i.e., look up information) manner rather than requiring memorization.  HRD simply ignored this issue by assigning general textbooks on topics such as supervisory techniques.

B) Failure to include in the assessment process critically important knowledge sources in proportion to the extensiveness of their use in the day to day performance of a police sergeant's duties and to assess them in the manner in which they are used. It is clear from the examination of the tasks that HRD asserts comprise the work of a police sergeant (See McNeely deposition Exhibit 3) that there are numerous knowledge sources that a police sergeant depends on for successful performance. Examples of these knowledge sources include criminal and civil codes, traffic codes, and departmental procedures.  The statewide sergeants examinations for 2005, 2006 and 2007 do not assess any of these important knowledge sources in a way in which they are actually used.  Instead of including relevant knowledge sources and manner

of use in the study and assessment list, HRD chose to emphasize generic and managerial knowledge included in textbooks and measure technical knowledges using a closed book format..

C) Failure to include any application items on the examinations which would have provided information about skills and abilities that were identified in the various documents produced by HRD (see for example the KSAPs for sergeant presented in the sergeant KSAP profile as Exhibit 3 to the McNeely deposition). These abilities include obvious areas such as reasoning (inductive and deductive) information ordering, prioritization, etc. Police sergeants are not expected to simply be repositories for information, they are expected to be able to apply and interpret that information both in their role as a supervisor and in the decisions that are delegated to them. Further, even though their own documents identify important skills such as communication, negotiation and persuasion and more general interpersonal skills, these skills are also ignored in the HRD assessment procedure.

In choosing to assess only memorized knowledge in verbatim form from generic textbooks, HRD ignored the role of many other, equally or more important, knowledge sources (such as departmental procedures, criminal code, traffic code), and more particularly the manner in which these knowledge sources were used, as well as abilities, and skills that would have been appropriate for assessment. This would have included open book testing for certain knowledge sources. Thus, not only did HRD ignore the manner in which most knowledge sources are used, but they also ignored many knowledge sources that are critical to successful completion of the

21

tasks of a police sergeant. The task and KSAP analyses which have been produced through discovery, beginning in 1990, show the clear importance of such knowledge sources in the day to day functioning of police sergeants. Additionally, the decision to ignore the application of knowledge (whether active or passive) also ignored job analysis information pointing to the importance of application of knowledge (and the underlying abilities related to reasoning).

An equally problematic void in HRD's argument for content validity of the police sergeant examinations is the absence of any competent linkage study and related data bases (Guion, 1998). In its simplest form, a content validity argument for a knowledge test would consist of the following elements;

    a. a complete and up to date task analysis

    b. a complete and up to date KSAP analysis

    c. a linkage study showing the specific relationship between critical tasks or duty areas and KSAPs, including the relative importance of the KSAPs

    d. a linkage study showing the specific relationship between important KSAPs and particular knowledge or study sources

    e. a study demonstrating which knowledge sources must be memorized (closed book) and which ones simply need to be recognized (open book testing)

    f. a test plan that identifies important knowledge sources by proportion and guides test construction with respect to the number of items that will be used to represent a particular knowledge source, and

     g.   an item validity study that shows that particular proposed test items are

         adequate representations of the knowledge source that is the target of the

         knowledge test.

Depositions and related documents in the current case show that not a single one of these linkage studies or analyses can be produced for the tests in question. Instead, HRD refers back to analyses and linkage studies (themselves flawed by the failure to consider active vs passive knowledge or application of knowledge) conducted many years earlier, or more recent partial analyses that demonstrate the same fatal flaws as the earlier analyses. HRD points to primitive data gathering techniques as further support for their claim of content validity. These primitive techniques include asking a small number of SMEs (as few as two) to review proposed test items and assess "difficulty" (but not validity) of those items. Similarly, HRD asks Subject Matter Experts (SME's) to review a study list and make recommendations for substitutions if warranted. The first SME judgment of item difficulty is largely useless and the second SME judgment of textbooks could only have meaning when supported by a complete and up to date job analysis that identifies knowledge domains. It is clear that HRD has done little to identify the relative importance of knowledge domains or to construct open and closed book test elements based on that relative importance data for well over a decade. At the end of the day, it appears that HRD saw as its single most important task, the publication of a study list that could be tested in a closed book format. It appears that HRDs only concern was publishing a test with the minimum of effort and administrative cost. Instead, HRD should have considered its

mission to develop a fair and job related assessment procedure using a job analysis and linkage framework as the foundation, even though the process might have been more time consuming and expensive.

In addition to the failure to provide a reasonable foundation for demonstrating content validity, HRD has failed to develop a promotional procedure that adequately serves their client departments or the citizens of the Commonwealth of Massachusetts. In other words, HRD has failed to demonstrate that the procedure they have developed meets the legitimate business need that sets the stage for assessment in the first place. The business need is to provide Massachusetts cities and towns with a list of eligible sergeant candidates who will be most likely to meet the performance demands of the position of sergeant. By concentrating on testing only active knowledge from largely generic sources, HRD provides no information to cities and town about *abilities* of candidates (such as reasoning) or the likelihood that candidates would be able to apply even that narrow slice of knowledge. Further, HRD provides Commonwealth cities and towns no information related to skills (e.g., communication, persuasion) or personality characteristics (e.g., tolerance for stress, emotional stability, conscientiousness, integrity) that job analyses reveal as centrally important in police sergeant performance. Thus, not only has HRD provided an inadequate foundation regarding requisite knowledge for cities and towns to choose their police sergeants, but HRD has also failed to provide important information to cities and town regarding other KSAPs (i.e., reasoning, communication skills, integrity, conscientiousness) that are as if not more important than the memorization of textbooks. In most job analyses of public safety positions, memory appears as an

24

important ability for recognizing names, faces, directions, and limited emergency procedures – not for the application of more general procedures. Even when memory does appear, it is only one, and not the most important one, of a number of different relevant abilities. Cities and towns are not well supported by HRD in their search for effective police sergeants. Further, to the extent that cities and towns expect that HRD will help them choose their sergeants in a fair and job related manner, their faith is misplaced. HRD does not meet the business needs of its client cities and towns and has produced an assessment procedure that has adverse impact against minority police officers.

It is my opinion that in the development of the tests used in 2005, 2006, and 2007 for the selection of police sergeants, HRD has simply chosen the path of least resistance, investing minimal time and money in the process. During the years 2005, 2006, and 2007, HRD engaged in test development and administration procedures that had been abandoned by most similar agencies decades earlier. Administrative expediency or cost minimization is not a reasonable foundation for fair and job related test development.

**3. HRD failed to follow best practice guidelines found in professional and scientific authorities for test development of the 2005, 2006, and 2007 sergeant examinations. These failures compromise the fairness and job relatedness of these examinations for police sergeant.**

Techniques for the development of fair and job related tests have been known for many decades (Guion, 1998). Primary among them is a complete and up to date job analysis accompanied by a linkage analysis. As demonstrated above, the job analysis information on which HRD depends is incomplete and out of date. Similarly, HRD has simply abandoned the most important parts of the linkage analysis necessary for the demonstration of content validity. But even assuming an adequate job analysis and linkage data base to support test development, there are many other intermediary procedures that should be taken to create a fair and job related test of any variety (whether knowledge or ability, whether open or closed book). These steps include the following;

    a.  training of item writers

    b.  development of test plan to guide item writers and test assemblers

    c.  review of items and a test in aggregate for reading level

    d.  review of items and a test in aggregate for cultural bias, and

    e.  systematic review of items from an item pool for past difficulty level and possible adverse impact.

Once again, the record (largely through the depositions of Guy Pars, Sally McNeely, and Vivian Lee) demonstrates that many, if not most, of these practices were not followed for the 2005 and 2006 examinations, and only partially followed (through the use of EB Jacobs as a consultant) for the 2007 examination. Thus, for the 2005 and 2006 examinations, none of the five steps listed above were followed. For the 2007 examination, it appears that step "a" was partially carried out (with EB

26

Jacobs re-writing some items) as were possibly steps "c" and "d" (although I have seen no documentation of exactly what EB Jacobs did other than in the deposition testimony cited above). EB Jacobs seems not to have trained any item writers for HRD (instead using their own item bank for providing certain questions), nor did EB Jacobs develop a test plan or review items from the HRD item pool for past psychometric characteristics such as difficulty level or adverse impact. EB Jacobs simply created test items for sources that HRD identified, and were merely mechanics in the test development process. Granted, EB Jacobs likely wrote better test items than HRD staff would have, but they had no role in identifying content. Thus, even the 2007 examination appears to fall short of reasonable professional standards for test development.

The low level of examination quality for the 2007 examination can also be inferred from the large number of "exceptions" (i.e., answers keyed so that there was more than one "correct" answer) on the final answer key. Of the 80 questions on that examination, 18 (or 22.5%) were designated as items for which there was more than one acceptable or "correct" answer. Even when a test has not been pre-tested to identify problem items, this is an extra-ordinarily high number and is a clear signal that the test has been poorly constructed. In my general practice with police promotion examinations, fewer than 10% of non-pre-tested items will require answer key modifications. In an 80 item test, this would be 8 or fewer items. The 18 questions of the 2007 test represents over twice as many re-keyed items as one would expect. To me, this is a clear indicator of poor item quality. Even more telling is the fact that EB Jacobs was involved in developing at least some of the items on that test.

Had they not been involved, it is likely that the poor item ratio would have been even higher. Nevertheless, there is little solace to be taken from the fact at 77.5% of your test items did not need to be re-keyed. It is my opinion that the test items in 2005, 2006, and 2007 were of poor quality as result of the absence of typical and reasonable quality control standards for test development. These poor quality items, in turn, produced a score range that was more the result of poor and sloppy items than underlying differences on a critical KSAP.

4. **HRD does not meet the principles established by professional, scientific, and regulatory authorities for establishing cut (i.e., pass/fail) scores for the 2005, 2006 and 2007 sergeants examination.**

A key issue in the current litigation is the establishment of a cut or passing score for the sergeant's examination. HRD has adopted a passing score of 70% for the examinations in question. If that score has been set too high, then candidates who may have been effective police sergeants have been denied that opportunity (as have the cities and towns been denied the potential supervisory services of a candidate who fails or falls below the cut or pass point). If that score has been set too low, then unprepared candidates are possibly being placed in supervisory positions thus endangering both fellow officers and the citizens of the Commonwealth.

Dr. Wiesen's statistical analyses have clearly shown that minority candidates fail to meet the cut point of 70% at a rate that is disproportionately higher than the failure rate of their white counterparts. For those minority candidates who fail, there is no

opportunity to become a police sergeant on the list in question. The question then becomes whether or not the passing score was set appropriately. There is voluminous guidance on how to set cut scores (Kehoe & Olson, 2005; Siskin & Trippi, 2005). This guidance provides many acceptable methods including both statistical and non-statistical techniques. Nevertheless, various guidelines are *very clear* with respect to how pass scores should *not* be set. They should not be arbitrary or simple scores of convenience. Yet an examination of the HRD record (through depositions, exhibits, and discovery documents) demonstrates that the pass point of 70% has no foundation – statistical or otherwise – except that it has always been set at 70%. There is simply no legitimate rationale presented by HRD anywhere for the choice of this pass point. Although scientific and practical guidance cautions that one cannot "validate" a pass point (Kehoe & Olson, 2005), this same guidance does require that a rationale be established between the pass point and the expectation of acceptable performance (e.g., The Uniform Guidelines on Employment Selection Procedures; Landy & Conte 2004;2007; in press). In the current case, this would require HRD to provide some foundation for the (implied) assertion that individuals who score less than 70% on the promotion examination are likely to fall short of acceptable performance as police sergeants. HRD has provided no such foundation. On the contrary, the testimony of HRD representatives shows that the 70% passing score for the 2005-2007 examinations was chosen either because a city police chief asked for that to be the passing score, or because it simply had always been the passing score and was assigned by default. Neither of these reasons meets even the minimal standards for setting a fair and job related cut or passing score.

5. **HRD has no foundation for the practice of using strict rank ordered appointment procedures for the position of sergeant for the 2005, 2006, and 2007 examinations.**

In addition to the issue of which candidates actually get on an eligible list (i.e., the issue of the pass score), a second issue relates to which candidates from those on the eligible list are actually promoted. As was the case with the pass/fail analysis, Dr. Wiesen has shown clearly that minority candidates fall lower on the eligible list and this results in evidence of statistically significant adverse impact on promotions for the 2005 and 2006 tests. The 2007 test is still too new to determine if there will be adverse impact on actual promotions, but the likelihood is high that adverse impact will be shown for 2007 promotions as well since the 2007 examination is structurally and procedurally similar to its predecessors in 2005 and 2006.

The deleterious effect of being lower on the eligibility list is a result of the decision by HRD to use a modified strict rank-ordered appointment process for candidates on the eligible list. The modification is the use of the 2N +1 rule as described in Dr. Wiesen's report. The 2N + 1 rule only trivially affects the damage done to minority candidates by the strict rank-ordered appointment process adopted by HRD.

In order to effectively use a strict-rank ordered appointment process supported by a claim of content-related validity, an appointing authority must show three things; 1) that the test in question is reliable, 2) that the test in question creates a reasonable

spread in scores, and 3) that the test in question has been developed based on a professionally acceptable job analysis. This guidance is provided by the Guardian's case (Guardians of New York v. Civil Service Commission, 630 F2d 79 – 2d Circuit, 1980). It is not sufficient to satisfy only or two of these requirements. All three requirements must be met in order to use the test scores in a strict rank-ordered fashion.

The reliability issue is unresolved in the 2005-2007 tests since HRD has not done the appropriate reliability analyses. Nevertheless, the data that they do present suggest that the exam does not meet the reliability standards that are to be expected for a knowledge test to serve as a basis for strict rank-ordered appointment. The second requirement – a reasonable spread among scores – would seem to have been met, although the requirement contemplates that the spread is as a result of true differences in the underlying KSAP and because of the demonstrated problems in the test items themselves, it is unlikely that the spread is as a result of true score variance as opposed to error score variance. Finally, as I have shown above, the tests themselves – the instruments that generated the score distribution – are not based on an acceptable job analysis.

Thus, it can be seen that HRD provides no foundation for using the test scores in question in a strict rank-ordered manner - the reliability of the scores is questionable, it is unlikely that the score spread mirrors a spread in underlying knowledge, and there is no acceptable job analysis. This is compounded by the fact that the strict rank-ordered appointment process is a contributing factor (along with the content and

the process of the test itself) to the observed adverse impact against minority eligible candidates for the position of police sergeant.

6. **HRD has failed to consider alternative assessment procedures for the 2005, 2006, and 2007 sergeants examinations that would have resulted in lesser adverse impact and equal or greater job relatedness.**

HRD uses an outmoded and discredited method for creating eligibility lists for the position of police sergeant. This method is the establishment of an eligible list based on a closed book test of dubious psychometric integrity built on generic textbooks requiring verbatim memorization of material. This is particularly troubling since the array of alternative mechanisms that would have reduced adverse impact while enhancing job relatedness is a broad one. Below, I will list several alternatives that were either ignored or rejected by HRD.

a. **An open book test on relevant knowledge sources.** This test would include various generic technical documents and/or state wide sources such as criminal code. Textbooks might play a role in this testing as well but a job analysis would determine the relevance of these texts, their proportional representation on the tests, and whether sections would be open or closed book. Standardized paper and pencil closed book tests of declarative knowledge are more likely to lead to adverse impact than open book tests on the same material.

b. **A test plan deriving from an up to date and comprehensive job analysis.** Currently, HRD uses no clear test plan for developing an annual test. This is

because there is no up to date and comprehensive job analysis. With such an

analysis, HRD could create a clear map for developing an assessment procedure

that had the correct balance of knowledge, skills, and abilities (Guion, 1998).

These abilities would include reasoning and problem solving; the skills could

include communication and persuasion.

c. **The use of structured interviews.** Structured interviews would include a

standard pool of interview questions in job relevant areas. The answers would

be scored using a behaviorally anchored scoring scheme. Structured interviews

have been shown to meet or exceed the levels of validity that characterize

standardized tests (Landy & Conte; 2004; 2007; In press). Interviews have also

been shown to reduce adverse impact against minority candidates.

d. **The use of a personality test geared toward those characteristics most

desirable in a police sergeant.** A comprehensive job analysis for the position

of police sergeant would most certainly show the importance of various

personality characteristics for the successful completion of many tasks. These

characteristics would include dimensions such as conscientiousness and

emotional stability. There is wide availability of such tests with appropriate

norms for use in sergeant promotion scenarios. Personality measures have been

shown to be widely job related and to be associated with little or no adverse

impact (Landy & Conte, 2004; 2007; In press).

e. **A work sample test of police sergeant tasks.** Professional and scientific

literature supports both the validity and the reduced adverse impact of work

sample tests (Guion, 1998). These tests are patterned after tasks performed by

an incumbent.  In the case of police sergeant, such tasks might include personnel and/or equipment assignments, technical or interpersonal problem solving, training preparation, or a performance evaluation of a hypothetical subordinate.

f. **A role play exercise using trained role players to simulate the behavior of subordinates.**  This type of assessment is similar to a structured interview in that the candidate faces a panel of evaluators.  But instead of questions that are posed to the candidate, role players present problems to be solved.  The roles played might be irate citizen, police lieutenant, fellow police sergeant, or subordinate officer.  The responses of the candidate would be scored in using behaviorally anchored scales in much the same way as structured interview responses are scored.

g. **An assessment center employing various problem solving and supervisory exercises (e.g., presentation, counseling, the completion of an in-basket).**  An assessment center would include a wide variety of assessment measures (interviews, role play, presentations, completion of in-basket exercises) and a panel of assessors.  Interestingly, HRD presents assessment centers as an "add on" possibility to Commonwealth cities and towns but simply suggests that the municipality engage an outside consultant to develop and administer the assessment center.  HRD makes no similar suggestion regarding any other of the alternatives listed in this section.

h. **The use of score bands rather than strict rank ordered appointment.**  Score banding using a statistical equation is a well known and often used alternative to

strict rank ordered appointment (Cascio, Outtz, Zedeck, & Goldstein, 1991).

Banding does not reduce the validity of a procedure (assuming that the

underlying score dimension can be shown to be job related) and reduces adverse

impact.

i. **Situational judgment tests built on typical police sergeant scenarios**.

Situational judgment tests are the equivalent of paper and pencil work sample

items. The candidate is provided with a stem (or situation) and asked to choose

the best (and occasionally identify the worst) of the alternative actions presented

as answers. These tests are standardized and have been shown to have

substantial job relatedness and to reduce adverse impact (Schmitt & Chan,

2008).


It should be clear from an examination of these alternatives, that many of them

require the expenditure of time and money by HRD for implementation. Nevertheless, the

fact that a change will take time and cost money is not a sufficient defense for continuing

to administer an assessment procedure that creates adverse impact and cannot be shown

to be job related and to meet a business necessity.


_____

**Frank J. Landy, Ph.D.**          **October 30, 2008**          **New York City, NY**

# REFERENCES

Cascio, W. F., Outtz, J., Zedeck, S., & Goldstein, I. L. (1991). The implications of six methods of score use in personnel selection. *Human Performance, 4(4),* 233-264.

Guion, R. M. (1998). *Assessment, measurement and prediction for personnel decisions.* Mahwah, NJ: Erlbaum.

Kehoe, J. F. & Olson, A. (2005). Cut scores and employment discrimination litigation. In F. J. Landy (Ed.), *Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives* (pp. 410-449). San Francisco: Jossey-Bass.

Schmitt, N. & Chan, D. (2008). Situational judgment tests: Methods or contruct? In J. Weekly & R. E. Ployhart (Eds.), *Situational Judgment Tests*. Mahweh, NJ: Erlbaum.

Siskin, B. R. & Trippi, J. (2005). Statistical issues in litigation. In F. J. Landy (Ed.), *Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives* (pp. 410-449). San Francisco: Jossey-Bass.

**APPENDIX A: CV FOR FRANK J. LANDY**

# Curriculum Vitae

# FRANK J. LANDY, PH.D.

## Chief Executive Officer
## Landy Litigation Support Group

## Address

LANDY LITIGATION SUPPORT GROUP
195 Hudson St.
2D
New York, NY   10013
Phone: (970) 372-2129
E-mail: frank.landy@landylsg.com

## Education

| | | | |
|---|---|---|---|
| Villanova University | Psychology | 1960-1964 | B.A. |
| Bowling Green State University | Psychology | 1964-1966 | M.A. |
| Bowling Green State University | Psychology | 1966-1969 | Ph.D. |

## Employment History

| | |
|---|---|
| **1966-1969** | Associate Investigator, U.S. Department of Labor Grant |
| **1967-1968** | National Science Foundation Fellow |
| **1968-1969** | Principal Investigator, U.S. Department of Labor Grant |
| **1969-1973** | Assistant Professor of Psychology, Penn State |
| **1973-1979** | Associate Professor of Psychology, Penn State |
| **1979-1994** | Professor of Psychology, Penn State |
| **1994-Present** | Professor Emeritus, Penn State |
| **1980-1981** | Acting Head, Department of Psychology |
| **1984** | Visiting Professor, Department of Psychology, Stanford University |
| **1985-1988** | Director:  Applied Psychology Institute |
| **1988-1994** | Director:  Center for Applied Behavioral Sciences |

| | |
|---|---|
| **1995-Present** | Adjunct Professor of Psychology, Department of Psychology, Colorado State University |
| **1997-1999** | Visiting Researcher, Department of Psychology, University of California, Berkeley |
| **1984-1998** | President: Landy, Jacobs and Associates, Inc. |
| **1998-2005** | CEO: SHL Litigation Support Group |
| **2005 –Present** | CEO: Landy Litigation Support Group (LLSG) |
| **2005-2008** | Adjunct Professor, Griffith Business School, Griffith University, Queensland, Australia |
| **2007-** | Doctoral Faculty in I-O Psychology - City University of New York (CUNY) |

## Membership in Professional Organizations

American Association for the Advancement of Science
American College of Sports Medicine
American Psychological Association (Divisions 5, 14, 21, 26, 47)
Human Factors and Ergonomics Society
Mathematical Association of America
Midwestern Psychological Association
National Fire Protection Association
Personnel Testing Council of Northern and Southern California
Psychometric Society
Sigma Xi (Admissions Committee - 1983-1984)
Society for the Study of Organizational Behavior
Society of Industrial and Organizational Psychology

## Honors, Awards, Appointments

| | |
|---|---|
| **1971** | Diplomat Scholar - U.S. Department of State |
| **1971** | Visiting Scientist - APA and NSF |
| **1973** | Distinguished Alumnus - Bowling Green State University |
| **1975-1980** | H. Thomas Hallowell Faculty Fellow (Funded 5 year Research Chair) |
| **1975** | Fulbright Hays Research Fellow (Sweden) |
| **1975** | NATO Senior Lecturer (Human Factors Panel) (Lectured in Norway, England, Scotland, Denmark, and the Netherlands) |
| **1979** | Senior Fulbright Research Fellow (Sweden) |
| **1979** | Fellow - Division 14 of the APA |
| **1980** | Cattell Award for excellence in research design, Division 14 of APA |
| **1981** | Appointed Associate Editor of the Journal of Applied Psychology |
| **1982** | Invited Workshop Leader at the APA Convention (Performance Evaluation) |
| **1983** | Appointed Seminar organizer for 1984 International Congress of Applied Psychology (Acapulco) by International Association for Applied Psychology |
| **1983** | Appointed to Committee on Performance of Military Personnel, National Academy of Term to run until 1985. |
| **1983** | Guest of Academies of Science of Romania, Yugoslavia, Czechoslovakia and Hungary. Presented invited addresses in Cluj (Romania), Ljubljana (Yugoslavia), Budapest and Szeged (Hungary) and Prague (Czechoslovakia) |
| **1983** | IREX Travel Award for lectures in Eastern Europe |
| **1983** | Guest of Nobel Foundation at Nobel Ceremonies, Stockholm, 1983 |
| **1984** | Reviewer for Transportation Research Board: National Research Council, National Academy of Sciences |

| | |
|---|---|
| **1984** | Reappointed Associate Editor of <u>Journal of Applied Psychology</u> |
| **1985** | Program Committee for Division 14 Mid-Year Convention |
| **1985** | Reappointed to Committee on Performance of Military Personnel, National Academy of Sciences.  Four year term. |
| **1985** | Selected for National Academy of Sciences Exchange Program with Eastern Europe - Appointed for exchange with Romanian Academy of Sciences |
| **1985-1986** | Fellowship Committee of Division 14 of the APA |
| **1985-1986** | Elected to Penn State Faculty Senate |
| **1986** | Recipient of the Social Science Award of the College of Liberal Arts - The Pennsylvania State University |
| **1986** | Elected to Membership in the American College of Sports Medicine |
| **1986** | Elected to Membership in Division 47 of the American Psychological Association |
| **1986-1988** | Fellowship Committee of Division 14 of the APA |
| **1988-1991** | Elected to Council of Representatives of the American Psychological Association representing Division 14 |
| **1988** | Invited workshop leader for APA convention (EEO Issues) |
| **1988** | Senior Fulbright Fellowship to lecture in Ljubljana, Yugoslavia |
| **1988** | Elected Fellow of Division 47 of APA (Exercise and Sport Psychology) |
| **1989** | Invited workshop leader for SIOP Convention, Boston, MA; EEO Issues |
| **1989** | Elected President of Division 14 (SIOP) of the American Psychological Association |
| **1990** | Co-Chair:  Joint APA/NIOSH Conference on Work and Well Being, Washington, DC, November 15-17 |
| **1990-1993** | Appointed to Board of Directors of the Institute for Policy Research and Evaluation |
| **1991** | Chair:  APS Summit of Social and Behavioral Science Societies; Houston, January |
| **1991** | Appointed to Advisory Committee for the 2nd Annual APA/NIOSH Conference on Stress in the Workplace |
| **1991** | Selected as Master Lecturer for 1992 APA Annual Convention, Washington, DC, August |
| **1992** | Master Lecturer:  APA, Washington, DC, August |
| **1992** | G. Stanley Hall Lecturer:  American Psychological Association |
| **1992** | Selected as G. Stanley Hall Lecturer for 1992 APA Annual Convention, Washington, DC, August |
| **1992-1995** | Appointed to Advisory Board of the Council for the International Exchange of Scholars (Fulbright) Program |
| **1992** | Member SIOP Committee to draft Amicus Brief in Soroka v. Dayton Hudson Corporation |
| **1992** | Elected Fellow of Division 21 of APA (Applied, Experimental and Engineering Psychologists) |
| **1992** | Elected Fellow of Division 5 of APA (Division of Measurement) |
| **1992** | Appointed to Panel of the Transportation Research Board - National Research Council:  Fitness for Duty Testing in Transportation Workplace |
| **1993** | Chosen to author <u>Annual Review in Psychology</u> chapter on personnel selection for 1994 volume |
| **1993** | Invited to present Keynote Address at the International Congress of Applied Psychology in Madrid, Spain, July, 1994 |
| **1993** | Presented research lectures by invitation in Moscow under auspices of Moscow State University and Institute for Youth Development |

| | |
|---|---|
| **1993** | Invited to present the Annual Gaudet Lecture at Stevens Institute of Technology |
| **1997** | Invited to present keynote address at Industrial and Organizational Psychology Conference -- Australian Psychological Association, Melbourne, Victoria, Australia, June 28-29 |
| **1997** | Invited as participant in Round Table Conference of Australian Academy of Sciences, Melbourne, Victoria, Australia, June 30-July 1 |
| **1997** | Invited to present keynote address at Industrial and Organizational Psychology Conference -- New Zealand Psychological Association, Auckland, New Zealand, July 2-3 |
| **1997** | Invited to present address "The Roots of Applied Psychology" at American Psychological Association Meeting, Chicago, August 16 |
| **1998** | Invited as Chair of Symposium on Eastern European Psychology, International Association of Applied Psychology Meetings, San Francisco, August 9-14 |
| **2000** | Two-year term on the Determination of Disability Committee by the National Academy of Sciences.  The work of the committee was requested by the Social Security Administration and committee members include physicians specializing in occupational medicine, physiologists, and epidemiologists.  Dr. Landy is the sole industrial and organization psychologist on the committee. |
| **2000** | Appointed to Advisory Panel for 4th edition of the SIOP Principles for Validation and Use of Personnel Selection Procedures |
| **2001** | Appointed Honorary President of the Romanian Industrial and Organizational Psychological Association |
| **2002** | Invited lectures at the Australian Graduate School of Management and the Australian Psychological Society on the "Changing Nature of Work," Sydney, Australia – November 13-15 |
| **2002** | Guest Professor at Giessen University, Giessen, Germany. November 18-22 |
| **2003** | Invited seminar at Stockholm University, Department of Psychology, "Work in the 21st Century," May 2003 |
| **2003** | Invited address - Ljubljana University (Slovenia), "The Application of Facet Theory to Industrial and Organizational Psychology," July 2003 |
| **2004** | Invited lecture: Herschel W. and Eileen W. Leibowitz Lecture. Penn State University. "Work in the 21st Century," January 2004 |
| **2004** | SIOP Award for Distinguished Professional Contributions |
| **2004** | Invited address - International Test Commission 2004 Conference on Equitable Assessment Practices, "The Past, Present and Future of Psychometric Legal Challenges," October 2004 |
| **2004** | Member: Board of Directors - Facet Theory Association |

## Editorial Duties

**Occasional Reviewer**:

> Organizational Behavior and Human Decision Processing
> Psychological Bulletin
> American Psychologist
> Journal of Personality and Social Psychology
> British Journal of Psychology
> Journal of Applied Social Psychology
> Journal of Management Studies (England)
> International Journal of Applied Psychology
> Accident Analysis and Prevention
> Medicine and Science in Sports and Exercise

**Associate Editor/Editorial Board:**
Journal of Applied Psychology (APA) ( Associate Editor: 1981-1987)
Human Performance (Erlbaum and Associates) (1992-Present)
Journal of Applied Psychology (Editorial Board: 2001-present)

**Editor:** Human Performance (Erlbaum and Associates) (1985-1992)

**International Consulting Editor:** Journal of Occupational Psychology
(British Psychological Society)

**Editorial Board:** Journal of Occupational Behavior

**Editorial Board:** Human Resource Research

**Series Editor:** Prentice-Hall Series in Applied Psychology

**Editor:** Cases in test validity. Journal of Business Psychology
What I have Learned Along the Way. The Industrial-Organizational Psychologist.
(January 2003 – present)

**Series Editor:** Brooks-Cole Series in Industrial and Organizational Psychology

**Co-Editor:** International Handbook of Industrial and Organizational Psychology
(Hogrefe) with Nigel Nicholson (Sheffield)

**Editorial Board:** Journal of Occupational Health Psychology

**Appointed to:** Editorial Board of Psihologia Resurselor Umane – 2003

## Books
The Psychology of Work Behavior (with Don Trumbo). Dorsey Press, 1976.
The Psychology of Work Behavior - Revised Edition (with Don Trumbo). Dorsey Press, 1980.
The Psychology of Work Behavior. Dorsey Press, 1985.
The Measurement of Work Performance (with J. L. Farr). New York: Academic Press, 1983.
Performance Measurement and Theory (with S. Zedeck and J. Cleveland). Hillsdale, NJ:
        Erlbaum, 1983.
Psychology: The Science of People. Prentice Hall, 1984.
Psychology of Work Behavior. Student Workbook. Dorsey Press, 1985.
Psychology of Work Behavior. Instructor's Manual. Dorsey Press, 1985.
Readings of Industrial and Organizational Psychology. Dorsey Press, 1986.
Psychology: The Science of People (2nd Edition). Prentice Hall, 1987.
The Psychology of Work Behavior (4th Edition). Brooks-Cole, 1989.
Work in the 21st Century: An Introduction to Industrial and Organizational Psychology (with J.
        Conte). New York, NY. McGraw Hill, 2004.
Employment Discrimination Litigation: Behavioral, Quantitative, and Legal Perspectives. San
        Francisco: Jossey-Bass, 2005
Work in the 21st Century: An Introduction to Industrial and Organizational Psychology:
        2nd Edition (with J. Conte). Blackwell Publishing Co. (2007).

Work in the 21st Century: An Introduction to Industrial and Organizational
    Psychology:3rd Edition (with J. Conte). Blackwell Publishing Co. (in press).

## Monographs

Performance appraisal:  Theory, method, and logic.  Police Foundation Monograph Series, 1974.

Landy, F. J., & Farr, J. L.  Police performance appraisal.  JSAS Catalog of Selected Documents in
    Psychology, 1976, 6(3), 83.

Landy, F. J., Bland, R. E., Buskirk, E. R., Daly, R. E., DeBusk, R. F., Donovan, E. J., Farr, J. L.,
    Feller, I., Fleishman, E. A., Gebhardt, D. L., Hodgson, J. L., Kenney, W. L., Nesselroade,
    J. R., Pryor, D. B., Raven, P. B., Schaie, K. W., Sothmann, M. S., Taylor, M. C., Vance,
    R. J., & Zarit, S. H. (1992).  Alternatives to chronological age in determining standards of
    suitability for public safety jobs.  Technical Report, The Center for Applied Behavioral
    Sciences, Penn State University.

Landy, F. J. (Ed.).  Special issue:  Test validity yearbook:  Volume 2.  Journal of Business and
    Psychology, 7(4), 369-482.

## Chapters

Motivational considerations in environmental design.  In Kohn, Imre (Ed.), Crime prevention and
    control through environmental design.  1976.  Westinghouse Learning Corporation.

Development and use of supervisory and peer scales for police performance appraisal (with Jim
    Farr).  In C. D. Spielberger (Ed.), Police selection and evaluation. (pp. 61-75).  New
    York: Praeger, 1979.

Models of man: Assumptions of theorists.  In N. Nicholson and T. Wall (Eds.), The theory and
    practice of organizational psychology: A collection of original essays.  London, UK:
    Academic Press, 1982.

Theory and logic in human resources research (with Joseph Vasey).  In Rowland and Farris
    (Eds.), Research in personnel and human resources management (Vol. 2).  (pp. 1-34).
    Greenwich, CT: JAIPress, 1984.

Methodological problems and strategies in predicting absence (with Joseph Vasey and Fred Smith).
    In Goodman, Atkin,  and Associates (Eds.), Absenteeism: new approaches to understanding,
    measuring, and managing employee absence.  (pp. 110-157).  San Francisco: Jossey-Bass,
    1984.

Motivation theory reconsidered (with Wendy Becker).  In L. Cummings and B. Staw (Eds.),
    Research in organizational behavior (Vol. 9).  (pp. 1-38).  Greenwich, CT: JAI Press,
    1987.

Human computer interactions in the workplace: Psychosocial aspects of VDT use.  In M. Frese,
    E. Ulrich and W. Dzida (Eds.), Psychological issues of human-computer interaction in
    the workplace.  (pp. 3-22).  Amsterdam: North Holland Publishing Co., 1987.

The psychology of prolonged exercise (with Rod Dishman).  Exercise and Sports Sciences
    Review.  American College of Sports Medicine, 1987.

Criteria for selection (with Haleh Rastegary).  In I. Robertson and M. Smith (Eds.), <u>Advances in personnel selection and assessment</u> (pp. 47-65).  Chichester, UK: Wiley, 1989.

Selection of abilities in job analysis.  In S. Gael (Ed.), <u>The job analysis handbook for business, industry, and government.</u> (pp. 271-189).  New York:  Wiley, 1988.

Some characteristics of "action research."  In A. Enander, B. Gustavsson, J. Ch. Karlsson, & B. Starrin (Eds.), <u>Work and welfare:  Papers from the Second Karlstad Symposium on Work</u> (pp. 257-271).  Karlstad, Sweden:  Research Unit for Work and Working Life, 1991.

Job design and well being.  In G. Keita and S. Sauter (Eds.), <u>Work and well being: An agenda for the 1990s.</u> (pp. 119-158).  Washington, D.C.: American Psychological Association, 1992.

The concept of validity.  In N. Schmitt and W. Borman (Eds.), <u>Frontiers of Industrial and Organizational Psychology:  Volume 4 - Personnel Selection in Organizations.</u> (pp. 275-309).  San Francisco:  Jossey Bass, 1992.

The roots of I/O psychology:  Master Lecture Series.  Washington, DC:  APA Publications, 1992.

Job analysis and job evaluation:  The respondent's perspective.  In H. Schuler, J. Farr, and M. Smith (Eds.), <u>Personnel Selection and Assessment</u> (pp. 75-90).  Hillsdale, NJ:  Lawrence Erlbaum, 1993.

The interactions among time urgency, uncertainty, and time pressure (with Haleh Rastegary).  In O. Svenson & J. Maule (Eds.), <u>Time pressure and stress in human judgment and decision making.</u> (pp. 217-239).  New York:  Plenum, 1993.

Early influences on the development of industrial/organizational psychology.  In T. Fagan and G. VandenBos (Eds.), <u>Exploring applied psychology: Origins and critical analyses.  Master lectures in psychology</u> (pp. 83-118).  Washington, D.C.: American Psychological Association, 1993.

Advancing Personnel Selection and Placement Methods (with Laura Shankster-Cawley and Stacey Kohler).  In A. Howard (Ed.), <u>The Changing Nature of Work</u> (pp. 252-289).  San Francisco: Jossey-Bass, 1995.

Foreword to Robert Guion's <u>Assessment, Measurement and Prediction for Personnel Decisions</u>.  Mahwah, NY:  Erlbaum and Associates, 1998.

Charles S. Myers.  In <u>Encyclopedia of Psychology</u>.  Washington, D.C.:  American Psychological Association, in press.

Edwin E. Ghiselli.  In <u>Encyclopedia of Psychology</u>.  Washington, D.C.:  American Psychological Association, in press.

Job analysis.  In B. Green and S. Wigdor (Eds.), <u>Joint service project</u>.  National Academy Press, in production.

Papinchock, J. M. & Landy, F. J. (In Press). The influence of *Daubert* on expert witness testimony -- the human factors context. In Y. Ian Noy and Waldemar Karkowski (Eds.) <u>Handbook of Human Factors in Litigation</u>. Boca Raton, FL: Taylor & Francis Books.

Landy, F. J. Preface. In F. J. Landy (Ed.) <u>Employment Discrimination Litigation</u>: <u>Behavioral, Quantitative, and Legal Perspectives</u>.  San Francisco: Jossy-Bass (pp. xv-xix), 2005.

Landy, F. J. Phases of Employment Litigation. In F. J. Landy (Ed.) <u>Employment Discrimination Litigation: Behavioral, Quantitative, and Legal Perspectives</u>.  San Francisco: Jossey-Bass (pp. 3-19), 2005.

Landy, F. J.  A Judge's View: Interviews with Federal Judges about Expert Witness Testimony. In F. J. Landy (Ed.) <u>Employment Discrimination Litigation: Behavioral, Quantitative, and Legal Perspectives</u>.  San Francisco: Jossey-Bass (pp.503-572), 2005.

Outtz, J. L. and Landy, F. J.  Concluding Thoughts. In F. J. Landy (Ed.) <u>Employment Discrimination Litigation: Behavioral, Quantitative, and Legal Perspectives</u>.  San Francisco: Jossey-Bass (pp.575-590), 2005.

Landy, F. J. The Long, Frustrating, and Fruitless Search for Social Intelligence. In K. R. Murphy (Ed.) <u>The Emotional Intelligence Bandwagon: The Struggle Between Science and Marketing for the Soul of EI.</u> Mahwah, NJ: Lawrence Erlbaum and Associates, 2005.

Landy, F. J. Ten Answers in Search of a Question.  In W. Bilsky and D. Elizur (Eds.) <u>Facet Theory: Design, Analysis, and Applications</u>. Prague, CZ: Zeithamlova Milena, Ing - Agentura Action M. (pp.123-135), 2005.

Landy, F. J. Post-modernism in applied psychology. In Petho, B. (Ed.) <u>Essays in Honor of Bertalan Petho</u>. Budapest: Budapest University Press, (2005)

Landy, F. J. (2007). Changing work and the future of validation. In S. M. McPhail *Alternative Validation Strategies*.  SIOP Practice Series. San Francisco: Jossey-Bass.

 Landy, F. J. (2008)  Commentary. In E. Borgida & S. T.  Fiske. *Psychological  Science in the Court: Beyond Common Knowledge.*  London: Blackwell Publishers.

Landy, F. J. (2007) The Art and Science of Consulting. In W. C. Borman & J. W. Hedge (Eds.) *The I-O Consultant's Handbook*. American Psychological Association

Landy, F. J. (in press). Revisiting Landy & Farr. In J. L. Outtz (Ed.). *Adverse impact in organizations*. San Francisco, CA: Jossey-Bass


## <u>Articles</u>

Landy, F. J., & Elbert, A. J. (1967).  Scaling assumptions underlying weighting in job classification systems.  <u>Journal of Applied Psychology</u>, <u>51</u>, 442-443.

Sutton-Smith, B., Rosenberg, B. G., & Landy, F. J. (1968).  Father absence effects in families of differing sibling compositions.  <u>Child Development</u>, <u>39</u>, 1213-1221.

Landy, F. J., Rosenberg, B. G., & Sutton-Smith, B. (1969).  The effect of limited father absence on the cognitive development of children.  <u>Child Development</u>, <u>40</u>, 941-944.

Smith, O. W., & Landy, F. J. (1969).  A note on the visual recognition of words.  <u>Perceptual and Motor Skills</u>, <u>29</u>, 83-86.

Smith, O. W., & Landy, F. J. (1969).  Grid vs. graphic scaling of importance and presence of some college experiences.  Perceptual and Motor Skills, 29, 146.

Landy, F. J., & Guion, R. M. (1970).  The development of scales for the measurement of work motivation.  Organizational Behavior and Human Performance, 5, 93-103.

Landy, F. J., & Stern, R. M. (1971).  Factor analysis of a somatic perception questionnaire.  Journal of Psychosomatic Research, 15, 179-181.

Landy, F. J., & Gaupp, L. (1971).  Factor analysis of the FSS-III.  Behavior Research and Therapy, 9, 89-93.

Landy, F. J. (1971).  Motivational type as a moderator of the satisfaction/performance relationship.  Journal of Applied Psychology, 55, 406-413.

Landy, F. J. (1972).  A procedure for occupational clustering.  Organizational Behavior and Human Performance, 8, 109-117.

Guion, R. M., & Landy, F. J. (1972).  The meaning of work and the motivation to work.  Organizational Behavior and Human Performance, 7, 308-339.

Landy, F. J., & Bates, F. (1973).  The non-effect of three variables in mail survey response rate.  Journal of Applied Psychology, 58, 147-148.

Rhoads, R., & Landy, F. J. (1973).  The measurement of attitudes of industrial work groups toward psychology and testing.  Journal of Applied Psychology, 58, 197-202.

Landy, F. J., & Bates, F. (1973).  Another look at contrast effects in the employment interview.  Journal of Applied Psychology, 58, 141-144.

Landy, F. J. (1974).  The development of scales for the measurement of updating.  American Society for Engineering Education Monograph, 47-54.

Landy, F. J., & Goodin, C.  (1975).  Performance appraisal.  Police Personnel Administration, 165-184.

Landy, F. J. (1976).  The validity of the interview in police officer selection.  Journal of Applied Psychology, 61, 193-198.

Landy, F. J., Farr, J. L., Saal, F. E., & Freytag, W. R. (1976).  Behaviorally anchored scales for rating the performance of police officers.  Journal of Applied Psychology, 61, 548-557.

Saal, F., & Landy, F. J. (1977).  The mixed standard rating scale: An evaluation.  Organizational Behavior and Human Performance, 18, 19-35.

Landy, F. J., & Landy, A. R. (1978).  Dimensions of teacher behavior.  Journal of Applied Psychology, 63, 522-526.

Landy, F. J. (1978).  On the value of true negatives.  American Psychologist, 33, 756-760.

Landy, F. J. (1978).  An opponent process theory of job satisfaction.  Journal of Applied Psychology, 63, 533-547.

Landy, F. J., Barnes, J. L., & Murphy, K. (1978).  Correlates of perceived fairness and accuracy of performance appraisals.  Journal of Applied Psychology, 63, 751-754.

Landy, F. J., & Barnes, J. L. (1979).  Scaling assumptions in behavioral anchoring.  Applied Psychological Measurement, 3, 193-200.

Landy, F. J., & Farr, J. L. (1980).  Performance rating.  Psychological Bulletin, 87, 72-107.

Landy, F. J., Barnes-Farrell, J., & Cleveland, J. (1980).  Perceived fairness and accuracy of performance evaluation: A follow-up.  Journal of Applied Psychology, 65, 355-356.

Landy, F. J., Vance, R. J., Barnes-Farrell, J., & Steele, J. W. (1980).  Statistical control of halo error in performance ratings.  Journal of Applied Psychology, 65, 501-506.

Cleveland, J., & Landy, F. J. (1981).  The influence of rater age and ratee age on two performance judgments.  Personnel Psychology, 34, 19-29.

Landy, F. J., Farr, J. L., & Jacobs, R. R. (1982).  Utility concepts in performance appraisal.  Organizational Behavior and Human Performance, 30, 15-40.

Landy, F. J., Vance, R. J., & Barnes-Farrell, J. (1982).  Statistical control of halo error: A reply.  Journal of Applied Psychology, 67, 177-180.

Landy, F. J. (1982).  What have you done for me lately?  A review of Pay and Organizational Development by E. E. Lawler.  Contemporary Psychology, 27, 282-284.

Landy, F. J., Farr, J. L., & Jacobs, R. R. (1982).  The bottom line in performance evaluation.  Public Productivity Review, VI, 78-92.

Cleveland, J. N., & Landy, F. J. (1983).  The effects of person and job stereotypes on two personnel decisions.  Journal of Applied Psychology, 68, 609-619.

Landy, F. J. (1984).  Industrial psychology.  (Entry in the Social Science Encyclopedia - Routledge and Kegan Paul.)

Committee on Performance of Military Personnel, National Research Council. (1984).  Job performance measurement in the military: Report of a workshop.  Washington, DC: National Academy Press.

Pitariu, H., Landy, F. J., & Becker, W. (1986).  The utility of the Holtzman test as a screening device for long-haul truck drivers.  Romania Psychological Review, 32, 96-103.

Landy, F. J. (1986).  Stamp collecting versus science: Validation as hypothesis testing.  American Psychologist, 41(11), 1183-1192.

Landy, F. J. (1986).  Psychology in Romania.  The Industrial-Organizational Psychologist, 24, 21-25.

Landy, F. J. (1988).  The early years of I/O:  "Dr." Mayo.  The Industrial-Organizational Psychologist, 25, 53-55.

Landy, F. J. (1988).  The early years of I/O:  Hugo Munsterberg and the polygraph.  The Industrial-Organizational Psychologist, 25, 54-56.

Landy, F. J. (1989).  The early years of I/O:  J. D. Houser and J.D.I.  The Industrial-Organizational Psychologist, 26, 63-65.

Sothmann, M., Saupe, K., Jasenof, D., Blaney, J., Fuhrman, S., Woulfe, T., Raven, P., Pawelczyk, J., Dotson, C., Landy, F., Smith, J., & Davis, P. (1990).  Advancing age and the cardiorespiratory stress of fire suppression:  Determining a minimum standard for aerobic fitness.  Human Performance, 3, 217-236.

Pitariu, H. D., & Landy, F. J. (1990).  Performance rating of data processing personnel.  Man and Work:  Journal in Labor Studies, 2, 103-114.

Landy, F. J., & Vasey, J. (1991).  Job analysis:  The composition of SME samples.  Personnel Psychology, 44, 27-50.

Landy, F. J., Rastegary, H., Thayer, J. F., & Colvin, C. (1991).  Time urgency:  The construct and its measurement.  Journal of Applied Psychology, 96, 644-657.

Sothmann, M. S., Saupe, K., Raven, P., Pawelczyk, J., Davis, P., Dotson, C., Landy, F., & Siliunas, M. (1991).  Oxygen consumption during fire suppression:  Error of heart rate estimation.  Ergonomics, 34(12), 1469-1474.

Landy, F. J. (1991).  The I/O family tree.  The Industrial-Organizational Psychologist, 29, 31-34.

Sothmann, M. S., Landy, F. J., & Saupe, K. (1992).  Age as a bona fide occupational qualification for firefighting:  A review on the importance of measuring aerobic power.  Journal of Occupational Medicine, 34(1), 26-33.

Landy, F. J. (1992).  Hugo Munsterberg:  Visionary or victim.  Journal of Applied Psychology, 77, 787-802.

Landy, F. J. (September, 1992).  Eliminating bias in performance ratings.  Commissioned by Department of Labor.

Jacobs, R., Mathieu, J., Landy, F., Baratta, T., Robinson, G., Hofmann, D., & Ringenbach, K. (1993).  Organizational Processes and Nuclear Power Plant Safety.  Report to Proceedings of the International Topical Meeting on Probabilistic Safety Assessment, 211-215.

Landy, F. J. (1993).  Basic applied psychology:  Which is the cart and which is the horse?  Applied Psychology:  An International Review, 42(1), 49-51.

Pitariu, H., & Landy, F. J. (1993).  Some personality correlates of time urgency.  The Review of Romanian Psychology, 37, 15-26.

Landy, F. J., Quick, J. C., & Kasl, S. (1994).  Work, stress, and well-being.  <u>International Journal of Stress Management</u>, <u>1</u>(1), 33-73.

Landy, F. J., Shankster, L. J., & Kohler, S. S. (1994).  Personnel selection and placement.  <u>Annual Review of Psychology</u>, <u>45</u>, 261-296.

Hofmann, D. A., Jacobs, R. R., & Landy, F. J. (1995).  High reliability process industries: Individual, micro, and macro organizational influences on safety performance.  <u>Journal of Safety Research</u>, <u>26</u>(3), 131-149.

Conte, J. M., Landy, F. J., & Mathieu, J. E. (1995).  Time urgency: Conceptual and construct development.  <u>Journal of Applied Psychology</u>, <u>80</u>(1), 178-185.

Landy, F. J., (1996).  Commentary.  <u>Human Performance</u>, <u>9</u>(3), 297-302.

Landy, F. J., (1997).  Early Influences on the Development of I/O Psychology.  <u>Journal Of Applied Psychology</u>, <u>82</u>(4), 467-477.

Conte, J. M., Mathieu, J. E., & Landy, F. J. (1998).  The nomological and predictive validity of time urgency.  <u>Journal of Organizational Behavior</u>, <u>19</u>, 1-13.

Kenney, W. L., FACSM, & Landy, F. J. (1998).  Fitness Testing for Firefighters.  <u>ACSM  s Health & Fitness Journal</u>, <u>2</u>(4), 12-17.

Landy, F. J. (1998). Fitness Testing and the ADA. <u>IPMA News</u>, October 1998, 18-19.

Landy, F. J. (2001).  Age, race, and gender in organizations.  <u>International Encyclopedia of the Social and Behavioral Sciences</u>.  In press.

Landy,  F. J. (2001). Low Ceiling, Poor Visibility. <u>Contemporary Psychology</u>. In press.

Griffin, M. A., Landy, F. J., & Mayocchi, L. (2002) Australian influences on Elton Mayo: The Construct of Revery in Industrial Society. <u>History of Psychology</u>, <u>5</u>(4), 356-375.

Conte, J. M., Dean, M. A., Ringenbach, K. L., Moran, S. K., & Landy, F. L. (2005) The relationship between work attitudes and job analysis ratings: Do task rating scale type and task discretion matter?  <u>Human Performance</u>, 18(1), 1-21.

Landy, F. J. (2003). People Like Us. <u>Intercultural Management Quarterly</u>. Fall, 2003, 3, 8.

Landy, F.J. (2003). People Like Us. <u>Atlantic Monthly</u>. November 2003.

Landy, F. J. (2004). Professional Standards for the Practice of I-O Psychology. <u>The Romanian Journal of Industrial and Organizational Psychology</u>. In press.

Landy, F. J. (2005). Some Historical and Scientific Issues Related to Research on Emotional Intelligence. <u>Journal of Organizational Behavior</u>, <u>26</u>, 411-424.

Landy, F. J. (2004). Taking the "or" out of Predictor: A Consideration of the Incremental Validity of Multiple Predictors. <u>www.HRM.net</u> (September).

Conte, J. M., Dean, M. A., Ringenbach, K. L., Moran, S.K., & Landy, F. J. (2005). The Relationship Between Work Attitudes and Job Analysis Ratings: Do Rating Scale Type and Task Discretion Matter? Human Performance, 18, 1-21.

Landy, F. J. (2005). Post-modernism and applied psychology. The Industrial-Organizational Psychologist, 43(1), 16-24.

Landy, F. J. (2005). That Woman. Psychological Observer. In press.

Landy, F. J. (2005) The Americans with Disabilities Act. Encyclopedia of Industrial/Organizational Psychology. In press.

Landy, F. J. (2005) The Equal Pay Act Of 1963. Encyclopedia of Industrial/Organizational Psychology.

Landy, F. J. (2007). Review of *The Historical Perpectives in Industrial and Organizational Psychology  L. Koppes (ED). Journal of the History of the Behavioral Sciences, 43,* 4, 429-430.

Landy, F. J. (2008). Stereotypes, Bias, and Personnel Decisions: Strange and Stranger. *Industrial and Organizational Psychology: Perspectives on Science and Practice, 1,* 379-392.

Landy, F. J. (2008). Stereotypes, Implicit Association Theory, and Personnel Decisions I guess we will have to agree to disagree.  *Industrial and Organizational Psychology: Perspectives on Science and Practice, 1,* 444-453.

## Research Grants/Contracts

**1968**         U.S. Dept. of Labor.  Motivation and Satisfaction of Professional Engineers. ($14,349)

**1970**         National Science Foundation.  Anticipated Satisfaction of Engineering Students. ($4,600)

**1971**         U.S. Department of Justice.  Police Performance Measurement.  ($81,051)

**1972**         U.S. Department of Justice Police Performance Measurement.  ($129,782)

**1973**         Penn State Instructional Development Grant.  Personalized Instruction System Development for Introductory Psychology.  ($4,100)

**1975**         H. Thomas Hallowell Chair in Industrial Psychology (through 1980).  ($75,000)

**1976**         Swedish National Board of Education Teacher Style and Student Behavior. ($4,000)

**1977-1981**    Grants from industries for Industrial and Organizational Research and Training Program at Penn State.  ($115,000)

**1980**        Office of Naval Research/Office of Personnel Management Conference on Performance Theory and Measurement.  ($31,081)

**1980-1984**    Office of Naval Research Developmental Motivation Theory.  ($238,070)

**1982**        Office of Naval Research.  Funds for Administering the High School Research Intern Program at Penn State for the Summer of 1982.

**1986-1987**    Funding for Applied Psychology Institute from the College of Liberal Arts, Graduate School, West Penn Power Co., Academic Assistance Program (PSU), Pennsylvania State Police, McDevitt and Street.  (Total approximately $70,000)

                Continuing Funding for Applied Psychology Institute from State Attorney General's Office, Pennsylvania State Police, Academic Assistance Program.  ($273,000)

                Boeing Corporation to Applied Psychology Institute for Study of Cognitive Ability Demands of Middle Level Managers.  ($92,000)

                NIOSH - Data Collection on Time Urgency Scales.  ($4,000)

**1989-1994**    U.S. Department of Agriculture - Evaluation of OPM Demonstration Project.  ($1.8 Million)

                Pennsylvania State Police - Special Assignment Placement System.  ($79,000)

                Boeing Corporation - Training Program for Management Assessment.  ($46,000)

**1990**        Equal Employment Opportunity Commission - Study of Aging and Public Safety.  ($900,000)

**1990-1991**    Nuclear Regulatory Commission - Study of Safety in Nuclear Power Plants.  ($600,000)

**1991-1992**    American Dietetics Association - In Collaboration with Planning Studies - Development of Self-Assessment Modules:  Phase I.  ($800,000)

                Boeing Helicopters - Work Sample Testing.  ($64,000)

**1992**        Corning - Asahi - Organizational Diagnosis.  ($25,000)

**1992**        Pennsylvania Department of Transportation - Evaluation of Employee Involvement Program.  ($77,000)

**1992**        American Dietetics Association - In Collaboration with Planning Studies - Development of Self-Assessment Modules:  Phase II.  ($770,000)

**1993**        Training and delivery of highway information systems (with Pennsylvania Transportation Institute).  ($69,000)

**1993**        U.S. Department of Defense - Defense conversion initiative in Philadelphia Naval Shipyard.  ($219,000)

## **Papers and Presentations**

Approximately 600 presentations at conventions, professional meetings, and non-Penn State University Colloquia in the past 30 years.

## **External Consulting and Research Contacts**

Philadelphia Electric Co.
General Public Utilities:
      Three Mile Island Nuclear Facility
      Oyster Creek Nuclear Facility
PARADE Magazine
Pittsburgh Plate Glass
World Bank
City of New York Personnel Department
New York City Police Department
Personnel Department, City of Philadelphia
RCA
Johnson and Johnson:
      Echo-Ultrasound
      IREX
      Technicare-Denver
CitiBank of New York
CertainTeed Corporation
Stouffer's Frozen Foods Co.
King, Ballow and Little - Law Firm
Pennsylvania State Civil Service Commission
Mexican American Legal Defense Fund
Lewistown Hospital
New Jersey State Civil Service Commission
New Jersey State Attorney General's Office
Gordon, Scheckman and Gordon - Law Firm
Brown-Boveri Corp.
SPS Technologies, Inc.
New York State Civil Service Commission
Foreman and Wickes - Law Firm
City of Columbus (Ohio) Department of Police
City of Columbus (Ohio) Fire Department
City of Columbus (Ohio) City Attorney's Office
City of Akron Department of Law
City of Wilmington (Delaware) Department of Public Safety
State of Maryland
General Public Utility Nuclear Corporation
New York State Department of Law - Attorney General's Office
Minitab
Armstrong World Industries
City of Cleveland - Department of Law
Photomedica - Division of Johnson and Johnson
City of Cleveland - Civil Service Commission
City of Cleveland - Division of Fire
Westmark - A Division of Squibb, Inc.
West Penn Power Co.

City of Denver
State Attorney General's Office of Pennsylvania
Pennsylvania State Police
Eichorn, Eichorn, and Link - Law Firm
Northern Indiana Public Service Co. (NIPSCO)
Gentry and Phillips - Law Firm
Edwin H. Sty - Law Firm
Kraft Foods, Inc.
District of Columbia - Division of Fire
City of Chicago - Division of Law
City of Grand Rapids - City Attorney's Office
Communications Workers of America
Old Bridge Township, New Jersey
Bell Atlantic Corporation
Advanced Technology Laboratories
Swedish Nuclear Inspection Agency
Liquor Enforcement Bureau of Pennsylvania State Police
C. Itoh, Inc.
City of Cincinnati
Commonwealth Court:  Philadelphia
St. Paul Firefighters Union
Illinois State Police
Illinois Attorney General
City of Chicago Police Department
City of Chicago Fire Department
City of Tulsa Civil Service Commission
City of Austin Police Department
Pennsylvania Human Relations Commission
City of Colorado Springs
US West
City of Kansas City, KS, Police Department
City of New York Tests and Measurement
Denver, Colorado City Attorney
SEPTA
Target Stores
Leahy Law Offices
New York City Law Department - Arluck
City of Columbus Bio Data
Communications Workers of America
Lightman Law Offices
City of Buffalo-Department of Law
Stella D'Oro
Heidrick and Struggles
Port Authority of New York and New Jersey
City of Austin - Police Recruitment
City of Tulsa - Civil Service Commission
Lemon Growers
Ethan Allen
United Mine Workers
City of Buffalo Civil Service Commission
NYNEX

Department of Justice
Massachusetts Department of Personnel Administration
EEOC
Computer Science Corporation
Hollington Law Offices
Norfolk Southern
Conybeare Law Offices
City of Franklin, TN
San Mateo County
DuPont
Ceridian
Borough of Juneau, Alaska
City of Sheboygan
PG&E
Monument Mortgage
First Data Corporation
New York State Supervisor Test Assessment
INRTEK
Honda of America Manufacturing, Inc.

## **Litigation Services Consulting and Testimony**

2001 EEOC v. Venator (United States District Court, Southern District of New York)  - Defendant - deposition

2001 Barnes v. NYNEX, Inc.  (United States District Court, Southern District of New York)  - Defendant - deposition

2001 Gulino v. Board of Education of the City School District of the City of New York (United States District Court, Southern District of New York)  - Plaintiff trial testimony

2001 Segar v. Ashcroft Civil Action #77-0081 (DEA) – Defendant - deposition

2001 Cotter et al. v. City of Boston (United States District Court – District of Massachusetts)  - Plaintiff - deposition

2001 Crum v. State of Alabama – Defendant - deposition

2001 Bates et al. v. UPS (United States District Court, N.D. California)  - Defendant - deposition

2001 Bacon et al. v. Honda of America Manufacturing, Inc. (Exempt) (United States District Court, Southern District of Ohio, Eastern Division at Columbus).  - Defendant - trial testimony

2002 National Treasury Employees Union v. Internal Revenue Service  - Defendant - trial
  testimony

2002 Miller, et al. v. Baltimore Gas and Electric Company, et al. (United States District
  Court, For the District of Maryland, Northern Division)  - Defendant - deposition

2002 Arnold et. al. v. Cargill, Incorporated (court file #01-2086 DWF/AJB) – Defendant
  - deposition

2003 Moore v. Summers Civil Action #00-0953 (Secret Service)- Defendant - deposition

2004 Whitaker v. 3M Corporation – Defendant - deposition

2004 IRS for Tax Specialist Arbitration - contract number TIRNO 06-P-00397 –
  Defendant – testimony

2004 Chertoff v. Contreras (US Customs Service) (DC02-CV-923) - Defendant


2005 Bradley v. City of Lynn, et al. (United States District Court, District of
  Massachusetts)  - Plaintiff - trial testimony

2005 National Beverage Corporation v. Broward County CASE #02-10896 (12) –
  Plaintiff

2006 Ellis et al. v. Costco Warehouse Sales, Inc.  - Defendant - deposition

2006 Braun & Hummel v. Wal-Mart Stores (Pennsylvania) – Plaintiff - testimony

2006 Colabufo v. Cunningham Lindsey - Defendant

2006 Badgley & Whitney et. al. v. Vermont State Police – Plaintiff – testimony

2007 Coe v. Buyers Products - Defendant
2007 Bartlett and Bates v. Rubio's Restaurants – Defendant

2007 U.S. EEOC v. Lockheed Martin Corporation Civil Action #05-cv-22287-RWT –
  Defendant

2007 U.S. v. city of New York Civil Action #07-2067 (EDNY) (DOJ) - Plaintiff

2007 Bouman v. BACA, et. al. CD CA Civil Action #80-1341 RMT (LASD) - Plaintiff

2007 PHRC v. Sharpsville CBA (PSEA) - Defendant

2007 Test Appeals of Captains Caspers, Kearns, Semler, Seymour & Sweeney OAH
  1006-BPC-0001; 0002; 0003; 0004; 0005 – Defendant – deposition and testimony

2007 Moreno & Moraila v. Guerrero Mexican Food Products (Division of Gruma
    Corporation) Case #CV05-7737 DSK (PLAx) – Defendant  Deposition

2007 Braun v. Wal-Mart Stores (Minnesota) - Plaintiff

2007 Allen v. McWane WC - Plaintiff

2007 OFCCP Salt Lake City – Verizon Audit – Defendant

2007 Thompson v. Lerma & Wal-Mart Stores - Plaintiff

2008 Hughes v. Mississippi Transportation Commission C. #3:06cv81 HTW-JCS (S.D.
    Miss.) - Defendant

2008 Celia L. Hale, et. al. v. Wal-Mart Stores, Inc. Case #01-CV-218710 - Plaintiff

2008 SEC v. NTEU (Securities Commission) - Defendant

2008 OFCCP Audit:  Kraft Foods - Defendant

2008 Butler v. Mississippi Transportation Commission – Defendant

2008 Stewart v. Loftin and Mississippi Transportation Commission – Defendant

2008 Carter v. Wal-Mart Stores (South Carolina) – Plaintiff

2008 Barnett v. Wal-Mart Stores (Washington) – Plaintiff

2008 Puchalski v. Taco Bell (California) - Defendant

**APPENDIX B: DESCRIPTION OF I-O PSYCHOLOGY**

**The Fields of I-O Psychology and HR Management**

I-O psychology is a specialty field within the broader discipline of psychology (Landy & Conte, 2007). It is distinct from other subfields such as clinical and counseling psychology, educational psychology, or experimental psychology because it deals specifically with workplace management, organizational effectiveness, and worker performance. As a result, there are unique tools that are used for analysis, unique scientific literature, and unique theories of worker behavior that are not shared with other branches of psychology or with related disciplines such as sociology, anthropology, industrial engineering, or industrial management. I-O psychology deals with the application of findings from other areas of psychology (e.g., social psychology, personality, cognitive psychology, experimental psychology) and HR management to the work environment.

The field of I-O psychology has been in existence for slightly more than 100 years. Courses in the discipline are offered at both the undergraduate and graduate level at the majority of colleges and universities. Advanced degrees (M.A., M.S., Ph.D., and Psy.D.) have been offered in the field for over 90 years. There have been hundreds of basic texts published in this area, thousands of specialty texts dealing with individual topics, and hundreds of thousands of empirical research studies published in peer-reviewed journals both domestically and internationally that address topics within the domain of I-O psychology.

I-O psychology is divided into three main sections: HR (or personnel) psychology, organizational psychology, and human engineering. For purposes of this

report, topics in HR and organizational psychology will be addressed.  HR psychology considers issues related to the human abilities and attributes necessary to complete the essential tasks of a job.  Common topics in HR psychology include job analysis, cutoff scores, selection, training, performance evaluation, discipline, and promotion. Organizational psychology deals with issues such as leadership, motivation, management, organizational design, centralization vs. decentralization, and strategic operations.

I-O psychologists are often involved as expert witnesses in employment cases that cover a wide range from wage and hour disputes through charges of intentional or unintentional discrimination.  The methods of I-O psychology include analysis of survey data, interviews, content analysis of organizational documents, reviews of scientific literature, and statistical analysis of data.  These methods are commonly used for scientific research in the field as illustrated in the major research journals in the field.

The field of HR management arose from changes in the world of work such as the increased specialization of labor during the industrial revolution, early I-O psychology, establishment of the federal Civil Service Commission, behavioral sciences, and social legislation beginning in the 1960's (Cascio, 1995).  HR management can be viewed as the application of I-O psychology theories to the workplace.

In the present case, the areas of I-O psychology and HR management that hold the greatest relevance are the following: principles and research findings related fair and job-related assessment and promotion, job analysis, statistical identification of adverse impact, alternatives to standardized paper and pencil testing for promotions, and the establishment of fair and job-related cut scores.  In my career, I have done graduate and

undergraduate instruction, research, consulting, professional workshops, scientific

writing, and provided sworn testimony in all of these areas.

**APPENDIX C: MATERIALS RECEIVED AND REVIEWED**

1.      Massachusetts Human Resources Division Departmental Police
        Sergeant Promotional Examination for Lawrence, Announcement
        Number 2454, Examination Date: October 21, 2006

2.      Exam Development Steps List

3.      Massachusetts Human Resources Division Reading List for Promotional
        Examinations for Sergeant, Lieutenant, and Captain, April 21, 2006

4.       Summary of Reading List Survey for 2006-2008

5.      Massachusetts Human Resources Division / Assessment Centers - Use
        In Civil Service Promotions

6.      Affidavit of Vivian W. Lee

7.      Massachusetts Human Resources Division Education and Experience
        Rating Sheet Instructions for Police Sergeant, Lieutenant, and Captain;
        Promotional Examinati0n Date: October 21, 2006

8.      Massachusetts Human Resources Division 2006 Police Promotional
        Exams for Sergeant, Lieutenant, and Captain Employment Verification
        Form

9.      Massachusetts Human Resources Division Education and Experience
        Rating Worksheet

10.     Massachusetts Human Resources Division Reading List for Promotional
        Examinations for Sergeant, Lieutenant, and Captain, April 21,2006

11.     Massachusetts PD - Sergeant - Task Survey Analysis- Sergeant
        Essential Tasks List

12.     Massachusetts Human Resources Division Departmental Police
        Sergeant Promotional Examination for Methuen, Lowell, and Lawrence
        Announcement Numbers 7239, 1586, 2454, 7242, 2427, 7245, 2426
        Examination Date: October 21, 2006

13.     Massachusetts Human Resources Division 2006 Test Booklet
        Instructions for Applicants for Promotion to Police Sergeant, Lieutenant,
        and Captain

14.     Third Revised TIA for Police Promotional Examination of October 21, 2006,
        Date of Third Revision: December 15, 2006, Instrument Number 2629401

15.     Third Revised TIA for Police Promotional Examination of October 21, 2006,
        Date of Third Revision: December 15, 2006, Instrument Number 2629402

16.     Police Promotional Examination Subject Area Outline for
        October 21, 2006 Examination

17.     Revised Answer Key Dated October 18, 2006 for Police Promotional
        Examination Given on October 21, 2006

18.     DPX Police Examinations for October 22, 2005, List of Protested Items

19.     April 3, 2006, letter to Robert F. Downing from Vivian Lee, Assistant
        Director, Civil Service/Organizational Development Group,
        Massachusetts Human Resource Division re: Review of Examination
        Item 4; Announcement Number 6793

20.     December 28, 2006, letter to Daniel P. Dowd from Vivian Lee, Assistant
        Director, Civil Service/Organizational Development Group,
        Massachusetts Human Resource Division re: Review of Examination
        Item(s); Announcement Numbers 1373; 1383

21.     Massachusetts Human Resource Division's Response to a Number of
        Individual Protest Letters

22.     Massachusetts Human Resource Division Personnel Administration Rules,
        Effective as of February 28, 2003

23.     Massachusetts Department of Personnel Administration Validation Report
        for the 1991 Police Promotional Selection Procedures, October, 1, 1991

24.     Police Promotional Reading *List* Project, July 15, 1992, with Appendices

25.     March 10 1992: Revision of Police Sergeant, Lieutenant, and Captain
        Reading List for September 12, 1992 Examination

26.     Department of Personnel Administration Memorandum with Attachments

27.     Excerpt: The Criminal Investigation Process by Greenwood, Chaiken, and
        Petersilia

28.     Sergeant Task Profile List

29.     Sergeant KSAP Profile

30.     Department of Personnel Administration's November 13, 1990, Memorandum
        re: KSAPs

31.     KSAP and Task Linkage

32.      KSAPs Produced by PSJA Team Analysis

33.     Department of Personnel Administration's September 11, 1990, Memorandum
        re: Task Profiles with Attachments

34.     Civil Service Requisitions for Andover, Athol, Bedford, Brockton, Charlton,
        Fairhaven, Framingham, Haverhill, Hingham, Hull, Kingston, Leominster, Lowell, Marblehead,
        Marlborough, Medway, Montague, Needham, Newton, North Reading,  Norton,
        Norwood,     Plainville, Reading, Rockport, Sandwich, Somerville, Sudbury, Sudbury, Taunton,
        Walpole,Wayland, Westford, Whitman

35.     Draft Response to Individual Protest Letters

36.     Resume of Subject Matter Experts

37.     Protest letter regarding 2006 sergeant's promotional exam from William
        L. Schlieman, October 27, 2006

38.     October 24, 2006, letter to Vivian Lee, Massachusetts Human Resource
        Division from Andrew J. Sluckis, Auburn Chief of Police re: 2006
        Promotional Exam

39.     Massachusetts Human Resources Division Departmental Police Sergeant
        Promotional Examination for Cambridge, Announcement Number 9557,
        Examination Date: October 20, 2007

40.     Reading List for October 20, 2007, Promotional Examinations

41.     Education and Experience Rating Sheet Instructions for October 20, 2007
        Promotional Examinations

42.     Police Promotional Examination Subject Area Outline for October 20, 2007,
        Examination

43.     TIA for Police Promotional Examination of October 20, 2007, Instrument
        Number 2729301

44.     Response key Information for October 10, 2007 Departmental Promotional
        Examinations for Police Sergeant, Lieutenant, and Captain

45.     Sixty-seven (67) December 28, 2007 letters from Vivian W. Lee,
        Human Resource Division, re: Review of Examination Items

46.     Protest letters from Raymond Richardson regarding the October 20, 2007, Lowell
        Police Department promotional examinations, dated October 22 and 25, 2007

47.     Job Analysis Report for Police Sergeant – City of Boston (with appendices)

48.     Assessment Centers – Use in Civil Service Promotions

49.     "Guidelines and Ethical Considerations for Assessment Center Operations"
        By International Public Management Association Assessment Council (IPMAAC)

50.     Sample of Professional Consultants Rendering Public Safety Assessment
        Services (as of October 2004)

51.     Civil Service Requisition (Form 13)

52.     Sample Delegation Agreements

53.     Sample Examination Announcement Posters

54.     Examination Related Forms and Information Sheets

55.     Suggestions to Appointing Authorities Concerning Developing Structured Oral
        Panel Interviews (1989)

56.     Summary of Proposed Changes to Answer Key (#'s 1-60) based on 06 Police
        SLC Appeals, December 1, 2006

57.     Test Item Analysis for '06 sergeant exam, #2629401

58.     Departmental Promotional Examination Announcement # 6657, Police Sergeant,
        Boston Police Department, Examination Date: October 22, 2005

59.     Reading List Announcement for BPD exam (2nd amend. 5/2/05)

60.     Education and Experience Rating Sheet Instructions ('05 exam)

61.     Education and Experience Scoring Grid for '05 exam (Announcement # 6520)

62.     Employment Verification Form

63.     HRD Promotional Examination Meeting Agenda, January 13, 2005

64.     Exam Outline for '05 BPD exam (by competency areas) (rev. 6/28/05)

65.     Response Key Information (BPD '05 exam)

66.     TIA (BPD '05 exam), # 2229501

67.     Departmental Promotional Examination Announcement #6520, Police Sergeant,

Abington Police Department, Examination Date: October 22, 2005

68.    Reading List Announcement ('05 statewide exam)

69.    Education and Experience Instructions and Forms ('05 statewide exam)

70.    E & E scoring grid ('05 statewide exam)

71.    Exam outline for '05 statewide exam

72.    Response key info ('05 statewide sgt. exam)

73.    Test Item Analysis (statewide '05 exam), # 2529501

74.    Numbers of test-takers for 5 most recent sgt exams

75.    Applicant & test-taker statistics for the 2003 and 2004 sgt exams

76.    Promotion Report from 2006 exam eligibility lists (updated on 5/7/08)

77.    Promotion Report form 2005 exam eligibility lists (updated on 5/7/08)

78.    Adverse impact analyses for 2005 BPD and military makeup exams

79.    Adverse impact analyses for 2007 sergeant exam

80.    Adverse impact analyses for 2005 statewide sergeant exam

81.    Test results for all candidates who sat for 2003 sergeant exam

82.    2003 exam-takers eventually promoted, identified by race, municipality, & score

83.    Names of all 2003 test-takers, arranged alphabetically by municipality, with racial group identified, and promotion date (if any)

84.    Test results data for all candidates who sat for 2004 sgt exam

85.    2004 exam-takers eventually promoted, identified by race & municipality

86.    Names of all 2004 test-takers, arranged alphabetically by municipality, with racial group identified, and promotion date (if any)

87.    Individual answers recorded for all 2006 sergeant exam-takers

88.    Copies of documents Dr. Joel Wiesen requested during his on-site review of HRD's collection of original documents pertaining to the 2005, 2006, or 2007

HRD-administered police sergeant promotional examinations

89.    June 30, 2008 email from State Defendant with test data for 2004 sergeant exam

90.    June 30, 2008 email from State Defendants with test data for 2003 sergeant exam

91.    June 30, 2008 email from State Defendant with applicant response data for 2005,
       2006 and 2007 sergeant exam

92.    August 20, 2008 email from State Defendant with data relevant to 2005, 2006 and
       2007
        sergeant exams (replacing previous 2005, 2006, and 2007 data)

93.    October 22, 2008 email from State Defendant with 2005, 2006 and 2007
       lieutenant data

94.    Transcript of Depositions (plus exhibits) of Sally McNeey, Guy Paris and Vivian
       Lee

95.    Expert Report of Dr. Joel Wiesen dated October 3, 2008.

**APPENDIX D: LANDY TESTIMONY IN FEDERAL CASES IN PAST FIVE YEARS**

### Testimony in Federal Cases 2003 – 2008

2003    *Moore v. Chertoff.*  United States District Court for the District of Columbia, Civil Action #00-0953.  Defendant. Deposition.

2004    IRS for Tax Specialist Arbitration.  Contract No. TIRNO 06-P-00397.  Defendant. Testimony.

2005    *Bradley v. City of Lynn et al.*  United States District Court, District of Massachusetts.  Plaintiff.  Trial Testimony.

2006    *Braun v. Wal-Mart Stores Inc.*, 3127, and *Hummel v. Wal-Mart Stores Inc.*, 3757, Court of Common Pleas, Philadelphia County, Pennsylvania (Philadelphia).  Plaintiff.  Trial Testimony.

2006    *Ellis et al. v. Costco Warehouse Sales, Inc.*  United States District Court, Northern District of California (San Francisco Division).  Case No. C04-3341-MHP.  Defendant.  Deposition.

2006    *Badgley and Whitney et al. v. Vermont State Police.*  Superior Court, State of vermont windham county.  Docket No. 538-11-02Wmcv.  Plaintiff.  Trial Testimony.

2007    *Whitaker et al. v. 3M Company*.  State of Minnesota, County of Ramsey.  Court File No. 62-C4-04-012239.  Defendant.  Deposition.

2007    *Ramon Moreno and Ernesto Moraila v. Guerrero Mexican Food Products (Division of Gruma Corporation).*  United States District Court, Central District of California.  Case No. CV05-7737 DSK (PLAx).  Defendant.  Deposition.

2007    *Test Appeals of Captains Caspers and Kearns*, Administrative Law Hearing, State of Washington, OAH Case Nos. 2006-BPC-0001; 0002; Defendant.  Deposition and Testimony.

2008    *Braun et. al. v. Wal-Mart Minnesota*, First Judicial District, State of Minnesota, File No. 10-CO-01-9790.  Plaintiff. Deposition Testimony.