**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| PEDRO LOPEZ, ET AL.,  )  <br>  )  <br>    Plaintiffs,  )  <br>  )  <br>    v.  )  <br>  ) Case No. 07-CA-11693-GAO  <br>CITY OF LAWRENCE,  )  <br>MASSACHUSETTS, ET AL.,  )  <br>  )  <br>    Defendants.  )  | |

**MEMORANDUM OF DEFENDANTS CITY OF LAWRENCE, CITY OF METHUEN, CITY OF LOWELL, CITY OF WORCESTER, CITY OF SPRINGFIELD, AND MASSACHUSETTS BAY TRANSPORTATION AUTHORITY IN SUPPORT OF *MOTION IN LIMINE* TO PRECLUDE CERTAIN EXPERT TESTIMONY OF DR. JOEL WIESEN AND DR. CASSI FIELDS**

**I.   INTRODUCTION**

The essence of Plaintiffs' complaints against the municipal Defendants and the Massachusetts Bay Transportation Authority (collectively, the "Defendants") is that their respective policies and practices of using promotional examinations developed and administered by the Commonwealth of Massachusetts Human Resources Division ("HRD") have a disparate impact on the rates of promotion of minorities (Blacks and Hispanics) within the Defendants' respective Police Departments; that this disparate impact is the result of flawed examinations; and that the Defendants have reasonable options other than the examination developed and administered by HRD to reduce adverse impact. [Seventh Amended Complaint at ¶¶ 73-79].

Pursuant to the Federal Rules of Evidence (F.R.E.) § 702, Defendants City of Lawrence, City of Methuen, City of Lowell, City of Worcester, City of Springfield and Massachusetts Bay Transportation Authority (the "MBTA") (collectively, the "Defendants") move the Court for an order to preclude testimony and evidence of Dr. Joel Wiesen and Dr. Cassi Fields (together, the "Plaintiffs' Experts") relating to their analyses of adverse impact across jurisdictions, on the grounds that (1) such evidence is insufficient to support Plaintiffs' prima facie case that adverse impact on minority rates of hiring exists within each individual Defendant employer in view of the absence of any causation; and (2) the methods used by Plaintiffs' Experts to conduct their analysis across jurisdictions does not meet the minimum threshold for admissibility, insofar as it distorts the data and fails to account for factors other than the examination that contribute to the appearance of adverse impact.

For the reasons set forth more fully below, the Defendants submit that the Court should preclude the analyses conducted by Plaintiffs' Experts based on data aggregated across jurisdictions, because of its lack of relevance and unreliable methods.

## II.    ARGUMENT

### A.    Aggregated Statistics Lack Relevance To Plaintiffs' Claims And Cannot Be Used To Support It's Prima Facie Case.

Because Plaintiffs' Experts' state-wide analyses are devoid of any evidentiary value and cannot be used to support liability against the individual Defendants, and because neither expert has conducted any expert analysis based on the hiring data individual to the respective Defendants, the Court should grant the Defendants' Motion and preclude both Dr. Wiesen and Dr. Fields from testifying at trial regarding adverse impact.

1. <u>Plaintiffs' Prima Facie Case Requires Proof That Defendants' Use of HRD's Examination Has An Adverse Impact On Minority Rates of Hire Within The Employing Unit.</u>

The framework for proving unlawful discrimination based on disparate impact is set forth in 42 U.S.C. § 2000e-2(k)(1)(A). A disparate impact claim arises when an employer's otherwise neutral policy has a 'significantly disproportionate impact on a protected class. 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Albermarle Paper Company v. Moody*, 422 U.S. 405 (1975). In order to establish a prima facie case of discrimination, a plaintiff must (1) identify the challenged employment practice or policy; (2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. 42 U.S.C. § 2000e-2(k)(1)(A)(i). If the plaintiff can meet its initial burden, the burden then shifts to the defendant to show that the employment practice is valid by showing that it is job related and consistent with business necessity. *Ricci v. DeStefano*, __ U.S. __, 129 S.Ct. 2658 (2009). Where an employment test is challenged, the question is whether the test bears a manifest relationship to the employment in question. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971).

Plaintiffs frequently will seek to prove disparate impact using a calculation known as the "4/5th Rule" which comes from the Equal Employment Opportunity Commission's (EEOC's) Uniform Guidelines on Employee Selection Procedures. 29 C.F.R. § 1607.4(D); *Bradley v. City of Lynn*, 443 F.Supp.2d 145. 160 (D. Mass. 2006). This calculation compares the rates of hiring of minority and non-minority candidates for promotion or hire; if the resulting ratio is less then .80 (meaning the rate of hiring for minorities is less than 80% of the rate of hiring for non-minorities), such a result may

indicate that the challenged employment practice has an adverse impact on minority employment and promotion opportunities. *Bradley*, supra. The rule, however, "has not provided more than a rule of thumb for the courts." *Bradley*, 443 F.Supp at 161 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 995 n. 3 (1988)) .

As a threshold matter, it is important to note what this case is *not* about. This case is not a class action. Moreover, the entity that develops and administers the examinations at issue (i.e., the Commonwealth of Massachusetts) is no longer a defendant. Rather, this case consolidates seven (7) separate cases against seven individual Defendants; each individual claim has been brought by a named employee or employees directly against his/her (or their) employer. Police officers within each of the Defendant police departments did not compete for promotion against officers from other departments; that is, under G.L. c. 31, only the names of police officers employed within each department may appear on the eligible list based for that employer. [G.L. c. 31 §§ 7 - 10].

Thus, while these individual claims have been consolidated by Plaintiffs in this action to preserve resources and avoid duplication of effort, the Plaintiffs nevertheless must prove their claims against each of the Defendants individually; Plaintiffs claims against each Defendant must be considered based on the evidence relevant to that particular Defendant.

    2.    <u>The Standard of Proof in Disparate Impact Discrimination Cases Precludes The Plaintiffs From Supporting Their Claims Based On Promotional Data Aggregated Across Jurisdictions</u>.

Here, the challenged employment practice against each of the Defendants is their use of an examination (or examinations) developed and administered by HRD. [Complaint at ¶¶ 73-79]. The burden on Plaintiffs thus is to demonstrate that the

4

challenged employment practice has a disparate impact on the rates of minority hiring within each employing unit. More particularly, as part of its prima facie case, Plaintiffs must show that the challenged employment practice <u>caused</u> the discriminatory impact that they seek to prove. Plaintiffs' proof based on state-wide adverse impact statistics lacks any connection to the challenged employment practice, because it can hardly be argued that any of the Defendants' use of these examinations within their respective police departments could have caused a state-wide problem. For example, Plaintiffs are not expected to argue that the City of Lowell's employment practice of using HRD's examination has a disparate impact on minority rates of hiring *statewide*. Such an argument is obviously illogical and not reasonable - - the City of Lowell's employment practice of utilizing HRD's 2006 examination affects only the promotions of its own officers within its jurisdiction. Since, in order to establish liability, Plaintiffs' prima facie case requires them to show that the challenged employment practices negatively impact minority hiring by each Defendant, they can only do so by disaggregating the promotional data, and analyzing the data applicable to each Defendant.

Notwithstanding that data aggregated state-wide is entirely irrelevant and insufficient to support liability against each individual Defendant, Plaintiffs' Experts have provided analyses for the 2005 – 2007 HRD examinations based on state-wide aggregated statistical data, by grouping the rates of promotion for employee police officers working for several different employers - - <u>*not one*</u> of Plaintiffs' Expert reports contains any comprehensive analyses of disparate impact based on promotional and candidate data unique to each individual Defendant/employer (other than Boston, whose statistics have been disaggregated from the Defendants, and thus Boston does not join in

this Motion).[1]   [*See Expert Report on Adverse Impact, Validity and Fairness of Four Promotional Examinations for Police Sergeant Administered Pursuant to MGL Chapter 31*, by Joel P. Wiesen, Ph.D., dated October 3, 2008 (hereinafter "Wiesen Report 1") (Exhibit 1); *Supplemental Expert Report in Lopez at al. v. City of Lawrence et al*, by Joel P. Wiesen, Ph.D. dated March 30, 2009 (hereinafter "Wiesen Report 2")(Exhibit 2); *Second Supplemental Expert Report in Lopez et al. v. City of Lawrence et al*, by Joel P. Wiesen, Ph.D. dated April 14, 2010 (hereinafter "Wiesen Report 3")(Exhibit 3); *Report of Cassie L. Fields, Ph.D*., dated March 30, 2010 (hereinafter "Fields Report") (Exhibit 4)].

Plaintiffs' Experts' rationale, expressed in their expert reports, for conducting analyses of aggregated data across different employers is based on false information and lacks any scientific or legal basis.  For example, during his deposition, Dr. Wiesen was asked, directly, why he did not conduct an analysis municipality-by-municipality.  Dr. Wiesen testified that the reason was because at the time that he conducted his initial analysis, the focus of the case was against the Commonwealth of Massachusetts. [*Deposition of Joel P. Wiesen* (hereinafter "Wiesen Depo.") at pp. 124-125 (attached hereto as Exhibit 5)].  This does not constitute a scientific or legal basis for supporting the use of this data against the individual Defendants.

Additionally, in his Supplemental Report (Exhibit 2), Dr. Wiesen states that the use of aggregated statistics is appropriate and has been used in federal courts.  [*Wiesen Report 2* at page 6].  This bald assertion is unsupported and, frankly, untrue.  In fact, the opposite is true.  Although Dr. Wiesen cited to *Bradley v. City of Lynn*, 443. F.Supp.2d

---

[1] While Dr. Wiesen's most recent report (Exhibit 3) engages in a cursory review of some data from the 2005-2007 examination on a disaggregated basis, this analysis only looked at four of the Defendants, and failed to discuss or consider the "shift of one" rule as required under the *Uniform Guidelines*.

145 (D. Mass. 2006), to support this claim, *Bradley* in fact supports the Defendants' position that, as a matter of law, it is inappropriate to determine adverse impact within a community without proof based on disaggregated hiring statistics within each community. In *Bradley v. City of Lynn*, supra, plaintiffs brought a class action under Title VII against the Commonwealth of Massachusetts and the City of Lynn, alleging that the civil service examination for entry level firefighters had a disparate impact on minorities. In that case, in determining whether disparate impact existed for the purpose of liability against the individual municipalities, Judge Saris examined the data on a disaggregated city-by-city basis:

> ". . . the Court finds that the statewide aggregated approach advocated by the plaintiffs and the disaggregated municipality approach advocated by the HRD are both useful in this case . . . The decision process in hiring firefighters in Massachusetts, however, contains multiple steps that span both the state and municipal levels. . . The HRD argues that statistical evidence aggregated on a statewide basis is flawed because hiring decisions are made individually in each municipality at the local level and because a large municipality can distort the whole adverse impact analysis. Dr. Jacobs asserts that aggregation 'allows one single jurisdiction to have a major influence on the entire system leading to a conclusion of adverse impact for the entire Commonwealth when a single community is responsible for the outcome.' . . . Because this seems reasonable, the Court examines the disaggregated hiring data of Boston. The Court also examines the disaggregated hiring data of Lynn, the municipality of the four named plaintiffs. The data shows that the examination has a disparate impact on the hiring of minorities in both of these municipalities."

*Id* at 165.

Here, the evidence supporting disaggregation of the data is even more compelling than in *Bradley v. Lynn*. As noted, unlike the entry level firefighter positions at issue in *Bradley v. Lynn*, police officers in different police departments do not compete against each other for promotion. Additionally, unlike in *Bradley v. Lynn*, this is not a class

7

action. Again, unlike *Bradley v. Lynn*, the entity responsible for the state-wide examination, the Commonwealth of Massachusetts, is no longer a party to this case and thus any discussion of state-wide impact is even more inappropriate.

Moreover, while the Defendants' were unable to find a single case where data was aggregated across different defendant-employers for the purposes of proving liability against each, even in cases that involve a <u>single</u> employer that operates across a broad geographical area, courts have held that the value of statistics at the macro or micro level depends upon the similarity of employment practices, interchange of employees and interchange of decision-makers. See e.g., *Dukes v. Wal-Mart Stores*, 222 F.R.D. 137. 157 (N.D. Ca. 2004) (affd. in part and remanded by *Dukes v. Wal-Mart Stores*, 603 F.3d 571 (9th Cir. 2010)).

The Plaintiffs' Experts do not necessarily even argue that aggregation of data is appropriate to support a prima facie case of discrimination. Rather, Dr. Wiesen argues in his rebuttal to the Defendants' expert's report (Dr. James Outtz, discussed below), that aggregation of data may be useful for the purposes of *examining patterns*, but he does not go as far to suggest that data may be aggregated state-wide for the purpose of *determining liability* in each of the individual Defendant jurisdictions. [*Wiesen Report 2* at page 4]

For her part, Dr. Fields submits, summarily, that the aggregation of data across jurisdictions is relevant because HRD itself engages in such analyses when it reviews its examinations. [*Fields Report* at page 10 (Exhibit 4)]. Again, this argument is not based on any legal or scientific principles. The methods used by HRD when looking at its examination results are irrelevant to whether it is appropriate to use such state-wide

aggregated statistics to establish liability under Title VII against the individual Defendant municipalities.

      3.      <u>Plaintiffs' Real Reason For Avoiding Disaggregated Analyses Is That They Understand That They Cannot Establish Prima Facie Cases Against Each Defendant Based on Disaggregated Statistics</u>.

The reality is that Plaintiffs have presented only state-wide analyses because their Experts are well aware that they cannot establish statistical disparities sufficient to set forth a prima facie case of disparate impact discrimination against each Defendant, based on promotional data within each jurisdiction. They thus have sought to will away this glaring weakness in their case by focusing on state-wide aggregated statistics across different employers. This is so because the pool of applicants in each of the jurisdictions utilizing the HRD Sergeant examination for promotion is too small to be statistically significant. Indeed, Dr. Wiesen acknowledged during his deposition that, in the case of the City of Worcester for example, if he had based his analysis on Worcester's own promotional data, "the federal enforcement agencies probably would not consider that adverse impact." [*Wiesen Depo*. at 142-143 (Exhibit 5)].

Upon the disaggregation of the data, the picture becomes clear that the small sample sizes in each jurisdiction are insufficient to establish disparate impact in each of the Defendants' respective employing units. As of February 2009, in regard to the eligible list established from the 2005 examination, the MBTA promoted only five (5) candidates and the City of Springfield only six (6) candidates. From the 2006 examination eligible list, the City of Lawrence promoted only two (2) candidates, the City of Lowell promoted seven (7) candidates, and the City of Worcester, seven (7) candidates. From the 2007 examination, the City of Springfield promoted four (4)

9

candidates. [Outtz report at 16-18]. When a data set is this small, the *Questions and Answers on the Federal Executive Agency Guidelines On Employee Selection Procedures,* 44 Fed. Reg. 11,996 (1979), makes it clear that one may not establish a statistical disparity based on the 4/5$^{ths}$ rule alone, and that use of the 4/5ths rule is inappropriate where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group:

> "If the numbers of persons and the difference in selection rates are so small that it is likely that the difference could have occurred by chance, the federal agencies will not assume the existence of adverse impact, in the absence of other information . . . Generally, it is inappropriate to require validity evidence or to take enforcement action where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group. "

This rule for analyzing adverse impact when a data set is too small to be statistically significant is known as the "shift of one" rule. In fact, the First Circuit, in *Boston Police Superiors Officer Federation v. City of Boston*, 147 F.3d. 13 (1st Cir. 1998), adopted this "shift of one" approach to determining adverse action when the statistical sampling is small. *Id.* at 22. The First Circuit's approach was based on *Fudge v. City of Providence*, 766 F.2d. 650 (1st Cir. 1985) which found that, where the statistical sample is small, the 4/5ths rule is not an accurate test of discriminatory impact. Significantly, in *Boston Police Superior Officers Federation*, this approach was based on the expert opinion of Dr. Frank Landy - - the Plaintiffs' first expert in the instant case. See also *Cotter v. City of Boston*, 193 F.Supp.2d 323, 348, n.11 (1st Cir. 2002) (there are

instances, particularly where the sample size is small, where use of the four-fifths rule is inappropriate).

This approach has been adopted in other circuits as well. In *Mems v. City of St. Paul*, 224 F.3d 735 (8th Cir. 2000), the U.S. Court of Appeals for the Eighth Circuit affirmed the decision of the district court granting summary judgment in favor of the employer, finding:

> "[a]lthough white firefighters passed the written examination in greater numbers than African-Americans, the sample size ranged from three to seven. Both the [a]ppellants' and [employer's] expert witnesses agreed that the sample size was too small to be statistically significant. We agree. . . Because the Appellants have not produced statistically significant evidence that African Americans were disparately impacted by the [employer's] promotional examination, we affirm the district court's grant of summary judgment."
> *Id*. at 74-741.

In *Stewart v. City of Saint Louis*, 2007 WL 6211634 (E.D. Mo 2007) (aff.d *Stewart v. City of Saint Louis*, 532 F.3d 939 (8th Cir. 2008), the U.S. District Court for the Eastern District of Missouri expressly referred to the EEOC rules to note that the enforcement agency would require additional information beyond the four-fifths rule to show adverse impact. *Id.* at 9 (citing to 44 Fed. Reg. 11, 996 (June 21, 1979)); *NAACP v. City of Mansfield*, 866 F.2d 162, 168 (6th Cir. 1989) (this court has been cautious about giving too much weight to 'four-fifths' computations where the sample base is of less than significant proportions); *Frasier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1451 (D.C. Cir. 1988) (approving the district court's rejection of the 80% rule where the sample size was small).

The Defendants have engaged Dr. James Outtz and Dr. Jacinto Silva to similarly analyze the issue of disparate impact in rates of promotion to Sergeant by the Defendants.

11

In his expert report, Dr. Outtz demonstrated how, under the EEOC guidelines, with a 'shift of one' in each of the jurisdictions which utilized the HRD examination, the shift of one results in no adverse impact in nearly all of the Defendant jurisdictions. [*Report of James L. Outtz*, dated February 9, 2009 (hereinafter "Outtz Report 1" (Exhibit 6) at 13 - 19].

For example, in the City of Worcester in particular, the City promoted an African-American from the list established as a result of the 2006 examination. The selection rate for minorities compared to non-minorities from that list was 76%. [*Outtz Report 1* at 17]. While slightly below the four-fifths rule, a shift of one is particularly appropriate in view of the small sample size (only seven Worcester police officers were promoted from the list). When there is a shift of one (one less white hired, one more minority hired), the selection rate of minorities to non-minorities becomes 1.80; in fact, with a shift of one, the rate of hiring whites compared to minorities becomes 55% - - a more statistically significant adverse impact on whites eligible for promotion to Sergeant in the City of Worcester.[2]

Thus, analysis of the data and impact on promotions in each jurisdiction is the only appropriate and fair basis for the purposes of examining liability in this case. In short, statistical analyses, viewed on a state-wide basis, are insufficient to support Plaintiffs' burdens against each individual Defendant.

---

[2] These statistics are for illustrative purposes. The City of Worcester intends to separately file a Motion in Limine to preclude the admission of adverse impact statistics on the rate of promotion of Hispanic candidates in connection with Worcester's use of the 2006 examination, because Worcester's one plaintiff is Black, and therefore does not have standing to argue the City's challenged employment practice has an adverse impact on Hispanic candidates.

> 4. <u>Plaintiffs' Experts Must Be Precluded From Testifying On Adverse Impact Because Their Analysis of Data Aggregated State-Wide Is Neither Relevant Nor Sufficient To Support Plaintiffs' Claims And Because They Have Offered No Alternative Analyses Based On Disaggregated Data.</u>

Based on the above facts and argument, the Defendants' request an order from the Court precluding Plaintiffs' Experts from offering their opinions on adverse impact data, either on an aggregated or disaggregated basis. Testimony and evidence based on data aggregated across several employers lacks the relevance to the individual claims against each of the Defendants required for admissibility, and must be excluded on that basis. Moreover, because Plaintiffs' Experts have had two years to examine the data on a disaggregated basis and have failed to offer a meaningful analysis of the data disaggregated by Defendant (other than a limited look which did not even mention the "shift of one" rule), and which includes all Defendants, Plaintiffs' Experts must be precluded from offering their opinions at trial on matters that they have failed to present during discovery.

> **B.   Plaintiffs' Experts' Analyses Must Be Excluded As They Do Not Meet The Standard Of Admissibility For Expert Evidence.**

Even if Plaintiffs' Experts analyses could pass the standard for relevance, the methods used by Plaintiffs' Experts in reaching their conclusions are flawed and significantly distort the data. Accordingly, for the reasons set forth below, Plaintiffs' Experts' reports and testimony based on their analyses of data aggregated across jurisdictions must be excluded because it does not meet the threshold for admissibility under F.R.E. § 702.

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. *Kumho Tire Co., Ltd. v Carmichael,*

526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In order to be deemed admissible under F.R.E. § 702, expert testimony must be the product of reliable principles and methods; it must be based on sufficient facts and data, and apply principles and methods reliably to those facts. [F.R.E. § 702]. Careful scrutiny of the assumptions on which Plaintiffs' Experts base their opinions reveals that they examined the data as though the various jurisdictions were a single hiring authority where police officers compete with each other in all jurisdictions for promotion. Plaintiffs' Experts, in applying an overly simplistic formula, simply ignore many factors relevant to a determination of adverse impact.

The aggregation of data statewide is not useful in making a determination of adverse impact in any particular municipality. Moreover, the method used by Plaintiffs' Experts was to group the candidates for promotion within each jurisdiction into a single large group, as though the candidates compete with each other on a single combined eligible list across the state. Such an analysis has the result of giving the same weight to candidates in various jurisdictions, regardless of whether in one jurisdiction there may be three candidates for promotion and in another jurisdiction, 40 or more candidates for promotion. Dr. Silva explains that this may result in a phenomenon known as "Simpson's Paradox." *[Report of Jacinto Silva, Ph.D.*, dated May 28, 2010 (hereinafter "*Silva Report 2*") at page 2 (attached hereto as Exhibit 7).

In an example which is as simple as it is compelling, Dr. Silva explains how - - if you aggregate the hiring data of two jurisdictions, each of which has at least one minority eligible for promotion, where there exists no adverse impact on hiring within each jurisdiction - - aggregating the two could yield a distorted adverse impact ratio. [*Silva*

14

*Report 2* at page 2]. In his example, in Jurisdiction 1, there are 16 test-takers; two minority and fourteen white candidates. If Jurisdiction 1 promotes one minority and seven white minority candidates, then the rate of hiring of minorities compared to non-minorities is the same (adverse impact ratio of 1). Similarly, in Jurisdiction 2, there are 77 candidates for promotion; twenty-eight (28) minorities and forty-nine (49) whites. If Jurisdiction 2 promotes four (4) minority and seven (7) non-minority candidates, then the rate of hiring is the same (adverse impact ratio of 1). If, however, the candidates for promotion are combined across jurisdictions, and given equal weight as though they compete together for positions within a single employer, the adverse impact ratio becomes .75 (below the 4/5$^{th}$s "rule of thumb"). [*Silva Report 2* at 2]. Thus, aggregating the data makes it appear that there is an adverse impact in both jurisdictions when in actuality there is no adverse impact in either jurisdiction.

Additionally, Plaintiffs' Experts' overly simplistic equation fails to consider other possible factors (other than an allegedly flawed test) that may contribute to the appearance of adverse impact, such as additions to raw scores based on education and experience, or the contribution of statutory requirements (such as the requirement that candidates must be within the '2N + 1' highest scoring candidates to even be considered by the appointing authority).

Further, Plaintiffs' Experts combine statistics across time, again as though they are all competing on a single list. In this scenario, because test-takers often repeat taking the same test, the result is that many test-takers will be counted two or more times. Test-takers who have been promoted may be included more than once as non-promoted and promoted candidates in such a scenario. Such an analysis, combining lists and repeating

the same candidates across time, distorts the numerical data from which the experts make their calculations:

> "For [Wiesen and Fields] it also appears to be irrelevant that the same candidates participate in the exams from year to year and that the collapsed multi-year data contains many of the candidates multiple times and further confounds the data. Even more disturbing is that in data that is aggregated across years, many candidates appear as both promoted and non-promoted candidates." [*Silva Report 2* at 1 (Exhibit 7)].

Accordingly, the Plaintiffs' Experts' overly simplistic calculation of state-wide data is not really an 'expert' analysis at all, but constitutes a simple calculation that is not based on reliable principles and clearly distorts the evidence against the Defendants.

## III.  CONCLUSION

A critical examination of the assumptions underlying the opinions that Plaintiffs' Experts intend to offer at trial demonstrates that they are based purely on irrelevant and insufficient analyses and flawed methods. Because they have demonstrated no reasonable basis for their computations, Plaintiffs' Experts' opinions are devoid of any evidentiary value, and fail to meet the minimum threshold for admissibility of expert evidence prescribed by F.R.E. 702. Consequently, the Court should grant Defendants' Motion in Limine, and exclude Plaintiffs' Experts from testifying at trial regarding any adverse impact analyses.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| WILLIAM M. MANZI, III in his capacity as MAYOR OF THE CITY OF METHUEN, MASSACHUSETTS, | CITY OF LOWELL, |
| By their attorney, | By its attorneys, |
| /s/ Peter J. McQuillan | /s/Brian W. Leahey |
| Peter J. McQuillan<br>B.B.O. #340180<br>Office of the City Solicitor<br>41 Pleasant Street, Room 311<br>Methuen, MA 01844<br>(978) 983-8575<br>(978) 983-8981 | Brian W. Leahey, Assistant City Solicitor<br>BBO #567403<br>City of Lowell - Law Department<br>375 Merrimack Street, 3rd Floor<br>Lowell, MA 01852-5909<br>Tel: 978-970-4050<br>Fax: 978-453-1510 |
| Dated: June 22, 2010 | Dated: June 22, 2010 |
| CITY OF LAWRENCE, MASSACHUSETTS, AND JOHN (sic) MICHAEL SULLIVAN, IN HIS CAPACITY AS MAYOR OF THE CITY OF LAWRENCE | CITY OF WORCESTER and MICHAEL O'BRIEN, |
| By their Attorney, | By their attorneys, |
| /s/Richard D'Agostino | /s/Laurie W. Engdahl |
| Richard D'Agostino, Esq., BBO #633984<br>Assistant City Attorney<br>Room 306 - City Hall<br>200 Common Street<br>Lawrence, MA 01840<br>(978) 794-5800 | Laurie W. Engdahl<br>B.B.O. #554635<br>Daniel C. Brown<br>B.B.O. #648038<br>Collins, Loughran & Peloquin, P.C.<br>320 Norwood Park South<br>Norwood, MA 02062<br>(781) 762-2229 |
| | Dated: June 22, 2010 |

CITY OF SPRINGFIELD, MASSACHUSETTS, MAYOR DOMENIC SARNO, JR. IN HIS CAPACITY AS MAYOR FOR THE CITY OF SPRINGFIELD,

By its Attorney,

/s/ Harry Carroll
Harry Carroll, Esq., BBO #399770
City Solicitor
City of Springfield - Law Department
36 Court Street, Room 220
Springfield, MA 01103
(413) 787-6085

Dated: June 22, 2010

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, DANIEL GRABAUSKAS IN HIS CAPACITY AS GENERAL MANAGER, THE BOARD OF TRUSTEES OF THE MASSACHUSETTS BAY TRANSPORTATION AUTHORITY,

By its Attorneys,

/s/Kevin S. McDermott
Kevin S. McDermott, BBO #544513
Assistant General Counsel
MBTA Law Department
Ten Park Plaza, Suite 7760
Boston, MA 02116
(617) 222-4756

Dated:  June 22, 2010

**CERTIFICATE OF SERVICE**

    I, Laurie W. Engdahl, certify that on June 22, 2010, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

/s/Laurie W. Engdahl
Laurie W. Engdahl