IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------------------

**PEDRO LOPEZ, et al.,**

                Plaintiffs

    vs.

City of Lawrence, Massachusetts, et al.,

                Defendants.

---------------------------------------------

CIVIL ACTION NO. 07-CA-11693-JLT

**Report of James L. Outtz, Ph.D.**

Prepared by:

James L. Outtz, Ph.D.
Outtz and Associates
816 Connecticut Avenue, N.W.
Suite 800
Washington, D.C. 20006

February 9, 2009

**PEDRO LOPEZ, et al. vs. City of Lawrence, Massachusetts, et al.**

---

# CONTENTS

Table of Contents…………………………………………………………………2

Introduction……………………………………………………………...3-6

    Purpose………………………………………………………….........3

    Qualifications……………………………………………………...3-5

    Sources of Information………………………………………………6

Background……………………………………………………...6-9

    Conclusions of Plaintiffs' Experts…………………………………8-9

An Evaluation of Plaintiffs' Experts' Conclusions…………………………9-30

    Adverse Impact……………………………………………………...9-20

    Validity of the Boston Police Sergeant Examination…………………………...20-30

        Historical Perspective…………………………………………...20-22

        Modifications to the Police Sergeant Promotional Examination…….23-25

        The 2005 Boston Police Sergeant Examination……………………...25-26

        Plaintiffs' Criticisms of the 2005 Examinations………………...26-30

**Appendices**

Appendix A:  Curriculum Vitae…...………………….…………………...…..…….1-41

Appendix B:  List of Documents Relied Upon………………………….…………42-53

Appendix C:  Previous Testimony…………...…………………….…………...…54

Appendix D:  Listing of Jurisdictions with no Minority Applicants that Administered the 2005, 2006, or 2007 Police Sergeant Examination…………………...55-57

Appendix E:  Delegation Agreement Between the Boston Police Department and the Massachusetts Human Resources Division (HRD) …………………58-60

Appendix F:  Tasks and KSAs Important to the Position of Police Sergeant Produced by Job Analysis………………………………………………...…61-75

Appendix G:  Commissioner's Memo 02-035, 5/29/02, Subject: Promotional Exam 2002………………………………………………………...76-77

Appendix H:  Memo from Director Sally A. McNeely (2432) 2/14/05, Subject: Updating the Reading Lists for Promotional Examinations Serving as a Subject-Matter-Expert for Police Promotional Examinations……………...78-80

**INTRODUCTION**

## Purpose

The purpose of this report is to respond to plaintiffs' experts, Drs. Joel Wiesen and Frank Landy, with regard to their evaluations of the validity and fairness of promotional examinations for Police Sergeant administered in 2005, 2006, and 2007 by the Massachusetts Human Resources Division (HRD) and subsequent promotions of candidates to the position of Police Sergeant based on those examinations. Plaintiffs' experts address (a) the validity of the examinations, (b) the adverse impact of the examinations, and (c) possible alternative examination approaches that they assert could have been expected to have equal or greater validity and less adverse impact. In this report, I respond to plaintiffs' expert's assertions and demonstrate why their conclusions are based upon inaccurate assessments of adverse impact in this case or assumptions that are not supported by the facts in this case. This report also addresses the steps taken by HRD to comply with federal regulations and standards of accepted professional practice with regard to the development, validation, and use of the Police Sergeant examinations administered by the Commonwealth of Massachusetts in 2005, 2006, and 2007.

## Qualifications

I am an Industrial-Organizational (I/O) Psychologist in private practice in Washington, DC for over 29 years. Industrial-Organizational Psychology is the application of psychological principles, theory, and research to the world of work. I hold a Ph.D. in I/O Psychology, which I received from the University of Maryland in 1976.

My area of specialization is selection, which encompasses the manner in which organizations hire, retain, develop, evaluate, and promote employees.

I am a Fellow in the Society for Industrial and Organizational Psychology (SIOP) as well as the American Psychological Association. I served on the SIOP committee to revise the *Principles for the Validation and Use of Personnel Selection Procedures*. The *Principles* detail accepted professional practice with regard to the development and validation of personnel selection practices and procedures. Over the past fifteen years, I have served on a number of committees of the National Academy of Sciences charged with addressing national issues of employment selection and organizational staffing. I recently served on the National Academy of Sciences' Committee for the Study of Federal Aviation Administration Aviation Safety Inspector Staffing Standards. Past committee service includes the Committee on Workforce Needs in Information Technology and the Board on Testing and Assessment.

I have published works on a variety of topics including racial discrimination in employment, the role of cognitive ability tests in employment selection, the effect of testing medium on validity and subgroup performance, and implementing fair selection strategies. I have also written reviews of published texts on affirmative action and workforce diversity.

A significant part of my practice over the past 29 years has been devoted to the development and validation of selection procedures for public and private sector organizations. In the public sector, as an example, I have been retained to develop and validate selection procedures for positions in law enforcement including police officer, detective, sergeant, lieutenant, and captain. This work was performed for both large and

small jurisdictions nationwide including the cities of Baltimore, Maryland; Bridgeport Connecticut; Detroit, Michigan; Hartford, Connecticut; New York, NY; and St. Petersburg, Florida. My work in this area is particularly relevant to the present case because I have had the opportunity to implement the kinds of alternative selection procedures (e.g., assessment centers) that plaintiffs' experts assert the defendant should have used to address the issue of adverse impact.

Over the past 29 years I have developed over 100 selection devices and/or selection procedures for entry-level and managerial positions. A representative sample of clients includes ALCOA Inc., CSX Transportation, Publix Super Markets Inc., Potomac Electric Power Company, the Federal Deposit Insurance Corporation, the United States Department of Justice (Federal Bureau of Investigation), and the United States Department of Labor. Selection procedures that I developed have been administered to over 500,000 applicants for entry-level and supervisory positions in organizations throughout the United States. I have been retained by legal counsel on behalf of organizations such as The Boeing Corporation, Matsushita Communications Industrial Corporation of USA, and Merrill Lynch, Inc.

I have been retained as an expert for plaintiffs and defendants in litigation involving human resource policies, practices and procedures such as promotion, job posting and performance appraisal. I have testified at trial as an expert witness for plaintiffs as well as defendants on over 20 occasions. A more complete description of my experience and qualifications is contained in my curriculum vitae, which can be found in Appendix A.

## Sources of Information

The opinions presented in this report are based on my examination of various documents produced during discovery, deposition transcripts, and other materials referenced in this report.  A list of the documents examined is contained in Appendix B.

## BACKGROUND

Development and use of promotional examinations in the public safety sector in the Commonwealth of Massachusetts are governed by the Massachusetts General Laws. Chapter 31 (section 5) of the Massachusetts General Laws provides that the head of the Human Resources Division (HRD) has the power to conduct examinations for the purpose of establishing eligibility lists from which vacancies are filled.  The head of the Human Resources Division has the authority to delegate the administrative functions of the civil service system to various state agencies and towns.  Furthermore, the appointing authority in each jurisdiction must ultimately determine the type of examination to be utilized.  In 2005, 2006, and 2007, the vast majority of the municipalities and authorities in the Commonwealth exercised their right to utilize the police sergeant promotional exams created by the Human Resources Division.  Notwithstanding this general practice, Massachusetts law allows the appointing authority, subject to oversight and approval by HRD, to make promotional appointments, within a departmental unit, on the basis of departmental promotional examinations and, therefore, the authority is not required to use an examination developed by the Human Resources Division.[1]  This means that in 2005-2007 some jurisdictions elected to supplement the Police Sergeant examination provided

---

[1]  Massachusetts General Laws, Chapter 31, section 10.

by the Human Resources Division with additional measures developed and implemented by that jurisdiction.  These measures may have included assessments such as a structured interview, designed to measure additional attributes deemed necessary to perform the job successfully.

Massachusetts General Laws dictate not only the use of examinations, but also what such examinations must measure.  Chapter 31 (section 16) specifies the following with regard to promotional examinations:

> Examinations shall fairly test the knowledge, skills and abilities which can be practically and reliably measured and which are actually required to perform the primary duties of the position for which the examination is held.[2]

This provision of state law is important because it points to practical limits that must be taken into account whenever measures such as promotional examinations are developed and used.    A final point regarding Massachusetts General Laws must be noted.  Regardless of the jurisdiction that develops a selection device, such as a Police Sergeant promotional examination, promotions are made within each jurisdiction on a "jurisdiction by jurisdiction" basis.  Section 59 of Chapter 31 states:

> An examination for a promotional appointment to any title in a police or fire service shall be open to permanent employees in the next lower title in such force except that if the number of such employees, or the number of applicants eligible for the examination is less than four, the examination shall be opened to permanent employees in the next lower titles in succession in such force until either four such eligible employees have applied for the examination or until the examination is open to all permanent employees in lower titles in such force.[3]

The provision above means that candidates for promotion to the position of police

---

[2] Massachusetts General Laws, Chapter 31, section 16.

[3] Massachusetts General Laws, Chapter 31, section 59.  Section 65, which governs promotional appointments in the Massachusetts Bay Transportation Authority police force, contains a similar provision.

sergeant compete within their jurisdiction and not between jurisdictions. This means that analyses of the results of any given examination must be *intra*-jurisdictional.

## Conclusions of Plaintiffs' Experts

In their reports, Plaintiffs' experts have put forth a number of conclusions regarding the 2005, 2006, and 2007 Police Sergeant Promotional Examinations developed and administered under the authority of the Human Resources Division of the Commonwealth of Massachusetts (hereafter, the "Examinations"). These conclusions are listed below. In the pages that follow, I will address each conclusion in turn.

1. Plaintiffs' experts contend that the Examinations show adverse impact against minority applicants; and further

2. The Examinations do not meet professional standards for validation, cannot be shown to be valid, nor shown to meet a legitimate business interest for selecting effective Police Sergeants.

   a. The HRD failed to follow best practice guidelines found in scientific authorities for test development of the Examinations.

   b. The HRD failed to meet the principles established by professional, scientific, and regulatory authorities establishing cut (i.e., pass/fail) scores for the Examinations.

   c. The HRD has no foundation for the practice of strict rank-ordered appointment procedures for the position of Police Sergeant.

   d. The HRD failed to distinguish between knowledge that must be memorized to be of value and knowledge that is passive (*i.e.*, the incumbent simply needs to know where to find the relevant technical

information but does not need to commit that technical information to memory).  Plaintiffs' experts contend that this is a fatal flaw because the assumption that all knowledge sources must be memorized drove the testing method for Police Sergeants – a closed book test on generic textbooks.    They conclude that HRD's Examinations should have included open-book testing.

    e.   The HRD ignored, in its assessment procedure, important skills such as communication, negotiation, and persuasion.

3.   The HRD, according to plaintiffs' experts, failed to consider or use alternative valid examining methods that would have resulted in lesser adverse impact and equal or greater job relatedness.

## AN EVALUATION OF PLAINTIFFS' EXPERTS' CONCLUSIONS

## Adverse Impact

In support of their conclusions that the 2005, 2006, and 2007 Police Sergeant Examinations have adverse impact against minority applicants, Plaintiffs' experts provide statistical analyses conducted by Dr. Joel Wiesen.  Dr. Wiesen correctly determines that the appropriate definition of adverse impact is contained in the *Uniform Guidelines on Employee Selection Procedures* (EEOC, 1978).[4]    The *Uniform Guidelines* state the following, in Section II, with regard to adverse impact:

---

[4] Equal Employment Opportunity Commission (1978). *Uniform Guidelines on Employee Selection Procedures*. Washington, DC.  This document incorporates a single set of principles that are designed to assist employers, labor organizations, employment agencies, and licensing and certification boards in complying with requirements of

    . . . footnote continues on the next page . . .

> The fundamental principle underlying the guidelines is that employer policies or practices which have an adverse impact on employment opportunities of any race, sex, or ethnic group are illegal under Title VII and the Executive order unless justified by business necessity. A selection procedure which has no adverse impact generally does not violate Title VII or the Executive order. This means that an employer may usually avoid the application of the guidelines by use of procedures which have no adverse impact. If adverse impact exists, it must be justified on grounds of business necessity. Normally, this means by validation which demonstrates the relation between the selection procedure and performance on the job.

Section II goes on to state:

> The guidelines adopt a "rule of thumb" as a practical means of determining adverse impact for use in enforcement proceedings. This rule is known as the "4/5ths" or "80 percent" rule. It is not a legal definition of discrimination, rather it is a practical device to keep the attention of enforcement agencies on serious discrepancies in hire or promotion rates or other employment decisions. To determine whether a selection procedure violates the "4/5ths rule", an employer compares its hiring rates for different groups.

In order to establish that the Police Sergeant Examinations had adverse impact against minority groups (African-American and Hispanic-American applicants), Dr. Wiesen conducted a series of "4/5ths rule" analyses. For each analysis (with the exception of the Boston Police Department), he aggregated examination data across all municipalities.[5] Dr. Wiesen offers the following rationale for aggregating data as part of his analysis:

> . . . without such aggregation, statistical analyses would be of no value due to the small numbers. (Only from 2 to 10 minority applicants were

---

federal law prohibiting employment practices that discriminate on grounds of race, color, religion, sex, and national origin. *The Guidelines* provide a framework for determining the proper use of selection procedures.

[5] Expert Report of Dr. Joel Wiesen, p. 9, paragraph 2.

promoted based on any of HRD's annual exams, in all municipalities combined.)[6]

After aggregating data across municipalities, Dr. Wiesen reaches the following conclusion:

> The analyses above reveal that there is adverse impact in hiring based on the HRD exams. Overall the adverse impact against minority applicants is statistically significant, and sizeable and of practical import. The overall finding is also seen in the statistical analyses for individual exams and for several groupings of those exams. . . .[7]

Dr. Frank Landy concurs with Dr. Wiesen regarding the aggregation of test data in order to assess adverse impact. Dr. Landy offers the following rationale for agreeing with Dr. Wiesen's methodology:

> Each of these tests was a closed book job knowledge test with 80 items for Police Sergeant applicants. Additionally the passing score was identically set at 70 on all tests, and the appointments from the resulting eligibility list were made in strict rank-order fashion on all tests. Thus from a psychometric perspective, it is appropriate to aggregate these tests and examine the collection of tests from 2003 to 2007 for purposes of identifying any patterns of impact.[8]

Drs. Wiesen and Landy are totally incorrect with regard to the appropriateness of aggregating data from the HRD Police Sergeant Examinations to assess adverse impact. Adverse impact is a comparative metric. What that means is that relevant groups of minority and non-minority candidates are compared to determine whether there are meaningful differences in bottom-line selection rates. It is critical, then, that the correct groups are compared. The correct comparison groups are determined first and foremost by one critical factor that supersedes any other factors such as similarity of test

---

[6] *Ibid.*

[7] Expert Report of Dr. Joel Wiesen, p. 27.

[8] Expert Report of Dr. Frank Landy, p.17.

characteristics or cut scores, etc. That factor is method of use.

In the present case, even though applicants may have taken similar written exams, they were not really all competing against each other for promotion. Promotions are made jurisdiction by jurisdiction. As an example, minority applicants in the Worcester Police Department are not competing with non-minority applicants in the Boston Police Department for Sergeant positions. The Worcester minority applicants are competing only against other applicants from the Worcester Police Department. This is mandated by state law, which establishes the qualifications that must be met in order to sit for a Police Sergeant examination in a given jurisdiction within the Commonwealth of Massachusetts. State law provides that, to sit for a given examination, each candidate must (a) be a permanent employee of the jurisdiction in which the vacancy exists, and (b) occupy the next lower rank (unless there are less than four employees at that rank, in which case persons at lower ranks in that same department may be eligible) (Mass. Gen. Laws ch. 31, §§ 59, 65). Therefore, to aggregate data as Dr. Wiesen did is to compare apples and oranges. That is, HRD Police Examinations cannot have adverse impact for every jurisdiction at issue simply because generally fewer minority than non-minority applicants were promoted. To accept such an analysis would mean that a jurisdiction that promoted every minority applicant that applied would be treated exactly the same as a jurisdiction that promoted no minority applicants.

The relevant question, in the first phase of any Title VII disparate impact case such as this, is which jurisdictions, if any, failed to promote minority applicants at a rate equal to 80% of the non-minority selection rate for that jurisdiction? When the data from the Police Sergeant Examinations are properly disaggregated, a totally different picture

emerges from the one presented by Drs. Wiesen and Landy.

It should be noted that the *Uniform Guidelines* recognize that small sample sizes may present unique problems when assessing adverse impact. *The Uniform Employee Selection Guidelines Interpretation and Clarification (Questions and Answers)* is a companion document to the *Uniform Guidelines* intended to clarify and interpret, but not modify the *Uniform Guidelines*. The *Questions and Answers* are important here because they directly address the issue of small samples and the assessment of adverse impact. Question and answer 21 state the following:

> 21. Q. Is evidence of adverse impact sufficient to warrant a validity study or an enforcement action where the numbers involved are so small that it is more likely than not that the difference could have occurred by chance?

> For example:

| Applicants | Not hired | Hired | Selection rate percent hired |
|---|---|---|---|
| 80 White…. | 64 | 16 | 20 |
| 20 Black….. | 17 | 3 | 15 |
| White Selection Rate………… | | | 20 |
| Black Selection Rate………….. | | | 15 |
| 15 divided by 20 = 75% (which is less than 80%). | | | |

> A. No. If the numbers of persons and the difference in selection rates are so small that it is likely that the difference could have occurred by chance, the Federal agencies will not assume the existence of adverse impact, in the absence of other evidence. In this example, the difference in selection rates is too small, given the small number of black applicants, to constitute adverse impact in the absence of other information (see Section 4D). If only one more black had been hired instead of a white the selection rate for blacks (20%) would be higher than that for whites (18.7%). Generally, it is inappropriate to require validity evidence or to take enforcement action where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group.

13

Figure 1 below illustrates how aggregating data from small samples can produce misleading results.  In Figure 1, Jurisdiction #1 had no minority applicants and sixteen non-minority applicants.  Assume that four of the sixteen non-minority applicants were promoted.  Given that there are no minority applicants, there is obviously no adverse impact based upon the 4/5ths rule.  Jurisdiction #2 has seven minority applicants of whom one was promoted.  In this jurisdiction, there were twelve non-minority applicants of whom two were promoted.  The selection rate for the minority applicants (.142) divided by the selection rate for the non-minority applicants (.166) yields an adverse impact ratio of .85, indicating no violation of the 4/5ths rule.  However, aggregating the data from the two jurisdictions results in a selection rate of .142 for minority applicants and .214 for non-minority applicants.  Dividing the minority selection rate by the non-minority selection rate yields an adverse impact ratio of .66, which is a violation of the 4/5ths rule.  Thus, aggregating the data makes it appear that there is adverse impact in both jurisdictions when in actuality there is no adverse impact in either jurisdiction.

Figure 1

| Jurisdiction #1 | | | | Jurisdiction #2 | | |
|---|---|---|---|---|---|---|
| | Applicants | Promoted | Selection Rate | Applicants | Promoted | Selection Rate |
| African American | 0 | 0 | --- | 7 | 1 | 14.2% |
| White | 16 | 4 | 25% | 12 | 2 | 16.6% |
| | | | | | | Adverse Impact Ratio = .85 |
| | | | | | | |
| Jurisdiction # 1 + Jurisdiction # 2 | | | | | | |
| | Applicants | | Promoted | | Selection Rate | |
| African American | 7 | | 1 | | 14.2% | |
| White | 28 | | 6 | | 21.4% | |
| | | | | | Adverse Impact Ratio =.66 | |

Appendix D contains a listing of the numerous jurisdictions in this case (1) that administered a Police Sergeant Promotional Examination in 2005, 2006, or 2007, and (2) in which there were no minority applicants.

Given the small sample sizes in each of the jurisdictions in which the Police Sergeant Examinations were administered, I conducted the appropriate jurisdiction by jurisdiction 4/5ths rule adverse impact analyses for the 2005, 2006, and 2007 Police Sergeant Examinations using the "shift of one person" correction contained in the response to Question 21. The shift of one person was only applied where the initial selection rate for minority applicants was lower than that for non-minority applicants. For each 4/5ths rule analysis, one minority applicant replaced one non-minority applicant in the selected group. Tables 1 through 3 present the results for the 2005, 2006, and 2007 statewide Examinations respectively. Each table only includes jurisdictions for which there was at least one minority applicant.[9]

---

[9] Data for the analyses in Tables 1-3 were obtained from the Expert Report of Jacinto M. Silva, Ph.D., on the Assessment of Promotional Processes as they Affect African-American and Hispanic Candidates in the 2005 to 2007 Commonwealth of Massachusetts Municipal Police Sergeant Promotional Examinations, dated February 2009 (hereinafter, "Silva Expert Report"), Tables 2, 4, and 5.

Table 1.  **2005 Statewide Adverse Impact Results by Department**

| Jurisdiction | Takers B/H | Takers White | Takers Total | Selected Black/Hispanic | Selected White | Selected Total | Selection Rate[10] |
|---|---|---|---|---|---|---|---|
| CARVER POLICE DEPT. | 1 | 3 | 4 | 0 | 2 | 2 | B/H = 100% W = 33.3% |
| CHELSEA POLICE DEPT. | 10 | 15 | 25 | 2 | 1 | 3 | B/H = 20.0% W = 6.6% |
| EVERETT POLICE DEPT. | 1 | 14 | 15 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| FALMOUTH POLICE DEPT. | 2 | 8 | 10 | 0 | 3 | 3 | B/H = 50.0% W = 25.0% |
| GREENFIELD POLICE DEPT. | 1 | 10 | 11 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| MBTA POLICE | 10 | 32 | 42 | 0 | 5 | 5 | B/H = 10.0% W = 12.5% |
| NATICK POLICE DEPT. | 1 | 10 | 11 | 0 | 3 | 3 | B/H = 100% W = 20.0% |
| QUINCY POLICE DEPT. | 3 | 38 | 41 | 0 | 6 | 6 | B/H = 33.3% W = 13.1% |
| RANDOLPH POLICE DEPT. | 1 | 6 | 7 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| SPRINGFIELD POLICE DEPT.[11] | 18 | 28 | 46 | 0 | 6 | 6 | B/H = 5.5% W = 17.8% |
| WAREHAM POLICE DEPT. | 2 | 7 | 9 | 0 | 1 | 1 | B/H = 50.0% W = 0.0% |
| WEST SPRINGFIELD POLICE DEPT. | 1 | 12 | 13 | 0 | 2 | 2 | B/H = 100% W= 8.3% |
| WHITMAN POLICE DEPT. | 2 | 10 | 12 | 0 | 1 | 1 | B/H = 50.0% W = 0.0% |

[10]  This column reflects use of the "shift of one person" correction as discussed on page 15, *supra*.

[11]  If two Blacks or Hispanic candidates had been selected in Springfield, the selection rates would have been:  B/H = 11.1% and W = 14.2%, resulting in an adverse impact ratio of .78, which is within two percentage points of the 80% rule.  If three Black or Hispanic candidates had been selected by Springfield, the selection rates would have been:  B/H = 16.6% and W = 10.7%,  resulting in no adverse impact.

Table 2.  **2006 Statewide Adverse Impact Results by Department**

| Jurisdiction | Takers B/H | Takers White | Takers Total | Selected Black/Hispanic | Selected White | Selected Total | Selection Rate (see footnote 10) |
|---|---|---|---|---|---|---|---|
| ANDOVER POLICE DEPT. | 2 | 16 | 18 | 0 | 2 | 2 | B/H = 50.0% W = 6.2% |
| BROCKTON POLICE DEPT. | 15 | 45 | 60 | 0 | 3 | 3 | B/H = 6.6% W = 4.4% |
| FALL RIVER POLICE DEPT. | 6 | 33 | 39 | 0 | 1 | 1 | B/H = 16.6% W = 0.0% |
| FITCHBURG POLICE DEPT. | 2 | 6 | 8 | 0 | 1 | 1 | B/H = 50.0% W = 0.0% |
| FRAMINGHAM POLICE DEPT. | 3 | 12 | 15 | 1 | 2 | 3 | B/H = 33.3% W = 8.3% |
| LAWRENCE POLICE DEPT. | 10 | 36 | 46 | 0 | 2 | 2 | B/H = 10.0% W = 2.7% |
| LOWELL POLICE DEPT. | 7 | 36 | 43 | 0 | 7 | 7 | B/H = 14.2% W = 16.6% |
| MARLBOROUGH POLICE DEPT. | 1 | 9 | 10 | 0 | 2 | 2 | B/H = 100% W = 11.1% |
| NEEDHAM POLICE DEPT. | 1 | 6 | 7 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| PLAINVILLE POLICE DEPT. | 1 | 3 | 4 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| REVERE POLICE DEPT. | 1 | 18 | 19 | 0 | 2 | 2 | B/H = 100% W= 5.5% |
| SOMERVILLE POLICE DEPT. | 4 | 27 | 31 | 0 | 2 | 2 | B/H = 25.0% W = 3.7% |
| SUDBURY POLICE DEPT. | 1 | 5 | 6 | 0 | 1 | 1 | B/H = 100% W = 0.0% |
| WHITMAN POLICE DEPT. | 2 | 10 | 12 | 0 | 2 | 2 | B/H = 50% W = 10.0% |
| WORCESTER POLICE DEPT. | 11 | 50 | 61 | 1 | 6 | 7 | B/H = 18.1% W = 10.0% |

Table 3.  **2007 Statewide Adverse Impact Results by Department**

| Jurisdiction | Takers B/H | Takers White | Takers Total | Selected Black/Hispanic | Selected White | Selected Total | Selection Rate (see footnote 10) |
|---|---|---|---|---|---|---|---|
| AGAWAM POLICE DEPT. | 1 | 10 | 11 | 0 | 1 | 1 | B/H = 100%<br>W = 0.0% |
| CAMBRIDGE POLICE DEPT. | 6 | 30 | 36 | 0 | 1 | 1 | B/H = 16.6%<br>W = 0.0% |
| CHELSEA POLICE DEPT. | 7 | 14 | 21 | 1 | 0 | 1 | B/H = 14.2%<br>W = 0.0% |
| HOLDEN POLICE DEPT. | 1 | 6 | 7 | 0 | 1 | 1 | B/H = 100%<br>W = 0.0% |
| HOLYOKE POLICE DEPT. | 6 | 23 | 29 | 0 | 1 | 1 | B/H = 16.6%<br>W = 0.0% |
| LYNN POLICE DEPT. | 1 | 31 | 32 | 0 | 3 | 3 | B/H = 100%<br>W = 6.4% |
| SOUTHBRIDGE POLICE DEPT. | 3 | 4 | 7 | 1 | 1 | 2 | B/H = 66.6%<br>W = 0.0% |
| SPRINGFIELD POLICE DEPT. | 16 | 19 | 35 | 1 | 3 | 4 | B/H = 12.5%<br>W = 10.5% |
| WATERTOWN POLICE DEPT. | 1 | 10 | 11 | 0 | 1 | 1 | B/H = 100%<br>W = 0.0% |
| WESTFIELD POLICE DEPT. | 1 | 10 | 11 | 0 | 2 | 2 | B/H = 100%<br>W = 10.0% |

Table 1 shows that, for the 2005 statewide examination, the selection rate for minority applicants is higher than that for non-minority applicants or satisfies the 4/5ths rule in every jurisdiction except for the City of Springfield. For the Springfield Police Department, a shift of three selections instead of one would have resulted in no adverse impact. *See* footnote 11, *supra*. For the 2006 statewide Examination, the minority selection rate is higher than that for non-minority applicants for all jurisdictions except Lowell, Massachusetts. For that jurisdiction, the minority selection rate is 85% of that for the non-minority applicants, thus satisfying the 4/5ths (80%) rule. For the 2007 statewide Examination, the selection rate for minority applicants is higher than that for non-minority applicants for every jurisdiction. Overall, the data in Tables 1 through 3 show that the statewide Examinations administered in 2005, 2006, and 2007 had adverse impact for only one jurisdiction, the Springfield Police Department and, in that case, a change of just two minority applicants selected would have resulted in almost no adverse impact. *See* footnote 11, *supra*.

There was only one more jurisdiction for which a Police Sergeant promotional examination was developed and administered under the authority of the HRD during the relevant time period. That jurisdiction is the Boston Police Department. Analysis of the 2005 examination administered to Boston Police Department sergeant candidates indicates that the examination had adverse impact.[12] Therefore, in total there are only two instances in which the Police Sergeant Promotional Examinations had adverse impact against minority applicants, the examinations for the Springfield and Boston Police Departments. The question then becomes whether these promotional examinations are valid. The examinations were identical, except for the fact that the

---

[12] *See* Silva Expert Report, Table 3.

Boston Police Sergeant Examination contained test questions specifically related to that department's policies and procedures.

## Validity of the Boston Police Sergeant Examination

### Historical Perspective

The Human Resources Division and its predecessor, the Department of Personnel Administration, have overseen the development and validation of promotional examinations for Police Sergeant in the City of Boston for at least the past twenty years. These examinations have been based upon an analysis of the job of Police Sergeant. This complies with the requirements of the *Uniform Guidelines* as well as professional standards for best practices. As an example, in 1991, the Boston Police Sergeant Examination was developed on the basis of a job analysis that identified critical job tasks as well as areas of knowledge, skill, and ability required to perform the job successfully.[13] In developing this examination, a number of factors were considered in determining the most appropriate content and scope. The 1991 Boston Police Sergeant, Lieutenant, and Captain examinations consisted of two components: a written test and a rating of the applicant's training and experience.

The following reasons were given for using a written test:

1.     Job knowledge tests are generally valid for a very wide variety of jobs.

2.     Reading and writing are required on the job, so a written test was considered reasonable.

3.     The multiple-choice format is the most economical to administer to a large applicant population.

---

[13]   *See* Commonwealth of Massachusetts Department of Personnel Administration, Validation Report for the 1991 Police Promotional Selection Procedures (Bates 00246).

4.    The cost of administering an oral exam to approximately 1400 participants was prohibitive and would unnecessarily delay the establishment of various eligible lists.

5.    Assessment centers are popular but not well understood since it is not clear what the exercises are actually measuring; i.e., the possession of knowledge, skill or ability to perform the task or simply the task-specific behavior.

6.    There was no persuasive evidence that other examination modes would have no or even less adverse impact than the method chosen.[14]

The rationales listed above were substantive and appropriate for the time frame of the early 1990s. More importantly, the fact that substantial consideration was given not only to the most technically feasible method of giving the examination, but also to (a) possible adverse impact and (b) possible alternatives that might have lesser adverse impact belies the assertion of Plaintiffs' expert Dr. Frank Landy that "the HRD has maintained an assessment system that has not been examined and/or modified in any possible way for almost 20 years." Clearly the HRD and its predecessor, the Department of Personnel Administration, were examining the Police Sergeant selection system at least fourteen years before the 2005 Boston Police Sergeant Examination. In addition, the HRD has used a written test and a rating of training and experience as the principal components of the Police Sergeant promotion process for Boston and other municipalities and authorities for a considerable amount of time. Plaintiffs' experts discuss the Police Sergeant promotion process as if it consists solely of a written test. This has not been the case for twenty years, if not longer.

---

[14]  *Ibid.*, p. 00263.

The training and experience rating HRD utilizes is designed to measure each candidate's relevant training, experience, and education as they relate to the requirements of the Police Sergeant position. This instrument significantly expands the scope of the knowledge, skills, and abilities measured beyond that measured by the written test alone. As an example, applicants who took the 2005 Boston Police Sergeant Examination were asked to provide information such as whether they:

- graduated from a vocational or technical school
- had a degree or non-degree certificate above the high school level in a specific field of study
- had taken continuing education courses
- had taught courses
- had written any articles
- were a member of any professional organizations

The use of an appropriate job analysis to develop the job knowledge test, together with the measure of applicants' relevant training, experience, and education resulted, in my opinion, in a Police Sergeant selection process that, beginning at least as early as 1991 and going forward, was valid and met the standards of accepted professional practice. One would expect, however, that with advances in fields such as industrial and organizational psychology, Boston, with HRD's approval, would attempt to improve the validity of the process and further address the issue of adverse impact. Based on my review of documents in this case, that is precisely what occurred.

**Modifications to the Police Sergeant Promotional Examination**

The Boston Police Department, with the approval of HRD, retained the services of a professional consulting firm (Morris & McDaniel, Inc.) to construct, validate, administer, and score a 2002 police sergeant promotional examination for the Boston Police Department.[15]  As with prior examinations, this one was based on a job analysis. Indeed, in 2000-2001, Morris & McDaniel, Inc. prepared a comprehensive job analysis for the police sergeant position in which the important tasks and knowledge, skills, and abilities (KSAs ) required for the job were identified.  A list of these KSAs is shown in Appendix F.  Each task and KSA was rated by subject matter experts as to its importance and relevance to the job.  The rating scales used to evaluate the tasks and KSAs are shown in Figures 1 and 2 below.

**FIGURE 1**
Rating Scales for Job Tasks

How often do you perform this task?
- Regularly (daily)
- Periodically (weekly, monthly)
- Occasionally (less than monthly)

How important is this task to this job?
- Very important
- Important
- Not important

Was it necessary for you to perform this task satisfactorily when you started the job?
- Necessary upon entry to the job (although improvement may be expected)
- Not necessary (this task is acquired only through training)

What is this task's relationship to performance?
- Performance of this task clearly separates the best workers
- Generally the better workers seem to perform this better than poor or marginal workers
- Most perform this task equally well

---

[15]    *See* Delegation Agreement Between the Boston Police Department and the Massachusetts Human Resources Division (HRD), attached hereto as Appendix E.

**FIGURE 2**
Rating Scales for KSAPCs

1. Does this KSA relate to the job?
   - Yes
   - No

2. When is the KSA learned?
   - Before assignment to this job
   - After assignment to this job

3. How long does it take to learn?
   - Brief orientation period
   - Longer orientation period

4. How does having more or less of this KSA differentiate performance?
   - High (differentiates between performance levels to a great extent)
   - Moderate (differentiates between performance levels to a moderate extent)
   - Little (differentiates between performance to a very minor degree or not at all

5. Is this KSA required to perform the job effectively?
   - Required (it may be refined later through on the job training)
   - Desirable but not required
   - Not required

After completion of the job analysis, HRD provided oversight regarding the development of a test plan for the 2002 Boston Police Department examination. The outside consultant's responsibilities included determination of the knowledge, skills, abilities, and personal characteristics to be measured based on the job analysis, determination of the components of the examination process, and formulation of a test plan.  The original test plan called for two new examination components:  a structured oral interview and an assessment of prior job performance or "Performance Review System."  Typically, two of the primary goals of adding such components are:  (a) to expand the scope of KSAs covered by the examination, thus increasing content validity, and (b) to attempt to possibly reduce adverse impact.  Given the number of applicants for the Boston Police Sergeant position, adding these components was done at a considerable cost both

financially[16] and in terms of human capital.    Unfortunately, addition of the new components proved problematic for a number of reasons.    First, the Boston Police Department withdrew the Performance Review System in May 2002 "based on a number of considerations, chief of which" was concern that litigation over that system (which had been filed in about April 2002) "would continue well past the time scheduled for the administration and grading of the examination."[17]    Second, analysis of the results of the remaining components (written test, education and experience rating, and structured interview), while improving the scope of the KSAs measured, did not materially reduce adverse impact.    This was a major disappointment given the tremendous expense involved.

**The 2005 Boston Police Sergeant Examination**

Based on its experience with the 2002 promotional exams, the Boston Police Department, with HRD's approval, elected to return to the two-component format for the 2005 Boston Police Sergeant Examination.    Those components were the written test and an Education and Experience Rating.    The job analysis that was conducted for the 2002 examination was used as the basis for the 2005 process.    Given that the job analysis for the 2002 examination was completed in 2000/2001, a new job analysis for the 2005 examination was not necessary.    The results of this examination proved the wisdom of the decision to revert to the two-component model.    Data show that the number of promotions from, and the adverse impact associated with, this examination was similar to

---

[16]  Boston paid the firm of Morris & McDaniel the sum of $1,258,812 for its work on the 2002 promotional exams.   Boston incurred other expenses in conjunction with these exams totaling approximately $30,000.   *See* Electronic File Attachment no. 6 to the Silva Expert Report.

[17]  Commissioner's Memo 02-035, 5/29/02, Subject: Promotional Exam 2002, copy attached hereto as Appendix G.

that for the 2002 examination.  *See* Silva Expert Report, Tables 3 and 6 and Electronic File Attachment no. 3.

The documentation regarding the job analysis, exam components, and exam context of the 2005 Boston Police Promotional Examination shows that the examination is content valid.  Information regarding the 2005 Statewide Police Sergeant Examination supports the conclusion that it too is content valid.  First of all, there was approximately 75% overlap in the content of the two examinations.  They both consisted of a written test and the same education and experience rating.  Second, there was 55% overlap in the subject matter covered by both written tests.  Third, the subjects that were covered in the Statewide Examination only were evaluated by subject matter experts from throughout the Commonwealth of Massachusetts and determined to be relevant to the Police Sergeant position.[18]  Finally, a comparative analysis of the performance of incumbent Sergeants and Sergeant candidates shows that the former group significantly outperformed Sergeant candidates on test questions that were common to both exams.  *See* Silva Expert Report, p. 2.  This means that the content of both exams was job related in that it addressed subjects commonly dealt with by incumbent Police Sergeants.

**Plaintiffs' Criticisms of the 2005 Examinations**

Plaintiffs' experts have leveled a number of criticisms at the 2005 Police Sergeant Examination.  Each of these criticisms is addressed below:

Plaintiffs' experts assert that the 2005 Boston Police Sergeant Examination does not meet professional standards for validation and cannot be shown to be valid.  This is

---

[18]  *See* Memo from Director Sally A. McNeely dated 2/14/05; Subject:  Updating the Reading Lists for Promotional Examinations & Serving as a Subject-Matter-Expert for Police Promotional Examinations (Bates 2432); copy attached hereto as Appendix H.

not the case. The 2005 examination was developed on the basis of a thorough job analysis that identified important areas of knowledge, skills, and abilities. The reliability coefficient and item characteristics of the examination indicate that test items were professionally written and scored. The examination measures a sufficient number of KSAs to be content valid.[19]

Plaintiffs' experts assert that the HRD failed to meet the principles established by professional scientific and regulatory authorities for establishing cut (i.e., pass/fail) scores for the examination. The passing score for the 2005 Boston Police Sergeant Examination (as with the others) is a "nominal" score. It is not the actual score that determines whether an applicant is selected. The actual score is determined by the number of openings that exist. The Commonwealth of Massachusetts uses a band scoring system in which applicants can be appointed from within a band of scores that is equal to two times the number of vacancies plus one. As an example, if there are ten vacancies, the band of applicants eligible for appointment would include the top twenty-one scorers. Although the passing score for all Police Sergeant promotional examinations at issue in this case was set at 70%, the lowest score in the band of scores produced by the "2n+1" formula is the actual cut-off for any given jurisdiction. Based upon the typical differences between minority and non-minority applicants, it is unlikely that lowering the passing score would have any effect in terms of adverse impact (especially in a community the size of Boston). One solution to this problem would be to expand the types of exercises included in the examination (which the HRD has already tried) or to attempt to amend the "2n+1"

---

[19] Plaintiffs' experts' further criticisms specific to the 2006 and 2007 examinations (*see, e.g.,* Dr. Wiesen's report at pp. 49-53 and Dr. Landy's report at pp. 27-28) do not warrant a response as the examination data clearly indicate that any modest disparate impact associated with those examinations does not cross the threshold (*i.e.*, an adverse impact ratio below 0.80) requiring a validation defense.

regulation and make selections from all applicants who score above an administratively determined score (e.g., 70%, 65% or 50%). This would present the difficult question of what to base the final selection on, given that there would be many more eligible applicants than vacancies. No matter how this is done, there is no guarantee that the proportion of minority applicants selected will increase unless race/ethnicity is used as the determining factor. This would likely be unconstitutional or certainly would be subject to legal challenge. Finally, plaintiffs' experts failed to identify any minority applicant who would have been selected but for the nominal 70% cut score.

Plaintiffs' experts assert that the HRD failed to distinguish between knowledge that must be memorized and knowledge that can be looked up for purposes of application. Plaintiffs' experts further conclude that properly distinguishing between these two forms of knowledge should have led to part of the Examinations being open-book.

The use of closed-book examinations for purposes of selection is the case in the vast majority of circumstances in which such tests are employed. Whether one considers tests such as the Scholastic Achievement Test, medical licensure examinations, bar examinations, or most police promotions examinations, the tests are closed-book even though there may be situations in which, in actuality, the test taker may have the opportunity to refer to documents when applying the knowledge. Even plaintiffs' own expert, Dr. Wiesen, is the author of a test marketed nationwide that contains test items that require memorization when, in actuality, the test taker would probably refer to written material before having to address the problem covered in the questions.[20] Moreover, plaintiffs' experts have not presented any evidence showing that a closed-book

---

[20]  *See* WTMA, Wiesen Test of Mechanical Aptitude, PAR Edition, Professional Manual, Psychological Assessment Resources, Inc. 1997.

test results in greater adverse impact than an open-book test. In my professional experience I have found the opposite to be the case. That is, open-book tests tend to produce greater adverse impact than closed-book tests because they place greater emphasis on reading ability under greater time constraints. It should be noted that the test developed and marketed by Dr. Wiesen produces greater adverse impact against African Americans than the examinations at issue in this case.

Plaintiffs' experts assert that HRD ignored, in its assessment procedure, important skills such as communication, negotiation, and persuasion. First of all, the fact that HRD did not include measures of these abilities does not indicate that they were ignored. As discussed earlier in this report, HRD, in conjunction with the appropriate jurisdictions, considered a number of factors in determining the most appropriate method of testing applicants for the Police Sergeant position, not the least of which was practical feasibility. I am not aware of any jurisdiction that has the numbers of applicants comparable to those in this case -- typically upwards of 600 or more in dozens of communities -- and that attempts to measure abilities such as persuasion and negotiation. Moreover, plaintiffs' experts do not provide a single example of such a jurisdiction. Just as importantly, plaintiffs' experts do not provide any example of a case in which a selection process for Police Sergeant that measures such abilities produces less (or minimizes) adverse impact. With regard to the measurement of communication skills, Boston, with HRD's approval, retained a consulting firm that developed and administered an exercise, as part of the 2002 Boston Police Sergeant Examination, which measured this ability. The result was essentially *no* reduction in adverse impact against minority applicants.

Plaintiffs' experts assert that HRD has no foundation for the practice of strict rank-ordered appointment procedures for the position of Police Sergeant. The selection

system used by the Commonwealth of Massachusetts does not mandate that selections be made in strict rank-order. An appointing authority can select any of the applicants who fall within the band defined by the "2n+1" formula.

Plaintiffs' experts assert that HRD failed to consider or use alternative valid examining methods that would have resulted in lesser adverse impact and equal or greater job relatedness. The discussion above of the 2002 Boston Police Sergeant selection process shows that Boston, with HRD's approval, did, in fact, consider and implement new selection methods of the kind described by plaintiffs' experts. The results were not what Boston or the HRD had hoped for. In addition, Plaintiffs' experts have failed to present a single example or a single iota of data showing a feasible alternative that has been used in an employment situation such as that faced by HRD (in particular, simultaneous administration of an examination to hundreds of candidates in multiple communities) that has less adverse impact and is equally valid.

Respectfully submitted on February 9, 2009:

_____

James L. Outtz, Ph.D.

## Statement of Compensation

In connection with my work on this matter, including the preparation of this report, I am being compensated at my usual hourly rate of $475 per hour.

_____

James L. Outtz, Ph.D.

**Appendix A**
**Curriculum Vitae**

# VITAE

# James L. Outtz, Ph.D.

**Outtz & Associates**
**Suite 800**
**816 Connecticut Avenue, N.W.**
**Washington, D.C.  20006**

**Tel:  202-822-3882**
**Fax: 202-822-3884**

**May 2007**

# JAMES L. OUTTZ, Ph.D.

## Education

| | |
|---|---|
| **Ph.D.**<br>**Industrial/Organizational**<br>**Psychology** | University of Maryland, College Park Maryland<br>December 1976 |
| **M.S.**<br>**Industrial Psychology** | Northeast Louisiana University, Monroe, Louisiana<br>January 1972 |
| **B.A.**<br>**Sociology** | Northeast Louisiana University, Monroe, Louisiana<br>May 1969 |

## Professional Affiliations

**American Psychological Association**

Fellow – Society for Industrial and Organizational Psychology

Member - Division of Evaluation and Measurement

Member – Committee On Psychological Tests and Assessment (1990 through 1992)

**Recent Honors**

Invited by the Equal Employment Opportunity Commission to participate in a panel discussion to brief the Commission and interested parties on current employment testing policies and trends, the effect of employment tests on racial and ethnic minorities and how to design selection procedures that are effective without respect to race color or other protected bases.

Invited to give a presentation on adverse impact at the annual conference of People Assessment in Industry, Pretoria, South Africa

Selected by the Board of Scientific Affairs of the American Psychological Association to give a one-hour Master Lecture in applied psychology at the 2007 American Psychological Association Convention in San Francisco, California.

**American Psychological Association Division 14**
**The Society for Industrial and Organizational Psychology (SIOP)**

Chair – M. Scott Meyers Award Committee

**Past Member:**

Ad Hoc Committee on Revision of the SIOP Principles

Ad Hoc Committee on Revision of the Uniform Guidelines

Program Committee for the Ninth Annual Conference

External Affairs Committee

**The American Educational Research Association**

Member

**The International Personnel Management Association**

Member

**Society for Human Resource Management**

Member

# Public Service

**National Academy of Sciences, National Research Council**

Member – Committee to Study FAA Aviation Safety Inspector Staffing Standards (October 2004 to October 2006)

Member – Committee on Workforce Needs in Information Technology (1999 to 2001)

Member - Board on Testing And Assessment, Commission on Behavioral and Social Sciences (1992 through 1996)

# Publications

Outtz, J. Adverse Impact, Implications for Organizational Staffing and High Stakes Selection, Lawrence Erlbaum, under contract.

Outtz, J., (2005) Race Discrimination Cases: Common Themes. In Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives, Landy, F. (Ed) New York, New York, Jossey – Bass/Pfeiffer.

Outtz, J. and Landy, F. (2005) Some Concluding Thoughts. In Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives, Landy, F. (Ed) New York, New York, Jossey – Bass/Pfeiffer.

Cascio, W., Goldstein, I., Outtz, J., and Zedeck, S. (2004) Technical Issues in Staffing Decisions.  In Test Score Banding in Human Resource Selection: Legal, Technical, and Societal Issues, Aguinis, H. (Ed.) New York, New York, Quorum Books.

Outtz, J. (2004) The Psychology and Management of Work Force Diversity. A Book Review. Personnel Psychology. Vol. 57 No. 4 1041-1044

Outtz, J., (2002) The Role of Cognitive Ability Tests in Employment Selection. Human Performance Vol. 15 No. (½) 161-171.

Campion, M., Outtz, J., Zedeck, S., Schmidt, F., Kehoe, J., Murphy, K., and Guion, R. (2001) The Controversy over Score Banding in Personnel Selection: Answers to Key Questions.  Personnel Psychology, Volume 54, No. 1, 149-185.

Outtz, J. (1998) Affirmative Action: A Review of Psychological and Behavioral Research. A Book Review. Personnel Psychology, Volume 51, No. 1, 216-219.

Outtz, J. (1998) Testing Medium, Validity and Test Performance. In Beyond Multiple Choice: Evaluating Alternatives to Traditional Testing for Selection, Hakel, M. (Ed.) Hillsdale, New Jersey, Erlbaum Associates, Inc.

Outtz, J. (1997) Developing and Implementing Fair Systems of Assessment. Paper prepared for the Committee on Access Diversity and Civil Rights, National Skill Standards Board, Washington, DC

Zedeck, S., Cascio, W., Goldstein, I., and Outtz, J. (1996) An Alternative to Top-down Selection. In Fair Employment strategies In Human Resource Management, Barrett, R. (Ed.) Westport, Connecticut, Quorum Books.

Cascio, W., Zedeck, S., Goldstein, I., and Outtz, J. (1995) Selective Science or Selective Interpretation. American Psychologist Vol. 50, No. 10, 881-882.

Cascio, W., Goldstein, I., Outtz, J., and Zedeck, S., (1995) Twenty Issues and Answers about Sliding Bands. Human Performance Vol. 8, No. 3, 227-242.

Outtz, J. (1992) The Sliding-band Referral Method: An Innovative Procedure for Selecting or Promoting Employees. Employment Testing, Vol. 1, No. 10, 169-173.

Zedeck, S. Outtz, J. Cascio, W., and Goldstein, I. (1991) Why Do 'Testing Experts Have Such Limited Vision? Human Performance Vol. 4, No. 4 297-308.

Cascio, W. Outtz, J. Zedeck, S. and Goldstein, I., (1991) Statistical Implications of Six Methods for Establishing Cutoff Scores in Personnel Selection. Human Performance Vol. 4, No. 4, 233-64.

Outtz J., (1977) Racial Bias As a Contaminant of Performance Evaluation. Research Report #15, Contract #N00014-75-C-0884, Personnel and Training Research Programs, Science Division, Office of Naval Research, Arlington, Virginia.

"Alternative Uses of Traditional Selection Procedures" (manuscript in preparation).

### Current Employment

Industrial Psychologist in Private Practice

### Current and Previous Consultant Activities

| | |
|---|---|
| **Consultant**<br>April 2007 to<br>Present | **Weil, Gotshal & Manges LLP**<br>**New York, New York** |

Retained as expert witness for the defendant in the case of McReynolds v. Merrill Lynch & Co., LLP (Case No. 05C-6583 (N.D. Ill). The case involves claims of race discrimination against African American Financial Analysts with regard to compensation, promotion and other human resources practices.

| | |
|---|---|
| **Consultant**<br>May 2006 to<br>December 2006 | **Washington Suburban Sanitary Commission**<br>**Laurel, Maryland (WSSC)** |

Testified as expert witness for the defendant in the case of Phillips v. Washington Suburban Sanitary Commission (Case No. 04-12879). The case involved current and former employees who sued WSSC alleging among other things that they were discriminated against in their compensation on the basis of race and ethnicity. The jury verdict was for the defendant with regard to the issues about which I testified.

| | |
|---|---|
| **Consultant**<br>January 2006 | **City of Bridgeport**<br>**Bridgeport, Connecticut** |

Testified as expert witness for the defendant in the case of John Bolton et al. v. City of Bridgeport (3:04CV00670 (JBA). The case involved a claim of racial discrimination by non-minority applicants for the position of firefighter. Plaintiffs contested an oral interview that was part of the selection process. The court ruled for the defendant.

| | |
|---|---|
| **Consultant**<br>July 2005 to April<br>2006 | **Milberg Weiss Bershad & Schulman LLP**<br>**New York, New York** |

Retained as expert witness for the plaintiff in the case of Frank Warren, et al. v. Xerox Corporation. The case involved claims of race discrimination with regard to territory assignment, compensation and promotion for current and former sales employees. The case was settled prior to trial.

| | |
|---|---|
| **Consultant**<br>October 2004 to<br>Present | **Alcoa Inc.**<br>**Pittsburgh, Pennsylvania** |

Retained to develop an entry-level test for apprentice positions at the Company's Cleveland, Ohio facility.

| | |
|---|---|
| **Consultant**<br>July 2004 to Present | **The Popham Law Firm, P.C.**<br>**Kansas City Missouri** |

Retained as expert witness for the plaintiff in the case of Shirley Williams vs. Sprint/United Management Company. The case involves claims of age discrimination with regard to a reduction-in-force carried out by the defendant.

| | |
|---|---|
| **Consultant**<br>April 2004 to<br>Present | **Weiner & Katz LLC**<br>**Livingston, New Jersey** |

Retained as expert witness for the plaintiff in the case of Bishop et. al. v State of New Jersey et. al. This case involves a claim of racial discrimination with regard to a promotion examination for the position of fire captain.

| | |
|---|---|
| **Consultant**<br>April 2004 to<br>November 2005 | **Lieff, Cabraser, Heimann**<br>**  & Bernstein, LLP**<br>**San Francisco, California** |

Retained as expert witness for the plaintiff in the case of Gonzalez et al. v. Abercrombie & Fitch Stores, Inc., A&F California, LLC and A&F Ohio, Inc. The case involved a claim of racial discrimination in hiring. The case was settled prior to trial.

| | |
|---|---|
| **Consultant**<br>March 2004 to<br>June 2004 | **U.S. Department of Commerce**<br>**  Office of General Counsel**<br>**Washington, DC** |

Retained as expert witness for the defendant in the case of Janet Howard v. Donald L. Evans, Secretary U.S. Department of Commerce. The case involves a claim of racial discrimination by African American employees with regard to the Department of Commerce performance appraisal system**.** I was retained to evaluate the adequacy of plaintiff expert's report.

**Consultant**        **City of Chicago**
**January 2004**      **Chicago, Illinois**

Testified as expert witness for the defendant in the case of Arthur Lewis Jr. et al., v. City of Chicago (United States District Court Northern District of Illinois, Eastern Division, Case No. 98 C 5596). This case involved a claim of racial discrimination in the hiring of entry lee firefighters. The District Court ruled in favor of the plaintiff.

**Consultant**        **City of Bridgeport**
March 2004            **Bridgeport, Connecticut**

Testified as expert witness for the defendant in the case of John Bolton v. City of Bridgeport (CV 04-0409828 S). The case involved a claim of racial discrimination by non-minority applicants for the position of firefighter. The court ruled for the defendant.

**Consultant**        **Fisher & Phillips LLP**
January 2003 to       **Atlanta, Georgia**
October 2003

Retained to conduct an evaluation of the human resources practices of Matsushita Communication Industrial Corporation of U.S.A. ("MCUSA") relating to pay and promotion for its hourly, salaried-nonexempt, supervisory and management employees.

**Consultant**        **Paul, Weiss, Rifkind,**
November 2002 to      **Wharton & Garrison**
Present

Retained as expert witness for the defendant in the case of Gutierrez, et al. v. Johnson & Johnson, Inc. The case involves claims of racial discrimination by African American and Hispanic salaried employees. The District Court ruled for the defendant.

**Consultant**        **City of Chicago**
November 2002         **Chicago, Illinois**

Testified as expert witness for the defendant in the case of Horan et al. v. The City of Chicago. I offered an opinion regarding the proper interpretation and use of the results of an entry-level firefighter examination. The District Court ruled for the defendant.

**Consultant**
April 2002 to
March 2003

**Publix Super Markets, Inc.**
**Lakeland, Florida**

Retained to provide assistance in the development and validation of modifications to a selection battery for Assistant Department Manager and Department Manager positions.

**Consultant**
April 2002 to
December 2003

**Arent, Fox, Kintner, Plotkin & Kahn, PLLC**
**Washington, D.C.**

Retained as expert for the defendant in the case of Wicks, et al., v. Metso Paper USA. This case involved a complaint of age discrimination by former employees at the Clark Summit facility of the Beloit Company who were not selected for retention by Metso Paper USA after its acquisition of the Clark Summit facility.

**Consultant**
October 2001 to
August 2002

**Epstein Becker & Green, P.C.**
**Washington, D.C.**

Retained as expert witness for the Defendant in the case of Thornton et al., v. ICMA Retirement Corporation. This case involved a complaint of racial discrimination by current and former African American employees.

**Consultant**
**July 2001 to**
**December 200l**

**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
**Washington, D.C.**

Retained as expert for the plaintiff in the case of Donaldson et al. v, Microsoft (No. C00-1684-P). This case involved claims of racial discrimination by African American employees who alleged among other things discrimination in compensation, promotion as well as retaliation.

**Consultant**
February 2001 to
December 2002

**City of San Francisco**
**San Francisco, California**

Retained to develop and validate a Firefighter examination for the City of San Francisco Fire Department.

**Consultant**
February 2001 to
Present

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and validate an examination for the position of Firefighter.

**Consultant**
January 2001 to
October 2003

**Thelen, Reid and Priest, LLP**
**Washington, D.C.**

Retained to monitor, review, and provide input to the Bureau of
Alcohol, Tobacco, and Firearms regarding the development and
validation of a promotion process for First-Level Supervisor positions.

**Consultant**
January 2000 to
December 2003

**Gordon, Silberman, Wiggins and Childs**
**Birmingham, Alabama**

Retained as expert for the plaintiff in the case of Johnny Reynolds
et al. v Alabama Department of Transportation (Case No. CV 85-T-
655-N). This case involved monitoring a consent degree entered by
plaintiff and defendant regarding the selection, and promotion
practices of the Alabama Department of Transportation

**Consultant**
January 2000 to
December 2001

**Spriggs and Davis, PA**
**Tallahassee, Florida**

Retained as expert for the plaintiff in the case of Middleton, et al.,
v. Publix Supermarkets, Inc.

**Consultant**
March 2000 to
December 2001

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and validate promotion examinations for the
positions of Police Sergeant and Police Detective.

**Consultant**
July 1999 to
September 2001

**City of San Francisco**
**San Francisco, California**

Retained to develop an Officer Candidate Promotion System for the
City of San Francisco Fire Department.

**Consultant**
June 1999 to
January 2003

**CSX Transportation**
**Jacksonville, Florida**

Retained to validate tests and selection procedures used for hiring
and promotion in several departments including Train and Engine
Service, Yardmaster, Dispatcher, Mechanical Operations, and
Engineering.

| | |
|---|---|
| **Consultant**<br>June 1999 to<br>August 2002 | **NAACP Legal Defense Fund**<br>**Los Angeles, California**<br><br>Retained as expert for the plaintiffs in the case of Rios, et al., v. Regents, et al.  Retained to evaluate the admissions procedure of the University of California at Berkeley. |
| **Consultant**<br>December 1998 to<br>Present | **Federal Deposit Insurance Corporation**<br>**Washington, D.C.**<br><br>Retained to provide expert services to the Legal Division of the Federal Deposit Insurance Corporation (FDIC) regarding employment discrimination matters. Responsibilities include conduct of validation studies regarding selection and promotion procedures used by the organization. |
| **Consultant**<br>December 1998 to<br>January 2000 | **Vladeck, Waldman, Elias and Engelhard, P.C.**<br><br>Retained as expert for the plaintiffs in the case of Rodolico v. Unisys Corporation. Responsibilities included an evaluation of a reduction in force carried out by Unisys with regard to engineers employed by Company. |
| **Consultant**<br>August 1998 to<br>December 2001 | **City of San Francisco**<br>**San Francisco, California**<br><br>Retained to develop a Firefighter Cadet Program to replace the Firefighter selection procedures used in the past. Project included the development and validation of screening procedures for entering the program, program content, and methods of evaluating performance. |
| **Consultant**<br>July 1998 to<br>January 2001 | Arter and Hadden<br>Washington, D.C.<br><br>Retained as expert witness for the defendant in the case of Beebe, et al., v. the National Association of Social Workers Inc. (NASW). Responsibilities included evaluation of the procedures used by the NASW to select persons for senior management positions. |

**Consultant**
June 1998 to
Present

**Arent, Fox, Kintner, Plotkin and Kahn**
**Washington, D.C.**

Retained as expert for the defendant, INA Bearing Company Inc.,
in response to a Show Cause Notice from the U.S. Department of
Labor, Office of Federal Contract Compliance. Responsibilities
include an analysis of the Company's selection procedures for
specific craft positions.

**Consultant**
March 1998 to
Present

**Vladeck, Waldman, Elias, and Engelhard, PC**
**New York, New York**

Retained as expert for the plaintiff in the case of Lott v.
Westinghouse.  Responsibilities include evaluation of the
performance appraisal and promotional procedures of the
Westinghouse Company.

**Consultant**
November 1997 to
January 2001

**Perkins Coie**
**Seattle, Washington**

Retained on behalf of The Boeing Company to provide
recommendations regarding the validity, fairness, and operational
use of the Company's First-Level Management Selection System.

**Consultant**
October 1997 to
January 1999

**Hermina Law Group**
**Laurel, Maryland**

Retained as expert for the plaintiff in the case of Richard v. Bell
Atlantic Corporation, et al. Responsibilities include review of the
testing and promotion procedures of the Bell Atlantic Corporation.

**Consultant**
July 1997 to
November 1997

**National Skills Standards Board**
**Washington, D.C.**

Retained to prepare a paper on alternative methods of assessing
national skills standards.

**Consultant**
May 1997 to
June 1997

**Gordon, Silberman, Wiggins and Childs**
**Birmingham, Alabama**

Testified as expert witness for the plaintiff in the case of Moore, et al., v. Norfolk Southern. My testimony addressed the appropriateness of using validity generalization as a strategy for establishing the job relatedness of cognitive ability tests used in a clinical assessment process, and the feasibility of alternatives to the cognitive ability tests used by the defendant. I demonstrated that there were alternatives to the defendant's cognitive ability tests that had less adverse impact and equivalent validity.

**Consultant**
June 1996 to
June 1997

**The George Washington University**
**Washington, D.C.**

Retained to provide consultation with regard to implementation of a reduction in force (RIF) at the George Washington University Medical Center. Responsibilities included examination of implementation decisions from a psychometric standpoint.

**Consultant**
January 1996 to
May 1997

**Vladeck, Waldman, Elias, and Engelhard. P.C.**
**New York, New York**

Retained as expert for the plaintiff in the case of Krueger v. N.Y. Telephone. Retained to examine the report of defendant's expert regarding a downsizing plan implemented by the New York Telephone Company. Responsibilities included evaluation of the conclusions in the report, providing assistance in preparing for defendant expert's deposition, and preparing a rebuttal report.

**Consultant**
December 1995 to
March 1999

**Williams and Connolly**
**Washington, D.C.**

Retained to evaluate the work necessary to validate certain CSXT Railroad Company employment practices in connection with pending litigation.

**Consultant**
November 1995 to
May 1997

**City of Columbus**
**Columbus, Ohio**

Retained to provide consultant services to complete a job analysis for
the position of Firefighter and, if appropriate, make recommendations
to modify the City's testing method. Responsibilities included meeting
with key City personnel regarding the project; providing job analysis
training to Civil Service Commission staff; reviewing job analysis
data; providing written comment to the Civil Service Commission
regarding acceptability of the work, and recommending possible
modifications to the Firefighter examination.

**Consultant**
August 1995 to
June 2001

**United States Department of Justice**
**Federal Bureau of Investigation**
**Washington, D.C.**

Retained to serve on a three-person Review Committee, under the
terms of a settlement agreement, to monitor and comment upon the
proposals and recommendations of experts hired by the FBI.
Responsibilities include evaluation of proposals and
recommendations of experts with regard to promotion practices of
the Agency specifically relating to the Career Development
Program, Performance Appraisal Report System, Management
Appraisal Program, and Initiation of Disciplinary Proceedings.

**Consultant**
June 1995 to
January 2000

**O'Melveny and Myers**
**Washington, D.C.**

Retained as expert for the defendant, Ford Motor Company, in
employment discrimination litigation. Responsibilities include
performing statistical and other analyses of employment data of the
Ford Motor Company and Ford Motor Credit.

**Consultant**
March 1995 to
April 1997

**Cohen, Milstein, Hausfeld and Toll**
**Washington, D.C.**

Retained as expert for the plaintiff in the case of Roberts v. Texaco,
Inc. Responsibilities included review of Texaco's selection and
promotion policies and practices to determine whether they are
excessively subjective and inadequately audited or monitored and,
therefore, are likely to have an adverse impact on African
American employees.

**Consultant**
February 1995 to
May 1995

**Koskoff, Koskoff and Bieder**
**Bridgeport, Connecticut**

Retained as expert witness for the intervening defendants in the
case of Burke, et al., v. Bridgeport Civil Service Commission, et al.
I testified regarding the development and validation of a written
examination for Police Officer and the use of a banding procedure
to interpret test scores.

**Consultant**
December 1993 to
December 1994

**City of Columbus Civil Service Commission**
**Columbus, Ohio**

Retained to advise the Civil Service Commission with respect to
professionally acceptable strategies for test grading and application
certification. Also retained to prepare a position paper on "Banding"
as a selection strategy and provide recommendations to City
officials.

**Consultant**
October 1993 to
September 1995

**Potomac Electric Power Company**
**Washington, D.C.**

Retained to (a) develop selection procedures for all first-level
supervisor positions, (b) develop alternative selection procedures
for entry-level positions, and (c) evaluate and revise the
qualification card program which determines progression into
skilled craft positions.

**Consultant**
September 1993 to
Present

**City of Chicago**
**Chicago, Illinois**

Retained to develop and validate a written examination for the
position of Firefighter. The examination is administered to
approximately twenty-five thousand applicants. It incorporates
audiovisual technology as well as nontraditional item format
designed to enhance validity and reduce adverse impact.

**Consultant**
June 1993 to
March 1995

**City of Detroit**
**Detroit, Michigan**

Retained to develop promotion examinations for the positions of
Police Lieutenant, Sergeant, and Investigator in the Detroit Police
Department.

**Consultant**
February 1992 to
May 1992

**CORE Corporation, Inc.,**
**Berkeley, California**

Retained to work with the firm to develop and validate an entry-level Firefighter examination for the City of San Francisco.

**Consultant**
January 1992 to
January 2000

**U.S. Department of Justice**
**Federal Bureau of Investigation**
**Washington, D.C.**

Retained to conduct a review and analysis of the Career Development Program for Mid-Level Managers (GS-14 and GS-15) and propose modifications.

**Consultant**
July 1991 to
December 1991

**Arnold and Porter**
**Washington, D.C.**

Retained (with agreement of the Federal Bureau of Investigation) to assist the law firm in preparation for possible litigation on behalf of a class of African American FBI agents who claimed that the FBI discriminated against them on account of race in violation of Title VII of the Civil Rights Act of 1964.

**Consultant**
June 1991 to
January 1995

**East Bay Municipal Utility District**
**Oakland, California**

Designed and developed an entry-level test for apprentice positions in the Plant and Equipment Maintenance Division of the Maintenance Department. The positions included Electrical Worker, Mechanical Maintenance Worker (including auto mechanic), Carpentry Worker, and Instrument Worker. A new video-based testing format was used to present test information. This format produced greater fidelity between the test and the jobs. Results showed good variance, high reliability, and a significant reduction in test score differences across race, ethnicity, and gender.

**Consultant**
April 1991 to
January 1996

**United States Department of Justice**
**Civil Rights Division**
**Washington D.C.**

Retained as expert witness for the plaintiff in the case of United States v. State of New Jersey (CV 950-73) to review validation evidence, determine whether fire service tests are job-related, and possibly testify regarding findings.

**Consultant**
May 1992 to
June 1998

**United States Department of Justice**
**Civil Rights Division**
**Washington D.C.**

Retained in the case of United States v. Nassau County to assist in the design, development, and validation of a new device for use by Nassau County in the selection of candidates for the position of Police Officer. Responsibilities also included consultation with U.S. attorneys assigned to the case, and testimony by deposition and/or at trial as required.

**Consultant**
February 1991 to
March 1991

**Arent, Fox, Kintner, Plotkin and Kahn**

Retained as expert witness for the defendant in the case of Edward L. Jolly v. Northern Telecom Inc. (Civil Action No. 90-322-A). Retained to testify regarding the type of evaluation required for an industrial psychologist to reach the expert opinion that one employee is more qualified than another for promotion to a mid-level management position.

**Consultant**
November 1990

**City of San Francisco**
**San Francisco, California**

Testified as expert witness for the defendant in the case of Officers for Justice, et al., v. Civil Service Commission of the City and County of San Francisco. This case involved the contention by plaintiffs that a system of test score interpretation called "sliding bands," which I developed, is statistically inappropriate and does not represent a reasonable alternative to the use of test scores in strict rank order. The district court ruled for the defendant. The decision was upheld by the Ninth Circuit Court of Appeals. In its opinion, the Ninth Circuit Court of Appeals wrote

"... we find that the efforts exerted in this process culminated in a unique and innovative program which succeeds in addressing past harms to minorities while minimizing future harmful effects on non-minority candidates. The successful efforts of all parties and the district court in reaching this resolution are to be lauded." (Officers for Justice v. Civil Service Commission of the City and County of San Francisco, Nos. C-73-0657 RFP and C-77-2884 RFP, N.D. Cal., 21, August 1991)

**Consultant**
September 90 to
September 1991

**City of Huntington**
**Huntington, West Virginia**

Retained to review the City of Huntington's Civil Service Rules and
selection procedures for hiring Police Officers and Firefighters,
provide an opinion regarding the validity of the procedures, and
determine whether the adverse impact of the procedures could be
reduced.

**Consultant**
April 1990 to
April 1991

**NAACP**
**Baltimore, Maryland**

Retained to provide expert opinion regarding the validity of the
College Level Academic Skills Test (CLAST). This test was being
used by the State of Florida to measure the achievement level of
third-year college students pursuing a teaching career.

**Consultant**
December 1989

**City of Bridgeport**
**Bridgeport, Connecticut**

Testified as expert witness for the defendant in the case of
Bridgeport Guardians Inc., Hispanic Society Inc., v. City of
Bridgeport (Civil Action No. B-89-547, TFGD), U.S. District
Court, District of Connecticut. The case involved a charge by the
plaintiffs that the promotion process for the position of Police
Sergeant in the Bridgeport Police Department had adverse impact
against Black and Hispanic candidates, and was not valid. I gave
testimony that in my opinion the promotion process did not have an
adverse impact against these groups and was valid.

**Consultant**
December 1989

**Bramhall, Duncan and Ohm**
**Attorneys at Law**
**Little Rock, Arkansas**

Testified as expert witness for the plaintiff in the case of Grady
Anthony v. City of Little Rock (Case No. LR-C-88-236), U.S.
District Court, Eastern District of Arkansas, Western Division. The
case involved a charge by the plaintiff that the procedure used to set
the cutoff score on a Police Lieutenant examination was neither
valid nor psychometrically correct. The court ruled that while
plaintiff's arguments were plausible, and the defendant's promotion
procedure was "far from perfect," it did meet the requirements of
the Uniform Guidelines and was valid and reasonable.

**Consultant**
August 1989 to
December 1989

**Congress of the United States**
**Office of Technology Assessment**
**Washington, D.C.**

Retained to assist the Office of Technology Assessment in the evaluation of the validity and reliability of paper-and-pencil integrity tests. Assignment included review of validation studies and submission of a written report of my findings.

**Consultant**
July 1989 to
January 1998

**United States Department of Justice**
**Federal Bureau Investigation**
**Washington, D.C.**

Served on a committee with Drs. Robert Guion and Charles Lawshe to review and monitor the development of selection procedures for the positions of Supervisory Fingerprint Examiner and Latent Fingerprint Specialist.

**Consultant**
May 1989 to
June 1989

**District of Columbia Public Schools**
**Washington, D.C.**

Retained to serve as a member of a technical review committee for the District of Columbia Public Schools' Teacher Content Knowledge Assessment Program. The committee's task was to review the procedures used to develop and validate an entry-level teacher certification test.

**Consultant**
March 1989 to
July 1989

**United States Department of Labor**
**Office of Federal Contract Compliance**
**Washington, D.C.**

Retained to review validation studies from the New York Telephone Company to determine whether they were in compliance with the standards set forth in the Uniform Guidelines on Employee Selection Procedures. The validation studies were conducted to determine the validity and fairness of tests used to screen applicants for the position of Service Representative, as well as positions in entry-level and outside crafts.

**Consultant**
February 1989 to
January 1997

**East Bay Municipal Utility District**
**Oakland, California**

Retained to lead a team of three independent experts (James Outtz, Wayne Cascio, and Sheldon Zedeck) mutually agreed upon by the parties to perform the work of the "Testing and Selection Expert" in the Case of McIntosh, et al., v. East Bay Municipal Utility District. The Team's responsibilities included (a) review of the company's policies, practices and procedures with regard to testing and selection, (b) identification of practices and procedures not in compliance with the Uniform Guidelines on Employee Selection Procedures, and (c) formulation of recommendations to bring such practices and procedures into compliance.

**Consultant**
February 1989 to
January 1996

**Giant Food Inc.**
**Landover, Maryland**

Retained to conduct a criterion-related validation study of the company's selection procedure for the position of Retail Trainee. Retail Trainee is a first-level management position in the company's food stores. Responsibilities included research methodology, as well as reporting the results. Since completing this project, I have been retained to revise the selection procedure and conduct a second validation study.

**Consultant**
December 1988 to
February 1989

**New York State Department of Civil Service**
**Albany, New York**

Developed and conducted two three-day training courses on contemporary approaches to reducing adverse impact in employment selection procedures. The training courses were presented to sixty members of the department's professional test development staff.

**Consultant**
February 1988 to
May 1990

**CORE Corporation**
**San Francisco, California**

Retained to join a committee of testing experts in the development and validation of selection procedures for positions from Firefighter to Battalion Chief in the San Francisco Fire Department. This project included conduct of a job analysis and the development of written tests as well as job simulations.

**Consultant**
January 1988 to
September 1989

**City of Baltimore**
**Baltimore, Maryland**

Retained to provide technical assistance in the development and validation of a promotion procedure for the position of Fire Battalion Chief in the Baltimore Fire Department. Project included conduct of a job analysis and the development of a written test and job simulations.

**Consultant**
October 1987 to
January 1998

**City of New Orleans**
**New Orleans, Louisiana**

Retained to provide technical assistance with regard to the development and validation of selection procedures for the positions of Police Officer and Police Lieutenant, in accordance with an agreement made by the City of New Orleans in the case of Williams v. City of New Orleans (Civil Action No. 73-649). In accordance with the settlement, the City of New Orleans agreed to consult with an Industrial Psychologist designated by plaintiffs.

**Consultant**
October 1987 to
April 1993

**City of New York**
**New York, New York**

Retained to provide technical assistance with regard to the development and validation of selection procedures for the positions of Police Lieutenant and Sanitation Supervisor. The project included conduct of a job analysis as well as development of written tests and job simulations.

**Consultant**
August 1987 to
January 1997

**Amalgamated Transit Union Local 998**
**West Allis, Wisconsin**

Retained to evaluate the Milwaukee County Transit System's selection procedure for the position of Shipper/Receiver and to offer an opinion as to its validity.

**Consultant**
July 1987 to
January 1989

**Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen and Bartnick**
**Detroit, Michigan**

Retained as expert witness for the plaintiff in the case of Hugely, et al., v. General Motors Corporation, U.S. District Court, Eastern District of Michigan (Civil Action No. 83 C.V. 2866 DT). I was retained to evaluate the performance appraisal system used by General Motors for certain managerial positions and to offer an opinion as to its validity.

| | |
|---|---|
| **Consultant**<br>May 1987 to<br>November 1987 | **Reiders, Travis, Mussina, Humphreys and Harris**<br>**Williamsport, Pennsylvania** |

Retained as expert witness for the plaintiffs in the case of Johns, et al., v. Phillips ECG v. United Steel Workers of America, et al., U.S. District Court for the Middle District of Pennsylvania. In this case, White female employees charged that the company discriminated on the basis of sex, and violated the Equal Pay Act.

| | |
|---|---|
| **Consultant**<br>May 1987 to<br>June 1987 | **Cincinnati Civil Service Commission**<br>**Cincinnati, Ohio** |

Retained to advise the Civil Service Commission as to the merit of an appeal by Jon Sears, an employee of the City of Cincinnati. Mr. Sears claimed that he was denied promotion to a managerial position because of his race. I assisted the Commission in conducting a public hearing regarding the matter and, after reviewing relevant documents and a transcript of the hearing, recommended that Mr. Sears' appeal for promotion be denied.

| | |
|---|---|
| **Consultant**<br>February 1987 to<br>March 1988 | **Baltimore City Civil Service**<br>**Baltimore, Maryland** |

Retained as expert witness for the defendant in the case of Thomas DeShields v. Mayor and City Council of Baltimore, et al. (Civil Action No. 3-84-1905). Mr. DeShields charged that the promotion examination process for the position of Battalion Chief in the Fire Department was not valid, had an adverse impact against Blacks, and resulted in disparate treatment against him because of his race. The court ruled for the defendant.

| | |
|---|---|
| **Consultant**<br>August 1986 to<br>January 1987 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut** |

Retained to develop and administer a content-valid promotion procedure for the position of Police Lieutenant, including pre-test study materials, a written test, and work sample exercises.

| | |
|---|---|
| **Consultant**<br>August 1986 to<br>September 1986 | **Office of the Associate General Counsel, Personnel Appeals Board**<br>**U.S. General Accounting Office**<br>**Washington, D.C.** |

Retained as expert witness for the complainant in the case of Chennareddy v. U.S. General Accounting Office. This case involved a charge of racial discrimination in promotions. I reviewed the promotional procedure at issue, prepared a written report, and testified at the Personnel Appeals Board Hearing.

| | |
|---|---|
| **Consultant**<br>July 1986 to<br>October 1990 | **Fitzpatrick and Associates**<br>**Washington, D.C.**<br><br>Retained as expert witness for the plaintiff in the cases of James Short, et al., v. Federal Bureau of Investigation (EEOC Complaint No. 033-079-X0377) and Bennett, et al., v. Federal Bureau of Investigation (EEOC Complaint No. 033-085-X5323). I was retained to review the promotion process for the position of Fingerprint Specialist in the Latent Fingerprint Section of the FBI and to offer an opinion as to its validity and fairness. |
| **Consultant**<br>June 1986 to<br>July 1986 | **Legal Department, City of Bridgeport**<br>**Bridgeport, Connecticut**<br><br>Retained as expert witness for the defendant in the case of Association Against Discrimination Inc. v. City of Bridgeport. The case involved a charge by Black applicants for the position of Firefighter that rank ordering of candidates on an eligibility list was a racially discriminatory method of interpreting the scores on a Firefighter written test. I developed a system of interpreting the test scores based upon "band scoring" which was acceptable to the plaintiff, the City of Bridgeport, and the District Court. The Court ordered that the "banding" system be adopted. |
| **Consultant**<br>March 1986 to<br>January 1988 | **Baltimore Civil Service**<br>**Baltimore, Maryland**<br><br>Retained to develop the 1986 and 1987 Police Sergeant promotion procedures based upon the system of "Targeted Testing" originally developed and implemented in 1984. This project involved the continued use of a pre-test study manual for the written test, and development and implementation of a written test and oral examination. |
| **Consultant**<br>February 1986 to<br>February 1991 | **NAACP Legal Defense and Educational Fund**<br>**New York, New York**<br><br>Retained as expert witness for the defendants in the case of Bushey v. New York State Department of Correctional Services. My testimony was to be directed to the question of whether a promotion procedure, which had less adverse impact than another and was as valid, should be used in lieu of the procedure with greater adverse impact. |

| | |
|---|---|
| **Consultant**<br>January 1986 to<br>December 1989 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut** |

Retained to develop content-valid promotion procedures for the positions of Fire Lieutenant and Telecommunications Operator. The project included conduct of a job analysis, development of a written test and oral board examination, and administration of both.

| | |
|---|---|
| **Consultant**<br>January 1986 to<br>February 1988 | **City of St. Petersburg**<br>**St. Petersburg, Florida** |

Retained to develop a promotion procedure for the positions of Police Sergeant and Police Lieutenant. This project was a continuation of the "Targeted Testing" format initiated in 1984. The project included development of a pre-test study manual, written examination, and an assessment center.

| | |
|---|---|
| **Consultant**<br>September 1985 to<br>December 1985 | **The American Civil Liberties Union**<br>**Hartford, Connecticut** |

Retained as expert for the plaintiff in the case of Cicero Booker v. City of Waterbury Connecticut. In this case, Black applicants alleged that the promotional procedures used by the Waterbury Police Department were discriminatory. I prepared a report stating my opinion as to the validity and fairness of the promotional procedures and submitted it to the Court.

| | |
|---|---|
| **Consultant**<br>April 1985 to<br>September 1986 | **San Francisco Lawyers Committee For Urban Affairs**<br>**San Francisco, California** |

Retained as expert witness for the plaintiff in the case of United States v. City of San Francisco. This was a Title VII case in which Black and Female applicants for the position of Firefighter charged, among other things, that the entry-level Firefighter Examination used by the City of San Francisco (in 1984) was racially discriminatory. The parties agreed upon a settlement of the case that called for the development of a new entry-level examination.

| | |
|---|---|
| **Consultant**<br>March 1985 to<br>December 1985 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut** |

Retained to develop and validate a written examination for the position of Police Officer. The project included conduct of a job analysis, development, administration and scoring of a written test, and documentation of its validity. I agreed to serve as expert witness for the City of Bridgeport in the event of litigation involving this test.

| | |
|---|---|
| **Consultant**<br>March 1985 to<br>July 1985 | **Communications Workers of America**<br>**Washington, D.C.**<br><br>Retained to develop a training program aimed at improving the performance of CWA members on written tests and other selection and promotion procedures (e.g., work sample training modules) administered by the companies of the Bell System. |
| **Consultant**<br>January 1985 | **Bramhall and Duncan**<br>**Attorneys at Law**<br>**Little Rock, Arkansas**<br><br>Testified as expert witness for the plaintiffs in the case of Gilbert v. City of Little Rock. This case was remanded to the District Court after a ruling for plaintiffs by the Eighth Circuit Court of Appeals. The City of Little Rock's appeal to the U.S. Supreme Court was denied. |
| **Consultant**<br>September 1984 to<br>July 1985 | **Baltimore City Civil Service Commission**<br>**Baltimore, Maryland**<br><br>Retained to develop a content-valid promotion procedure for the positions of Police Sergeant and Lieutenant. Development of the Police Sergeant examination was ordered by the U.S. District Court for the District of Maryland in the case of Vanguard Justice Society v. Harry Hughes. I was selected by both plaintiffs and defendants (and approved by the Court) to develop the procedure. |
| **Consultant**<br>June 1984 to<br>July 1984 | Bridgeport Civil Service Commission<br>Bridgeport, Commission<br><br>Retained to develop and validate a written examination for the position of Firefighter. The project included conduct of a job analysis, development, administration and scoring of a written test, as well as documentation of its validity. I agreed to serve as expert witness for the City of Bridgeport in the event of litigation involving the test. |
| **Consultant**<br>January 1984 to<br>July 1985 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut**<br><br>Retained to develop and validate a promotional procedure for the position of Police Detective. The project included conduct of a job analysis, as well as development of the procedure, its implementation, and documentation of its validity. I also agreed to serve as expert witness for the City of Bridgeport **in the event of litigation involving this procedure.** |

| | |
|---|---|
| **Consultant**<br>November 1983 to<br>January 1985 | **Mexican American Legal Defense and Educational Fund**<br>**Chicago, Illinois**<br><br>Retained as expert for the plaintiff in the case of Rosario v. Cook County Department of Corrections. This case involved a charge of racial discrimination by Hispanic Corrections Officers seeking promotion to the position of Sergeant. The case was settled prior to trial. |
| **Consultant**<br>September 1983 to<br>December 1985 | **City of St. Petersburg**<br>**St. Petersburg, Florida**<br><br>Retained to develop and/or guide the development of promotion procedures for several positions within the Police and Fire Departments, including Police Sergeant, Police Lieutenant, Fire Lieutenant, Fire Captain, and Deputy Chief. Each promotion procedure was based upon a system known as "Targeted Testing" developed by me. I also agreed to serve as expert witness for the City of St. Petersburg in the event of litigation involving these procedures. |
| **Consultant**<br>June 1983 to<br>December 1984 | **New York State Department of Civil Service**<br>**Albany, New York**<br><br>Retained as consulting industrial psychologist to serve as plaintiff's representative in the development and implementation of new selection procedures for the positions of Correction Captain and Corrections Lieutenant in the New York State Department of Correctional Services. Development of the new procedures was ordered by the Court based upon a consent decree in the case of Kirkland v. New York State Department of Correctional Services. |
| **Consultant**<br>November 1982 to<br>January 1985 | **Legal Action of Wisconsin Inc.**<br>**Milwaukee, Wisconsin**<br><br>Retained as expert witness for the plaintiff in the case of Martin v. State of Wisconsin. |
| **Consultant**<br>November 1982 to<br>June 1983 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut**<br><br>Retained to develop and administer a content-valid promotion procedure for the position of Police Sergeant. This project included conduct of a job analysis, development of a written test and structured oral interview, as well as implementation and scoring of the procedure. I agreed to serve as expert witness for the City of Bridgeport in the event of a legal challenge regarding the procedure. No such challenge arose**.** |

**Consultant**
October 1982 to
October 1990

**Perry, First, Reiher, Lerner and Quindel**
**Attorneys at Law**
**Milwaukee, Wisconsin**

Retained as expert witness for the plaintiff in the case of League of Martin v. City of Milwaukee. This case involved a charge by Blacks within the Milwaukee Police Department that the Department's promotion procedures for positions above Police Officer, particularly those for Police Sergeant, were racially discriminatory. The case was settled prior to trial. As part of the settlement, defendants agreed to develop new promotion procedures. It was my responsibility to assist and advise counsel for plaintiffs with regard to monitoring the development of the new promotion procedures.

**Consultant**
September 1982 to
December 1987

**Rosen and Dolan**
**Attorneys at Law**
**New Haven, Connecticut**

Testified as expert witness for the plaintiffs in the case of Men and Women for Justice v. State of Connecticut. This was a Title VII case involving a charge of discrimination regarding the selection procedure for the position of State Trooper. The case was settled prior to a ruling by the Court. As part of the settlement agreement, I was designated by counsel for plaintiffs as consulting industrial psychologist responsible for assisting the Connecticut State Civil Service in the development of a new selection procedure for the position of State Trooper.

**Consultant**
August 1982 to
June 1995

**Arent, Fox, Kintner, Plotkin and Kahn**
**Washington, D.C.**

Retained as expert witness for the plaintiffs in the case of Cook v. Boorstin. This was a Title VII case that involved a charge by Blacks that certain promotion procedures used by the Library of Congress were racially discriminatory.

**Consultant**
April 1982

**McCants, Kramer and Gerals**
**Washington, D.C.**

Served as expert witness for the defendant in the case of Mccullough v. United Services Organization. This was a Title VII case involving a charge by a Black employee that she was denied a promotion because of her race.

| | |
|---|---|
| **Consultant**<br>January 1982 to<br>June 1995 | **City of Toledo**<br>**Toledo, Ohio** |

Retained as court-appointed expert in the case of Sarabia v. Duck. I was responsible for assisting the Toledo Civil Service Commission in the development and validation (in accordance with the Uniform Guidelines on Employee Selection Procedures) of a non-discriminatory selection procedure for the position of Police Officer. Responsibilities included assisting in the identification of subject areas to be tested, formulation of appropriate test questions, and standardization of each component of the selection process (e.g. background investigation, psychological evaluation and oral interview).

| | |
|---|---|
| **Consultant**<br>December 1981 to<br>April 1982 | **Personnel Department**<br>**City of Hartford**<br>**Hartford, Connecticut** |

Developed a content-valid promotion procedure for the position of Police Sergeant. The project involved conduct of a job analysis, development, implementation, and scoring of the procedure, as well as documentation of its validity. I also agreed to testify as an expert witness for the City of Hartford in the event of a legal challenge regarding the procedure.

| | |
|---|---|
| **Consultant**<br>December 1981 to<br>January 1982 | **Phillip Duncan and Manual Pruitt**<br>**Attorneys at Law**<br>**Little Rock, Arkansas** |

Testified as expert witness for the plaintiff in the case of Gilbert v. City of Little Rock. This was a Title VII case involving a charge by Blacks that the promotional procedures used by the Little Rock Police Department were racially discriminatory.

| | |
|---|---|
| **Consultant**<br>October 1981 to<br>January 1982 | **District of Columbia Government**<br>**Washington, D.C.** |

Retained to provide an assessment of the validity and fairness of the entry-level written examination for Police Officer. My primary responsibility was to provide a recommendation regarding the most appropriate use of the examination in light of professional standards and the Uniform Guidelines on Employee Selection Procedures and to make a recommendation as to available alternatives.

| | |
|---|---|
| **Consultant**<br>August 1981 to<br>December 1982 | **Sommers, Schwartz, Silver, and Schwartz**<br>**Southfield, Michigan**<br><br>Retained as expert witness for the plaintiff in the case of Geoffrion v. Rubbermaid, Inc. This was a case in which a female employee charged that her employer violated the Equal Pay Act by paying her less than her male counterparts for the same work. |
| **Consultant**<br>June 1981 to<br>December 1989 | **The National Black Coalition of Federal Aviation Employees**<br>**Memphis, Tennessee**<br><br>Retained to provide technical assistance with regard to the validity and fairness of the selection procedures used by the Federal Aviation Administration to select Air Traffic Controllers. |
| **Consultant**<br>May 1981 to<br>September 1985 | **Committee to Develop Joint Technical Standards for**<br>  **Educational and Psychological Testing**<br>**American Psychological Association, American Educational**<br>  **Research Association, and the National Council on**<br>  **Measurement in Education**<br>**Washington, D.C.**<br><br>Served as a technical advisor to the Committee. As such, I responded to specific questions, provided general counsel, and in some instances, reviewed Committee materials pertaining to the development of new joint technical standards for educational and psychological testing. |
| **Consultant**<br>April 1981 to<br>September 1981 | **Biggs and Bataglia**<br>**Wilmington, Delaware**<br><br>Testified as expert witness for the plaintiff in the case of Wilmore, et al., v. City of Wilmington, et al. This was a Title VII case in which Blacks charged racial discrimination on the part of the Wilmington Fire Department through the use of racially discriminatory promotion procedures. |
| **Consultant**<br>January 1981 to<br>February 1981 | **National Association of Social Workers**<br>**Washington D.C.**<br><br>Retained to provide technical advice with regard to the development of guidelines for the conduct of job analyses, when validating educational credentials. |

**Consultant**
September 1980 to
January 1985

**The Law Project**
**Atlanta, Georgia**

Retained as expert witness for the plaintiff in the case of Jeanette Turner v. Georgia Department of Labor. Served as consultant to the plaintiff in the case of Kennedy, et al., v. Crittenden, et al. My responsibilities included assisting counsel in monitoring the development of new selection procedures at a large state hospital.

**Consultant**
September 1980 to
May 1981

**Puerto Rican Legal Defense and Educational Fund**
**New York, New York**

Retained as expert witness for the plaintiff in the case of Hispanic Society, et al., v. Civil Service Commission of the City of New York, and Guardians Association of the City of New York v. Civil Service Commission of the City of New York. In both Title VII cases, minorities charged that the New York City Police Department discriminated against them by using entry-level and promotion procedures that were not valid and had adverse impact. Both cases were settled prior to trial. As part of the settlement agreement, the City of New York agreed to retain consultants to develop new selection procedures for the positions of Police Officer and Police Sergeant. I was retained by counsel for plaintiff to monitor the development of new selection procedures. I cooperated with the City's consultants in developing the new entry-level Police Officer examination and provided assistance.

**Consultant**
August 1980 to
October 1980

**Jephunneh Lawrence**
**Attorney at Law**
**Washington, D.C.**

Testified as expert witness for the plaintiff in the case of Minnis, et al., v. The Home Loan Mortgage Corporation. This was a Title VII case in which the plaintiff charged that the defendant had discriminated on the basis of race by using promotion procedures that were not valid and had adverse impact.

**Consultant**
August 1980 to
September 1980

**Chambers, Stein, Ferguson and Becton, P.A.**
**Charlotte, North Carolina**

Retained to provide technical assistance to counsel for plaintiff regarding determination of the existence of adverse impact in the case of Bishop, et al., v. City of Greensboro Police Department.

| | |
|---|---|
| **Consultant**<br>March 1980 to<br>May 1980 | **Arent, Fox, Kintner, Plotkin and Kahn**<br>**Washington, D.C.** |

Retained as expert witness for the plaintiff in the case of Miller v. Staats. This case involved a charge by Black employees of the Government Services Administration that the agency discriminated against them by making use of a promotion procedure (and, more specifically, a performance appraisal process) that was not valid and had adverse impact. The case was settled prior to trial. As part of the settlement, the Government Services Administration agreed to retain an outside consultant to develop new promotion procedures. I assisted counsel for plaintiffs in monitoring this work.

| | |
|---|---|
| **Consultant**<br>January 1980 to<br>November 1980 | **Detroit Police Department**<br>**Detroit, Michigan** |

Retained to develop content-valid promotion examinations for the positions of Police Sergeant and Police Lieutenant. Both examinations were developed on the basis of a system called "Targeted Testing" created by me. Both examinations proved to be valid and fair and produced no adverse impact.

| | |
|---|---|
| **Consultant**<br>June 1979 to<br>June 1981 | **San Francisco Lawyers Committee For Urban Affairs**<br>**San Francisco, California** |

Retained as expert witness for the plaintiff in the case of Luevano v. Campbell. This was a Title VII case in which plaintiff charged that the U.S. Civil Service Commission relied upon a racially discriminatory examination (PACE) in screening candidates for middle-management positions in the Federal Government. The case was settled prior to trial. The Civil Service Commission agreed to discontinue use of the test.

| | |
|---|---|
| **Consultant**<br>May 1979 to<br>December 1989 | **Communications Workers of America**<br>**Washington, D.C.** |

Retained to provide technical assistance with regard to the evaluation (as to validity and fairness) of selection procedures developed by the American Telephone and Telegraph Company.

| | |
|---|---|
| **Consultant**<br>May 1979 to<br>January 1981 | **University Research Corporation**<br>**Washington, D.C.** |

Retained to evaluate selection procedures used by police departments throughout the United States that received funds from the Law Enforcement Assistance Administration.

| | |
|---|---|
| **Consultant**<br>February 1979 to<br>February 1986 | **Institute for Public Representation**<br>**Georgetown University Law Center**<br>**Washington, D.C.** |

Retained as technical expert for the plaintiffs in the case of Mckenzie v. Boyle. I developed a model promotional procedure for the position of Offset Printing Press Operator.

| | |
|---|---|
| **Consultant**<br>December 1978 to<br>December 1980 | **Yablonski, Both and Edelman**<br>**Washington, D.C.** |

Retained as expert witness for the plaintiff in the case of Hubbard v. Rubbermaid Inc. This case involved a charge by female employees that the company violated the Equal Pay Act by paying them less than their male counterparts for performing the same work. The case was settled prior to trial.

| | |
|---|---|
| **Consultant**<br>October 1978 to<br>October 1981 | **Arnold and Porter**<br>**Washington, D.C.** |

Testified as expert witness for the plaintiff in the case of NAACP v. Prince George's County, Maryland. This case involved a charge by Blacks that Prince George's County discriminated against them by utilizing promotional procedures that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>August 1978 to<br>April 1979 | **Wilmer Cutler and Pickering**<br>**Washington, D.C.** |

Testified as expert witness for the plaintiff in the case of Segar v. Civiletti. This was a Title VII case in which plaintiffs charged that the Drug Enforcement Administration discriminated against them by utilizing a promotion procedure, specifically a performance appraisal process, that was not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>July 1978 to<br>December 1982 | **City of Cincinnati**<br>**Cincinnati, Ohio** |

Retained to train personnel department staff in the areas of job analysis, test development, and test validation. I developed and validated employment tests for the positions of Assistant Supervisor Municipal Garage and Community Center Director II.

| | |
|---|---|
| **Consultant**<br>July 1978 to<br>July 1980 | **McDonald and McDonald**<br>**Attorneys at Law**<br>**Houston, Texas** |

Testified as an expert witness for the plaintiff in the case of Cormier v. Pittsburgh Plate Glass Company. This was a Title VII case in which plaintiff charged that the company discriminated against Black applicants by utilizing employment tests that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>July 1978 to<br>July 1979 | **Lawyers' Committee for Civil Rights Under Law**<br>**Washington, D.C.** |

Retained as expert witness for the plaintiff in the case of Tarver, et al., v. City of Houston, et al. This was a Title VII case in which plaintiff charged that the Police and Fire Departments of the City of Houston discriminated against Blacks by utilizing entry-level and promotion procedures that were not valid and had adverse impact. The case was settled prior to trial. As part of the settlement, the City of Houston agreed to develop new selection procedures for both the Police and Fire Departments.

Testified as an expert witness for plaintiff in the case of Pegues v. Mississippi State Employment Service. This was a Title VII case in which plaintiff charged that the Mississippi State Employment Service discriminated against Blacks by utilizing employment tests that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>April 1978 to<br>June 1978 | **Prince George's County Government**<br>**Prince George's County, Maryland** |

Retained to develop entry-level written examinations for the positions of Firefighter and Correctional Officer.

| | |
|---|---|
| **Consultant**<br>April 1978 to<br>May 1978 | **George M. Strickler**<br>**Attorney at Law**<br>**New Orleans, Louisiana** |

Retained as expert witness for the plaintiff in the case of Johnson, et al., v. City of Shreveport, et al. This was a Title VII case in which plaintiff charged that the Fire Department of the City of Shreveport discriminated against Blacks by utilizing selection procedures that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>June 1977 to<br>August 1977 | **Legal Aid Society**<br>**Alameda County, California** |

Retained as expert witness for the plaintiff in the case of Ellis v. Naval Air Rework Facility. This was a Title VII case in which plaintiff charged that the Naval Air Rework Facility discriminated against Blacks by utilizing selection procedures that were not valid and had adverse impact. The case was settled prior to trial.

| | |
|---|---|
| **Consultant**<br>May 1977 to<br>March 1984 | **NAACP Legal Defense and Educational Fund**<br>**Washington D.C.** |

Retained as expert witness for the plaintiff in the cases of Williams v. City of New Orleans and Howard v. McLucas. These were Title VII cases in which plaintiff charged that the employer discriminated against Blacks by utilizing selection procedures that were not valid and had adverse impact. Both cases were settled prior to trial.

Testified as expert witness for the plaintiff in the cases of Chisholm v. U.S. Postal Service, Harrison v. Lewis, Lewis v. National Labor Relations Board, and Griffin v. U.S. Postal Service. These were Title VII cases in which plaintiffs charged that the employer discriminated against Blacks by utilizing selection procedures that were not valid and had adverse impact.

*Professional Conference Papers and Presentations*

| | |
|---|---|
| **May 2006** | **Twenty-First Annual Conference of**<br>**The Society for Industrial and**<br>**Organizational Psychology** |

Conducted a half-day workshop entitled "Recent Practical, Methodological and Statistical Advances in the Detection of Adverse Impact and Test Bias

Made a presentation entitled "Adverse Impact: What Is It and What Can be Done About It"

| | |
|---|---|
| **April 2005** | **Twentieth Annual Conference of**<br>**The Society for Industrial and**<br>**Organizational Psychology** |

Made a presentation entitled "Race Discrimination Cases: Past, Present and Future."

| | |
|---|---|
| **April 2003** | **Personnel Testing Council of Metropolitan Washington DC** |

Presented an address entitled "Cognitive Ability & Workforce Diversity: Can They Co-Exist?

| | |
|---|---|
| **March 2002** | **Mid-Winter Conference American Bar Association Section of Labor and Employment Law Employment Rights and Responsibilities Committee Puerto Vallarta, Mexico** |

Presented an address entitled "Selection Procedures in Reductions-in-Force."

| | |
|---|---|
| **January 2002** | **Winter Conference Mid-Atlantic Personnel Assessment Consortium Baltimore, Maryland** |

Presented an address entitled "The Development and Validation of a Firefighter Test Battery."

| | |
|---|---|
| **May 2001** | **Spring Conference Personnel Testing Council of Southern California Covina, California** |

Delivered keynote address entitled "Issues in Personnel Selection: The Past Quarter Century to 2010."

| | |
|---|---|
| **April 2000** | **Fifteenth Annual Conference Society for Industrial and Organizational Psychology New Orleans, Louisiana** |

Presented an address entitled "A Base Rate Study of Firefighter Selection."

| | |
|---|---|
| **March 2000** | **Institute of People Management of South Africa Assessment Center Study Group Capetown, South Africa** |

Presented an address entitled "Utilizing the Assessment Center to Measure Competencies Derived from the Organization's Mission and Vision."

Presented an address entitled "Utilizing Creative Assessment Centers to Achieve Greater Equity in the Work Force."

34

**April 1998**   **Thirteenth Annual Conference**
        **Society for Industrial and Organizational Psychology**
        **Dallas, Texas**

        Presented a half-day pre-conference workshop entitled "Video-Based Situational Training: Pros and Cons."

        Presented a symposium addressing the pros and cons of banding.

**July 1994 to**   **Lang and Padgett**
**January 1995**   **Washington, D.C.**

        Conducted three one-day workshops on the use of statistics in Title VII cases.

**October 1994**   **Industrial and Organizational Psychology Program**
        **Institute for Psychological Research and Application**
        **Department of Psychology**
        **Bowling Green State University**
        **Conference on Evaluating Alternatives to Traditional Testing**

        Presented a lecture entitled "Testing Medium, Validity, and Test Performance."

**May 1993**    Eighth Annual Conference
        Society for Industrial and Organizational Psychology
        San Francisco, California

        **Presented a paper entitled "Reducing Adverse Impact Without Reducing Validity."**

**May 1992**    Seventh Annual Conference
        Society for Industrial and Organizational Psychology
        Montreal, Canada

        **Presented a paper entitled "The Social and Political Nature of Selection."**

        **Presented a paper entitled "The Sliding Band Referral Method: A Perspective from the U.S. Public Sector."**

**April 1991**          **Sixth Annual Conference**
                       **Society for Industrial and Organizational Psychology**
                       **St. Louis, Missouri**

Participated as a discussant in a symposium entitled "Integrity Testing: Reports from the Office of Technology Assessment and the American Psychological Association."

**April 1990**          **Fifth Annual Conference**
                       **Society for Industrial and Organizational Psychology**
                       **Miami, Florida**

Presented a paper entitled "Affirmative Action in the 1990s."

Presented a Master Tutorial with Dr. Wayne Cascio on "Innovations in Testing."

**June 1989**           **International Personnel Management Association**
                       **  Assessment Council**
                       **Conference On Personnel Assessment**
                       **Orlando Florida**

Presented a one-day workshop entitled "Innovations in Employment Testing That Improve Validity and Reduce Adverse Impact."

Participated in a panel discussion entitled "The *Guidelines* in the Year 2000."

Participated in a panel discussion entitled "Testing in the Public Sector under a Consent Decree."

Participated in a panel discussion entitled "Banding and Other Uses of Eligible Lists: Psychometric, Legal, and Social Considerations."

**April 1985**          **Dayton Intergovernment Equal Employment**
                       **Opportunity Council**
                       **Dayton, Ohio**

Participated in the eleventh annual EEO Seminar sponsored by the Federal Executive Association of the Dayton Intergovernment Equal Employment Opportunity Council. I conducted a workshop on the use of employment tests.

**April 1985**        **Hispanic National Bar Association National Convention**
**New York, New York**

Gave an address on the topic of "Affirmative Action."

**January 1985**      **Washington Statistical Society**
**Washington D.C.**

Presented comments, as a discussant, on the topic "Psychometrics
in Personnel Selection."

**December 1984**     **Association of American Railroads**
**Thirty-Third Annual Conference of the Committee on Equal**
**Employment Opportunity**
**Washington, D.C.**

Presented a paper entitled "Employment Testing and Minorities:
Recent Trends and Lingering Issues."

**September 1984**    **Federal Bar Association/Bureau of National Affairs**
**EEO Briefing Conference**
**Washington, D.C.**

Presented a paper entitled "The Benefits of Testing to Minorities."

**October 1983**      **International Personnel Management Association**
**Washington, D.C.**

Presented a paper entitled "Alternative Uses of Traditional
Selection Procedures."

**August 1983**       **American Psychological Association**
**Washington, D.C.**

Presented comments, as a discussant, in a symposium entitled
"Performance Appraisal in the Legal Environment."

**May 1983**          **International Personnel Management Association**
**Assessment Council**
**Washington, D.C.**

Presented a paper entitled "Alternative Uses of Traditional
Selection Procedures."

**December 1982**          **International Association of Official Human Rights Agencies**
                           **Washington, D.C.**

                           Presented an address on the use of statistical evidence in housing
                           discrimination cases.

**October 1982**           **Bureau of National Affairs**
                           **Fifth Annual Conference**
                           **Washington, D.C.**

                           Presented an address on issues involved in the assessment of
                           discrimination against the handicapped.

**January 1982**           **Commission for Racial Equality**
                           **Conference on Law Enforcement Strategies and Tactics**
                           **Oxford University, Oxford, England**

                           Presented a paper entitled "The Role of the Industrial Psychologist
                           in an Employment Discrimination Case."

**June 1979**              **International Personnel Management Association**
                           **Washington, D.C.**

                           Presented a paper entitled "Validation: Art Science of Folly."

**June 1979**              **Association of Black Psychologists**
                           **Washington, D.C.**

                           Conducted a workshop on methods of teaching test-taking.

**February 1978**          **Howard University College of Nursing**
                           **Washington, D.C.**

                           Designed and conducted a lecture series on educational evaluation.

**January 1978**           **Institute of Public Service**
                           **Hartford, Connecticut**

                           Designed and conducted a day-long workshop on the proper
                           development of oral examinations.

**August 1977**            **Prince George's County Office of Personnel**
                           **Upper Marlboro, Maryland**

                           Designed and conducted a two-day workshop on the proper method
                           of conducting performance appraisals.

**August 1975**          **American Psychological Association**
                         **Annual Convention**
                         **Chicago, Illinois**

                         Presented a paper entitled "Process Criteria: The Content of the
                         Black Box."

### *Previous Employment*

**Personnel Analyst**    **Prince George's County Office of Personnel**
July 1976 to             **Upper Marlboro, Maryland**
July 1977
                         Evaluated the overall employment selection system of the County
                         to determine where it might be improved in order to comply with
                         the Uniform Guidelines on Employee Selection Procedures.

**Consultant**           **Maryland State Department of Personnel**
**Psychologist**         **Baltimore, Maryland**
(Part Time)
May 1975 to              Directed and gave assistance in the conduct of criterion-related
July 1979                and content validation studies. Responsibilities included conduct
                         of job analyses, development of selection instruments and
                         criterion measures, as well as statistical analysis of research
                         results. I also directed the development of a comprehensive job
                         analysis procedure designed to produce accurate descriptions of
                         job components in accordance with the requirements of the
                         Uniform Guidelines on Employee Selection Procedures.

**Personnel**            **Internal Revenue Service**
**Psychologist**         **Washington, D.C**.
May 1975 to
September 1975           Conducted concurrent validation studies of the procedures used for
                         selection to noncompetitive positions within the IRS. Developed
                         research plans and experimental designs for research projects in
                         such areas as personnel selection, job analysis, performance
                         evaluation, and test development.

**Graduate Assistant**   **University of Maryland**
September 1972 to        **College Park, Maryland**
May 1975
                         Taught a three-hour course in industrial psychology. The course
                         was designed for junior- and senior-level students. I assisted in
                         the conduct of research related to selection and training.

| | |
|---|---|
| **Instructor/Counselor**<br>September 1971 to<br>May 1972 | **Northeast Louisiana University**<br>**Monroe, Louisiana** |

Taught introductory psychology courses and served as student counselor.

| | |
|---|---|
| **Personnel Assistant**<br>June 1969 to<br>August 1971 | **Olinkraft, Inc.**<br>**West Monroe, Louisiana** |

Tested all applicants for hourly employment, including screening of applications, scoring of tests, and establishment of norms. My responsibilities included validation of company tests. I recruited persons from minority groups to fill managerial positions within the company.

## *College Teaching*

| | |
|---|---|
| **College Instructor**<br>(Part Time)<br>August 1977 to<br>May 1987 | **Howard University College of Nursing**<br>**Washington, D.C.** |

Taught courses in basic and advanced problem solving. Course content included theoretical and practical analyses of problems and problem solving, with emphasis on development of critical thinking skills, analytical reasoning, and test-wiseness**.**

## *Military Service*

| | |
|---|---|
| **First Lieutenant**<br>May 1972 to<br>September 1972 | **United States Army**<br>**Fort Benning, Georgia** |

Attended officer's basic training, Military Intelligence Branch, United States Army. Placed in reserve status for seven years until honorably discharged with the rank of Captain.

## *Community Service*

| | |
|---|---|
| **May 1994 to**<br>**June 1995** | **Good Counsel High School Parents' Association**<br>**Wheaton, Maryland** |

Chairman, Equity Committee

**May 1994 to**       **Potomac Valley Amateur Athletic Union**
**July 1994**         **Washington, D.C.**

                         Assistant Basketball Coach - Girls 11 and Under

**January 1994 to**    **Concordia Lutheran School**
**March 1996**       **Hyattsville, Maryland**

                         Girls Basketball Coach

**November 1982**    **St. Mary's Athletic Association**
**to 1990**          **Landover Hills, Maryland**

                         Catholic Youth Organization Boys Basketball Coach

**April 1992 to**      **Potomac Valley Amateur Athletic Union**
**May 1992**          **Washington, D.C.**

                         Basketball Coach - Boys 16 and Under

**September 1967 to**  **Varsity Basketball Coach, Little Flower Academy, Monroe,**
**March 1968**       **Louisiana**

# Appendix B

# List of Documents Examined

1. Civil Service Requisitions; 1136-1282
2. Correspondence from Vivian W. Lee to A. Sluckis, Subject: Review of Examination Item(s); Announcement #, December 28, 2006; 1283
3. Correspondence from Vivian W. Lee to B. Skrycki, Subject: Review of Examination Item(s); Announcement #1347, December 28, 2006; 1284
4. Résumé of Kevin J. Mearn; 1286-1293
5. 2006 Police Sergeant Exam Takers by Name and Department, February 29,2008; 1294-1317
6. Municipal Requisition Information, Lowell Police Department, Police Sergeant Position; 1342.
7. Municipal Employment History Record of J. Noone; 1343.
8. Lowell Police Department Promotion Eligibility, June 12, 2007; 1345
9. Departmental Promotional Examination Announcement #9557, Cambridge Police Department; 1346-1349.
10. Reading List for October 20, 2007 Promotional Examination; 1350-1351.
11. Departmental Promotional Examination, Education and Experience Rating Sheet Instructions; 1352-1358
12. Departmental Promotional Examination, Education and Experience Rating Worksheet; 1359
13. Departmental Promotional Examination, Employment Verification Form; 1360
14. Departmental Promotional Examination, Education and Experience Scoring Grid; 1361
15. Departmental Promotional Examination, Response Keys; 1362-1371
16. Correspondence from Vivian W. Lee, Regarding Departmental Promotional Examination Post-examination Analysis; 1372-1448
17. Correspondence from R. Richardson, Re: Promotional Examination, October 25, 2007; 1449-1450
19. Correspondence from W. Ward, Re: Promotional Examination, October 22, 2007; 1451-1452
20. 2005 Statewide Sergeant Candidates; 1501-1511
21. 2005 Boston Sergeant Candidates; 1531-1541A
22. Massachusetts Human Resources Division, Police Lieutenant Promotion Exam, October 22, 2005; C-1786-C-1819
23. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Questions and Weights Data, December 7, 2005; C-1821-C-1834
24. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Exam Results Report and Descriptive Statistics; C-1821-C-1857
25. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Questions Protested by Examinees; C-1858

26. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Exam Answer Key; C-1859-C-1892

27. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Exam Information Summary; C-1893

28. Massachusetts Human Resources Division, Boston Police Lieutenant Promotion Exam Administered October 22, 2005- Guy's Answer Key and Key Changes Comparison; C-1894-C-1895

29. Departmental Promotional Examination Announcement #6544, Boston Police Department; C-1896-C-1901

30. Job Analysis for Police Lieutenant, Morris McDaniel, Inc., Knowledge and Competency Tables; C-1902-C-1917

31. Boston Police Department Rules and Procedures, Police Lieutenant Duties, June 4, 1979; C-1918

32. Boston Police Department Rules and Procedures, Duty Supervisor Duties, November 5, 1986; C-1919-C-1921

33. Correspondence from J. Flynn to Human Resources, Re: Boston Police Department Lieutenant Exam Appeals, October28, 2005; C-1922-C-1923

34. Boston Police Department Lieutenant Promotion Exam Administered October 22, 2005- Guy's Answer Key and Key Changes Comparison; C-1925-C-1926

35. Correspondence from Mildred Asano, Re: October 2005 Department Promotional Police Examination, December 9, 2005; 2542-2595

36. Competency Area Chart for Sergeants, Lieutenants and Captains; 2596

37. Massachusetts Human Resources Division, Boston Police Department Sergeant Promotional Exam Instructions from Booklet; 2597-2598

38. Invoices from EB Jacobs LLC, August 31, 2007, November 30, 2007and September 20, 2007; 2599-2601

39. Massachusetts Human Resources Division – Civil Service Unit, Civil Service Requisitions and Correspondence Re: Authorization of Employment and Certification for Promotion to Police Sergeant; 542-1135

40. Departmental Promotional Examination Announcement #2454, Lawrence Police Department; 00001-00004

41. Exam Development Steps and Post-Exam Instructions; 00005

42. Reading List for October 21, 2006 Promotional Examinations, April 21, 2006; 00006-00007

43. Reading List Survey Results 2006-2008; 00008-00011

44. Substitute books and other texts recommended for the Departmental Promotional Police Examination Reading List; 00012-00013

45. Reading List Survey Form 2006-2008; 00014

46. Massachusetts Human Resources Division, Organizational Development Group/Civil Service Unit, Assessment Centers – Use in Civil Service Promotions; 00015-00016

47. List of Assessment Centers Completed as of December 12, 2007; 00017

48. Affidavit of Vivian W. Lee; 00018-00019

49. Massachusetts Human Resources Division, Departmental Promotional Examination, Education and Experience Rating Sheet Instructions and Scoring Grid for Examinations Administered October 21, 2006; 00020-00027

50. Massachusetts Human Resources Division, Departmental Promotional Examination, Employment Verification Form; 00028

51. Massachusetts Human Resources Division, Departmental Promotional Examination, Education and Experience Rating Worksheet; 00029

52. Reading List for October 21, 2006 Promotional Examinations, April 21, 2006; 00030-00031

53. Massachusetts Police Department, Sergeant Task Survey Analysis, Essential Tasks; 00032-00038

54. Departmental Promotional Examination Announcement #7239, Methuen Police Department; 00040-00043

55. Departmental Promotional Examination Announcement #1586, Lowell Police Department; 00045-00048

56. Departmental Promotional Examination Announcement #2454, Lawrence Police Department; 00050-00053

57. Departmental Promotional Examination Announcement #7242, Methuen Police Department; 00055-00058

58. Departmental Promotional Examination Announcement #2427, Lawrence Police Department; 00060-00063

59. Departmental Promotional Examination Announcement #7245, Methuen Police Department; 00065-00068

60. Departmental Promotional Examination Announcement #2426, Lawrence Police Department; 00070-00073

61. Massachusetts Human Resources Division, Sergeant, Lieutenant and Captain Promotional Exam Instructions from Booklet; 00075-00076

62. TIA Analyses and Scoring Keys for Exam Administered October 21, 2006, December 15, 2006; 00078-00100

63. Table of Questions Grouped by Subject Area for Exam Administered October 21, 2006; 00101

64. Revised Answer Key for Exam Administered October 21, 2006, October 18, 2006; 00103

65. Table of Protested Exam Items for Exam Administered October 21, 2006, October 22, 2006; 00105-00116

66. Correspondence from Vivian Lee, Re: Review of Examination Items, December 28, 2006; 00120-00213

67. Correspondence from Vivian Lee to R. Downing, Re: Review of Examination Item, April 3, 2006; 00118

68. Correspondence from Vivian Lee to D. Dowd, Re: Letter Returned to Sender, March 9, 2007; 00119

69. Personnel Administration Rules, Office of Legal Counsel of the Human Resources Division, Effective February 28, 2003; 00214-00245

70. Validation Report for the 1991 Promotional Selection Procedure, Massachusetts Department of Personnel Administration, October 1, 1991; 00246-00382

71. Police Promotional Reading List Project; 00383-00393

72. Memo from M. Gilmore to Betty Dennis, Re: Reading List Recommendations; 00395-00396

73. Department of Personnel Administration, Public Safety Job Analysis of Police Report, November 19, 1990; 00397-00405
74. Meeting Agenda for Department of Personnel Administration Public Safely Job Analysis Project; 00406-00424
75. Greenwood, P.W., Chaiken, J. M., & Petersilia, J. (1977). *The Criminal Investigation Process*. U.S.: Rand Corporation (pgs. 37-39, 313, 332, 339, & 341-342)
76. Task Profiles for the Ranks of Sergeant, Lieutenant, Captain and Chief; 00435-00451
77. KSAP Profiles for the Ranks of Sergeant, Lieutenant, Captain, Deputy Chief, and Chief; 00452-00492
78. Memo from M. Gilmore to Betty Dennis with Attached KSAP and Task Linkage Information, November, 13, 1990; 00493-00523
79. KSAPs Required At Hire or Appointment to Sergeant and Higher Rank; 00524-00535
80. Memo from M. Gilmore to Betty Dennis with Attached Task Profiles for Ranks from Sergeant to Chief Information, September 11, 1990; 00536-00541
81. Massachusetts Human Resources Division 2005 Sergeant, Lieutenant and Captain Promotional Exams, Scoring Keys, and Post-exam Analysis; C-422-C-550, C-641-C-683
82. Massachusetts Human Resources Division 2004 Sergeant, Lieutenant and Captain Promotional Exams, Scoring Keys, and Post-exam Analysis; C-551-C-640
83. Correspondence from Mildred M. Asano, Re: October 2005 Promotional Police Examination Question Appeals; C-687-C-740
84. Massachusetts Human Resources Division 2005 Sergeant, Lieutenant and Captain Promotional Exam Questions Protested by Examinees; C-684-C-686
85. Massachusetts Human Resources Division 2006 Sergeant, Lieutenant and Captain Promotional Exam Drafts, Exams, Scoring Keys, Reading Lists and Post-exam Analysis; C-742-C-C-871
86. Massachusetts Police Sergeant Task Survey Analysis; C-873-C-879
87. Correspondence between Guy Paris and Vivian Lee, Re: Written Exam Affidavit; C-880-C-881
88. Correspondence from Guy Paris to Vivian Lee, Re: Promotional Examination Reading Lists; C-882-C-884
89. Handwritten List of Examinee Appeals; C-885-C-888
90. Correspondence from Loren Columbare to Vivian Lee, Re: Appeal Standard Language, December 15, 2006; C-889
91. Reading List for Promotional Exam Administered October 21, 2006, April 21, 2006; C-890-C-891
92. Comments Re: Vivian Lee's Written Exam Affidavit; C-892
93. Correspondence between Guy Paris and Vivian Lee with Chief Resumes Attached, Re: Chiefs Champagne and Mearn; C-893-C-904
94. 2006 Police Promotional Examination, SME Review of Exam Questions with Comments, C-905-C-920
95. Signed SME Security Agreement and Resume of Chief Mearn; C-921-C-924
96. Signed SME Security Agreement and Resume of Chief Champagne; C-925-C-932
97. 2006 Police Promotional Exam Questions Sorted by Subject Area; C-933-C-935
98. HRD Promotional Examination Meeting Agenda, January 13, 2008; 1945

99. Correspondence from Mildred Asano to Vivian Lee, Re: Boston PD Preliminary
    Exam Results, November 23, 2005; 1946-1949

100. Boston PD October 2005 Promotional Examination Planning Session Agenda, June
    24, 2005; 1950

101. Correspondence between Robin Hunt and Mildred Asano, Re: Clarification of
    Special Order 99-36; 1951-1952

102. Boston PD October 2005 Promotional Examination SME Review of Test Items
    Meeting Agenda, September 16, 2005; 1953

103. Review of Test Questions by Boston Police Department SMEs for Police
    Promotional Exam Administered October 22, 2005

104. Statistical ANOVA data for Boston Police Departmental Police Sergeant Exam
    Administered October 22, 2006

105. Boston Police Departmental Police Sergeant Exam Post Hoc Tests and Descriptive
    Statistical Analysis; 1966-1983

106. Boston Police Departmental Police Sergeant Exam Questions Protested by
    Examinees, October 22, 2005

107. Boston Police Departmental Promotional Examinations Recommended Final and
    Alternate Keys

108. Boston Police Departmental Promotional Examination Scoring Key and Analysis for
    Exam Administered October 22, 2005; 1989-1995

109. Police Sergeant Boston Police Departmental Examination Reading List, Second
    Amendment for October 22, 2005 Exam, May 2, 2005; 1996-1997

110. Boston Police Sergeant Departmental Promotional Examination Scoring Key and
    Analysis for Exam Administered October 22, 2005; 1198-2005

111. Correspondence between Vivian Lee and Mildred Asano; Re: Announcements 6806,
    6807, and 6808; 2006

112. Boston Police Sergeant Departmental Promotional Examination Questions Protested
    by Examinee for Exam Administered October 22, 2005

113. Boston Police Department October 2005 Promotional Examination Planning
    Sessions with SMEs, Agenda for Three Sessions, June 24 – September 16, 2005;
    2067-2068

114. Tasks and Timeline for Fall 2005 Development of Statewide Departmental Police
    Promotional Examinations

115. Correspondence from Robin Hunt to Sally McNeely, Re: Recommended Reading
    List for Specific Promotional Exam Topics

116. Boston Police Department October 22, 2005 Promotional Examination Test
    Specifications by Competency Areas; 2077

117. Morris & McDaniel, Inc. Notes Re: Job Analysis Report for Police Sergeant, August
    2000

118. Boston Police Department Rules and Procedures, Patrol Officers Duties, August 20,
    1984

119. Boston Police Department Rules and Procedures, Sergeant Duties, November 5.
    1982

120. Boston Police Department Rules and Procedures, Area Commander Duties, July 5,
    1979

121. Statement of Purpose of Sergeant and Lieutenant Examinations; 2123

122. Statement of Purpose of Captain Examination; 2124
123. Departmental Promotional Examination Announcement #6657, Boston Police Department; 2125-2128
124. Reading List Announcement for October 22, 2005 Examination, Second Amendment May 2, 2005; 2129-2130
125. Correspondence between Mildred Asano and Robin Hunt, Re: Reading List, April 19-20, 2005; 2131-2138
126. Correspondence between Mildred Asano and Robin Hunt, Re: SME Meeting and Reading Lists; 2139-2150
127. Tasks and Timeline for Fall 2005 Development of Statewide and Boston Departmental Police Promotional Examinations; 2151
128. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Test Specifications by Competency Areas, June 28, 2005; 2152
129. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Test Specifications by Competency Areas, June 28, 2005; 2153
130. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Final Test Specifications by Competency Areas, June 28, 2005; 2154
131. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Draft Test Specifications by Competency Areas, June 27, 2005; 2155
132. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Draft Test Specifications by Competency Areas, June 27, 2005; 2156
133. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Explanation of Test Specifications by Competency Areas; 2157
134. Weights of Competency Areas Measured by the Boston Police Department's October 2005 Examination; 2158-2161
135. Boston Police Department Police Promotional Examination Test Outline Linked to 2000 Job Analysis Competency Areas; 2162
136. Boston Police Department Police Promotional Examination Test Outline Linked to 2000 Job Analysis Competency Areas by SME's, June 24, 2005; 2163
137. Morris & McDaniel's Definition of Tasks; 2164
138. Table of Tasks from Morris & McDaniel's Job Analysis Measurable in a Written Examination, August 2002; 2165-2166
139. Table S-1 of Police Sergeant KSAs Linked to Competency Areas by Morris & McDaniel, Inc., August 2000; 2167-2170
140. Table S-2 of Tasks Identified by Sergeant SMEs as Conducted Daily and Very Important, August 2000; 2171-2174
141. Table 8 of Boston Police Sergeant KSAs Meeting Test Criteria; 2175-2182
142. Departmental Promotional Examination Announcement #6657, Boston Police Department; 2183-2186

143. Boston Police Department Rules and Procedures, Sergeant Duties, November 5, 1982; 2187-2189

144. Boston Police Department Rules and Procedures, Patrol Supervisors Duties, June 8, 1984; 2189-2192

145. Boston Police Department October 2005 Promotional Examination Planning Sessions with SMEs, Tentative Agenda for Three Sessions, June 24 – September 16, 2005; 2193

146. Correspondence between Robin Hunt and Mildred Asano, Re: June 24th SME Meeting; 2194-2197

147. Table 3 of Boston Police Department Reading Lists Linked with Competency Areas, June 28, 2005; 2198-2199

148. Draft Table 3 of Boston Police Department Reading Lists Linked with Competency Areas, June 2005; 2200

149. SMEs Working Documents for SME Meeting Re: October 2005 Boston Police Promotional Examination, June 28, 2005; 2201-2228

150. Statement of Purpose of Sergeant and Lieutenant Examinations; 2229

151. Boston Police Department Police Sergeant, Lieutenant, and Captain Competency Areas; 2230-2231

152. SME Review of Test Items Signed by Margaret O'Malley from April 21, 2005 Reading Lists, September 16, 2005; 2232

153. Review of Test Questions with Comments by Boston Police Department SME's, September 16, 2005; 2233-2240

154. Boston Police Department October 22, 2005 Promotional Police Sergeant, Lieutenant, and Captain Examination Draft Test Specifications by Competency Areas, June 28, 2005; 2241

155. Spreadsheet of Protested Examination Items; 2242-2251

156. Police Promotional Examination Answer Key; 2253

157. Answer Key for Police Promotional Exam Administered October 20, 2007; 2254-2255

158. Correspondence between Loren Columbare and Vivian Lee, Re: Police Promotional Exam Questions Check; 2256-2259

159. Police Promotional SME Meeting Agenda, October 4, 2007; 2260

160. Post-Examination Question Review SME Meeting Agenda; 2261

161. Reading List for October 20, 2007 Promotional Examinations, April 20, 2007; 2262-2263

162. Table of Questions Grouped by Subject Area for Exam Administered October 20, 2007; 2264-2272

163. Answer Key to Police SLC Promotional Exam Administered October 20, 2007; 2273

164. Correspondence between Guy Paris and Vivian Lee, Re: 10/4 SME Meeting and Police Promotional Exam Items from EB Jacobs; 2274-2275

165. Final Summary of Proposed Changes to Questions 1-60 Based Upon Exam Appeals, December 2007; 2371

166. TIA Processing and Analysis of Police Promotional Exam SLC Administered October 21, 2006; 2372-2403

167. Massachusetts Police Department Sergeant Task Survey Analysis; 2404-2410

168. Correspondence between Guy Paris and Vivian Lee, Re: Description of Lieutenant Examination, Test Outlines, TIAs, and Reading Lists, July 10,2007 to August 1, 2007; 2411-2415

169. Handwritten List of Appeals to Questions 1 through 55; 2416

170. Correspondence from Loren Columbare to Vivian Lee, Re: Appeal Standard Language; 2417

171. Reading List for October 21, 2006 Promotional Examinations, April 21, 2006; 2418-2419

172. Additional Comments to Vivian Lee, Re: Additional Areas for SME Input, July 10, 2007; 2430

173. Table of Questions Grouped by Subject Area for Police Promotional Exam Administered October 20, 2007; 2421

174. Table of Questions Grouped by Subject Area for Exam Administered October 21, 2006; 2422

175. Reading List Survey for 2006-2008 Departmental Police Promotional Examinations; 2423

176. Reading List for October 20, 2007 Promotional Examinations, April 20, 2007; 2424-2427

178. Table of Questions Grouped by Subject Area for Exam Administered October 21, 2006; 2428-2430

179. Letter from Human Resources Division to the Office of the Chief of Police, Returned to Sender; 2431

180. Correspondence from Sally McNeely to Police Chiefs, Re: Completion of Reading List Survey and Serving as SMEs; 2432-2434

181. List of Examination Announcements by Jurisdiction for Police Promotional Exam Administered October 22, 2005; 2435-2440

182. Examination Keys for the Departmental Police Exam Administered October 22, 2005; 2441-2451

183. Revised Answer Keys, TIA Processing and Analysis of Police Promotional Exam SLC Administered October 22, 2005; 2452-2477

184. Table of Questions Grouped by Subject Area for Exam Administered October 22, 2005; 2478-2479

185. Departmental Police Examination, Guy Paris' Answer Key and Key Changes for Exam Administered October 22, 2005; 2480-2482

186. Table of Questions Grouped by Subject Area for Exam Administered October 22, 2005; 2483-2486

187. 2005 SLC Instrument Numbers; 2487

188. Departmental Promotional Police Examination Answer Keys for Exams Administered October 22, 2005; 2438-2496

189. Announcement Information and Number of Applicants by Jurisdiction for the Police Promotional Exam Administered October 22, 2005; 2497-2502

190. Examination Answer Keys and TIA Processing for Examination Administered October 22, 2005; 2503-2536

191. 2005 Departmental Police Examination Questions Protested by Examinees; 2537-2541

192. Massachusetts Human Resources Division October 20, 2007 Sergeant, Lieutenant and Captain Promotional Exam; C-936-C-971

193. Massachusetts Human Resources Division October 20, 2007 Sergeant, Lieutenant and Captain Promotional Exam by Batch; C-972-C-1009

194. Massachusetts Human Resources Division October 20, 2007 Sergeant, Lieutenant and Captain Promotional Exam Directions; C-1010

195. Massachusetts Human Resources Division 2007 Sergeant, Lieutenant and Captain Promotional Exam Online Applicants; C-1011

196. Massachusetts Human Resources Division 2007 Sergeant Promotional Exam Online Version; C-1012-C-1033

197. Agenda and Sign-In Sheet for Police Promotional SME Meeting, October 4, 2007; C-1034-C-1035

198. Sign-In Sheet for Police Promotional Exam SME Meeting, September 28, 2007; C-1036

199. Review of Appeals Questions and Draft Replies for the 2007 Police Promotional Exams; C-1037-C-1044

200. Appeal Question Recommendations by EB Jacobs with Opinions of Human Resources Division, November 27, 2007; C-1045-C-1053

201. Signed SME Security Agreement forms for Chiefs Mearn and Ford the 2007 Police Promotional Sergeant, Lieutenant, and Captain Examinations; C-1054-C-1055

202. Agenda and Sign-In Sheet for SME Meeting to Review Appealed Questions; C-1056-C-1057

203. 2007 SLC Promotional Exams Post-Exam SME Review of Appealed Items by John Ford, December 12, 2007; C-1058-C-1069

204. 2007 SLC Promotional Exams Post-Exam SME Review of Appealed Items by John Ford Jr., December 12, 2007; C-1070-C-1081

205. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories, Batch 1; C-1082-C-1116

206. October 2007 Police SLC Promotional Examination Items Under 40% But Not Appealed; C-1117-C-1126

207. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories, Batch 2; C-1127-C-1149

208. Correspondence between Loren Columbare and Vivian Lee, Re: Police Appeal Spreadsheets, November 15-16, 2007; C-1150-C-1151

209. Reading List for October 20, 2007 Promotional Examinations, April 20, 2007; C-1152-C-1153

210. 2007 SLC Promotional Exam Item Bank Questions, Outline Category: 2-8 Controlling, Questions 29 and 30; C-1154

211. 2007 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 1, October 4, 2007; C-1155-C-1159

212. 2006 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1160-C-1164

213. 2006 Police Promotional Exam Item Review Form of John A. Ford, Batch 2; C-1165-C-1169

214. 2007 Police Promotional Exam Item Review Form of John A. Ford Jr., Batch 1, October 4, 2007; C-1170-C-1174

215. 2007 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 1, September 28, 2007; C-1175-C-1179
216. 2007 Police Promotional Exam Item Review Form of John A. Ford, Jr.; C-1180-C-1183
217. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories, September 25, 2007; C-1184-C-1235
218. 2006 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1236-C-1240
219. 2006 Police Promotional Exam Item Review Form of John A. Ford, Batch 2; C-1241-C-1245
220. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories with Booklet and Test Item Numbers for Guy Paris; C-1246
221. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories with Booklet and Test Item Numbers for Chief Mearn; C-1247-C-1268
222. 2007 SLC Promotional Exam Item Bank Questions by Outline Categories with Booklet and Test Item Numbers for Chris; C-1269-C-1308
223. 2007 SLC Promotional Exam Items 1-11, 60-90, 113-132, and153-165 by Outline Categories with Updated and Revised Answers for Kevin Mearn, September 25, 2007; C-1309-C-1351
224. 2007 SLC Promotional Exam Items 12-59 by Outline Categories with Updated and Revised Answers for John Ford, September 25, 2007; C-152-C-1378
225. Correspondence from Loren Columbare to Vivian Lee, Re: Post-EBJ Edits by HRD Team; C-1379-C-1381
226. Police Promotional Examination Questions Protested by Examinees Matched with Letters; C-1382-C-1390
227. October 2007 Police Promotional Revised Exam Keys; C-1392-C-1394
228. Exam Item Test Development and Planned Revisions by EBJ; C-1395-C-1397
229. Correspondence between Loren Columbare and Vivian Lee, Re: Police Promotional Exam Questions Check, October 24, 2007; C-1398-C-1399
230. 2007 Police Promotional Exam Questions Sorted by Subject Area with Batch Number; C-1400
231. 2007 Promotional Exam Items by Category to be Revised or Corrected; C-1401-C-1407
232. 2007 SLC Promotional Exam Items by Outline Categories; C-1408-C-1438
233. 2007 SLC Promotional Exam Items by Outline Categories with Test Booklet and Item Numbers; C-1439-C-1477
234. 2007 SLC Promotional Exam Items 1-165 by Outline Categories with Test Item Number; C-1478-C-1569
235. 2006 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1570-C-1574
236. 2006 Police Promotional Exam Item Review Form of John A. Ford, Batch 2; C-1575-C-1579
237. 2006 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1580-C-1584
238. 2007 Police Promotional Exam Item Review Form of John A. Ford Jr., Readability; C-1585-C-1588

239. 2007 Police Promotional Exam Item Review Form of John A. Ford, Batch 2; C-1589-C-1593

240. 2007 Police Promotional Exam Questions Sorted by Subject Area with SME Reviewer Number; C-1594

241. Police Promotional SME Meeting Agenda, October 4, 2007; C-1595

242. 2007 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1596-C-1600

243. 2007 SLC Promotional Exam Items 84-89 by Outline Categories with Comments by Chiefs Mearn and Ford; C-1601-C-1602

244. 2007 Police Promotional Exam Item Review Form of Kevin Bearn, Readability Second Ratings, September 28, 2007; C-1603-C-1627

245. 2007 Police Promotional Exam Questions Sorted by Subject Area with SME Reviewer Number; C-1628-C-1634

246. 2007 Police Promotional Exam Item Review Form; C-1635-C-1639

247. 2007 Police Promotional Exam Item Review Form of John; C-1640-C-1644

248. 2007 Police Promotional Exam Item Review Form Consensus Ratings by Christine Barkas, October 4, 2007; C-1645-C-1649

249. 2007 Police Promotional Exam Item Review Form Consensus Ratings by Chiefs Ford and Mearns, October 4, 2007; C-1650-C-1654

250. 2007 Police Promotional Exam Item Review Form of John A. Ford, Jr., Batch 1; C-1655-C-1664

251. 2007 Police Promotional Exam Item Review Form of John A. Ford Jr., Readability; C-1665-C-1668

252. 2007 Police Promotional Exam Item Review Form of John A. Ford, Jr., Batch 1; C-1659-C-1673

253. 2007 Police Promotional Exam Item Review Form of John A. Ford Jr., Readability; C-1674-C-1681

254. 2007 Police Promotional Exam Item Review Form of John A. Ford, Jr., Batch 1; C-1682-C-1686

255. 2007 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4,2007; C-1687-C-1696

256. 2006 Police Promotional Exam Item Review Form of John A. Ford, Jr., Batch 2; C-1697-C-1716

257. 2007 Police Promotional Exam Item Review Form of Kevin Mearn, Batch 2, October 4, 2007; C-1716-C-1726

258. 2007 Police SLC Promotional Exam; C-1727

259. Batch 2 Revised 2007 Police Promotional Exam Questions Sorted by Subject Area; C-1728-C-1749

260. Batch 1 2007 Police Promotional Exam Questions Sorted by Subject Area; C-1750-C-1783

261. Correspondence from Vivian Lee to Guy Paris, Re: 1st Batch of Police Promotion Items from EBJacobs, September 25, 2007; C-1784

262. Correspondence from Vivian Lee to Guy Paris, Re: Summary of Planning Notes for 10/4 SME Meeting, October 3,2007; C-1785

263. List of Police Officers Promoted to Sergeant, October 2005 – October 2007

264. Massachusetts Municipal Association, *Use of assessment centers in hiring discussed*, www.mma.org/index.php?option=com_content&task=view&id=154&Itemid=91, March 23, 2004

265. Commonwealth of Massachusetts Executive Office for Administration and Finance – HR Division, *Assessment Center- Use in Civil Service Promotions*, June 27, 2002.

266. Email from S. McNeely to R. Quinan and V. Lee, Subject: Cultural bias reviewer from EB Jacobs, April 3, 2008

267. Vaznis, J. Hub grads come up short in college. *The Boston Globe,* November 17, 2008.

268. Ellement, J. R. Officer accused of rape while on duty. *The Boston Globe*, October 1, 2008

269. 2002 Police Sergeant Promotion Examination Delegation Agreement Between the Boston Police Department and the Massachusetts Human Resources Division (HRD)

270. Boston Police Commissioner's Memo 02-035, dated 5/29/02, Subject: Promotional Exam 2002

271. Expert Report of Jacinto Silva, Ph.D., on the Assessment of Promotional Processes as they Affect African-American and Hispanic Candidates in the 2005 to 2007 Commonwealth of Massachusetts Municipal Police Sergeant Promotional Examinations, dated February 2009, and the Electronic Computer File Attachments to that report

272. Dr. Frank Landy's expert report for the current case

273. Dr. Joel Wiesen's expert report for the current case

# Appendix C

# Previous Testimony

Listed below are the cases in which I have testified in the past four years.

Sharon Phillips, et al., vs. Washington Suburban Sanitary Commission, et al,. Circuit Court for Prince George's County Maryland, Case No. CAL 04-12870.

John Bolton v. City of Bridgeport, Superior Court Judicial District of Fairfield, Connecticut, Docket No. CV 04-0409828 S.

Arthur L. Lewis, Jr., et al., v. City of Chicago, United States District Court Northern District of Illinois, Eastern Division, Case No. 98 C 559k.

Jeffrey Horan, et al., v. City of Chicago, United States District Court, Northern District of Illinois, Eastern Division, No. 98 C 2850.

Johnny Reynolds, et al., v. Alabama Department of Transportation, et al., United States District Court Northern Division No. CV 85-T-665-N.

# Appendix D

# Listing of Jurisdictions with no Minority Applicants that Administered the 2005, 2006 or 2007 Police Sergeant Examination

| Annc | Exam Date | Title | Department |
|---|---|---|---|
| 6520 | 10/22/2005 | SERGEANT | ABINGTON POLICE DEPT |
| 6522 | 10/22/2005 | SERGEANT | ACUSHNET POLICE DEPT |
| 6796 | 10/22/2005 | SERGEANT | AGAWAM POLICE DEPT. |
| 6962 | 10/22/2005 | SERGEANT | ATTLEBORO POLICE DEPARTMENT |
| 6538 | 10/22/2005 | SERGEANT | AUBURN POLICE DEPT |
| 6622 | 10/22/2005 | SERGEANT | BELMONT POLICE DEPT |
| 6628 | 10/22/2005 | SERGEANT | BOURNE POLICE DEPT |
| 6645 | 10/22/2005 | SERGEANT | BURLINGTON POLICE DEPT |
| 6650 | 10/22/2005 | SERGEANT | CHELMSFORD POLICE DEPT |
| 6655 | 10/22/2005 | SERGEANT | DANVERS POLICE DEPT |
| 6668 | 10/22/2005 | SERGEANT | DUXBURY POLICE DEPT |
| 6935 | 10/22/2005 | SERGEANT | EAST LONGMEADOW POLICE DEPT |
| 6684 | 10/22/2005 | SERGEANT | FRANKLIN POLICE DEPT |
| 6686 | 10/22/2005 | SERGEANT | HANOVER POLICE DEPT |
| 6801 | 10/22/2005 | SERGEANT | HINGHAM POLICE DEPARTMENT |
| 6688 | 10/22/2005 | SERGEANT | HOLBROOK POLICE DEPARTMENT |
| 6811 | 10/22/2005 | SERGEANT | HOLLISTON POLICE DEPARTMENT |
| 6689 | 10/22/2005 | SERGEANT | HUDSON POLICE DEPT |
| 6915 | 10/22/2005 | SERGEANT | HULL POLICE DEPARTMENT |
| 6917 | 10/22/2005 | SERGEANT | IPSWICH POLICE DEPARTMENT |
| 6690 | 10/22/2005 | SERGEANT | KINGSTON POLICE DEPARTMENT |
| 6696 | 10/22/2005 | SERGEANT | MANCHESTER POLICE DEPT |
| 6808 | 10/22/2005 | SERGEANT | MEDFORD POLICE DEPARTMENT |
| 6794 | 10/22/2005 | SERGEANT | MIDDLEBOROUGH POLICE DEPT |
| 6773 | 10/22/2005 | SERGEANT | MILLIS POLICE DEPT |
| 6698 | 10/22/2005 | SERGEANT | MILTON POLICE DEPT |
| 6819 | 10/22/2005 | SERGEANT | NEWBURYPORT POLICE DEPARTMENT |
| 6806 | 10/22/2005 | SERGEANT | NORTH ADAMS POLICE DEPARTMENT |
| 6711 | 10/22/2005 | SERGEANT | PITTSFIELD POLICE DEPT |
| 6937 | 10/22/2005 | SERGEANT | PLAINVILLE POLICE DEPARTMENT |
| 6712 | 10/22/2005 | SERGEANT | PLYMOUTH POLICE DEPT |
| 6975 | 10/22/2005 | SERGEANT | RAYNHAM POLICE DEPARTMENT |
| 6802 | 10/22/2005 | SERGEANT | ROCKLAND POLICE DEPARTMENT |
| 6716 | 10/22/2005 | SERGEANT | ROCKPORT POLICE DEPT |
| 6919 | 10/22/2005 | SERGEANT | SAUGUS POLICE DEPARTMENT |
| 6719 | 10/22/2005 | SERGEANT | WALPOLE POLICE DEPT |
| 6723 | 10/22/2005 | SERGEANT | WELLESLEY POLICE DEPT |
| 6729 | 10/22/2005 | SERGEANT | WINTHROP POLICE DEPT |
| 6735 | 10/22/2005 | SERGEANT | WOBURN POLICE DEPT |
| | | | |
| 1331 | 10/21/2006 | SERGEANT | ARLINGTON POLICE DEPT |
| 1332 | 10/21/2006 | SERGEANT | ASHLAND POLICE DEPT |

| | | | |
|---|---|---|---|
| 1333 | 10/21/2006 | SERGEANT | ATHOL POLICE DEPT |
| 2657 | 10/21/2006 | SERGEANT | AUBURN POLICE DEPARTMENT |
| 1340 | 10/21/2006 | SERGEANT | BARNSTABLE POLICE DEPT |
| 2487 | 10/21/2006 | SERGEANT | BEDFORD POLICE DEPARTMENT |
| 1816 | 10/21/2006 | SERGEANT | BEVERLY POLICE DEPARTMENT |
| 1349 | 10/21/2006 | SERGEANT | BRAINTREE POLICE DEPARTMENT |
| 1358 | 10/21/2006 | SERGEANT | BROOKLINE POLICE DEPT |
| 1368 | 10/21/2006 | SERGEANT | CANTON POLICE DEPT |
| 1373 | 10/21/2006 | SERGEANT | CHARLTON POLICE DEPT |
| 1386 | 10/21/2006 | SERGEANT | COHASSET POLICE DEPT |
| 2556 | 10/21/2006 | SERGEANT | DEDHAM POLICE DEPARTMENT |
| 1390 | 10/21/2006 | SERGEANT | FAIRHAVEN POLICE DEPT |
| 1669 | 10/21/2006 | SERGEANT | GLOUCESTER POLICE DEPT |
| 2382 | 10/21/2006 | SERGEANT | HAVERHILL POLICE DEPARTMENT |
| 1535 | 10/21/2006 | SERGEANT | HINGHAM POLICE  DEPT |
| 1537 | 10/21/2006 | SERGEANT | HOLBROOK POLICE DEPARTMENT |
| 1538 | 10/21/2006 | SERGEANT | HUDSON POLICE DEPT |
| 2458 | 10/21/2006 | SERGEANT | HULL POLICE DEPT |
| 2698 | 10/21/2006 | SERGEANT | KINGSTON POLICE DEPARTMENT |
| 1575 | 10/21/2006 | SERGEANT | LEOMINSTER POLICE DEPT |
| 2526 | 10/21/2006 | SERGEANT | LYNNFIELD POLICE DEPARTMENT |
| 7923 | 10/21/2006 | SERGEANT | MANSFIELD POLICE DEPARTMENT |
| 1616 | 10/21/2006 | SERGEANT | MARBLEHEAD POLICE DEPARTMENT |
| 1623 | 10/21/2006 | SERGEANT | MAYNARD POLICE DEPT |
| 1624 | 10/21/2006 | SERGEANT | MEDWAY POLICE DEPT |
| 1636 | 10/21/2006 | SERGEANT | MONTAGUE POLICE DEPT |
| 1670 | 10/21/2006 | SERGEANT | NEWTON POLICE DEPT |
| 1732 | 10/21/2006 | SERGEANT | NORTH ATTLEBORO POLICE DEPT |
| 1772 | 10/21/2006 | SERGEANT | NORTH READING POLICE DEPT |
| 1790 | 10/21/2006 | SERGEANT | NORTON POLICE DEPT |
| 1780 | 10/21/2006 | SERGEANT | NORWELL POLICE DEPT |
| 2425 | 10/21/2006 | SERGEANT | NORWOOD POLICE DEPT |
| 7265 | 10/21/2006 | SERGEANT | ORANGE POLICE DEPARTMENT |
| 1781 | 10/21/2006 | SERGEANT | OXFORD POLICE DEPT |
| 1819 | 10/21/2006 | SERGEANT | READING POLICE DEPT |
| 1933 | 10/21/2006 | SERGEANT | ROCKPORT POLICE DEPT |
| 2532 | 10/21/2006 | SERGEANT | SALEM POLICE SERGEANT |
| 1970 | 10/21/2006 | SERGEANT | SANDWICH POLICE DEPT |
| 2010 | 10/21/2006 | SERGEANT | SCITUATE POLICE DEPT |
| 7989 | 10/21/2006 | SERGEANT | STOUGHTON POLICE DEPARTMENT |
| 7628 | 10/21/2006 | SERGEANT | TAUNTON POLICE DEPARTMENT |
| 2354 | 10/21/2006 | SERGEANT | UXBRIDGE POLICE DEPT |
| 2122 | 10/21/2006 | SERGEANT | WALPOLE POLICE DEPT |
| 2137 | 10/21/2006 | SERGEANT | WARE POLICE DEPT |
| 2150 | 10/21/2006 | SERGEANT | WAYLAND POLICE DEPT |
| 2365 | 10/21/2006 | SERGEANT | WEBSTER POLICE DEPT |
| 2158 | 10/21/2006 | SERGEANT | WESTFORD POLICE DEPT |
| 2178 | 10/21/2006 | SERGEANT | WINCHESTER POLICE DEPT |
| 9366 | 4/24/2007 | SERGEANT | MULTI-MUNI POLICE DEPARTMENT(MILITARY MAKEUP) |

| | | | |
|---|---|---|---|
| 9535 | 10/20/2007 | SERGEANT | ABINGTON POLICE DEPT |
| 9539 | 10/20/2007 | SERGEANT | ACUSHNET POLICE DEPT |
| 9554 | 10/20/2007 | SERGEANT | ASHLAND POLICE DEPT |
| 3560 | 10/20/2007 | SERGEANT | ATTLEBORO POLICE DEPARTMENT |
| 3593 | 10/20/2007 | SERGEANT | AUBURN POLICE DEPARTMENT |
| 9555 | 10/20/2007 | SERGEANT | BELMONT POLICE DEPT |
| 9556 | 10/20/2007 | SERGEANT | BRIDGEWATER POLICE DEPT |
| 9614 | 10/20/2007 | SERGEANT | CARVER POLICE DEPT |
| 9563 | 10/20/2007 | SERGEANT | CHELMSFORD POLICE DEPT |
| 9643 | 10/20/2007 | SERGEANT | EASTON POLICE DEPT |
| 9632 | 10/20/2007 | SERGEANT | FOXBOROUGH POLICE DEPT |
| 3604 | 10/20/2007 | SERGEANT | FRANKLIN POLICE DEPARTMENT |
| 9661 | 10/20/2007 | SERGEANT | GARDNER POLICE DEPARTMENT |
| 9689 | 10/20/2007 | SERGEANT | HANOVER POLICE DEPT |
| 4225 | 10/20/2007 | SERGEANT | HINGHAM POLICE DEPARTMENT |
| 9851 | 10/20/2007 | SERGEANT | HUDSON POLICE DEPT |
| 9860 | 10/20/2007 | SERGEANT | KINGSTON POLICE DEPT |
| 9861 | 10/20/2007 | SERGEANT | LEICESTER POLICE DEPT |
| 9880 | 10/20/2007 | SERGEANT | MANCHESTER POLICE DEPT |
| 3502 | 10/20/2007 | SERGEANT | MARSHFIELD POLICE DEPT |
| 3516 | 10/20/2007 | SERGEANT | MEDFORD POLICE DEPARTMENT |
| 9893 | 10/20/2007 | SERGEANT | MELROSE POLICE DEPT |
| 9919 | 10/20/2007 | SERGEANT | MILTON POLICE DEPT |
| 9922 | 10/20/2007 | SERGEANT | NATICK POLICE DEPT |
| 9926 | 10/20/2007 | SERGEANT | NORTH ANDOVER POLICE DEPT |
| 3518 | 10/20/2007 | SERGEANT | PEABODY POLICE DEPARTMENT |
| 3552 | 10/20/2007 | SERGEANT | PITTSFIELD POLICE DEPARTMENT |
| 3592 | 10/20/2007 | SERGEANT | PLYMOUTH POLICE DEPARTMENT |
| 9931 | 10/20/2007 | SERGEANT | PROVINCETOWN POLICE DEPARTMENT |
| 3539 | 10/20/2007 | SERGEANT | RAYNHAM POLICE DEPARTMENT |
| 9950 | 10/20/2007 | SERGEANT | SAUGUS POLICE DEPT |
| 9954 | 10/20/2007 | SERGEANT | SHARON POLICE DEPT |
| 9956 | 10/20/2007 | SERGEANT | SHREWSBURY POLICE DEPT |
| 9988 | 10/20/2007 | SERGEANT | STONEHAM POLICE DEPARTMENT |
| 3121 | 10/20/2007 | SERGEANT | WAKEFIELD POLICE DEPT |
| 3472 | 10/20/2007 | SERGEANT | WALPOLE POLICE DEPT |
| 3477 | 10/20/2007 | SERGEANT | WALTHAM POLICE DEPT |
| 3491 | 10/20/2007 | SERGEANT | WELLESLEY POLICE DEPT |
| 3499 | 10/20/2007 | SERGEANT | WILMINGTON POLICE DEPT |
| 3566 | 10/20/2007 | SERGEANT | WINCHENDON POLICE DEPARTMENT |
| 3501 | 10/20/2007 | SERGEANT | WRENTHAM POLICE DEPT |

# Appendix E

# Delegation Agreement Between the Boston Police Department and the Massachusetts Human Resources Division (HRD)

## DELEGATION AGREEMENT
### Between the Boston Police Department and the
### Massachusetts Human Resources Division (HRD)

In accordance with the provisions of MGL Chapter 31, Section 5(l), this agreement is between the Human Resources Division (HRD) and the City of Boston Police Department (BPD), for the purpose of delineating the responsibilities of the parties in the delegation of certain duties and powers of the HRD to the BPD with respect to the development and administration of the selection procedures which will be used to establish the next eligible lists (i.e., following the lists established in December, 1999) for sergeant, lieutenant and captain in the BPD.

The BPD has retained the professional services of Morris & McDaniel, Inc. to develop, construct, validate, administer and score a promotional process, as described in detail below, and to pay all attendant costs associated with same. Morris & McDaniel, Inc. are a nationally recognized leader in conducting test validation and promotional assessment projects in law enforcement organizations. With the exception of additional points as required by statute or rule, including credit for education and experience, this delegated promotional process will be used as the sole basis for scoring and ranking candidates on an eligible list.

Upon the BPD's submission to HRD of the credentials and references of the management team of Morris & McDaniel, and the approval of HRD regarding the selection of the Morris & McDaniel, Inc., the HRD will work with and approve the actions of the consultant in, but not limited to, the following areas:

1. Determination of the knowledge, skills, abilities and personal characteristics (KSAPs) that are supported by job analysis data that will be evaluated during the selection instrument components.

2. The development of the departmental promotional examination announcement to be used to solicit applications including a description of duties; the required knowledges, skills, abilities and personal characteristics as supported by job analysis data which will be measured by the delegated selection activities; a description of the testing process to be used including any reading lists and preparation guides; testing date(s); deadline for filing applications and any applicable fees. HRD will, upon request, provide sample language for the announcement, consistent with statutory requirements, regarding eligibility for the selection process and statutory preferences. The BPD must ensure proper posting of the examination announcement in all police department facilities.

3. Discussions relative to the job-related, content valid questions/activities that will be used during the performance based assessment components.

4. The security plan that will be utilized to ensure the integrity of the entire selection process resulting in the production of the eligible list.

5. Any training materials or sessions that will be distributed to/conducted for applicants prior to the administration of the assessment center in order to familiarize them with performance based assessment components.

6. The review of any validation materials, which support the assessment center and performance based activities.

58

*Delegation Agreement (continued)*                                              *page 2*

7.  The composition and selection of the assessors for the assessment center exercises.

8.  The training of the assessors in the use of the rating schedules and administration of the exercises.

9.  The review and approval of the rating schedules to be used.

10. The HRD and BPD will provide observers for the multiple choice written examination and the performance based components.

11. Requests for review pursuant to Section 22 of Chapter 31 shall be filed with the Human Resources Division. Reviews conducted pursuant to section 22 of chapter 31 shall be the responsibility of the consultant, with the approval of the Human Resources Division.

12. The determination of the passing point for the performance based exercises.

Both the BPD and the HRD agree to the following:

1.  HRD authorizes Elizabeth A. Dennis, Director, Civil Service Unit, (617-727-3777, x. 380) to act as its representative in all matters relative to this delegation agreement.

2.  BPD authorizes Edward P. Callahan, Director of Human Resources Division to act as its representative in all matters relative to this delegation agreement.

Beyond these general provisions, it is further agreed that:

1.  Examinations will be administered and scored under the direction of Morris & McDaniel, Inc. and in accordance with procedures approved in advance by HRD.

2.  Upon the advice of Dr. David Morris of Morris & McDaniel, Inc., the three department promotional examinations for the BPD will consist of the following:

| Rank | Written Tests | Assessment Center | Performance Review System | Education and Experience |
|------|--------------|-------------------|---------------------------|--------------------------|
| Captain | 25 points | 33 points | 22 | 20 points |
| Lieutenant | 30 points | 30 points | 20 | 20 points |
| Sergeant | 40 points | 32 points | 8 | 20 points |

The design of Performance-Based Exercises is as follows:

A.    Captain - Full Assessment Center
 ◆ In-Basket Exercise with oral responses
 ◆ Subordinate Problem Exercise with oral responses
 ◆ Situational Exercise using multiple scenarios with oral responses
 ◆ Performance Review System

*Delegation Agreement (continued)*                                        *page 3*

     B.   Lieutenant - Modified Assessment Center
- In-Basket Exercise with oral responses
- Situational Exercise using multiple scenarios with oral responses
- Performance Review System

     C.   Sergeant - Structured Oral Board
- Situational Exercise using multiple scenarios with oral responses
- Performance Review System.

4.   The examinations will be administered and scored under the direction of the BPD expert.


FOR THE CITY OF BOSTON POLICE DEPARTMENT:


Paul F. Evans, Police Commissioner
Appointing Authority


FOR THE HUMAN RESOURCES DIVISION:


Patricia S. Wada
Acting Personnel Administrator

TOTAL P.04

60

## Appendix F

## Tasks and KSAs Important to the Position of Police Sergeant Produced by Job Analysis

Task List Meeting Test Criteria

### 1. Administration – General

a. Conducts periodic inspections of patrol cars, equipment, and facilities.
b. Communicates information up and down chain of command.
c. Conducts roll call at the beginning of each shift and provides officers with relevant information (e.g. look-outs related to recent criminal activity, stolen property, wanted subjects, etc.).
d. Disseminates and explains new information to officers (e.g. legal bulletins, new procedures, etc.).
e. Prepares and/or supervises the preparation of records relating to activities of an assigned Unit.
f. Serves as a mediator among subordinates when required.
g. Conducts routine checks of installations and grounds, and/or examines identification passes to maintain security.
h. Maintains liaison with outside agencies, District Attorney, etc.
i. Attends and conducts Departmental staff meetings (to receive and exchange information and discuss policies and directives).
j. Develops and evaluates programs/projects.
k. Directs the operation of the Department by implementing policy, program priorities, and the utilization of resources to ensure the efficient and effective implementation of the goals and objectives mandated by state and federal laws, local bylaws and Department rules and regulations.
l. Discusses operational activities with supervisor of previous tour of duty to plan and coordinate activities of own tour in light of continuing problems (e.g. demonstration, etc.).
m. Participates in panels and work groups assembled to address specific topics and areas of concern to the Department and other area police Departments (e.g. promotion panels, fixed shift panel, safety panels and other committees and boards).
n. Transmits and obtains relevant information to and from other law enforcement agencies to keep the Department informed concerning activities and incidents outside their immediate domain.
o. Performs the duties and assumes the responsibilities of Lieutenant in his or her absence.
p. Provides and obtains information from other units to ensure coordination of own and other units.

q. Ensures due dates are met in response to projects, assignments, administrative duties, etc.
r. Attends meetings in order to be apprised of organizational or procedural changes, or to provide or exchange information.
s. Receives and relays directives, assignments and special orders to subordinates.
t. Prepares plans for special or unusual operations.
u. Works with other police agencies.
v. Enters data into and accesses data from computer system.
w. Communicates information to other law enforcement officials. 30. Performs simple mathematical calculations (add, subtract, multiply, divide).
x. Reads and writes incoming correspondence, inter-office memos, Departmental manuals, training bulletins, etc.
y. Qualifies and/or engages in required practice of operation of firearms and other weapons.

## 2. Administration – Paperwork

a. Reviews forms and reports for quality (whether all necessary steps have been completed).
b. Files/retrieves records, reports, logs, etc.
c. Approves and/or prepares applications or affidavits for search and arrest warrants.

## 3. Public Relations

a. Decides the approach to use when dealing with the public about non-enforcement matters (e.g. assisting people in getting emergency medical aid, answering citizens' questions at the station or on the phone).
b. Investigates and resolves citizen complaints against police officers.
c. Speaks with area residents, merchants, organizations, etc. to learn of any law enforcement related problems that they may be having, hears their opinions on the quality of police service they are receiving, and solicits their cooperation.
d. Participates in on-the-spot meetings with people that come into the office or are encountered in the field.
e. Appears at various civic or community functions to speak and answer questions about police and law-related matters.
f. Appears before councils, boards, public agencies and civic organizations to discuss law enforcement problems and to promote cooperation and goodwill.
g. Makes formal presentations to schools, civic groups, churches, etc., on drugs, crime prevention, etc.
h. Establishes friendly relations with the public.
i. Communicates with citizens of cultural/educational diversity.

    j.   Explains Agency services, policies, rules and regulations to the general public.

    k.  Relates to individual persons or groups to obtain their cooperation.

    l.  Uses a variety of communication skills to interact formally and informally with various community groups in educational programs.

## 4. Command

    a.  Designs, monitors, and evaluates special enforcement and prevention programs to address seasonal and/or unusual crime trends (e.g. decoy car program, robbery prevention patrol, neighborhood gang crime control program, etc.).

    b.  Monitors activity at crime scene so that proper Units (e.g. detectives, crime lab, etc.) are notified.

    c.  Sets up command posts at scenes of robberies, homicides, fires, etc.

    d.  Directs activities at the scene of major incidents (e.g. serious/fatal accident, crime, natural disasters, etc.).

    e.  Arranges for transport of injured persons.

    f.  Secures or supervises the securing of an emergency area.

    g.  Conducts or supervises the conduct of warranted search procedures.

    h.  Assumes command at barricade situations pending arrival of specialized Units.

    i.  Supervises bomb threats in accordance with procedures for bomb scares.

## 5. Investigations/ Inspections

    a.  Investigates and prepares reports regarding damage of Departmental property.

    b.  Conducts internal investigations.

    c.  Investigates and prepares reports regarding misconduct by subordinates.

    d.  Provides direction to officers regarding the appropriate handling of serious crimes such as homicides, robberies, etc. (e.g. guidance on investigative procedures, reports, etc.).

    e.  Conducts initial crime scene investigation to determine if assistance is needed and what procedures should be followed.

    f.  Evaluates incident reports and determines investigative priority for each.

    g.  Prepares charges against employees in disciplinary action cases.

    h.  Explains reasons for law enforcement action in appropriate detail to suspects and other concerned persons at the arrest scene.

    i.  Follows due process procedures by adhering to probable cause or consent requirements while conducting a search.

j.   Supervises searches of property and person in a manner that allows completion of required search with minimum resistance from persons involved.
k.   Participates in pre-planned raids.
l.   Investigates use of force and injury to prisoner incidents and prepares reports for superiors.
m.   Investigates or assists in investigating use of firearm incidents and prepares reports for superiors, as required.
n.   Communicates with suspects, witnesses and other citizens.
o.   Gives direction and monitors actions of officers during arrest of individuals to ensure that arrest procedures are performed in a proper manner.
p.   Processes and secures confiscated property that has otherwise come under Department's care.

## 6.  Personnel Allocations

a.   Develops special programs or plans pertaining to crime, traffic or of a service nature for assigned shift.
b.   Monitors activities of officers to ensure that issued equipment such as motor vehicle keys are returned.
c.   Oversees activities of subordinates and adjusts manpower schedule as necessary to ensure that officers are available to appear in court on the proper date and time.
d.   Assigns personnel and equipment to meet emergency needs.
e.   Ensures due dates are met in response to projects, assignments, administrative duties, etc.
f.   Makes recommendations to superior regarding most effective use of existing manpower (e.g. routine patrol coverage, special events coverage, such as demonstrations, etc.).
g.   Recruits for and allocates overtime.

## 7.  Personnel Evaluations

a.   Conducts inspections of assigned personnel to ensure they are physically fit for duty and have proper equipment/uniform.
b.   Ensures that performance of subordinates is in accord with established policies and procedures in the Department manual.
c.   Monitors radio broadcasts of officers and dispatchers to ensure that proper codes are utilized.
d.   Observes personnel on duty in order to monitor their performance.
e.   Visits officers on-site to ensure they are in the correct location and performing duties in a professional and proper manner.
f.   Counsels subordinates about performance deficiencies and other job-related and non-job- related problems, discusses alternative modes of action, and possibly suggests which mode of action to take.

g.  Ensures officers' understanding of proper police procedures by asking questions.
h.  Informs subordinates of how their efforts, in any given project, affected the outcome of the total project.
i.  Recommends actions to be taken on complaints, grievances, or disciplinary actions.
j.  Recommends subordinates for commendations and disciplines them for dereliction of duty.
k.  Verbally praises subordinates.
l.  Verbally reprimands subordinates.
m.  Strives to maintain a high degree of motivation among subordinates and other assigned personnel.
n.  Recognizes potentially improper or illegal actions taken by subordinate(s).
o.  Evaluates work of clerical personnel.

## 8.  Prosecution/ Testimony/ Legislation

a.  Appears in court as a witness (expert and other).
b.  Participates in pre-trial conferences, case reviews, etc., with prosecutors and/or court officials.
c.  Testifies before review boards regarding use of deadly force by subordinates.
d.  Testifies before boards in administrative cases.
e.  Talks to other officers, supervisors, prosecutors, judges, witnesses, and/or victims to review facts of cases to ensure proper pre-trial preparation.

## 9.  Patrol Activities

a.  Inspects licensed premises and prepares reports on violations if any are found.
b.  Questions suspicious persons in buildings, on roadways, etc.
c.  Drives motor vehicle under emergency conditions.
d.  Drives motor vehicle under non-emergency conditions.
e.  Responds to call for crime in progress.
f.  Responds to call for assistance.
g.  Provides guidance to patrol officers as to specific types of activities or incidents to look for in their patrol areas (e.g. prostitution, traffic offenses, trouble spots, etc.).
h.  Advises persons of constitutional rights.
i.  Oversees search of arrested persons.
j.  Conducts "stop and frisk."
k.  Handcuffs or uses restraining devices on suspects or prisoners.
l.  Uses non-lethal weapons in the line of duty.
m.  Cares for and cleans weapons.
n.  Ensures that street officers make the required notifications to victims of domestic violence as required by law.

o.  Administers basic" first aid
p.  Distinguishes hazardous from non-hazardous situations.
q.  Comforts victims, complainants, etc.
r.  Arrests or causes to be arrested, persons in illegal activity, in accordance with the laws of the State and City ordinances.
s.  Fires individual weapons in the line of duty.
t.  Communicates on a two-way radio.
u.  Following arrest, arranges for transport of prisoner(s) to station house, hospital, court, and/or central cell block.
v.  Uses self-defense techniques.
w.  Physically disarms individuals.
x.  Physically subdues combatants to restore peace and order.
y.  Considers physical and social environment, type of violation, and probable outcome of attempted enforcement in determining the type and level of force required to take suspects and offenders into custody.
z.  Enforces criminal and motor vehicle laws.
aa. Identifies locations and times that trouble is most likely to occur in a particular patrol area.
bb. Recognizes signs of criminal activities on the part of individuals or groups.
cc. Talks with leaders of demonstrations.
dd. Communicates with persons to obtain complete, accurate, and relevant information and to assess the internal consistency and value of the information obtained.
ee. Offers alternative courses of action to persons involved in actual and potential inter-personal conflict.
ff. Makes an accurate assessment of dangerous situations, evaluates alternative courses of action and acts decisively to protect self and others from harm and property from damage.
gg. Provides appropriate advice to persons who may be temporarily emotionally distraught or may have long-term adjustment problems, confining advice and suggestions to areas of professional competence and factual content.
hh. Refers citizens to appropriate public agencies or services when their requests are not within the scope of police work.
ii. Establishes police line at scene of fire or other dangerous event.
jj. Supervises the removal of occupants of building at scene of fire or other dangerous event.
kk. Determines if mentally deranged persons are dangerous to themselves or others.
ll.  Cultivates sources of street information.
mm.  Recognizes symptoms of narcotics overdose.
nn. Provides routine assistance to civilians.
oo. Pursues suspects on foot.

66

## 10. Procedures, Rules, and Laws

   a. Interprets policies, directives and procedures for subordinates.
   b. Contacts appropriate police Department resources to resolve problems.
   c. Establishes guidelines for subordinates that are consistent with Department rules and regulations.
   d. Implements procedures and guidelines for Unit or Department.
   e. Gives guidance to officers regarding the interpretation of laws and their implications.
   f. Issues general and special orders to subordinate officers for promulgation and execution.
   g. Keeps informed of legal decisions, changes and additions to applicable Federal, State and Local Laws and provides interpretations when necessary.
   h. Maintains manuals by posting changes or additions.
   i. Explains moving traffic laws, misdemeanor citations and summons contained in the State Code, City Code and Departmental Directives to citizens and/or subordinates.
   j. Abides by property submission procedures contained in Departmental Directives.
   k. Complies with evidence handling and log-in procedures in Departmental Directives.
   l. Contacts appropriate police Department personnel to resolve a problem.
   m. Ensures that information is transmitted to all appropriate persons and Units.
   n. Distinguishes between felony vs. misdemeanor classifications.
   o. Recommends changes in operational procedures and plans for Unit, installation, Division, etc.

## 11. Report/ Letter Writing

   a. Writes letters or reports at the request of the Commanding officer.
   b. Writes summary notes (e.g. Use of Force, Weekly Reports)
   c. Writes letters to document own or subordinate activities.

## 12. Research

   a. Keeps informed of current trends in law enforcement by reading relevant materials.
   b. Researches and resolves legal and technical questions from subordinates.
   c. Maintains current information such as names, faces and previous arrest records of known criminals believed to be in the area.

## 13. Training and Development

   a. Answers job-related questions from subordinates.

b.   Instructs officers in the proper use of Departmental property (e.g. motor vehicles, radios, etc.).
c.   Determines training needs and recommends a training program for subordinates.
d.   Provides one-to-one on-the-job instruction to officers to correct mistakes, etc.
e.   Provides individual or small group training and/or guidance at the substation as needed to correct subordinate deficiencies and reinforce previous learning.
f.   Attends in-service training including classroom work, practical or tactical exercises, and weapons practice and training to improve or maintain proficiency.
g.   Discusses cases and police work with subordinates.
h.   Implements new police techniques or procedures with subordinates.


# KSAs Meeting Test Criteria

1.   Knowledge of apprehension and arrest techniques.

2.   Knowledge of arrest laws.

3.   Knowledge of deadly force.

4.   Knowledge of Department methods and procedures.

5.   Knowledge of Department patrol function (e.g. public service, criminal investigation, etc.).

6.   Knowledge of interviewing and interrogation techniques.

7.   Knowledge of Massachusetts general law (MGL)--felonies, accessories, and attempts to commit crimes.

8.   Knowledge of proper behavior in the courtroom.

9.   Knowledge of procedures/techniques involved in a criminal investigation (e.g. reviewing reports from preliminary investigation, developing a theory, pursuing leads).

10.  Knowledge of recordings of procedures/techniques at the crime scene (e.g. field notes, photographs, sketches, etc.).

11.  Knowledge of rules of evidence of search and seizure.

12.  Knowledge of what may constitute evidence.

13. Knowledge of appropriate Supreme Court decisions.

14. Knowledge of City Ordinances.

15. Knowledge of new or changed General Laws, Ordinances and By-Laws.

16. Knowledge of pertinent Federal, State and Municipal laws and ordinances.

17. Knowledge of Police Department rules, regulations and special orders.

18. Knowledge of police patrol goals and objectives (e.g., the importance of goals and objectives, difficulties associated with goals and objectives.).

19. Knowledge of court procedures (e.g., case development, presentation, testifying, etc.).

20. Knowledge of geography, street, and physical layout of city and districts.

21. Knowledge of ethnic/racial composition of area.

22. Knowledge of basic first aid principles, procedures and techniques.

23. Knowledge of narcotics.

24. Knowledge of relevant city ordinances.

25. Knowledge of English grammar, composition, usage and punctuation.

26. Knowledge of how to identify and utilize outside resources.

27. Knowledge of police organization and staffing.

28. Knowledge of Collective Bargaining Agreement.

29. Knowledge of limits of jurisdiction.

30. Knowledge of formal and informal Department organizational structure.

31. Knowledge of report procedures (i.e., Filed Report, Incident Report).

32. Knowledge of human personality traits and characteristics.

33. Knowledge of the types and uses of Agency forms.

34.     Knowledge of the laws, rules, regulations, procedures, guidelines, policies, and standards governing assigning Unit activities.

35.     Knowledge of the laws, rules, regulations, procedures, guidelines, policies, and standards governing Agency operations.

36.     Knowledge of the terminology used in law enforcement and police work.

37.     Knowledge of the principles and practices of criminology.

38.     Knowledge of the standard police procedures and techniques used in foot and auto patrols.

39.     Knowledge of the techniques used in police surveillance work.

40.     Knowledge of the safety practices and procedures followed in the handling, care, maintenance and use of firearms.

41.     Knowledge of the terminology, codes and standard abbreviations used in connection with radio communications.

42.     Knowledge of the methods and procedures followed in maintaining the security of Department property.

43.     Knowledge of alternative police patrol tactics and strategies (e.g. team policing, high visibility patrol, decoy patrol).

44.     Knowledge of city grievance and discipline procedures.

45.     Knowledge of community policing procedures and techniques.

46.     Knowledge of patrol force staffing and development techniques/procedures (e.g. work load analysis, shift scheduling, shift rotation).

47.     Knowledge of social services and other resources within the area.

48.     Knowledge of supervisory and basic management practices (e.g. evaluation, counseling, motivation, discipline, work delegation, resource planning and deployment).

49.     Analytical skills.

50.     Skill in assessing and assigning training.

51.     Skill in assuming command when no other higher ranking officer is.

52.   Skill in comprehending information and ideas clearly.

53.   Skill in delegating assignments.

54.   Skill in giving performance feedback to subordinates.

55.   Skill in handling disciplinary/performance problems.

56.   Skill in identifying facts in a situation.

57.   Skill in interrogation of suspects or witnesses.

58.   Skill in interview techniques.

59.   Skill in maintaining good work relationship with fellow workers.

60.   Skill in maintaining storage of records at shift Unit level.

61.   Skill in planning and organizing work Unit.

62.   Skill in problem solving.

63.   Skill in search and rescue methods.

64.   Skill in setting priorities and initiating action.

65.   Skill in supervision and leadership.

66.   Skill in implementing community policing procedures and
      techniques.

67.   Skill in understanding/interpreting relationships.

68.   Skill in utilizing personnel effectively.

69.   Skill in soliciting information and suggestions from subordinates.

70.   Skill in analyzing and evaluating input from subordinates to
      determine what should be passed on.

71.   Skill in firing a variety of firearms.

72.   Skill in counseling subordinates.

73.   Interpersonal skills.

74.   Presentation skills.

75.   Reasoning and judgment skills.

76.   Oral communication skills.

77.   Skill in identifying potential problems.

78.   Ability to summarize information orally.

79.   Ability to explain things clearly.

80.   Ability to read and understand material in written form.

81.    Ability to persuade others.

82.    Ability to remain calm in stressful situations.

83.    Ability to speak in front of a group.

84.    Ability to remain firm.

85.    Ability to instill confidence.

86.    Ability to write (e.g. to prepare reports, etc.).

87.    Ability to summarize information in written form (i.e. prepare reports).

88.    Ability to remain fair and objective.

89.    Ability to foresee the impact and implications of decisions on other components of the police Department operations.

90.    Ability to remain flexible in the face of constantly changing needs.

91.    Ability to think under pressure.

92.    Ability to correctly delegate responsibilities and duties.

93.    Ability to develop alternative solutions to problems, to evaluate courses of action, and to reach logical decisions.

94.    Ability to evaluate employee performance.

95.    Ability to generate and/or recognize imaginative solutions and innovations in work-related situations

96.    Ability to guide and direct individuals or a group toward task accomplishment.

97.    Ability to identify problems from an overall management point of view, to clearly recognize underlying issues and possible interrelationship involved and to secure relevant information to identify possible causes.

98.    Ability to identify strengths and weaknesses in subordinates.

99.    Ability to implement community-based policing principles.

100.    Ability to promote and maintain effective public and community relations.

101.    Ability to conduct thorough investigations involving personnel under command.

102.   Ability to establish efficient and appropriate course of action to accomplish a goal, including recognizing the priorities of major work activities in order to complete them in a timely fashion, giving attention to detail in the performance of tasks and utilizing appropriate resources.

103.   Ability to establish effective worker relationships with co-workers, employees, managers, and other officials, and the general public.

104.   Ability to make basic arithmetical calculations (add, subtract, multiply and divide, whole and fractional numbers).

105.   Ability to organize programs, reports, etc.

106.   Ability to plan programs, deployment, etc.

107.   Ability to analyze and evaluate situations/circumstances

108.   Ability to discipline subordinates effectively.

109.   Ability to counsel subordinates.

110.   Ability to counsel and comfort families of victims, etc.

111.   Ability to supervise and guide individuals or a group of individuals.

112.   Ability to make analytical judgments where no firm guidelines exist.

113.   Ability to handle conflicts among subordinates.

114.   Ability to handle a variety of firearms.

115.   Ability to drive automobile in pursuit.

116.   Ability to withstand criticism.

117.   Ability to display initiative.

118.   Ability to use diplomacy and tactfulness.

119.   Ability to know what to pass on to superior officers.

120.   Ability to evaluate the credibility of a citizen complaint.

121.   Ability to interpret written information,

122.   Ability to follow directions.

123.   Ability to make sound decisions quickly based on the facts presented.

124.    Ability to gain cooperation and compliance from subordinates.

125.    Ability to favorably influence the activities of others.

126.    Ability to take the lead in dangerous situations.

127.    Ability to lead by setting example.

128.    Ability to set priorities and initiate action.

129.    Ability to assist in planning, organizing, and directing management functions.

130.    Ability to coordinate activity at a crime scene or serious accident.

131.    Ability to display patience.

132.    Ability to display sensitivity to the feelings of others.

133.    Ability to show persistence.

134.    Ability to evaluate training needs.

135.    Ability to obtain needed resources, as appropriate.

136.    Ability to recognize limits of legal action that can be taken.

137.    Ability to work independently.

138.    Ability to interpret Department policies and procedures.

139.    Ability to monitor and evaluate programs, projects, or Unit effectiveness and efficiency.

140.    Ability to manage time effectively.

141.    Ability to maintain a balance between employee concerns and management requirements.

142.    Ability to display listening skills.

143.    Ability to utilize investigative techniques to obtain information.

144.    Ability to read and interpret legal documents such as court decisions, briefs, court opinions, etc.

145.    Ability to read and interpret documents such as maps, charts, building plans, etc.

146.    Ability to understand and explain the provisions of the laws, rules, regulations, procedures, guidelines, policies and standards governing assigned Unit activities and Agency operations.

147.    Ability to interact with people who are under physical and/or emotional stress.

148.    Ability to exercise discretion in handling confidential information.

149.    Ability to maintain accurate records.

150.    Ability to work accurately with names, numbers, codes, and/or symbols.

151.    Ability to give written and oral instructions in a precise and understandable manner.

152.    Ability to follow oral and written instructions.

153.    Ability to adapt to varying work situations.

154.    Ability to walk and/or stand for prolonged periods of time.

155.    Ability to learn management and supervisory principles.

# Appendix G

## Commissioner's Memo 02-035, 5/29/02
## Subject: Promotional Exam 2002

Commissioner's Memo 02-035

May 29, 2002

SUBJECT:  PROMOTIONAL EXAM 2002

Today, I withdrew the Performance Review System (PRS) component from the 2002 Promotional Exam.  The Exam will now consist of the written examination, the assessment center exercises, and the training and educational component.

I made this decision based on a number of considerations, chief of which is my sense that this promotional process cannot be allowed to become mired in litigation for months or years.  It became apparent that this litigation would continue well past the time scheduled for the administration and grading of the examination.  I have been in this Department for 31 years and understand that legal challenges to exams has been the norm and not the exception, but even by these standards this litigation posed an incredible challenge to the promotional process.  The last exam was in 1998.  To delay this process further jeopardizes the good management of the Department.

Although the various challengers have indicated that they did not currently intend to challenge the written portion of the exam or the assessment centers, a great deal of time was spent challenging the foundation of the entire exam.  I am not willing to risk placing the validity of the entire exam at jeopardy. Candidates have spent a considerable amount of time and energy compiling information to illustrate their commitment to the job.  I sincerely regret that this decision became necessary.

It was my intention to provide candidates an opportunity to receive credit for the work they do day in and day out.  I believe that the best indicator of future performance is past performance; that what you do when you come to work counts.  The best supervisors cannot always be identified solely by their performance on a written test and an hour in an assessment center.  I wanted to give candidates credit for the work they do on a daily basis.  Quite simply, it is fairer to officers to factor in what they do on the job when they come to work.

The model for the PRS was the exam for detective, which contains a component that assesses past performance.  That exam has consistently rewarded officers who perform.  To those who have insinuated that the PRS was implemented to reward "favorites," I point to the detectives' exam: the Police Commissioner has the ability to award ten points at his sole discretion.  In the 8 ½ years that I have been the Police Commissioner, I have exercised that discretion one time only: to rate an officer who was shot in the line of duty, arrested an individual who killed one of our own officers, and who twice won the Schroeder Brothers Medal of Honor.  Claims of patronage or favoritism in the administration of exams are disproved by the facts.

76

This Department has become a national leader because we have demonstrated the ability to think creatively, and to envision new solutions to problems that occur in our city. We have been able to revisit crime strategies and forge new alliances with groups that traditionally were viewed with suspicion by those in law enforcement. We have learned that by working constructively with the community and other groups, we have improved our ability to make this city a safer place.

Just as we have changed the way we do police work, we must change the way we promote. We need to understand that our promotional system remains mired in a tradition that has become obsolete and disconnected from the way we do business today. We must become willing to reward police work, not memorization skills.

This Department owes it to its personnel, and to the City, to promote the best candidates. The Department will continue to make every conceivable effort to identify the best people for leadership in this organization. To do so, we must take into consideration how officers do their jobs. It is my hope and expectation that in the future, promotions will continue to be based on merit and consider all aspects of an officer's abilities, including past performance.

Paul F. Evans
Police Commissioner

## Appendix H

## Memo from Director Sally A. McNeely 2432, 2/14/05
## Subject: Updating the Reading Lists for Promotional Examinations Serving as a Subject-Matter-Expert for Police Promotional Examinations



THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE FOR ADMINISTRATION AND FINANCE
**HUMAN RESOURCES DIVISION**
ONE ASHBURTON PLACE, BOSTON, MA  02108

**MITT ROMNEY**
Governor

**KERRY HEALEY**
Lieutenant Governor

ERIC KRISS
Secretary

RUTH N. BRAMSON
Chief Human Resources
Officer

To:    Police Department Appointing Authorities; Police Chiefs

From:   Sally A. McNeely, Director, Organizational Development Group

Date:   February 14, 2005

Subject:  Updating the Reading Lists for Promotional Examinations
          Serving as a Subject-Matter-Expert for Police Promotional Examinations

The Human Resources Division periodically updates the Reading Lists for the Departmental Promotional Police Examinations. Last updated in 2002, we are enclosing a single sheet survey to obtain your feedback and recommendations for required textbooks that would be applicable for the 2006 - 2008 Departmental Promotional Police Series examinations.

We would appreciate your completing the single sheet survey. From among the textbooks listed, we are asking you to indicate whether you continue to recommend the currently required textbooks for inclusion in the Police Promotional Reading Lists and to recommend other applicable or relevant textbooks in lieu of any cited textbooks. Please mail or fax (617-727-4336) the completed survey to our office on or before **March 4, 2005.**

In addition, we ask if you would consider serving as a subject-matter-expert (SME), on a voluntary basis, during the examination development process. SMEs are essential in the examination development process for they provide professional guidance and help set the competency standards from which promotional examinations are prepared. SMEs are needed to update the Reading Lists, to review items for inclusion in the promotional examinations, or to serve in both capacities.

Should you have any questions about the survey or serving as a SME, please contact Guy Paris at 617-878-9759 or at guy.paris@state.ma.us. Thank you, in advance, for your recommendations and guidance.

2432

78

**Massachusetts Human Resources Division**

**Reading List Survey for 2006-2008 Departmental Police Promotional Civil Service Examinations**

Return Date: March 4, 2005

Police Department Name: _____    Date: _____    Telephone: _____

Name of Police Chief/Designee/Survey Responder: _____    email: _____

DIRECTION: Use a check mark to indicate your recommendations for each textbook listed. Currently, Items 1-6 are required textbooks on the Reading Lists; Items 6-10 are supplementary.

| | Title, Edition, Year, and Author | I. Recommendations | | | | II. Applicable Promotional Level | | | | | | III. Alternate textbooks (See back of sheet if more space is needed.) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Yes | No | Supplementary Only | Sgt. | Lt. | Cpt. | Dep. Chief | Chief | All Levels | |
| 1 | *Community Policing: A Contemporary Perspective (3rd ed., 2002)*; Trojanowicz, R., Kappeler, V.E., & Gaines, L. K. | | | | | | | | | | |
| 2 | *Criminal Investigation (8th ed., 2003)*;Swanson, C. R., Chamelin, N. C., & Territo, L. | | | | | | | | | | |
| 3 | *Police Administration (6th ed., 2005)*;Swanson, C. R., Territo, L., & Taylor, R. W. | | | | | | | | | | |
| 4 | *Supervision of Police Personnel (6th ed., 2001)* Iannone, N. F., & Iannone, M. P. | | | | | | | | | | |
| 5 | *Proactive Police Management (6th ed., 2004)*; Thibault, E. A., Lynch, L. M. & McBride, R. B. | | | | | | | | | | |
| 6 | *The Chief's Guide to Massachusetts Criminal Investigation Procedures: 2004-2005* Collins, J. M. and staff of the Law Firm of Collins & Weinberg. | | | | | | | | | | |
| 7 | *The Chief's Guide to Massachusetts Criminal Laws: 2004-2005*; Collins, J. M. & staff of the Law Firm of Collins & Weinberg | | | | | | | | | | |
| 8 | *Law Enforcement Guide to Firearms Law (7th ed., 2004)*; Collins, J. M. & Glidden, R. C. | | | | | | | | | | |
| 9 | *Motor Vehicle Law: Field Manual 2004* Scheft, J. S. and Levine, B. M. | | | | | | | | | | |
| 10 | *Police Juvenile Issues: Field Manual 2004*; Scheft, J. S. | | | | | | | | | | |

IV. I am willing to serve as a Subject-Matter-Expert:    ☐ Yes    ☐ No    ☐ I need more information, please contact me.

Return completed form. Fax: 617-727-4336

Mail: Massachusetts Human Resources Division, Organizational Development Group/Civil Service Unit, One Ashburton Place, Boston, MA 02108

HRD Date: _____
ID Number: _____    RDS_0502_01

2 4 3

2

The written examinations are designed to measure, where feasible, the following knowledges and abilities that have been established as qualifications for the positions of Police Sergeant, Police Lieutenant, Police Captain, Deputy Police Chief, and Police Chief:

- Knowledge of the U.S. and Massachusetts Constitutional law, Massachusetts General Law, Federal, State and Local Rules and Regulations, local ordinances and bylaws and important court decisions that pertain to the operation of a police department and govern police work;
- Knowledge of principles and practices of police administration and management;
- Knowledge of community policing (e.g. patrol, community relations);
- Knowledge of the principles, practices and techniques of police supervision including such areas of supervisory responsibility as planning, organizing, staffing, directing, controlling, employee training, managing employee grievances, etc;
- Knowledge of budgeting and fiscal control;
- Knowledge of appropriate police goals, objectives, methods, procedures, and techniques pertaining to major municipal police functions (e.g. patrol, administration, traffic control, criminal investigation, civil disorder, riot control, hostage situations, juvenile investigation, community relations, etc.);
- Ability to choose actions appropriate to the situation;
- Ability to confront problems, take charge, and assume responsibility;
- Ability to demonstrate administrative judgment;
- Ability to coordinate the efforts of others in accomplishing assigned objectives.

Recommended Textbooks for Police Promotional Examinations:

2434