### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

_____

PEDRO LOPEZ, et al.                                )
    Plaintiffs,                               )
                              )      Civil Action No. 07-11693-GAO

v.                                                 )

CITY OF LAWRENCE, et al.                           )

    Defendants.                               )
_____ )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE CERTAIN EXPERT TESTIMONY OF DR. JOEL WIESEN AND DR. CASSI FIELDS[1]

### I. Introduction

The Defendants' motion to preclude the Plaintiffs' experts from offering their opinion on adverse impact disregards case law and regulations supporting aggregation of hiring and promotional data in disparate impact cases. Ignoring the applicable Equal Employment Opportunity Commission's regulation and the breadth of case law, the Defendants contend that the opinions of Joel Wiesen, Ph.D., and Cassi Fields, Ph.D., are flawed because they rely, in part, on aggregating data across the Defendants and across examination years to evaluate the adverse impact resulting from the promotional examinations at issue.

_____

[1] The City of Boston did not join in the Defendants' motion, presumably because the Defendants' experts acknowledge that Boston has adverse impact resulting from the promotional examinations. As a result, the Plaintiffs are filing a motion *in limine* to preclude Boston from challenging its experts' conclusion on this issue.

The thrust of the Defendants' argument focuses on the fact that this case concerns individual municipalities as defendants, rather than a statewide hiring or testing agency.  See Def. Mtn. at 4.  This is a distinction without a difference.  As the EEOC regulations clearly state, aggregation of data to address small data pools is allowed when the "selection procedure [is] used in the same manner in similar circumstances elsewhere."  29 C.F.R. § 1607.4.

> Where the user's evidence concerning the impact of a selection procedure indicates adverse impact but is based upon numbers which are too small to be reliable, evidence concerning the impact of the procedure over a longer period of time and/or *evidence concerning the impact which the selection procedure had when used in the same manner in similar circumstances elsewhere* may be considered in determining adverse impact.

29 C.F.R. § 1607.4 (emphasis added).

Consistent with the EEOC regulation, courts have aggregated data across years and examinations to determine adverse impact when the examinations were sufficiently simlar.  See Bradley v. City of Lynn, 443 F. Supp. 2d. 145, 167 (D. Mass. 2006) ("Given the statutory framework mandating the HRD's involvement in the hiring process across municipalities, the aggregation approach is supported in this case by the EEOC Guidelines and the caselaw."); Paige v. California,  291 F.3d 1141, 1148 (9th Cir. 2002) (finding that "it is a generally accepted principle that aggregated statistical data may be used where it is more probative than subdivided data"); Vulcan Pioneers, Inc. v. N.J. Dep't of Civil Serv., 625 F. Supp. 527 (D.N.J. 1985) (finding aggregation across municipalities and across years appropriate where State administered firefighter promotion examination for municipalities and examinations were extremely similar

across years).  Defendants' motion is even more flawed because the only the ruling

they cited on this issue actually **supported** aggregation.  See Def. Mtn. at 8, citing

Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 159 (N.D.Cal. 2004) (allowing

aggregated data to go to jury).

There can be no question here that the Defendants use a "selection procedure

[to determine sergeant promotions] in the same manner in similar circumstances."  Id.

The Defendants' motion should therefore be denied.

## II. Facts

The Plaintiffs have alleged a violation of Title VII and Chapter 151B arising out of

the disparate impact on minority officers resulting from the Defendants' utilization of the

Commonwealth of Massachusetts's police sergeant promotional examination.  This

action concerns examinations in 2005, 2006, 2007 and 2008.  In 2005, the MBTA,

Springfield, and Worcester offered examinations; in 2006; Lawrence, Lowell, Methuen,

and Worcester offered examinations; in 2007, the MBTA and Springfield offered

examinations; and in 2008, Boston, Lawrence, Methuen, and Worcester offered

examinations.  See generally Ex. 3 to Def. Mtn., ECF Doc. 214-3, Second Supplemental

Report of Joel Wiesen, Ph.D. ("Wiesen Report").

The examinations at issue for the Defendants did not substantively differ.[2]

Each of them consists of 80 multiple-choice questions that tested exclusively job

knowledge.  See Deposition of Sally McNeely, April 4, 2008, 23:19-24:3, 76:16-77:2,

---

[2]      Boston's examinations did have a specific component related to Boston only, but Boston has not
joined the Defendants in this motion, see fn. 1, supra, and Plaintiffs would argue anyway that this
distinction is irrelevant because the fundamental flaw with the examinations is that they are multiple-
choice examinations that test memorization, not job-related skills.

3

attached hereto as Exhibit A; Deposition of Sally McNeely, April 2, 2010, 9:4-19,

attached hereto as Exhibit B.   Notably, the Defendants did not assert in their motion

that the examinations differed year-to-year.

The Plaintiffs have retained two experts to offer testimony and opinion on several

issues related to the Plaintiffs' claims, including, but not limited to, adverse impact.  Joel

Wiesen, Ph.D., is an expert in industrial psychology and test development and

validation.  Before he became a full-time consultant on his subject, he served as director

of Test Development and Validation for the Commonwealth's Department of Personnel

Management, the precursor to the Human Resources Division which is charged with

developing and administering the Commonwealth's public safety entry-level and

promotional examinations (except where municipalities elect to develop and administer

their own promotional examinations).  See Wiesen Report, ECF Doc. 214-3 at 9 of ECF

page number (Resume).  Cassi Fields, Ph.D., is a nationally-recognized expert in the

design development administration and validation of large-scale public safety testing

projects, and in that capacity has developed and validated examinations for jurisdictions

as large as Memphis, Tennessee (1,000 applicants) and Fairfax County, Virginia (1,000

applicants).  See Ex. 4 to Def. Mtn, ECF Doc. 214-4, Expert Report of Cassi Fields,

Ph.D. ("Fields Report"), at 35 of ECF page number (Resume).  Dr. Wiesen's proposed

expert testimony focuses primarily on adverse impact, whereas Dr. Field's proposed

expert testimony focuses primarily on test validation, although there is some cross-over.

In evaluating the adverse impact against minorities resulting from the

examination at issue, Drs. Wiesen and Fields aggregated data across municipalities as

well as across examination years.  In addition to evaluating aggregated data, Dr.

4

Wiesen also evaluated disaggregated data to reach his determination that the examinations in question resulted in adverse impact.  <u>See</u> Wiesen Report, ECF Doc. 214-3 at 7.  Dr. Wiesen recently issued a third supplemental report that included additional disaggregated adverse impact analysis for each community.  <u>See</u> Third Supplemental Expert Report by Joel Wiesen, at 6-8, attached hereto as <u>Exhibit C</u>.[3]

On June 22, 2010, Defendants filed the present motion <i>in limine</i> to preclude Drs. Wiesen and Fields from offering testimony on adverse impact based on aggregated data.

### III. Argument

1. **Aggregating Data Is Supported By The Facts, The Applicable Case Law, and Regulations.**

   a. **Aggregation Is Appropriate Where All Of The Defendants Rely On And Utilize The Same Unlawful Examination Procedure.**

The Defendants utilize year after year the same pen-and-paper examination developed and administered by the Commonwealth.  This is the measurement device that each of the municipalities has chosen to utilize to determine their promotions to police sergeant, even though they were free to develop and administered their own examination, as other municipalities have done.  <u>See</u> Deposition of Sally McNeely, March 12, 2010, at 15:2-21, attached hereto as <u>Exhibit D</u>.  This also forms the crux of

---

[3]      The Defendants only have themselves to blame for the timing of this third supplemental report. Plaintiffs' issued supplemental requests for discovery on February 19, 2010 for information and documents concerning promotions from the most recent examination.  The Defendants received responses from the Defendants in the following order: Boston, March 22; Methuen, April 8; Worcester, April 28; Springfield, April 28; Lowell, April 29; MBTA, May 7; and Lawrence, June 4.  Thus, when Dr. Wiesen issued his initial expert report on April 30, 2010, he had not had sufficient time to examine the data from any communities except Boston, and arguably Methuen.  Most recently On June 11, 2010, this Court granted the Plaintiff's motion for leave to file a Seventh Amended Complaint which added allegations relating to the 2008 examination.

the Plaintiffs' claim: that the unnecessary, non-mandated use of this written promotional examination has resulted in eligibility lists for police sergeant on which minority candidates are grouped below their white counterparts, and therefore never get reached for promotion.  While the Defendants make their promotions from the rank-order of their own eligibility lists, these lists are established based on the use of a common promotional examination.  This makes aggregation helpful and appropriate for determining adverse impact.  See 29 C.F.R. 1607.4.

The similarity of the employment procedures is the key factor when courts determine whether to allow aggregation of data.  Thus, in Bradley, where the municipalities used the standard entry-level examinations developed by the Commonwealth, Judge Saris found aggregation appropriate.  See Bradley, 443 F. Supp. 2d at 167.  Judge Saris referred to federal decisions in which aggregation was not allowed, and distinguished such cases by the fact that the employment procedures at issue were sufficiently different or unique.  Id.  Judge Saris noted that in Bailey v. Southeastern Area Joint Apprenticeship Comm, 561 F. Supp. 895, 901, 910 (N.D. W.Va. 1983), aggregation of localities' data was "inappropriate where each jurisdiction implemented standards autonomously."  Id.  Similarly, she distinguished the First Circuit's decision in Fudge v. City of Providence Fire Dep't, 766 F.2d 650, 656-57 (1st Cir. 1985), which concerned an examination to determine entrance into Providence's firefighter academy, by noting that the "examinations were sufficiently different" across the relevant years.  Id.

Notably, the Defendants did not assert in their motion that the promotional examinations at issue here differed across the years or jurisdictions.  All the Defendants

6

did to distinguish this case from <u>Bradley</u> was note several irrelevant factors – that police officers for different communities do not compete against another, as firefighters sometimes do for entry-level positions; that this is not a class action; and that they are the individual defendants, and the Commonwealth is no longer a party to this case.  <u>See</u> Def. Mtn. at 7-8.  None of these factors were noted in the <u>Bradley</u> decision as relevant to the determination to aggregate the hiring data, however.

It is true, as the Defendants' point out, that Judge Saris found disaggregated data also helpful to her analysis.  <u>Id.</u> at 7, <u>citing Bradley</u>, 443 F. Supp. 2d at 165.  But Plaintiffs' experts are also relying disaggregated data as well as on aggregated data for their adverse impact analysis.  <u>See</u> Wiesen Report, ECF Doc. 214-3 at 7; Ex. C (Third Supplemental Report of Joel Wiesen, Ph.D.) at 6-9.  The Defendants' motion does not ask this Court to *also* consider disaggregate data; rather, the Defendants specifically argued that this Court should not consider aggregated data whatsoever.  That argument was flatly rejected by Judge Saris, as well as by the other courts whose decisions are cited herein.  Moreover, Judge Saris specifically found aggregation helpful to address the ""small numbers" problem arising from the relatively few number of minority candidates in some communities.  <u>See Bradley</u>, 443 F. Supp. 2d at 167.  This aspect of Judge Saris' ruling specifically rejects the Defendants' contention that "small sample sizes in each jurisdiction are insufficient to establish disparate impact."  Def. Mtn. at 9.

    **b.    The Case Law Widely Supports Aggregating Data.**

While the Defendants did not cite to a single decision in which aggregation was not found to be appropriate under similar circumstances, the Plaintiffs can refer to many decisions directly supporting their experts' use of aggregated data.  Again, the fact that

the Defendants here are individually named is irrelevant for aggregation purposes under the EEOC guidelines.  They have each elected to use the identical police sergeant promotional examination developed and administered by the Commonwealth; by using a "selection procedure [in the] same manner in similar circumstances," their aggregated data "may be considered in determining adverse impact."  29 C.F.R. 1607.4.

       i.       The <u>Bradley</u> Decision

As explained above, <u>Bradley v. Lynn</u> concerned similar allegations of disparate impact against minority officers resulting from the Commonwealth's entry-level police and firefighter examination.   The case involved examinations for entry-level police and firefighter positions developed and administered by the Commonwealth and utilized by municipalities in a procedure substantially similar to the promotional examinations at issue here.  <u>See</u> Bradley, 443 F. Supp. 2d at 149.  The candidates first take, and must pass, the statewide civil service entry examination.[4]  <u>Id.</u>  The Commonwealth then establishes an eligibility list based off of the results of the examination, and when a municipality wants to hire from that list, the Commonwealth certifies a list of eligible candidates in rank order for that community.  <u>Id.</u> at 149-50.  The candidates available for open positions are based on a 2N+1 formula, where N is the available number of positions.  <u>Id.</u> at 150 (i.e. if there are two vacancies, five candidates are considered, and

---

[4]      One key distinction between <u>Bradley</u> and this case, although irrelevant for the purposes of Defendants' motion, is that municipalities do not have the authority to develop and administer their own entry-level examinations for police and firefighter positions, unlike the authority granted for promotional examinations pursuant to M.G.L. c. 31, §§ 10, 11.  Thus, the <u>Bradley</u> case literally challenged an examination mandated by the state, so the state agency was the appropriate defendant.  Here, the Defendants have chosen to use the state's promotional examination, despite the clear statutory authority for them to develop their own examinations.  Ironically, it is the Defendants' choice not to develop their own promotional examinations that supports aggregation and shows their willful disregard of the adverse impact resulting from the state-developed examination.

for three vacancies, seven candidates, etc.)  This is the same procedure that occurs when a municipality wants to make a promotion.  See Def. Mtn. at 15 (criticizing Plaintiffs' experts' failure to account for the 2N+1 formula).[5]

Based largely off of aggregated hiring data provided by the Commonwealth, Judge Saris found adverse impact resulting from the entry-level examinations.  Id. at 170.  Judge Saris either addressed and rejected, or did not even consider, the various arguments raised by the Defendants here.  Specifically regarding the small sample size issue, she found that "the plaintiffs have demonstrated a reasonable statistical basis to address the 'small numbers' problem by aggregating non-Beecher communities with minority applicants to determine whether there was an adverse impact on minority hiring."  Bradley, 443 F. Supp. 2d at 167.[6]  Judge Saris also took a common sense approach to the small sample size issue by focusing attention on the obvious dearth of minority firefighters in certain communities.  For instance, while noting that it may be an "interesting mathematical quandary" to determine adverse impact in Lynn when no minorities had been promoted off of a given examination, she explained that "the fine tuning of the statistics could not have obscured the glaring absence of minority hires," and found adverse impact in Lynn.  Id. at 166, citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 342 n. 23 (1977).  Similarly, while recognizing that finding a *prima facie* case of Title VII liability is "generally inappropriate" where the selection of one

_____

[5]      In fact, Dr. Wiesen specifically addressed the 2n+1 formula in his third supplemental report and found that the formula does not contribute to adverse impact.  See Ex. C at 11.

[6]      *Beecher* refers to a 1974 decision by the federal court which resulted in a consent decree regarding minority hiring for firefighters applicable to certain municipalities.  See Boston Chapter, NAACP, Inc. v. Beecher, 371 F.Supp. 507 (D.Mass.1974)

more minority candidate would negate the adverse impact finding (i.e. the "shift-of-one" analysis"), she specifically rejected this conclusion based on a finding that is equally compelling in the instant case.  "On the other hand, if a lower selection rate continued over a period of time, *so as to constitute a pattern*, *then the lower selection rate would constitute adverse impact,* warranting the need for validity evidence."  Id. at 161 (emphasis added), citing 44 Fed.Reg. 11996, 11999 (Mar. 2, 1979).[7]

Accordingly, Judge Saris found aggregated data helpful in determining whether the examinations at issue caused disparate impact against minority candidates.  Id. at 167.  Her decision and analysis is consistent with decisions from other jurisdictions.

ii.    Other Decisions Supporting Aggregation

Even beyond Bradley, the case law clearly supports Plaintiffs' experts' aggregation of data.  These cases follow the EEOC regulation and recognize that where a selection procedure is similar across jurisdictions or years, combining data produced from each selection procedure is appropriate and helpful in determining adverse impact. See Paige, 291 F.3d at 1148; Vulcan Pioneers, Inc., 625 F. Supp. at 534-35.

---

[7]    Judge Saris' comments on small sample sizes should be particularly relevant and damaging for the Defendants.  For instance, Methuen has no minority sergeants out of twelve, though it had three minorities take the 2008 exam out of 18 exam-takers, and four minorities out of 23 total exam-takers in 2006.  See Data from 2006 and 2008 examinations provided by Commonwealth, and Methuen's Response to the Plaintiffs Supplemental Interrogatories, attached as Exhibit E.  Worcester has four minority sergeants out of approximately 57, and 11 minority exam-takers out of a total 60 exam-takers in 2006, and nine minority exam-takers in 2008 out of a total of 55.  See Data from 2006 and 2008 examinations provided by Commonwealth, and Worcester's Response to the Defendant's Supplemental Interrogatories, attached as Exhibit F.  (The examination data provided by the Commonwealth will be offered and authenticated at trial).  In fact, the Massachusetts Commission Against Discrimination has authorized an investigation into Worcester's "problematic record in promoting minorities over a significant period of time."  See Harris, et al. v. City of Worcester, 2006 WL 662739, *4 (March 6, 2006 MCAD).

In Paige, the Ninth Circuit affirmed the district court's use of aggregated data for various promotional examinations for the California Highway Patrol. See Paige, 291 F.3d at 1144. Although the examinations were for several promotional ranks, including sergeant, lieutenant, and captain, data for all of the examinations was aggregated to determine adverse impact. The Ninth Circuit approved aggregation after noting the district court's finding of "sufficient commonality among the duties and skills required by the various supervisory positions to justify aggregation," and that the state itself aggregated data for reports to the EEOC and the State Personnel Board. Id. at 1148. This latter finding is consistent with the partial justification for aggregation offered by Dr. Wiesen, who noted that the Commonwealth has sometimes combined a municipality's results across examinations into one list. See Ex. 3 to Def. Mtn, ECF Doc. 214-3, at 7.

Similarly, in Vulcan Pioneers, Inc., the results of multiple years of fire sergeant promotional examinations were aggregated to determine adverse impact. See 625 F. Supp. at 534 -35. The Vulcan Pioneers court upheld the aggregation over the defendants challenge based on the "extreme similarity of the tests" at issue, even though the examinations had different questions, different cut-off scores, and were administered to different people. Id. at 535. Further, the court made this finding without the aid of expert analysis for the plaintiffs, explaining simply that "the court's own review of the evidence leaves it convinced that aggregation is proper." Id. at 545. See also Houston Chapter of Intern. Ass'n of Black Professional Firefighters v. City of Houston, Tex., 1991 WL 340296, *37 (S.D. Tex. May 3, 1991) ("The obvious remedy for fragmented hiring samples involving small numbers of hiring decisions is to use larger units of time for analysis . . . If possible, it is highly preferable to examine the statistical

11

data for the time period in combined form, rather than year by year. Combined data is more likely to demonstrate the "pattern or practice" of defendant's policies, whether discriminatory or not.")

As explained previously, the <u>Bradley</u> decision explains the key distinction in cases where aggregation of data is not appropriate. <u>See</u> <u>supra</u> at 6-7. In those decisions, the selection procedures at issue were sufficiently different or individualized as to recommend against aggregation. Here, the opposite is true. The Defendants utilized the Commonwealth's police sergeant promotional examination at all relevant times. Thus, the selection procedure at issue for each individual Defendant was "used in the same manner in similar circumstances," making it appropriate to aggregate the data resulting from the examinations to determine adverse impact.

**2.    The Proposed Testimony Of Plaintiffs' Experts Easily Satisfies The <u>Daubert</u> and Fed.R.Evid. 702 Standard.**

There is no merit to the Defendants' <u>Daubert</u> challenge to the Plaintiffs' experts proposed testimony on adverse impact. Although Defendants' entire motion is actually a traditional <u>Daubert</u> challenge concerning relevance and reliability, they did not offer any case law under the <u>Daubert</u> analysis. Their argument on this point simply repeats the groundless arguments against aggregation in the rest of their motion.

Under the familiar <u>Daubert</u> and Fed.R.Evid. 702 standard, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the principles and methods must be reliably applied to the facts of the case. <u>See</u> <u>Pages-Ramirez v. Ramirez-Gonzalez</u>, 605 F.3d 109, 113 (1st Cir. 2010); <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579, 597 (1993); Fed.R.Evid. 702. The

ultimate focus is on whether the expert's testimony "will assist the trier better to understand a fact in issue." Pages-Ramirez, 605 F.3d at 113.  Plaintiffs' proposed expert testimony readily satisfies this standard.

First of all, determining relevancy of an expert's testimony is no different than any other testimony; the issue is: does the proposed testimony have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mitchell v. United States, 141 F.3d 8, 14 (1st Cir. 1998); Fed.R.Evid. 104.  Defendants did not offer any case law to support its assertion that the proposed testimony on aggregated data for adverse impact analysis is not relevant.  Rather, the Defendants simply reiterated their complaints regarding aggregation. See Def. Mtn. at 13-15.  The Bradley decision and the other decisions cited previously plainly show the relevancy of the Plaintiffs' experts' proposed testimony.

Notably, the Defendants challenge on Daubert grounds only asserts a lack of relevancy. Id.  They do not question the qualifications and expertise of the Plaintiffs' experts – nor could they, as Drs. Wiesen and Fields are widely recognized as leading experts on the subjects of the design, development, and validation of public safety examinations as well on analyzing any resulting adverse impact.  Nor do they challenge the reliability of Drs. Wiesen's and Fields' application of their methodology and principles to the facts.

Plaintiffs have demonstrated that the facts, applicable regulations, and case law support the usefulness and appropriateness of aggregated data to determine adverse

analysis, which plainly makes such evidence relevant.  This Court should summarily reject the Defendants' <u>Daubert</u> challenge.

### III. Conclusion

The Defendants here chose to utilize the same pen-and-paper police sergeant promotional examination year after year.  Each of them did so despite the express authority allowing a municipality to develop its own selection procedure for sergeant promotions.  As they have chosen to rely on and utilize a common examination rather than attempt to increase their ranks of minority police sergeants by developing a fairer, less discriminatory examination, they are stuck with the results.  For these reasons and all of the reasons offered in this opposition, the Court should deny the Plaintiffs' motion *in limine*.

Respectfully Submitted,
PEDRO LOPEZ, et al., Plaintiffs,
By their attorneys,


 /s/ Joseph L. Sulman
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO# 640716
Joseph L. Sulman, BBO #663635
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Date:  June 30, 2010                    (617) 994-5800

### CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2010, a copy of this document was served by electronic filing on all counsel of record.

 /s/ Joseph L. Sulman
Joseph L. Sulman

14