**EXHIBIT B**

# SUPPLEMENTAL EXPERT REPORT

PEDRO LOPEZ, et al. Plaintiffs

v.

CITY OF LAWRENCE, MASSACHUSETTS, et al. Defendants

Case No. 07-CA-11693-JLT

Frank J. Landy Ph.D
195 Hudson Street, Suite 2D
New York, NY 10013

## INTRODUCTION

In an earlier report, dated October 30, 2008, I have presented my opinions regarding the promotional testing for the position of Police Sergeant in Commonwealth of Massachusetts communities during the years of 2005, 2006, and 2007, as well as specific promotional examination administered for the City of Boston in 2005. Since I presented my report, the defendants have presented the expert reports of Dr. Jacinto Silva and James Outtz. I have read those reports and they have not changed my opinions as stated on October 30, 2008. Nevertheless, some of the opinions offered by Dr. Outtz, in his report of February 2009, and repeated in part in the report of Dr. Silva on the same date (particularly with respect to the calculation of adverse impact) warrant response. In this supplemental report, I will briefly comment on certain of these opinions by Drs. Outtz and Silva.

## THE "SHIFT OF ONE" ANALYSIS

Both Dr. Outtz and Dr. Silva conduct an analysis in which they repeatedly create one additional Black/Hispanic promotion and reduce the white promotions by 1. Dr. Outtz calls this the "shift of one" analysis (pp. 15-16 of his report). They support this modification by citing Question #21 in the supplemental Questions and Answers to the Uniform Guidelines. Conveniently, the last paragraph of the Answer to Question 21 is omitted. It reads

2

> "On the other hand, if a lower selection rate continued over a period of time, so as to constitute a pattern, then the lower selection rate would constitute adverse impact, warranting the need for validity evidence."

Dr. Outtz's table 1, 2 and 3 present stark evidence of the "pattern" described in the answer to Question #21. Of the 13 communities in Table 1, only one community (Chelsea) promoted any Black or Hispanic candidates. In Table 2, of 15 communities, only two communities (Framingham and Worchester each promoted one non-white candidate) do not follow the pattern. In Table 3, of 10 communities, only 3 promoted non-white candidates (one was promoted in each community). Thus, in 38 opportunities (13+15+10) with minority applicants in the years 2005-2007, there were only 6 exceptions to the pattern of no non-white promotions. The pattern produced by the assessment method is clear and qualifies as the type of exception noted in the last paragraph of the answer to Question #21. Using the "shift one person" analysis championed by Drs. Outtz and Silva, even large groups of small communities could almost never be found to produce adverse impact in their appointment process. This is exactly why the last paragraph in the answer to Question #21 is relevant in this case.

## STANDARDS FOR CONTENT VALIDITY

Dr. Outtz, in his report (p. 26, first full paragraph) argues that the Statewide Examination in 2005 is content valid because: a) there was overlap in content between the Boston 2005 exam and the Statewide examination, b) there was an overlap in subject

3

matter covered by the two examinations, and c) the subjects covered in the statewide examination were evaluated by subject matter experts throughout the Commonwealth and found to be relevant. With respect to the argument about overlap between the Boston examination and the Statewide examination, Dr. Outtz seems to be introducing a novel form of validity generalization. To accept Dr. Outtz's three pronged argument for content validity of the Statewide examination, one must accept that 75% overlap in items and a 55% overlap in subject matter represents some "standard" for content validity.

There is no foundation in assessment theory or practice to support this argument. It is a primitive attempt to borrow validity from an examination that also fails to present an adequate foundation for a claim of content validity. Since no adequate job analysis supports the Statewide examination, and since there is no criterion-related validity study of the Boston 2005 promotional examination, there can be no claim of validity transport in this case. More importantly, as I have opined in detail in pp. 19-25 of my October 30, 2008 report, there is no supporting information for the Statewide examination that would pass even the lowest standards for establishing content validity.

With respect to Dr. Outtz's claim that since a sample of Commonwealth SMEs found the "subjects covered" to be relevant, the Statewide examination is content valid again fails to acknowledge the absence of information and documentation on which arguments of content validity are based. I have outlined those critical steps and pieces of required documentation in my report on pp. 19-25. Dr. Outtz does not address those deficiencies but instead, identifies three characteristics which he asserts form the foundation to claim content validity for the statewide examination. The first two legs of this foundation (overlap) do not represent necessary and sufficient conditions for a claim

4

of content validity. On the contrary, the elements I have identified on pp. 19-26 of my report are the most common foundations for supporting a content validity argument. Dr. Outtz makes no mention of the necessary elements I have identified as "c"-"g" in my report of October 30. Most importantly, the necessary linkages between the Statewide exam items and the critical KSAPs of the position of Police Sergeant are missing. Additionally, in my report of October 30, 2008, I have shown that even the job analysis done for the City of Boston by Morris and McDaniel was flawed because of inadequate assessment of KSAPs, thus rendering it useless as a support for the Statewide examination.

With respect to the third leg of Dr. Outtz's argument - the SME judgments that "subjects" were relevant – this is a far cry and many steps removed from any linkage showing the relative importance of each subject, the extent to which each subject required active vs. passive knowledge, the extent to which application of the knowledge of the subject was important rather than simple rote memorization of passages, and the extent to which the actual exam items fairly and comprehensively assessed those subject areas. These SMEs provided little if any useful foundation for establishing the content validity of the Statewide examination.

## ALTERNATIVES TO THE CHALLENGED SYSTEM

On p. 30 of his report, Dr. Outtz creates a narrow set of conditions for the relevance of alternatives to the use of the challenged promotional assessment system (i.e. closed book knowledge examination and training/experience rating). He specifies that

5

there is no evidence of a "feasible alternative that has been used in an employment situation such as that faced by HRD (in particular, simultaneous administration of an examination to hundreds of candidates in multiple communities").

As Dr. Outtz clearly shows in Tables 1 and 2 of his report, most of the communities in question test fewer than 50 candidates, many less than 20. Further, although a written examination may be required to be administered simultaneously, the same is not necessarily true for role plays, interviews, and other interactive assessment devices. Similarly, an open book test, a personality test, a situational judgment (reasoning) test could all be administered simultaneously "to hundreds of candidates in multiple communities."

There is no reason why one must assume that the written examination must be administered first in an assessment battery. As an example, the Los Angeles County Sheriff's department administers a video-based situational judgment test and oral examination to determine who will be eligible to take an open book written examination for specialty positions above the rank of patrol deputy. The scores on this practical exercise and oral examination are then statistically banded and positions within a band are determined by score on the written open book examination.

By setting the practical constraints quoted above, Dr. Outtz effectively eliminates from consideration broader scientific data on the validity and adverse-impact reduction of assessment methods including situational judgment testing, structured oral examinations, and role playing and at the same time ignores scientific evidence on the value of personality testing above and beyond that or more traditional methods of standardized paper and pencil testing. Both Dr. Outtz and Dr. Silva, in their professional work, have

often been involved in assessment methods for police promotional examinations that have been much richer than the simple closed book knowledge test and training/experience rating. Were one to sample promotional practices in law enforcement agencies nationally, one would find a much wider array of assessment procedures than the model supported by Dr. Outtz (closed book knowledge and training and experience). Many of these techniques of assessment are described in a recent textbook which I co-authored (Landy & Conte, 2007).

**STRICT RANK ORDER**

Dr. Outtz takes a narrow view of strict rank ordering. He notes that the 2N+1 formula results in a system that does not necessarily produce a **strict** rank ordering. Although in theory that may be true, the 2N+1 method constrains the appointment process to method much closer to strict rank ordering than almost any other selection method one can imagine. If there are 3 openings, the appointing authority considers the first 5 top scoring candidates. I suspect that in many if not most cases, the appointing authority follows a strict rank-ordered appointment process very closely.

In my report of October 30, I cover the acceptable standards for strict rank ordering and two of the three standards (test reliability and adequate job analysis) cannot be supported by any HRD data or evidence. I remain of the opinion that strict rank ordering is the term that would be used to describe the appointment process and that the Commonwealth has provided no data to support that use.

7

_____  _____
Frank J. Landy, Ph.D.            March 31, 2009

                                 New York City, NY

_____      _____
Frank J. Landy, Ph.D.                               March 31, 2009

                                                    New York City, NY