UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,

    Plaintiffs

v.                                           Civil Action No. 07-11693-GAO

CITY OF LAWRENCE, et al.

    Defendants

## DEFENDANT, CITY OF LOWELL'S MOTION FOR JUDGMENT ON PARTIAL FINDING

### I.    INTRODUCTION

Pursuant to Fed.R.Civ.P.52(c), the Defendant, City of Lowell ("Lowell") requests that this Honorable Court issue judgment in favor of Lowell in the instant case. As grounds therefore, and as set forth more fully below, the Plaintiffs failed to present sufficient evidence to prove that the sole Plaintiff employed by Lowell, Robert Alvarez ("Alvarez"), is Hispanic, and therefore has standing to bring claims against Lowell in the instant matter. The Plaintiffs have also failed to prove their prima facie case against Lowell for a violation of Title VII in that they failed to prove that the Plaintiff Robert Alvarez was a member of the protected class of Hispanics, as alleged in the Complaint. Furthermore, the Plaintiffs have failed to provide sufficient credible evidence that the 2006 Sergeant's promotional exam had an adverse impact upon Hispanic candidates within the Lowell Police Department ("LPD"). Finally, the Plaintiffs have failed to prove that Lowell had knowledge of the alleged adverse impact of any previous exam used by Lowell and administered by the Human Resources Division of the Commonwealth of

Massachusetts ("HRD"). For these reasons, the City of Lowell is entitled to judgment as a matter of law.

## II.   STANDARD OF REVIEW

At the close of evidence offered by an opponent, and at the close of all evidence, a party may move for a partial finding in a jury-waived trial, stating the specific grounds therefore. Fed.R.Civ.P.52(c). The Court may issue an order granting such a motion for judgment as a matter of law without any assent of the jury. Id. A motion for a judgment as a matter of law, or for a partial finding, can be granted if, construing the evidence most favorably to the Plaintiff, the evidence is still insufficient to support a verdict in the Plaintiffs' favor. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004). Additionally, when evaluating the evidence for purpose of a motion for a judgment as a matter of law or a partial finding, "the plaintiff is not entitled to inferences based on speculation and conjecture." Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 30 (1st Cir. 2004), rev'd on other grounds, 546 U.S. 1163 (2006) quoting Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990).

## III.   ARGUMENT

### A.   THE PLAINTIFFS FAILED TO PRESENT EVIDENCE THAT PLAINTIFF ROBERT ALVAREZ IS HISPANIC

In the instant matter, the Plaintiff Robert Alvarez ("Alvarez") lacks standing to bring a complaint under Title VII for alleged discrimination by the City of Lowell against Hispanic or black individuals, as he is not Hispanic (nor is he black). Additionally, Plaintiffs have failed to prove their prima facie case against the City of Lowell, in that they have failed to prove that Alvarez is a member of the protected class of Hispanics, as

2

alleged in the Complain in this action. Therefore, the City of Lowell is entitled to judgment as a matter of law.

When a plaintiff alleges discrimination resulting in a Title VII violation, the plaintiff must first prove a prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) his employer took an adverse employment action against him; (3) he was qualified for the employment he held; and (4) his position open or was filled by a person whose qualifications were similar to his. Douglas v. J.C. Penney Co., 474 F.3d 10, 13-14 (1st Cir. 2007). Robert Alvarez must therefore prove, by a preponderance of the evidence, that he is actually Hispanic.

The Plaintiffs failed to prove that Alvarez is Hispanic, and indeed, pursuant to the applicable definition, the evidence has shown that Alvarez is not Hispanic. In Castro v. Beecher, the Court defined Hispanic in the context of G.L.c.31, Civil Service under the then used term "Spanish surnamed persons" as:

> 'Spanish-surnamed persons' is a term which would apply to a native American with a Spanish surname whose ancestors had for generations lived in the United States, to a person with a Spanish surname born in Madrid and educated at its famous university, and to many others who obviously are not in the same class as any of the named plaintiffs. What the pleader presumably meant was **persons who were born or whose parents were born in Puerto Rico, Cuba, or other Caribbean countries, whose primary language is Spanish, and who have not had education and training comparable to that received by most mainstream white Americans**. Castro v. Beecher, 334 F. Supp. 930, 934 n.2 (D. Mass 1971). (emphasis added)

The Castro consent decree further requires that the above described 'Spanish-surnamed' individual must be "born in a Spanish-speaking country" or "raised in a home where the primary language was Spanish." Castro v. Beecher, Consent Decree, ¶16, Civil Action

Nos. 70-1220-W and 74-2982-C.[1] Alvarez was born in Somerville, MA as was his mother. Alvarez' father, from whom he claims to trace his 'Hispanic' lineage, was born in the Philippines. The Philippines does not qualify as a birthplace for a 'Spanish-surnamed' individual. Alvarez does not speak Spanish. He was not raised in a home where the primary language was Spanish. As such, Alvarez fails to meet the definition of Hispanic under the laws of Civil Service. Couple this with the evidence in this case that where Alvarez has alternated his self-identified race between White and Hispanic on his fingerprint applications in Waltham and Lowell, his birth certificate states he is "white" and where he has introduced himself and pronounced his last name not as "Alvarez" but as "Ilverack", the Court is left without competent proof that Alvarez is Hispanic.

The failure of Alvarez to prove he is Hispanic dooms his Complaint against Lowell in two ways. First, in order to have standing to bring a claim under Title VII for alleged adverse impact against Hispanic police officers, Alvarez, the only Plaintiff against Lowell, must be a member of the protected class alleged, namely Hispanic. Second, this failure eviscerates their prima facie case against Lowell. The City of Lowell is entitled to judgment as a matter of law.

### B.   THE PLAINTIFFS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE 2006 SERGEANT'S PROMOTIONAL EXAM HAD AN ADVERSE IMPACT ON HISPANICS

In the instant matter, the Plaintiff's have failed to submit evidence that the 2006 Sergeant's promotional exam had an adverse impact on Hispanic officers in the Lowell

---

[1] A copy of the Consent Decree is attached hereto as Exhibit A. Further, the Commonwealth of Massachusetts does not consider Filipinos to be Hispanic. The Massachusetts Cancer Registry, Massachusetts Department of Public Health, 3rd Edition, April 1999, page 63 ("American Indians and Filipinos may have Spanish surnames but are *not* to be considered Spanish/Hispanic under this coding scheme.")(italic in original); Cancer in Massachusetts by Race and Ethnicity, 2000-2004, The Massachusetts Department of Public Health, Appendix B ("non-Spanish; non-Hispanic (including Brazilians, Portuguese, Cape Verdeans, and Filipinos)").

Police Department. As the sole Lowell plaintiff, Alvarez alleges that the exam in question had an adverse impact on Hispanics.[2] There is not an African-American plaintiff from Lowell. See Seventh Amended Complaint, generally. As such, the only protected class that could potentially be implicated in Plaintiff's Complaint against Lowell is that of Hispanics. Based on the testimony of the Plaintiff's statistical expert, Dr. Joel Wiesen, the Plaintiffs have failed to prove their prima facie case against Lowell.

      1.    Dr. Wiesen failed to disaggregate Blacks and Hispanics

In his analysis, without exception, Dr. Wiesen analyzed the respective numbers of 'minorities' and 'non-minorities' with relation to the Sergeant's promotional exam at issue. In his 'minority' category, Dr. Wiesen included both Blacks and Hispanics, and failed to perform any analysis on these groups separately. Also, in the 'non-minority' category, Dr. Wiesen included all non-Black and non-Hispanic minorities. There is no support in the Uniform Guidelines on Employee Selection Procedures ("EEOC Guidelines"), or in the Uniform Employee Selection Guidelines Interpretation and Clarification (Questions and Answers) ("EEOC Questions and Answers"), for Dr. Wiesen's conflating of the Black and Hispanic minority groups, or for adding all non-Black and non-Hispanic minorities to the 'non-minority' category. Indeed, all of the examples in the Guidelines and the Questions and Answers include separate data for each racial group. Clearly, adding two racial groups together increases the likelihood of obtaining statistically significant data, and can skew the numbers towards a finding of adverse impact. Additionally, such an error by the Plaintiffs' expert allows Dr. Wiesen to claim that data from municipalities with only Black candidates is some evidence of adverse impact against Lowell, who has only an alleged Hispanic plaintiff. Since Dr.

---

[2] The City of Lowell does not concede that Alvarez is Hispanic, as indicated above.

Wiesen never analyzed data for the specific protected class allegedly applicable to Alvarez, the City of Lowell is entitled to judgment as a matter of law.

### 2.    Dr. Wiesen's data on Lowell is statistically insignificant

Dr. Wiesen's own data indicates that, even with his faulty aggregation of Black and Hispanic candidates, the numbers from Lowell's promotions off of the 2006 Sergeant's promotional exam are not statistically significant. Statistical significance is a measure of the likelihood that a certain result was due to chance, or random. Dr. Wiesen testified, "So if the probability of the difference -- and that probability that you get out, is the probability of the difference being -- due to chance. If that probability is below .05, five times in 100, then the accepted practice is to conclude that the differences were not due to chance." Trial Transcript, Day 2, p. 40, lines 6-10. Thus, numbers above .05 would be due to chance. For Lowell's promotions off of the 2006 list, the adverse impact ratio in promotions had a statistical significance of .58. See Exhibit 82. This means that one would expect the result in Lowell more than half of the time in a random sampling. For Lowell's promotions off of the 2006 list, the adverse impact ratio in effective passing point had a statistical significance of .08, again higher that the standard of .05. See Exhibit 82. Also, for Lowell's promotions off of the 2006 list, the adverse impact ratio for the official passing point of 70% was .18, higher than the standard of .05. See Exhibit 82. Given that even the Plaintiffs' own expert testified that the numbers for Lowell lack statistical significance, the City of Lowell is entitled to judgment as a matter of law.

### 3.    Dr. Wiesen failed to do a 'shift of one' analysis

The EEOC Questions and Answers lay out the proper procedures for conducting a valid statistical analysis in the face of small numbers, which applies to small numbers up

6

to one hundred (100). See Question 21. Lowell had forty three (43) candidates: seven minority and thirty six (36) non-minority for the 2006 HRD Sergeants exam. In Question 21, the EEOC indicates that a 'shift of one' analysis should be performed to determine if the change of one promotion from non-minority to minority would impact the adverse impact ratio for a particular employer. While the Lowell numbers are small for the purpose of a statistical analysis, Dr. Wiesen admitted that he failed to do a 'shift of one' analysis. Dr. Wiesen further admitted that a "shift of one" were applied there would be no adverse impact in Lowell. As such, the City of Lowell is entitled to judgment as a matter of law.

      4.    <u>Dr. Wiesen incorrectly aggregated data over time and employer</u>

Despite acknowledging the significant drawbacks and problems with such a method, Dr. Wiesen chose to aggregate his data over time and combine separate and distinct employers. The evidence shows that this can and did lead to faulty data, including the recounting of individuals who took multiple promotional exams. Additionally, this erroneous method presumes that candidates are available for promotion in any municipality, when in fact they are only available for the municipality where they are employed. Finally, such analysis presumes that all of the municipalities in the aggregation were similarly situated, which the evidence shows is incorrect. Since this aggregation method used by Dr. Wiesen is incorrect and flawed, the evidence obtained from such a method has no probative value, and thus the City of Lowell is entitled to judgment as a matter of law.

      **C.    THE PLAINTIFFS FAILED TO PROVE THAT THE CITY OF LOWELL KNEW OF ANY ALLGED ADVERSE IMPACT FROM THE 2006 SERGEANT'S EXAM PRIOR TO THE 2006 EXAM**

In order to succeed in their case of disparate impact, the Plaintiff's must prove that the City of Lowell knew of the alleged adverse impact of the state-designed, state-validated, state-administered, and state-scored test prior to appointing a sergeant from the 2006 exam. For purposes of Alvarez's case against Lowell, the only exam at issue is the 2006 HRD Sergeants exam. See Seventh Amended Complaint, generally. Pursuant to the Supreme Court's ruling in Ricci, et al. v. DeStefano, "race-based action…is impermissible under Title VII unless the employer can demonstrate a strong basis in evidence that, had it not taken the action, it would have been liable under the disparate-impact statute." 129 S.Ct. 2658, 2664 (2009). In the instant case, where the Plaintiffs have averred in their Complaint that Lowell should have declined to utilize the HRD certified from the 2006 exam on the basis of its alleged adverse impact, Ricci requires that Lowell have evidence of the adverse impact prior to the scoring of the exam at issue. Plaintiffs produced no evidence that Lowell had knew the 2006 exam had any adverse impact. Lowell received only limited information from HRD that pertained solely to Lowell and no other civil service entity. There is no statistically significant evidence to show that Lowell's past use of HRD examinations resulted in adverse impact as testified to by Dr. Wiesen regarding Lowell's two (2) minority sergeants. The Plaintiffs further cannot argue that Lowell had access to the validation information possessed by HRD. Nor have the Plaintiffs produced evidence that Lowell has ever been subject to a prior challenge to its promotional procedures based on allegations of adverse impact. As the Plaintiffs have not proven that Lowell had prior knowledge of the alleged adverse impact of the statewide exam, and therefore cannot meet the standard set by the Supreme Court in Ricci, the City of Lowell is entitled to judgment as a matter of law.

8

**D.    THE CITY OF LOWELL CANNOT BE HELD LIABLE FOR FOLLOWING A STATE-WIDE TESTING REGIME THAT IS MANDATED BY M.G.L. C. 31 § 1 ET SEQ.**

1.    Pursuant to M.G.L. c.31, examinations were created and administered by the state for the purpose of selecting candidates for promotion based upon merit.

While the City of Lowell is an employer and subject to the requirements of Title VII, Title VII does not make it unlawful for Lowell to comply with the Commonwealth's state wide testing requirements in M.G.L. c. 31. The Plaintiffs, in their various pleading with the Court, rely on Gulino v. New York State Education Department, 460 F.3d 361 (2006) for the proposition that a municipality is responsible under Title VII as an employer when it uses state mandated testing, if such testing has a disparate impact upon minorities. In that case, the State of New York created a mandatory testing regime for public school teachers. Black and Hispanic teachers employed by the New York City Board of Education ("BOE") sued state agency and BOE under Title VII claiming that the tests had a disparate impact on Black and Hispanic teachers. The district court found the defendants not liable. The plaintiffs then appealed to the Second Circuit.

On appeal, the Gulino dismissed the state agency who created and administered the tests after finding that the agency was not an employer for purposes of Title VII. However, based on other legal and factual errors, the lower court decision was vacated and the case was remanded. Id. at 388. Importantly, the Gulino court held that BOE was an employer within the meaning of Title VII, and while BOE had "argued in the district court that it should not be held liable for an employment practice required by state law," BOE "does not appear to challenge this finding of the district court." Id. at 380. The Gulino court briefly noted, however, that "the district court was correct in holding that

9

the mandates of state law are no defense to Title VII liability." Id. Therefore, the Gulino court vacated the trial court decision and remanded for further proceedings. Id. at 388.

A Petition for A Writ of Certiorari was filed in the Supreme Court. It was denied. Board of Education of the City of New York v. Gulino, 128 S. Ct. 2986 (2008). The United States Solicitor General filed an amicus brief opposing the petition for a writ of certiorari. In it, the Solicitor General provided cogent argument as to why the Gulino court was wrong in its holding that BOE's compliance with a facially-neutral public education state licensing requirement can give rise to Title VII disparate impact liability. However, the Solicitor General opposed the petition for certiorari because BOE had, as noted above, abandoned this argument in the Second Circuit.

In the instant case, the HRD promotional examinations were conducted outside of an employment context and do not give rise to a cause of action under Title VII as that statute prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). Title VII thereby restricts employers' employment practices. As other courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement of testing requirements, in a non-employment capacity. See, e.g., Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 578 (1st Cir. 2004) (noting "long line of cases" holding that testing authorities are not subject to Title VII).

The Constitution prohibits intentional discrimination on the basis of race in the use of the police power, but does not proscribe disparate impact. Washington v. Davis, 426 U.S. 229, 241-242 (1976). Indeed, in Davis the Court relied in part on concerns about how such liability would affect state licensing and testing statutes and other traditional

state functions. Id. at 248. Because nothing in Title VII manifests a clear intent to impose

further restrictions on the states' exercise of their sovereign police power to test or license

professionals including police officers, Title VII should not be read to intrude on such

matters of core state authority. See Bass, 404 U.S. at 349; cf. Gregory v. Ashcroft, 501

U.S. 452, 460-461 (1991) (holding that Congress's intent "to alter the usual constitutional

balance between the States and the Federal Government" must be "unmistakably clear in

the language of the statute") (citation omitted). This is consistent with the Supreme

Court's cases suggesting that intent to rework the federal-state balance should not be

lightly inferred. See, e.g., United States v. Bass, 404 U.S. 336, 349 (1971).

In the instant case, the state acted pursuant to its traditional police powers in

performing a core state function - regulating the qualifications of its police supervisors.

This is a traditional state function to which Title VII is inapplicable, and on such basis the

Commonwealth defendants were dismissed from this action. See, Lopez, supra. However,

because Lowell did not devise and did not administer the Sergeant's promotional exam in

question, Lowell is also not liable under Title VII, since it was complying with a facially-

neutral state testing regime that restricts promotions to those existing employees who

have complied with the Commonwealth's requirements. Specifically, Lowell must

comply with the state law that requires Lowell to hire from the certified lists promulgated

by HRD. Lowell thus acted as Plaintiff Alvarez' employer, and not as a testing body, and

is therefore outside the scope of Title VII.

There are several reasons supporting this determination. First, any other

conclusion would alter the existing federal-state balance as surely as a system which

made the states liable directly for their facially-neutral testing schemes. Second, holding

11

Lowell liable for the consequences of a state law would violate the general principal that "where [a defendant] has no ability to prevent a certain effect due to its limited [legal] authority over the relevant actions, the [defendant] cannot be considered a relevant 'cause' of the effect," and thus ordinarily is not liable. Department of Transp. v. Public Citizen, 541 U.S. 752, 770 (2004). There is no evidence that Congress intended to depart from that principle in Title VII, with the indirect consequence of interfering with a state's ability to conduct facially-neutral exams. Moreover, though the basic liability provisions from which disparate-impact liability have been derived address an employer's effort "to limit, segregate, or classify his employees or applicants," 42 U.S.C. 2000e-2(a)(2), it is the state's statutory provisions regarding HRD's creation, administration, and scoring of the exam, not the actions of Lowell, that limit the pool of qualified applicants.

Third, Lowell relies on the business-necessity defense. That defense provides an employer with a defense to a disparate impact claim if it shows that the challenged business practice is job related and consistent with business necessity. 42 U.S.C. 2000e-2(k)(1)(A)(ii). Once the mandatory state testing requirement is in place then that defense is satisfied. Compliance with a valid facially-neutral state mandate is a business necessity to which there is no reasonable alternative. At all times pertinent to this case, Lowell was not in the position to determine whether the Commonwealth-mandated HRD exams had an impermissible disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, are satisfied. Lowell did not create or administer the HRD exams, and therefore was not privy to the data and testing methodologies underlying the exams. Lowell was never realistically in a position to know whether the exam had an impermissible disparate impact under traditional validation methodology,

12

much less to defend the exams in Court. Yet, that is precisely the position of the City in the instant case. Even if adherence to state law is not required, it is a business necessity that Lowell utilize the HRD exams. Under M.G.L. c. 31, HRD is charged with the responsibility and authority to develop examinations that "fairly test the knowledge, skills and abilities which can be practically and reliably measured." Boston Police Superior Officers Federation v. Civil Service Commission, 35 Mass. App. Ct. 688, 692 (1993). M.G.L. c. 31, § 16 delegates the determination of the 'form, method and subject matter' of promotional examinations to the Administrator of the Human Resources Division. Id. The Administrator is the skilled professional who is authorized to decide technical matters such as scoring and interpreting the examinations. Id., See, Lopez, supra, at 73-81. Lowell should not be required to prove the content or construct validity of the Commonwealth's examinations in order to prove business necessity. The Commonwealth is not a party to this case. The Plaintiffs cannot dispute that Lowell played no role in the creation, administration or scoring of any of the HRD-developed examinations. In fact, it is not in dispute that the Commonwealth does not share information with the jurisdictions that make use of its exams. The Commonwealth shares with Lowell only the results relating to persons eligible for promotion within its own police department.

Fourth, under the present posture of this case, all employers face great legal uncertainty. An employer that complies with state examination requirements could be liable for back pay and other monetary relief under Title VII if the courts later determine that the state created and administered examinations had an impermissible disparate impact. This resulting uncertainty could jeopardize not only the employer, but also the state's vital interest in regulating numerous professions for a variety of reasons, including

13

the health and safety of medical patients, teachers, firefighters and police. That traditional police power would be ill-served by subjecting employers to liability for the examinations created and administered by the states. This could happen in any number of situations involving state regulated professions. Under the rationale of the present case, law firms and government legal offices could be subjected to Title VII litigation alleging that bar examinations created disparate results. Health care providers could likewise be subjected to litigation alleging disparate impact liability on the basis of medical, dental, or veterinary testing requirements. The potential implications of holding employers liable under Title VII for any disparate impact stemming from a state-created and administered test is another indication that Congress did not intend that result, because there is no evidence in the text or history of Title VII that Congress intended such effects.

Fifth, as discussed above, trying this case poses serious practical problems. Lowell bears the burden of proof on the business-necessity defense, 42 U.S.C. 2000e-2(k)(1)(A)(i), but Lowell is ill equipped to shoulder that burden with respect to HRD examinations for the reasons discussed above. Before the First Circuit dismissed the Commonwealth defendants, HRD was defending its own examinations and the non-state Defendants, including Lowell, were, for all practical purposes, nominal parties. Now, Lowell and the other non-state defendants have to defend the HRD examinations. This further underscores the extent to which imposing Title VII liability in the present context would be an improper end-run around state authority and would punish employers without regard to their own culpability. Moreover, Congress imposed the burden on employers to establish the business-necessity defense in large part because it contemplated that the employer would have been responsible for creating or selecting the

14

requirements and defending that practice. See, H.R. Rep. No. 644, 101st Cong., 2d Sess. Pt. 2, at 14 (1990) (stating that the employer should bear the burden of proof because it "has control over the employment process, selects the practices used to make an employment decision, and is more likely to be aware of the relative costs and benefits of the practices used and of the alternative practices that were not used in making the employment decision(s)"). There is no evidence that Congress contemplated requiring an employer to bear the burden in defending examinations that it did not create and did not administer. And it strikes against basic issues of fairness and due process for the Defendants to be put in such a position.

### E.    LOWELL MUST SHOW A SUBSTANTIAL BASIS IN EVIDENCE THAT A JOB-RELATED EXAMINATION HAS A DISPARATE IMPACT BEFORE SUCH TEST RESULTS MAY BE DISCARDED.

In further argument, Lowell relies on the ruling of the Supreme Court in Ricci v. DeStefano, 129 S.Ct. 2658 (2009) in support of judgment on behalf of Lowell in this case. The Plaintiffs' basis for its Complaint against Lowell is nearly identical to the claim made by the City of New Haven ("New Haven"), the notable difference being that Lowell did not create, administer or score the exam. New Haven decided **not** to utilize the results of an examination for vacant positions of Lieutenant and Captain in its Fire Department. After it created, administered and scored its own promotional examination, New Haven determined that the "racial adverse impact" of the exam was "significant" and threw out the results. Ricci at 2677. The Supreme Court ruled that such a decision was a "race based" decision, which was unsustainable absent a substantial basis in evidence that the employer would be liable for disparate impact discrimination.

Like New Have, Alvarez argues that Lowell should reject the results of the 2006 HRD Sergeants exam developed and administered by HRD based upon the "evidence" of disparate impact and Lowell should be held liable under Title VII and M.G.L. c. 151B. As noted, however, any decision by Lowell to reject the results of the examinations due to concerns whether the results had a disparate impact upon minorities would have constituted a race-based decision that can only be justified if there is a substantial basis in evidence of disparate impact discrimination. Id at 2677.

When comparing the evidence before the Supreme Court in Ricci, it is apparent that New Haven had significantly more information at its disposal that Lowell had prior to the 2006 HRD exam. Unlike Lowell, New Haven administered the examination in question and, therefore, it had the data and expertise to defend its examination. As noted earlier in the memorandum, the Plaintiffs have not submitted proof that Lowell had access to the examination data, including the validation studies or the results of the examination statewide. Therefore, it was impossible for Lowell to have any basis in evidence to suspect that the HRD examinations had an adverse impact when making promotions to sergeant off the 2006 HRD exam. As such, the holding in Ricci mandates that judgment enter for Lowell in the instant case, because Lowell lacked the evidence to support a rejection of the 2006 HRD exam.

## F.    THE PLAINTIFFS HAVE AN ADEQUATE REMEDY

Lowell further notes that the Plaintiffs acknowledged that they have a lawsuit pending in the Massachusetts Suffolk Superior Court against the Commonwealth Defendants, alleging state-law claims that are identical to the claims raised in this suit concerning the disparate impact of the promotional examinations administered by HRD

16

in 2005, 2006, and 2007. Therefore, judgment in favor of the City of Lowell will not foreclose the Plaintiffs' potential remedy, but that remedy cannot be against the City of Lowell in the instant case.

## IV.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant, City of Lowell, respectfully requests judgment as a matter of law.

July 29, 2010

Respectfully submitted,
CITY OF LOWELL,
By its attorneys,


/s/Brian W. Leahey
Brian W. Leahey, Assistant City Solicitor
BBO #567403
R. Eric Slagle, Assistant City Solicitor
BBO #658813
City of Lowell - Law Department
375 Merrimack Street, 3rd Floor
Lowell, MA 01852-5909
Tel: 978-970-4050
Fax: 978-453-1510
Dated: July 26, 2010


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 29, 2010.

/s Brian W. Leahey
Brian W. Leahey, Assistant City Solicitor