UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PEDRO LOPEZ, et al.,<br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF LAWRENCE,<br>MASSACHUSETTS, et al.,<br>　　　　Defendants | Case No. 07-11693-GAO |

## DEFENDANTS CITY OF LAWRENCE AND MAYOR WILIAM LANTIGUA'S MOTION FOR JUDGMENT PURSUANT TO RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant City of Lawrence and Defendant Mayor William Lantigua (hereinafter collectively referred to as "Lawrence") pursuant to FRCP 52(c), hereby, respectfully move this Honorable Court to enter Judgment in favor of Lawrence on Counts I and II of the Complaint, on the following grounds:

1. The Plaintiffs failed to present evidence sufficient to support Plaintiffs' prima facie case that use of the 2006 and 2008 Sergeant promotional examinations (developed and administered by the Commonwealth of Massachusetts Human Resources Division ("HRD")) adversely impacted the rate of minority promotions to the position of Sergeant within the City of Lawrence.

2. The Plaintiffs' evidence, based upon an analysis of adverse impact aggregated across municipalities is insufficient to support Plaintiffs' burden of proof to set forth a prima facie case of disparate impact.

3. Lawrence cannot be held liable for following a state-wide testing regime that is mandated by M.G.L. c. 31 § 1 et seq. Pursuant to said statute, examinations were created and administered by the state for the very purpose of selecting candidates for promotion based upon

1

merit.

## I. STATEMENT OF THE CASE

Plaintiffs Pedro J. Lopez, Richard Brooks and Kevin Sledge (hereinafter the "Plaintiffs") claim that the City of Lawrence's ("Lawrence's") use of the promotional examinations developed and administered by the Commonwealth of Massachusetts Human Resources Division ("HRD") in 2006 and 2008 have had a disparate (adverse) impact on the rate of promotion of minorities (in the case at bar, Blacks and Hispanics) within the City of Lawrence; that this disparate impact is the result of professionally invalid examinations; and that Lawrence has alternatives other than the examinations developed and administered by HRD to reduce adverse impact. (Seventh Amended Complaint at ¶¶ 73-79).

## II. PROPOSED FINDINGS OF FACT.

For the 2006 sergeants promotional exams the Lawrence Police Department had forty-seven (47) test-takers, ten (10) of which were minorities. Four (4) non-minority appointments were made. [Plaintiffs' Exhibit 81; Table A1].

For the 2008 sergeants' promotional exams the Lawrence Police Department had forty-two (42) test-takers, fifteen (15) of which were minorities. There was one (1) appointment made. [Plaintiffs' Exhibit 84; Table B1].

The numbers for the City of Lawrence are small. (Wiesen Testimony: Trial Transcript 2-106).

Data that is not statistically significant is unreliable and the result of any analyses predicated upon the same is likely to have occurred due to chance. Such data, that is not statistically significant, shows no clear pattern. [Wiesen Testimony: Trial Transcript at 5-75; 10-115; 11-47,48].

There are no statistically reliable indicators that show minority applicants in Lawrence were adversely affected by the use of 2008 sergeant promotional exam. [Wiesen Testimony: Trial

2

Transcript at 2-104].

The results of the adverse impact analysis by the plaintiff's expert on average test score differences in Lawrence, for the 2008 sergeants' promotional examination was not statistically significant. [Plaintiffs' Exhibit 53, p.9.]

The results of the adverse impact analysis by the Plaintiffs' expert, regarding the promotion rates in the City of Lawrence in both the 2006 and 2008 sergeants' Promotional Examinations were not statistically significant. [Plaintiffs' Exhibit 53, Table 2a.; p9;].

The results of the adverse impact analysis by the Plaintiffs' expert of the effective passing rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examination were not statistically significant. [Plaintiffs' Exhibit 53; Table 2a; p.9].

The results of the adverse impact analysis by the Plaintiffs' expert for the pass/fail rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examinations were not statistically significant. (Wiesen Testimony: Trial Transcript at 2-104; Plaintiffs' Exhibit 53, p. 16).

Lawrence has appointed one (1) Sergeant from the list generated from the 2008 Sergeants' promotional examination. The Sergeant promoted was a non-minority. The appointment of one (1) Sergeant is too small a number to be statistically significant. (See Questions and Answers on the Federal Executive Agency Guidelines On Employee Selection Procedures, 44 Fed. Reg. 11,996 (1979), Question 21).

Under the Questions and Answers on the Federal Executive Agency Guidelines On Employee Selection Procedures, 44 Fed. Reg. 11,996 (1979), Question 21, when a data set is small, validity evidence is warranted only where the lower selection rate continues over time.

Where the statistical power for a statistical analysis is low, the statistical analysis will not detect a real difference. (Wiesen Testimony: Trial Transcript at 10-117).

The statistical power for the statistical analysis of the results of the City of Lawrence is low

3

and therefore no real difference can be ascertained. (Wiesen Testimony: Trial Transcript at 10-117).

Because the City of Lawrence's numbers are so small, there isn't enough statistical power to show any statistical significance for Lawrence's promotion rates. (Wiesen Testimony: Trial Transcript at 10-117).

Adverse impact analyses are hampered by small numbers, as statistical tests are not very good at detecting real differences where small numbers are involved, as is the case of the numbers in the City of Lawrence results. (Wiesen Testimony: Trial Transcript at 10-118).

The EEOC Guidelines recommend the use of the theory of the shift of one, when calculating adverse impact where the statistical data numbers are small. (Wiesen Testimony: Trial Transcript at 10-119; 10-118).

The Plaintiffs' expert failed to use the shift of one calculation when calculating the adverse impact analyses on the City of Lawrence's small numbers, despite representing that he complied with EEOC Guidelines in conducting his adverse impact analyses. (Wiesen Testimony: Trial Transcript at 10-119).

One of the reasons the Plaintiffs' expert did not apply the shift of one calculation to Lawrence's small numbers is because it did not help the Plaintiffs' case in this regard. (Wiesen Testimony: Trial Transcript at 10-119; 10-120).

With the Lawrence numbers for 2006 and 2008 being so small, chance can play a role in the analyses' results. (Wiesen Testimony: Trial Transcript at 2-107).

Dr. Wiesen found the adverse impact ratio for promotions in Lawrence when aggregating the 2006 and 2008 examinations to be .82, above the 4/5$^{th}$s "rule of thumb." [Plaintiffs' Exhibit 86].

In aggregating the 2006 and 2008 examinations, Dr. Wiesen found that the difference in points earned by minorities and non-minorities at the effective passing point was

4

2.1 points (out of 100 points). [Plaintiffs' Exhibit 86].

In aggregating the 2006 and 2008 examinations, Dr. Wiesen found that the difference in points earned by minorities and non minorities at the actual official passing point was 1.1 points (out of 100 points). [Plaintiffs' Exhibit 86].

Statewide, the adverse impact in pass/fail rates of minorities compared to non-minorities taking the 2006 Sergeants' promotional examination was .80, which does not fail the 4/5ths rule. [Plaintiffs' Exhibit 78]

Statewide, the adverse impact in pass/fail rates of minorities compared to non-minorities taking the 2008 Sergeants' promotional examination was .90, which does not fail the 4/5ths rule. [Plaintiffs' Exhibit 78].

Police officers compete for promotion only within the municipality that employs them. Police officers in different municipalities and jurisdictions do not compete for promotion with each other.

Dr. Wiesen's aggregated analysis of promotional rates state-wide did not account for the fact that police officers do not compete across employers or jurisdictions. [Wiesen Testimony: Trial Transcript at 5-88:21, 5-94:7 through 5-94:17, July 16, 2010].

Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider the different selection ratios (selection ratio is defined as the number of appointments relative to the number of applicants competing for those appointments) among the various municipalities. [Wiesen Testimony: Trial Transcript at 5-92:6 through 5-93:10, 5-94:7 through 5- 94:17]

Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider or account for the different sized pools of candidates among the various municipalities. (Wiesen Testimony: Trial Transcript at 5-93:23 through 5-94:6, 5-94:7 through 5-94:17).

Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider or account for the different proportions of minorities to non-minorities competing for promotion

that may exist amongst the various municipalities. [Wiesen Testimony: Trial Transcript at 5-91:14 through 5-92:5, 5-94:7 through 5-94:17].

Dr. Wiesen's aggregated analysis of promotional rates across time (e.g., across the multiple examinations 2003-2008) did not account for the fact that test-takers who took these examinations multiple times will be counted more than once. Dr. Wiesen admits such aggregation could distort the data. [Wiesen Testimony: Trial Transcript at 5-106:1, 5-107:13, 5-94:7 through 5-94:17]

The Plaintiffs' expert, Dr. Joel Wiesen, did not go far enough in conducting sufficient tests to assure that the data analyzed and the results of the statistical analyses were reliable for the conclusions reached, particularly with regard to the results of the City of Lawrence's 2006 promotional exam, despite the fact that he found the average test score result to be "unusual". (Wiesen Testimony: Trial Transcript at 2-105:12-13; 11-45 through 11-48).

The Plaintiffs' other expert, Dr. Cassie Fields, stated that she did not conduct her own independent, adverse impact analysis of the 2006 and 2008 police sergeant's promotional exam for the City of Lawrence. (Fields Testimony: Trial Transcript at 8-88:10-13).

### III. ARGUMENT

#### A. THE PLAINTIFFS CANNOT ESTABLISH A PRIMA FACIE CASE OF DISPARATE IMPACT DISCRIMINATION AGAINST LAWRENCE BECAUSE LAWRENCE'S ADMINISTRATION OF THE HRD PROMOTIONAL EXAM DID NOT HAVE AN ADVERSE IMPACT ON LAWRENCE MINORITIES.

The framework for proving unlawful discrimination based on disparate impact is set forth in 42 U.S.C. § 2000e-(k)(1)(A). A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact on a protected class". 42 U.S.C. § 2000e-(k)(1)(A)(i); *Albermarle Paper Company v. Moody,* 422 U.S. 405 (1975).

In order to establish a prima facie case of discrimination, a plaintiff must (1) identify the challenged employment practice or policy; (2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the

6

identified practice and the disparate impact. 42 U.S.C. § 2000e-(k)(1)(A)(i).

The Plaintiffs have failed to offer any reliable statistical evidence or expert opinion that supports a finding that Lawrence's promotional exams had an adverse impact on minorities.

### B. THE PLAINTIFFS' PRIMA FACIE CASE REQUIRES PROOF THAT THE DEFENDANTS' USE OF HRD's EXAMINATION HAS AN ADVERSE IMPACT ON MINORITY RATES OF HIRE WITHIN THE EMPLOYING UNIT

The Plaintiffs cannot prove disparate impact without first proving that the challenged practices, the use of promotional exams in 2006 and 2008, actually has an adverse impact on the protected class, Blacks and Hispanics. Bradley v. City of Lynn, 443 F.Supp.2d 145, 160 (D. Mass. 2006) (holding that as part of the prima facie case the plaintiffs must demonstrate that the exams had both an adverse and disparate impact, specifically that the adverse effects of the practice fall more heavily on members of the protected class than they fall on nonmembers who are similarly situated).

The Plaintiffs have sought to prove disparate impact using a calculation known as the "4/5th Rule" which comes from the Equal Employment Opportunity Commission's (EEOC's) Uniform Guidelines on Employee Selection Procedures. 29 C.F.R. § 1607.4(D); *Bradley v. City of Lynn*, 443 F.Supp.2d 145. 160 (D. Mass. 2006). This calculation compares the rates of hiring of minority and non-minority candidates for promotion or hire; if the resulting ratio is less than .80 (meaning the rate of hiring for minorities is less than 80% of the rate of hiring for non-minorities), such a result may indicate that the challenged employment practice has an adverse impact on minority employment and promotion opportunities. *Bradley*, supra. The rule, however, "has not provided more than a rule of thumb for the courts." *Bradley*, 443 F.Supp at 161 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 995 n. 3 (1988).

As set forth herein, in the proposed Findings of Fact, Lawrence's use of the 2006 and 2008 promotional examinations did not adversely affect actual minority rates of promotion or their opportunity to compete for promotion.

The crucial issue in this case is whether the Plaintiffs can demonstrate the existence of a

disparate impact on the basis of race. Again, as set forth in the proposed <u>Findings of Fact</u>, the Plaintiffs submit a premise of adverse impact based upon statistical evidence that is unreliable and expert opinion that fails to use the complete and thorough analytical methods that are necessary to support its findings that Lawrence's promotional exams had an adverse impact on minorities. (Wiesen Testimony: Trial Transcript at 2-105; 10-118; 10-119; 11-45 through 11-48).

### C. THE STANDARD OF PROOF IN DISPARATE IMPACT DISCRIMINATION CASES PRECLUDES THE PLAINTIFFS FROM SUPPORTING THEIR CLAIMS BASED UPON PROMOTIONAL DATA AGGREGATED ACROSS JURISDICTIONS

Here, the challenged employment practices, against the Defendant City of Lawrence are its use of examinations developed and administered by HRD. (Seventh Amended Complaint at 73-79). The burden on the Plaintiffs is to demonstrate that the challenged employment practices have a disparate impact on the rates of minority hiring within the employing unit. More particularly, as part of its prima facie case, the Plaintiffs must show that the challenged employment practices caused the discriminatory impact that the Plaintiffs seek to prove.

Plaintiffs' proof based on state-wide adverse impact statistics lacks any connection to the challenged employment practices. Certainly, the Plaintiffs cannot argue that Lawrence's use of these examinations could have caused a *state-wide* problem. In this sense, it cannot be said that any appearance of adverse impact on a state-wide basis was the result of Lawrence's use of the examination. Such an argument is obviously illogical and without reason - - the City of Lawrence's two challenged employment practices of utilizing HRD's 2006 and the 2008 examination affect only the promotions of its own officers within its jurisdiction.

In *Bradley v. City of Lynn*, supra, plaintiffs brought a class action under Title VII against the Commonwealth of Massachusetts and the City of Lynn, alleging that the civil service examination for entry level firefighters had a disparate impact on minorities. In that case, when determining whether disparate impact existed for the purpose of liability against the individual municipalities, Judge Saris examined the data on a disaggregated city-by-city basis:

8

> ". . . the Court finds that the statewide aggregated approach advocated by the plaintiffs and the disaggregated municipality approach advocated by the HRD are both useful in this case . . . The decision process in hiring firefighters in Massachusetts, however, contains multiple steps that span both the state and municipal levels. . . The HRD argues that statistical evidence aggregated on a statewide basis is flawed because hiring decisions are made individually in each municipality at the local level and because a large municipality can distort the whole adverse impact analysis. Dr. Jacobs asserts that aggregation 'allows one single jurisdiction to have a major influence on the entire system leading to a conclusion of adverse impact for the entire Commonwealth when a single community is responsible for the outcome.' . . . Because this seems reasonable, the Court examines the disaggregated hiring data of Boston. The Court also examines the disaggregated hiring data of Lynn, the municipality of the four named plaintiffs. The data shows that the examination has a disparate impact on the hiring of minorities in both of these municipalities."
>
> *Bradley* at 165.

In the case at bar, the evidence supporting disaggregation of the data is even more compelling than in *Bradley v. Lynn*. Unlike the entry level firefighter positions at issue in *Bradley v. Lynn*, police officers in different police departments do not compete against each other for promotion to sergeant. Candidates eligible to compete for entry level firefighter positions are eligible for appointment across jurisdictions.

When applicants who are not competing with each other for the same positions are used in statistical calculations as though they do compete against one another across all jurisdictions, the aggregation of these promotion rates significantly distorts the conclusions derived through aggregation.

Additionally, unlike in *Bradley v. Lynn*, the entity responsible for the state-wide examination, the Commonwealth of Massachusetts, is no longer a party to this case. Thus, while aggregation of minority selection rates may be "useful" against a state-wide actor, such data has no relevance to the City of Lawrence in the instant case.

Not only does *Bradley* require disaggregation of data for the purpose of determining liability among the individual Defendants, common sense also dictates this result. If the Court were to hold individual municipalities liable based on what may be happening on a state-wide level, there would be no difference between the municipality that promotes all of its minority

9

candidates and the municipality that may be promoting many candidates but where minority promotions fail the 4/5ths rule to a statistically significant degree. Such a conclusion would be fundamentally unfair and would be inconsistent with the prima facie case which requires the Plaintiffs to prove causation.

### D. THE DEFENDANTS CANNOT BE HELD LIABLE FOR FOLLOWING A STATE-WIDE TESTING PROCEDURE THAT IS MANDATED BY M.G.L. C. 31 § 1 ET SEQ. PURSUANT TO SAID STATUTE, EXAMINATIONS WERE CREATED AND ADMINISTERED BY THE STATE FOR THE VERY PURPOSE OF SELECTING CANDIDATES FOR PROMOTION BASED UPON MERIT.

On or about July 9, 2010, the Defendants (including Lawrence) filed a Motion To Dismiss All Defendants Pursuant to FRCP 12(b)(6) and a Memorandum in support thereof. In order to avoid lengthy duplication of the facts and arguments set forth in that Motion, Lawrence hereby incorporates the points and authorities set forth therein and renews its argument, as if fully set forth herein.

That Motion, in essence, acknowledges Lawrence is an employer and therefore subject to Title VII's prohibitions. Title VII, however, does not make it unlawful for Lawrence to comply with the Commonwealth's state wide testing requirements at issue.

In the present case, the HRD promotional examinations were conducted *outside of an employment context* and do not give rise to a cause of action under Title VII, as that statute prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). As other courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement of testing requirements, in a non-employment capacity. *See, e.g., Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 578 (1st Cir. 2004) (noting "long line of cases" holding that testing authorities are not subject to Title VII). Because nothing in Title VII manifests a clear intent to impose further restrictions on the states' exercise of their sovereign police power to test or license professionals including police officers, Title VII should not be read to intrude on such matters of core state authority. See *Bass,*

10

404 U.S. at 349; cf. *Gregory v. Ashcroft*, 501 U.S. 452, 460-461 (1991) (holding that Congress's intent "to alter the usual constitutional balance between the States and the Federal Government" must be "unmistakably clear in the language of the statute") (citation omitted).

Lawrence is an employer that must comply with the state law that requires it to hire from the certified lists promulgated by HRD.

Accordingly, Lawrence acted only as the Plaintiffs' employer, not as a testing body. It necessarily follows that Lawrence is not liable under Title VII for complying with a facially-neutral state testing regime that limits the pool of potential employees to those who have complied with the Commonwealth's requirements.

Pursuant M.G.L.c.31, HRD is charged with the responsibility and authority to develop and administer competitive examinations that "fairly test the knowledge, skills and abilities which can be practically and reliable measured." *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993).

The 'form, method and subject matter' of promotional examinations is entrusted to the Administrator of the Human Resources Division. M.G.L.c.31 s. 16

In 2006 and 2008, as at the present time, Lawrence was not in the position to determine whether the Commonwealth-mandated exams had any disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, were satisfied.

Lawrence didn't create or administer the HRD exams, and was not an invited participant into the sessions where the exams were composed and/or designed. Lawrence neither knew nor had reason to know, whether the 2006 and 2008 examinations at issue had an adverse impact on minorities from the Lawrence Police Department. Both Plaintiffs' experts agreed with this premise. (Wiesen Testimony: Trial Transcript 10-124; Fields Testimony: Trial Transcript 8-89, 8-90).

## IV. CONCLUSION

Accordingly, because Plaintiffs' prima facie case against Lawrence requires them to demonstrate a causal relationship between an identified practice of Lawrence and a disparate impact in Lawrence's hiring, the Plaintiffs can only do so by disaggregating the promotional data, and analyzing the data applicable to Lawrence.

The Plaintiffs have not met their burden of proof, as they have based their conclusions upon unreliable statistical data garnered through shallow and flawed analysis.

**WHEREFORE,** the Defendant City of Lawrence and Defendant Mayor William Lantigua, respectfully request that this Honorable Court enter a directed finding in Defendants' favor on Plaintiffs' claims, under both Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B, and further that the Court award Lawrence its costs and fees.

                                                Respectfully submitted,
                                                CITY OF LAWRENCE,
                                                By its attorney,

                                                */s/ Richard J. D'Agostino*

                                                Richard J. D'Agostino
                                                B.B.O. #633984
                                                Office of the City Attorney
                                                200 Common Street
                                                Lawrence, MA  01840
                                                (978)  620-3030

Date: July 30, 2010

## CERTIFICATE OF SERVICE

I, Richard J. D'Agostino, certify that on August 10, 2010, this document, filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and; paper copies will be sent to any persons indicated as non-registered participants.

/s/ Richard J. D'Agostino

Richard J. D'Agostino, Esquire