UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEDRO LOPEZ, et al. | )<br>)<br>) |
| Plaintiffs, | )<br>) Civil Action No. 07-11693-GAO |
| v. | )<br>) |
| CITY OF LAWRENCE, et al. | )<br>) |
| Defendant. | )<br>) |

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO DEFENDANT CITY OF LOWELL'S MOTION FOR JUDGMENT**

Plaintiffs oppose Defendant City of Lowell's Motion for Judgment on Partial Findings ("Lowell's Motion"). Principal arguments for denying Lowell's motion are detailed in Plaintiffs' Omnibus Opposition to Defendants' Motions for Judgment ("Omnibus Opposition"). This opposition responds to additional arguments made by Lowell.

**Argument**

**1.      The Evidence Warrants A Finding That Alvarez Is Hispanic.**

Lowell argues that the plaintiff bringing claims against them – Robert Alvarez – has failed to provide competent proof that he is Hispanic. (Lowell Motion, pp.3-4). Unlike some racial categories, the term "'Hispanic' is unique, encompassing the concepts of both race and national origin in a way that the terms 'white,' 'black' and 'Asian' do not." Torres v. City of Chicago, 2000 WL 549588, *2 (N.D. Ill. 2000) (citation omitted). Regardless of its designation as a race or a national origin, it is "used to refer to individuals of Spanish-speaking descent, whether from Spain itself or from Spanish-speaking Latin-American countries." Salas v. Wisconsin Dept. of Corrections, 2006 WL 1049469, *6 (W.D. Wis. 2006). The plaintiffs are

1

aware of no legal requirement – and Lowell does not point to one – that a person categorized as "Hispanic" speak Spanish.

Alvarez's father was Spanish and spoke both English and Spanish. (9:109-10). See Reynolds v. City of Chicago, 296 F.3d 524, 530 (7th Cir. 2002) (finding as Hispanic a plaintiff whose mother was Hispanic, regardless of whether plaintiff spoke Spanish); U.S. v. New York Bd. of Educ., 448 F. Supp. 2d 397, 422 (E.D.N.Y. 2006) (recognizing relevance of ancestral heritage and finding as "Hispanic" a plaintiff whose grandfather was born in Mexico). There is no question that Alvarez self-identifies as Hispanic, as he testified at trial. (9:103). Indeed, there is evidence demonstrating that he identified himself as Hispanic before and after he began working for Lowell. (9:121-22, 149-50; Exhs. 137, 147).[1] Lowell likewise recognized him as a minority. (9:148-49; Exh. 146). Alvarez previously brought a claim of discrimination against Lowell based on his Hispanic identity, and the jury found that he was in a protected category. (9:150-51). Finally, Alvarez testified at trial, and his Hispanic features were plainly visible. As a result, there is ample proof that he is Hispanic.[2]

Lowell's reliance on a footnote from Castro v. Beecher, 334 F. Supp. 930, 934 n.2 (D.Mass. 1971) is misplaced. In Castro, the court did not purport to define "Hispanic," it ventured an inference, without reference to any authority, about what the person who drafted the complaint "presumably meant" when using the term "Spanish-surnamed persons." Id. Lowell's reliance on the Massachusetts Cancer Registry (Lowell Motion, p.4 n.1) is equally misplaced.

---

[1] That he identified himself as "white" in fingerprint applications is of no significance, because he did so based on his knowledge that the only "race" options for the fingerprint system, as with other criminal history systems, are "black" and "white." (9:124-25, 146-47). Similarly, that Alvarez's birth certificate lists his father's race as white (9:126-27) is of no significance given the lack of any evidence either that "Hispanic" was a recognized option for race when the certificate was prepared or that Alvarez's father ever saw the birth certificate.

[2] As Alvarez made clear at trial, he neither introduced himself nor pronounced his last name as "Ilvareck," which was a nickname. (9:119-21). Once he knew someone, he told them about the nickname, which he acquired while in the Marine Corps. (9-120).

That the Massachusetts Department of Public Health chose to develop a cancer registry that uses a particular definition of "Spanish/Hispanic" has no bearing on this case.

**2.      A Separate Analysis Of Hispanics Was Not Required.**

Lowell also argues that it is entitled to judgment because the Plaintiffs did not provide a separate analysis of Hispanics.  (Lowell Motion, pp.5-6).  Tellingly, Lowell does not cite any cases in support of its argument.

In evaluating disparate impact claims, courts routinely combine statistical evidence concerning Hispanic and black candidates.  Indeed, a "number of cases have considered discrimination against Blacks and Hispanics together as violative of civil rights statutes."  Local Unions 20, 135, 257, 296, 531, 740, 902, 1456 of United Broth. of Carpenters and Joiners of America v. United Broth. of Carpenters and Joiners of America, 1997 WL 630179, *11 (S.D.N.Y. 1997).  In a recent example, a district court found disparate impact in the New York City entry-level firefighter examination by comparing the combined passing rate of black and Hispanic firefighter candidates against that of white candidates.  U.S. v. City of New York, 683 F. Supp. 2d 225, 235 -236 (E.D.N.Y. 2010).  The court did not perform a separate disparate impact analysis for blacks or Hispanics as individual groups, but only one analysis for the entire minority group.  Id.  This practice reaches back many years.  See, e.g., Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 652 (1989) (combining minority groups in disparate impact analysis).

It has been the consistent practice of courts in this circuit to do likewise.  For example, in EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594 (1st Cir. 1995), the First Circuit ruled that EEOC established disparate impact based in part on a finding that blacks and Hispanics combined comprised between 8 - 27% of applicant pool and yet none were selected.

Id. at 604. In Bradley v. City of Lynn, 443 F. Supp. 2d 145 (D. Mass. 2006), the district court found disparate impact by comparing minority examination scores as a group against scores of non-minorities. Id. at 165-67. See also Quinn v. City of Boston, 325 F.3d 18, 37 (1st Cir. 2003) (evaluating city's compliance with consent decree by considering the combined population of blacks and Hispanics in the police department versus the general population); Boston Chapter, N.A.A.C.P., Inc. v. Beecher, 504 F.2d 1017, 1021 (1st Cir. 1974) (explaining that "black and Spanish surnamed candidates" typically perform more poorly on paper-and-pencil tests of this type without separate analysis for each group); Gaines v. Boston Herald, Inc. 998 F. Supp. 91, 105 (D.Mass. 1998) (holding that plaintiffs established disparate impact on "non-white applicants" arising out of newspaper's hiring policy based in part on statistical evidence showing percentage of available workers who were black or Hispanic)

Even if the entire case is brought only by members of one minority group, disparate impact can be evaluated by considering the employment practice's impact on blacks and Hispanics as a whole. See Clemmons v. Stuyvesant High School, 2006 WL 4888057, *11 (S.D.N.Y. Oct. 12, 2006) (denying motion to dismiss disparate impact claim where black plaintiff asserted that employer had disproportionately fewer Hispanic and black employees as administrators); Green v. Town of Hamden, 73 F.Supp.2d 192, 198 (D. Conn. 1999) (ruling that black plaintiffs had alleged prima facie disparate impact case based on evidence of disparity in passing rates between blacks, Hispanics, and all minorities compared to white candidates).

**3.    There Is No Basis For Dismissing Lowell's Appointing Authority.**

Lowell offers no evidentiary support for its argument that its appointing authority is a redundant defendant. Plaintiffs do not dispute that a municipal official or body that, by law, serves as an agent of the municipality is identical to the municipality and need not be named

4

separately in a Title VII action. However, nothing in the record clearly shows that an appointing authority in Massachusetts acts as the municipality's agent rather than as a separate legal entity. As a result, there is no basis for dismissing Lowell's appointing authority. See Frazier v. Smith, 12 F. Supp. 2d 1362, 1369 (S.D. Ga. 1998) (ruling that a sheriff was not a redundant defendant in a Title VII suit that also named the county, because no evidence existed to establish the sheriff as an agent of the county). Plaintiffs are not aware of any cases in which a court dismissed an appointing authority in Massachusetts from a Title VII action based on redundancy.

## Conclusion

For the foregoing reasons, together with the reasons set forth in the Omnibus Opposition, Lowell's Motion should be denied.

Respectfully Submitted,
PEDRO LOPEZ, et al., Plaintiffs,
By their attorneys,


/s/ Stephen S. Churchill
Harold L. Lichten, BBO #549689
Shannon Liss-Riordan, BBO# 640716
Stephen S. Churchill, BBO#564158
Joseph L. Sulman, BBO #663635
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Date: August 30, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2010, a copy of this document was served by electronic filing on all counsel of record.

/s/ Stephen S. Churchill
Stephen S. Churchill
