UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************************
PEDRO LOPEZ, et al.                         *
                                            *
        Plaintiffs                          *
v.                                          *   Civil Action No. 07-11693-GAO
                                            *
CITY OF LAWRENCE, MASSACHUSETTS,            *
et al.                                      *
                                            *
        Defendants                          *
*******************************************

**DEFENDANT CITY OF BOSTON'S MOTION TO STRIKE
PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD
OR ALTERNATIVELY,
OPPOSITION TO PLAINTIFFS' MOTION**

Now comes the City of Boston and respectfully requests that the Plaintiffs' Motion to Supplement the Record, with the supporting affidavit by Dr. Joel Wiesen, be stricken since the affidavit does not respond to the testimony offered by Dr. Jacinto Silva at trial but rather, presents entirely new analyses. In the alternative, the City objects to the affidavit entering the record without response (as it therefore is essentially testimony not subject to cross examination), and submits the following in lieu of requesting additional opportunity to present live testimony.

      1.      **The Affidavit of Dr. Wiesen Should Be Stricken As It Does Not Purport To Address The Substance of Dr. Silva's Testimony and Thus Exceeds the Court's Ruling.**

Plaintiffs sought leave from the Court to "review and reevaluate" the analysis presented by Dr. Jacinto Silva on Day 17 of trial. Dr. Silva testified that he performed the analysis that Plaintiffs' expert, Dr. Cassie Fields, had proposed during her testimony

on Day 8 of the trial:

> Q [Mr. Lichten]:    Was there a method that could have been used in 2002 that would have cost hardly anything that could have even more greatly improved the adverse impact from what it was?
>
> A [Dr. Fields]:    Yes.
>
> Q:    And what was that?
>
> A:    Assuming that the job analysis was carefully looked at, if it was justified and the weights could be altered, all that it would take would be to alter the weights and make the oral component a higher weight than it was and the written exam a lower weight that it was, and that would surely minimize group differences and reduce adverse impact.  (Trial Day 8, p. 100)

The City tested Dr. Fields' hypothesis by asking its expert, Dr. Silva, to "alter the weights and make the oral component a higher rate than it was," using the test data that had been provided to him by HRD and attached as a spreadsheet in his February, 2009 expert report.  He allocated 20 percent to the written examination,

> … and increased the weight on the assessment center to 60 percent … and actually I found that it would have absolutely no impact on the adverse impact ratio.  Whereas before we would have promoted nine blacks, now we would have promoted eight blacks, and whereas before we would have promoted two Hispanics, we would now have promoted three Hispanics.  But the total number of minorities stands at 11 in both cases.  So Dr. Fields' statement to the fact that it would have surely changed is actually incorrect.  It did not change it in any fashion.  (Trial Day 17, p. 82-83).

Counsel for Plaintiffs objected, stating "It's one thing for our expert to make a theoretical proposition that one can do some type of analysis.  It's entirely different to have an analysis done like this that we've had no opportunity to review, our expert had no opportunity to revaluate [sic] and give us any feedback on."  (Trial Day 17, p. 84-85) The Court overruled the objection stating that Plaintiffs could have an opportunity to "meet" the evidence, noting that "… it did seem the chart was merely a mathematical

computation. … [T]he math is the math … I don't know how much response can be made to math. … I guess there can be an alternate calculation that pointed in a different direction."  (Day 18, p. 85 – 86).

Dr. Wiesen's new affidavit contains new analyses which do not address in any respect Dr. Silva's test of Dr. Fields' proposal.  As the Court correctly noted, Dr. Silva's analysis was a simple re-computation of the weights of the examination, following Dr. Fields' suggestion that by doing so, the City could minimize adverse impact.  Dr. Silva's analysis disproved Dr. Fields' assertion, which was presented not as a theory, but as a certainty.  Because Dr. Wiesen's affidavit does not even purport to rebut Dr. Silva's analysis, his further testimony should be stricken from the record.

    **2.**    **Dr. Wiesen's Proposed Analyses Do Not Comport To The Evidence At Trial.**

Dr. Wiesen's new analyses are based on assumptions that are not supported by the evidence in the record.  In his first proposed analysis, Dr. Wiesen suggests that adverse impact could be minimized or eliminated by "Hiring based on the Oral Component Alone" (Wiesen Affidavit at ¶ 5).  The oral component of the 2002 examination is one component of a multiple component examination, and to use it as the sole examination device without consideration of the knowledge, skills and abilities it was designed to test is contrary to Dr. Wiesen's own testimony about the propriety of test development.  As Dr. Wiesen testified, relying on a single measurement instrument is "often unwise," (Trial Day 4 at p. 35),  and that the Uniform Guidelines require the components used to test should be of a representative sample of the knowledge, skills and abilities necessary to do the job.  (Trial Day 4, p. 35).

The record is replete with testimony asserting that job knowledge is an essential component of the police sergeant job, and as Dr. Wiesen testified, job knowledge examinations are among the most valid testing instruments.  (Trial Day 11, p. 60 -61).  The oral component to the 2002 examination, as originally designed, was to include a performance review and situational exercises.  (Trial Exhibit 151).  After a challenge was made to the performance review component, that piece of the examination was withdrawn, the points allotted to the situational exercise component alone.  (Trial Exhibit 194).  Dr. Wiesen does not explain how a component that was designed to represent 40% of the total sergeant examination could be used as the exclusive device to test for the representative knowledge, skills and abilities of the position.

Dr. Wiesen also misrepresents the magnitude of increase in minorities that would be realized if the oral examination were to be used as the only selection device.  Although Dr. Wiesen avers that an increase of five candidates would be promoted using the oral examination exclusively to identify new sergeants, Dr. Silva's review of the data demonstrates that 14 minority candidates are tied at ranks 65 to 69 (not tied at rank 69 alone, as Dr. Wiesen implies).  See Dr. Silva's Affidavit, attached hereto as Exhibit A.

Dr. Wiesen's conclusion – that five new minority candidates would be promoted using the oral examination as the exclusive ranking device – assumes that the five minority officers in the tie groups would be the candidates selected for promotion.  Since race cannot be used as the tie breaker, some other mechanism must be used to identify the candidates for promotion from the tied groups.  As Dr. Silva sets forth in the affidavit, if a fair, race-neutral tie breaker were used to select among the tie groups for promotion, only 1.79 (or 5 multiplied by 5/14) minorities would be promoted, a net gain of 2, not 5,

and the adverse impact ratio would remain high, at 0.39.  See Exhibit A.

Dr. Wiesen also fails to acknowledge that using the oral component, to the exclusion of an education and experience component and the award of veterans' points, is inconsistent with Massachusetts law and thus, not a feasible alternative examination device for the City.   Even assuming that the use of an oral examination by itself (to the exclusion of the education and experience component) to test for police sergeants was a reliable and valid test for the position, it would not be available under existing state law.  See M.G.L. c. 31, § 22 ("In any examination, the applicant shall be allowed … to file with the administrator a training and experience sheet and to receive credit for such training and experience as of the time designated by the administrator.")  Similarly, ranking candidates without factoring in points for those who have veteran status would also run afoul of state law.  See Personnel Administration Rules, PAR 14(2), attached as Exhibit B: "In competitive examinations for promotion to any position in the classified official service, the administrator shall add two points to the general average mark obtained by any veteran, as defined in M.G.L. c. 31 § 1, providing such veteran has first obtained a passing mark in said examination."

For the foregoing reasons, the City respectfully moves to Strike the Affidavit of Dr. Joel Wiesen, or in the alternative, moves the Court to accept the rebuttal affidavit of Dr. Jacinto Silva and the foregoing memorandum of law.

>Respectfully submitted,
>CITY OF BOSTON,
>By its attorneys,
>WILLIAM F. SINNOTT
>Corporation Counsel
>
>/s/ Mary Jo Harris
>Mary Jo Harris (BBO #561484)
>Robert P. Morris (BBO #546052)
>Special Assistant Corporation Counsel
>MORGAN, BROWN & JOY, LLP
>200 State Street, 11th Floor
>Boston, MA 02109
>(617) 523-6666

Dated: October 5, 2010

## CERTIFICATE OF SERVICE

I, Mary Jo Harris, certify that on October 5, 2010, this document was filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

>/s/Mary Jo Harris
>Mary Jo Harris