UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************************
PEDRO LOPEZ, et al..                        *
                                            *
         Plaintiffs                         *
                                            *
v.                                          *    Civil Action No, 07-11693-GAO
                                            *
CITY OF LAWRENCE, MASSACHUSETTS,            *
et al.,                                     *
                                            *
         Defendants                         *
*******************************************

**PROPOSED FINDINGS OF FACT AND RULINGS
OF LAW OF DEFENDANT CITY OF METHUEN**

Pursuant to Fed. R. Civ. P. 52(a), and this Court's order entered September 17, 2010, Defendant City of Methuen ("Methuen") submits its Proposed Findings of Fact and Conclusions of Law:

## I.    Introduction

The Plaintiffs to this action are police officers in the cities of Boston, Lawrence, Lowell, Methuen, Springfield and Worcester, and at the Massachusetts Bay Transportation Authority. By a complaint and seven (7) amended complaints filed between September 11, 2007 and July 1, 2010 (Docket Nos. 1-235), Plaintiffs allege that the promotional procedures for the position of police sergeant, as administered by the Human Resources Division of the Commonwealth of Massachusetts ("HRD") in 2005, 2006, 2007 and 2008, had an unlawful disparate impact on African-American and Hispanic police officers, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and Massachusetts General Laws Chapter 151B ("Chapter 151B"). Methuen, and all other defendants, deny that the promotional procedures for the years at issue violated either statute.

By order entered on June 9, 2008 (Docket No. 87), this Court (Tauro, J.) ordered that the action "be bifurcated into: (1) a declaratory relief stage regarding liability; and, if necessary, (2) a remedial stage," and that "Plaintiffs' Motion for Class Certification [be] denied as to the liability stage and denied without prejudice as to the potential remedial stage."

The Plaintiffs who are currently Methuen Police Officers are: Abel Cano and Charles DeJesus (See Seventh Amended Complaint, Docket No. 235, ¶¶. 3, 6).

Original Defendants included HRD and Paul Dietl, in his capacity as Personnel Administrator for the Commonwealth of Massachusetts. On January 26, 2009, the State Defendants filed a motion to dismiss and/or for summary judgment (Docket No. 142), arguing, inter alia, that they were immune from suit under Title VII pursuant to the 11th Amendment to the U.S. Constitution, because HRD did not employ Plaintiffs within the meaning of Title VII. After the District Court (Tauro, J.) denied the State Defendants' motion on April 6, 2009 (Docket No. 168), the State Defendants filed a notice of appeal from that part of the District Court's order denying their motion to dismiss under the 11th Amendment (Docket No. 174). On May 13, 2009, Judge Tauro stayed proceedings in this Court until 30 days after the mandate issued from the State Defendants' appeal. (See Docket No. 181). In an opinion issued on December 3, 2009, the U.S. Court of Appeals for the First Circuit reversed the denial of the State Defendants' motion to dismiss, and remanded the action for the entry of an order dismissing the State Defendants under Title VII. See Lopez v. Commonwealth of Massachusetts, 588 F. 3d 69 (1st Cir. 2009).

In their motion to dismiss and/or for summary judgment filed in this Court, the State Defendants also sought dismissal of Plaintiffs' claim under Chapter 151B. Plaintiffs and the State Defendants subsequently agreed to dismissal of the claim under Chapter 151B, without prejudice. Plaintiffs re-filed their Chapter 151B claim in Suffolk County Superior Court, Civil

Action No. SUCV 2009-00576, Lopez v. Massachusetts (see Plaintiffs' Reply to Defendants-Appellants' Opposition to Motion to Dismiss Appeal, filed 6/5/09 in U.S. Court of Appeals for 1st Circuit, at 4 n. 1). The State Defendants have filed a motion to dismiss the state court complaint. After a hearing on July 29, 2010, the motion is currently under advisement. (Docket No. 32, Suffolk County Superior Court, Civil Action No. SUCV 2009-00576).

The trial in this action was held on July 12-16, 20-23, 26-29, and September 13-17, 2010, without a jury. The witnesses for Methuen, were James L. Outtz, Ph.D., an industrial organizational psychologist (expert witness); and Jacinto Silva, Ph.D., a senior managing consultant for EB Jacobs (expert witness).

## II. Proposed Findings of Fact

1. The Methuen Defendants are the City of Methuen ("Methuen") a municipal corporation established under the laws of the Commonwealth of Massachusetts and having a usual place of business at 41 Pleasant Street, Methuen, MA 01844 and its Mayor, William M. Manzi, III. [Seventh Amended Complaint, ¶¶ 51, 52]

2. Methuen is a "civil service" community, meaning that it has accepted the applicability of the civil service laws and rules of the Commonwealth of Massachusetts. (See Mass. General Laws. Chapter 31, §§1, 53-55).

3. In a civil service community, "promotional appointments in police forces shall be made only after competitive examinations," with exceptions not applicable. See Mass. General Laws, Chapter 31, §59.

4. Municipalities may elect to use the examination prepared annually by HRD, or may conduct their own sergeant promotional examination pursuant to a delegation agreement

3

between HRD and the municipality. (See Mass. General Laws, Chapter 31, §§9-11; Trial Exhibit Nos. 2, 151).

5.  For the 2006 sergeants promotional exams the Methuen Police Department had twenty-three (23) test-takers four (4) of which were minorities, one (1) non-minority appointment was made. [Plaintiffs' Exhibit 84]

6.  For the 2008 Sergeants' promotional exams the Methuen Police Department had eighteen (18) test-takers three (3) of which were minorities, and no appointments being made. [Plaintiffs' Exhibit 84]

7.  Data that is not statistically significant is unreliable and the result of any analyses predicated upon the same is due to chance. [Wiesen Testimony: Trial Transcript at 5-75; 11-47,48]

8.  There are no statistically reliable indicators that show minority applicants in Methuen were adversely affected by the use of 2006 sergeant promotional exam. [Wiesen Testimony: Trial Transcript at 5-83]

9.  There are no statistically reliable indicators that show minority applicants in Methuen were adversely affected by the use of 2008 sergeant promotional exam. [Wiesen Testimony: Trial Transcript at 5-83]

10. The results of the adverse impact analysis by the plaintiff's expert on average test score differences in Methuen for both 2006 and 2008 sergeants promotional examinations were not statistically significant. [Wiesen Testimony: Trial Transcript at 5-79; Plaintiffs' Exhibit 53, pp. 7; Exhibit 79]

11. The results of the adverse impact analysis by the Plaintiffs' expert of the selection rates in the City of Methuen in both the 2006 and 2008 Sergeants' Promotional Examinations were not statistically significant. [Wiesen Testimony: Trial Transcript at 5-78; Plaintiffs' Exhibit 53, pp. 7; Exhibit 79]

12. The results of the adverse impact analysis by the Plaintiffs' expert of the effective passing rates in the City of Methuen in both the 2006 and 2008 sergeants promotional examination was not statistically significant. [Wiesen Testimony: Trial Transcript at 5-78, 81; Plaintiffs' Exhibit 79]

13. The results of the adverse impact analysis by the Plaintiffs' expert of the comparison of minority sergeants to the population of the Methuen were not statistically significant. [Wiesen Testimony: Trial Transcript at 5-79; Plaintiffs' Exhibit 53, p. 16]

14. For very analyses conducted by Plaintiffs expert, Dr. Joel Wiesen to determine adverse impact in the City of Methuen the results of the same were not statistically significant. [Wiesen Testimony: Trial Transcript at 5-82]

15. Due to the lack of any statistically significant data resulting from all analyses of Methuen conducted by Plaintiffs' experts there was no adverse impact from the use of the 2006 and 2008 sergeants promotional exams. [Fields Testimony: Trial Transcript at 8-86]

16. Methuen has not made any appointments from the 2008 sergeants promotional examination list and thus there is no adverse impact ratio. A ratio of adverse

impact cannot be calculated without a promotion. [Wiesen Testimony: Trial Transcript at 2-116]

17. Police officers compete for promotion only within the municipality that employs them. Police officers in different municipalities and jurisdictions do not compete for promotion with each other.

18. Dr. Wiesen's aggregated analysis of promotional rates statewide did not account for the fact that police officers do not compete across employers or jurisdictions. (Wiesen Testimony, Trial Transcript at 5-88:21, 5-94:7 through 5-94:17, July 16, 2010).

19. Dr. Wiesen's aggregated analysis of promotional rates statewide did not consider or account for different selection ratios among the various municipalities. (Wiesen Testimony, Trial Transcript at 5-92 through 5-94.)

20. Dr. Wiesen's aggregated analysis of promotional rates statewide did not consider or account for the different proportions of minorities to non-minorities competing for promotion that may exist among the various municipalities. (Wiesen Testimony, Trial Transcript at 5-91, 5-92.).

21. Dr. Wiesen's aggregated analysis of promotional rates across time (2003-2008) did not account for the fact that test-takers who took these examinations multiple times will be counted more than once. Dr. Wiesen admits such aggregation could distort the data. (Wiesen Testimony, Trial Transcript at 5-).

22. Dr. Wiesen testified that the adverse impact he conducted of the comparison of ratio/ethic composition of sergeants to the population in which they served have no statistically significant data to determine adverse impact in Methuen. (Wiesen Testimony, Trial Transcript at 5-79.)

23. Dr. Cassie Fields, Plaintiffs' expert testified that Methuen's use of the 2006 and 2008 sergeant's promotional exam showed no adverse impact. However when Methuen's results are part of an aggregated analysis the same shows adverse impact which is an erroneous conclusion. [Fields Testimony: Trial Transcript at 8-87]

24. Dr. Jacinto Silva, Defendants' expert testified that Methuen's use of the 2006 and 2008 sergeant's promotional exam showed no adverse impact [Silva's Testimony: Trial Transcript at 17-62]

25. In Methuen there were four (4) minority and twenty-three (23) non-minority test-takers for the 2006 sergeant's promotional exam with only one (1) non-minority appointment. As a result the AI ratio is Zero. [Exhibit 199: Silva's Testimony: Trial Transcript at 17-60]

26. If the single non-minority promotion were shifted to a minority, the AI shift of one or N + 1 analysis indicates "undefined" meaning a zero denominator indicating no adverse impact. [Exhibit 199; Silva's Testimony: Trial Transcript at 17-60]

27. None of the AI analyses conducted by Defendants' expert, Dr. Jacinto Silva, and the results thereof are statistically significant for the purposes of determining adverse impact. [Silva's Testimony: Trial Transcript at 17-60]

28. The P-value of all those analyses is the furthest from statistical significance as it

applies to Methuen. [Silva's Testimony: Trial Transcript at 17-60, 61]

29.     Based upon all AI analyses conducted by Defendants' expert, Dr. Jacinto Silva, there is no evidence whatsoever of adverse impact in Methuen for the sergeants promotional examinations for the years 2006 and 2008. [Exhibit 199; Silva's Testimony: Trial Transcript at 17-62]

### III.    Proposed Rulings of Law

1.      Under a Title VII disparate impact claim, three steps must be proven by the Plaintiffs. *Bradley v. City of Lynn*, 443 F. Supp.2d 145, 160 (D. Mass. 2006). The first step is that Plaintiffs must prove that the challenged employment practice has disparate impact. *Id.* If disparate impact is proven, then the defense must prove that such challenged employment practice was "job related and consistent with business necessity." *Id.* Finally, Plaintiffs must prove that another selection device would not have similar discriminatory effects. *Id.*

2.      In Massachusetts, it has been the general practice of the Supreme Judicial Court to apply federal case law regarding Title VII when interpreting analogous provisions of M.G.L. c. 151B. *See, MBTA v MCAD*, 450 Mass. 327, 337-338, 879 N.E.2d 36 (2008). Therefore, the legal analysis is the same for both Count I and Count II.

**A.    THE PLAINTIFFS HAS NOT ESTABLISHED A PRIMA FACIE CASE OF DISPARATE IMPACT DISCRIMINATION AGAINST METHUEN BECAUSE METHUEN'S USE OF THE 2006 AND 2008 HRD PROMOTIONAL EXAMINATIONS DID NOT HAVE AN ADVERSE IMPACT ON METHUEN MINORITIES.**

3.      Under Title VII of the Civil Rights Act of 1964, an employer cannot use "…any employment practice that has a disparate impact on the basis of race, color, religion, sex or national origin." 42 U.S.C. § 2000e-(k)(1)(A)(i); *Albermarle Paper Company v. Moody*, 422 U.S. 405 (1975). Methuen is an employer subject to Title VII prohibitions.

4.  In order to establish a prima facie case of discrimination, a plaintiff must (1) identify the challenged employment practice or policy; (2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. 42 U.S.C. § 2000e-(k)(1)(A)(i).

> "It is incumbent upon the plaintiff to demonstrate a prima facie case of discrimination. In the disparate impact milieu, the prima facie case consists of three elements: identification, impact, and causation. First, the plaintiff must identify the challenged employment practice or policy, and pinpoint the defendant's use of it. Second, the plaintiff must demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII. Third, the plaintiff must demonstrate a causal relationship between the identified practice and the disparate impact." *Bradley v. City of Lynn*, 443 F.Supp.2d 145 (D. Mass. 2006) Page 156.

5.  For the 2006 Sergeants' promotional exams the Methuen Police Department had twenty-three (23) test-takers four (4) of which were minorities, one (1) non-minority appointment was made. [Plaintiffs' Exhibit 84] For the 2008 sergeants' promotional exams Methuen had eighteen 18 test-takers three (3) of which were minorities, No appointments have been made. [Plaintiffs' Exhibit 84]

6.  The results of any and all statistical and factual analyses conducted by Plaintiffs' experts Drs. Joel Wiesen and Cassie Fields regarding Methuen demonstrated no statistical significance in average test scores, selection rates, passing rates and effective passing rates. [Wiesen Testimony: Trial Transcript at 5-82; Exhibits 53, 54 and 79] Further there is no statistically reliable evidence of a clear pattern of proportionally fewer minority sergeants in Methuen than minority residents living in that community. [Plaintiffs' Exhibit 53, p. 15]. The numbers were so small that the same lacked any statistical power to determine with any reasonable certainty that adverse impact occurred. Data that has no statistical significance is

unreliable. The appointment of one (1) Sergeant is too small a number to be statistically significant.

7.  Data that is not statistically significant is unreliable. There is no clear pattern or correlations. Thus there is no reliable statistical indication that the differences could not have arisen based on chance. [Wiesen Testimony, Trial Transcript, 5-75]

8.  Additionally and contrary to state-wide findings Methuen had minority test-takers pass both the 2006 and 2008 Sergeants' examination at higher rates than non-minorities (adverse impact ratios of 1.19 and 1.11, respectively) [Plaintiffs' Exhibit 79; Wiesen's testimony, Trial Transcript: 5-80, 81]. Further when queried by this Court regarding the Exhibit 79 [Table 2a] and the difference in average test scores and whether those differences are statistically significant in that they are likely or not the product of chance specifically as they related to Methuen showing an AI Average Test Score in 2006 of "0.2" and an AI in Average Test Score in 2008 of "5.9" Dr. Wiesen responded that the difference between the two results "is an indication that what we're seeing is just due to chance." [Wiesen's Testimony; Trial Transcript: 11-47, 48]

9.  Both of Plaintiffs experts agreed that given the lack of any statistically significant evidence, upon which the Plaintiffs primarily relied in their attempt to meet their burden, clearly showed no disparate or adverse impact on minorities in the Methuen Police Department. [Wiesen Testimony, Trial Transcript at 5-pp.75-83; Fields Testimony, Trial Testimony at 8-pp. 84-87]

10.  "The plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical

disparities must be sufficiently substantial that they raise such an inference of causation." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-995, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). See Wessmann v. Gittens, 160 F.3d 790, 804 (1st Cir. 1998) ("Even strong statistical correlation between variables does not automatically establish causation.") The 2nd Circuit has summarized "because statistical analysis, by its very nature, can never scientifically prove discrimination, a disparate impact plaintiff need not prove causation to a scientific degree of certainty. Accordingly this court has held that a plaintiff may establish a prima facie case of disparate impact discrimination by proffering statistical evidence, which reveal a disparity substantial enough to raise an inference of causation; i.e., A plaintiff's statistical evidence must reflect a disparate so great that it cannot be accomplished for by chance. *Bradley v. City of Lynn, supra pp.157-158 citing EEOC v. Joint Apprenticeship Committee of Joint Industry Bd. Of Elec. Industry, 186 F.3d 110, 117 (2d Cir. 1999).*

11. The crucial issue in this case is whether the Plaintiffs can demonstrate the existence of a disparate impact on the basis of race. The Plaintiffs have failed to offer any reliable statistical evidence or expert opinion that supports a finding that Methuen's promotional exams had an adverse impact on minorities. The plaintiffs have not provided any statistically reliable indicators that show minority applicants in Methuen were adversely affected by the use of both the 2006 and 2008 sergeant's promotional examinations had an adverse impact on minorities. [Wiesen's Testimony: Trial Transcript at: 5-82, 83]

12. The Plaintiffs stated case of adverse impact against Methuen consists of forty-four (44) lines in an otherwise voluminous trial transcript to date. That portion of the transcript consists of the testimony of Dr. Wiesen testifying that he conducted only two (2) adverse impact analyses of Methuen regarding test scores and selection rates and nothing more. [Wiesen Direct

Testimony at 2-115-117] The results of those analyses have been wholly refuted together with those analyses found in his Third Supplemental Report dated June 25, 2010 [Exhibit 53] as they relate to Methuen as being not statistically significant and therefore unreliable for the purposes of determining any disparate impact.

13. Plaintiffs' experts testified that there was no evidence of adverse impact in Methuen from 2006 and 2008, whether the applicable measure is the passing rate, effective passing rate, average test scores or selection rates. [Fields Testimony; Trial Transcript: 8-86]

14. The Plaintiffs have not identified any policy used by Methuen that produces adverse impact. If there is no disparate impact there is no causation and the Plaintiffs have failed to meet their burden.

**B. PLAINTIFFS' EVIDENCE BASED UPON AN ANALYSIS OF ADVERSE IMPACT AGGREGATED ACROSS MUNICIPALITIES IS INSUFFICIENT TO SUPPORT PLAINTIFFS' BURDEN OF PROOF TO SET FORTH A PRIMA FGACIE CASE OF DISPARATE IMPACT**

15. The challenged employment practices against Methuen are its use of examinations developed and administered by HRD. [Plaintiffs' Seventh Complaint at ¶¶ 73--79]. The burden on Plaintiff is to demonstrate that the challenged employment practices have a disparate impact on the rates of minority hiring within the employing unit. More particularly, as part of its prima facie case, Plaintiffs must show that the challenged employment practices <u>caused</u> the discriminatory impact that they seek to prove.

16. As to Methuen there was no adverse impact resulting from any analyses conducted by Plaintiffs' experts. However, aggregation of data across jurisdictions identified Methuen as having adverse impact. This conclusion is erroneous in the face of the established facts. Even if the one (1) appointment made by Methuen as a result of the 2008 examination

12

were a minority, aggregation of data would again erroneously show adverse impact. Thus the Plaintiffs had to aggregate statewide data to show adverse impact where none factually exists.

17. Dr. Wiesen's aggregated analysis of promotional rates statewide did not account for the fact that police officers do not compete across employers or jurisdictions. Methuen's use of these examinations is not a factor in any suggested statewide condition. Methuen's use of utilizing HRD's 2006 and the 2008 examination affect only the promotions of its own officers within the Methuen Police Department.

18. In *Bradley v. City of Lynn*, supra, plaintiffs brought a class action under Title VII against the Commonwealth of Massachusetts and the City of Lynn, alleging that the civil service examination for entry-level firefighters had a disparate impact on minorities. In that case, in determining whether disparate impact existed for the purpose of liability against the individual municipalities, the Court examined the data on a disaggregated city-by-city basis:

> " . . . [t]he Court finds that the statewide aggregated approach advocated by the plaintiffs and the disaggregated municipality approach advocated by the HRD are both useful in this case . . . The HRD argues that statistical evidence aggregated on a statewide basis is flawed because hiring decisions are made individually in each municipality at the local level and because a large municipality can distort the whole adverse impact analysis. Dr. Jacobs asserts that aggregation 'allows one single jurisdiction to have a major influence on the entire system leading to a conclusion of adverse impact for the entire Commonwealth when a single community is responsible for the outcome.' . . . Because this seems reasonable, the Court examines the disaggregated hiring data of Boston. The Court also examines the disaggregated hiring data of Lynn, the municipality of the four named plaintiffs. The data shows that the examination has a disparate impact on the hiring of minorities in both of these municipalities."

*Id* at 165.

19. Aggregation combines and divides applicants who are not competing with each other for the same positions as though they do; such aggregation of promotion rates creates erroneous conclusions. Further, unlike in *Bradley v. Lynn,* the entity responsible for the

13

statewide examination, the Commonwealth of Massachusetts, is no longer a party to this case. Thus, aggregation of minority selection rates has no bearing on the individual municipalities.

20. In the face of statistical evidence demonstrating no adverse impact, plaintiffs resorted to utilization of the "4/5$^{ths}$ Rule" provided in the Equal Employment Opportunity Commission's ("EEOC") Uniform Guidelines on Employee Selection Procedures. 29 C.F.R. § 1607.4 (D). If the Court were to hold individual municipalities liable based on what may be happening on a state-wide level, there would be no difference between the municipality that promotes all of its minority candidates and the municipality that may be promoting many candidates but where minority promotions fail the 4/5ths rule to a statistically significant degree. Such a conclusion would be fundamentally unfair and would be inconsistent with the prima facie case which requires the Plaintiff to prove causation. Plaintiffs' expert Dr. Cassie Fields testified that the incorporation of Methuen into aggregated test results would show adverse impact where none exists and would thus be an erroneous conclusion. [Fields Testimony; Trial Transcript: 8-87]

21. Plaintiff's attempts to assert statewide adverse impact statistics have no connection to Methuen which in no way contributed statistically to any statewide adverse impact. In Bradley, *supra,* the Court in determining whether disparate impacted existed for the purposes of liability against the individual municipalities by examining the disaggregated hiring data of those municipalities deeming that application to be "reasonable". In the instance matter it is clear that the individual defendant municipalities and state agencies do not compete with each other for promotions. Candidate from one jurisdiction is not eligible for hiring and promotion in another.

22.     The use of aggregated data to establish adverse impact to the individual defendants is misleading and unreasonable.

**C.    METHUEN CANNOT BE HELD LIABLE FOR FOLLOWING A STATE-WIDE TESTING REGIME THAT IS MANDATED BY M.G.L. c. 31 § 1 ET. SEQ. PURSUANT TO SAID STATUTE EXAMINATIONS WERE CREATED AND ADMINISTERED BY THE STATE FOR THE VERY PURPOSE OF SELECTING CANDIDATES FOR PROMOTION BASED UPON MERIT.**

23.     Methuen is an employer and therefore subject to Title VII's prohibitions. Title VII does not, however, make it unlawful for the Methuen to comply with the Commonwealth's state wide testing requirements at issue. Pursuant to M.G.L. c. 31 § 1 et seq., examinations were created and administered by the state for the very purpose of selecting candidates for promotion based upon merit.

24      In the present case, the HRD promotional examinations were conducted *outside of an employment context* and do not give rise to a cause of action under Title VII as that statute prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). Title VII thereby restricts employers' employment practices. As other courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement of testing requirements, in a non-employment capacity. *See, e.g.,* Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 578 (1st Cir. 2004) (noting "long line of cases" holding that testing authorities are not subject to Title VII).

25.     The dismissal of the Commonwealth from this matter does not negate the fact that Methuen neither developed nor administered the promotional examinations in question. Methuen was compelled to comply with the state law that requiring it hire from the certified lists promulgated by HRD. Methuen thus acted *only* as plaintiffs' employer, not as a testing body.  It

15

is a general principal that "where [a defendant] has no ability to prevent a certain effect due to its limited [legal] authority over the relevant actions, the [defendant] cannot be considered a relevant 'cause' of the effect," and thus ordinarily is not liable. *Department of Transp. v. Public Citizen,* 541 U.S. 752, 770 (2004).

26. Under M.G.L. c. 31, HRD is charged with the responsibility and authority to develop and administer competitive examinations that "fairly test the knowledge, skills and abilities which can be practically and reliably measured." *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993). M.G.L. c. 31, § 16 delegates the determination of the 'form, method and subject matter' of promotional examinations to the Administrator of the Human Resources Division.

27. At all relevant times hereto, Methuen was not in the position to determine whether Commonwealth-mandated HRD exams had any disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, are satisfied.

28. Methuen did not create or administer the HRD exams, and thus was not privy to the mechanics of their development. Methuen neither had any reason to know or determine whether the examinations in question had an impermissible disparate impact nor to believe its use of the same would have to be defended. Yet, Methuen is inexplicably and unfairly being held accountable for said use

29. Although Mass. Gen Laws. Ch. 31, § 11 provides for alternative testing methods there is no evidence of Methuen having and knowledge of adverse impact in its use of the examinations and thus there was neither a reason to implement such methods nor did the language of the statute obligate Methuen to do so absent such knowledge.

30. Regardless of the opinions of the experts regarding the validity of the HRD exams

which were made after review of HRD data that Methuen did not have and could not obtain outside of litigation, the fact is that Methuen had no reason to question the validity of the exams that were developed and administered by HRD. The Plaintiffs' experts as well as Defendants' experts agree that there was no disparate impact in Methuen when utilizing the HRD exams when aggregating the data from the results of the HRD exams in 2003, 2005 and 2007. Therefore, Methuen did not have a reason to seek out any alternative methods of testing for promotions to the position of sergeant.

31. Methuen cannot be held liable for following a state-wide testing regime that is mandated by M.G.L. c. 31, § 1 et seq. Pursuant to said statute, examinations were created and administered by the state for the very purpose of selecting candidates for promotion based upon merit.

32. In accordance with M.G.L. c. 31, § 1 et seq, Methuen acted lawfully when it utilized the HRD promotional exams. It has been the general practice by appointing authorities throughout Massachusetts to rely on the expertise of HRD and the exams created and administered by HRD. Courts must give deference to an administrative agency because of its expertise in the areas in which it oversees. *Massachusetts Association of Minority Law Enforcement Officers v. Abban*, 434 Mass. 256, 748 N.E. 2d 455 (2001).

33. Methuen utilized the HRD exams in good faith and reasonably relied on HRD's expertise in creating and administering such exams. *Massachusetts Association of Minority Law Enforcement Officers v. Abban*, 434 Mass. 256, 748 N.E. 2d 455 (2001).

34. Defendants' expert, James Outtz, Ph.D., opined that the HRD exams in question were valid.

17

35. Plaintiffs have failed to establish a prima facie case against Methuen in that they have not demonstrated a causal relationship between any identified practice of Methuen and a disparate impact in Methuen's hiring, the Plaintiffs can only do so by disaggregating the promotional data, and analyzing the data applicable to Methuen.

36. Plaintiffs have not met their of burden of proof in that there exists no evidence of adverse impact based on the selection rates of minorities compared to non-minorities, or based on any adverse impact measure.

**D,    CONCLUSION**

Plaintiffs have failed to establish a prima facie case against Methuen in that they have not demonstrated a causal relationship between any identified practice of Methuen and a disparate impact in Methuen's hiring, the Plaintiffs can only do so by disaggregating the promotional data, and analyzing the data applicable to Methuen.

Thus Plaintiffs have not met their of burden of proof in that there exists no evidence of adverse impact based on the selection rates of minorities compared to non-minorities, or based on any adverse impact measure.

Respectfully submitted
CITY METHUEN
By its attorney,

/s/ Peter J. McQuillan
Peter J. McQuillan, BBO#340180
City Solicitor
41 Pleasant Street, Room 311
Methuen, MA 01844
Tel: (978) 983-8575
Dated: October 29, 2010                Email: pjmcquillan@ci.methuen.ma.us