# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| PEDRO LOPEZ, et al., | ) |
| | ) |
| Plaintiffs | ) C. A. # 07-11693-GAO |
| | ) |
| v. | ) |
| | ) |
| CITY OF LAWRENCE, MASSACHUSETTS, | ) |
| et al., | ) |
| Defendants | ) |
| _____) | ) |

### MASSACHUSETTS BAY TRANSPORTATION AUTHORITY DEFENDANTS'
### PROPOSED FINDINGS OF FACT
### AND RULINGS OF LAW

Now come the Massachusetts Bay Transportation Authority ("MBTA") Defendants,[1]

and, pursuant to Fed. R. Civ. P. 52(a) and this Court's Order of September 17, 2010, respectfully

submit the following as the proposed findings of fact and rulings of law to be entered by this

Honorable Court after the evidence provided during the eighteen-day trial.

Two Plaintiffs,[2] Royline Lamb and Lynn Davis, allege that the utilization by the MBTA

Transit Police Department of the statewide civil service examinations in 2005 and 2007 for

promotion to the position of sergeant, which exams were created and administered by the

---

[1] The MBTA Defendants are Massachusetts Bay Transportation Authority; Daniel Grabauskas in his capacity as General Manager of the MBTA; and the Board of Trustees [truly, Directors] of the MBTA. For the sake of brevity and efficiency, throughout trial these Defendants have been referred to as the MBTA.

[2] The only Plaintiffs who are employed by the MBTA are Police Officers Royline Lamb and Lynn Davis. They appear, respectively, in paragraphs 41 and 42 of the Seventh Amended Complaint, Docket # 195, as filed on February 17, 2010.

Massachusetts Human Resources Division ("HRD"), had a disparate impact[3] against African-American and Hispanic minorities[4] when making promotions to the position of sergeant. Therefore, they allege, such utilization violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I) and M.G.L. c.151B, §4 (Count II).

The MBTA denies that there was disparate impact against minority police officers employed by the MBTA when it utilized the HRD exams at issue. In fact, the MBTA has proven by the evidence submitted at trial, and as addressed by the following proposed facts and proposed findings of law, that there was no disparate impact in any criteria analyzed by the Plaintiffs' and Defendants' experts when aggregating the data from HRD relevant to the MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007. Moreover, during the time that the MBTA utilized the HRD exams for 2003, 2005, and 2007, the number of minorities and the percentage of minorities who hold positions as sergeants within the MBTA Transit Police Department increased. Accordingly, Judgment should enter for the MBTA on both Counts.

## PROPOSED FINDS OF FACT

### *THE PARTIES*

1. The MBTA Defendants are Massachusetts Bay Transportation Authority ("MBTA"); Daniel Grabauskas, as General Manager of the MBTA; and the MBTA Board of Directors (Paragraphs 58, 59, and 60 of the Seventh Amended Complaint, Docket # 195). In this pleading, they are referred to collectively as the "MBTA".

---

[3] During trial testimony, the terms disparate impact and adverse impact have been used interchangeably.

[4] In this case, the term "minorities" refers only to Blacks and to Hispanics, *i.e.*, not to any other group commonly considered to be minority.(Tr. 17-28, line 12 to Tr. 17-29,line 4).

2.  Plaintiffs Royline Lamb and Lynn Davis are employed as police officers within the MBTA Transit Police Department and are the only Plaintiffs who are employed by the MBTA (Paragraphs 41 and 42 of the Seventh Amended Complaint, Docket # 195).

3.  In this case, the term "minority" includes only African-American and Hispanic individuals and not Asian or other individuals commonly considered to be minority. (Tr. 8-78, lines 6-19).

4.  Plaintiff Davis took the 2005 HRD exam for promotion to the position of sergeant, but she did not receive a passing score. She was informed that she did not pass the exam when the results were published by HRD several months after she took the exam. She did not take the 2007 HRD exam for promotion to sergeant. (Stipulation Between Plaintiffs and MBTA Defendants, Docket # 305).

5.  The MBTA utilizes the results from any particular HRD exam for two years and, thereafter, it utilizes the results of the newest HRD exam. Typically, the annual HRD exam for the promotion to sergeant is given on the third Saturday in October and the scores for the exam are released the following March. (Tr. 12-103, lines, 1-14).

6.  Plaintiff Lamb took both the 2005 and 2007 HRD exams for promotion to the position of sergeant, but he did not receive a passing score on either exam. (Stipulation Between Plaintiffs and MBTA Defendants, Docket # 305).

7.  On September 24, 2008, Plaintiff Davis and Plaintiff Lamb filed charges of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), pursuant to M.G. L., c.151B, §4. They alleged that the MBTA discriminated against them when it utilized HRD for the purpose of promoting police officers into the position of

sergeant because the HRD exams had a disparate impact against minorities. (Stipulation as to the date of MCAD complaint filings by All Plaintiffs, Docket # 266).

8. The MBTA raised the statute of limitations as an affirmative defense in its Answer to the Seventh Amended Complaint. (Docket # 265).

9. The MBTA was brought into this suit on or about January 7, 2009 when the Sixth Amended Complaint was allowed. (Docket # 110). It filed an Answer to the Sixth Amended Complaint on February 2, 2009 and raised the statute of limitations in said Answer as an affirmative defense. (Docket # 154).

*THE MBTA PROMOTIONAL PROCESS*

10. The MBTA Transit Police Department follows Massachusetts civil service law as defined in M.G.L. c.31, §1 et seq. (Tr. 12-102, lines 3-12). The MBTA relies on HRD to create and administer police promotional exams. (Tr. 12-101, line 13 to Tr. 12-102, line 25). MBTA police officers participate in the annual HRD statewide civil service exam for promotion to the position of sergeant within the MBTA. Prior to the exam, the MBTA posts an announcement in order to inform police officers of the opportunity to take the exam. (Tr. 12-102, lines 7-11, 18-25).

11. The MBTA utilizes such HRD exams every two years, in odd-numbered years. (Tr. 12-103, lines 1-3).

12. Only police officers within the MBTA Transit Police Department may compete for promotion to the position of sergeant within the MBTA Transit Police Department. (Tr. 17-28, line 17 to Tr. 17-29, line 4).

13. Those MBTA officers who take the HRD exam for promotion to the position of sergeant and who receive a passing score are placed by HRD on an "eligibility list" for promotion

within the MBTA in rank order by their score. M.G.L. c.31, §25 requires HRD to

prepare an eligible list of candidates "in the order of their marks on the examination

based upon which the list is established."

14. When selecting police officers for the rank of sergeant, the MBTA requests a

"certification list" from HRD. Pursuant to state statute, MBTA officers who are on the

eligibility list are placed on the certification list in rank order by their score on the HRD

exam using the 2N+1 formula. The "N" in that formula represents the number of

vacancies for the position of sergeant.  (Tr. 12-105, lines 23-25). If a score is reached

using the 2N +1 formula, then all officers who are tied with that score appear on the

certification list. A certification list may also contain the names of officers within the

MBTA who had successfully appealed a "bypass" for a promotion. A bypass occurs

when an officer with a lower score on the HRD exam is promoted to the position of

sergeant and the officer with a higher score on the HRD exam appeals to HRD, initially,

and then to the Massachusetts Civil Service Commission, and, ultimately, may appeal to

the state courts. Such an appeal is based upon the argument that the MBTA somehow

violated the basic merit principals of M.G.L. c.31, §1 et seq. when selecting the officer

with the lower score on the HRD exam for promotion to sergeant. An officer who is

successful in a bypass appeal may be added to the top of the next certification list by

HRD as a remedy for the MBTA violation of basic merit principles (Tr. 12-101, line 24

through Tr. 12-102, line 17) and (Tr. 12-103, lines 15-21).

15. The MBTA does not hire in rank order from a certification list. (Tr. 12-105, line 23

through Tr. 12-106, line 2). Rather, all officers who appear on a certification list are

deemed by the MBTA to be on equal footing. Within the MBTA, each officer on the

certification list is interviewed in a structured oral board process (that is, all officers are separately interviewed by a three-person panel of superior officers and all are asked identical questions and receive scores for their answers). Each officer on the certification list also receives scores from superior officers who supervised them regarding their evaluation of that officer in several supervisory skills. A weighted combination of the score from the structured oral board and the score received from the supervisors determines the final score for each officer. The MBTA uses the rank order of the final score to promote officers to the position of sergeant. (Tr. 12-101, lines 16-20) and (Tr. 103, line 22 to Tr. 12-106, line 2).

16. The score given to each officer is determined solely on that officer's performance and the score is not affected by that officer's race, ethnicity, or ability to speak a second language. (Tr. 12-127, line 21 to Tr. 12-130, line 3).

17. Pursuant to M.G.L. c.31, §1 et seq., Massachusetts utilizes a merit based civil service promotional system. *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993).

18. The HRD exams for the promotion to the position of sergeant were written multiple choice exams. According to the Plaintiffs' expert, Joel Wiesen, Ph. D, (hereinafter "Wiesen"), multiple choice exams are *"either the best or one of the best predictors of future job performance."* (Tr. 3-125, line 21 to Tr. 3-126, line 6).

*THERE WAS NO ADVERSE IMPACT*
*AGAINST MINORITIES*
*OCCASSIONED BY THE MBTA'S UTILIZATION OF HRD EXAMS*

19. The number of minorities within the rank of sergeant in the MBTA Transit Police Department increased from five (5) minority sergeants out of a total of twenty (20)

sergeants on December 31, 2003, to eleven (11) minority sergeants out of a total of thirty-three (33) sergeants on December 31, 2009. (Exhibit 149) (Tr. 10-113, line 6 to Tr. 10-115, line 4) (Tr. 12-109, line 11 to Tr. 12-110, line 19).

20. The percentage of minorities within the rank of sergeant in the MBTA Transit Police Department increased from 25% minority on December 31, 2003 to 33% minority on December 31, 2009. (Exhibit 149) (Tr. 10-113, line 6 to Tr. 10-115, line 4) (Tr. 12-109, line 11 to Tr. 12-110, line 19).

21. In 2004, the MBTA Transit Police Department reorganized its patrol plan and this reorganization caused the number of sergeant positions to increase from twenty (20) to thirty-two (32). Most of the promotions made in 2004 were from the HRD exam in 2003. (Exhibit 149) (Tr. 12-123, line 9 to Tr. 12-124, line 4).

22. Data from HRD relevant to the exam results of MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007 were gathered and analyzed by Wiesen and demonstrates that when aggregating the data for the MBTA officers who took the HRD exams in 2003, 2005, and 2007 for the promotion to the position of sergeant, there was no adverse impact in the promotional rates, passing rates, or average test scores of minorities within the MBTA. (Exhibit 79, Table 2c) (Tr. 8-76, lines 23-25; Tr. 8-77, lines 1-6) (Tr. 17-53, lines 4-10; Tr. 17-55, line 3 to Tr. 17-57, line 16).

23. Plaintiffs' expert, Cassie Fields, Ph.D. (hereinafter "Fields"), likewise analyzed the data from HRD relevant to the exam results for MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007. She testified, in regards to Table 2c of Exhibit 79, that the number ".95" in the column for the MBTA identified as *Adverse*

*Impact for Promotions* signified that there was no adverse impact against minorities in the promotions from the exams. (Tr. 8-77, lines 1-6).

24. Fields, likewise, analyzed the data from HRD relevant to the exam results for MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007. She testified, in regards to Table 2c of Exhibit 79, that the number ".83" in the column for the MBTA identified as *Adverse Impact in Passing Rates* signified that there was no adverse impact in the passing rates from the exams. (Tr. 8-77, lines 20-25).

25. Fields, likewise, analyzed the data from HRD relevant to the exam results for MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007. She testified, in regards to Table 2c of Exhibit 79, that the "2.0 points" in the column for the MBTA identified as *Adverse Impact In Average Exam Scores* did not connote a meaningful exam score difference between minorities and non-minorities. (Tr. 8-78, lines 1-5).

26. Wiesen testified that, if the information regarding promotions contained in Exhibit 149, which was marked for identification at the time of questioning, was accurate, then the results for minority promotions to sergeant at the MBTA from 2003 through 2009 not only had no adverse impact, but also were commendable when taking into consideration the constraints imposed by the merit based promotional process of M.G.L. c.31, §1 et seq. (Tr. 10-115, lines 5-11).

27. During the years 2003 through 2009, the MBTA did not have information or knowledge of the HRD data containing the test results for MBTA officers who took the HRD exams in 2003, 2005, and 2007 regarding the promotional rates, the average exam score, the pass/fail rates, and the point differential between minorities and non-minorities.

(Tr. 10-110, lines 5-25 to 10-111, lines 1-7 and 12-108, lines 13-23). The MBTA only knew who was on the certification list and who it promoted. (Tr. 10-111).

28. During the years 2003 through 2009, the MBTA did not have information or knowledge of the HRD data containing the test results for officers from other municipalities who took the HRD exams in 2003 through 2009 regarding the promotional rates, the average exam score, the pass/fail rates, and the point differential between minorities and non-minorities within those jurisdictions. (Tr. 10-110, lines 5-25 to 10-111, lines 1-7 and 12-108, lines 13-23).

29. On direct examination, Wiesen opined that there was a likelihood of disparate impact against minorities in the promotions to sergeant in the future within the MBTA if it continued to utilize HRD exams. However, when he gave this opinion, he inaccurately made the assumption that the MBTA had followed the pattern of adverse impact against minorities in HRD exams for promotion to sergeant from 2003 through 2008 that exists when aggregating data statewide, across jurisdiction, as found in Exhibit 79. He also relied upon data for MBTA officers who took the HRD exams in 2005 and 2007 that are found in Exhibit 53. He acknowledged that such data from the 2005 and 2007 exams were not statistically significant. (Tr. 2-114, lines 7-23). By "not statistically significant," the experts mean that the number sample is too small to determine whether something occurred by chance. (Tr. 10-47, lines 1-5) He admitted that when aggregating *the data for MBTA officers who took the HRD exams in 2003, 2005, and 2007* as demonstrated by Exhibit 79, the MBTA did not follow the pattern shown when aggregating the data statewide across jurisdictions for the same time period. (Tr. 8-82, lines 14-18).

30. Defendants' expert, Jacinto Silva, Ph.D. (hereinafter "Silva") testified that the data for the MBTA officers who took the HRD exams in 2005 and 2007 are not statistically significant when determining adverse impact. (Tr. 17-54, lines 24-25 to 17-55, lines 1-2).

31. Silva testified that "there is no indication of adverse impact" when reviewing the data for MBTA officers who took the HRD exams in 2003, 2005, and 2007 that are in Exhibit 79. (Tr. 17-53, lines 4-10).

32. On cross-examination, both Wiesen and Fields testified that, unlike the statewide pattern of adverse impact against minorities that is shown when aggregating data across jurisdictions and across years, as demonstrated in Exhibit No. 79, there was no adverse impact against minorities in any categories *when applied to the MBTA* for the aggregated data from the 2003, 2005, and 2007 exams as demonstrated in Exhibit 79, Table 2c. (Tr. 10-86, lines 18-25 to 10-87, line 1; 8-77, lines 1-25 to 8-78, lines 1-5).

33. Wiesen testified that when analyzing data in regards to the question of whether there is adverse impact against minorities within the MBTA when making promotions to sergeant, the best approach is to analyze the aggregated data contained in Table 2c of Exhibit 79 (which contains data from three test years), rather than the data contained in Exhibit 53 (which contains data from two test years) because there is more "reliability" in making an analysis when depending on three exams, rather than two exams. (Tr. 10-109, lines 21-25).

34. The data contained in the tables of Exhibit 53 demonstrate that no minority officers were promoted into the position of sergeant from the 2005 and 2007 exams. However, because of successful bypass appeals, at least one minority sergeant was hired from a certification list stemming from the 2007 HRD exam. As such, the data contained in the tables of

Exhibit 53 are not an accurate reflection of actual minority promotions at the MBTA during the years 2005 through 2009. (Tr. 10-106, lines 13-19; Tr. 10-107, lines 12-20).

35. Silva testified that the data from HRD relevant to the exam results for MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007 contained in Exhibit 79 differ in all respects from the HRD statewide data aggregated across jurisdictions from 2003 to 2008 that are contained in Exhibit 79. (Tr. 17-56, lines 12-15).

36. Silva testified that Wiesen's opinion that the MBTA would follow the statewide pattern of adverse impact was flawed because Wiesen's own data in Exhibit 79, Table 2c, show that the MBTA had no adverse impact in any of the categories used in Table 2c and, therefore, the MBTA did not follow the statewide pattern of adverse impact. (Tr. 17-57, lines 18-25 to 17-58, lines 1-5; 18-55, line 25 to 18-56, lines 1-8).

37. Silva testified that, when subtracting the two Asian test takers from the HRD data relevant to the exam results for MBTA officers who took the exams for promotion to sergeant in 2003, 2005, and 2007 contained in Exhibit # 79, then the ".95" increases to approximately "1" or greater. "1" means that there was no difference in the exam results of minorities and whites.

38. Wiesen testified that reaching a "1" means that there is no difference between the exam results for minorities and the exam results for non-minorities and described "1" as perfect equity. (Tr. 2-84, lines 8-22).

## PROPOSED RULINGS OF LAW

### *LEGAL ANALYSIS*

39. Under a Title VII disparate impact claim, three steps must be proven by the Plaintiffs. *Bradley v. City of Lynn*, 443 F. Supp.2d 145, 160 (D. Mass. 2006). The first step is that

Plaintiffs must prove that the challenged employment practice has disparate impact. *Id.* If disparate impact is proven, then the defense must prove that such challenged employment practice was "job related and consistent with business necessity." *Id.* Finally, Plaintiffs must prove that another selection device would not have similar discriminatory effects. *Id.*

40. In Massachusetts, it has been the general practice of the Supreme Judicial Court to apply federal case law regarding Title VII when interpreting analogous provisions of M.G.L. c.151B. *See, MBTA v. MCAD*, 450 Mass. 327, 337-338, 879 N.E.2d 36 (2008). Therefore, the legal analysis is the same for both Count I and Count II.

## *THERE WAS NO DISPARATE IMPACT*

41. Plaintiffs have not proven, by a preponderance of the evidence, that the MBTA's utilization of the statewide civil service examinations in 2003, 2005 and 2007 for promotion to the position of sergeant that were created and administered by HRD had a disparate impact against minority MBTA officers when the MBTA made promotions to the position of sergeant. Therefore, pursuant to *Bradley, supra*, at 160, the Plaintiffs' claims against the MBTA fail at the first step of the analysis and *Judgment* in favor of the MBTA must be entered.

42. In order to determine whether there is adverse impact occurring with any given selection system, courts generally use the four-fifths rule. (Tr. 2-72, line 18 to Tr. 2-73, line 1). If the resulting ratio is less than ".80," then such a result indicates that the challenged employment practice has an adverse impact. A resulting ratio of "1 over 1" is considered by Wiesen to be "perfect equity." (Tr. 2-84, line 15).

43. The MBTA did not have adverse impact in any criteria used by the experts when analyzing the HRD data concerning MBTA officers who took the HRD exam for the promotion to the position of sergeant when aggregating data from the 2003, 2005, and 2007 HRD exams. In all criteria analyzed by the experts, the numbers were above ".80". (Exhibit 79). (Tr. 17-53, line 4 to Tr. 17-57, line 16).

*THE UTILIZATION OF HRD EXAMS*
*FOR PROMOTION TO SERGEANT BY THE MBTA*
*WAS A BUSINESS NESSISITY*

44. It is consistent with business necessity that the MBTA utilize the examinations developed by HRD. Under M.G.L. c.31, HRD is charged with the responsibility and authority to develop examinations that "fairly test the knowledge, skills and abilities which can be practically and reliably measured." *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993). M.G.L. c.31, §16 delegates the determination of the 'form, method and subject matter' of promotional examinations to the Administrator of the Human Resources Division. *Id.* The Administrator is the skilled professional who is authorized to decide technical matters such as scoring and interpreting the examinations. *Id.; see, Lopez v. Commonwealth of Massachusetts,* 588 F. 3d 69, 73-81 (1st Cir. 2009).

45. The MBTA cannot be held liable for following a statewide testing regime that is mandated by M.G.L. c.31, §1 et seq. Pursuant to said statute, examinations were created and administered by the state for the very purpose of selecting candidates for promotion based upon merit. *Boston Police Superior Officers Federation v. Civil Service Commission*, 35 Mass. App. Ct. 688, 692 (1993).

46. In accordance with M.G.L. c.31, §1 et seq., the MBTA acted lawfully when it utilized the HRD promotional exams. It has been the general practice of appointing authorities throughout Massachusetts to rely on the expertise of HRD and the exams created and administered by HRD. Courts must give deference to an administrative agency because of its expertise in the areas in which it oversees. *Massachusetts Association of Minority Law Enforcement Officers v. Abban*, 434 Mass. 256, 748 N.E. 2d 455 (2001).

47. The MBTA utilized the HRD exams in good faith and reasonably relied on HRD's expertise in creating and administering such exams. *Massachusetts Association of Minority Law Enforcement Officers v. Abban*, 434 Mass. 256, 748 N.E. 2d 455 (2001).

48. Defendants' expert, James Outtz, Ph.D., opined that the HRD exams at issue were valid. (Tr. 15-34, line 4 to Tr. 15-35, line 17).

*THE MBTA HAD NO REASON TO SEEK ALTERNATIVES*
*TO UTILIZING THE HRD STATEWIDE EXAMS*
*WHEN MAKING PROMOTIONS TO SERGEANT*

49. Regardless of the opinions of the experts regarding the validity of the HRD exams which were made after review of HRD data concerning the promotional rates, the average exam score, the pass/fail rates, and the point differential between minorities and non-minorities, which data the MBTA did not have and could not obtain outside of litigation, the fact is that the MBTA had no reason to question the validity of the exams that were developed and administered by HRD. The Plaintiffs' experts as well as Defendants' experts agree that there was no disparate impact at the MBTA when utilizing the HRD exams when aggregating the data from the results of the HRD exams in 2003, 2005, and 2007. Therefore, the MBTA did not have a reason to seek out any alternative methods of testing for promotions to the position of sergeant.

50. The MBTA had no reason to seek alternatives to utilization of HRD exams because there was no adverse impact. There was virtually no difference between the test results of minority MBTA officers and non-minority MBTA officers, especially when deleting from the HRD data the results of the two Asian MBTA officers who were promoted to sergeant. (Tr. 17-52, lines 1-21). Accordingly, the third element in the disparate impact analysis, as articulated in *Bradley, supra,* at 160, simply does not apply to the MBTA.

## THERE IS NO CAUSE OF ACTION FOR AN EMPLOYER WHO FOLLOWS A STATEWIDE EXAMINATION REGIME

51. The Defendants are employers and therefore subject to Title VII's prohibitions. However, Title VII does not make it unlawful for the MBTA to comply with the Commonwealth's statewide exam requirements at issue. This issue was argued and briefed in the *Defendants' Motion to Dismiss for Lack of Jurisdiction and Defendants' Motion for Judgment on the Pleadings* (Docket # 198), *Defendants' Memorandum in Support* (Docket # 199), *Defendants' Motion to Dismiss pursuant to Rule 12 (b)(6)* (Docket # 248), and the *MBTA's Motion for a Directed Verdict Pursuant to Rule 52(c)* (Docket # 277). Accordingly, the MBTA incorporates that argument by reference rather than repeat the argument.

## PLAINTIFFS DAVIS AND LAMB HAVE NO STANDING TO BRING THIS ACTION AGAINST THE MBTA

52. Plaintiffs Davis and Lamb do not have standing to bring this action because the injuries that they allege to have suffered were caused by third parties (*i.e.*, the dismissed state actors, including HRD) not before this Court and because in this case there can be no redressability for the alleged injuries without HRD being before this Court. *See genl.*,

15

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). This issue was addressed and briefed in the *Defendants' Motion to Dismiss for Lack of Jurisdiction and Defendants' Motion for Judgment on the Pleadings* (Docket # 198), *Defendants' Memorandum in Support* (Docket # 199), and the *Defendants' Motion to Dismiss pursuant to Rule 12 (b)(6)* (Docket # 248). Accordingly, the MBTA incorporates that argument by reference rather than repeat the argument.

### PLAINTIFF DAVIS IS BARRED FROM BRINGING THIS CLAIM BY THE STATUTE OF LIMITATIONS

53. Plaintiff Davis took the 2005 HRD exam for promotion to the position of sergeant, but she did not receive a passing score. She was informed that she did not pass the exam when the results were published by HRD several months after she took the exam. The annual HRD exam for promotion to the position of sergeant was given on the third Saturday in October 2005 and the scores for the exam were released the following March 2006.

54. Plaintiff Davis knew or should have known that she did not pass the HRD exam in approximately March 2006. The applicable statute of limitations for filing a charge of discrimination at the MCAD is three-hundred days from the discriminatory act. M.G.L. c.151B, §5. She did not take the 2007 HRD exam for promotion to sergeant. (Stipulation Between Plaintiffs and MBTA Defendants, Docket # 305). Therefore, she did not file her claim within the applicable statute of limitations and she must be dismissed from this suit for that reason alone. *Allston v. Comm. of Mass.*, 661 F. Supp. 2d 117 (D. Mass. 2009) [the court notes that there is also a three-hundred day requirement for filing Title VII actions, citing 29 C.F.R. §1601.13(b) (1)].

*PLAINTIFF LAMB IS BARRED FROM BRINGING A CLAIM*
*RELATING TO THE 2005 HRD EXAM*
*BY THE STATUTE OF LIMITATIONS*

55. Plaintiff Lamb took the 2005 HRD exam for promotion to the position of sergeant, but he did not receive a passing score. (Stipulation Between Plaintiffs and MBTA Defendants, Docket # 305). He, likewise, knew or should have known that he did not pass the HRD exam in approximately March 2006. The applicable statute of limitations for filing a charge of discrimination at the MCAD is three-hundred days from the discriminatory act. M.G.L. c.151B, §5. Therefore, he did not file his claim within the applicable statute of limitations and his claim regarding that exam must be dismissed from this suit for that reason alone.

## CONCLUSION

For all of the foregoing reasons, Judgment should enter in favor of the MBTA on both Counts.

Respectfully submitted
for the MBTA Defendants
by their attorney,

/s/ Kevin S. McDermott
Kevin S. McDermott, BBO#544513
Assistant General Counsel
Meghan Ventrella and
Whitney Eng, *on brief*
MBTA Law Department
Ten Park Plaza, Suite 7760
Boston, MA 02116
Tel, (617) 222-4756
Email, kmcdermott@mbta.com

Dated, October 29, 2010

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2010 this document was filed through the ECF system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kevin S. McDermott