UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,  )   Case No. 07-11693-GAO
        Plaintiffs,  )
)
v.  )
)
CITY OF LAWRENCE,  )
MASSACHUSETTS, et al.,  )
        Defendants  )
)

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS
OF LAW OF DEFENDANTS CITY OF LAWRENCE
AND MAYOR WILIAM LANTIGUA**

Pursuant to Fed. R. Civ. P. 52(a), and this Court's order entered September 17, 2010, Defendants City of Lawrence and Mayor William Lantigua ("Lawrence") submit their Proposed Findings of Fact and Conclusions of Law:

I. **Introduction**

The Plaintiffs to this action are police officers in the cities of Boston, Lawrence, Lowell, Methuen, Springfield and Worcester, and at the Massachusetts Bay Transportation Authority. By a complaint and seven (7) amended complaints filed between September 11, 2007 and July 1, 2010 (Docket Nos. 1-235), Plaintiffs allege that the promotional procedures for the position of police sergeant, as administered by the Human Resources Division of the Commonwealth of Massachusetts ("HRD") in 2005, 2006, 2007 and 2008, had an unlawful disparate impact on African-American and Hispanic police officers, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and Massachusetts General Laws Chapter 151B ("Chapter 151B"). Lawrence, and all other defendants, deny that the promotional procedures for the years at issue violated either statute.

1

By order entered on June 9, 2008 (Docket No. 87), this Court (Tauro, J.) ordered that the action "be bifurcated into: (1) a declaratory relief stage regarding liability; and, if necessary, (2) a remedial stage," and that "Plaintiffs' Motion for Class Certification [be] denied as to the liability stage and denied without prejudice as to the potential remedial stage."

The Lawrence Plaintiffs are Pedro J. Lopez, Richard Brooks and Kevin Sledge (hereinafter the "Plaintiffs"). Subsequent to the filing of this action, Plaintiff Kevin Sledge was terminated from his position with the Lawrence Police Department.

When Plaintiffs originally filed this action, the Defendants included HRD and Paul Dietl, in his capacity as Personnel Administrator for the Commonwealth of Massachusetts. On January 26, 2009, the State Defendants filed a motion to dismiss and/or for summary judgment (Docket No. 142), arguing, inter alia, that they were immune from suit under Title VII pursuant to the 11th Amendment to the U.S. Constitution, because HRD did not employ Plaintiffs within the meaning of Title VII. After the District Court (Tauro, J.) denied the State Defendants' motion on April 6, 2009 (Docket No. 168), the State Defendants filed a notice of appeal from that part of the District Court's order denying their motion to dismiss under the 11th Amendment (Docket No. 174). On May 13, 2009, Judge Tauro stayed proceedings in this Court until 30 days after the mandate issued from the State Defendants' appeal. (See Docket No. 181). In an opinion issued on December 3, 2009, the U.S. Court of Appeals for the First Circuit reversed the denial of the State Defendants' motion to dismiss, and remanded the action for the entry of an order dismissing the State Defendants under Title VII. See Lopez v. Commonwealth of Massachusetts, 588 F. 3d 69 (1st Cir. 2009).

In their motion to dismiss and/or for summary judgment filed in this Court, the State Defendants also sought dismissal of Plaintiffs' claim under Chapter 151B. Plaintiffs and the State Defendants subsequently agreed to dismissal of the claim under Chapter 151B, without prejudice. Plaintiffs re-filed their Chapter 151B claim in Suffolk County Superior Court, Civil Action No.

SUCV 2009-00576, Lopez v. Massachusetts (see Plaintiffs' Reply to Defendants-Appellants' Opposition to Motion to Dismiss Appeal, filed 6/5/09 in U.S. Court of Appeals for 1st Circuit, at 4 n. 1). The State Defendants have filed a motion to dismiss the state court complaint. After a hearing on July 29, 2010, the motion is currently under advisement. (Docket No. 32, Suffolk County Superior Court, Civil Action No. SUCV 2009-00576).

## II. Proposed Findings of Fact

### A. Civil Service Rules Extensively Regulate The Promotion Of Police Sergeants.

1. Lawrence is a "civil service" community, in that it has accepted the applicability of the civil service laws and rules of the Commonwealth of Massachusetts. (See Mass. General Laws. Chapter 31, §§1, 3-55).

2. The purpose of the civil service system is "to guard against political considerations, favoritism and bias in governmental employment decisions." (Town of Falmouth v. Civil Service Commission, 447 Mass. 814, 824, 857 N.E. 2d 1052, 1059 (2006)).

3. Underlying the civil service system is the concept of "basic merit principles," the definition of which includes "recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills." (See Mass. General Laws. Chapter 31, §1).

4. Under Chapter 31, "appointing authori[ties]" (defined in Mass. General Laws, Chapter 31, §1) must make personnel decisions free of "overtones of political control or objectives unrelated to merit standards or neutrally applied public policy." See Town of Falmouth v. Civil Service Commission, 61 Mass. App. Ct. 794, 800, 814 N.E. 2d 735, 739 (2004).

5. In a civil service community, "promotional appointments in police forces shall be made only after competitive examinations," with exceptions not applicable. See Mass. General Laws, Chapter 31, §59.

6. The Personnel Administrator of HRD is located within the Executive Office for Administration and Finance, and is responsible for, inter alia, "conduct[ing] examinations for

3

purposes of establishing eligible lists." See Mass. General Laws, Chapter 31, §5(e).

7. Under Personnel Administration Rules ("PAR.") prepared by HRD's Office of Legal Counsel, "[a]ll selection procedures shall be practical in character and shall relate directly to those matters which fairly determine the relative rankings of the persons examined based on the knowledge, abilities and skills required to perform the primary duties (actual and frequent tasks) of the position, title or occupational group as determined by reliable and representative job information available to the administrator." (PAR. 06(2)(a), available at http://www.mass.gov/Eoaf/docs/hrd/cs/publications/personneladministratorrulesforonline.doc, accessed 9/21/10).

8. Massachusetts General Laws Chapter 31, Section 22 provides that "[i]n any competitive examination, an applicant shall be given credit for employment or experience in the position for which the examination is held."

9. After marking and grading examinations, HRD prepares eligible lists of candidates. (PAR. 07).

10. Mass. General Laws Chapter 31, Section 25, requires HRD to prepare an eligible list of candidates "in the order of their marks on the examination based upon which the list is established." Consistent with the statute, when an appointing authority seeks to fill a position, HRD's Personnel Administrator "shall, if a suitable eligible list exists, certify the names starting highest on such list in order of their places on such list, except as otherwise provided by law or civil service rules." (PAR. 08(1); see Mass. General Laws, Chapter 31, §7).

11. "The passing mark for each examination shall be established by the administrator in accordance with generally accepted selection procedures." (PAR. 06(3)).

12. "When names have been certified to an appointing authority under PAR. 08 and the number of promotional appointees actually to be made is $n$, the appointing authority may appoint only from among the first $2n+1$ persons named in the certification willing to accept appointment."

4

(PAR. 09(1); see Mass. General Laws, Chapter 31, §§7, 27). "Thus, if a city needs to fill one sergeant slot it gets back from HRD a list of the three highest scoring candidates on the eligibility list." (Pratt v. Dietl, SUCV No. 2009-01254, Memorandum of Decision and Order on the Plaintiffs' Motion for Preliminary Injunction, at 2 (Exhibit A hereto)).

13. "If an appointing authority makes [a]...promotional appointment from a certification of any qualified person other than the qualified person whose names appear highest, and the person whose name is highest is willing to accept such appointment, the appointing authority shall immediately file with the [personnel] administrator a written statement of his reasons for appointing the person whose name was not highest." (Mass. General Laws, Chapter 31, §27; see also PAR. 08(4), (5); PAR 09 (2)).

14. Applicants who are bypassed, i.e., not selected despite having a higher rank than another applicant, can appeal to the Civil Service Commission, which must decide "whether the Appointing Authority has sustained its burden of proving that there was reasonable justification for the action taken by the appointing authority." See City of Cambridge v. Civil Service Commission, 43 Mass. App. Ct. 300, 304, 682 N.E. 2d 923, 925, rev. denied, 426 Mass. 1102, (1997).

A jury-waived trial of the within action was held on July 12-16, 20-23, 26-29, and September 13-17, 2010. As to Lawrence the Plaintiff's witnesses were Plaintiff Pedro J. Lopez, a Lawrence Police Patrolman Joel Wiesen, Ph.D., an industrial organizational psychologist and HRD's Chief of Test Development and Validation between 1977 and 1993 (expert witness); Cassi Fields, Ph.D., an industrial organizational psychologist (expert witness).

The witnesses for Lawrence were James L. Outtz, Ph.D., an industrial organizational psychologist (expert witness); and Jacinto Silva, Ph.D., a senior managing consultant for EB Jacobs (expert witness).

15. Promotional examinations administered by HRD include an education and experience component, which "shall be based on a schedule approved by the administrator which shall include credits for elements of training and experiences related to the position for which the examination is held." (PAR 06(1)(b); Mass. General Laws Chapter 31, §22).

16. Candidates may appeal to HRD numerous issues pertaining to an examination, including "whether an examination…was a fair test of the applicant's fitness actually to perform the primary or dominant duties of the position for which the examination was held…" (Mass. General Laws Chapter 31, §22).

17. Chapter 31 provides preferences for certain groups, such as military veterans and children of police officers who died in the line of duty. See Quinn v. City of Boston, 325 F. 3d 18, 25 (1st Cir. 2003), citing Mass. General Laws, Chapter 31, §§26, 40.

18. Municipalities may elect to use the examination prepared annually by HRD, or may conduct their own sergeant promotional examination pursuant to a delegation agreement between HRD and the municipality. (See Mass. General Laws, Chapter 31, §§9-11; Trial Exhibit Nos. 2, 151).

19. According to the Plaintiffs' expert, Joel Weisen, Ph. D, (hereinafter "Weisen"), multiple choice exams are *"either the best or one of the best predictors of future job performance."* (Transcript, p. 3-125: line 21 to p. 3-126: line 6).

20. For the 2006 sergeants promotional exams the Lawrence Police Department had forty-seven (47) test-takers, ten (10) of which were minorities. Four (4) non-minority appointments were made. [Plaintiffs' Exhibit 84; Table A1].

21. For the 2008 sergeants' promotional exams the Lawrence Police Department had forty-two (42) test-takers, fifteen (15) of which were minorities. There was one (1) appointment made. [Plaintiffs' Exhibit 84; Table B1].

22. Data that is not statistically significant is unreliable and the result of any analyses

6

predicated upon the same is likely to have occurred due to chance. Such data, that is not statistically significant, shows no clear pattern. [Wiesen Testimony: Trial Transcript at 5-75; 10-115; 11-47,48].

23. There are no statistically reliable indicators that show minority applicants in Lawrence were adversely affected by the use of 2008 sergeant promotional exam. [Wiesen Testimony: Trial Transcript at 2-104].

24. The results of the adverse impact analysis by the plaintiff's expert on average test score differences in Lawrence, for the 2008 sergeants' promotional examination was not statistically significant. [Plaintiffs' Exhibit 53, p.9.]

25. The results of the adverse impact analysis by the Plaintiffs' expert, regarding the promotion rates in the City of Lawrence in both the 2006 and 2008 sergeants' Promotional Examinations were not statistically significant. [Plaintiffs' Exhibit 53, Table 2a.; p9;].

26. The results of the adverse impact analysis by the Plaintiffs' expert of the effective passing rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examination were not statistically significant. [Plaintiffs' Exhibit 53; Table 2a; p.9].

27. The results of the adverse impact analysis by the Plaintiffs' expert for the pass/fail rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examinations were not statistically significant. [Wiesen Testimony: Trial Transcript at 2-104; Plaintiffs' Exhibit 53, p.16.

28. For the 2006 sergeants promotional exams the Lawrence Police Department had forty-seven (47) test-takers, ten (10) of which were minorities. Four (4) non-minority appointments were made. [Plaintiffs' Exhibit 84; Table A1].

29. For the 2008 sergeants' promotional exams the Lawrence Police Department had forty-two (42) test-takers, fifteen (15) of which were minorities. There was one (1) appointment made. [Plaintiffs' Exhibit 84; Table B1].

30. Data that is not statistically significant is unreliable and the result of any analyses predicated upon the same is likely to have occurred due to chance. Such data, that is not statistically significant, shows no clear pattern. [Wiesen Testimony: Trial Transcript at 5-75; 10-115; 11-47,48].

31. There are no statistically reliable indicators that show minority applicants in Lawrence were adversely affected by the use of 2008 sergeant promotional exam. [Wiesen Testimony: Trial Transcript at 2-104].

32. The results of the adverse impact analysis by the plaintiff's expert on average test score differences in Lawrence, for the 2008 sergeants' promotional examination was not statistically significant. [Plaintiffs' Exhibit 53, p.9.]

33. The results of the adverse impact analysis by the Plaintiffs' expert, regarding the promotion rates in the City of Lawrence in both the 2006 and 2008 sergeants' Promotional Examinations were not statistically significant. [Plaintiffs' Exhibit 53, Table 2a.; p9;].

34. The results of the adverse impact analysis by the Plaintiffs' expert of the effective passing rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examination were not statistically significant. [Plaintiffs' Exhibit 53; Table 2a; p.9].

35. The results of the adverse impact analysis by the Plaintiffs' expert for the pass/fail rates in the City of Lawrence in both the 2006 and 2008 sergeants' promotional examinations were not statistically significant. [*Wiesen Testimony: Trial Transcript at 2-104; Plaintiffs' Exhibit 53, p. 16*].

36. Lawrence has appointed one (1) Sergeant from the list generated from the 2008 Sergeants' promotional examination. The Sergeant promoted was a non-minority. The appointment of one (1) Sergeant is too small a number to be statistically significant. (See Questions and Answers on the Federal Executive Agency Guidelines On Employee Selection Procedures, 44 Fed. Reg. 11,996 (1979), Question 21).

37. Under the Questions and Answers on the Federal Executive Agency Guidelines On Employee Selection Procedures, 44 Fed. Reg. 11,996 (1979), Question 21, when a data set is small, validity evidence is warranted only where the lower selection rate continues over time.

38. Where the statistical power for a statistical analysis is low, the statistical analysis will not detect a real difference. (Wiesen Testimony: Trial Transcript at 10-117).

39 The statistical power for the statistical analysis of the results of the City of Lawrence is low and therefore no real difference can be ascertained. (Wiesen Testimony: Trial Transcript at 10-117).

40. Because the City of Lawrence's numbers are so small, there isn't enough statistical power to show any statistical significance for Lawrence's promotion rates. (Wiesen Testimony: Trial Transcript at 10-117).

41. Adverse impact analyses are hampered by small numbers, as statistical tests are not very good at detecting real differences where small numbers are involved, as is the case of the numbers in the City of Lawrence results. (Wiesen Testimony: Trial Transcript at 10-118).

42. The EEOC Guidelines recommend the use of the theory of the shift of one, when calculating adverse impact where the statistical data numbers are small. (Wiesen Testimony: Trial Transcript at 10-119; 10-118).

43. The Plaintiffs' expert failed to use the shift of one calculation when calculating the adverse impact analyses on the City of Lawrence's small numbers, despite representing that he complied with EEOC Guidelines in conducting his adverse impact analyses. (Wiesen Testimony: Trial Transcript at 10-119).

44. One of the reasons the Plaintiff's expert did not apply the shift of one calculation to Lawrence's small numbers is because it did not help the Plaintiffs' case in this regard. (Wiesen Testimony: Trial Transcript at 10-119; 10-120).

45. With the Lawrence numbers for 2006 and 2008 being so small, chance can play a

9

role in the analyses' results. (Wiesen Testimony: Trial Transcript at 2-107).

46. Dr. Wiesen found the adverse impact ratio for promotions in Lawrence when aggregating the 2006 and 2008 examinations to be .82, above the 4/5$^{th}$s "rule of thumb." [Plaintiffs' Exhibit 86].

47. In aggregating the 2006 and 2008 examinations, Dr. Wiesen found that the difference in points earned by minorities and non-minorities at the effective passing point was 2.1 points (out of 100 points). [Plaintiffs' Exhibit 86].

48. In aggregating the 2006 and 2008 examinations, Dr. Wiesen found that the difference in points earned by minorities and non minorities at the actual official passing point was 1.1 points (out of 100 points). [Plaintiffs' Exhibit 86].

49. Statewide, the adverse impact in pass/fail rates of minorities compared to non-minorities taking the 2006 Sergeants' promotional examination was .80, which does not fail the 4/5ths rule. [Plaintiffs' Exhibit 78]

50. Statewide, the adverse impact in pass/fail rates of minorities compared to non-minorities taking the 2008 Sergeants' promotional examination was .90, which does not fail the 4/5ths rule. [Plaintiffs' Exhibit 78].

51. Police officers compete for promotion only within the municipality that employs them. Police officers in different municipalities and jurisdictions do not compete for promotion with each other.

52. Dr. Wiesen's aggregated analysis of promotional rates state-wide did not account for the fact that police officers do not compete across employers or jurisdictions. [Wiesen Testimony: Trial Transcript at 5-88:21, 5-94:7 through 5-94:17, July 16, 2010].

53. Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider the different selection ratios (selection ratio is defined as the number of appointments relative to the number of applicants competing for those appointments) among the various municipalities.

10

[Wiesen Testimony: Trial Transcript at 5-92:6 through 5-93:10, 5-94:7 through 5- 94:17]

54. Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider or account for the different sized pools of candidates among the various municipalities. (Wiesen Testimony: Trial Transcript at 5-93:23 through 5-94:6, 5-94:7 through 5-94:17).

55. Dr. Wiesen's aggregated analysis of promotional rates state-wide did not consider or account for the different proportions of minorities to non-minorities competing for promotion that may exist amongst the various municipalities. [Wiesen Testimony: Trial Transcript at 5-91:14 through 5-92:5, 5-94:7 through 5-94:17].

56. Dr. Wiesen's aggregated analysis of promotional rates across time (e.g., across the multiple examinations 2003-2008) did not account for the fact that test-takers who took these examinations multiple times will be counted more than once. Dr. Wiesen admits such aggregation could distort the data. [Wiesen Testimony: Trial Transcript at 5-106:1, 5-107:13, 5-94:7 through 5-94:17]

57. The Plaintiffs' expert, Dr. Joel Wiesen, did not go far enough in conducting sufficient tests to assure that the data analyzed and the results of the statistical analyses were reliable for the conclusions reached, particularly with regard to the results of the City of Lawrence's 2006 promotional exam, despite the fact that he found the average test score result to be "unusual". (Wiesen Testimony: Trial Transcript at 2-105:12-13; 11-45 through 11-48).

58. The Plaintiffs' other expert, Dr. Cassie Fields, stated that she did not conduct her own independent, adverse impact analysis of the 2006 and 2008 police sergeant's promotional exam for the City of Lawrence. (Fields Testimony: Trial Transcript at 8-88:10-13).

59. The Defendants' expert, Dr. Jacinto Silva testified that the promotional exam results for the Lawrence Candidates in the 2006 and 2008 exam had no adverse impact upon the minorities taking the exam. [Silva's Testimony: Trial Transcript at 17-66: 16-19]

60. In Lawrence for the 2006 Exam, there were three promotions out of 46 test takers

11

and the adverse impact ratio was zero. [Silva's Testimony: Trial Transcript at 17-63: 3-12]

61.    If just one minority were promoted instead of the white candidates, the adverse impact ration would have grown from zero to 1.8, creating a situation where more minorities were being promoted than non-minorities. [Silva's Testimony: Trial Transcript at 17-63: 9-12]

62.    Such a shift in the data proves that the data is sufficiently unstable to make a determination of adverse impact per Question 21 of the EEOC Uniform Guidelines. [Siva's Testimony: Trial Transcript 17-63 at 13-16].

63.    The difference in the passing rates was not statistically significant. [Silva's Testimony: Trial Transcript 17-63 at 17-23]

64.    In order to achieve a non-adverse impact conclusion based on the Adverse Impact Ration, Lawrence would have been required to promote .55 minorities, or half a person. [Silva Testimony: Trial Transcript 17-64 at 1-10]

65.    In Lawrence's results for the 2008 Exam, there were three promotions out of 27 white test-takers and 15 minority test-takers. [Silva's Testimony: Trial Transcript at 17-64: 15-18]

66.    If Lawrence had promoted a minority candidate instead of one of the white candidates, the Adverse Impact Ration would have been undefined. [Silva's Testimony: Trial Transcript at 17-64: 19-21

67.    Such a shift indicates that the data is insufficient to make a determination of adverse impact. [Silva's Testimony: Trial Transcript at 17-64: 22-24]

68.    The data used in determining whether there was an adverse impact on minorities in the 2008 promotional exam results for Lawrence is unstable. [Silva's Testimony: Trial Transcript at 17-64: 25 and 17-65: 1-2]

69.    The difference in the Lawrence passing rates for the 2008 Exam was not statistically significant. [Silva's Testimony: Trial Transcript at 17-65: 3-5]

70. In order to avoid a determination of adverse impact versus the Adverse Impact Ratio

.8 Rule, less than a third (1/3) minorities would have to be promoted; which is a result that could not possibly be achieved. [Silva's Testimony: Trial Transcript at 17-65: 7-17]

71.  In such a case, the adverse impact would be against both minorities and non-minorities. [Silva's Testimony: Trial Transcript at 17-65: 18-23]

72.  The adverse impact identification for the 2008 Exam is false because the underlying test distributions are the same for minorities and non-minorities. [Silva's Testimony: Trial Transcript at 17-66: 1-12.]

## III. Proposed Rulings of Law

1.  Under a Title VII disparate impact claim, three steps must be proven by the Plaintiffs. *Bradley v. City of Lynn*, 443 F. Supp.2d 145, 160 (D.Mass. 2006). The first step is that the Plaintiffs must prove that a challenged employment practice has a disparate impact. *Id.*

If disparate impact is proven, then the defense must prove that such challenged employment practice "was job related and consistent with business necessity." *Id.*

Finally, the Plaintiffs must prove that another selection device would not have similar discriminatory effects. *Id.*

2.  In Massachusetts, it has been the general practice of the Supreme Judicial Court to apply federal case law regarding Title VII when interpreting analogous provisions of M.G.L. c.151B. *See MBTA v. MCAD*, 450 Mass. 327, 337-338, 879 N.E. 2d 36 (2008).

Therefore, the legal analysis is the same for both Plaintiffs' Count I and Count II.

### A. THE PLAINTIFFS CANNOT ESTABLISH A PRIMA FACIE CASE OF DISPARATE IMPACT DISCRIMINATION AGAINST LAWRENCE BECAUSE LAWRENCE'S ADMINISTRATION OF THE HRD PROMOTIONAL EXAM DID NOT HAVE AN ADVERSE IMPACT ON LAWRENCE MINORITIES.

3.  The framework for proving unlawful discrimination based on disparate impact is set forth in 42 U.S.C. § 2000e-(k)(1)(A). A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact on a protected class". 42

13

*Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 995 n. 3 (1988).

8. As set forth herein, in the proposed <u>Findings of Fact</u>, Lawrence's use of the 2006 and 2008 promotional examinations did not adversely affect actual minority rates of promotion or their opportunity to compete for promotion.

9. The crucial issue in this case is whether the Plaintiffs can demonstrate the existence of a disparate impact on the basis of race. Again, as set forth in the proposed <u>Findings of Fact</u>, the Plaintiffs submit a premise of adverse impact based upon statistical evidence that is unreliable and expert opinion that fails to use the complete and thorough analytical methods that are necessary to support its findings that Lawrence's promotional exams had an adverse impact on minorities. (Wiesen Testimony: Trial Transcript at 2-105; 10-118; 10-119; 11-45 through 11-48).

## C. THE STANDARD OF PROOF IN DISPARATE IMPACT DISCRIMINATION CASES PRECLUDES THE PLAINTIFFS FROM SUPPORTING THEIR CLAIMS BASED UPON PROMOTIONAL DATA AGGREGATED ACROSS JURISDICTIONS

10. Here, the challenged employment practices, against the Defendant City of Lawrence are its use of examinations developed and administered by HRD. (Seventh Amended Complaint at 7379). The burden on the Plaintiffs is to demonstrate that the challenged employment practices have a disparate impact on the rates of minority hiring within the employing unit. More particularly, as part of its prima facie case, the Plaintiffs must show that the challenged employment practices caused the discriminatory impact that the Plaintiffs seek to prove.

11. Plaintiffs' proof based on state-wide adverse impact statistics lacks any connection to the challenged employment practices. Certainly, the Plaintiffs cannot argue that Lawrence's use of these examinations could have caused a *state-wide* problem. In this sense, it cannot be said that any appearance of adverse impact on a state-wide basis was the result of Lawrence's use of the examination. Such an argument is obviously illogical and without reason - - the City of Lawrence's two challenged employment practices of utilizing HRD's 2006 and the 2008

15

examination affect only the promotions of its own officers within its jurisdiction.

12. In *Bradley v. City of Lynn,* supra, plaintiffs brought a class action under Title VII against the Commonwealth of Massachusetts and the City of Lynn, alleging that the civil service examination for entry level firefighters had a disparate impact on minorities. In that case, when determining whether disparate impact existed for the purpose of liability against the individual municipalities, Judge Saris examined the data on a disaggregated city-by-city basis:

". . . the Court finds that the statewide aggregated approach advocated by the plaintiffs and the disaggregated municipality approach advocated by the HRD are both useful in this case . . . The decision process in hiring firefighters in Massachusetts, however, contains multiple steps that span both the state and municipal levels. . . The HRD argues that statistical evidence aggregated on a statewide basis is flawed because hiring decisions are made individually in each municipality at the local level and because a large municipality can distort the whole adverse impact analysis. Dr. Jacobs asserts that aggregation 'allows one single jurisdiction to have a major influence on the entire system leading to a conclusion of adverse impact for the entire Commonwealth when a single community is responsible for the outcome.' . . . Because this seems reasonable, the Court examines the disaggregated hiring data of Boston. The Court also examines the disaggregated hiring data of Lynn, the municipality of the four named plaintiffs. The data shows that the examination has a disparate impact on the hiring of minorities in both of these municipalities." *Id* at 165.

13. In the case at bar, the evidence supporting disaggregation of the data is even more compelling than in *Bradley v. Lynn*. Unlike the entry level firefighter positions at issue in *Bradley v. Lynn,* police officers in different police departments do not compete against each other for promotion to sergeant. Candidates eligible to compete for entry level firefighter positions are eligible for appointment across jurisdictions.

14. When applicants who are not competing with each other for the same positions are

16

used in statistical calculations as though they do compete against one another across all jurisdictions, the aggregation of these promotion rates significantly distorts the conclusions derived through aggregation.

15.     Additionally, unlike in <u>Bradley v. Lynn</u>, the entity responsible for the state-wide examination, the Commonwealth of Massachusetts, is no longer a party to this case. Thus, while aggregation of minority selection rates may be "useful" against a state-wide actor, such data has no relevance to the City of Lawrence in the instant case.

Not only does *Bradley* require disaggregation of data for the purpose of determining liability among the individual Defendants, common sense also dictates this result. If the Court were to hold individual municipalities liable based on what may be happening on a state-wide level, there would be no difference between the municipality that promotes all of its minority candidates and the municipality that may be promoting many candidates but where minority promotions fail the 4/5ths rule to a statistically significant degree. Such a conclusion would be fundamentally unfair and would be inconsistent with the prima facie case which requires the Plaintiffs to prove causation.

### D. THE DEFENDANT LAWRENCE CANNOT BE HELD LIABLE FOR FOLLOWING A STATE-WIDE TESTING PROCEDURE THAT IS MANDATED BY M.G.L. C. 31 § 1 ET SEQ. PURSUANT TO SAID STATUTE, EXAMINATIONS WERE CREATED AND ADMINISTERED BY THE STATE FOR THE VERY PURPOSE OF SELECTING CANDIDATES FOR PROMOTION BASED UPON MERIT.

16.     Lawrence is an employer and therefore subject to Title VII's prohibitions. Title VII, however, does not make it unlawful for Lawrence to comply with the Commonwealth's state wide testing requirements at issue. In the present case, the HRD promotional examinations were conducted *outside of an employment context* and do not give rise to a cause of action under Title VII, as that statute prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). As other courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement

of testing requirements, in a non-employment capacity. *See, e.g., Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 578 (1st Cir. 2004) (noting "long line of cases" holding that testing authorities are not subject to Title VII). Because nothing in Title VII manifests a clear intent to impose further restrictions on the states' exercise of their sovereign police power to test or license professionals including police officers, Title VII should not be read to intrude on such matters of core state authority. See *Bass,* 404 U.S. at 349; cf. *Gregory v. Ashcroft,* 501 U.S. 452, 460-461 (1991) (holding that Congress's intent "to alter the usual constitutional balance between the States and the Federal Government" must be "unmistakably clear in the language of the statute") (citation omitted).

17. Lawrence is an employer that must comply with the state law that requires it to hire from the certified lists promulgated by HRD. Lawrence thus acted only as Plaintiffs' employer, not as a testing body. It necessarily follows that Lawrence is not liable under Title VII for complying with a facially-neutral state testing regime that limits the pool of potential employees to those who have complied with the Commonwealth's requirements.

18. Pursuant M.G.L.c.31, HRD is charged with the responsibility and authority to develop and administer competitive examinations that "fairly test the knowledge, skills and abilities which can be practically and reliable measured." *Boston Police Superior Officers Federation v. Civil Service Commission,* 35 Mass. App. Ct. 688, 692 (1993).

19. The 'form, method and subject matter' of promotional examinations is entrusted to the Administrator of the Human Resources Division. M.G.L.c.31 s. 16

20. In 2006 and 2008, as at the present time, Lawrence was not in the position to determine whether the Commonwealth-mandated exams had any disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, were satisfied.

Lawrence didn't create or administer the HRD exams, and was not an invited participant

into the sessions where the exams were composed and/or designed. Lawrence neither knew nor had reason to know, whether the 2006 and 2008 examinations at issue had an adverse impact on minorities from the Lawrence Police Department. Both Plaintiffs' experts agreed with this premise. (Wiesen Testimony: Trial Transcript 10-124; Fields Testimony: Trial Transcript 8-89, 8-90).

21. Lawrence utilized the HRD exams in good faith and reasonably relied upon the HRD's expertise in creating and administering such exams. *Massachusetts Association of Minority Law Enforcement Officers v. Abban,* 434 Mass. 256, 748 N.E. 2d 455 (2001).

22. The Defendants' expert, James Outtz, PhD, stated that the HRD exams at issue in the case at bar were valid examinations.

### E. CONCLUSION

Accordingly, because Plaintiffs' prima facie case against Lawrence requires them to demonstrate a causal relationship between an identified practice of Lawrence and a disparate impact in Lawrence's hiring, the Plaintiffs can only do so by disaggregating the promotional data, and analyzing the data applicable to Lawrence.

The Plaintiffs have not met their burden of proof, as they have based their conclusions upon unreliable statistical data garnered through shallow and flawed analysis that produced false results.

Respectfully submitted,
CITY OF LAWRENCE,
By its attorney,

/s/ Richard J. D'Agostino

Richard J. D'Agostino
B.B.O. #633984
Office of the City Attorney
200 Common Street
Lawrence, MA 01840
(978) 620-3030

DATE: October 29, 2010

## CERTIFICATE OF SERVICE

I, Richard J. D'Agostino, certify that on October 29, 2010 this document, filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and; paper copies will be sent to any persons indicated as non-registered participants.

/s/ Richard J. D'Agostino

Richard J. D'Agostino, Esquire