# ATTACHMENT A

04/16/09 THU 11:27 FAX                                                         @002
                                                                                @002/012



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                   SUPERIOR COURT
                                               CIVIL ACTION NO. 09-1254

THOMAS PRATT, et al.

vs.

PAUL DIETL, in his official capacity as
Chief Human Resources Officer of the Commonwealth of Massachusetts
and as Executive of the Human Resources Division,
and the CIVIL SERVICE COMMISSION

## MEMORANDUM OF DECISION AND ORDER
## ON THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

In this matter, several police officers who took the 2008 Police Promotional Sergeant, Lieutenant and Captain Examinations (Promotional Exams), and unions[1] which represent them, have challenged the decision of the Massachusetts Human Resources Division (HRD) to employ a new method of issuing scores used to establish the eligibility lists for promotions of police officers. Having heard from the parties and having reviewed their written submissions and the applicable statutes and case law, I find that the plaintiffs' request for a preliminary injunction should be **ALLOWED**.

### Factual and Statutory Background

With some minor differences, the parties are in agreement as to the factual and statutory background, at least for purposes of this preliminary injunction matter. The following summary is taken from the Plaintiffs' Memorandum In Support Of Their Motion For Preliminary Injunction, with which the defendants have indicated their agreement for the purposes of the preliminary

---

[1] While there is some question as to whether the unions have standing in this matter, I have allowed two motions to intervene brought by unions as well as individual plaintiffs so that all of the parties could be heard before the issuance of this decision. The defendants have objected to that intervention and may make appropriate motions to dismiss if such are warranted.

1

injunction issues.

### HRD Personnel Administration Rules

The promotion of police officers within all cities and towns electing coverage under the civil service system is administered and overseen by HRD, pursuant to G.L. c. 31. Under the authority granted to it in G.L. c. 31, §3, HRD has established a set of Personnel Administration Rules (PAR)(Attachment C, Verified Complaint). That section empowers the agency to "make and amend rules which shall regulate the recruitment, selection, training and employment of persons for civil service positions." However, there are certain requirements and oversight within the rule-making process. Section 3 provides that "the [civil service] commission shall review such rules and in the event the commission determines that any proposed rule violates the basic merit principles outlined in this chapter, it may, within fifteen days of receipt of such proposed rule, by a three-fifths vote, disapprove such proposed rule." Section 4 of Chapter 31 calls for HRD to undertake an extensive process to enact new rules or to amend existing ones. (See Attachment 1 to Affidavit of Sally McNeely).

### The Civil Service Promotional System

To gain promotion within the civil service system, police officers take examinations designed, administered, and scored by HRD. See G.L. c. 31, §§5(e)(h), 7, 16; PAR.06. In addition to the examination, HRD also includes an "employment and experience" component in establishing the final marks of an examination. G.L. c. 31, §22. Once the grading is complete, HRD establishes eligibility lists for each promotional position in each community, with the candidates rank-ordered by their scores. G.L. c. 31, §25. Under PAR.07(4), "The examination marks shall be presented on eligible lists in whole numbers." Pursuant to this rule, HRD has listed candidates' scores with a whole number grading system of 1-100 for many years.

When a municipality desires to make a promotion, it submits a requisition to HRD, which certifies to it a list of candidates under the "2N+1" formula. See G.L. c. 31, §27; PAR.08. Thus, if a city needs to fill one sergeant slot, it gets back from HRD a list of the three highest-scoring candidates on the eligibility list. For two sergeants, it gets a list with five names under the "2N+1"

2

formula. When there are tie scores, HRD certifies a list with the fewest names needed to meet that formula. If a municipality seeks to fill one sergeant position, and the eligibility list has officers with scores of 91, 87, and three tied at 86, all five names would be certified for the position.

Once it receives the certified list, the municipality may select from among those on the list, but if it selects a candidate who is not the highest on the list, it must submit reasons for doing so to HRD, which must approve them. G.L. c. 31, §27; PAR.08(3). Higher scoring candidates not selected are considered to have been "bypassed" and may appeal to the Civil Service Commission (the Commission) pursuant to G.L. c. 31, §2(b). Those tied with the selected candidate are not considered bypassed by HRD and have no right of appeal to the Commission.

In her Affidavit, Sally McNeely, formerly the Director of the Organizational Development Group of the HRD, explains how the civil service system has functioned. As an example, she notes that Paul Campbell, one of the named plaintiffs in this matter, achieved the highest raw (not banded) score on the Brookline lieutenant promotional examination in October, 2008. If Brookline requisitioned a certification list for one lieutenant vacancy, and the certification was based on raw (not banded) scores, then Campbell's name would appear first. Next would appear another candidate whose raw score was three points lower on a 1 - 100 point scale. Next would appear the names of two candidates who each achieved raw score four points lower than Campbell's score. Under the system in place now, if Brookline chose to appoint one of the officers other than Campbell, it would have to explain in writing its reasons for doing so and the Administrator of the HRD would have to pass on the validity of the reasons for the bypassing of Mr. Campbell. Campbell would have a right to appeal that decision.

### *The October 2008 Promotional Exam and the Establishment of Eligibility Lists From It*

On October 18, 2008, police officers from many cities and towns throughout the Commonwealth, including the individual plaintiffs, took promotional examinations for the positions of Police Sergeant, Police Lieutenant, and Police Captain. On or about February 13, 2009, HRD began notifying the test-takers of their individual scores. In addition, HRD announced its intention to band scores together when establishing eligibility lists for promotion. Thus, for example, all officers who scored between 85.84 and 92.91 would be placed on a sergeant eligibility list as having

3

scored in "Band 5" Under the prior practice and under PAR.07(4), such candidates would have had their scores rounded to the nearest whole number and their names placed on eligibility lists which were rank-ordered by those whole number scores.

The HRD supplements the plaintiff's statement of facts, with which it is largely in agreement, with information as to how it determined to utilize the banding of scores. According to HRD, it employed an educational consulting firm, EB Jacobs, which specializes in employment testing, to assist it in developing the October 2008 promotional examination. EB Jacobs recommended to HRD the establishment of score bands for the results of that examination. In an affidavit, Rick Jacobs of EB Jacobs set forth the rationale for the use of score bands and explained how bands widths are established for test scores. According to Mr. Jacobs, "Candidates within the same band should be considered equivalent in terms of their performance on the test. Differences in raw scores within a band should be attributable only to the lack of perfect precision in the measurement of candidate performance associated with a particular testing instrument." (Jacobs Affidavit, ¶15).

In a Memorandum to Commissioner Edward Davis of the Boston Police Department (Exhibit D, State Defendants' Opposition To Plaintiffs' Motion For Preliminary Injunction), Ms. McNeely explains the new scoring policy and its impact on the promotion process:

> An applicant's ranking on the 2008 promotional list will be based on the exam score band he or she achieves. Please be advised that promotional candidates in the same exam band score are considered tied. As such, no bypass will occur unless a promotion is made from a lower band when candidates remain unselected in a higher band.

### Proceedings Before The Civil Service Commission

On or about February 18, 2009, the plaintiffs filed an appeal under G.L. c. 31, §2(b) with the Commission challenging the proposed banding of promotional scores as violating PAR.07(4) and Chapter 31 generally. Later, plaintiffs amended their filing to include a request for an investigation under G.L. c. 31, §2(a). The Commission held a pre-hearing conference on March 3, 2009. On March 13, 2009, the Commission dismissed all appeals and rejected all claims for an investigation.

4

(See Attachments A and B, Verified Complaint).[2]

With respect to the individual plaintiffs, the Commission dismissed the §2(b) appeal on the grounds that they were not "'persons aggrieved' who have suffered 'actual harm' to their 'employment status' pursuant to G.L. c. 31, §2(b)." It rejected the unions' appeals on standing grounds. The dismissal of the individual appellant's appeals was based on the view that their claims were anticipatory, since none of them had yet to be harmed by the banding of scores on an eligibility list. The Commission declined to conduct any investigation beyond its own survey of some of the pertinent case law which had addressed the issue of banding and stated that further inquiry would not lead it to conclude differently (differently, apparently, from the courts it cited which had found banding to be an appropriate method of scoring civil service eligibility). The Commission further held that the change in the practice of how the eligibility lists were created did not violate either Chapter 31 or the Personnel Administration Rules.

## DISCUSSION

The plaintiffs seek declaratory relief and an injunction prohibiting the HRD from issuing eligibility lists for promotions of police officers in bands rather than in the format which has been in use for decades. They assert that the use of bands violates HRD's own rules, which rules have not been altered or amended in accordance with the procedure required by G.L. c. 31, §4. Arguing that they have standing to bring their claims under G.L. c. 231A, the declaratory judgment statute, and as an appeal of the actions and decisions of the HRD and the Commission, the plaintiffs assert that they are likely to succeed on the merits of their claims. Further, they argue that the risk of harm to them is of sufficient magnitude that the entry of the requested injunctive relief is mandated.

The defendants counter that the plaintiffs cannot establish the prerequisites for the entry of injunctive relief and, indeed, that they have no standing to maintain this action as they have not suffered any actual harm at this juncture.

### Standing

General Laws c. 231A, § 1 authorizes the Superior Court to issue a binding declaration with respect to rights, duties, status and other legal relations. The law enables a person to terminate a

---

[2] The Commission's decisions were by a 3-2 vote, with the dissenting commissioners issuing a minority opinion (See Attachment B, Verified Complaint).

controversy or remove uncertainties which may arise either before or after a violation or breach of such right or duty in any case in which an actual controversy has arisen. The plaintiffs assert that under G.L. c. 231A, §2 they may bring a declaratory judgment action in the Superior Court "to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any ... state agency or official which practices or procedures are alleged to be in violation of the ... laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated ..."

The prerequisites to the bringing of a declaratory judgment action are (1) an actual controversy; (2) standing; (3) joinder of all necessary parties; and (4) the exhaustion of available administrative remedies. *Sch. Comm. of Hudson v. Bd. of Educ.*, 448 Mass. 565, 579 (2007); *Marion v. Massachusetts Hous. Fin. Agency*, 68 Mass. App. Ct. 208, 210 (2007).

Declaratory relief under G. L. c. 231A is available only when an actual controversy has arisen. See G. L. c. 231A, § 1; *Bello v. S. Shore Hosp.*, 384 Mass. 770, 778 (1981). General Laws c. 231A cannot be used to resolve hypothetical or moot questions, to seek judicial rendering of an advisory opinion as a guide to future action, or to entertain mere differences of opinion or speculative contentions. Nonetheless, G. L. c. 231A, § 1 provides that the plaintiff need not suffer actual harm before he or she seeks declaratory relief. The action may be brought "either before or after a breach or violation" has occurred. *Id.* The action may, therefore, be prospective or anticipatory in nature seeking to prevent the threatened harm or injury from taking place. See *Sch. Comm. of Cambridge v. Superintendent of Schs.*, 320 Mass. 516, 518 (1946).

An actual controversy within the context of G. L. c. 231A, § 1, is:

> "a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation."

*Bunker Hill Distrib., Inc. v. Dist. Attorney for Suffolk County*, 376 Mass. 142, 144 (1978), quoting *Sch. Comm. of Cambridge*, 320 Mass. at 518.

Here, there is an actual controversy because the above three tests are met. First, HRD asserts that its decision to band the promotional scores is within its discretion, while the plaintiffs maintain

6

that such a change in procedure requires adherence to the process set forth in G. L. c. 31, § 4. Second, both parties clearly have interests in the case. Third, given that the HRD intends to issue promotional lists with banded scores and that the plaintiffs are currently awaiting placement on those lists, it is plain that some plaintiffs will claim to be harmed by the new procedure and, in turn, litigate the matter, unless declaratory relief is granted.

In addition to demonstrating an actual controversy, a plaintiff must have standing to maintain a declaratory judgment action. The standing requirement should be liberally construed, although there are limits on the matters that can be heard in an action for declaratory judgment. *Massachusetts Ass'n of Indep. Ins. Agents and Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 293 (1977). In declaratory lawsuits attacking the validity of statutes or regulations, "[a] party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Id.; Enos v. Sec'y of Envtl. Affairs*, 432 Mass. 132, 135 (2000). See *Bonan v. Boston*, 398 Mass. 315, 320 (1986) (standing requires "a definite interest in the matters in contention in the sense that [a plaintiff's] rights will be significantly affected by a resolution of the contested point"). In other words, to have standing, a plaintiff's interest must be within the "zone of interests" protected by the statute or regulatory scheme. *Prof'l Fire Fighters of Massachusetts v. Commonwealth*, 72 Mass. App. Ct. 66, 74 (2008). Standing is usually not present unless the government agency owes a duty directly to the plaintiff, which was violated and resulted in legally cognizable injuries. *Enos*, 432 Mass. at 136.

In determining whether standing exists, the court should examine the language of the statute at issue, the nature of the administrative scheme, any adverse effects that might occur if standing is recognized, and the availability of other more definite remedies to the plaintiffs. *Id.* at 135-136. Then, the court should ask whether the plaintiff has identified an interest created for them and a reasonably definite injury to that interest caused by a breach of duty by the agency. See *Prof'l Fire Fighters of Massachusetts*, 72 Mass. App. Ct. at 75.

The general purpose of the civil service system is to "guard against political considerations, favoritism, and bias in governmental employee decisions." *Boston Police Dept. v. Collins*, 48 Mass. App. Ct. 408, 412 (2000). The centerpiece of the statutory scheme is hiring and promotion based on "basic merit principles" as defined in G. L. c. 31, § 1. General Laws c. 31, § 3 authorizes the Division to make and amend rules which govern the recruitment, selection, training and employment

7

04/16/09 THU 11:30 FAX

@009
@009/012

of persons for civil service positions. General Laws c. 31, § 4, one of the provisions at issue in this case, sets forth a process which the Division must undertake to enact a new rule or to amend an existing rule. In general, this process requires the Division to provide notice of the proposed rule change and to conduct a public hearing relative to the proposed rule change. See G. L. c. 31, § 4.

Here, the plaintiffs are contesting the lawfulness of the Division's decision to band scores when establishing eligibility lists for promotions, a rule which was amended without adhering to the requirements set forth in G. L. c. 31, § 4. The plaintiffs assert that their interests will be harmed by the banded scores because the bypass procedure will no longer provide some protection for higher scoring candidates and because cities or towns will no longer have to justify their appointments of lower scoring candidates, unless chosen from a lower band. The plaintiffs also contend that the banded scores will expand the candidate pool, thus increasing the potential that promotions will be based on favoritism and bias, rather than merit. These harms are squarely within the zone of interests protected by G. L. c. 31. In addition, by creating a promotional system that provides fewer safeguards against favoritism and bias, the Division has potentially violated its duty to the plaintiffs. Accordingly, I am persuaded that the plaintiffs have standing to maintain an action under G. L. c. 231A to challenge the banded promotional eligibility lists. . . . .

*Likelihood of Success*

The plaintiffs contend that the banding of scores violates the HRD's own regulation which mandates that examination marks shall be presented on eligibility lists in whole numbers. Having locked the whole number scoring method into its regulatory scheme, say the plaintiffs, the HRD cannot now change that method without complying with the provisions of G.L. c. 31, §4 which establishes a procedure for such amendments of rules. According to the plaintiffs, the 1-100 scoring system is "enshrined" in the regulations and a change such as is contemplated by the banding of scores requires that the rule-making process be followed. Since it did not follow that process, the HRD is in violation of the applicable statute, say the plaintiffs, and they have a very substantial likelihood of success on the merits.

The HRD argues that the plaintiffs have not established a likelihood of success on the merits. Pointing to *Ash v. Police Com'r of Boston*, 11 Mass.App.Ct. 650 (1981), the HRD argues that the Administrator, as the "skilled professional authorized by G.L. c. 31 to decide technical matters such as the scoring and interpretation of examinations," *id.* at 652, has appropriately decided that the

8

banding of scores for the 2008 police promotional examinations is the best method for reporting the scores and preparing the eligibility lists from which promotions may be made. The HRD argues that the banded scores will be reported in whole numbers and, thus, it is in compliance with the applicable provisions of its own rules. Further, the HRD argues that its rationale for the change is reasonable and, thus, under the reasoning of the *Ash* decision, the plaintiffs cannot prevail. The HRD points to the widespread judicial and expert acceptance of the practice of banding and argues that the plaintiffs may well benefit from the banding of the scores.

The practice of banding scores represents a significant departure from the way scores have been reported in the past. While the proposed banding will be reported as whole number bands, the scoring is very different than what appears[3] to have been intended by the requirement that scores be reported in whole numbers. The scoring bands are a significant change in the manner of scoring and establishing the eligibility lists and that change should have been put in place using the procedure established by the Legislature for making a significant change in the rules. G.L. c. 31, §4.

In addition, the new score bands will impact the bypass and appeal procedures established by the statute and the regulations enacted pursuant thereto. As noted in Ms. McNeely's Memorandum to Commissioner Davis, all officers within a score band will be viewed as being tied and thus no bypass will occur unless a promotion is made from a lower band when candidates remain unselected from a higher band. That is also a significant change from the practice which has been in place for decades. Using the example which Ms. McNeely used in her affidavit, the new scoring system would conceivably[4] have a significant impact on Paul Campbell. Under the current system, as the highest scoring candidate on the October 2008 Brookline lieutenant promotional examination, Paul Campbell's name would appear first, followed by a candidate who scored three points lower than Campbell, followed by two other candidates who each scored four points lower than Campbell. If Brookline were to appoint one of the candidates other than Campbell, it would have to submit a written explanation for the bypass of Campbell to the Administrator of the HRD, who would pass on the validity of those reasons. If the decision was adverse to Campbell, he could appeal to the

---

[3] I say "appears" as none of the parties has presented information concerning the timing, the history, or the rationale for PAR.07(4).

[4] I use the word "conceivably" since the actual scores are not used in Ms. McNeely's affidavit.

9

Commission.

Under the proposed score bands, Campbell could conceivably be banded together with these three candidates whom he had outscored, along with any other candidates who scored within the same band width. All of those candidates would be deemed to be tied and the bypass procedure would not be implicated by the selection of any of the candidates within the same band. Brookline would not be required to justify its selection of a lower scoring candidate and the higher scoring candidate would not be entitled to appeal a ruling adverse to him or her. That is a significant alteration in the promotion process which has been established by statute and by rules of the HRD.

The proposed banding may well prove to be a better and fairer approach to assessing candidates for promotion within the civil service framework and Massachusetts may well join the numbers of other jurisdictions which have adopted the banding approach; however, such a significant alteration in the manner in which scores are reported and in which eligibility lists are established should have put through the review process set out by the Legislature in c. 31, §4.

Given that the HRD banding method was established without the requisite review process called for by the statute, the plaintiffs have a reasonable likelihood of success on the merits of their claims.

### Irreparable Harm

For the reasons discussed above in the *Standing* section, I believe that the plaintiffs have demonstrated a sufficient risk of harm to meet the harm requirement for the issuance of injunctive relief. In addition, as argued by the plaintiffs, where "a suit is brought either by the government or a citizen acting as a private attorney general to enforce a statute or a declared policy of the Legislature, irreparable harm is not required." *LeClair v. Town of Norwell*, 430 Mass. 328, 331 (1999). In such a situation, I must then evaluate "whether there is a likelihood of success on the merits of a plaintiff's claims and then determine whether 'the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.'" *Id.* at 331-332, quoting *Commonwealth v. Mass. CRINC*, 392 Mass. 79, 89 (1984).

In this case, I find that the plaintiffs have established that they have a reasonable likelihood of success on the merits of their claims. Further, a determination of the issues raised by the plaintiffs will promote the public's interest in "guard[ing] against political considerations, favoritism, and bias

10

in governmental hiring and promotion . . . and ensuring that the system operates on 'basic merit principles,' as defined in G.L. c. 31, §1, absent properly documented and supported bases for departing from such principles in particular cases." *MAMLEO v. Abban*, 434 Mass. 256, 259 (2001). Finally, I do not find that there will be harm to the public caused by the issuance of the injunctive relief sought by the plaintiffs. While the defendants assert that any delay in the implementation of the new scoring method will impact communities which are attempting to fill vacancies on their police forces, I do not so find. There is nothing which prevents the HRD from issuing eligibility lists in the same fashion that it has done so for years.

### Conclusion

For these reasons, I find that a preliminary injunction should enter enjoining the defendants from issuing eligibility lists for the promotion of police officers in score bands rather than in the manner in which it has been doing so until a final resolution of this matter on its merits.

### ORDER

Until a final resolution of this matter on its merits, the defendants are preliminarily enjoined from issuing eligibility lists for promotions of police officers in score bands rather than in the manner in which such score have been reported up to the time of this proposed change.

Dated: April 15, 2009

Bruce R. Henry
Associate Justice

11