Decision mailed: 5/18/07
Civil Service Commission

# COMMONWEALTH OF MASSACHUSETTS
# CIVIL SERVICE COMMISSION

SUFFOLK, ss.

**RECEIVED**

MAY 21 2007

CITY OF SPRINGFIELD
Law Department

RICHARD J. RANDOLPH and
JAMES SHEWCHUK
Appellants

G-02-215
G-02-801

v.

CITY OF SPRINGFIELD BOARD OF
POLICE COMMISSIONERS,
Respondent

| | |
|---|---|
| Appellants' Attorneys: | William J. Fennell, Esq.<br>Attorney for Richard J. Randolph<br>84 Park Avenue<br>West Springfield, MA 01089 |
| | Thomas John Rooke, Esq.<br>Attorney for James Shewchuck<br>73 Chestnut Street<br>Springfield, MA 01103 |
| Respondent's Attorney | William G. Cullinan, Esq.<br>City of Springfield Law Dept.<br>36 Court Street, Room 210<br>Springfield, MA 01103 |
| Commissioner: | John J. Guerin, Jr. |

## DECISION

Pursuant to the provisions of G.L. c. 31, § 2(b), the Appellants James Shewchuk and Richard J. Randolph (hereafter "Appellants") appealed the January 14, 2002 decision of the Respondent, the City of Springfield Board of Police Commissioners (the "Board" or "Appointing Authority"), bypassing them for appointment as Police Sergeants in promoting two candidates whose names appeared below them on the Certification List. The Appeals were timely filed. A pre-hearing conference was held on February 5, 2003 and a full hearing was held on November 16, 2006 at the offices of the Civil Service Commission ("Commission"). One audiotape was made of the hearing. Proposed Decisions were received from the parties thereafter, as instructed.

FINDINGS OF FACT:

Based on the documents entered into evidence (Joint Exhibits 1 through 5, Appointing Authority's Exhibit 1 and Appellant's Exhibit 1) and the testimony of Police Commission Chairman Gerald Phillips and Chief of Police Paula Meara, who were sequestered, I make the following findings of facts:

1. On January 2, 2002, pursuant to a request by the Appointing Authority, a certification list was issued by the Commonwealth of Massachusetts Human Resources Division ("HRD") for two (2) Police Sergeant positions. Six (6) candidates were listed as eligible for appointment. The Appellants were ranked number one (1) and number two (2) on the certified list, although they were tied by score, with each scoring an eighty-two (82) on the Civil Service Promotional Examination ('the exam"). Officer

2

Alberto Ayala scored an eighty-one (81) on the exam and was number three (3) on the certified list. Officer Albert Witkowsky scored an eighty (80) on the exam and was number four (4). (Exhibit 2)

2. As of January 2002, Appellant Randolph was a tenured civil service employee in the position of a Springfield police officer for close to thirteen (13) years. He held a Masters degree in criminal justice and had no disciplinary issues. Chief of Police Meara ("Meara") testified that the Appellant was a very good police officer. (Appellant's Exhibit 1 and Testimony of Meara)

3. As of January 2002, Appellant Shewchuk was a tenured civil service employee in the position of a Springfield police officer for over twenty (20) years. Meara testified that Shewchuk has been an excellent "street officer" and has made more arrests than the two candidates appointed as Sergeants. (Testimony of Meara)

4. Gerald Phillips was the Chairman of the Board of Police Commissioners of the City of Springfield in January 2002. One of the Board's functions is to interview candidates for promotion. As part of this process, each Commissioner is given a packet of resumes, internal records and other basic information on the candidates. (Testimony of Meara and Phillips)

5. On January 10, 2002, a meeting was held by the Board and attended by all Board members and Meara. The Board interviewed the six candidates present for promotion for two positions as Sergeant, one to be filled immediately and the other to be filled at a later date. (Exhibit 4)

6. The Board members posed the following three interview questions to each applicant:
   1. Explain the benefits of an early warning system of officer performance for

3

individual officers, the police department and the community; 2. In regard to motor vehicle stops and the new Massachusetts legislation on data collection, how do you believe this will effect patrol officers and articulate how your supervisory practices can support effective enforcement; and 3. Explain to the Commission what kinds of increase in responsibilities and work do you believe promotion to Sergeant entails. Show examples of practice that support this position. Also explain why you willingly assume these increases. (Exhibit 5)

7. On January 14, 2002, the Board met, with Meara also present. Commissioner Colon nominated Ayala for Sergeant because he showed "poise and good judgment in his interview and because of his work in the North End Community." Commissioner Ramos seconded the nomination. The meeting minutes indicate that four Commissioners voted to appoint Ayala but, at the Commission hearing, Phillips testified that he also voted to appoint Ayala and the omission of his vote was a typo in the minutes. After Ayala's appointment was approved, Commissioner Smith nominated Witkowsky and the nomination was seconded by Commissioner Marino. The Commissioners voted unanimously to appoint Witkowsky. Neither Appellant was nominated by the Board. (Testimony of Phillips and Exhibit 4)

8. Meara stated that all the applicants were excellent officers. She stated that she did not vote on the selections nor did she make a recommendation. Although she testified that she wrote a letter for Witkowsky, she acknowledged that she was unable to locate it. (Testimony of Meara)

9. No record was submitted of how the interviewed candidates were evaluated or ranked by the Board.

4

10. Phillips testified that he was contacted by several active Hispanic leaders on behalf of Ayala and that church and community groups also lobbied for his appointment. Phillips testified that this contact had an impact on his vote, stating that it was not a determining factor but a piece of the whole picture. (Testimony of Phillips)

11. Meara testified that Commissioners Colon and Ramos were "big-time players" (important leaders) in the Hispanic community. (Testimony of Meara)

12. The City of Springfield has a history of minority tension in terms of police and community and seeks to build trust among the Hispanic community. The City is under the Castro-Beecher consent decree but has never used a Special Certification or applied the provisions of the decree for promotions as the decree applies only to original appointments. (Testimony of Meara)

13. The Respondent provided HRD with a statement of reasons for promoting Ayala and Witkowsky over the Appellants. As reasons for promoting Ayala, the Respondent stated that he was an active member of the Hispanic community demonstrated by his volunteerism in the largely Hispanic district covered by the North End Citizen Council, that he mentored minority youth with the goal of helping them face the challenges associated with poverty and that he presented himself as a mature and enthusiastic member of the police force. As reasons for promoting Witkowsky, the Respondent cited his work with Youth Mentorship and on the Quebec Team (assigning officers to the schools) and that his interview showed that he demonstrated a thorough grasp of the purpose of a police force and the necessity of having a supervisor who allows his or her subordinates to function at the highest level of productivity. (Exhibit 3)

14. On January 22, 2002, HRD informed the City of Springfield that the selection reasons had been reviewed and found to be sound and sufficient.

15. Chief Meara, a very credible witness, provided honest answers throughout her testimony. Her testimony was straightforward and she made no attempt to sculpture her answers so as to make them more beneficial to the Appointing Authority's argument. She was professional in her demeanor and knowledgeable of the subject matter.

16. Board Chairman Phillips also impressed me as a credible witness. He did not add unfounded facts nor did he contradict those already admitted. He did not volunteer unresponsive or self-serving testimony and his demeanor was professional, courteous and respectful. His answers were unhesitant and appropriate.

## CONCLUSION

The Commission grants wide latitude for the discretion of an appointing authority in selecting candidates for hire. In a bypass appeal, the question is "whether the Appointing Authority has sustained its burden of proving that there was reasonable justification for the action taken by the Appointing Authority." City of Cambridge v. Civil Service Commission, 43 Mass. App. Ct. 300, 304 (1997). Reasonable justification requires that the Appointing Authority's actions be based on adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and correct rules of law." Commissioners of Civil Service v.

Municipal Ct. of the City of Boston, 359 Mass. 214 (1971). All applicants must be adequately and fairly considered.

A "preponderance of the evidence test requires the Commission to determine whether, on the basis of the evidence before it, the Appointing Authority has established that the reasons assigned for the bypass of an Appellant were more probably than not sound and sufficient." Mayor of Revere v. Civil Service Commission, 31 Mass. App. Ct. 315 (1991).

At issue here is whether the Respondent, City of Springfield, has sustained its burden of proving that there was reasonable justification for the action taken. See City of Cambridge v. Civil Service Commission, 682 NE2d 923, 925 (1997). Appellants allege that undue political pressure placed upon the Board of Police Commissioners to appoint a Hispanic to the position of sergeant tainted and flawed the selection process and violated basic merit principles defined in G.L. c.31. These principles require that employees be selected and advanced on the basis of their relative ability, knowledge and skills, assured fair and equal treatment in all aspects of personnel administration, and that they are protected from arbitrary and capricious actions. See Tallman v. City of Holyoke, et al., G-2134, and compare Flynn v. Civil Service Commission, 15 Mass. App. Ct. 206, 444 N.E. 2d 407 (1983).

A review of the evidence indicates that there was not just cause for the Appellants' bypass by Respondent. The Appellants were tied for first on the certified list and the Respondent appointed candidates number three and four. The Appellants had greater experience than the selected candidates and untarnished disciplinary records. The reasons

7

given by the Board of Police Commissioners for the selection of candidates lower on the certified eligible list does not refer to or incorporate the interview questions asked of the candidates on January 10, 2002. Phillips' testimony as to being contacted by active members of the Hispanic community and being impacted by this contact, in addition to the lack of due consideration of the Appellants' qualifications and their standing on the certified list, lead to the conclusion that the promotions were marked by political considerations and objectives unrelated to merit standards.

Another determining factor in this case is the lack of Respondent's use of selective certification. Pursuant to Personnel Administration Rules (PAR). 10: Special Considerations in the Civil Service, selective certification is a process used when a requisition for a certain number of appointments within a title is made by the Appointing Authority for appointments that require certain additional attributes beyond that which is generally known in that title such as gender, race or national origin. The validity that an Appointing Authority is permitted to request an alternate eligible list elective certifications has clearly been accepted by the Commission and the courts. See Choukas v. Boston Police Department, 10 MCSR 203 (1996) and Scott v. Department of Fisheries, Wildlife and Environmental Law Enforcement, 10 MCSR 27 (1997). However, despite the City of Springfield's history of minority tension in terms of police and community relations and being under the Castro-Beecher consent decree, it did not use PAR 10 for the appointments under appeal in this matter.

Based on the above, the Commission determines by a preponderance of the evidence that political and community pressure influenced the Respondent's decision to bypass the Appellants and that the Appellants were bypassed for reasons unrelated to basic merit principles. Although building a diverse police force, reflective of the

8

community, is an important goal, it does not constitute reasonable justification in the present case for promoting two (2) officers whose names appeared lower on the certification list than both the Appellants. The Respondent has not sustained its burden of proving that there was reasonable justification to bypass the Appellants. Therefore, the appeals on Docket Nos. G-02-215 and G-02-801 are hereby *allowed.*

It is ordered that, pursuant to the powers inherent in Chapter 534 of the Acts of 1976, as amended by Chapter 310 of the Acts and Resolves of 1993, the Commission hereby grants equitable relief to the Appellants and orders HRD to place the Appellants names at the top of the next and subsequent certification lists for promotion to the position of Sergeant until such time as they are again fully considered for said promotion.

Civil Service Commission

John J. Guerin, Jr.,
Commissioner

By vote of the Civil Service Commission (Bowman, Marquis, Guerin and Taylor, Commissioners) on May 17, 2007.

A True Record. Attest:

Commissioner

Either party may file a motion for reconsideration within ten days of the receipt of a Commission order or decision. A motion for reconsideration shall be deemed a motion for rehearing in accordance with GL c. 30A, sec. 14(1) for the purpose of tolling the time of appeal.
Pursuant to GL c. 31, sec. 44, any party aggrieved by a final decision or order of the Commonwealth may initiate proceedings for judicial review under GL c. 30A, sec. 14 in the Superior Court within thirty (30) days after receipt of such order or decision. Commencement of such proceeding shall not, unless specifically ordered by the court, operate as a stay of the Commission's order or decision.

Notice to:
 William J. Fennell, Esq.
 Thomas John Rooke, Esq.
 William G. Cullinan, Esq.