## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **PEDRO LOPEZ, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 07-11693-GAO** |
| **CITY OF LAWRENCE,** | ) | |
| **MASSACHUSETTS, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REBUTTAL OF THE DEFENDANTS CITY OF WORCESTER AND CITY MANAGER MICHAEL O'BRIEN TO PLAINTIFFS' PROPOSED FINDINGS OF FACT AND RULINGS OF LAW

Defendant City of Worcester and Defendant Michael O'Brien (hereinafter collectively referred to as "Worcester") hereby submit this Rebuttal To Plaintiffs' Proposed Findings of Fact and Rulings of Law in support of its request for entry of Judgment in favor of Worcester on all counts of the Complaint. More particularly, Worcester submits its Rebuttal to those portions of the Plaintiffs' Proposed Findings of Fact and Rulings of Law that pertain to Worcester.

**I.    PLAINTIFF'S PROPOSED FINDINGS (PARAGRAPH 81) THAT, PRIOR TO 2001, WORCESTER HAD NEVER HAD A MINORITY SERGEANT IS NOT SUPPORTED BY THE EVIDENCE AND IS UNTRUE.**

In Paragraph 81 of Plaintiff's Proposed Findings of Fact, Plaintiff states "[p]rior to 2001, Worcester had never had a minority Sergeant." Plaintiff's proposed finding is not only contradicted by the transcript reference cited purportedly in support of this claim, but is flatly untrue.

In fact, the portion of the transcript cited by Plaintiff in support of this proposed finding contains the testimony of Plaintiff Tatum who actually testified that there were no minority

Sergeants *between 1993 and 2001*.  [Tr. at 8:129].  In 1993, a Black Sergeant, Loman Rutherford, was promoted to Lieutenant.  [Trial Exhibit 64, at pages 3-4].  In 2001, John Lewis, a minority (Black) officer was promoted to Sergeant.  [Tr. at 8:141].

Accordingly, Plaintiff's proposed finding that Worcester never had a minority officer prior to 2001 is unsupported by the record.

**II.    PLAINTIFF'S PROPOSED RULINGS OF LAW THAT WORCESTER CAN BE HELD LIABLE FOR DISPARATE IMPACT DISCRIMINATION WITHOUT PLAINTIFF HAVING TO FIRST PROVE ITS PRIMA FACIE CASE IS UNSUPPORTED BY THE FACTS OR APPLICABLE LAW.**

    A.    <u>Plaintiff's Reliance On Incomplete Historical Data Cannot And Does Not Support A Prima Facie Case Of Disparate Impact Against Worcester</u>.

In his *Proposed Findings of Fact and Rulings of Law*, Plaintiff essentially asks this Court to ignore well-settled law regarding the shifting burdens of proof in disparate impact cases and instead offers largely historical and incomplete data to suggest that Worcester still isn't doing enough to ensure that the proportion of its minority Sergeants reflects the proportion of minority Police Officers and the minority population. In this regard, it is important to note that this case alleges that Worcester's use of the 2006 and 2008 HRD examinations resulted in a disparate impact on the promotional opportunity of those minorities who took those examinations.  There is nothing in Title VII which requires an employer's workforce to be racially balanced, or which requires an employer to utilize affirmative action to reach racial balance.  *See International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 340 n. 20 (1977).

Significantly, Plaintiff, in his Proposed Rulings of Law, acknowledges that the purpose of requiring a plaintiff to first present a prima facie case is to determine whether an employer should have to shoulder the burden of justifying a challenged employment practice.  [*Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, at page 58].  If a plaintiff cannot set forth a

prima facie case of disparate impact, the employer is not required to justify the use of the employment practice. Plaintiff also acknowledges that causation is an element of the prima facie case; that is, the challenged employment practice must have caused the observed disparate impact. [*Plaintiffs' Proposed Findings of Fact and Conclusions of Law* at page 56]. To this end, the challenged employment practices as set forth in Plaintiff's Seventh Amended Complaint are Worcester's use of the Sergeant promotional examinations developed and administered by HRD in 2006 and 2008. Specifically, Plaintiff claims the Worcester's use of the promotional examinations developed and administered by the Commonwealth of Massachusetts Human Resources Division ("HRD") in 2006 and 2008 have had a disparate impact on the rate of promotion of minorities (Blacks and Hispanics) within the City of Worcester; that this disparate impact is the result of flawed examinations; and that Worcester has alternatives other than the examinations developed and administered by HRD to reduce adverse impact. [Seventh Amended Complaint at ¶¶ 73-79].

Notwithstanding that the Plaintiff acknowledges the burden of proof required in this case, Plaintiff seeks to establish his prima facie case based on evidence that in the 1990's Worcester's rate of promotion to Sergeant was lacking, and that currently the overall percentage of current minority Sergeants is less than the percentage of minority Police Officers in the Worcester Police Department.

First, such evidence is not supportive of Plaintiff's prima facie case, and Plaintiff knows this. The challenged employment practices are Worcester's use of the 2006 and 2008 examinations. Worcester's rate of promotion in the 1990's is not at issue here and would be time barred in any event. Further, overall comparisons of the percentage of minority officers with minority Sergeants is not evidence that Worcester's use of the 2006 and 2008 examination

*caused* a disparate impact. While this evidence might be interesting, it is entirely irrelevant to the Plaintiff's prima facie case.

Notwithstanding the lack of relevance of this evidence, Plaintiff's characterization of the evidence distorts the picture of what is happening in Worcester. To begin, Plaintiff's claim of an abysmal record of minority promotion is based on evidence that is more than ten (10) years old. More recent evidence of Worcester's rate of promotion - - indeed since 2000 - - demonstrates that its use of HRD's examinations over several examination periods has not resulted in disparate impact in the rate of minority promotions - - it is this evidence that is most useful to the Court: data relating to the examinations at issue (2006 and 2008), aggregated over time with the most recent examination prior to the challenged examinations (i.e., 2004). Incomplete data from a period over ten years prior to the challenged examinations is utterly irrelevant and not probative of anything. Moreover, the Plaintiff presented no evidence regarding Sergeant promotions between 1994 and 2001 - - Plaintiff presented no evidence regarding the examinations that Worcester may have participated in, how many promotions that may have been made (or not made) during those years, how many minorities took the examination, how many passed, or who was taking the examination.

To the extent that the findings of a Hearing Officer at the MCAD (Trial Exhibits 64 and 65) regarding examinations that were utilized in 1992 and 1994 can be used for any purpose, it is important to note that those findings reveal that five minorities passed the examinations that were at issue in those cases. If anything, these findings show that very few minorities were actually participating in those examinations at the time. Moreover, the Hearing Officer noted that Worcester had been successful in increasing the percentage of minorities hired at the entry level and that entry-level hiring between 1993 and 1997 exceeded the percentage of minorities in the

population (19% of entry level officers were minorities compared to 14% of minorities residing in Worcester at that time). [Trial Exhibit 65 at page 21].

Additionally, Plaintiff's reliance on recent census estimates of Worcester's minority population also distorts the evidence and is a fundamentally unfair comparison. Plaintiff cites current estimates of Worcester minority residents as 28%. As noted above, however, in 1997, only 14% of Worcester's residents were minorities. The last census in 2000 has Blacks as 6.9% of the population and Hispanics as 15.1%, or a total of 22% minorities as a percentage of the population. It is unfair to compare current *estimates* of the minority population with current percentages of minority Sergeants - - there is no evidence relating to what percentage of Worcester's minority residents apply to be Police Officers when they immediately move in, and new officers are not eligible for promotion for at least three (3) years after appointment at the entry level. In short, there inevitably will be a considerable lag in time over many years between population changes and promotion rates at the Sergeant level.

Additionally, Plaintiff states that Worcester's promotion of Sergeants was found to be "problematic" and was "condemned" by the MCAD. Plaintiff ignores the fact that his claim in that case was that the City of Worcester engaged in disparate treatment discrimination and violated G.L. c. 151B by failing to utilize affirmative action. The MCAD's comments were directed at Worcester's failure to use a special list of minority candidates (known as a PAR 10 list), and were not directed at its use of the HRD examination. [Trial Exhibit 65]. Worcester was thereafter 'encouraged' to use the PAR 10 affirmative action list to make Sergeant promotions - - this alone was where the criticism was directed. Thus, the MCAD was of the view that Worcester should continue to utilize HRD eligible lists for making promotions, but that it should request a special minority certification, and it is this failure to do so which was

criticized.  Ironically, Plaintiff in this case criticizes appointing authorities for making use of PAR 10 and suggests that the use of such special affirmative action certifications is not a defense to the instant claims.

B.     Plaintiff's  Argument That Worcester's Promotional Data Is Statistically Insignificant Means That Plaintiff Has Presented No Evidence Of Disparate Impact in Promotions.

In his proposed *Findings of Fact and Rulings of Law*, Plaintiff states that even though Worcester's promotional data is favorable to Worcester, it is statistically insignificant because Worcester's promotions were in small numbers.  Plaintiff overlooks the fact that, if that is the case, then he has presented *no* evidence that Worcester's use of the 2006 and 2008 examinations had a disparate impact in the rate of promotion of minorities to Sergeants.  Whether it is significant or not, the only evidence on the impact of Worcester's use of these examinations on promotional opportunities is that minority Police Officers - - since 2003 and likely earlier - - have not been adversely impacted and have been promoted at rates that exceed the Four Fifths rule.

C.     Plaintiff Argues That Mean Score Differences Are Reliable Evidence of Disparate Impact In Promotional Opportunity And Then Conveniently Ignores Worcester's Record In This Regard.

On page 14 of his *Proposed Findings of Fact and Rulings of Law*, Plaintiff states that adverse impact can be measured through mean score differences.  Plaintiff thereafter ignores the inescapable conclusion that this data also favors Worcester.  The mean test scores, as well as passing scores, of minorities compared to non-minorities in Worcester was relatively equal or better across all the examinations that were offered into evidence:

- In Worcester, non-minority and minority test-takers of the 2006 Sergeants' examination had approximately equal mean test-scores; that is, minority test

takers scored less than a point (.97th of a point) lower than non-minorities on the 2006 examination. [Plaintiffs' Exhibit 86; Wiesen Testimony, 2-117:16 through 2-117:18].

- In Worcester, minority test-takers of the 2008 examination outscored non-minority test-takers by 4.3 points (adverse impact ratio of 1.36). [Plaintiffs' Exhibit 86; Wiesen Testimony, Trial Transcript at 2-117:16 through 2-117:18].

- In Worcester, minority test-takers passed the 2004 Sergeants' examination at higher rates (i.e., in a higher proportion) than non-minorities passed the examination (adverse impact ratio of 1.27) [Plaintiffs' Exhibit 79, at page 2].

- In Worcester, the rate at which minority test-takers passed the 2006 Sergeants' examination compared to non-minority test-takers was nearly the same. [Wiesen Testimony, Trial Transcript 2-117:20 through 2-117:22; Plaintiffs' Exhibit 86]. [1]

- In Worcester, minority test-takers passed the 2008 Sergeants' examination at higher rates than non-minorities passed the examination (adverse impact ratio of 1.28) [Plaintiffs' Exhibit 86; Wiesen Testimony, Trial Transcript 2-117:20 through 2-117:22].

To the extent that Plaintiff argues that the rate of promotion is unreliable, Plaintiff does not suggest that the mean test scores are insignificant - - to the contrary, Plaintiff goes to great lengths to argue that 'bottom line' hiring is not the only evidence on which to find disparate impact. While Worcester disagrees that its hiring of minorities at rates above the Four Fifths Rule is meaningless, the alternative measure of mean test scores and average scores only serves

---

[1] While Dr. Wiesen's testimony and the Plaintiffs' table show that minorities passed at 97% of the rate that whites passed the 2006 examination, the parties stipulated that the number of minority test-takers was 10 and not 11. The resulting ratio of passing rates is actually closer to 93% (7 of 10 minorities passing divided by 39 of 52 whites passing).

to underscore that Worcester's use of HRD's examinations has not been a bar to promotional opportunity for its minority officers.

      D.      <u>Plaintiff's Argument That Aggregation Is Appropriate Misses The Point That Aggregation of Promotional Data Across Jurisdictions Is Irrelevant To The Plaintiff's Prima Facie Case And Does Not Constitute Reliable Evidence.</u>

Plaintiff argues that aggregation of data across jurisdictions is appropriate in this case and is supported by applicable law. Plaintiff misses the point: Worcester has not argued that aggregation is never appropriate, only that aggregating one employer's data with a different employer's data is inappropriate in this case, where the subgroups of employers have different characteristics, such that the results distort what is actually happening within each jurisdiction.

Moreover, despite Plaintiff's claim that aggregation of data from different employers is supported by case law, this is not true. Plaintiff has not identified a single case where data from different employers was aggregated to support a prima facie case of discrimination. This is precisely because causation, an element of Plaintiff's prima facie case, is lacking in such an analysis.

Worcester has set forth its position in full in its Proposed Findings of Fact and Conclusions of Law and incorporates those arguments herein.

## III.    CONCLUSION.

WHEREFORE, Defendants City of Worcester and Michael O'Brien request that the Court enter a finding in Worcester's favor on Plaintiff's claims under both Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B, and further that the Court award Worcester its attorneys fees and costs.[2]

---

[2] Following the entry of Judgment in favor of Worcester, Worcester intends to file a separate Motion under FRCP Rule 54 for such attorneys' fees and costs.

Respectfully submitted,

CITY OF WORCESTER,

By its attorneys,


/s/Laurie W. Engdahl
Laurie W. Engdahl
B.B.O. #554635
Collins, Loughran & Peloquin, P.C.
320 Norwood Park South
Norwood, MA 02062
(781) 762-2229


Date:   November 19, 2010

## <u>CERTIFICATE OF SERVICE</u>

I, Laurie W. Engdahl, certify that on November 19, 2010, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

<u>/s/Laurie W. Engdahl</u>
Laurie W. Engdahl