# ATTACHMENT "A"

```
                              PAGES: 296
                              EXHIBITS: See Index.
```

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.        SUPERIOR COURT DEPARTMENT
                      OF THE TRIAL COURT
                      MICV 2002-4841

ROBERT ALVAREZ
v.

CITY OF LOWELL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Before: Fishman, J.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Monday, January 30, 2006

Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

APPEARANCES:

   Marisa Campagna, Attorney at Law for the plaintiff, Robert Alvarez

   Brian Leahey and Kimberley McMahon, Attorneys at Law, for the defendant, City of Lowell
   ------------------------------

           MAUREEN WELCH, COURT REPORTER

120

1  mitigation is the city's burden?
2          MS. MCMAHON:  Yes.
3          THE COURT:  Okay.  I'm going to
4  stick in a mitigation question.  And also
5  instruct on the issue of mitigation.  Is
6  there any other changes to the special jury
7  verdict form?
8          MS. CAMPAGNA:  I'm not sure which
9  one you're putting in about protected class,
10 Your Honor, on your's?
11         THE COURT:  Do you have mine in
12 front of you?
13         MS. CAMPAGNA:  Yes.
14         THE COURT:  That's what it is.  I'm
15 just saying that it says national origin, but
16 it says national origin/race.  The city has
17 suggested I ask the same series of questions
18 for both national origin and race separately.
19         MS. CAMPAGNA:  No.
20         THE COURT:  But I'm not doing that.
21         MS. CAMPAGNA:  Okay.
22         THE COURT:  And the only thing I'm
23 adding is there's a section on continuing
24 violation before damages that reflect the

                                                                121

1    city's proposed questions, also the
2    instruction that you can't award damages,
3    depending on what the answer is.
4        But as to the second of the city's
5    proposed questions, I'm going to add the
6    language that the city objected to and the
7    plaintiff suggested or found acceptable
8    relating to his work situation being unlikely
9    to improve.
10       Are there any other changes to that
11   that we need to discuss, to the first one?
12       MS. MCMAHON:  Your Honor, this
13   relates to one of the instructions that was
14   requested, but because evidence has come in
15   that the plaintiff's father was going to the
16   Phillippines, we request an instruction that
17   you tell the jury the issue of whether or not
18   the plaintiff is Asian or any sort of
19   discrimination based on that is not before
20   them.
21       If Your Honor is inclined to give
22   such an instruction, I think that it is fine,
23   otherwise I would just want in question one
24   the term Hispanic put in there.

<mark>

122

1    THE COURT: I don't have -- I
2    haven't had the problem with instructing the
3    jury that the issue in this case is not
4    whether the defendant is a -- of national
5    origin of Asian ancestry. Do you have a
6    problem with that?
7         I don't want to put it in the jury
8    questionnaire, I think it is just going to
9    add confusion.
10        MS. CAMPAGNA: Well, if we're going
11   to put anything about that, then I'd be
12   asking for a lot more questions so.
13        THE COURT: Do you have a problem?
14        MS. CAMPAGNA: No, they had no idea
15   about any connection to the Phillippines.
16        THE COURT: We're not arguing that.
17   I'm not arguing. She's not arguing for that
18   purpose. It's actually, just that issue is
19   not whether he's Asian, the issue is whether
20   he is Hispanic or believed to be Hispanic.
21        MS. CAMPAGNA: Believed to be, yes.
22        THE COURT: All right.
23        MS. MCMAHON: Thank you.
24        THE COURT: As to your requested,

1       And I also want to say one more
2  thing, that reference to Hooterville, in
3  relation to the Groton Police Department was
4  made by me in my opening statement, Alvarez
5  never called Groton Hooterville, I did.
6       And when Leahey asked him in cross-
7  examination if he was finally able to get out
8  of Groton, I cleaned that up on redirect
9  because he never said that. He said it
10 wasn't my dream job. I wanted a more active
11 force. I wanted to deal with more actual
12 real crime but I'm the one calling it
13 Hooterville, not him.
14       If you look at Exhibits 52 through
15 55 you're going to see that in the Lowell
16 Police Department Hispanic is White. They
17 put in the plaintiff's birth certificate
18 which the chief says he has never seen in his
19 life because they want you to know that some
20 doctor in 1958 called a Hispanic baby White.
21       I know they've taken history
22 classes. I know how we struggle with race in
23 this country. I know that you can understand
24 that white can be Hispanic. It's madness.

207

1  And the question is not whether he is
2  Hispanic, it's whether they thought he was.
3          And who gets ahead in the Lowell
4  Police Department, Kennedy, who never lifted
5  a single finger for a human being other than
6  himself.  He went in there got his money and
7  went home.  Never tried to become trained in
8  anything.  Never tried to be an instructor in
9  anything.  Never tried to do anything for
10 anyone but himself.
11         He got certified on the motorcycle
12 so he could be riding around time and a half
13 on a bike because that's cooler than doing it
14 in a cruiser or watching them fill the
15 pothole, but that's all he did.  He had one
16 point over the plaintiff because maybe he's
17 good at taking standardized tests, so what.
18 He had no experience that gave anything of
19 himself to anybody else, except what he did
20 get paid for.
21         You're going to be asked to
22 determine some dates and numbers.  You need
23 an act within six months of Alvarez filing an
24 M.C.A.D. charge on October 6th of 1999.

232

1   I'm going to describe national
2   origin or race discrimination.  To prove that
3   the City of Lowell discriminated against him
4   on account of his national origin or race,
5   the plaintiff must prove the following
6   elements.
7       First, the plaintiff must prove that
8   he is a member of a protected class, that is
9   that he is either, either is Hispanic or was
10  reasonably believed by the city to be
11  Hispanic.
12      Second, the plaintiff must prove
13  that he was harmed by the discriminatory acts
14  or act of the defendant.
15      Third, the defendant must prove
16  discriminatory animus. That is that the
17  defendant intended to discriminate against
18  him.
19      And fourth, the plaintiff must prove
20  causation, that is that but for his national
21  origin or race, the defendant would not have
22  been denied opportunities and job assignments
23  or receive unfair and harsher disciplinary
24  actions.

233

1      All right, let's discuss the first
2 question, is the defendant a member of a
3 protected class. Now, the first element Mr.
4 Alvarez must prove is whether he is a member
5 of a protected class.
6      A person who is Hispanic is a member
7 of a protected class. The plaintiff may
8 satisfy his burden by proving that he is in
9 fact Hispanic or that his employer, the City
10 of Lowell, reasonably believed that Mr.
11 Alvarez is Hispanic. The question in this
12 case is not whether the defendant is Asian.
13      You may consider such factors as the
14 plaintiff's physical appearance, language,
15 cultural activities or associations, and
16 whether the plaintiff believed himself and
17 held himself out to be Hispanic in
18 determining whether the city reasonably
19 believed that the plaintiff is Hispanic. You
20 may also consider documentary evidence
21 relating to the plaintiff's race and national
22 origin.
23      Second, was the plaintiff harmed by
24 the alleged discriminatory acts. The second