UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

PEDRO LOPEZ, et al.,  )
                     )
         Plaintiffs  )  C. A. # 07-11693-GAO
                     )
v.                   )
                     )
CITY OF LAWRENCE, MASSACHUSETTS, )
et al.,              )
         Defendants  )

## MBTA DEFENDANTS' REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT AND RULINGS OF LAW

The MBTA Defendants hereby submit their Rebuttal to those portions of the Plaintiffs' Proposed Findings of Fact and Rulings of Law that pertain to the MBTA.

Such proposed findings of fact, being paragraphs numbered 74-79, are set forth verbatim, but in italics, with the MBTA's rebuttal to each paragraph immediately following.

*74. In 1996, minorities represented 27.6% of patrol officers in the MBTA police (fifty officers out of 181), but only 7% of all sergeants (one sergeant out of fourteen). Brackett, 447 Mass. at 245. In recognition of this problem, the MBTA in 1996 invoked Personnel Administration Rule ("PAR") 10 to obtain a list of black sergeant candidates from an existing eligibility list. Using this list, the MBTA promoted three black officers to sergeant on October 5, 1996, out of seven total sergeant promotions. Id. at 237. Notably, had the MBTA promoted from the "regular" eligibility list under the normal rule of 2N+1, no minority officers would have been promoted to sergeant, and minority sergeant representation would have decreased to 4.8% (one sergeant out of 21). Id. at 236 n.7, 246. These promotions resulted in a challenge by white officers, which the Supreme Judicial Court rejected, finding that the promotions were a narrowly-tailored means of remedying the "past hiring and promotion practices of the MBTA police department [that] had resulted in discriminatory treatment of minorities." Id. at 257.*

Statistics from 1996 have no bearing on the issues in this case, which issues pertain to the MBTA's utilizing the 2005 and the 2007 HRD exams. The results of and the statistics from the

2003 HRD exam, however, are particularly relevant to this case because such results and such statistics set the table for the decisions of the MBTA in 2005 and 2007 to utilize HRD exams. Specifically, the results of and the statistics from the 2003 HRD exam had a very positive impact for minority officers employed by the MBTA. The results of the 2003 HRD exam are set forth in Exhibits 148 and 149 and the statistics from the 2003 HRD exam are set forth in Exhibit 79.

As set forth in Exhibit 79, the adverse impact for minority officers at the MBTA in passing rates was ".84" and the adverse impact for minority officers at the MBTA in effective passing rates was ".82". This means that **there was no adverse impact in the results of the exams**. (Tr. 8-78, lines 1-25; Tr. 10-86, line 13 to 10-87, line 1; Tr. 10-108, line 10 to 10-109, line 1). Although the adverse impact in the average test score was "3.4" points, this was not a meaningful difference (Tr. 8-78, lines 1-5). Further, it should be noted that, although these statistics demonstrate that there was no adverse impact in the results of the exams, at the time HRD informed the MBTA only of the officers, and their test scores, who appeared on the certification lists and, thus, the MBTA could not have been aware of these statistics. (Tr. 10-110, line 5 to 10-111, line 7; Tr. 12-108, lines 13-23).

   The MBTA, however, was aware of the promotions that it had made from the 2003 HRD exam. The Plaintiffs' expert Joel Wiesen determined that the promotional rate for minority officers from the 2003 HRD exam was "1.2". (Exhibit 79). That means that **minority officers were promoted at a higher rate than non-minority officers were.** (Tr. 10-97, lines 13-24). These promotions were occasioned by the MBTA's reorganization of the patrol plan for its Transit Police Department in 2004, resulting in the number of police sergeants increasing from twenty (20) to thirty-two (32). (Tr. 12-124, lines 2-4). By virtue of the promotions that the MBTA made from the 2003 HRD exam, the number of minority sergeants and the percentage of minority sergeants also increased. (*See* Exhibits 79, 148 & 149).

   The results of and the statistics from the 2003 HRD exam in regard to minority officers at the MBTA who took the exam are particularly relevant to this case because they demonstrate that MBTA officials acted reasonably when deciding in 2005 and 2007 to utilize HRD exams. Specifically, the results of the 2003 HRD exam proved to be very successful in bringing minorities into the rank of sergeant. Put another way, it would have been not only manifestly unreasonable, but also likely to have been challenged, for MBTA officials to decide in 2005 and 2007 *not* to utilize HRD exams, but rather to utilize alternative testing, after the results of the

2

2003 HRD exam had augmented both the number and the percentage of minorities in the rank of sergeant. This is particularly so given that experts in the field of industrial psychology agree that, as a general proposition, adverse impact exists in all methods of testing. (Tr. 8-73, line 19 to 8-74, line 3).

*75. In 2004, the MBTA again took proactive measures to address its lack of minority sergeants. On July 15, 2004, based on the eligibility list established from the 2003 sergeant examination, the MBTA made 12 sergeant promotions. The two minorities who were promoted, Miguel Sosa and Manes Cadet, ranked lower on the eligibility list than several non-minority candidates, but were promoted due to their ability to speak Spanish and Cadet's Haitian national origin. See Maynard v. MBTA Police Dept., G2-05-12, G2-05-177, ¶¶20-21, Civil Service Commission (attached as Exhibit A to ECF Document No. 289). The Civil Service Commission, after a challenge by one of the bypassed candidates, ruled that the MBTA improperly bypassed the non-minority candidate in favor of the minorities. Id. Cadet and Manes would not have been promoted on July 15, 2004 except for this improper bypass.*

When selecting police officers for the rank of sergeant, the MBTA does not promote in rank order from a certification list. (Tr. 12-105, line 23 to 12-106, line 2). Rather, all officers who appear on a certification list are deemed by the MBTA to be on equal footing. Within the MBTA, each officer on the certification list is interviewed in a structured oral board. In addition, each officer on the certification list receives scores from superior officers who have supervised them regarding their evaluation of that officer with respect to several supervisory skills. A weighted combination of the score from the structured oral board and the scores received from such superior officers determines the final score for each officer. The MBTA then uses the rank order of the final scores to promote officers to the rank of sergeant. (Tr. 12-101, lines 16-20; Tr. 12-103, line 22 to 12-106, line 2).

Miguel Sosa and Manes Cadet were promoted based on their final scores from this process; no consideration was given to their race, ethnicity or ability to speak a second language. (Tr. 12-127, line 21 to 12-130, line 3). It should be noted that the MBTA's use of this process conversely resulted in minority officer Darren Keith's and two Asian officers' (within the MBTA, Asians are considered to be minorities) being bypassed for promotion to the rank of sergeant even though they had higher scores on the certification list. (Tr. 10-106, lines 13-19; Tr. 10-107, lines 12-20). In short, the Plaintiffs are just wrong to assert that officers were

promoted because of their minority status, their ability to speak a second language or their national origin.

76. *Moreover, there is evidence that the MBTA reached these two minorities by substantially deviating from its normal rate of promotions. The MBTA increased its total number of sergeants from 20 on December 31, 2003 to 32 on December 31, 2004. (Exh. 149). The number of sergeants has thereafter remained around 32 (id.), demonstrating that the large number of promotions made from the 2003 examination was an exception to the MBTA's normal practice.*

The MBTA increased its total number of sergeants from twenty (20) on December 31, 2003 to thirty-two (32) on or about July 2004 (*see* Exhibits 148 & 149 which provide the names and races of the officers and the dates of promotion) because there was a reorganization of the patrol plan of the MBTA Transit Police Department. (Tr. 12-123, line 9 to 12-124, line 4). The increase in the total number of sergeants most certainly had nothing to do with the minority status of the officers on the certification list for the basic reason that, before the MBTA requested a certification list from HRD, which certification list utilized the 2N + 1 formula, the decision to create twelve (12) new sergeant positions had to have been made and the positions had to have been budgeted. (Tr. 12-101, line 11 to 12-102, line 17). Accordingly, the MBTA would not have had a clue as to which officers would appear on a certification list until *after* the twelve (12) new sergeant positions had been budgeted. Moreover, the evidence is that the MBTA bypassed minority officers who were on the certification lists stemming from the 2003 HRD exam. (Tr. 12-124, line 13 to 12-125, line 6). This dispels any suggestion that the MBTA "reached" for minority officers to promote from the certification lists stemming from the 2003 HRD exam. Also dispelling the notion that the MBTA "reached" to promote minority officers in 2004 is the fact that the two non-minority officers identified as being bypassed in 2004 by the Plaintiffs' counsel during questioning, those officers being Michael Tuohey and Christopher Maynard, were bypassed on more than one occasion by the MBTA. (Tr. 12-117, line 16 to 12-118, line 9). The race or ethnicity of the officers had nothing to do with whether they were bypassed. (Tr. 12-127, line 21 to 12-130, line 3).

77. *The one minority officer appointed following the exams at issue in this case – Darren Keith – was not promoted based on his score from either the 2005 or 2007 exams. (12:133; Stipulation Between Plaintiffs and MBTA Defendants, Sep. 9, 2010). Rather, he was promoted based on a bypass appeal that resulted in hi[s]being placed at the top of the eligibility list from the 2005*

4

*examination. (12:131-32). In other words, Keith's score on the 2005 examination did not get him promoted. (12:132).*

A bypass occurs when an officer with a lower score on the HRD exam is promoted to the rank of sergeant and an officer with a higher score on the HRD exam appeals initially to HRD, then to the Massachusetts Civil Service Commission and ultimately to the state courts. Such an appeal is based upon the argument that the MBTA, in selecting the officer with a lower score on the HRD exam for promotion to sergeant, somehow violated the basic merit principles of M.G.L. c.31, §1 et seq. An officer who is successful in a bypass appeal may be added to the top of the next eligibility list by HRD as a remedy for the MBTA's violation of basic merit principles. (Tr. 12-101, line 24 to 12-102, line 17; Tr. 12-103, lines 15-21). A certification list is the list of candidates that is given to the MBTA by HRD and contains the names of the top candidates from the eligibility list limited in number by the 2N+1 formula. (Tr. 12-105, lines 23-25).

Darren Keith was successful in a bypass appeal, which resulted in his being placed at the top of the eligibility list from the 2005 HRD exam. In other words, Keith scored high on a previous exam, was bypassed for promotion, and successfully appealed his bypass, which placed him at the top of the eligibility list and, accordingly, at the top of the next certification list requested by the MBTA. Although Keith was at the top of the certification list, he was deemed to be on equal footing with all other officers who appeared on the certification list. He, thus, competed against the other officers on the structured oral board and on the superior officers' evaluations. Keith successfully competed and he was promoted to the rank of sergeant.

At the MBTA, both minority and non-minority officers have been bypassed for promotions. Notably, the initial bypass of Keith and his subsequent promotion – each after the MBTA's process of using structured oral boards and superior officers' evaluations to determine who to promote from the certification list – demonstrates that the MBTA's process is not a means by which the MBTA seeks to promote or not to promote either minorities or non-minorities. Rather, the MBTA's process seeks to promote the best officers from among officers who qualified to be considered for promotion – by virtue of their HRD exam scores, the state-mandated use of the 2N + 1 formula and bypass appeals – based on two methods of alternative testing, rather than based solely on the rank order of their HRD exam scores. (Tr. 12-101, lines 16-20) and (Tr. 103, line 22 to 12-106, line 2).

78. *In 2005, 48 officers took the examination, 10 of whom were minority; seven non-minorities (18%) were promoted and none of the minorities. (Exh. 83). Only one of the 10 minorities (10%) passed the examination, while 12 of the 38 non-minorities (31.5%) passed. (Id.) This resulted in adverse impact ratio for promotions of 0\*, an adverse impact ratio in passing rates of .32\*, and an adverse impact ratio for the effective passing rate of 0\*. (Exh. 79). The difference in average test scores was 3.3\* points. (Id.).*

The Plaintiffs' expert Wiesen acknowledged that data from the 2005 and the 2007 HRD exams was not statistically significant. (Tr. 2-114, lines 7-23). By "not statistically significant", the experts mean that the difference is too small to determine whether something occurred by chance. (Tr. 10-47, lines 1-5). The Defendants' expert Dr. Silva testified that the data for the MBTA officers who took the 2005 and the 2007 HRD exams is not statistically significant when determining adverse impact. (Tr. 17-54, line 25 to 17-55, line 2). Moreover, Wiesen testified that, when analyzing data in regards to the question of whether there is adverse impact against minorities in the MBTA's promotions to sergeant, the best approach is to analyze the aggregated data contained in Table 2c of Exhibit 79 (which contains data from three test years), rather than the data contained in Exhibit 53 (which contains data from two test years) because there is more "reliability" in an analysis derived from three exams, rather than two exams. (Tr. 10-107, line 21 to 10-110, line 4). It, thus, follows that data from three test years is more reliable that data from one test year. Aggregation of the data from the 2003, the 2005 and the 2007 HRD exams, as set forth in Exhibit 79, demonstrates that **there was no adverse impact against minorities in any of the categories with regard to the MBTA.** (Tr. 10-86, line 18 to 10-87, line 1; Tr. 8-77, line 1 to 8-78, line 5).

79. *In 2007, 31 officers took the examination, four of whom were minorities; two of the non-minorities were promoted and none of the minorities. (Exh. 83). Two of the four minorities passed the exam, while 14 of the 27 non-minorities passed. (Id.). This resulted in adverse impact in promotions of 0\*, an adverse impact ratio in passing rates of 0.96\*, and an adverse impact ratio for the effective passing rate of 0\*. (Exh. 79). The difference in average test scores was 1.8\* points. (Id.).*

As stated above, the data from the 2005 and the 2007 HRD exams is not statistically significant when determining adverse impact. (Tr. 2-114, lines 7-23). When analyzing data in regards to the question of whether there is adverse impact against minorities in the MBTA's promotions to sergeant, Wiesen acknowledged that the best approach is to analyze the

6

aggregated data contained in Table 2c of Exhibit 79. Aggregation of the data for the MBTA officers who took the 2003, the 2005 and the 2007 HRD exams for promotion to the rank of sergeant demonstrates that **there was no adverse impact in the promotion rates, the passing rates or the average test scores of minorities within the MBTA**. (Exhibit 79, Table 2c) (Tr. 8-76, line 25 to 8-77, line 6; Tr. 17-53, line 4 to 17-55, line 3; Tr. 10-56, line 22 to 17-57, line 16). The Plaintiffs' expert Cassie Fields testified, in regards to Table 2c of Exhibit 79, that the number ".95" in the column for the MBTA identified as *Adverse Impact for Promotions* signified that **there was no adverse impact against minorities in the promotion rates from the exams**. (Tr. 8-77, lines 1-6). Similarly, Fields testified that the number ".83" in the column for the MBTA identified as *Adverse Impact in Passing Rates* signified that **there was no adverse impact against minorities in the passing rates from the exam**s. (Tr. 8-77, lines 20-25). Fields also testified that the "2.0" points in the column for the MBTA identified as *Adverse Impact in Average Exam Scores* did not connote a meaningful exam score difference between minorities and non-minorities. (Tr. 8-78, lines 1-5). In fact, Wiesen testified that the results of minority promotions (as set forth in Exhibits 148 & 149) to sergeant within the MBTA were commendable when taking into consideration the constraints imposed by the merit-based promotional process that M.G.L. c.31, §1 et seq. requires. (Tr. 10-115, lines 5-11).

*A REBUTTAL TO THE PLAINTIFFS' ARGUMENT THAT THE AGGREGATION OF DATA ACROSS JURISDICTIONS IS APPROPRIATE*

The Plaintiffs argue that the aggregation of data across jurisdictions is appropriate. (Plaintiffs' Proposed Findings Fact, paragraphs numbered 48-53, and Rulings of Law, pp. 61-67). An instructive example demonstrating that the Plaintiffs' argument is plainly wrong is their expert Wiesen's attempt to use such aggregated data to opine that the MBTA's utilizing HRD exams for the promotion to the rank of sergeant for the years 2003, 2005 and 2007 had an adverse impact against minorities. On direct examination, Wiesen testified [Tr. 2-82, line 13 to 2-83, line 3] [emphasis added], in reference to his opinion that the MBTA should have expected that utilizing the 2005 HRD exam would have resulted in adverse impact:

> Q. Can you tell me about that, please.

7

>A. Yes. I think there were two strong indications that this '05 statewide sergeant exam would have adverse impact. First, there's the research literature; perhaps you can call it the academic or scholarly literature that industrial psychologists produce that shows that nationwide multiple-choice tests tend to have adverse impact on minority candidates.
>
>*And then you have the experience of Massachusetts before '05. There were exams given in each year, you know, and there was an exam given in '91, yearly exams for the past at least fifteen years that we know of. And I looked at two of them specifically. I think it was the '02 and '03 or '03 and '04. And the statewide exams for sergeant that HRD administers have adverse impact each year. So if you give another one that looks basically the same as the earlier ones, you would expect the same thing to happen.*

At the time that Wiesen so testified – which testimony, essentially, suggests that, by virtue of the pattern of adverse impact derived from the statewide data, this Court should assume that the MBTA likewise would exhibit adverse impact – **he already had performed the analysis, set forth in Exhibit 79, that demonstrates that, upon aggregating the data from the 2003, the 2005 and the 2007 HRD exams, the MBTA, in fact, did not exhibit adverse impact like the pattern of adverse impact derived from the statewide data.**

Likewise, Wiesen testified on direct examination [Tr. 2-114, lines 3-23] [emphasis added], in regard to the data of MBTA officers in the 2005 and the 2007 HRD exams:

>Q. And what was the adverse impact ratio for '05?
>
>A. Zero.
>
>Q. And how about for '07?
>
>A. Zero.
>
>Q. Okay. Now, are these numbers statistically significant?
>
>A. Not in themselves.
>
>Q. Okay. Even though they're not statistically significant, do you have an opinion to a reasonable degree of industrial psychology certainty as to whether or not there was adverse impact resulting from the 2005 and 2007 sergeant's exam for the MBTA?
>
>A. Yes.
>
>Q. And what is that opinion?

8

> A. *I think that the data from MBTA in '05 and '07 that shows minorities doing less well than non-minorities is reflective of what we see statewide with minorities doing less well than non-minorities, and it's statistically significant statewide, and I think we're seeing the same effect with the MBTA. Even though there's no statistical significance for that department alone, I think they're just reflecting the overall adverse impact.*

Further, Wiesen's suggestion, that it should be assumed that the MBTA likewise would exhibit adverse impact like the pattern of adverse impact derived from the statewide data, is contrary to his testimony, on cross-examination, that Table 2c of Exhibit 79 had more reliability than the tables entered as Exhibit 53. Moreover, he agreed that, when rendering an opinion, it is better judgment to rely on Exhibit 79. (Tr. 10-107, line 21 to 10-110, line 4). Notably, his view is in accord with that of the other experts who, as shown above, testified that Exhibit 79 demonstrates that, in regard to the MBTA, there was no adverse impact in any of the criteria analyzed by the experts. Simply put, the MBTA had no adverse impact. As the Plaintiffs' experts admitted, the MBTA did not exhibit adverse impact like the pattern of adverse impact derived from statewide data, such data having been aggregated across jurisdictions]. (Tr. 8-76, line 23 to 8-77, line 6; Tr. 17-53, lines 4-10; Tr. 17-55, line 3 to 17-57, line 16). Therefore, the Plaintiffs' experts' opinions, rendered on direct examination, that *assumed* that the MBTA should be expected to exhibit adverse impact like the pattern of adverse impact derived from statewide data, were based upon a fundamentally faulty assumption. (Tr. 18-57, line 18 to 18-58, line 18). Moreover, Exhibits 79, 148 & 149 demonstrate that such opinions were contrary to the facts.

The number of minorities within the rank of sergeant in the MBTA Transit Police Department increased from five (5) minority sergeants out of a total of twenty (20) sergeants on December 31, 2003, to eleven (11) minority sergeants out of a total of thirty-three (33) sergeants on December 31, 2009. (Exhibit 149) (Tr. 10-113, line 6 to 10-115, line 4; Tr. 12-109, line 11 to 12-110, line 19). Accordingly, the percentage of minorities within the rank of sergeant in the MBTA Transit Police Department increased from 25% on December 31, 2003 to 33% on December 31, 2009. (Exhibit 149) (Tr. 10-113, line 6 to 10-115, line 4; Tr. 12-109, line 11 to 12-110, line 19). In view of these facts, any opinion that adverse impact against minorities existed in the MBTA's promotions to sergeant during the years 2003 through 2009 is contrary to

the facts. Yet, on direct examination, Wiesen so opined. The fundamental flaw in his so opining is, simply, that he used data aggregated statewide, across jurisdictions, which reflected a pattern of adverse impact, which reflection had no resemblance to the fact of no adverse impact when the data of the 2003, the 2005 and the 2007 HRD exams was aggregated *within* the MBTA. (Tr. 18-57, line 18 to 18-58, line 18).

Finally, on cross-examination, Wiesen testified that, if the information regarding promotions contained in Exhibit 149 [which, at the time of his testimony, was marked for identification] was accurate, then the results for minority promotions to sergeant at the MBTA from 2003 through 2009 not only had no adverse impact, but also were commendable when taking into consideration the constraints imposed by the merit-based promotional process of M.G.L. c.31, §1 et seq. (Tr. 10-115, lines 5-11).

The evidence contained in Exhibit 79 was analyzed by the Plaintiffs' experts and the evidence contained in Exhibits 148 & 149 was not rebutted. Viewing the evidence contained in Exhibits 79, 148 & 149 through the prism of common sense, no reasonable person could conclude that there was adverse impact in the MBTA's promotions to sergeant from 2003 through 2009. The Plaintiffs' argument that the use of statewide data, being data aggregated across jurisdictions, enables the Court to draw inferences about the "pattern" of adverse impact for the MBTA, or for any other municipality, is wrongheaded, leading to opinions, inferences and conclusions that are contrary to the facts.

*A REBUTTAL TO THE PLAINTIFFS' ARGUMENT*
*THAT PLAINTIFF LYNN DAVIS'S CLAIMS*
*ARE NOT BARRED*
*BY THE STATUTE OF LIMITATIONS*

Plaintiffs filed their Response to the Defendants' Proposed Findings of Fact and Rulings of Law on November 19, 2010. Within that document they argue that the case of *Lewis v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 2191 (2010) stands for the proposition that the statute of limitations for disparate impact claims concerning civil service promotions does not begin when the scores of the examination are announced, but rather begins every time the scores of the examination are used. Therefore, they argue that Plaintiff Davis's claims are not barred by the statute of limitations. Plaintiffs' reliance on *Lewis, supra,* is misplaced. The proposition to which they refer applies to candidates who passed the exam, but were not promoted, like the plaintiff

class of fire fighters in the *Lewis* case. Notably, the Chicago fire fighters who did not pass the civil service exam were not included in *Lewis* plaintiff class.

Unlike the plaintiff class in *Lewis,* Plaintiff Davis did not achieve a passing score. HRD gave her a failing score and, therefore, HRD did not put her on an eligibility list. The MBTA's only "*use*" of its policy in regard to Plaintiff Davis was to decide to use the 2005 HRD exam. Thereafter, the MBTA had no discretion to consider her for promotion. To be timely, she had to file a complaint of disparate impact with the EEOC or MCAD within three-hundred (300) days of being informed of her failing score. *See, Lewis v. City of Chicago, supra,* at 2198 (Justice Scalia explained that the "*use*" of a policy is the actionable conduct). She knew or should have known that she did not pass the HRD exam in approximately March 2006, but she did not file at the MCAD until September 24, 2008. (Stipulation Between Plaintiffs and MBTA Defendants, Docket # 305). Undoubtedly, her claim is beyond the statute of limitations.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' arguments are unavailing and Judgment should enter in favor of the MBTA on both Counts.

>Respectfully submitted
>for the MBTA Defendants
>by their attorney,
>
>/s/ Kevin S. McDermott
>Kevin S. McDermott, BBO#544513
>Assistant General Counsel
>Meghan Ventrella and
>Whitney Eng, *on brief*
>MBTA Law Department
>Ten Park Plaza, Suite 7760
>Boston, MA 02116
>Tel, (617) 222-4756
>Email, kmcdermott@mbta.com

### *CERTIFICATE OF SERVICE*

I hereby certify that on November 19, 2010 this document was filed through the ECF system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>/s/ Kevin S. McDermott